AO 440 (Rev. 10/93) Summons in a Civil Action - SDNY WEB 4/99

# United States District Court

| Southern | **DISTRICT OF** | New York |
|---|---|---|

NEW YORK HELICOPTER CHARTER, INC
MICHAEL ROTH, Individually

Plaintiff

V.

AIR PEGASUS HELIPORT, INC.,
HUDSON RIVER PARK TRUST and FEDERAL
AVIATION ADMINISTRATION,
               Defendants

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:

# 07 CIV 4069
# JUDGE CEDARBAUM

TO: (Name and address of defendant)

AIR PEGASUS HELIPORT, INC.
335 12TH AVENUE
NEW YORK, NY 10001

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Hantman & Associates
1414 Avenue of the Americas
Suite 406
New York, NY 10019

an answer to the complaint which is herewith served upon you, within _____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON

CLERK

_Marcos Quintero_

(BY) DEPUTY CLERK

MAY 2 4 2007

DATE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

NEW YORK HELICOPTER CHARTER INC., and
MICHAEL ROTH, individually,

                        Plaintiffs,

-against-

AIR PEGASUS HELIPORT, INC.,
HUDSON RIVER PARK TRUST, and FEDERAL
AVIATION ADMINISTRATION,

                        Defendants.
--------------------------------------------------------X

JUDGE CEDARBAUM

**07 CIV.** Civ. **4069**

**COMPLAINT**



New York Helicopter Charter Inc., ("hereafter referred to as "NYH" or "New

York Helicopters"), and Michael Roth, individually, by their undersigned attorneys, for

their complaint, allege as follows:

## INTRODUCTION

1.      This case, one of first impression, deals with an illegal public use heliport

at West 30th Street, New York, New York, which, by the terms of its own enabling

legislation, should have been shut down, effective March 21, 2001, yet it is still being

operated illegally and to the detriment of plaintiffs and the public, by The Hudson River

Park Trust ("HRPT"),[1] by way of a contrived month-to-month permit to its "favorite

---

[1]     The HRPT is comprised of Eliot Spitzer (Governor), Michael R. Bloomberg (Mayor),
and Scott Stringer (Manhattan Borough President).  It is governed by a 13-member Board
of Directors, five (5) of whom are appointed by the Governor, five (5) are appointed by
the Mayor and three (3) are appointed by the Manhattan Borough President.

The Board of Directors is currently comprised of Charles E. Dorkey III (Chairman),
Daniel L. Doctoroff (Vice-Chairman), Carol Ash (Commissioner, New York State Office
of Parks, Recreation & Historic Preservation), Peter Grannis (Commissioner, New York
State Department of Environmental Conservation), Theodore Roosevelt IV, Diana L.
Taylor (Superintendent of Banks, State of New York), Joseph B. Rose, Henry J. Stern,
Georgette Mosbacher, Adrian Benepe (Commissioner, New York City Department of
Parks & Recreation), Julie Nadel, Lawrence B. Goldberg, Esq. and Franz Leichter, Esq.

month-to-month permit to its "favorite son," Air Pegasus Heliport ("APH"), is spite of letters written to the HRPT, and numerous public officials, including but not limited to the former New York State Comptroller Alan G. Hevesi, Assemblyman Richard Brodsky, previous officials from the New York State Attorney General's Office and others.

2.    HRPT continues to illegally operate the heliport and delegates many of its governmental responsibilities for operating said heliport to the quasi-governmental APH, which operates the heliport in an arrogant, unreasonable, unfettered and, above all, discriminatory manner that interferes with and adversely impacts on interstate commerce, contravenes applicable federal regulations, and violates the plaintiffs' constitutional rights to substantive and procedural due process and equal protection under the law as evidenced, in part, by the May 6, 2007 ouster of plaintiffs from the West 30th Street Heliport (the "Heliport") for, among other reasons, refusing to drop a pending State lawsuit, complaining to the HRPT regarding APH's activities, and for joining in with other helicopter operators in complaints to APH. [2]

3.    APH's contract with the Hudson River Park Trust ("HRPT"),[3] or predecessors,[4] the Port Authority of New York and New Jersey and then the New York Department of Transportation ("NYDOT"), – has lasted almost thirty (30) years without competitive bidding.

4.    This situation is a stark contrast to that prevailing at the other two heliports in Manhattan, one located on the East Side at 34th Street and the other one downtown.[5]

---

[2]    While there is a case pending in the Supreme Court, New York County, the issues raised therein are sufficiently distinct and arise out of a "settlement agreement", and alleged overcharges.

[3]    The Port Authority of New York and New Jersey sued APH for recovery of diverted funds in 1998 which case was settled in 2005 and, upon information and belief, the DOT may still be entitled to funds from APH.

[4]    The Port Authority of New York and New Jersey and the NYDOT.

[5]    The others are located on the East Side at 34th Street and the East River, which is operated by Atlantic Aviation pursuant to a permit with the New York City Economic Development Corporation and the Downtown Manhattan Heliport operated by the Port Authority of New York and New Jersey,

5.      In addition, APH is operating illegally on a "subterfuge" month-to-month permit extension.[6]

6.      APH's method of operation[7] and fees having no correlation to APH's costs of operation, result in New York Helicopter's receiving treatment different from, and less favorable than, its competitors, and constitute an unreasonable burden on, and discrimination against, interstate commerce.

7.      APH's fare increase without a hearing is in violation of "procedural due process and equal protection," such that APH is receiving a "windfall" of over two million dollars per year.

8.      The discriminatory manner in which HRPT has chosen to enforce New York State regulations exceeds the scope of the limited authority that federal aviation law grants to "municipal proprietors" like HRPT, and is thus preempted by federal law.[8]

9.      HRPT's entire authority to regulate interstate airspace rests upon a "municipal proprietor" exemption in federal aviation law,[9] an exemption for which the Second Circuit has already ruled that HRPT qualifies.[10]

10.      This exemption, however, does not grant anyone *carte blanche* authority.

---

neither of which are operated in the same discriminatory manner as APH operates the West 30th Street Heliport pursuant to a lease agreement with the New York City Economic Development Corporation, neither of which is charging the $10 per passenger fee as does APH, which fee, while not struck down by a State Appellate Court in a different case, by a different plaintiff, is being challenged here on other grounds.

[6]    An economic arrangement that discourages investment and capital improvements.

[7]    Threatening charter and sightseeing operators that if they complain to HRPT or APH they will be refused privileges, discriminating in charges, demanding that existing lawsuits be dropped as a condition of operating, unreasonable limited take offs and landings and wrongfully discriminating against operators.

[8]    *See Nat'l Helicopter Corp. of Am. v. City of New York*, 137 F.3d 81, 88 (2nd. Cir. 1998) ("[T]he federal courts have recognized complete federal preemption over the regulation of aircraft and airspace, with a 'limited role for local airport proprietors in regulating noise levels at their airports.'") (*quoting City and County of San Francisco v. F.A.A.*, 942 F.2d 1391, 1394 (9th Cir. 1991))

[9]    49 U.S.C. § 41713.

[10]    *See Nat'l Helicopter*, 137 F.3d at 89.

3

11. To the contrary, "the proprietor exception allows municipalities to promulgate *reasonable, nonarbitrary and non-discriminatory* regulations of noise and other environmental concerns at the local level."[11]

12. Discriminatory regulations, of the sort that HRPT and APH have implemented here, are unreasonable, arbitrary, and thus beyond the scope of the proprietor exemption. As a result, they are preempted by federal aviation law.[12]

13. In addition to being preempted by federal law, the discriminatory nature of these regulations renders them an "exercise of power without any reasonable justification in the service of a legitimate governmental objective,"[13] precisely the standard that courts apply to recognize violations of constitutional due process and equal protection.[14]

14. This court has jurisdiction to hear this case involving matters of federal statutory and constitutional law under 28 U.S.C. § 1331.

15. New York Helicopter and its principal, Michael Roth, have standing to bring this action because they have a significant stake in a judicial resolution of the dispute,[15] and have been arbitrarily, unfairly and unreasonably discriminated against by reason of their recent ouster from operating at the Heliport.

---

[11] Nat'l Helicopter, 137 F.3d at 89 (quotations omitted; emphasis added).

[12] See *Alaska Airlines, Inc. v. Long Beach,* 951 F.2d 977, 988 (9th Cir. 1992) ("Although the authority of airport proprietors to enact noise regulations is not preempted by federal law, this authority is not without limits."); *City and County of San Francisco v. FAA,* 942 F.2d 1391 (9th Cir. August 21, 1991)("the power delegated to airport proprietors to adopt noise control regulations is limited to regulations that are not unjustly discriminatory").

[13] *County of Sacramento v. Lewis,* 523 U.S. 833, 846, 118 S. Ct. 1708 (1998).

[14] See *SeaAir NY, Inc. v. City of New York,* 250 F.3d 183, 187 (2d Cir. 2001).

[15] See *Sierra Club v. Morton,* 405 U.S. 727, 731, 92 S. Ct. 1361 (1972).

4

16.    The regulations in question, as they are currently being enforced, seriously impact New York Helicopter's current business and imperil its future business.[16]

17.    In addition, APH and HRPT have entered into a contrived "Settlement Agreement," which should be declared and ordered null and void and contrary to public policy.

18.    Although the West 30th Heliport is being operated in violation of federal and state law, and is engaging in illegal activity, the Downtown Manhattan Heliport, operated by the Port Authority of New York and New Jersey, is operating legally, its revenue and operations are nevertheless adversely affected by the illegal activity at the West 30th Heliport, which is the more convenient location, so operators are compelled to try to use that site anyway at the risk of otherwise losing business to that site.

19.    Because the Heliport is operating in violation of the law, sightseeing and charter operators, as well as the public, are being subjected to the discriminatory practices at the Heliport. If the HRPT acted responsibly and pursuant to the law that created the Hudson River Park Trust, the operators could conduct their business at the Downtown Manhattan Heliport, and they would not have to subject themselves to the discrimination and other illegal activities practiced at the West 30th Street Heliport.

20.    No such previous relief has been sought by these plaintiffs in Federal Court, and no State Court has addressed the issues as framed herein.

## NATURE OF THE PROCEEDING

21.    Plaintiffs are asking the Court to prevent the Hudson River Park Trust (the "HRPT") from continuing to violate federal and state law and its own by-laws in connection with the operation of the West 30th Street Heliport , located on Hudson River Park property on Manhattan's West Side in the face of damning findings by the HRPT's own auditor (Ex A ), that the exclusive fixed base operator (the "FBO") of the Heliport, Air Pegasus Heliport, Inc. ("APH"), concealed millions of

---

[16]    *See Nat'l Helicopter*, 137 F.3d at 87.

5

dollars in operating revenue and gave discounts to certain preferred helicopter operators in violation of its permit, for which the HRPT should have immediately terminated APH.

22.    Instead, the HRPT irrationally settled its dispute with APH over these and other abuses – and on extremely favorable terms to APH – exonerating APH of any wrongdoing despite evidence to the contrary.

23.    Indeed, under the terms of the settlement (Ex B), the HRPT went so far as to falsely "acknowledge" that it "has no knowledge that APH is in violation of any of the provisions of the Permit and, accordingly, APH is in good standing with the HRPT." Settlement Agm't at 4. In so doing, the HRPT caused Plaintiff NYH substantial harm, and violated its inherent statutory duties and fiduciary obligations to the public to resolve financial disputes on rational and reasonable terms that protect the public interest. Additionally, the HRPT has an obligation to remove parties who have engaged in wrongdoing in violation of their government contracts.

24.    While the HRPT's violations of the law are to APH's benefit and to the detriment of the public and New York Helicopters, the wrongdoing did not end there.

25.    For more than a decade, pursuant to APH's 1996 contract to operate the Heliport (Ex C), APH has generated substantial revenues running tourist, charter and recreational sightseeing helicopter flights out of the Heliport.

26.    The Hudson River Park Act (the "HRP Act") (Ex D), enacted in 1998, barred sightseeing helicopter tours but, under a "grandfathering" clause, permitted existing uses – even prohibited ones – if the party under contract could "solely" exercise the "contractual right" to extend the contract. *See* HRP Act at § 3(i), 1998 Sess. Law. Ch. 592 (S. 7845) (McKinney's 1998).

27.    APH had no such unilateral contractual rights here under its contract, which expired by its terms on March 24, 2001, but which has been extended since by agreement of both parties.

28.    Therefore, APH's contract is illegal under the HRP Act, and null and void. Accordingly, no heliport, of any kind, can operate in the current location of the West 30th Street Heliport. The only heliport that can possibly operate out of the Hudson River Park is a "non-

tourism/non-recreational" heliport that is situated west of the Park's bulkhead line. *Id.* at §§ 3(g) (v), 7(9) (i).

29.    In any event, as of March 25, 2006, because APH's contract had been extended for more than five years on a month to month extension, which extended the total term beyond 10 years, the HRPT was required under the HRP Act, to initiate a competitive bid process with respect to this contract to serve as the Heliport's operator by "hold[ing] a public hearing," "solicit[ing]" the views of the public, "publish[ing] notice of the hearing and proposed action in the city record and state register," and "issu[ing] a bid prospectus." *Id.* at § 7(6).

30.    Nevertheless, instead of terminating APH and putting the contract to operate a limited, "non-tourism/non-recreational" heliport out to bid, as the HRP Act requires, the HRPT has illegally "sole sourced" the operation of this prohibited use to APH, thereby allowing it to maintain its stranglehold over the Heliport.

31.    Then, in 2005, the HRPT commenced an inspection of APH's books and records to determine whether APH had fully and properly reported and remitted the requisite fees and charges to the HRPT pursuant to its contract.

32.    Even though the HRPT was unquestionably authorized to do so, APH promptly filed suit, challenging the breadth and scope of the HRPT's audit rights under the Permit.

33.    After filing its own suit, seeking to recover all unpaid fees improperly withheld by APH, the HRPT also continued its audit. On October 31, 2006, the HRPT's auditor issued findings of egregious wrongdoing by APH. These findings included APH's concealment of millions of dollars in operating revenue from the HRPT in an effort to deny the HRPT its share of that revenue.[17]

---

[17]    For example, between 1996 and 2005, APH diverted $3,853,229 to a "dummy" related entity, Air Pegasus of New York, Inc. In addition, APH's monthly deposit cash sheets did not include all bank deposits.

34.    Perhaps the most egregious finding, and the one most directly damaging to NYH, was that in direct contravention of its contract, APH also gave substantial discounts and price preferences, including non-volume discounts on fuel and landing fees, to certain preferred customers.

35.    This practice of discriminating against NYH and some other operators in favor of other competing operators had no basis in cost, in volume, or in any other economic justification.

36.    By forcing NYH to compete on an unlevel playing field, the HRPT and APH increased NYH's costs, complicated NYH's ability to invest in expanding its business, increased NYH's operating costs, and lost it business to APH's "favored" operators blessed with lower operating costs and now, only recently, has been forced out altogether.

37.    Each of these unfair cost differentials had a direct negative effect on NYH's business, causing it both to lose volume and to lose profits on the customers that it did serve.

38.    These lost profits constitute a real, tangible and measurable source of damage to NYH, attributable solely and directly to illegal, discriminatory and unreasonable implementation of regulations at the West 30th Street Heliport.

39.    Incredibly, on November 22, 2006, instead of terminating APH based on these damning findings, the HRPT settled its dispute with APH, and on extremely favorable terms with APH.

40.    Despite its knowledge of APH's serious misconduct, the HRPT agreed, and falsely stated, as part of the settlement, that "it has no knowledge that [APH] is in violation of any of the provisions of the permit and, accordingly, APH is in good standing with the HRPT."

41.    Moreover, notwithstanding that the HRPT is entitled – and, indeed, legally required – to "issue a bid prospectus" seeking proposals to operate the Heliport, the HRPT also "acknowledged" that "no operator other than [APH] can be allowed to operate the Heliport."

42.    In return, APH paid the HRPT a mere $462,387.

43.    Although purportedly in "full and complete satisfaction" of APH's obligation to remit certain monies to the HRPT, this figure fails to account for numerous payments identified by the

8

auditor as having been withheld. Nor does it include any interest on any of the improperly withheld monies or any costs associated with collection.

44.    Because APH is now permanently ensconced at the Heliport as a result of the irrational settlement offered to it by the HRPT, APH is imposing unfair and unreasonable fees on NYH, and others similarly situated, in an effort to recoup the costs of its settlement, as well as cutting back on NYH's number of flights – until recently ejecting them altogether – to accommodate other preferred parties including Zip Aviation LLC – whose license was initially rejected by the FAA.

45.    This inappropriate delegation of authority has allowed APH, ostensibly a private party, to exert the full governmental authority of HRPT, and thus turned APH into a quasi-governmental actor bound, along with HRPT, by all constitutional, statutory, and regulatory requirements constraining government action.

46.    In these ways, the HRPT's arbitrary and capricious decision to settle with APH on such favorable terms to APH has harmed NYH.

47.    For this reason, and in an effort to avoid additional damage, NYH now sues for damages, injunctive relief, and declaratory relief that (i) APH be immediately removed as the operator of the Heliport, and the contract to operate the Heliport be "put out" to public bid or, in the alternative, the Heliport, in any form, must immediately cease operations in its current location because it is operating "east of the bulkhead line" in direct contravention of the HRP Act; (ii) APH's contract does not satisfy the "grandfathering" provision of the HRP Act and, therefore expired on March 24, 2001, and the Heliport, as now constituted to permit "tourism/recreation" uses, must be shut down; (iii) the HRPT was required under its by-laws to obtain, and failed to obtain, board approval of the numerous month-to-month extensions of APH's contract to which it agreed; (iv) the tourism/recreation use of the Heliport is in violation of the HRP Act; (v) the HRPT was required to initiate a competitive bid process with respect to the contract to serve as the Heliport's operator after APH had served in that capacity for 10 years; and (vi) the HRPT acted arbitrarily and capriciously, and abused its discretion, by settling its dispute with APH on such favorable terms to APH, and

9

permitting APH to continue operating the Heliport, rather than terminating APH, and by failing to obtain board approval of this settlement, as its by-laws required. NYH also seeks a judgment annulling the November 22, 2006 settlement agreement between the HRPT and APH, compelling the HRPT, based on its own auditor's findings and on the findings of the State Comptroller (which are to be released imminently and also expected to confirm the findings of the HRPT's Audit), to terminate APH, and requiring the HRPT to conduct a competitive bid process to award a contract to operate the Heliport.

**PARTIES**

48.     Plaintiff New York Helicopter Charter, Inc. ("NYH" or "NY Helicopters"), is a New York corporation with its principal place of business in New York whose President, Michael Roth, is licensed by the FAA.

49.     NY Helicopters charter flights involve interstate travel as its helicopters take off in one state and land in other states thereby involving interstate commerce and whose customers include, but are not limited to business people, the public, tourists, and celebrities such as Calvin Klein and Ian Schrager,. NYH has been improperly discriminated against and arbitrarily denied operating rights since May 6, 2007, at the West 30th Street Heliport for, among other reasons, refusing to drop a pending State lawsuit, complaining to the HRPT regarding APH's activities, and for joining in with other helicopter operators in complaints to APH.

50.     Plaintiff Michael Roth, in his individual capacity, is a resident of New York and a naturalized citizen of the United States whose rights have been violated and who has been arbitrarily and wrongfully discriminated against as referred to above and whose wrongful ouster from the illegal Heliport is causing damage to him, his employees and their customers.

51.     Only recently, Roth's and NY Helicopters' rights to utilize the West 30th Street Heliport have been terminated to accommodate Zip Aviation LLC, who, upon information and belief has been sponsored by APH and granted privileges and opportunities not afforded other tour and sightseeing operators.

10