Operator shall take the same good care of the Premises that would be taken by a reasonably prudent owner who desires to keep and maintain the same so that at the expiration or termination of the term and at all times during this Agreement, the same will be in as good condition as at the commencement thereof, except for reasonable wear and tear which does not adversely affect the efficient or the proper utilization thereof. To that end and regardless of the cause of the condition requiring the same, the Operator shall carry on periodic inspections, perform all necessary preventative maintenance including but not limited to painting, make all necessary rebuilding with respect to the same, all of which shall be in quality equal to the original in materials and workmanship.

(e) The Operator shall not use any cleaning materials having a harmful corrosive effect, on any part of the Premises.

(f) The Operator shall promptly wipe up all oil, gasoline, grease, lubricants and other inflammable liquids and substances and all liquids or substances having a corrosive or detrimental effect of the paving or other surface of the Premises, which may leak or be spilled thereon. The Operator shall repair any damage to the paving caused by such oil, gasoline, grease, lubricants or other liquids or substances.

(g) In the event the Operator fails to commence so to maintain, clean, repair, replace, rebuild paint or otherwise undertake any obligation required by this section within a period of twenty (20) days after notice from the Department so to do, or fails diligently to continue to completion the repair, replacement or rebuilding of all of the Premises or other property of the Department required to be repaired, replaced or rebuild by the Operator under the terms of this Agreement, the Department may, at its option, and in addition to any other remedies which may be available to it, repair, replace or rebuild all or any part of the Premises or other property of the Department included in the said notice, and the cost thereof shall be payable by the Operator upon demand.

(h) The obligation of the Operator as set forth in paragraph (b) of this Section 11 (in the event that damage or destruction caused by the acts or omissions of the Operator or by those of its employees, customers, guests or invitees, or of other persons doing business with the Operator, is covered by any contract or insurance under which the Department is the insured) is hereby released to the extent that the loss is recouped by actual payment to the Department of the proceeds of such

insurance; provided, however, that, if this release shall invalidate any such policy of insurance or limit or void the Department's rights thereunder, then this release shall be void and of no effect

    (i) (1) In the event of total destruction of the Premises or in the event of partial destruction so as to render the Premises unsuitable for operation as Heliport, the Department shall have the option to either

    (i) terminate this Agreement within sixty (60) days from the date of such destruction unless the Operator shall determine to repair or rebuild the same at its expense.];

    (ii) proceed with due diligence to repair or rebuild, as necessary.

    (2) In the event said total or partial destruction is caused by the acts or omissions of the Operator or by those of its employee, customers, guests or invitees or of the obligation of the Operator as set forth in paragraph (b) of this Section 11, the Operator shall be obligated to pay to the Department the actual cash (i.e. depreciated) value of the damaged or destroyed property owned by the Department at the time of such damage or destruction, including the cost of the removal of the debris unless the Operator shall determine to repair or rebuild the same at its expense.

    (3) The Operator shall immediately after such destruction and pending such election or exercise of the options by the Department and the Operator, take all necessary safety measures and measures for temporary preservation of the Premises, and if so directed by the Department pursuant to written notice, the Operator shall remove all debris resulting from such destruction, or to the extent that the removal of debris under such circumstances is covered by insurance, the proceeds thereof shall be made available to the Operator for that purpose.

    During any period in which the Premises shall be wholly or partially destroyed so as to render the Premises unsuitable for operation as a heliport, the Operator's fees, charges, obligations and right hereunder to operate the Heliport shall abate.

    (j) Nothing contained in this Section 11 shall relieve the Operator of its obligations under Section 13 hereof

17

to secure the Department's written approval before installing any fixtures in or upon or making any alteration, decorations, replacements (other than identical replacements, or such functionally equivalent replacements which functionally equivalent replacements may be installed after thirty (30) days notice to the Department where there is no written objection within said thirty (30) days), additions or improvements in the Premises.

(k) The parties hereby stipulate that neither the provisions of Section 227 of the Real Property Law of the State of New York nor those of any other similar statute shall extend or apply to this Agreement.

(l) The State shall have no responsibility whatever for the loss or destruction of any property, including but not limited to improvements made by the permittee, inventory, and property stored or being used on the Premises, personal or real, by fire, theft, or other cause.

Section 12.   Indemnity; Liability Insurance

(a) The Operator shall assume the risk of loss, damage or destruction to any helicopter of the Operator and any other property of the Operator on the Premises occurring in the use an occupancy of the Premises by the Operator pursuant to the provisions hereof and the Operator hereby releases the Department therefrom, excepting any loss, damage or destruction resulting from affirmative willful acts of the Department. The Operator shall indemnify and hold harmless the Department, its Commissioner, officers, representatives and employees from and against all claims, suits and demands, just or unjust, of third persons (including but not limited to employee, officers and agents of the Department or the Operator) arising out of, in connection with, or relating to the use and occupancy of the Heliport by the Operator or by others pursuant to the provisions hereof, including but not limited to the use of the Heliport itself, the waters surrounding the same or any property in proximity thereto, and for all expenses incurred by it and by them in the defense, settlement or satisfaction thereof, including without limitation thereto, claims and demands for death, for personal injury or for property damage, direct or consequential, whether they arise from the acts or omission of the Operator, the Department or of other third persons, excepting only the willful affirmative acts of the Department; provided, however, that the provisions of this sub-paragraph (a) shall not limit the rights of the Operator to enforce the rights, duties and obligations of the State under the terms of this Agreement,

18

(b) In addition to the obligations set forth in paragraph (a) of this Section, the Operator in its own name as insured, shall procure, maintain and pay the premiums on the following described policies of insurance with a contractual liability endorsement covering the obligations assumed by the Operator pursuant to paragraph (a) hereof in not less than the following limits, which shall cover its operations hereunder and shall be effective during the term of this Agreement:

(1) Aircraft liability insurance on aircraft owned, operated or rented by the Operator, if any, including liability and property damage with a single combined limit of $8,000,000 per occurrence and revenue and non-revenue passenger liability of at least $500,000 per seat.

(2) Comprehensive Airport Liability Insurance including death, personal injury, property damage and aggregate products in not less than a combined single limit of $8,000,000 per occupancy.

(3) Hangar keeper's Liability insurance of not less than $1,000,000 per aircraft.

(c) The Operator shall maintain and pay the premiums throughout the term of this Agreement on a policy or policies of Worker's Compensation insurance and Employer's Liability insurance covering the liability of the Operator as an employer under the Workmen's Compensation Act of the State of New York and covering all other liability of the Operator as an employer under the Workmen's Compensation Law of the State of New York or similar statutes and shall require any contractors to carry similar insurance for its employees.

(d) As to any insurance required by the provisions of this or any other Section of this Agreement to be secured by or at the direction of the Operator, a certified copy of each of the policies or a certificate or certificates evidencing the existence thereof, or binders shall be delivered to the Department within three (3) days after the Commencement Date. In the event any binder is delivered, it shall be replaced within thirty (30) days by a certified copy of the policy or a certificate. Each such copy or certificate shall contain a valid provision or endorsement that the policy may not be canceled, terminated, changed or modified without giving thirty (30) days' written advance notice thereof to the Department. As to those policies where the Department is named as an additional insured, each such policy shall contain an additional endorsement.

19

providing that the insurance carrier shall not, without obtaining express advance permission from the General Counsel of the Department, raise any defense involving in any way the jurisdiction of the tribunal, the immunity of the Department, its Commissioner, officers, agents or employees, the governmental nature of the Department or the provisions of any statutes respecting suits against the Department. A renewal policy shall be delivered to the Department at least fifteen (15) days prior to the expiration date of each expiring policy, except for any policy expiring after the date of expiration of the term. If at any time any of the policies shall be or become unsatisfactory to the Department as to form or substance or if any of the carriers issuing such policies shall be or become unsatisfactory to the Department, the Operator shall promptly obtain a new and satisfactory policy in replacement.

Section 13.    Construction by the Operator

The parties contemplate the installation, repair, maintenance or replacement of the ramp, above-ground fuel storage and pumping system, parking areas, trailers and, at the option of the Operator, the decommissioned pier pads, barges, piers, and terminals. (The Operator shall not erect any structures, make any improvements or do any other construction work on the Premises or alter, modify, or make additions, improvements or repairs to or replacement of, any structure now existing or built at any time during the term or install any fixtures (other than trade fixtures, including trailers, removable without material damage to the freehold, any such damage to be immediately repaired by the Operator) without the prior written approval of the Department,) which consent shall not be unreasonably withheld, and in the event any construction, improvement, alteration, modification, addition, repair or replacement is made without such approval, then upon reasonable notice so to do, the Operator will remove the same, or at the option of the Department. In case of any failure on the part of the Operator to comply with such notice, the Department may affect the removal or change and the Operator shall pay the cost thereof to the Department.

Section 14.    Signs

(a)  Except with the prior written approval of the Department, the Operator shall not erect, maintain or display any signs or any advertising at or on the interior or exterior parts of the Premises except with respect to those installed as of the date hereof or substantially similar substitutes therefor.

20

(b) Upon the expiration, or earlier revocation or termination of the Agreement, the Operator shall remove, obliterate or paint out, as the Department may direct, any and all signs and advertising on the Premises and in connection therewith shall restore the portion of the Premises affected by such signs or advertising to the same condition as at the commencement of the term. In the event of a failure on the part of the Operator so to remove, obliterate or paint out each and every sign or advertising and so to restore the Premises, the Department may perform the necessary work and the Operator shall pay the costs thereof to the Department on demand.

Section 15.    Operation of the Fuel Storage System

(a) The Operator has been advised and understands that there is presently installed at the Heliport a fuel storage facility composed of two separate fuel storage systems having a total capacity of approximately 11,000 gallons identified by markings painted on various visible parts thereof as No. 1 and No. 2 (and hereinafter respectively sometimes referred to as "fuel storage system No. 1" and "fuel storage system No. 2"). The Operator may install an additional above-ground fuel storage and dispensing facilities ("Operator System"). Each in ground system is provided with its own, separate, pump and motor, and separate electrical control but, however, has fuel filters, metering and a pump dispenser which is shared and used in common by both systems and which shared use permits only one system to dispense fuel at a time. Beginning on the Commencement Date:

(b) The Operator shall have the exclusive use of fuel storage system No's. 1 and 2 and the Operator System and the Department shall have no responsibility for such system.

(c) The Operator shall use the Operator System and fuel system No.'s 1 and 2 and such other systems as the Department may authorize for the purpose of storing and dispensing fuel into aircraft of the Operator and the Operator's customers subject to and in accordance with all of the terms and provisions of this Agreement including the following:

(1) The Operator shall have the sole and complete responsibility and shall itself suffer, without recourse or claim against the Department, all fuel losses, from whatever cause including leakage of the system which may arise from its use of any fuel system.

(2) The Operator shall store and dispense only Jet A type fuel in the fuel systems and no other type or grade of fuel.

(3) The Operator shall operate all fuel systems in a safe and efficient manner in accordance with the standards of the industry and in accordance with the procedures and directions as may be given from time to time by and shall immediately notify the Department by telephone, to be followed by written notification, of any defect or condition of the fuel systems requiring repair.

(4) The Operator shall cease dispensing fuel from any fuel systems at any time that it appears that the fuel in said system at any time that it appears that the fuel in said system is defective or has been contaminated or that there is the possibility of defect or contamination or that continued use of the system is or may be unsafe or dangerous.

(d) Notwithstanding any other term or provision hereof (i) the Operator shall have the sole responsibility and the Department shall have no responsibility to assure the integrity, security and safety of the various fuel systems or of the fuel dispensed by the Operator and the Operator shall be solely responsible for its use; (ii) the Operator shall be responsible at its sole cost and expense and at all times will take good care of all fuel systeming and will maintain same in good order and condition in compliance with all legal requirements and insurance requirements and will make all necessary repairs thereto, including but not limited to leaks or contamination resulting from all fuel systems. In no event shall Operator be responsible for cost associated with leaks or other obligations occasioned by prior permittee failure to maintain said fuel system in good order and operating conditions, (iii) the Operator shall be entitled, but shall not, unless otherwise required by law or regulation, be obligated to, decommission any or all fuel systems or parts thereof.

Section 16.   <u>Rights of Entry Reserved</u>

(a) The Department, by its officers, employees, agents, representatives and contractors shall have the right at all times to enter upon the Premises for the purpose of inspecting the same, for observing the performance by the Operator of its obligations under this Agreement, and for the doing of any act or thing which the Department may be obligated or have the right to do under this Agreement or otherwise.

(b) Without limiting the generality of the foregoing, the Department, by its officer, employees, agents, representatives, contractors, and furnishers of utilities and other services, shall have the right for its own benefit and for the benefit of the Operator, to maintain existing and future utility, mechanical, and other systems, and to enter upon the Premises at all reasonable times to make such repairs, replacements or alterations as may, in the opinion of the Department, be deemed necessary or advisable and, from time to time, to construct or install over, in or under the Premises new systems or parts thereof; provided, however, that in the exercise of such rights of access, repair, alteration or new construction the Department shall not unreasonably interfere with the use and occupancy by the Operator.

(c) In the event that any property of the Operator shall obstruct the access of the Department, its employees, agent or contractors to any of the existing or future utility, mechanical, and other systems and this shall interfere with the inspection, maintenance or repair of any such system, the Operator shall, upon reasonable advance written notice, move such property, as directed by the Department, in order that the access may be had to the system or part thereof for its inspection, maintenance or repair, and, if the operator shall fail to so remove such property after direction from the Department to do so, the Department may move it and the Operator hereby agrees to pay the cost of such moving upon demand.

(d) Nothing in this Section shall or shall be construed to impose upon the Department any obligations so to construct or maintain or to make repairs, replacements, alterations or additions, or shall create any liability for any failure so to do. The Department shall not in any event be liable for any injury damage to any property or to any person happening on or about the Premises nor for any injury or damage to the Premises nor to any property of the Operator or of any other person located in or thereon (other than those occasioned by the acts of the Department, its employees, agents and representatives).

Section 17.  Assignment, Subcontracting and Operator Rights

(a) The Operator agrees that it will not sell, convey, transfer, mortgage, pledge or assign this Agreement or any part thereof, or any rights created thereby or any part thereof without the prior written consent of the Department.

23

(b) If without the prior written consent of the Department, the Operator assigns, sells, conveys, transfers, mortgages or pledges in violation of subdivision (a) of this Section of if the Premises are occupied without proper authorization by anybody other the Operator, the Department may collect the fees from any assignee or anyone who claims a right to this Agreement or who occupies the Premises, and the Department shall apply the net amount collected to the fees herein reserved; but no such collection shall be deemed a waiver by the Department of the agreements contained in subdivision (a) of this Section nor an acceptance by the Department of any such assignee, claimant or occupant as a party hereunder, nor a release of the Operator by the Department from the further performance by it of the agreements contained herein.

(c) The Operator shall not use or permit any person to use the Premises or any portion thereof for any purpose other than the purposes stated in this Agreement and the Operator's obligations hereunder may and shall be performed only through the medium of its officers, employees and contractors.

(d) Permittee shall not sub-permit the Premises to any other parties in part or in whole without the prior written consent of the State. Failure to comply with this provision may result in ten (10) days written notice of cancellation of the permit by the State, and the State may immediately take possession and terminate all rights of the Permittee as of such moment.

(e) Any sightseeing business conducted by the Operator at or from the Heliport under the terms of this Agreement, whether as the sole Operator of a sightseeing business or in addition to sightseeing businesses conducted by others at or from the Heliport, shall be conducted through an entity separate from the Operator (which entity may be a subsidiary or affiliate of the Operator) and shall be on business terms identical to those applicable to the last or currently approved operator of sightseeing operations at the Heliport.

Section 18.    Termination by the Department

(a) If any one or more of the following events shall occur, that is to say:

(1) The Operator shall become insolvent, or shall take the benefit of any present or future insolvency statute, or shall make a general assignment for the benefit of creditors, or file a voluntary petition in bankruptcy or reorganization or the

24