# TABLE OF CONTENTS

PAGE

Section 1. Space ............................................................. 1

Section 2. Term .............................................................. 1

Section 3. Rights of User .................................................... 2

Section 4. Schedule of Charges and Collections ............................... 4

Section 5. Services by the Operator .......................................... 4

Section 6. Fees and Charges Payable to the Department ........................ 6

Section 7. Obligations in Connection with Payment of the
           Percentage Fee and Privileges ..................................... 9

Section 8. Compliance with Governmental Requirements ......................... 9

Section 10. Prohibited Acts .................................................. 12

Section 11. Maintenance, Repair and Property Insurance ....................... 14

Section 12. Indemnity; Liability Insurance ................................... 18

Section 13. Construction by the Operator ..................................... 20

Section 14. Signs ............................................................ 20

Section 15. Operation of the Fuel Storage System ............................. 21

Section 16. Rights of Entry Reserved ......................................... 22

i

Section 17. Assignment, Subcontracting and Operator Rights .... 23

Section 18. Termination by the Department ..................... 24

Section 19. Right of Re-entry ................................. 27

Section 20. Remedies to be Non-exclusive ...................... 27

Section 21. Surrender ......................................... 27

Section 22. Effect of Base Rent Reductions .................... 27

Section 23. Removal of Property ............................... 27

Section 24. Brokerage ......................................... 28

Section 25. Limitation of Rights and Privileges Granted ....... 28

Section 26. Notices ........................................... 28

Section 27. Place of Payments ................................. 29

Section 28. Construction and Application of Terms ............. 29

Section 29. Non-Liability of Individuals ...................... 29

Section 30. Other Services by the Operator .................... 30

Section 31. Equipment Furnished by the Operator ............... 31

Section 32. Relationship of the Parties ....................... 31

Section 33. Condemnation or Acquisition by Others ............. 31

ii

Section 34. Sales and Services .................................... 32

Section 35. No Interest in Real Property ......................... 34

Section 36. Helicopter Flight Operations ......................... 34

Section 37. Sunken Craft .......................................... 34

Section 38. Accident Reports ...................................... 35

Section 39. Operations Personnel .................................. 35

Section 40. [Reserved] ............................................ 35

Section 41. Additional Rights Concerning Termination ............. 36

Section 42. Presidential Use of the Heliport ..................... 36

Section 43. NOTAMS - Emergency .................................... 37

Section 44. Public Information .................................... 37

Section 45. [Reserved] ............................................ 37

Section 46. Condition of Premises ................................. 37

Section 47. Security Deposit ...................................... 38

Section 48. Substitute Operator and Carryover .................... 39

Section 49. Definitions ........................................... 39

Section 50. Entire Agreement; No Third Party Beneficiaries ....... 39

# EXHIBIT D

NY LEGIS 592 (1998)
1998 Sess. Law News of N.Y. Ch. 592 (S. 7845) (McKINNEY'S)

McKINNEY'S 1998 SESSION LAW NEWS OF NEW YORK
221st Legislature
Copr. (C) West Group 1998.  All rights reserved.

Additions are indicated by <<+ Text +>>;
deletions by <<- Text ->>
Changes in tables are made but not highlighted.

CHAPTER 592
S. 7845
HUDSON RIVER PARK ACT

Approved and effective Sept. 8, 1998

AN ACT in relation to creating the Hudson river park and the Hudson river park trust

The People of the State of New York, represented in Senate and Assembly, do
enact as follows:

Sec. 1
s 1. Short title.  This act shall be known and may be cited as "the Hudson river park act."
Sec. 2
s 2. Legislative findings and intent.  The legislature hereby finds, determines and declares the following:
(a) The planning and development of the Hudson river park as a public park is a matter of state concern and in the interest of the people of the state.  It will enhance the ability of New Yorkers to enjoy the Hudson river, one of the state's great natural resources;  protect the Hudson river, including its role as an aquatic habitat;  promote the health, safety and welfare of the people of the state;  increase the quality of life in the adjoining community and the state as a whole;  help alleviate the blighted, unhealthy, unsanitary and dangerous conditions that characterize much of the area;  and boost tourism and stimulate the economy.
(b) The creation of the Hudson river park will encourage, promote and expand public access to the Hudson river, promote water-based recreation, and enhance the natural, cultural, and historic aspects of the Hudson river.
(c) It is in the public interest to encourage park uses and allow limited park/commercial uses in the Hudson river park consistent with the provisions of this act and the general project plan for the park.
(d) The marine environment of the park is known to provide critical habitat for striped bass and other aquatic species.  It is in the public interest to protect and conserve this habitat.
(e) It is in the public interest for the state and city of New

York to act together to finance the Hudson river park and for the Hudson river park trust to design, develop, operate, and maintain the Hudson river park, including through the use of available federal funds. It is intended that to the extent practicable and consistent with the intent of subdivision (c) of this section, the costs of the operation and maintenance of the park be paid by revenues generated within the Hudson river park and that those revenues be used only for park purposes. Additional funding by the state and the city may be allocated as necessary to meet the costs of operating and maintaining the park.

(f) The planning, environmental review, interim improvement, and development process for the park that has been conducted to date has furthered the foregoing purposes and it is essential for that process to continue in order to accomplish such purposes. It is intended that the Hudson river park trust, to the extent provided and subject to the limitations set forth in this act, replace:

(i) the Hudson river park conservancy, a wholly-owned subsidiary of the New York state urban development corporation; and

(ii) the New York state urban development corporation;

with respect to their authority over the park, for among other things, the completion of the development process and the construction, operation and maintenance of the park, all in accordance with this act.

(g) The legislature finds that this act is in the public interest, is a matter of state concern, and is necessary to accomplish these important public purposes. The legislature intends that the Hudson river park trust is to operate exclusively for purposesrelating to the promotion of the health and social welfare of the people of the state.

Sec. 3

s 3. Definitions. As used in this act, the following terms shall have the following meanings, unless the context clearly requires otherwise:

(a) "Board" means the board of directors of the Hudson river park trust.

(b) "Compatible governmental use" means a use within the park that is compatible with park use in accordance with the purposes of this act, such as necessary and appropriate sewage, utility, and ventilstion connections, and private utilities, including the repair, maintenance, operation, and replacement thereof; public safety facilities necessary for the maintenance and operation of the park; the marine company one fire boat station on pier 53; and the city of New York department of sanitation water-dependent marine transfer station on pier 99.

(c) "Floating structure" means any vessel or other water-supported structure, including a floating dock, which is bordered by either open water or a dock and which is or is intended to be moored or attached to a pier, wharf, dock, platform, bulkhead or floatation system for a period of more than six months; provided however, that such definition shall not include historic ships or vessels, as determined by the trust through rules and regulations. Support by means of a cradle or as a result of natural siltation shall not exclude from this definition a structure normally supported by water.

(d) "General project plan" means the Hudson river park concept & financial plan, dated May, 1995, as modified in the May 20, 1998 final environmental impact statement, and any successor plan or statement of findings created thereafter consistent with the state environmental quality review act; provided that the general project plan shall be consistent with this act.

(e) "Hudson river park" or "park" means the area in the city and county of New York within the following boundaries, but excluding pier 76 except as otherwise provided in paragraph (c) of subdivision nine of section seven of this act and piers 78, 88, 90, 92 and 94 and their associated upland areas:

(i) the southern boundary shall be the northern boundary of Battery Place and Battery Place extended, provided that the Battery Park city project area as defined in section 1972 of the public authorities law shall not be included within the boundaries of the park;

(ii) the northern boundary shall be the northern boundary of 59th street and 59th street extended;

(iii) the western boundary shall be the United States pierhead line; and

(iv) the eastern boundary shall be the western boundary of West street, eleventh avenue or twelfth avenue (whichever boundary is more westerly at any point); provided that as any portion of the state highway route 9-A is completed, as certified by the commissioner of transportation of the state, the eastern boundary of the park adjacent to that portion shall be the western boundary of state highway route 9-A; provided that the department of transportation shall retain a temporary easement over all lands east of the bulkhead during the period of construction of route 9-A for the sole purpose of completing construction; and provided further that (A) Thomas F. Smith Park as will be rebuilt as part of the route 9-A project, (B) the area bounded by 14th street, 15th street, tenth avenue and route 9-A, and (C) any additional land adjacent to the park or adjacent to route 9-A acquired in accordance with the provisions of this act to expand the park shall be part of the park; and provided further that any pier or upland area which is privately owned shall not be deemed part of the park for purposes of this act unless transferred to or acquired by the city or state and made part of the park.

(f) "Incompatible governmental use" means a governmental use within the park that is not a compatible governmental use or is otherwise incompatible with park use in accordance with the purposes of this act, such as sanitation-truck parking, bus parking, and police impound lots and storage facilities.

(g) "Park/commercial use" means a use that is not a prohibited use and is compatible with park use, and that is:

(i) a transportation water dependent use, including commercial maritime and marine ferry terminals;

(ii) an entertainment, retail, or commercial recreational use;

(iii) limited parking spaces incidental to permitted uses;

(iv) solely at piers 59, 60, and 61 and the headhouse (commonly known as "Chelsea Piers") the uses authorized at such piers and headhouse as of the effective date of this act, including, but not limited to, sports and studio facilities; or

  (v) a non-tourism/non-recreation heliport for commercial and emergency transportation use.
  (h) "Park use" means:
  (i) public park uses, including passive and active public open space uses;
  (ii) public recreation and entertainment, including the arts and performing arts, on open spaces;
  (iii) public recreation and entertainment, including the arts and performing arts within enclosed structures subject to the limitations on such structures specified in subdivision nine of section seven of this act;
  (iv) small-scale boating for recreational and educational purposes that enhance park users' access to, and enjoyment of, the water;
  (v) environmental education and research, including museums subject to the limitations specified in subdivision nine of section seven of this act;
  (vi) historic or cultural preservation including historic ships and vessels;
  (vii) wildlife and habitat protection; and
  (viii) facilities incidental to public access to, and use and enjoyment of park uses, such as concession stands, information stands, comfort stations, boathouses, marinas, water taxis, and stands at which bicycles, skates, deck chairs, beach umbrellas, fishing tackle, other sports equipment or other similar products are rented or at which water-taxi tickets or other tourist attraction passes or meals are sold, subject to the limitations on such structures specified in subdivision nine of section seven of this act.
  Provided that the following shall apply: (A) enclosed structures on piers and other areas designated for park use shall be subject to the limitations on such structures specified in subdivision nine of section seven of this act, (B) in no event shall the following be deemed to constitute a "park use": any amusement park, television or film studio, commercial cinema or other for-profit entertainment facility, or any parking facilities (except for temporary spaces for deliveries or as necessary to meet local, state or federal requirements regarding access for disabled persons); and (C) the overall policy within the park shall be to provide free or nominal-cost recreational opportunities to the public on a broad basis.
  (i) "Permitted use" means:
  (i) park use;
  (ii) park/commercial use;
  (iii) compatible governmental use;
  (iv) uses permitted under any lease, permit, license, or other instrument in effect upon the effective date of this act, whether or not a prohibited use under this act, but only pursuant to the terms of the instrument and only for the term thereof or pursuant to any extension according to the terms thereof if, but only if, the option to extend is exercised solely by and is a contractual right of the lessee, permittee, licensee or other contractual user, and subject to the deadlines for the removal or relocation of incompatible governmental uses under subdivision nine of

section seven of this act.
  (j) "Prohibited use" means any of the following uses:
  (i) residential;
  (ii) manufacturing, except in furtherance of and incidental to park uses;
  (iii) commercial office and warehousing, except office space incidental to a permitted use;
  (iv) hotel;
  (v) incompatible governmental uses;
  (vi) casino and riverboat gambling, and the docking of vessels to be used substantially for gambling or for transportation to such a vessel;
  (vii) any facility for motorized aircraft, including a heliport except a heliport which is defined as a park/commercial use; and
  (viii) other uses determined by the trust to be incompatible with the purposes of this act.
  (k) "Hudson river park trust" or "trust" means the public benefit corporation established pursuant to section five of this act.
  (l) "Water section" means all the area of the park west of the bulkhead line, including the water, lands under water and space above the water, but not including the piers and float bridge as they exist on the effective date of this act.
  (m) "Water dependent use" excludes any prohibited use and means:
  (i) any use that depends on utilization of resources found in the water section;
  (ii) recreational activities that depend on access to the water section, such as fishing, boating, swimming in such waters, passive enjoyment of the Hudson river and wildlife protection and viewing;
  (iii) facilities and incidental structures needed to dock and service boats; and
  (iv) scientific and educational activities that by their nature require access to marine reserve waters.
  (n) "Passive and active public open space uses" mean lawns, esplanades, open pier surfaces, areas for strolling and sitting, picnicking areas and open space areas for sports, exercise and active play including, playgrounds, ball fields, playing courts, and areas for running, biking and rollerblading and similar recreational activities.
Sec. 4
  s 4. Dedication of park. The Hudson river park is hereby created and dedicated and shall be planned, developed, operated, maintained, and used in accordance with this act. The park shall be used for public purposes, and for purposes necessary or incidental thereto, as permitted herein. Except as specifically provided herein, real property subject to this act shall not be sold, leased, exchanged, donated, or otherwise disposed of, and shall not be used for other than permitted uses as provided in this act.
Sec. 5
  s 5. Creation of the Hudson River park trust. 1. There is hereby created the "Hudson river park trust" which shall be a body corporate and politic, constituting a public benefit corporation. The trust shall come into existence upon the thirtieth day

following the appointment of not fewer than eight members of its board as herein provided, and the trust and its corporate existence shall continue until terminated by the legislature. The trust shall have the rights, powers, responsibilities and duties set forth in this act, subject to the limitations set forth herein, and it shall replace the New York state department of transportation and the New York state urban development corporation, and the wholly owned subsidiary of said corporation, known as the Hudson river park conservancy, in their authority over the planning, design, construction, operation and maintenance of the park. Upon the coming into existence of the trust, and except for steps necessary to transfer functions and for the construction or maintenance of state route 9-A, the New York state urban development corporation, the Hudson river park conservancy and the New York state department of transportation shall have no further responsibility for or authority over the park, and the Hudson river park conservancy shall be dissolved. Upon the coming into existence of the trust, the trust shall succeed to all contracts, leases, licenses and other legal obligations respecting the park to which its predecessors are party at or after the effective date of this act; provided that the trust shall not assume any debt or financial obligation to any public benefit corporation or governmental entity.

2. The members of the board shall be as follows:

(a) Five members shall be appointed by and serve at the pleasure of the governor, one of whom shall be the state commissioner of parks, recreation and historic preservation, one of whom shall be the commissioner of environmental conservation, each of whom shall serve ex-officio, and at least one of whom shall be a representative of a not-for-profit, non-governmental environmental or civic organization.

(b) Five members shall be appointed by and serve at the pleasure of the mayor of the city of New York, one of whom shall be the commissioner of parks and recreation of the city of New York, who shall serve ex-officio and one of whom shall be a representative of a not-for-profit, non-governmental environmental or civic organization.

(c) Three members shall be appointed by and serve at the pleasure of the president of the borough of Manhattan, one each appointed in consultation respectively with community boards one, two and four within the borough of Manhattan. Two such members shall be voting members designated on a rotating basis by the president of the borough of Manhattan.

3. Each member except for the non-voting member of the board shall be entitled to one vote on all matters voted on by the board. Eight members shall constitute a quorum. All actions authorized by a vote of the board shall require the affirmative vote of eight members in order to pass. The chair shall be designated by the governor and serve as chair at the pleasure of the governor, and the vice-chair shall be designated by the mayor of the city of New York and serve at the pleasure of the mayor whose designation as chair or vice-chair shall be for a term of two years. Upon completion of the initial term the mayor shall appoint the chair and the governor shall appoint the vice- chair.

The governor and the mayor shall thereafter alternate in designating the chair and vice-chair. The commissioners of parks, recreation and historic preservation and environmental conservation and the commissioner of parks and recreation of the city of New York may each designate a representative to attend, in his or her place, meetings of the board and to act on his or her behalf. Any member of the board who ceases to be a resident of the state shall automatically cease to be a member.

  3-a. Except with respect to the terms of the chair and the vice-chair of the trust who shall serve for a term of four years, of the three other members initially appointed pursuant to paragraph (a) of subdivision two of this section, two shall serve for a term of two years and one shall serve for a term of three years and of the four other members initially appointed pursuant to paragraph (b) of such subdivision two members shall serve for a term of two years and two members shall serve for a term of three years. All successors to the members initially appointed pursuant to paragraphs (a) and (b) of subdivision two of this section shall serve for a term of four years. All members appointed pursuant to paragraph (c) of subdivision two of this section shall serve for a term of one year. Each member shall serve at the pleasure of the person who appointed such member. Vacancies occurring otherwise than by expiration of term shall be filled for the unexpired term in the same manner as the original appointment.

  4. Members of the board shall not be compensated for their services but may be reimbursed for their necessary and actual expenses incurred in connection with the performance of their duties. The board may delegate to one or more of its members or to its officers, agents or employees such powers and duties as it may deem proper.

  5. It shall not be deemed a conflict of interest for a person to simultaneously hold positions as a member of the board and as an officer of the trust. No public officer or employee shall forfeit or be deemed to have forfeited such public office or employment by accepting membership on the board.

Sec. 6

  s 6. Purposes of the trust. The trust is created to fulfill the following purposes in accordance with this act:

  (a) to plan, design, develop, construct, operate and maintain the park;

  (b) to provide a place for recreation, reflection, education, and cultural expression for the public;

  (c) to be a proper and appropriate steward of the environment;

  (d) to cooperate, and to coordinate matters relating to the park, with the federal government, the state and the city of New York as well as with community, environmental, and civic groups;

  (e) to accept contributions from philanthropic organizations, foundations, and all other entities or persons for the purpose of advancing the purposes in this act;

  (f) to accept appropriations and grants from federal, state and local governments;

  (g) to receive rents, payments in lieu of taxes, and other revenues generated within the park, and to use the same solely to improve, operate and maintain the park; and

  (h) to encourage and support public volunteer activities and participation in the operation of the park.
Sec. 7
  s 7. Powers of the trust. 1. To fulfill its purposes under this act, the trust shall have the following powers, functions, duties and authority subject to the limitations set forth in this act:
  (a) to plan, design, develop, construct, operate, and maintain the Hudson river park;
  (b) to provide for the health, safety and welfare of the public using facilities under its jurisdiction;
  (c) to establish an advisory council;
  (d) to exercise the following general corporate powers:
  (i) to make and alter by-laws for its organization and internal management;
  (ii) to adopt, amend or rescind such rules, regulations and orders as may be necessary or convenient for the performance or exercise of the functions, powers and duties of the trust in accordance with the provisions of this act;
  (iii) to enter into contracts, including customary trade credits in the ordinary course of business, with any person and do all things necessary or convenient to carry out the functions, powers and duties of the trust;
  (iv) to conduct meetings and hearings with respect to any matter under the jurisdiction and control of the trust;
  (v) to bring or defend such actions, suits or proceedings as may be necessary or proper to perform any of the powers, functions and duties of the trust;
  (vi) to exercise and perform such other functions, powers and duties as shall have been or may be from time to time conferred or imposed by or pursuant to law;
  (vii) to appoint such officers and employees as it may require for the performance of its duties, and to fix and determine their qualifications, duties, and compensation and to retain or employ such persons as landscape architects, architects, historians, ecologists, marine biologists, educators, engineers, counsel, auditors, and private consultants on a contract basis or otherwise to render professional or technical services and advice;
  (viii) to submit legal matters to the attorney general of the state who may furnish any necessary legal services and advice required to assist the trust in accomplishing its corporate purposes;
  (ix) to designate the depositories of its money and the persons authorized to sign checks and other such instruments on its behalf;
  (x) to establish and re-establish its fiscal year;
  (xi) to procure insurance against any loss in connection with its property and other assets and operations in such amount and from such insurers as it deems appropriate, or enter into self-insurance agreements with the city and state of New York to insure against any such loss;
  (xii) to apply for or accept any gifts or grants of funds or personal property or financial or other aid in any form from the federal government, the state or the city of New York or any agency or instrumentality of any of the foregoing, or from any