UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
NEW YORK HELICOPTER CHARTER, INC. and   :
MICHAEL ROTH individually

                                             :    07 Civ. 4069

                          Plaintiffs

                                             :

      -against-

                                           :

AIR PEGASUS HELIPORT, INC, HUDSON RIVER
PARK TRUST and the FEDERAL AVIATION   :
ADMINISTRATION

                                           :

                           Defendants
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW BY DEFENDANT AIR PEGASUS HELIPORT, INC IN SUPPORT OF MOTION TO DISMISS

Leon Friedman (LF#7124)
148 East 78th Street
New York, N.Y. 10021
(212) 737-0400
Attorney for Defendant
Air Pegasus Heliport, Inc.

# TABLE OF CONTENTS

Page

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3

ARGUMENT

I.    THE FEDERAL CONSTITUTIONAL CLAIMS MUST BE
DISMISSED SINCE APH IS NOT A STATE ACTOR. . . . . . . . . . . . .    7

    A.    APH is Not a State Actor . . . . . . . . . . . . . . . . . . . . . . . .    7

    B.    Petitioners Have Not Been Deprived of any Property Rights    14

II.    NO CONTITUTIONAL CLAIM IS PROPERLY ALLEGED
IN THE COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    15

III.    NO CLAIM CAN LIE UNDER THE AIRLINE
DEREGUALTION ACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    17

    A.    The Private Contract between APH and HRPT Does Not
Qualify as a Regulation or Other Provision Having the Force of Law.    18

    B.    No Private Cause of Action Will Lie Under the
Circumstances of This Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    21

IV.    ALL OF THE STATE CAUSES OF ACTION MUST BE DISMISSED
SINCE FEDERAL COURTS WILL NOT EXAMINE CLAIMS BROUGHT
UNDER CPLR ARTICLE 78 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    22

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Adams v. Vandemark*, 855 F.2d 312 (6th Cir. 1988)........................................................ 12

*Adler v. Pataki*, 204 F. Supp. 2d 384 (N.D.N.Y.2002) .................................................... 24

*Air Transportation Associate of America v. Public Utilities Commission*, 833
    F.2dd (9th Cir. 1987) ................................................................................................ 22

*Alaska Airlines, Inc. v. City of Long Beach*, 951 F.2d 977 (9th Cir. 1991)...................... 20

*American Airlines Inc. v. Department of Transportation*, 202 F.3d 788 (5th Cir.
    2000) ......................................................................................................................... 20

*American Airlines v. Wolens*, 513 U.S. 219 (1995) ........................................... 18, 19, 22

*American Manufacturers Mutual Insurance Co. v. Sullivan*, 119 S. Ct. 977 (1999)........ 12

*Baggett v. First National Bank of Gainesville*, 117 F.3d 1342 (11th Cir. 1997)................ 7

*Beckwith*, 413 F. Supp. 2d at 227.................................................................................... 24

*Birmingham v. Ogden*, 70 F. Supp. 2d 353 (S.D.N.Y.1999)............................................ 24

*Blum v. Yaretsky*, 457 U.S. 991 (1982) ............................................................................ 8

*Board of Curators University of Missouri v. Horowitz*, 435 U.S. 78 (1978) ................... 16

*Brentwood Academy v. Tennessee Secondary School Athletic Association*, 538
    U.S. 288 (2001) .......................................................................................................... 8

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296 (2d Cir.2004) ................. 23

*Burton v. Wilmington Parking Authority*, 365 U.S. 715 (1961) ........................................ 9

*Buttery v. United States*, 690 F.2d 1170 (5th Cir. 1982) ................................................. 16

*Camacho v. Brandon*, 56 F. Supp. 2d 370 (S.D.N.Y.1999) ............................................ 24

*Center v. Bio-Ethical reform v. Comcast-Spectacor, Inc.*, 1999 WL. 601014 (E.D.
    Pa. 1999) ................................................................................................................... 12

*Charry v. Hall*, 709 F.2d 129 (2d Cir. 1983)................................................................. 16

*City and County of San Francisco v. Federal Aviation Authority*, 942 F.2d 1391
(9th Cir. 1991)...........................................................................................................20

*Clubside, Inc. v. Valentin*, 468 F.3d 144 (2d Cir. 2006) .......................................... 15, 25

*Collyer v. Darling*, 98 F.3d 211 (6th Cir. 1996).............................................................13

*Colorado River Water Conservation District v. United States*, 424 U.S. 800
(1976)..........................................................................................................................3

*Cooper v. Aaron*, 358 U.S. 1 (1958) .............................................................................10

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998) ....................................................17

*Crissman v. Dover Downs Entertainment, Inc.*, 289 F.3d 231 (3d Cir. 2002) .................. 9

*DeBauche v. Trani*, 191 F.3d 499 (4th Cir. 1999) ..........................................................13

*Evans v. Newton*, 382 U.S. 296 (1966)...........................................................................12

*Gannett v. Satellite Information Network*, 894 F.2d 61 (3d Cir. 1990) ...........................11

*Hack v. President and Fellows of Yale College*, 237 F.3d 81 (2d Cir. 2000) .................13

*Herrmann v. Brooklyn Law Sch.*, 432 F. Supp. 236 (E.D.N.Y.1976)..............................24

*Hoagland v. Town of Clear Lake, Indiana*, 415 F.3d 693 (7th Cir. 2005)......................21

*Hodges v. Yonkers Racing Form*, 918 F.2d 1079 (2d Cir. 1991) ....................................14

*Hudgens v. NLRB*, 424 U.S. 507 (1976)..........................................................................12

*Jackson v. Metropolitan Edison Co.,*, 419 U.S. 345 (1974)..............................................8

*Johnson v. Rodriguez*, 293 F.3d 1196 (10th Cir. 2002) ..................................................13

*Kaluczky v. City of White Plains*, 57 F.3d 202 (2d Cir. 1995).........................................17

*Lake Mohave Boat Owners Associate v. National Park Service*, 78 F.3d 1360 (9th
Cir. 1996) ..................................................................................................................16

*Landry v. A-Able Bonding, Inc.*, 75 F.3d 200 (5th Cir. 1996) .........................................13

*Lansing v. City of Memphis*, 202 F.3d 821 (6th Cir. 2000)..............................................13

*Lawal v. British Airways*, 812 F. Supp. 713 (S.D. Tex. 1992) .........................................22

*Lefcourt v. Legal Aid Society*, 445 F.2d 1150 (2d Cir. 1971)............................................10

*Logan v. Bennington College Corp.*, 72 F.3d 1017 (2d Cir. 1995)..................................13

*Lucchese v. Carboni*, 22 F. Supp. 2d 256 (S.D.N.Y.1998) ..............................................24

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)..........................................................3

*Messman v. Helmke*, 133 F.3d 1042 (7th Cir. 1998).........................................................13

*Montauk-Caribbean Airways, Inc. v. Hope*, 784 F.2d 91 (2d Cir. 1986)........................22

*Moose Lodge No. 107 v. Irvis*, 407 U.S. 163 (1972).........................................................11

*Morales v. Trans Word Airlines*, 504 U.S. 374 (1992) .....................................................17

*Morningside Supermarket Corp. v. New York State Department of Health*, 432 F.
    Supp. 2d 334 (S.D.N.Y. 2006)....................................................................................24

*Motorola Credit Corp. v. Uzan*, 388 F.3d 39 (2d Cir.2004).............................................22

*Natale v. Town of Ridgefield*, 170 F.3d 258 (2d Cir.1999) ..............................................14

*National Broadcasting Co. v. Communications Workers of America*, 860 F.2d
    1022 (11th Cir. 1988) ..................................................................................................12

*National Helicopter Corp. of America v. City of New York*, 137 F.3d 81 (2d Cir.
    1998)..............................................................................................................................19

*Neilson v. D'Angelis*, 409 F.3d 100 (2d Cir.2005)............................................................15

*New Hampshire Motor Transport Association v. Rowe*, 448 F.3d 66 (1st Cir.
    2006)..............................................................................................................................21

*O'Connell Management Company v. Massachusetts Port Authority*, 744 F. Supp.
    368 (D.Mass 1990) .......................................................................................................22

*O'Neill v. Town of Nantucket*, 711 F.2d 469 (1st Cir. 1983) ...........................................16

*Patrick v. Floyd Medical Center*, 201 F.3d 1313 (11th Cir. 2000)..................................11

*Pennhurst State School v. Halderman*, 465 U.S. 89 (1984) .............................................25

*Perkins v. Londonderry Basketball Club*, 196 F.3d 13 (1st Cir. 1999)............................13

*Powe v. Miles*, 407 F.2d 73 (2d Cir. 1968)....................................................................9, 10

*Preister v. Lowndes County*, 354 F.3d 414 (5th Cir. 2004)...............................................13

*Quinn v. Bryson*, 739 F.2d 8 (1st Cir. 1984)....................................................................16

*Reitman v. Mulkey*, 387 U.S. 369 (1967).........................................................................10

*Richardson v. Town of Eastover*, 922 F.2d 1152 (4th Cir. 1991).....................................16

*SeaAIR N.Y., Inc v. City of New York*, 250 F.3d 183 (2d Cir. 2001)................................20

*Wagner v. Metropolitan Nashville Airport Authority*, 772 F.2d 227 (6th Cir. 1985)......................................................................................................................................14

*Witty v. Delta Air Lines*, 366 F.3d 380 (5th Cir. 2004).....................................................21

*Wolin v. Port Authority*, 392 F.2d 83 (2d Cir. 1969).......................................................10

*Yanaki v. Iomed, Inc*, 415 F.3d 1204 (10th Cir. 2005).....................................................13

*Yonkers Racing Corp. v. City of Yonkers*, 858 F.2d 855 (2d Cir.1988).............................24

## STATE CASES

*Sightseeing Tours of America v. Air Pegasus Heliport, Inc.*, 835 N.Y.S.2d 561 (1st Dept. 2007)..........................................................................................................................4

## DOCKETED CASES

*New York Helicopter Charter Inc. v. Air Pegasus Heliport, Inc.*, Index No. 601327/06.........................................................................................................................................3

## FEDERAL STATUTES

42 U.S.C. § 1983........................................................................................................................6

28 U.S.C. § 1367(c)..................................................................................................................24

49 U.S.C. § 41713(b)). ...........................................................................................2, 5, 17, 22

All Writs Act, 28 U.S.C. § 1651(a)........................................................................................24

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NEW YORK HELICOPTER CHARTER, INC. and          :
MICHAEL ROTH individually

                                               :    07 Civ. 4069

                       Plaintiffs

                                               :

       -against-

                                               :

AIR PEGASUS HELIPORT, INC, HUDSON RIVER
PARK TRUST and the FEDERAL AVIATION            :
ADMINISTRATION

                                               :

                   Defendants

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW BY DEFENDANT AIR PEGASUS HELIPORT, INC IN SUPPORT OF MOTION TO DISMISS

Preliminary Statement

       Plaintiffs proudly proclaim, in the first paragraph of their complaint, that this case is "one

of first impression." (See Plaintiffs' Complaint, ["Pl.Cmpl."] par. 1, Exhibit A to Motion to

Dismiss).  We agree with this statement. It is a case "of first impression" since there is no

precedent to support it, and it has no legal basis under federal law. There are five separate

reasons why this compliant must be dismissed at the outset of this case.

       1.     The complaint broadly challenges certain actions (raising rates, giving discounts

to other companies) taken by a private heliport operator (Defendant Air Pegasus Heliport, Inc.

["APH"]) on various constitutional and statutory grounds. But all of the claims require a showing

that APH is a state actor. On the face of the complaint, no such finding can be made. As the

complaint alleges, APH is a private Delaware corporation which acts as the Fixed Base Operator

("FBO") of the 30th Street Heliport in Manhattan pursuant to a contract with the Hudson River

Park Trust, ("HRPT or the "Trust") a state public interest corporation, which gave it the authority

to run the facility. APH's decisions (as to rates and discounts) are its own and are in no way mandated by any state institution or agency. Thus no state action can be found, and no federal constitutional claim will lie. (See Point I below)

2.      Even if there were state action, the constitutional claims are without merit. Plaintiffs claim that their equal protection rights are violated because APH allegedly gave discounts to other helicopter operators. Since no protected group is involved and no fundamental rights are at issue, the action of any alleged state actor must be "irrational," an almost impossible standard to meet in the economic sphere and certainly not at issue here. Plaintiffs also argue that their procedural due process rights were violated because rates were increased for its use of the 30th Street heliport. Aside from the fact that APH is not a state actor, there is no constitutional requirement that a hearing be held when rates are increased.  Plaintiffs claim that their substantive due process rights were violated because rates were increased and such an increase was "outrageous." Since substantive due process violations occur only when governmental action "shocks the conscience," no such claim will lie here.(See Point II below)

3.      Plaintiffs also bring a claim against APH under the Airline Deregulation Act ("ADA", 49 U.S.C. § 41713(b)). That act can only be brought against a state actor -- which APH is not. (See Point III below)

4.      The ADA can preempt only a limited number of actions taken by state or local agencies that might interfere with the operations of interstate airline carriers, and none of the acts alleged in this complaint falls within the scope of that law. (See Point III below)

5.      Six of the causes of action are brought pursuant to the scope of New York CPLR Article 78, and federal courts will not hear such claims, (See Point IV below)

2

Finally, it should be noted in passing that plaintiffs cannot assert standing in this case. They admit that they have been "denied operating rights" at the Heliport before this complaint was filed (Pl.Cmpl. par.2, 15, 49) and no longer utilize that facility.[1] Nothing that happens at the Heliport can cause them any further injury, as required by the standing doctrine ("injury in fact"), nor can this Court give them any relief that will correct any of the alleged injuries suffered by them ("redressibility"). Instead, they seek to have the Heliport permit cancelled so that no one can operate any helicopters at that location. Such vindictive action is not the kind of relief that any federal court can grant them.[2] If the federal claims are dismissed, then all of the alleged state claims must fall as well since there is no complete diversity between the parties (both Plaintiffs and the HRPT are New York residents).

Statement of the Case

The complaint is 39 pages long containing 257 paragraphs and 11 causes of action to which are added six exhibits totaling 139 pages. The following facts found in the complaint and its exhibits, are undisputed, for purposes of this motion: In 1996, APH and the New York State Department of Transportation entered into an agreement (the Permit) allowing APH, a private Delaware corporation, to operate a fixed based heliport at West 30th Street in Manhattan (the "Heliport")(Cmpl. Pars. 55, 56, 87). The Permit (attached as Exhibit C to the complaint) provided that APH had the right of "use, occupancy and operation" of that facility for five years,

---

[1] The termination is the subject of a separate state court action, *New York Helicopter Charter Inc. v. Air Pegasus Heliport, Inc.*, Index No. 601327/06, Supreme Court New York County and is not directly involved in this suit, although Plaintiffs refer to the ouster in a number of instances. See Pl.Cmpl. par.2, 15, 49. To the extent that Plaintiffs seek relief in this case for the termination, such a claim would be precluded under the doctrine of "other action pending." See *e.g., Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800 (1976). The state case preceded the filing of this action and significant activity, including the holding of a preliminary injunction hearing, has already occurred in state court.

[2] See *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992) for discussion on the requirements of standing, including injury in fact, causation and redressibility.

which term could be extended on a month to month basis "unless cancelled by either party upon thirty (30) days notice." (Sections 1 and 2). APH had the right to set rates as it chose. Section 4 of the Permit provides that: "The operator [APH] shall have the right, from time to time, to amend any item of such Schedule of Charges, to make increases or decreases therein and to add or delete additional items thereto upon fifteen days prior notice to Public and the Department." (Section 4). It also provides that the Operator shall "charge fair, reasonable and non-discriminatory prices for each unit of sales or services provided that the operator may make reasonable and non-discriminatory discounts, rebates or other similar types of price reductions to volume purchasers." (Section 34(b)). The Permit also specifies that the Agreement "constitutes the entire agreement of the Parties . . .may not be changed, modified or extended except by written instrument duly executed by the Department and the Operator, and shall not confer upon any person or entity other than the parties hereto any rights or remedies hereunder." (Section 50). [3]

Plaintiffs operated at the 30th Street Heliport off and on since 2004. They were recently terminated for failure to comply with a settlement agreement following another dispute between the parties. See discussion above at p. 3, n. 1.

The federal claims against APH consist of allegations that APH violated federal law by increasing rates and awarding other helicopter companies certain discounts which Plaintiffs did not obtain. The complaint also describes a series of actions (or non-actions) taken by the HRPT

---

[3] The Appellate Division First Department has recently issued a decision (in a case brought against APH by another helicopter company) holding that the Permit grants no rights to third parties to assert rights under the Permit. See *Sightseeing Tours of America v. Air Pegasus Heliport, Inc.*, 835 N.Y.S.2d 561, 562-63 (1st Dept. 2007): "Nor does it avail petitioners that the Trust might possess a right under the permit governing its relationship with APH to veto fees that are not 'fair, reasonable and nondiscriminatory,' *where the permit expressly prohibits a nonparty from asserting any right or remedy thereunder.*" (emphasis added)

that they claim violate state law. Under their analysis, HRPT acted improperly in (1) extending the permit under which APH operates the Heliport on a month-by month basis (par. 5, 111-112 (2) allowing any operations at the 30th Street Heliport since the enabling act prohibits any such activity (pars. 28, 47, 113, 234-257); (3) settling a law suit with APH on favorable terms to APH (pars. 22-23, 113-141); (4) settling the law suit without the approval of the Trust Board (pars. 226-233). As noted in Point IV below, all of these claims against HRPT are in the nature of Article 78 proceedings which cannot be brought in federal court.

The complaint asserts five causes of action against APH, three of them under the Constitution and two under the Airline Deregulation Act, 49 U.S.C. §41713(b)(1). Plaintiffs claim that APH is a state actor subject to the Equal Protection Clause (Pl.Cmpl., par. 144) They assert that provided APH provided "certain customers of the Heliport with significant discounts and price reductions" which violated Equal Protection. (*Id.* par. 145-148). In the Second Cause of Action, Plaintiffs claim they claim that the increase in rates -- a $10 passenger fee imposed in May, 2006 -- violated the due process clause since there was no hearing before the rates were imposed. (*Id.* pars, 150-163). The Third Cause of Action is under substantive due process on the ground that the increase in rates for all operators at the heliport was "outrageous"!

Plaintiffs bring two claims (Fourth and Fifth Causes of Action) under the Airline Deregulation Act, ("ADA") claiming (once again) that APH is a state actor, and its actions in increasing rates are preempted by the statute (which does not apply to private entities). Since the purpose of the law was to allow private entities (such as APH) to set rates without governmental interference, it is difficult to see how the law applies to this situation in any respect.

All of the above claims require a showing that APH, a private company operating under a contract (permit) with the Hudson River Park Trust (the successor in interest to the New York

State Department of Transportation) is a "state actor," subject to the requirements of Constitution and amenable to a suit under 42 U.S.C. § 1983 and subject to the ADA.

The other six claims are state law claims, alleging that HRPT violated the requirements of the Hudson River Park Act by not arranging for competitive bids for the Heliport after March 25, 2006, (Sixth Cause of Action) and by not obtaining approval of the HRPT's board when it extended the month-to-month tenancy of APH (Seventh Cause of Action). The Eighth Cause of Action alleges that HRPT acted "arbitrarily and capriciously" in permitting APH to continue operations.[4]   The main thrust of the complaint is the claim that the 30th Street Heliport is being illegally maintained because the enabling legislation that created the Hudson River Park Trust -- the landlord of the Heliport -- does not allow any heliport to continue to operate after March 25, 2006. Pl.Cmpl. par 28: "Accordingly, no heliport of any kind, can operate in the present location of the West 30th Street Heliport." See also 10th Cause of Action (par. 234-243) and 11th Cause of Action (pars. 244-257), both demanding that the Heliport be shut down for a variety of state law reasons. This claim is based upon a detailed (and erroneous) interpretation of the enabling legislation that created the Park. How and why plaintiffs can now show actual injury as a result of the allegedly illegal use of the Heliport -- in which they participated over the past years for their own profit -- is nowhere explained in the Complaint. Nor can they explain what federal rights of theirs were violated by this continuation. Thus they lack the ability to bring this action in federal court. If state law is being violated by continuation of the Heliport, it is up to the state courts to make such a determination, based on the state courts' analysis of state legislation, not that of a federal court. "Resolution of Plaintiffs' state law claims depends on determinations of

---

[4]  The "arbitrary and capricious" standard is one found under New York CPLR Article 78, a provision that federal courts rarely if ever enforce. See Point IV below.

state law.   State courts not federal courts, should be the final arbiters of state law," *Baggett v.*

*First National Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997).

## ARGUMENT

### POINT I

### THE FEDERAL CONSTITUTIONAL CLAIMS MUST BE DISMISSED SINCE APH IS NOT A STATE ACTOR

A.    APH is Not a State Actor

The facts alleged in Plaintiffs' complaint show that APH cannot be considered a state

actor subject to constitutional restraints. Thus the first three causes of action must be dismissed.

The complaint alleges that "Defendant Air Pegasus Heliport, Inc. . . .incorporated in

May, 1996, is a Delaware corporation with its principal place of business in New Jersey."

(Pl.Cmpl. par. 55). The complaint also alleges that APH is a "the sole and exclusive fixed base

operator pursuant to a March 25, 1996 agreement . . .with the New York Department of

Transportation . . .which the HRPT later assumed." *Id.* par. 56. The complaint also alleges that

APH, acting on its own, imposed a new unjustified fee on Plaintiffs. *Id,* par 151-152; 166).

Plaintiffs also allege that APH discriminated against Plaintiffs in rates it charged to other users of

the facility. (*Id.* par. 145)

Thus the key legal issue is whether APH can be considered a state actor because it holds

a permit from the Trust -- a governmental body -- to operate the Heliport and then made

decisions on its own about pricing and discounts.

Plaintiffs are absolutely wrong in claiming that a party to a contract with a government

entity or the recipient of a permit from government is a state actor subject to the Constitution in

whatever actions it takes. If APH fired one of its employees without a hearing, would that

employee be able to claim a due process violation? If one of the concessionaires of HRPT at the

Chelsea Piers raised prices on souvenirs or food, could a customer claim that the increase was

unconstitutional because no hearing was held? Merely to present the argument is to refute it.

The fact remains that a person who obtains a permit from government and then operates

its business totally on its own is not a state actor unless the particular act it is complaining about

(raising rates) is itself a governmental function that can fairly be attributed to the state. In its

latest comprehensive state action decision, the Supreme Court framed the issue as follows:

> If the Fourteenth Amendment is not to be displaced, therefore, its ambit cannot be a
> simple line between States and people operating outside formally governmental
> organizations, and the deed of an ostensibly private organization or individual is to be
> treated sometimes as if a State had caused it to be performed. Thus, we say that state
> action may be found if, though only if, there is such a "close nexus between the State and
> the challenged action" that seemingly private behavior "may be fairly treated as that of
> the State itself." *Jackson [v. Metropolitan Edison Co.,],* 419 U. S. 345, 351 (1974).
>
> . . . . . . The key inquiry is whether there is a sufficient "entwinement" between a private
> party and the state.

*Brentwood Academy v. Tennessee Secondary School Athletic Ass'n,* 538 U.S. 288, 295-96
(2001).

See also *Blum v. Yaretsky,* 457 U.S. 991, 1004-05 (1982), where the Court said there is

state action if one of the following conditions are met:

> [1] There is a sufficiently close nexus between the State and the challenged action of
> the regulated entity so that the action of the latter may be fairly treated as that of the State
> itself....[2] [The State] has exercised coercive power or has provided such significant
> encouragement, either overt or covert, that the choice must in law be deemed to be that of
> the State...[3] The private entity has exercised powers that are "traditionally the exclusive
> prerogative of the State."

In this case there is no close "entwinement" between APH's decision to raise rates and

any action by the Trust. Indeed the HRPT has denied any power over APH's decision to raise

rates, and the Permit specifically allows APH to change its rates as it chooses. (Section 4). In

addition, as noted above, the Permit between APH and the Trust specifically denies that the

agreement "confer[s] any person or entity other than the parties hereto any rights or remedies

8

hereunder" Exhibit D to Complaint at Section 50. Thus no rights are conferred by the Permit on any third party.

Nor has the government engaged in any coercive action toward APH requiring it to raise rates so the "coercive power" criterion is not met. Indeed, the entire thrust of the complaint is that the Trust should have taken certain action, but did not. Nor, as shown below, is raising rates at a heliport be considered "traditionally the exclusive prerogative of the State."

The remaining issue is whether there is a "close nexus" between the state and the "challenged action" of the entity involved, namely raising rates.

In an earlier proceeding in state court against APH, Plaintiffs' counsel (representing another helicopter company) relied upon the Supreme Court case of *Burton v. Wilmington Parking Auth.*, 365 U.S. 715 (1961) to support the claim that APH is a state actor. The Court held in that case that a private lessee who rented space for a restaurant in a public building from the state parking authority was a state actor *in refusing service in a racially discriminatory manner.* [5]

Numerous cases have emphasized the limits to the *Burton* doctrine: it was only because the restaurant engaged in *racial discrimination* that state action was found. If the restaurant raised its prices on hamburgers after its lease required it to sell food at reasonable prices -- our situation -- no one would claim that state action was present. The Second Circuit explained the situation in two cases.

---

[5]    In view of the fact that Supreme Court did not mention *Burton* in its recent *Brentwood* decision, some courts have questioned whether that case is still good law, see *Crissman v. Dover Downs Entertainment, Inc.*, 289 F.3d 231 (3d Cir. 2002)(en banc)(where state regulated race track, licensed its operation, authorized track to run video lottery terminals, paid track a commission and received funds from on its operations, but was not conducting any governmental operations at race track, no state action; thus track's exclusion of trainers of harness racing horses not attributed to state). The *Burton* case had been subject to considerable criticism even before the *Brentwood* decision. See Judge Friendly's comments in *Powe v. Miles*, 407 F.2d 73, 74 (2d Cir. 1968).

In *Lefcourt v. Legal Aid Society*, 445 F.2d 1150, 1155 (2d Cir. 1971), the Court held that the Legal Aid Society was not a state actor despite being funded and regulated by the city or state. In response to the claim that state action should be found under *Burton*, the court stated:

> Thus, it was suggested in *Powe* [*v. Miles,* 407 F.2d 73 (2d Cir. 1968] that *there would be no State action involved in hiring and firing by the restaurant* in *Burton v. Wilmington Parking Authority,* 365 U.S. 715,(1961) even though the Court there found that there was State action where the State landlord did not prohibit the restaurant from excluding blacks therefrom. Accord, *Wolin v. Port Authority,* 392 F.2d 83, 89 (2d Cir. 1969)(Discrimination by Port Authority involves State action but 'where the issue involves the exercise of First Amendment rights * * * the inquiry must go further. * * *')
>
> The reason for this is that *in the area of racial discrimination, State inaction or neutrality has often been found to constitute affirmative encouragement. See Cooper v. Aaron*, 358 U.S. 1 (1958); *Reitman v. Mulkey*, 387 U.S. 369 (1967) (emphasis added).

In *Powe v. Miles*, 407 F.2d 73 (2d Cir. 1968), the Second Circuit rejected the claim that a private university (Albert University) was a state actor in disciplining students who had demonstrated against the ROTC program in the school. The University operated the New York State College of Ceramics under contract with the state, paid its expenses, received other state funds and was regulated by the state. Nevertheless there was no state action in *disciplining students* since that was not the state's concern. The state would have been concerned if the state had "ban[ned] a subject from the curriculum [such as teaching a foreign language] " or if it had banned all demonstrations at private schools, 407 F.2d at 81. ". . . the state must be involved not simply with some activity of the institution alleged to have inflicted injury upon a plaintiff but with the activity that caused the injury." *Id.*

The issue in every case is what action of the private entity is causing the injury about which a plaintiff is complaining. If the action is something that the government is concerned about (like racial discrimination in a restaurant) and that partakes of a governmental function (like regulating what schools may teach or determining the routes of air carriers), a lessee or

10

regulated entity may be considered a state actor. But if the action is something that the

government does not care about because it is not a state function (such as firing an employee or

raising rates) then no state action can be found. *See e.g. Patrick v. Floyd Medical Center*, 201

F.3d 1313, 1316 (11th Cir. 2000)(although government entity maintained close financial

controls over private hospital, decision to deny doctor staff privileges was wholly that of private

hospital; no state action; "the symbiotic relationship between the public and private entities must

involve the alleged constitutional violation").

In a series of cases involving concessionaires and lessees -- some involving airports --

courts have again and again found no state action in decisions made by persons leasing space

from government entities. See *Gannett v. Satellite Information Network*, 894 F.2d 61, 67 (3d Cir.

1990)

> In this case, there is no question that the concessionaires leasing space at Newark Airport
> are private entities pursuing private ends. The Airport's newsstands, moreover, are free to
> make decisions regarding the newspapers and periodicals they wish to distribute without
> interference from the government, since the Port Authority's Rules and Regulations do
> not encompass this aspect of the concessionaires' conduct. Absent any explicit
> governmental involvement in the distribution decisions of these private newsstands, the
> actions taken by the concessionaires in this case may not fairly be attributed to the Port
> Authority.   The record fails to indicate any tacit governmental involvement in the
> concessionaires' actions with respect to the distribution of newspapers.     These
> concessionaires, moreover, do not perform the sort of "public function" that, under
> certain circumstances, may be enough to transform the behavior of private entities into
> that of the government.

The Court went on to explain:

> The fact that the concessionaires lease their premises from a governmental entity also
> falls short of triggering state action.   It is true, of course, that the Port Authority's act of
> signing a lease is, per se, governmental.   However, it is well established that a licensing
> relationship is insufficient in itself to give rise to wholesale governmental responsibility
> for the actions taken by a private licensee or tenant. *See Moose Lodge No. 107 v. Irvis,*
> 407 U.S. 163 (1972) (holding that the granting of a liquor license, in itself, is insufficient
> to make the licensee a state actor).  In such circumstances, state action will be recognized
> only when there is a "symbiotic" relationship between the private and governmental

entities, such that the public might reasonably conclude from that relationship that the government has lent its support to the private entity's actions.

Here also there is no "explicit governmental involvement in the" decision to raise rates, as shown in the permit requirements noted above, and no "tacit governmental involvement in the concessionaires' actions with respect to" rates. Thus there is no state action.

In *Center v. Bio-Ethical reform v. Comcast-Spectacor, Inc.*, 1999 WL 601014 *2 (E.D. Pa. 1999), the court held that an entity that leased space from the City of Philadelphia and refused to allow demonstrations in that space was not a state actor. "Without more, the existence of a lease agreement between a private entity and a municipality does not render the actions of the private entity 'so entwined with governmental policies or so impregnated with a governmental character as to become subject to the constitutional limitations placed upon state action.'" citing *Evans v. Newton*, 382 U.S. 296, 299 (1966).

In a case very much on point to this one, *Adams v. Vandemark*, 855 F.2d 312, 316-17 (6th Cir. 1988), the Sixth Circuit held that a private corporation did not act under color of state law when it discharged two employees in retaliation for exercising their First Amendment rights, notwithstanding fact that the corporation leased, at nominal rate, office space from the city. See also *National Broadcasting Co. v. Communications Workers of America*, 860 F.2d 1022, 1028 (11th Cir. 1988)(rejecting NBC's argument that the defendant engaged in state action when it prohibited NBC from attending a convention in a civic center that the defendant had leased from the city).

See also *American Manufacturers Mutual Insurance Co. v. Sullivan*, 119 S.Ct. 977 (1999)(when state law authorizes action by private insurers but does not compel it, no state action since no compulsion by state to private party to take action); *Hudgens v. NLRB*, 424 U.S. 507 (1976)(when private shopping center refused to allow demonstrators on its property, no state

12

action since no compulsion or close supervision by state); *Yanaki v. Iomed, Inc*, 415 F.3d 1204 (10th Cir. 2005)(misuse of state law by private individual to gain access to home did not involve state action); *Preister v. Lowndes County*, 354 F.3d 414 (5th Cir. 2004)(action cannot be fairly attributed to the state when student attacked another football player allegedly because coach had used racially derogatory term); *Johnson v. Rodriguez*, 293 F.3d 1196 (10th Cir. 2002)(adoption center arranging for private adoptions was not state actor); *Hack v. President and Fellows of Yale College*, 237 F.3d 81 (2d Cir. 2000)(Yale College is not state actor despite the fact that Yale was created by special legislation, its status is confirmed in state constitution, it submits its budget and financial report to legislature and two government officials are members of the Yale board); *Lansing v. City of Memphis*, 202 F.3d 821 (6th Cir. 2000)(fact that city closed streets to allow public festival and private entity running festival excluded plaintiff from festival did not show "close nexus" making private entity a state actor; no governmental compulsion or public function either); *DeBauche v. Trani*, 191 F.3d 499 (4th Cir. 1999)(fact that public university and private party organized political debate at which third-party candidate was excluded does not show sufficiently "close nexus" to find state action status); *Perkins v. Londonderry Basketball Club*, 196 F.3d 13 (1st Cir. 1999)(local tax-free organization that arranged for basketball tournaments at school gyms under scheduling control of town was not state actor); *Messman v. Helmke*, 133 F.3d 1042 (7th Cir. 1998)(union representing firefighters not state actor in negotiating collective bargaining agreement that restricted members rights); *Collyer v. Darling*, 98 F.3d 211 (6th Cir. 1996)(doctor who examined state employees to determine fitness for duty were not state actors); *Landry v. A-Able Bonding, Inc.*, 75 F.3d 200 (5th Cir. 1996)(bail bondsman making arrest of fleeing defendant to exonerate bail not state actor since no involvement by law enforcement officers); *Logan v. Bennington College Corp.*, 72 F.3d 1017

13

(2d Cir. 1995) (private college not state actor because it entered into private conciliation agreement with state agency to follow certain policies with respect to charges of sexual harassment, which policies were invoked in decision to fire professor); *Hodges v. Yonkers Racing Form,* 918 F.2d 1079 (2d Cir. 1991)(Yonkers Racing Corporation licensed by state to conduct parimutuel wagering not state actor when it denied candidate's application to work at racetrack).

To the extent that Plaintiffs argue that operating a heliport is "traditionally an exclusive function of the state," they are wrong. (Compl. pars 98-100). The issue is not whether the operator of a heliport is a state actor, but what action of the operator is being challenged, as noted above. If the action at issue is the rate that is being charged for operators, such action is not the concern of the state, as shown in the Permit between APH and HRPT. In any event, all aspects of airport operations are not "the exclusive function of the state." See *Wagner v. Metropolitan Nashville Airport Authority,* 772 F.2d 227 (6th Cir. 1985)(airport security personnel not state actors if not federal employees and if not specifically required to take certain actions by federal regulations).

B.   Petitioners Have Not Been Deprived of any Property Rights

Petitioners cannot assert any property rights that they have been deprived of. They argue that their business is constitutionally protected "property" which they cannot be deprived of. (Com[pl. par. 157). But they cite no state law or regulation that gives them any entitlement to any particular rate or protects them against any alleged discrimination. Indeed, the only state provision that is referred (the Permit) denies them and any other third party any right to complain about any action taken under the Permit. The Second Circuit explained in *Natale v. Town of Ridgefield,* 170 F.3d 258, 263, n.1 (2d Cir.1999)

14

> Thus, in order to establish a federally protectable property interest in a state or local permit for which a plaintiff has applied, the plaintiff must show that, at the time the permit was denied, there was no uncertainty regarding his entitlement to it under applicable state or local law, and the issuing authority had no discretion to withhold it in his particular case.

The Second Circuit pointed out that a person has a "property interest" in an entitlement from a state actor only when the state actor "has virtually no discretion to deny the" request. *Clubside, Inc. v. Valentin*, 468 F.3d 144, 154 (2d Cir. 2006). Where there is no state actor (as in this case) and no entitlement of any kind to any rate based on any state law or regulation, there cannot be any deprivation of any property right. .

## POINT II

## NO CONTITUTIONAL CLAIM IS PROPERLY ALLEGED
## IN THE COMPLAINT

None of the constitutional rights asserted in the Complaint have any validity. Plaintiffs claim that their Equal Protection rights were violated because APH has provided other customers at the Heliport with "significant discounts and price reductions." (Pl.Cmpl. par. 145). To succeed in an Equal Protection claim, a party must show (1) that the deprivation was caused by a state actor (which cannot be shown here) and (2) that the "plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose -- whether personal or otherwise -- is all but certain." *See Neilson v. D'Angelis,* 409 F.3d 100, 104 (2d Cir.2005). Plaintiffs do not come close to any such allegation in their complaint. [6]

Plaintiffs also claim that their procedural due process rights were violated because no hearing was afforded them when new charges were imposed. Once again, no procedural due process rights can be asserted against a non-state actor. In addition, changes in rates do not

---

[6] It must be noted that volume discounts are permitted under the Permit, which does not grant Plaintiffs any rights in any event. See Section 34(b) quoted above on p. 4.

require a hearing even if a state actor is involved. The Ninth Circuit explained in *Lake Mohave Boat Owners Assoc. v. National Park Service*, 78 F.3d 1360, 1369 (9th Cir. 1996):

> However, to maintain a due process claim, LMBOA must show that existing rules and regulations give its members a legitimate claim of entitlement to low marina rents. . . . We hold that general statutory language indicating a governmental purpose to provide parks for the public does not meet this requirement. We also hold that the requirement in § 20b that rates be "reasonable" does not give LMBOA a statutory entitlement to low marina rates.

Where the only governmental action is a permit which specifically denies any third party any rights and allows rates to be increased, it is impossible to conclude that any procedural due process rights exit in this situation Almost all administrative decision relating to permits and rates do not require due process hearings. See *Richardson v. Town of Eastover*, 922 F.2d 1152 (4th Cir. 1991)(determination that night club license should not be renewed since city wanted to clean up main street is legislative determination and therefore trial-type hearing unnecessary); *Quinn v. Bryson*, 739 F.2d 8 (1st Cir. 1984)(denial of building permit: no hearing necessary under due process clause); *O'Neill v. Town of Nantucket*, 711 F.2d 469 (1st Cir. 1983)(deny license for amusement center for policy reasons, no trial-type hearing required); *Charry v. Hall*, 709 F.2d 129 (2d Cir. 1983) (administrative review to determine whether training and educational background equivalent to statutory minimum requirements for psychologist test: no trial-type hearing required); *Buttery v. United States*, 690 F.2d 1170 (5th Cir. 1982) (denying dredging permit for navigable stream by U.S. Corp. of Engineers: no trial type hearing necessary). See also *Board of Curators University of Missouri v. Horowitz*, 435 U.S. 78 (1978) (determination on academic deficiencies does not have to be based on full fact-finding hearing).

The third constitutional claim made by Plaintiffs is that their substantive due process rights were violated because the increase n rates was "outrageous." (Pl.Cmpl. par. 166). To state a substantive due process claim, a party must point to wholly arbitrary governmental conduct

(not present here) that was "an exercise of power without any reasonable justification" that "shocks the conscience." *County of Sacremento v. Lewis*, 523 U.S. 833, 846-47 (1998). Such conduct must be "arbitrary, conscience-shocking or oppressive in a constitutional sense," *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995). Nothing alleged in the complaint comes close to that standard.

## POINT III

## NO CLAIM CAN LIE UNDER THE AIRLINE DEREGUALTION ACT

The Airline Deregulation Act (49 U.S.C. § 41713(b)(1)) broadly removed rate-setting authority by the Civil Aeronautics Board in order to allow air transportation services to be subject to "competitive market forces. " See *Morales v. Trans Word Airlines*, 504 U.S. 374, 378 (1992). One clause of the law (49 U.S.C § 41713(b)(1) was inserted "to ensure that the States would not undue federal deregulation with regulation of their own." *Id* Congress achieved this goal by adding the following language; "A *State, political subdivision of a State or political authority of at least two states* .may not enact or enforce a law, regulation or other provision having the force and effect of law, related to the price, route or service of an air carrier." (emphasis added)  On the face of the statute, that law has no application here.

First, APH is not a state actor and therefore is not subject to any of the ADA's provisions. (See discussion in Point I above)

Second, there is no "law, regulation or other provision having the force of law" at issue here. The HRPT and APH have a permit (a contract to operate) that applies only to the parties to the agreement, as noted above.

Third, the purpose of the ADA is to insure that private airlines have the ability to set their own rates, charges, routes and services without interference by local government. What is at

issue here is the decision by a private entity (APH) to set rates as it chooses without interference by government – exactly the purpose of the law. The Permit follows that direction precisely by allowing APH to set its own rates. Plaintiffs are turning the statute on its head by claiming that federal courts have the ability to investigate the terms of a contract between a private and public corporation and determine its proper meaning and scope, at the behest of a third party who has no rights under the contract. Under these circumstances, no private cause of action will lie.

A.    The Private Contract between APH and HRPT Does Not Qualify as a
      Regulation or Other Provision Having the Force of Law.

The contract at issue here (which Plaintiffs seek to "preempt") was entered into between two parties and applies to no one else, as the Appellate Division recently held (see p.4, fn 2 above). The ADA simply does not apply under those circumstances. Plaintiffs completely misread the law when they claim that "the Airline Deregulation Act preempts any *state action* which relates to the 'price, route, or service of an air carrier.'" (Pl.Cmpl. par. 171)(emphasis added). The only state action preempted is a "a law, regulation or other provision having the force and effect of law," not any individual action taken by a private company which entered into a contract with a public interest corporation.

The Supreme Court noted in quite broad language in *American Airlines v. Wolens*, 513 U.S. 219, 229 n. 5 (1995) that contracts are not within the preemptive language of the law:

> the word series " law, rule, regulation, standard, or other provision," as the United States suggests, " connotes official, government-imposed policies, not the terms of a private contract." [Brief of the United States as Amicus Curiae] at 16. Similarly, the phrase " having the force and effect of law" is most naturally read to " refe[r] to binding standards of conduct that operate irrespective of any private agreement." *Ibid.* Finally, the ban on enacting or enforcing any law " relating to rates, routes, or services" is most sensibly read, in light of the ADA's overarching deregulatory purpose, to mean " States may not seek to impose their own public policies or theories of competition or regulation on the operations of an air carrier." *Ibid.*

The Court explained: "A remedy confined to a contract's terms simply holds parties to their

agreements -- in this instance, to business judgments an airline made public about its rates and services." 513 U.S. at 229. Citing similar language in another statute, the Court noted: " [A] common-law remedy for a contractual commitment voluntarily undertaken should not be regarded as a ' requirement ... *imposed under State law*' within the meaning of [Federal Cigarette Labeling and Advertising Act] § 5(b)." ), citing *Cipollone v. Liggett Group, Inc.,* (plurality opinion) (1992). The Court continued in the same vein: "The FAA's text, we note, presupposes the vitality of contracts governing transportation by air carriers. Section 411(b), 49 U.S.C.App. § 1381(b)." *Id* at 230. Finally it held: "Nor is it plausible that Congress meant to channel into federal courts the business of resolving, pursuant to judicially fashioned federal common law, the range of contract claims relating to airline rates, routes, or services. The ADA contains no hint of such a role for the federal courts." *(id* at 231).

Although the contract claim at issue in *Wolens* involved a contract between an airline and its passengers, the language in the Court's opinion encompasses any contract between two parties, including a state entity, that affects only their rights. A "regulation or other provision having the force and effect of law" affects everyone's rights that come within the scope of its provisions. A contract is binding only on the parties, and indeed, no person can claim rights under the contract involved in this case, as the First Department just held. Thus enforcement and application of the "contract" involved here is simply not preempted by the ADA.

All of the cases cited by the Plaintiffs in their complaint focus on laws, rules, regulations of general applicability, not individual contracts. Thus *National Helicopter Corp. of America v. City of New York,* 137 F.3d 81 (2d Cir. 1998) involved regulations passed by the New York City Council on any operator of the East 34th Street Heliport. The regulation was incorporated into a special permit governing use of the heliport. Thus what was involved was a law passed by a

19

legislative body covering the operation of the entire facility. The Second Circuit held that the weekend and weekday curfews imposed by the City to curb noise levels and the reduction of total flights were reasonable proprietary measures taken by the City pursuant to its law. If HRPT had imposed restrictive measures on APH's permit pursuant to the requirements of a state law and APH had brought suit to strike down those restrictions, the *National Helicopter* case would be relevant. But it has no application here to a single contract freely entered into by both parties with no law of any kind that required a particular restriction on APH's activities.

Plaintiffs also cite *City and County of San Francisco v. Federal Aviation Authority*, 942 F.2d 1391 (9th Cir. 1991). That case did not involve the ADA in any manner. *Alaska Airlines, Inc. v. City of Long Beach*, 951 F.2d 977 (9th Cir. 1991) also involved an *ordinance* passed by the City of Long Beach restricting noise levels at the local airports, not an individual contract. The noise level requirements were upheld but the restriction on certain flights was struck down pursuant to the terms of the ADA  Finally in *SeaAIR N.Y., Inc v. City of New York*, 250 F.3d 183 (2d Cir. 2001), the City had passed a *regulatory code* restricting seaplanes that utilized the city owned facility at the East 23d Street seaplane base from conducting sightseeing tours. The Second Circuit found (1) that the operations of the Plaintiff did not fall within the protection of the ADA (since it was not an interstate carrier); and (2) that in any event the restriction imposed by the city was a reasonable exercise of its proprietary functions. Thus in both of these cases a *law* was passed that restricted airline *operations*, not a freely negotiated contract.

Defendant cannot find a single case where a *contract* with a state entity was found to fall within the scope of the ADA's preemption language as a "law, regulation, or other provision having the force and effect of a law." See *American Airlines Inc. v. Department of Transportation*, 202 F.3d 788 (5th Cir. 2000)(attack on Dallas and Ft. Worth *ordinance*

20

restricting operations at Love Field); *Hoagland v. Town of Clear Lake, Indiana*, 415 F.3d 693, 698 (7th Cir. 2005)(challenge to town *ordinance* that placed heliport within restrictive zoning provisions; court noted that preemption doctrine in law generally "involve[s]  issues which reach beyond a single local jurisdiction"); *New Hampshire Motor Transport Association v. Rowe*,  448 F.3d 66 (1st Cir. 2006)(challenge to *Maine Tobacco Delivery Law* because requirements of minimizing access to tobacco by minors would effect delivery of other parcels by airlines).  See also *Witty v. Delta Air Lines*,  366 F.3d 380, 383 (5th Cir. 2004)(permitting passengers to bring law suit on inadequate leg room would effect prices on airlines generally and is thus preempted by ADA: "Insofar as plaintiff Witty in the pending case alleges that Delta should have provided more leg room, we hold that such a requirement would inexorably relate to prices charged by airlines . . . Since requiring more leg room would necessarily reduce the number of seats on the aircraft, such a requirement would impose a standard "relating to a price" under § 41713(b)(1), and is accordingly preempted by the ADA. Section 41713(b)(1) not only preempts the direct regulation of prices by states, but also preempts indirect regulation "relating to" prices that have "the forbidden significant effect" on such prices.

B.     No Private Cause of Action Will Lie Under the Circumstances of This Case

As noted above, the purpose of the ADA was to remove regulation of rates from government hands.  The setting of airline rates by the FAA was overturned. But Congress was concerned that state regulators would step in and impose their own rules in the place of the discarded federal rules. While states and local governmental bodies could impose their own proprietary regulations (over the location of airports, the tenants that they would allow to use airports, noise levels and the like), they could not establish rules having general application that would that would effect "rates, routes and services" of airlines generally generally. Thus the

preemption language in the statute cannot be the basis for any suit by a single entity whose individual rights are at stake.

The Second Circuit explained in *Montauk-Caribbean Airways, Inc. v. Hope*, 784 F.2d 91 (2d Cir. 1986). In that case the plaintiff was refused permission to operate on a year-round basis at the East Hampton airport. It brought an action under the antitrust laws, the ADA and Section 1983. The court dismissed the action on motion on the grounds that the antitrust laws did not apply when such suits are brought against municipalities. It also dismissed the ADA preemption claim:

> Section 1305 (a) [of Title 49 U.S.C. App., the predecessor to 49 U.S.C. §41713(b)(1)] of the Federal Aviations Act is a preemption statute which establishes the federal government's sphere of power over the states in areas of interstate air transportation. There is nothing to suggest that Congress intended to create an implied private right of action under that statute. *Id.* at 97. [7]

Thus no cause of action affecting the rights of a single entity can be brought under the statute.


## POINT IV

## ALL OF THE STATE CAUSES OF ACTION MUST BE DISMISSED SINCE FEDERAL COURTS WILL NOT EXAMINE CLAIMS BROUGHT UNDER CPLR ARTICLE 78

All of the claims against HRPT (with or without APH as a necessary party) must be dismissed. First, if the federal claims fall, then all the ancillary state law claims must also fall. See *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir.2004) ( " '[I]f [all] federal claims are dismissed before trial ..., the state claims should be dismissed as well.'"

---

[7] In the *Wolens* case, the Supreme Court explained that the interpretation of the preemption wording in Section 41713(b)(1) was identical to that of Section 1305(a). "Congress intended the revision to make no substantive change" 513 U.S. at 223, fn. 1. Other courts have come to similar conclusions that no private right of action exists under the ADA. See *Air transportation Assoc. of America v. Public Utilities Comm'n*, 833 F.2dd 200, 207 (9th Cir. 1987); *Lawal v. British Airways*, 812 F.Supp. 713 , 720 (S.D. Tex. 1992); *O'Connell Management Company v. Massachusetts Port Authority*, 744 F.Supp. 368, 372 (D.Mass 1990)

Second, all of the state law claims are in the nature of Article 78 proceedings. Thus the Sixth Cause of Action seeks a declaration that HRPT was required to initiate a competitive process to find a new fixed base operator (FBO), that is, it acted improperly in continuing to allow APH to operate the Heliport after March 25, 2006. The Seventh Cause of Action asserts that HRPT was required to obtain board approval for each extension, again an attack upon the operations of a state agency that falls within the scope of Article 78. The Eighth Cause of Action asserts that HRPT acted "arbitrarily and capriciously" in settling a law suit against APH, precisely the language of Article 78. The Ninth Cause of Action states that HRPT needed board approval before settling its claims with APH, again an attack on the legality of a state agency's action, falling within the scope of Article 78. And the Tenth and Eleventh Causes of Action seeks a federal court order closing the Heliport because of the violation of the Hudson Rive Park Act, a state law. [8]

All of these claims track the language of an Article 78 proceeding which prohibits "arbitrary and capricious" actions by any state agency.

But it is fundamental that federal courts (except in very limited circumstances not present here) will not hear an Article 78 proceeding even if supplemental jurisdiction were properly asserted (which does not exist here).   Judge Cote explained the rationale in a recent decision.

> Even assuming that a federal district court could properly exercise supplemental jurisdiction over an Article 78 claim, the court has "discretion under 28 U.S.C. § 1367(c) to determine whether to hear th[ose] claims." *Briarpatch Ltd., L.P. v. Phoenix Pictures,*

---

[8] CPLR § 7803 provides that the following actions taken by a public body may be the subject of a suit in state court: "1. whether the body or officer failed to perform a duty enjoined upon it by law; or 2. whether the body or officer proceeded, is proceeding or is about to proceed without or in excess of jurisdiction; or 3. whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed;" All of these actions fall within the scope of the claims made against HRPT  n the complaint.

23

*Inc.,* 373 F.3d 296, 309 (2d Cir.2004). Section 1367 provides that a court "may decline to exercise supplemental jurisdiction" if there are "compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c), (c)(4).

The very nature of an Article 78 proceeding presents such compelling reasons. "An Article 78 proceeding is a novel and special creation of state law, and differs markedly from the typical civil action brought in [federal district court] in a number of ways." *Lucchese v. Carboni,* 22 F.Supp.2d 256, 258 (S.D.N.Y.1998). It is a "purely state procedural remedy," *Camacho v. Brandon,* 56 F.Supp.2d 370, 380 (S.D.N.Y.1999), "designed to accommodate to the state court system." *Herrmann v. Brooklyn Law Sch.,* 432 F.Supp. 236, 240 (E.D.N.Y.1976). Because accepting supplemental jurisdiction over such claims requires a federal court to "usurp the statutory authority bestowed upon the New York state courts," *Adler v. Pataki,* 204 F.Supp.2d 384, 396 (N.D.N.Y.2002) (citation omitted), "federal courts are loath to exercise jurisdiction over Article 78 claims." *Birmingham v. Ogden,* 70 F.Supp.2d 353, 372 (S.D.N.Y.1999).

*Morningside Supermarket Corp. v. New York State Department of Health*, 432 F.Supp.2d 334, 346 (S.D.N.Y. 2006)

The Court found only two cases where a federal court did exercise such jurisdiction Only two cases were located by the Court in which a federal court exercised jurisdiction over an Article 78 claim. In one, the Second Circuit affirmed the district court's exercise of jurisdiction pursuant to the All Writs Act, 28 U.S.C. § 1651(a), as "necessary to protect the integrity" of a consent decree previously entered by the district court. *Yonkers Racing Corp. v. City of Yonkers,* 858 F.2d 855, 865 (2d Cir.1988). In the other, a district court distinguished (but did not question) its own previous ruling that it "did not have the power to exercise jurisdiction over the Article 78 claim" after defendants consented to jurisdiction. *Cartagena [v. City of New York],* 345 F.Supp.2d [414] at 426 [S.D.N.Y. 2004. Both courts acknowledged that the cases presented exceptional circumstances. *See Yonkers,* 858 F.2d at 864 ("[W]e agree with the district court that this is indeed an exceptional case."); *Cartagena,* 345 F.Supp.2d at 426 (noting the "unusual circumstances of this case").

Federal courts in New York agree that "Article 78 proceedings were designed for the state courts, and are best suited to adjudication there." *Lucchese,* 22 F.Supp.2d at 258. Moreover, "state law does not permit [these] proceedings to be brought in federal court." *Beckwith,* 413 F.Supp.2d at 227. These are compelling reasons to decline supplemental jurisdiction over Morningside's third cause of action, and there is nothing exceptional about Morningside's claim that would justify deviation from the well-reasoned and essentially unanimous position of New York district courts on this issue.

*Id.* at 346-47.

The Second Circuit explained (in the context of a proceeding to have a town's sewer system extended) that "it is not the role of the federal courts to protect landowners from merely arbitrary actions that are correctible by state courts," *Clubside, Inc. v. Valentin*, 468 F.3d 144, 158 (2d Cir. 2006). Similarly it is not the role of the federal courts to protect private companies from rate increases imposed by other private companies. [9]

Finally, Article 78 has a very short statute of limitations, namely four months. See CPLR § 217. All of the actions complained of occurred in 2006 and thus are barred by the limitations period.

## CONCLUSION

For the reasons stated above, the complaint in this action should be dismissed for failure to state a claim on which relief can be granted.

Dated: New York, N.Y.
      July 10, 2007

                          Leon Friedman (LF#7124)
                          148 East 78th Street
                          New York, N.Y. 10021
                          (212) 737-0400
                          Attorney for Defendant
                          Air Pegasus Heliport, Inc.

---

[9] See also *Pennhurst State School v. Halderman*, 465 U.S. 89, 106 (1984) where the Court held that federal courts lacked authority under the 11th Amendment to order state officials to follow state law. ". . .it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law."

## CERTIFICATE OF SERVICE

I hereby certify that I am not a party to this action, am over 18 years of age and reside at 148 East 78th Street, New York, N.Y and that I am an attorney duly admitted to the Courts of the State of New York. I affirm under penalties of perjury:

On July 11, 2007 I served a copy of Plaintiff's Motion to Dismiss in the following manner:

By mailing a copy to that attorney, in a sealed envelope, with postage prepaid thereon, in a post-office or official depository of the U.S. Postal Service within the State of New York, addressed to the last known address of the addressee(s) as indicated below:

Hantman & Associates
1414 Avenue of the Americas
Suite 406
New York, N.Y. 10019

Dated: July 11 , 2007

Leon Friedman