169. By reason of the foregoing, New York Helicopters has suffered damages in an amount to be determined at the time of trial.

### FOURTH CAUSE OF ACTION
### AGAINST APH AND THE HRPT

### PREEMPTION UNDER THE SUPREMACY CLAUSE

170. Plaintiffs repeat and reallege, as if set forth fully herein, the allegations contained in Paragraphs 1 through 169 hereof.

171. The Airline Deregulation Act preempts any state action which relate to the "price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1).

172. APH's actions in imposing the new fee and providing certain customers of the Heliport with significant discounts and price reductions and not provide such discounts and reductions to other similarly-situated customers are unfair, unreasonable, arbitrary, capricious and blatantly discriminatory.

173. These actions are state actions preempted by the Airline Deregulation Act pursuant to the Supremacy Clause.

174. The proprietor exception to federal preemption in the field of aviation is inapplicable here.

175. The proprietor exception does not grant state actors *carte blanche* authority.

176. To the contrary, the proprietor exception only applies to state action that is reasonable, non-arbitrary and non-discriminatory.

177. APH's action in providing certain customers of the Heliport with significant discounts and price reductions and not providing the same discounts and reductions to other similarly-situated customers is blatantly discriminatory and, as such, falls outside the scope of the proprietor exception and must be rectified.

178. APH's imposition of the new fee is unfair, unreasonable, arbitrary and capricious and, as such, falls outside the scope of the propriety exceptions and must be stricken.

## FIFTH CAUSE OF ACTION
## AGAINST THE HRPT AND APH

### THE HELIPORT, AS OPERATED BY APH, IS IN VIOLATION OF FEDERAL LAW

179. Plaintiffs repeat and reallege, as if fully set forth herein, the allegations contained in Paragraphs 1 through 178 hereof.

180. APH's unilateral and arbitrary charge of $10.00 per passenger, the discriminatory pricing to NYH, the threats to NYH by APH that it would have to "drop" a pending law suit in State Court, that NYH had to stop complaining to HRPT about HRPT's policies and unreasonable discriminatory acts against NYH coupled with preferential treatment in favor of Zip Aviation LLC – a competitor of NYH, to the detriment of NYH, and the continued threats and actual refusal to allow NYH access to the Heliport, has enacted a series of unreasonable and blatantly discriminatory regulations and edicts which exceed the scope of the limited authority that federal aviation law grants to "municipal proprietors" like HRPT, and is thus preempted by federal law.[19]

181. By reason thereof NYH has been damaged.

## SIXTH CAUSE OF ACTION
## AGAINST THE HRPT
## HUDSON RIVER PARK ACT

### THE HRPT WAS REQUIRED TO PUT
### THE PERMIT OUT FOR BID AS OF MARCH 25, 2006

182. Plaintiff repeats and realleges, as if set forth fully herein, the allegations contained in Paragraphs 1 through 181 hereof.

183. Even if the Permit had satisfied the HRP Act's grandfathering clause, operation of the Heliport by APH past March 25, 2006 was unlawful.

---

[19] *See Nat'l Helicopter Corp. of Am. v. City of New York*, 137 F.3d 81, 88 (2nd. Cir. 1998) ("[T]he federal courts have recognized complete federal preemption over the regulation of aircraft and airspace, with a 'limited role for local airport proprietors in regulating noise levels at their airports.'") (quoting *City and County of San Francisco v. F.A.A.*, 942 F.2d 1391, 1394 (9th Cir. 1991)).

27

184. The HRP Act also governs the HRPT's process with respect to awarding certain types of contracts. First, the HRPT must treat as a "significant action . . . any proposed lease, concession arrangement, license or other agreement . . . for a period in excess of ten years." In so doing, the HRPT must:

    a. hold a public hearing on not less than 30 days' advance public notice; (b) solicit and consider the views of Manhattan community boards one, two, and four, the planning commission of the city of New York, the advisory council, elected officials representing communities neighboring the park, and interested groups and individuals, allowing not less than sixty days following the notice of the proposed action for the submission of such views; and (c) publish notice of the hearing and proposed action in the city record and state register.

185. In addition, the HRPT must "issue a bid prospectus for any leases, concession agreements, licenses and other agreements which would provide for a total capital investment in the park of no less than one million dollars over the proposed term of the agreement."

186. The HRP Act requires the "bid prospectus submitted to prospective bidders" to "contain specific information concerning the nature of the capital improvements or equipment to be provided by the successful bidder and shall be provided to community boards one, two and four within the borough of Manhattan."

187. As of March 25, 2006, APH's Permit had exceeded 10 years.

188. Moreover, the Permit "provide[s] for a total capital investment in the park of no less than one million dollars." *Id.* at § 7(11).

189. Accordingly, the HRPT was required to initiate a competitive process with respect to the contract to serve as the FBO for the Heliport by "hold[ing] a public hearing," "solicit[ing]" the views of the public, "publish[ing] notice of the hearing and proposed action in the city record and state register," and "issu[ing] a bid prospectus."

190. The HRPT failed to take any of these required steps.

191. Instead, the HRPT simply continued to "sole source" the Heliport's operations to APH.

28

192. There is an actual, justiciable controversy over whether the HRPT was required to initiate a competitive process with respect to the contract to serve as the FBO for the Heliport after APH had served as the FBO for 10 years.

193. Based on the foregoing, Plaintiff now seek a declaration and order that the HRPT was required to initiate a competitive process with respect to the contract to serve as the FBO for the Heliport after APH had served as the FBO for 10 years; and that the HRPT failed to do so in violation of its statutory duties.

194. APH is named herein in order to ensure that the Court can afford full relief.

### SEVENTH CAUSE OF ACTION
### AGAINST THE HRPT
### HUDSON RIVER PARK BY-LAWS:

### THE HRPT WAS REQUIRED TO OBTAIN BOARD APPROVAL
### OF EVERY EXTENSION OF THE PERMIT

195. Plaintiff repeats and realleges, as if fully set forth herein, the allegations contained in Paragraphs 1 through 194 hereof.

196. The HRPT operates pursuant to by-laws which, among other things, require board approval of all "contracts for the general corporate purposes of the Authority which are in excess of one hundred thousand dollars ($100,000)." Hudson River Park Trust By-Laws at Art. III, § 3 ("Contracts Requiring Board Approval").

197. Since March 24, 2001, APH has been operating the Heliport on an exclusive basis pursuant to a series of agreements between the HRPT and APH to extend the Permit on a month-to-month basis.

198. Each extension of the Permit is "in excess of one hundred thousand dollars ($100,000)." *Id.*

199. Pursuant to its by-laws, the HRPT was required to obtain board approval of each of these extensions.

200. Upon information and belief, the HRPT never obtained or even sought board approval for these dozens of extensions of the Permit.

201. Upon information and belief, the HRPT intentionally failed to seek board approval of these extensions because doing so would have revealed that the Permit was not "grandfathered" under the HRP Act. As previously explained, "grandfathering" of a pre-HRP Act permit was only permitted if, by the permit's terms, the permittee had the sole "option to extend" it. HRP Act at § 3(i), 1998 Sess. Law. Ch. 592.

202. Based on the foregoing, Plaintiffs now seek a declaration and order that the Permit expired on March 24, 2001; that the HRPT's by-laws required board approval of the numerous month-to-month extensions to which the HRPT has agreed since March 24, 2001; that in failing to obtain those extensions, the HRPT violated its by-laws; and, therefore, the operation of the Heliport is unlawful.

### EIGHTH CAUSE OF ACTION
### AGAINST THE HRPT
### HUDSON RIVER PARK ACT

### THE HRPT'S DECISION TO SETTLE WITH APH ON SUCH FAVORABLE TERMS TO APH AND TO PERMIT APH TO CONTINUE TO OPERATE, RATHER THAN TERMINATE APH, WAS ARBITRARY AND CAPRICIOUS

203. Plaintiff repeats and realleges, as if fully set forth herein, the allegations contained in Paragraphs 1 through 202 hereof.

204. In early 2005, the HRPT commenced an inspection of APH's books and records to "evaluate whether APH had reported and remitted fees and charges in accordance with the terms of the Permit."

205. Among other things, the auditor examined whether APH was properly reporting and remitting to HRPT monies arising from operations of the Heliport that were paid to an entity related to APH, APNY.

206. Even though the HRPT was fully within its rights in conducting an audit of APH's books and records, APH filed suit in the Supreme Court, New York County, challenging the breadth and scope of the HRPT's audit rights under the Permit. (Ex E).

207. On January 5, 2006, the HRPT filed suit against APH and its CEO, Alvin Trenk, alleging that APH had violated the Permit by, among other things, entering into subsidiary agreements without the HRPT's knowledge, consent or prior written approval, and by diverting funds received by APNY that should have been included in APH's reports and payments to the HRPT.

208. HRPT's action sought to recover all unpaid fees.

209. The HRPT also continued its audit, and, on October 31, 2006, Ms. Cutler issued a report of significant wrongdoing on the part of APH.

210. Repeatedly noting APH's failure to maintain proper records, which complicated her inspection, Ms. Cutler nevertheless was able to reach the following alarming conclusions about APH, among others:

- Over a nine-year period from 1996 through 2005, APH concealed and diverted $3,853,229 to its related entity Air Pegasus of New York, Inc.;

- Investigation of $565,000 received by Air Pegasus Enterprises, another APH-related entity, is continuing;

- APH gave discounts and price preferences, including non-volume discounts on fuel and landing fees, to certain preferred customers;

- For a number of months, US Helicopter was charged a flat monthly fee for landing and parking, rather than the fee due under the Schedule of Charges that applied to other operators;

- Zip Aviation, LLC a/k/a Wings a/k/a Print International was billed a flat $500 per month regardless of the number of its landings or the amount of time parked;

- APH also disingenuously characterized NY Helicopters and Helicopter Flight Services, another of APH's sightseeing operator customers, as "charter tours on a reservation basis only," and failed to properly collect, report, or remit Sightseeing Use Charges, as required under Section 6(b) of the Permit, in connection with these operators; and

- The APH monthly Deposit Cash Sheet prepared by APH did not include all bank deposits.

211. Based on these damning findings, the HRPT should have terminated APH. Instead, on November 22, 2006, less than one month after the auditor issued her findings, the HRPT simply settled its dispute with APH, and on extremely favorable terms for APH.

212. For example, among other things, the HRPT stated as part of the settlement that "it has no knowledge that [APH] is in violation of any of the provisions of the permit and, accordingly, APH is in good standing with the HRPT."

213. The HRPT agreed to this "acknowledgement" despite its actual knowledge that APH had committed significant wrongdoing.

214. The HRPT also stated that "it is the HRPT's interpretation of the Hudson River Park HRP Act that no operator other than [APH] can be allowed to operate the Heliport." The HRPT agreed to this acknowledgement despite the fact that, under the HRP Act, it is entitled (and, indeed, required) to "issue a bid prospectus" seeking proposals to operate the Heliport.

215. Finally, the HRPT agreed to "acknowledge that it "shall not use the Litigations as a basis for disqualifying APH from any HRPT Request for proposal ("RFP") and APH shall have the right to respond to any such RFP."

216. The HRPT agreed to these terms exonerating APH despite its duty to operate the Park in the best interests of the public.

217. In return for these "acknowledgements," APH paid HRPT $462,387.

218. This payment purportedly was in "full and complete satisfaction" of the percentage of monies owed from revenues derived by APH through its consulting agreement with a competitor of NYH, who cooperated and assisted the HRPT in its investigation.

219. However, this figure does not include payments relating to other operators that APH previously withheld from the HRPT. Nor does it include any interest on any of the improperly withheld monies.

220. For many months prior to the settlement, APH had been imposing unfair, unreasonable fees on NYH in violation of the Permit

32

221. Because of the HRPT's irrational settlement with APH, APH, despite having settled for cents on the dollar, is now continuing to do so in an effort to pass along the costs of settlement.

222. In this way, the HRPT's arbitrary and capricious decision to settle with APH on such favorable terms has caused NYH harm.

223. Based on the foregoing, Plaintiff now seek a declaration and order that the HRPT acted arbitrarily and capriciously and abused its discretion by settling its dispute with APH on such favorable terms to APH, and permitting APH to continue operating the heliport, rather than terminating APH.

224. Plaintiff also seek a judgment annulling the November 22, 2006 settlement agreement between the HRPT and APH, and compelling the HRPT, based on its own auditor's findings and on the findings of the State Comptroller, (which are to be released imminently and also expected to confirm the findings of the HRPT's Audit) to terminate APH's Permit.

225. APH is named herein in order to ensure that the Court can afford full relief.

### NINTH CAUSE OF ACTION AGAINST THE HRPT HUDSON RIVER PARK BY-LAWS;

### THE HRPT WAS REQUIRED TO OBTAIN BOARD APPROVAL OF THE SETTLEMENT WITH APH

226. Plaintiffs repeat and reallege, as if fully set forth herein, the allegations contained in Paragraphs 1 through 225 hereof.

227. The HRPT operates pursuant to by-laws which, among other things, require board approval of all "contracts for the general corporate purposes of the Authority which are in excess of one hundred thousand dollars ($100,000)."

228. Hudson River Park Trust By-Laws at Art. III, § 3 ("Contracts Requiring Board Approval").

229. The HRPT's settlement with APH is "in excess of one hundred thousand dollars ($100,000)." *Id.*

230. Pursuant to its by-laws, the HRPT was required to obtain board approval of its settlement with APH.

231. Upon information and belief, the HRPT failed to obtain or even seek board approval of this settlement before binding the HRPT.

232. Based on the foregoing, Plaintiffs now seek a declaration and order that the HRPT acted arbitrarily and capriciously and abused its discretion by settling its dispute with APH on such favorable terms to APH, and permitting APH to continue operating the Heliport, rather than terminating APH; the HRPT violated its by-laws in failing to obtain board approval of this settlement; and the HRPT violated its inherent statutory duties and fiduciary obligations to the public to resolve financial disputes on rational and reasonable terms that protect the public interest and to remove parties who have engaged in wrongdoing in violation of their government contracts.

233. Plaintiffs also seek a judgment annulling the November 22, 2006 settlement agreement between the HRPT and APH, and compelling the HRPT, based on its own auditor's findings and on the findings of the State Comptroller, which are to be released imminently and are expected to confirm the findings of the HRPT's auditors, to terminate APH's Permit.

### TENTH CAUSE OF ACTION
### AGAINST THE HRPT AND APH
### HUDSON RIVER PARK ACT:

### THE HELIPORT MUST CEASE ALL OPERATION IN ITS CURRENT LOCATION BECAUSE NO HELIPORT MAY OPERATE EAST OF THE BULKHEAD LINE

234. Plaintiffs repeat and reallege, as if set forth fully herein, the allegations contained in Paragraphs 1 through 233 hereof.

235. Since March 25, 1996, pursuant to the Permit, APH has served as the FBO of the Heliport.

236. APH's Permit expired by its terms on March 24, 2001.

237. Since that time, the HRP Act has prohibited the operation of any type of heliport in the Heliport's current location. "[T]he area of the park east of the bulkhead line shall be used *solely for park use and to permit access to permitted uses* . . . ." HRP Act at § 7(9)(i) (emphasis added).

34

238. The Heliport currently operates "east of the bulkhead line."

239. Pursuant to the HRP Act, operation of a heliport *of any kind* is not a "park use."

240. Therefore, since APH's permit expired on March 24, 2001, the Heliport has operated in direct contravention of the HRP Act.

241. There is an actual, justiciable controversy over whether the Heliport may operate *at all* in its current location.

242. Based on the foregoing, Plaintiff now seeks a declaration and order that (i) APH's Permit expired on March 24, 2001, (ii) since the expiration of the Permit, the operation of any Heliport east of the bulkhead line violates the HRP Act, and, therefore, (iii) the continuing operation of the Heliport at its current location is in direct violation of the HRP Act and must immediately cease.

243. APH is named herein as a necessary party in order to ensure that the Court can afford full relief.

### ELEVENTH CAUSE OF ACTION AGAINST THE HRPT AND APH HUDSON RIVER PARK ACT:

### THE HELIPORT IS NOT "GRANDFATHERED" AND SHOULD BE SHUT DOWN AS PRESENTLY CONSTITUTED

244. Plaintiffs repeat and reallege, as if set forth fully herein, the allegations contained in Paragraphs 1 through 243 hereof.

245. Since March 25, 1996, pursuant to the Permit, APH has served as the FBO of the Heliport.

246. The Heliport's business consists primarily of sightseeing and charter tours.

247. APH's Permit expired by its terms on March 24, 2001.

248. The HRP Act does not provide for renewal of a contract that pre-dated the HRP Act unless "*the option to extend is exercised solely by and is a contractual right of* the lessee, permittee licensee or other contractual user."

35

249. The Permit does not include an "option to extend." Instead, its term *automatically* renews "for successive terms of one month each unless cancelled by *either* party upon thirty (30) days written notice." *Id.* at § 2 (emphasis added).

250. Neither the HRPT nor APH has ever cancelled any automatic renewal since the Permit expired on March 24, 2001.

251. Thus, since March 24, 2001, APH has been operating the Heliport on an exclusive basis under a series of automatic month-to-month extensions to which the HRPT has agreed. In this way, Defendants APH and HRPT have repeatedly violated the HRP Act.

252. In addition, even if the Permit's automatic renewal, subject to cancellation by either the APH or the HRPT, satisfied the "grandfathering" clause of the HRP Act, use of the Heliport as a tourism/recreation heliport past the Permit's expiration on March 24, 2001 would *not* be grandfathered.

253. The HRP Act specifically prohibits heliports that operate for the purposes of tourism and recreation. Only a "non-tourism/non-recreation heliport for commercial and emergency transportation use" satisfies the definition of a "park commercial use" permitted on Park property.

254. In this separate and independent respect, the operation of the Heliport as a tourism/recreation heliport since March 25, 2001 has further violated the HRP Act.

255. There is an actual, justiciable controversy over whether the Heliport is "grandfathered" under the HRP Act.

256. Based on the foregoing, Plaintiff now seek a declaration and order that (i) the Permit expired on March 24, 2001, (ii) the Permit's "automatic renewals" do not satisfy the "grandfathering" provision of the HRP Act, (iii) the tourism/recreation use of the Heliport under the Permit does not satisfy the "grandfathering" provision of the HRP Act, and, therefore, (iv) the operation of the Heliport is in violation of the HRP Act.

257. APH is named herein in order to ensure that the Court can afford full relief.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs requests that this Court issue a judgment:

As to First through Fifth Causes of Action:

(1) awarding plaintiffs actual and compensatory damages in an amount to be determined at trial;

(2) rescinding APH's permit;

(3) declaring and ordering that the existing operation of the Heliport is in violation of federal and state law;

(4) enjoining the West 30th Street Heliport, as it presently exists, from any further operation in violation of federal and state law;

(5) awarding Plaintiffs the costs and disbursements of this action, including attorneys' fees; and

(6) awarding such other and further relief as this Court deems just and proper.

As to the Sixth through Eleventh Causes of Action:

(1) declaring and ordering that the HRP Act precludes any heliport from operating "east of the bulkhead line" because such operation is not a "park use" as defined under the HRP Act; APH's permit expired on March 24, 2001; APH's operation of the Heliport at its current location "east of the bulkhead line" is therefore in direct contravention of the HRP Act; and any further operation of the Heliport in its current location is in violation of the HRP Act and must immediately cease;

(2) declaring and ordering that the Permit expired on March 24, 2001, the Permit's "automatic renewals" do not satisfy the "grandfathering" provision of the HRP Act, the "tourism/recreation use" of the Heliport under the Permit does not satisfy the "grandfathering" provision of the HRP Act, and, therefore, APH's operation of the Heliport is in violation of the HRP Act and, subject to new legislation, and public

bidding for a new FBO, must immediately cease; plus damages to plaintiffs for its wrongful ouster;

(3) declaring and ordering that the HRPT was required to initiate a competitive process with respect to the contract to serve as the FBO for the Heliport after APH had served as the FBO for 10 years;

(4) declaring and ordering that the HRPT was required to obtain, under its by-laws, and failed to obtain, board approval of the extensions of the Permit to which it agreed;

(5) declaring and ordering that the HRPT acted arbitrarily and capriciously and abused its discretion by irrationally settling its dispute with APH on such favorable terms to APH, and permitting APH to continue operating the Heliport, rather than terminating APH;

(6) declaring and ordering that the HRPT was required to obtain, under its by-laws, and failed to obtain, board approval of its settlement with APH;

(7) annulling the November 22, 2006 settlement agreement between the HRPT and APH;

(8) compelling the HRPT, based on its own auditor's findings and on the findings of the State Comptroller, (which are to be released imminently and also expected to confirm the findings of the HRPT's Audit), to terminate APH's Permit;

(9) declaring and ordering those acts complained of in the Sixth Count unconstitutional and a basis for HRPT to terminate APH's contract or for HRPT's operation of the Heliport to be declared and ordered unconstitutional;

(10) awarding Plaintiffs the costs and disbursements of this action, including attorneys' fees; and

(11) granting such other and further relief as the Court deems just and proper.

38

Dated: New York, New York
May 18, 2007

HANTMAN & ASSOCIATES

By: _____
Robert J. Hantman, Esq. (3947)
1414 Avenue of the Americas Suite 40
New York, New York 10019
Telephone:  (212) 684-3933
Facsimile:   (212) 755-1989
*Attorneys for Plaintiff*
*New York Helicopter Charter, Inc.*
*and Michael Roth*