723 P07    DEC 13 '99  13:14

Flight Service or Aircraft Traffic Control Center and the Weather
Bureau but such service need not be by a direct line. Such
telephone service may be by phone if installed, and in any event
the telephone charges for such calls may be charged to the
persons using such telephones.

.7:  The Operator shall keep available for use in
connection with the ground handling of aircraft such of the
equipment listed in Exhibits "C" and "D" attached hereto and made
a part hereof, or suitable substitutes therefor, as applicable to
said operations.

(b)  The Operator shall perform the work and furnish
the services usually performed or furnished in connection with
the storage and dispensing or sale of aviation fuel to aircraft
at a heliport, including the delivery thereof to and into
aircraft, utilizing the fuel storage and dispensing facilities at
the Heliport as set forth in Section 15 hereof.

Section 6.    Fees and Charges Payable to the Department

(a)  The Operator agrees to pay to the Department a
basic monthly permit fee of $10,210 payable in advance on the
commencement of the term hereof and on the first day of each and
every month thereafter provided, however, that if this Agreement
shall commence on a date other than the first day of the month or
shall expire or be revoked or terminated effective on a date
other than the last day of the month, said basic monthly permit
fee shall be prorated on a daily basis using the actual number of
days in said month.  The basic monthly permit fee set forth in
this Section 6(a) shall be increased 5% from the basic monthly
permit fee, non compounded, on each annual anniversary of the
Commencement Date.

(b)  In addition to the basic monthly permit fee as set
forth in paragraph (a) above the Operator shall pay to the
Department a percentage fee equivalent to ten percent (10%) of
the Operator's gross receipts for amounts in excess of $250,000
to and including $1,000,000 and a percentage fee equivalent to
eleven percent (11%) of the Operator's gross receipts for amounts
in excess of $1,000,000 to and including $2,000,000 and a
percentage fee equivalent to twelve percent (12%) for all amounts
over $2,000,000, plus a use charge computed at the rate of $15.00
per every ten sightseeing passengers, with the number of
passengers rounded to the next higher integral multiple of 10, in
connection with approved sightseeing operations.

6

#0023844.05
77777-00111

723 P08     DEC 13 '95     13:15

The term "gross receipts" shall include all monies paid for services rendered beginning on the Commencement Date and ending on the Termination Date to the Operator for the landing, take-off and parking of aircraft at the Heliport (including all fees as set forth in paragraph (c) hereof) and all other monies paid to the Operator for sales made or services rendered at or from the Heliport regardless of when or where the order therefor is received at the Heliport and any other revenues of any type arising out of or in connection with the Operator's operations at the Heliport provided, however, that any taxes imposed by law which are separately stated to and paid by the customer and directly payable to the taxing authority by the Operator shall be excluded therefrom.

The fee provided for in Section 6(b) shall be due and payable monthly on the thirtieth day of each month following the calendar month in which the effective date hereof falls, and shall be based on the Operator's gross receipts for the preceding calendar month, provided, however, that if the Agreement shall expire or be revoked or terminated effective on a date other than the last day of a month, the percentage fee for said month shall be due and payable within ten days after such effective date of expiration, termination or revocation or should such monies be paid after the Termination Date, within ten (10) days of receipt of such monies.

(c)   Subject to the limitation set forth in Section 4, the Operator shall include, for the purposes of computing gross receipts under paragraph (b) hereof, all fees and charges under the Schedule of Charges or volume use permits which would be applicable to helicopter operations of the operator at the Heliport (i.e., leases and charters to third parties). Charges for fuel and maintenance services supplied to the Operator's own aircraft or aircraft which the Operator has leased or chartered for personal use (which are not leased or chartered to others) shall not be included in gross receipts.

(d)   In the event the aggregate fees paid by the Operator pursuant to the provisions of subsection, 6(a), 6(b) and 6(c) hereinabove shall not equal or exceed $191,620 (the "Annual Amount")in the aggregate for each full year commencing on the first day of the first full month following the Commencement Date (the "Base Calculation Date") and commencing on each annual anniversary date of the Base Calculation Date thereafter during the term of this Agreement, then, in such event, the Operator shall pay to the State the difference between the amount actually paid under said subsections and $191,620 within 45 days following the date upon which the last monthly payment is due in respect of

7

80021948.05
99999-00111

PAGE.08

the year for which payment is due.  The Annual Amount shall
increase five (5%) percent, non-compounded, on each annual
anniversary of the Commencement Date.  Notwithstanding the
foregoing provisions of this subsection, the $191,620 shall be
reduced pro rata in respect of each partial year.

(e)  Amounts due pursuant to Section 6 that are
not paid within thirty (30) days from the date billed as
indicated on a billing invoice, shall carry interest, penalties
and collecting fees pursuant to the provisions of Chapter 55 of
the laws of 1992.

Section 7.    Obligations in Connection with Payment of the
              Percentage Fee and Privileges

In connection with the exercise of the privileges
granted hereunder, the Operator shall:

(a)  use its best efforts in every proper manner
to maintain, develop and increase the business conducted by it
hereunder and the use of the Heliport as a public heliport
facility;

(b)  not directly or indirectly divert or cause to
be diverted, any business from the Heliport.  It is understood
that the Operator or an affiliate has an ownership interest in
Liberty Helicopter Tours, Inc. which also conducts sightseeing,
charter and air taxi helicopter services from the Downtown
Manhattan Heliport and may acquire or operate, in New Jersey, a
helicopter facility.  Such interests, in and of themselves, shall
not be considered a violation of this Section.

(c)  set up and thereafter continually maintain
during the effective period of this Agreement, and preserve after
the expiration or earlier termination or revocation thereof for a
period extending until the earlier of (i) the completion of a
close out audit or, (ii) three years following the date of
expiration, termination or revocation such a system of books,
records and accounts as may be adequate and appropriate for the
recording with respect to the Heliport of sightseeing passenger
counts, all arrival and departures of all aircraft, (regardless
of whether a fee is charged therefor and including all of the
Operator's aircraft operations, if any, at the Heliport) times
and dates thereof the type and registration number of the
aircraft, the time of parking and storage thereof and the charges
incurred by all aircraft during their stay at the Heliport, for
the recording of all transactions pertaining to the Operator's
flight operations, if any, the dispensing of aviation fuel at the

5

80021049.03
99999-00111

123 P10    DEC 13 '99   13:16

Heliport into aircraft, including the fuel charges, and such other information as the Department may reasonably from time to time require. Such system shall be in accordance with accepted accounting practice. In the event the close out audit shall not have been completed by the end of the third year following expiration, termination or revocation of this Agreement, such records shall be maintained at the sole expense of the Department. As an aid to this the Operator shall utilize such sales slips and invoicing machines and any other equipment or devices as may be necessary or appropriate to the Operator's operations thereunder and to enable the Operator to keep accurate records as hereinbefore stated. The Operator shall also permit in ordinary business hours during the effective period of this Agreement and for one (1) year thereafter and during such further period as hereinbefore mentioned, the examination, inspection and audit by the officers, employees and representatives of the Department of all of the aforesaid records, books, accounts, sales slips, invoicing machines and other devices as well as the records produced thereby, and also any records and books of account of any company which is owned or controlled by the Operator, or which owns or controls the Operator, if said company performs services, similar to those performed by the Operator under this Agreement, anywhere in the Port of New York District.

On or before the 30th day of the calendar month following the month in which the commencement date hereof falls and on or before the 30th day following the end of each and every calendar month thereafter including the month following the expiration or earlier revocation or termination of this Agreement, the Operator will furnish to the Department a sworn statement covering its operations for the preceding month, which statement shall be based on the aforesaid books, records and accounts. Said statement shall set forth the Operator's gross receipts and apply the percentage set forth in paragraph (b) of Section 6 thereto and shall contain such other information as the Department may require with respect to the Charges under Section 4, aircraft arrivals and departures and parking and storage times with appropriate identification of said aircraft, fuel charges, sightseeing passenger counts, and such other information as the Department may from time to time require.

Section 8.     Compliance with Governmental Requirements

(a)   The Operator agrees to undertake at its own expense to comply with all laws and ordinances and governmental rules, regulations and orders now or at any time during the term of this Agreement which as a matter of law are applicable to the operations of the Operator at the Heliport.

9

#0031848.05
33793-00311

JAN 12 2000 13:19

PAGE.10

723 P11    DEC 13 '95  13:15

(b   The obligation of the Operator to comply with governmental requirements is provided herein for the purpose of assuring proper safeguards for the protection of persons and property in or near the Heliport and proper operation by the Operator.  Such provision is not to be construed as a submission by the Department to the application to itself of such requirements or any of them.  Operator shall not conduct or allow any activity on the Premises inconsistent with law and shall not conduct or allow any use or activity on the Premises which may require a permit or other approval by a government agency without having lawfully obtained such permit or approval.  Operator shall be responsible to the State for compliance with these provisions by his sub-permittees.  For purposes of this Agreement a sub-permittee is defined as such person or entity which has a written agreement specifically designated as a "sub-permit" with the Operator and approval as such by the Department.

(c)   The operator shall comply with all enactment's, ordinances, resolutions and regulations of the City of New York, which do not, in the reasonable view of the Operator, have the same effect or purpose as a bill of attainder and which would be applicable to its operations at the Heliport if the Department were a private corporation, except in cases where the Department either notifies the Operator that it need not comply with or directs it not to comply with any such enactments, ordinances, resolution or regulations which are applicable. The Operator shall, for the Department's information, deliver to the Department promptly after receipt of any notice, warning, summons, or other legal process for the enforcement of any such enactment, ordinance, resolution or regulation a true copy of the same.

In the event of compliance with any such enactment, ordinance, resolution or regulation on the part of the Operator, acting in good faith, commenced after such delivery to the Department but prior to the receipt by the Operator of a written direction from the Department not to comply (and thereafter discontinued) such compliance shall not constitute a breach of this Agreement, although the Department thereafter directs the Operator not to comply.  Nothing herein contained shall release or discharge the Operator from compliance with any other provision hereof respecting governmental requirements.

(d)  The Operator shall have such time within which to comply with the aforesaid laws, ordinances, rules and regulations as the authorities enforcing the same shall allow.

10

00023847.05
99995-00111

Section 9.    Manner of Operation

(a)  The Operator shall conduct all operations hereunder in a careful, efficient, safe and courteous manner.

(b)  The Operator shall keep the Heliport open and manned and shall provide and perform all services under this Agreement at not less than the following times:  between the hours of 8:00 A.M. to 6 P.M. of each Monday through Friday, inclusive, except holidays.  In addition to the foregoing, the operator shall, on receiving at least two (2) hours' prior notice from the Department or from any one desiring to use the Heliport (which notice may be oral), of a proposed landing or take-off of an aircraft at the Heliport during other than regularly scheduled hours, handle said landing and take-off of an aircraft at the Heliport during other than regularly schedule hours, handle said landing and take-off and assign the necessary personnel qualified to handle said flight activity. The Operator shall keep records of such use, including without limitation thereto the hours and times when its personnel are performing said services, as the Department may from time to time require.  The Operator shall advise the prospective user of the Heliport of the aforesaid fee upon receiving notice of the proposed landing or take-off.  The Department does not guarantee the payment of the aforesaid fee by any such user.  In addition to the aforesaid fee, said use of the Heliport shall be subject to the Schedule of Charges which may be applicable thereto.  The Operator shall not permit any aircraft to remain parked at the Heliport during those hours of any day when its personnel are not in the Heliport as required pursuant to the aforesaid provisions.

The Department shall have the right but not the obligation to itself handle any State flight activity, including its own, using State personnel during the hours when the Heliport is not being operated by the Operator and using any and all equipment required to be furnished by the Operator under the terms hereof without cost to the Department.

(c)  The Operator shall perform and provide all services hereunder in an orderly and proper manner.  The Operator shall provide and its employees shall wear uniforms or other suitable means of identification.  Such uniforms and means of identification shall be subject to the reasonable written approval of the Department.  The Department shall have the right to object to the Operator regarding the demeanor and conduct of the employees and invitees of the Operator and of those doing business with it whereupon the Operator will forthwith take all steps necessary to correct the deficiency.

11

723 P13     DEC 13 '99   13:17

(d)  The Operator shall at all times during which the
Heliport is required to be open as herein provided have at least
one qualified ground attendant on duty and performing the
services required of the Operator under this Agreement. The
Operator shall instruct its personnel that no gratuities shall be
solicited or accepted for any reason whatsoever from the user of
the Heliport. If the Operator uses the public aircraft landing
area with its own aircraft, the Operator shall during such period
of use have at least one qualified ground attendants on duty and
performing the services required of the Operator under this
Agreement. Moreover, wherever the operator is required to have
at least one or two persons on duty, said number of persons shall
be on duty and the Operator shall make appropriate arrangements
with respect to their relief for eating and comfort purposes.

(e)  The Operator shall immediately inform the
Department upon its discovery of any breakdown, cracks, breaks or
other signs of disrepair or malfunction of any portion of the
Premises or of any other property of the Department.

(f)  "Holiday" or "legal holidays" shall mean and
include the following days in each year:  the first of January,
known as New Year's day; the twelfth day of February, known as
Lincoln's Birthday; the thirtieth day of May, known as Memorial
Day; the fourth of July, known as Independence day; the first
Monday in September, known as Labor day; the twelfth day of
October, known as Columbus Day; the eleventh day of November,
known as Veteran's day; the fourth Thursday in November, known as
Thanksgiving day, the twenty-fifth day of December, known as
Christmas Day; and if any of such days is Sunday, the next day
thereafter; and each general Election day in the State of New
York; and such other or different days or dates as may be
declared "holidays" or "legal holidays" by the Legislature of the
State of New York.

Section 10.    Prohibited Acts

(a)  The Operator shall commit no nuisance on the
Premises, and shall not do or permit to be done anything which
may result in the creation or commission or maintenance of a
nuisance on the Premises.

(b)  The Operator shall not cause or permit to be
caused or produced upon the Premises, to permeate the same or to
emanate there from, any unusual, noxious or objectionable smokes,
gases, vapors or odors. The creation of exhaust fumes by the
operation of the Operator's aircraft engines or aircraft engines

12

90021449.05
33389-00111

(h)  The Operator shall not keep or store inflammable or explosive liquids, gases or solids within the confines of any structure on the Premises, except such structures as are specifically designated therefor by the Department.

(i)  The Operator shall not use water-born aircraft at the site unless there has been prior consultation and approval of the Department but the Department shall not authorize activities in said waters which will obstruct or prevent the same.

Section 11.    Maintenance, Repair and Property Insurance

(a)  The Operator shall at all times keep in a clean and orderly condition and appearance the Premises and all of the Operator's and the Department's fixtures, equipment and personal property which are located in any parts of the Premises.

(b)  The Operator shall repaint, repair, replace or rebuild any part of the Premises and other property of the Department which may be damaged or destroyed by the acts or omissions of the Operator or by those of its employees, customers, guests, or invitees, or of other users of the Heliport and persons doing business with the Operator.

(c)

(i)  Operator, at its sole cost and expense at all times will take good care of the Premises and will maintain same in good order and condition in compliance with all legal requirements and insurance requirements and will make all necessary and appropriate repairs thereto, as necessary for the preservation of the fixtures and personalty on the Premises, including but not limited to maintenance and repairs and replacements to the paving and the frame and roof of and structures on the Premises, and the exterior of the exterior walls and the above ground fuel storage systems.  The Department shall have the authority at any time to inspect the Premises to determine whether same are in good repair and maintenance, structurally sound, and that there are no unsafe, hazardous, unsanitary, or defective conditions in the structure, and its utilities, including improvements constructed by permittee.  This provision shall create no obligation or liability upon the Department to inspect the Premises, nor to take any corrective action to make repairs, nor to undertake any financial obligation.

14

#0021843.05
99391-00111

Failure of the Department to inspect does not relieve
Operator of any obligation herein.

(ii)    Operator, at its sole expense, shall make all
necessary provisions to protect the existing non
support walls, duct lines, drainage lines and other
similar facilities located beneath or about the
Premises (or to provide for their replacement or
upgrading) during the course of construction of the
Operator's Improvements and thereafter the Operator
shall not interfere with the location or use thereof
without the prior approval of Department.

(iii)   Operator accepts the Premises in its existing
condition and acknowledges that, except as otherwise
expressly set forth in this Agreement, no
representations, statements or warranties, express or
implied, have been made by or on behalf of the State in
respect of the Premises, the status of title thereof,
the Requirements applicable thereto, the physical
condition of the underlying land, or the use that may
be made of the Premises, and that the Department shall
in no event whatsoever be liable for any latent or
patent defects in the Premises.

(iv)    In addition to the provisions of herein, in no
event shall Department in its capacity as owner be
liable to Operator or to any other person for any
injury or damage to any property of Operator or of any
other person or to the Premises, arising out of any
sinking, shifting, movement, subsidence or failure in
the load-bearing capacity of, or other matter or
difficulty related to, the soil or other surface or
subsurface materials of the land or waterways
underlying the Premises unless the same is caused by
the gross negligence of owner, of owner's agents,
employers, officers occurring after the date of this
Agreement, it being agreed that except as otherwise
provided herein, Operator shall assume and bear all
risk of loss with respect thereto.

(d)  With respect to all other parts of the
Premises, including, without limitation thereto, building walls,
partitions, floors, ceilings, doors, screens, sash, glass of
every kind, the electrical, mechanical, plumbing, heating, steam,
communications, gas and other systems,  and their pipes, wires,
mains, lines, tubes, conduits, equipment and fixtures, the

15