readjustment of its indebtedness under the federal bankruptcy laws or under any other law or statute of the United States or of any State thereof, or consent to the appointment of a receiver, trustee, or liquidator of all or substantially all of its property; or

(2) By order or decree of a court the Operator shall be adjudged bankrupt or an order shall be made approving a petition filed by any of its creditors or, by any of its stockholders seeking its reorganization or the readjustment of its indebtedness under the federal bankruptcy laws or under any law or statute of the United States of any State thereof and the same shall not be vacated or stayed within thirty (30) days; or

(3) A petition under any part of the federal bankruptcy laws or an action under any present or future insolvency law or statute shall be filed against the Operator and shall not be dismissed within thirty (30) days after the filing thereof; or

(4) The interest of the Operator under this Agreement shall be transferred to, pass to or devolve upon, by operation of law or otherwise, any other person, firm or corporation; or

(5) The Operator shall without the prior written approval of the Department, become a predecessor or merged corporation in a merger, a constituent corporation in a consolidation, or a corporation in dissolution; or

(6) By or pursuant to, or under authority of any federal or state legislative act, resolution or rule, or any order or decree of any court or federal or state governmental board, agency or officer having competent jurisdiction, a receiver, trustee, or liquidator shall take possession or control of all or substantially all of the property of the Operator, and such possession or control shall continue in effect for a period of thirty (30) days; or

(7) The Operator shall voluntarily abandon, desert or vacate the Premises or discontinue its operations at the Heliport; or

(8) Any lien is filed against the Premises because of any act or omission of the Operator and the Operator does not commence and pursue a good faith challenge or appeal to or of the lien, or the lien is not removed or bonded within ten (10) days after the Operator has received notice thereof; or

JAN 12 2000 13:35                                      PAGE.18

(9) The Operator shall fail duly and punctually to pay the fees or to make any other payment required hereunder when due to the Department and shall persist in its failure for a period of five (5) days following the receipt of written notice of such default from the Department; or

(10) The Operator shall fail to keep, perform and observe each and every other promise, and agreement set forth in this Agreement on its part to be kept, performed, or observed and the same shall not be cured within thirty (30) days after receipt of notice of default thereunder from the Department (except where fulfillment of its obligations requires activity over a period of time, and the Operator shall have commenced to perform whatever may be required for fulfillment within ten (10) days after receipt of notice and continues such performance without interruption except for causes beyond its control);

(12) The Department may by five (5) days. notice to the Operator as to the events listed in subparagraphs (1), (2), (3), (4), (5), (6), (8) and (9) and by one day's notice to the Operator as to the events listed in subparagraphs (7) and (10), terminate the rights of the Operator as of the date specified in such notice.

(b) If any of the events enumerated in subdivision (a) of this Section shall occur prior to the commencement of the term, the Operator shall not be entitled to enter into possession of the Premises and the Department upon the occupancy of any such event or at any time thereafter during the continuance thereof by twenty-four (24) hours' notice may cancel the interest of the operator under this Agreement, such cancellation to be effective upon the date specified in such notice.

(c) No acceptance by the Department of fees, charges or other payments in whole or in part for any period or periods after a default of any of the terms, covenants and conditions hereof to be performed, kept or observed by the Operator shall be deemed a waiver of any right on the part of the Department to terminate the Agreement unless such payment is accepted without recourse.

(d) No waiver by the Department of any default on the part of the Operator in performance of any of the terms, covenants or conditions hereof to be performed, kept or observed by the Operator shall be or be construed to be a waiver by the

26

Department of any other or subsequent default in performance of any of the said terms, covenants and conditions.

Section 19.   Right of Re-entry

The Department shall, as an additional remedy upon the giving of a notice of termination as provided in Section 18 hereof, have the right to re-enter the Premises and every part thereof upon the effective date of termination without further notice of any kind, and may regain and resume possession either with or without the institution of summary or any other legal proceedings or otherwise. Such re-entry, or regaining or resumption of possession however, shall not in any manner affect, alter or diminish any of the obligations of the Operator under this Agreement.

Section 20.   Remedies to be Non-exclusive

All remedies provided in this Agreement shall be deemed cumulative and additional and not in lieu of or exclusive of each other or of any other remedy available to the Department at law or in equity, and the exercise of any remedy, or the existence herein of other remedies or indemnities shall not prevent the exercise of any other remedy.

Section 21.   Surrender

The Operator covenants and agrees to yield and deliver peaceably to the Department possession of the Premises and other property of the Department on the date of the expiration or earlier termination of the Agreement promptly and in good condition consistent with and to the extent of its obligations under this Agreement.

Section 22.   Effect of Basic Monthly Permit Fee Reductions

Upon each reduction of the basic monthly permit fee under the terms of this Agreement, the Annual Amount shall be reduced by an amount equal to the reduction in the basic monthly permit fee multiplied by the number of months during the applicable year to which the reduction applies.

Section 23.   Removal of Property

During the sixty (60) days following the expiration, revocation or earlier termination of the term, the Operator shall have the right or upon the affirmative direction by the

27

Department, the obligation, to remove its equipment, inventories, removable fixtures, including such trailers, fuel, facilities, barges, or other floating fixtures, and other personal property from the Premises and shall repair all damage caused by such removal. If at the expiration of the sixty (60) day period the Operator shall fail to remove such property, the Department may use or dispose of such property in any manner the Department deems appropriate and assess reasonable costs associated therewith. During such sixty (60) day period, the Operator shall be entitled to possession of the Premises and shall during the period of any such occupancy be obligated to pay only the then current monthly permit fee referred to in Section 6(a), pro-rated for each day so occupied during the sixty (60) day period.

Section 24.   Brokerage

Each of the Operator and the Department represents and warrants that no broker has been concerned on its behalf in the negotiation of this Agreement and that there is no broker who is or may be entitled to be paid a commission in connection therewith. Each party shall indemnify and save harmless the other of and from any claim for commission or brokerage made by any and all persons, firms or corporations whatsoever for services rendered in connection with the negotiation and execution of this Agreement.

Section 25.   Limitation of Rights and Privileges Granted

No greater rights or privileges with respect to the use of the Heliport or any part thereof are granted or intended provision thereof, than the rights and privileges expressly and specifically granted hereby.

Section 26.   Notices

Except where expressly required or permitted herein to be oral, all notices, requests, consents and approvals required to be given to or by either party shall be in writing, and all such notices and requests shall be personally delivered to the duly designated officer or representative of such party or delivered to the office of such officer or representative during regular business hours, or forwarded to him or to the party at such address by certified or registered mail, return receipt requested. Notices sent by registered or certified mail shall be deemed received five (5) business days after mailing. The Operator shall from time to time designate in writing an office within the Department and an officer or representative whose regular place of business is at such office upon whom notices and

29

requests may be served. Until further notice, the Department hereby designates the Regional Real Estate Officer, Region II, of the New York State Department of Transportation as their officer or representative upon whom notices and requests may be served, and the Department designates its office at Hunter's Point Plaza, 47-40 21st Street, Long Island City, New York 11101 and the Operator designates its office appearing on page 1 of this Agreement as their respective offices where notices and requests may be served.

Section 27.   Place of Payments

Payment must be paid by check, bank cashier's check or money order payable to "Department of Transportation" and mailed or delivered to:

> New York State Department of Transportation
> Revenue Unit, Building 5, Room 422
> 1220 Washington Avenue
> Albany, New York  12232

Section 28.   Construction and Application of Terms

(a) The section and paragraph headings, if any, in this Agreement are inserted only as a matter of convenience and for reference and in no way define, limit or describe the scope or intent of any provision hereof.

(b) The terms, preamble, provisions and obligations contained in the Exhibits attached hereto, whether there set out in full or as amendments of, or supplements to provisions elsewhere in the Agreement stated, shall have the same force and effect as if herein set forth in full.

Section 29.   Non-Liability of Individuals

No Commissioner, shareholder, director, officer, agent or employee of either party shall be charged personally or held contractually liable by or to the other party, under any term or provision of this Agreement, or because of its execution or attempted execution, or because of any breach thereof.

Section 30.    Other Services by the Operator

(a) The Operator is obligated to furnish all necessary services for the Premises including, but not limited to:

(1) The operation of all mechanical, plumbing, power, heating, steam, air conditioning, electrical, boiler, water, toilet, burglar alarm, communications, gas and other systems affecting the Premises;

(2) All janitorial and garbage, refuse, snow and ice removal services; said garbage and refuse to be deposited at central deposit points designated by the Department. The Operator shall not place snow or ice upon any public streets, highways or marginal streets of the City of New York;

(3) The taking of all reasonable measures as shall be approved by the Department for the prevention of access to the Premises by any person other than employees, guests, invitees of the Operator or other persons authorized to be on the Premises;

(4) Provide security in the Premises during the hours the Heliport is open;

(5) Toilet washroom supplies;

(6) Relamping of all electrical fixtures;

(7) All obstruction lights installed on or outside the Premises.

(b) The Operator shall furnish and supply, at its own expense, all utilities necessary for the proper operation of the Premises as a heliport including but not limited to electricity, water, heat. The Operator shall secure the aforesaid utilities directly from the suppliers of the same.

(c) Except as expressly provided in a specific provision of the Agreement, the Department shall not be obligated to furnish or supply any services whatsoever in connection with the Heliport.

30

Section 31.   Equipment Furnished by the Operator

Without limiting the generality of anything herein contained as to the Operator's obligation to operate and maintain the Premises as an operating heliport, the Operator shall supply, furnish and maintain throughout the term of this Agreement such equipment, furnishings and supplies necessary for the operation of the Heliport as specified in Exhibit E. The Operator further agrees to supply, furnish and maintain throughout the term of this Agreement such other equipment and materials as may be desirable or necessary for the proper operation of the Heliport, other than those to be furnished by the Department as set forth in Exhibit F.

Section 32.   Relationship of the Parties

(a) This Agreement does not and shall not constitute the Operator as the agent or representative of the Department for any purpose whatsoever. Neither a partnership nor a joint adventure is hereby created.

(b) Neither the officers, agents, contractors or employees of the Operator shall be or be deemed to be employees of the Department for any purpose whatsoever.

(c) As to such of the Operator's obligations under this Agreement which pertain to the regulation of acts of third persons on the Premises, if the Operator cannot effectuate its obligations hereunder as to said third persons by admonitions and directions to comply, it shall immediately advise the Department or such other person as may be designated by the Department to such effect and, in any such event, the Operator shall not use force in securing compliance by said third persons.

Section 33.   Condemnation or Acquisition by Others

(a) In the event the Premises or any part thereof, or the rights and interest of the Department in and to the Premises or any part thereof shall be condemned, taken or acquired by a body having a superior power of eminent domain, then this Agreement shall no longer apply to the land so taken, and all fees, charges and obligations shall be reduced pro rata in the same proportion as the Premises are reduced by the condemnation, taking or acquisition or, at the discretion of the Operator, such reduction shall adversely affect the business of the Operator, the Operator may deem this Agreement terminated, as of the date possession is taken from the Department by the condemning body, and this Agreement shall cease and determine in

31

00021044.05
99999-00111

the same manner and with the same effect as if the term of the Agreement had on that date expired.

(b) In the event of condemnation or acquisition as provided in paragraph (a) hereof, the Operator shall not be entitled to assert any claim to any compensation, award or part thereof made or to be made therein or therefor or any claim to any consideration or any amount thereof paid therefor, or to institute any action or proceedings or to assert any claim against such agency or agencies or against the Department for any such taking, it being understood and agreed between the parties hereto that the Department shall be entitled to all compensation or awards made or to be made or paid, and all such consideration, free of any claim or right of the Operator.

(c) In the event that all or any portion of the Premises is required by the Department for the construction of Route 9A or to comply with any present or future governmental law, rule, regulations, requirement, order or direction, the Department may, by notice given to the Operator, terminate this Agreement with respect to all or such portion of the Premises so required and all fees, charges and obligations shall be reduced pro-rata in the same proportion as the Premises are reduced by the termination or, at the discretion of the Operator, if such termination shall adversely affect the business of the Operator, the Operator may deem this Agreement terminated. Such termination shall be effective on the date specified in the notice. The Operator hereby agrees to deliver possession of all or such portion of the Premises so required on the effective date of such termination in the same condition as that required for the delivery of Premises upon the date originally fixed by this Agreement for the expiration of its term.

Section 34.   Sales and Services

(a) A principal purpose of the Department in the making of this Agreement is to have the Heliport operated as a first-class public heliport and to make available at the Heliport the items and/or services which the Operator is permitted and directed to sell and/or render hereunder, and the Operator hereby agrees to conduct a first-class operation and in accordance with the highest standards, safety and efficiency and to furnish all necessary and proper fixtures, equipment, personnel (including licensed personnel as necessary), supplies, materials and facilities.

(b) The Operator shall, (1) furnish good, prompt and efficient service hereunder, adequate to meet all demands

therefor at the Heliport; (2) furnish said service on a fair, equal and non-discriminatory basis to all users thereof; and (3) except for sightseeing operations which require Department approval pursuant to Section 3, charge fair, reasonable and non-discriminatory prices for each unit of sales or services, provided that the Operator may make reasonable and non-discriminatory discounts, rebates or other similar types of price reductions to volume purchasers in connection with the landing, taking off and parking of aircraft. As used in this subdivision (b) "service" shall include furnishing of materials and supplies (including the sale thereof) and the landing, taking off and parking of aircraft.

(c)  In the event Federal Airport Aid becomes available for use at the Heliport, the Department may apply for and receive a grant or grants of money from the Administrator of the Federal Aviation Administration pursuant to the Airport and Airways Development Act of 1970, as the same has been amended and supplemented, and under prior federal statues which said Act superseded. In connection therewith the Department may undertake certain obligations respecting its operation of the Heliport and the activities of its contractors, lessees and permittees thereon. The performance by the Operator of the promises and obligations contained in this Agreement is therefor a special consideration and inducement to the issuance of this Agreement by the Department, and the Operator further agrees that if the Administrator of the Federal Aviation Administration or any other federal or state governmental officer or body having jurisdiction over the enforcement of the obligations of the Department in connection with Federal Airport Aid, shall make any orders, recommendations or suggestions respecting the performance by the Operator of its obligations under this Agreement, the Operator will promptly comply therewith at the time or times, when and to be the extent that the Department may direct.

(d)  The Operator shall not itself use the Heliport for its own aircraft and shall refrain from entering into continuing contracts or arrangements with third parties for use of the Heliport or for furnishing services covered hereunder when such use by the Operator or contracts or arrangements will have the effect of utilizing to an unreasonable extent the Operator's capacity for rendering such services. A reasonable amount of capacity shall be reserved by the Operator for the purpose of rendering services at the Heliport, including but not limited to the fueling of aircraft, to those who are not parties to continuing contracts with the Operator.

(a) The Operator shall use its best efforts to encourage and develop the use of the Heliport and the Operator's business thereat.

Section 35. No Interest in Real Property

Nothing contained in this Agreement shall grant or be construed to grant to the Operator any interest or estate in real property, and a landlord-tenant relationship shall not be or be deemed to be created hereunder.

Section 36. Helicopter Flight Operations

The Operator agrees that it shall permit [no helicopter flight operations hereunder and] no landing approach or take-off path to or from the east of the Heliport, including but not limited to the Miller Highway (West Side Elevated Highway) or any successor or replacement roadway. It is the understanding of the parties that flight patterns will be developed and maintained in such manner as will:

(a) impose no restrictions on present of future structures in any area, section or district adjacent to or surrounding the Premises; and

(b) require all landings and take-offs to be over the water with the necessary air taxiing to and from the bulkhead pads.

Section 37. Sunken Craft

If during the team of this Agreement, the waters constituting a part of the Premises shall become obstructed in whole or in part by the sinking of any airborne or waterborne craft owned or operated by the Operator not otherwise approved in a site plan approved by the Department, the Operator, after notice from the Department, shall promptly remove such obstruction or cause the same to be removed, without cost or expense to the Department. If, after notice from the Department, the Operator fails to remove such obstruction, the Department may in its discretion remove the same and in such event the Operator shall reimburse the Department for the expenses so incurred, upon demand.

The Operator shall save harmless the Department, its Commissioner, representatives, agents and employees from any damages or claim for damages that may arise by reason of the

presence in said waters of any sunken craft owned or operated by the Operator.

Section 38.    Accident Reports

The Operator shall promptly report in writing to the General Counsel of the Department, and shall make all other reports as may be required by law, rule or regulation in connection with all accidents whatsoever arising out of or in connection with its operation of the Heliport. In addition to the foregoing, accidents which result in death, personal injury or serious damage shall be immediately reported by telephone to the aforesaid representatives of the Department.

In the event any claim is made by any person against the Operator arising out of any accident on the Premises or in proximity to the Premises as a result of the Operator's operations hereunder, the Operator shall promptly report such claim in writing to the aforementioned representatives for the Department. In addition, the Operator shall promptly furnish to the Department copies of all reports given to the Operator's insurance carrier.

Section 39.    Operations Personnel

The Operator shall furnish sufficient trained personnel to perform the services required of the Operator under this Agreement.

The Operator in its operations hereunder shall abide by the terms and conditions of the applicable collective bargaining labor agreements to which it is a party, if any, including but not limited to payment of the rates of wages and the holiday, idle time, vacation, severance pay and sick leave allowances specified therein.

The Operator shall immediately give oral notice to the Department (to be followed by written notices and reports) of any and all impending or existing labor complaints, troubles, disputes or controversies and the progress thereof. The Operator shall use commercially reasonable efforts to resolve any such complaint, trouble dispute or controversy.

Section 40.    [Reserved]

JAN 12 2020 13:42

PAGE.20