Section 41. <u>Additional Rights Concerning Termination</u>

 a. Notwithstanding any other term or provisions of this Agreement and in addition to any other right of termination hereunder, this Agreement may be revoked by the Department at any time and without cause on thirty (30) days' prior written notice to the Operator. In the event of revocation pursuant to this paragraph (a) or expiration or termination pursuant to Section 2, this Agreement shall cease and expire as if the effective date of revocation stated in the notice were the date originally stated herein for the expiration thereof.

 b. Upon expiration or termination pursuant to any provision of this Agreement, Operator shall have an additional sixty (60) days from the date of said expiration or termination to remove property in accordance with the provisions of Section 23.

 c. Revocation or termination under this Section shall not relieve the parties of any liabilities or obligations hereunder which have accrued on or prior to the effective date thereof.

Section 42. <u>Presidential Use of the Heliport</u>

 The Department shall have the right from time to time and at any time, upon request by or on behalf of the President of the United State to use the Heliport for the landing and taking-off of a helicopter carrying, among other, the President of the United State and other helicopters accompanying such helicopter, upon notice to the Operator which may be oral, to suspend the operations of the Operator under this Agreement for a temporary period or periods of time for the purpose accommodating such landing and takeoff, it being understood that during said period the Department or any third person selected by it may provide the services to the helicopter or helicopters comprising the Presidential party ordinarily performed hereunder by the Operator and, in addition, shall provide cleaning services to the Premises as may be made necessary by the landing and takeoff hereunder. Upon notice to the Operator under this Section 47 the Operator will vacate and turn over complete occupancy of the Heliport to the Department and will during any period of suspension hereunder the normal operations of the Operator and of all other aircraft operators at the Heliport will cease and be suspended. There shall be no abatement of fees or charges in connection with any suspension of operations or evacuation by the Operator under this Section of the Agreement

nor will the scheduled charges for such operation, if any, be payable to the Operator.

Section 43.   NOTAMS - Emergency

(a) Except in the case of an emergency, the Operator shall not issue any NOTAMS with respect to the Heliport without the express prior consent of the Manager Department Heliports. The Operator hereby agrees to promptly advise the Manager Department Heliports of any condition at or affecting the Heliport which, in its judgment, could constitute an unsafe or hazardous situation if the Heliport were to continue operating.

(b) Notwithstanding any other provision in this Agreement, the Department hereby reserves the right at any time, in the event of emergency, to take such actions, including but not limited to the closing of the Heliport, as it may deem appropriate.

Section 44.   Public Information

Except as specifically required in connection with its obligations hereunder, all information given by the Operator to operators of aircraft, the general public or to any other person or entity, with respect to the operation of the Heliport shall be subject to the prior written approval of the Department and the Operator shall not give any such information without such approval. It is understood that the foregoing applies and pertains to the status of the Operator as the operator of the Heliport under this Agreement and not to the Operator's own business operations at the Heliport as and to the extent they are authorized under this Agreement.

Section 45.   (Reserved)

Section 46.   Condition of Premises

(a) The Operator hereby acknowledges that it has not relied upon any representation or statement of the Department or its Commissioner, officers, employees or agents as to the condition of the Premises.

(b) Without limiting the generality of Section 16 and subject to the terms and provisions thereof the Operator understands and acknowledges that the Department may be performing certain work in connection with the construction of

37

route 9A. It is contemplated that such work will be completed and during the term of this Agreement and the Department shall have the right of ingress and egress upon, over and through the Premises and the use thereof for the purpose of performing the work and the Operator shall make the Premises, or any portion thereof as may be specified from time to time by the Department, available to the Department for the performance of the work upon reasonable notice. No occupancy of the Premises by the Department for the purpose of performing the work or the performance of the work shall be or be deemed an eviction or constructive eviction of the Operator or provide for any abatement or diminution of fees nor give rise to any claim or demand by the Operator for damages, either direct or consequential by reason thereof. If, in the judgment of the Operator, such work in connection with the construction of Route 9A interferes with the operations of the Heliport, the Operator may terminate this Agreement upon thirty (30) days notice to the Department. Nothing in this Section shall or shall be construed to impose upon the Department any obligations so to construct or maintain or to make repairs, replacements, alterations or additions, or shall create any liability for any failure so to do.

Section 47.   <u>Security Deposit</u>

The permittee acknowledges the State's right to collect a security deposit. This sum will be retained as security to ensure faithful performance of the permit and compliance with all terms by the permittee. The State hereby acknowledges receipt of $10,210.00 received on 3/20/96 by _Beverly Caputo_

(Dept. Rep.'s Signature)

Section 49.   <u>Substitute Operator and Carryover</u>

The Parties recognizes the benefit of a heliport as a public transportation facility on the west side of Manhattan, desire to continue its operation as long as possible, and recognize the benefit of interim improvements by the Operator provided for herein. The Parties agree that the authority to terminate this Agreement pursuant to Section 41 will not be exercised for the purpose of substituting or benefitting another operator, on or off the Premises, or change the location of the heliport, and (b) upon any taking, condemnation or other termination prior to the Expiration Date, other than as a result of a breach by the Operator, to the extent that the Department

38

has other vacant property available and which may be suitable to the purpose, the Department shall so inform the Operator who may pursue permission to use such property as an interim heliport.

Section 49.   **Definitions**

The following terms, when used in this Agreement shall, unless the context shall require otherwise, have the respective meanings given below:

a) "Heliport" shall mean the land and lands under water in the City of New York, in the Borough of Manhattan which are shown in "Exhibits A".

c) "Premises" shall mean and include the land, lands under water, bulkhead, bulkhead level decking and pilings, the buildings, structures and other improvements thereon, the equipment, permanently affixed or permanently located therein such as electrical, plumbing, sprinkler or fire protection or fire alarm, heating, steam, sewerage, drainage, refrigeration, communications, gas and other systems and their pipes, wires, mains, lines, tubes, conduits equipment and fixtures and all paving, drain, culverts, ditches and catch basins.

(d) "Aircraft" shall mean helicopters.

(e) "Agreement", "Contract" or "this Agreement" shall mean this Form of Contract.

f) "Manager" shall mean the person or persons from time to time designated by the Department to exercise the powers and functions vested in the said Manager by this Agreement.

g) "Term" shall mean the term of this Agreement.

h) "Fuel Operations" shall mean the operation of the fuel storage facilities and the dispensing an delivery of aviation fuel into aircraft.

Section 50.   **Entire Agreement; No Third Party Beneficiaries**

This Agreement consists of the following: The Preamble, Sections 1 to 50, inclusive, together with Exhibits A, B, C, D, E and F. It constitutes the entire Agreement of the parties on the subject matter hereof, may not be changed, modified, discharged or extended except by written instrument duly executed by the Department and the Operator, and shall not

39

confer upon any person or entity other than the parties hereto any rights or remedies hereunder.

The Operator agrees that no representations or warranties shall be binding upon the parties unless expressed in writing in this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused these presents to be executed as of the day and year first above written.

ATTEST:                              AIR PEGASUS HELIPORT, INC.

_____              By: _____
    Secretary

                                     (Title)_____President
                                          (Corporate Seal)

41

STATE OF NEW JERSEY
                    SS
COUNTY OF MORRIS

On the 1st day of March 1996, before me personally came Jeff Ellenruck to me known, who, being duly sworn, did depose, and say that he resides at 40 Pine Drive, in Roosevelt, New Jersey That before him personally came Alvin S Trenk, known to him as the President of Air Pegasus Heliport, Inc., the corporation described in and which executed the foregoing instrument. That he is the Secretary of Air Pegasus Heliport, Inc., the corporation described in and which executed the foregoing instrument; that he signed his name thereto by order of the Board of Directors of said corporation

_____
Notary Public

JEANETTE T. THOMPSON
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires June 2, 1997

APPROVED:

Commissioner of Transportation for the
People of The State of New York

By _____
Date April 10, 1996

Director, Real Estate Division

42

III. FREE USE OF PUBLIC LANDING AREA

Notwithstanding the provisions of any Schedule of Charges heretofore adopted for the use of the West 30th Street Heliport, no charges shall be made for the use including parking of such areas at the Heliport by the following aircraft:

1. Aircraft operated by the Federal Government.

2. Aircraft owned or chartered by the State of New York or the City of New York.

3. Aircraft operated by the United State Coast Guard when engaged in the execution of search and rescue and law enforcement duties.

Exhibit F

List of equipment to be furnished by the Operator

1. Sufficient approved type aircraft wheel chocks.

2. Cleaning and toilet supplies.

3. First aid locker together with first aid equipment.

44

**EXHIBIT F**

1. One 15 lb., 2-wheel CO-2 fire extinguisher.

2. One 2-way radio capable of receiving and transmitting on a frequency of 123.05 megacycles (VHF), or such other frequency designated by the appropriate governmental authority.

3. One reserve flotation craft.

4. 3 existing air conditioners.

5. Wind Indicating and Recording Equipment.