other source, in furtherance of the performance of the trust's functions, duties and authority under this act; and
  (xiii) to prepare and approve an annual budget for its operations.
  (e) to work with the state, the city of New York, agencies and instrumentalities thereof and other public and private entities in order to develop interim programming for both recreational and revenue-producing uses within the boundaries of the park;
  (f) to provide for meaningful public notice, participation, consultation and review in the planning, development and operation of the park, which shall include, but not limited to (i) consultation with community boards one, two and four within the Borough of Manhattan, the Advisory Council, elected officials representing communities neighboring the park and appropriate community, civic and advocacy organizations and (ii) timely and reasonable notification to such individuals and groups and appropriate news media of each meeting of the trust and any public hearings regarding significant plans or proposed actions with respect to the park;
  (g) to develop and oversee an annual financing plan that will combine contributions from the federal government, the state, the city of New York and private sources for the planning and development of the park;
  (h) to contract with any governmental entity for the trust to operate and maintain any public property (that could be acquired to be added to the park under this act) as if it were part of the park; and
  (i) to regulate the safe operation of vessels within the pier head line.
  2. The trust shall not be authorized to issue bonds, notes or other similar obligations, whether or not negotiable or to contract to pay debt service on such obligations issued by any other entity. The trust shall not have the power of eminent domain and shall not be authorized to acquire or hold title to real property. The trust shall not provide direct financial assistance to attract, expand or retain a business within the park.
  3. (a) All legal and equitable title to or in any real property within the boundaries of the park which is currently held by either the state or the city of New York shall remain with the state or city of New York respectively. Upon the taking effect of this act, authority with respect to such real property shall be exercised by: (i) the New York state office of parks, recreation and historic preservation in the case of real property held by the state (other than underwater lands held by the state); (ii) the New York state department of environmental conservation in the case of underwater lands held by the state; and (iii) the city of New York department of parks and recreation in the case of real property held by the city of New York; all without further act or deed or transfer, subject to such leases, permits, licenses, liens, easements and other encumbrances relating thereto as may lawfully exist at such time.
  (b) Upon the coming into existence of the trust, it shall exercise its rights, powers, responsibilities, and duties with

respect to the park under this act. The state and the city of New York, each with respect to its real property in the park, shall expeditiously enter into agreements with the trust, whether by lease or otherwise, for a term not to exceed 99 years and execute such other instruments as necessary, whereby the trust shall receive a possessory interest in the real property and exercise its rights, powers, responsibilities, and duties, all in accordance with this act.

(c) No part of the real property in the park may be alienated, sold or otherwise disposed of (except for any lease, license or other encumbrance consistent with this act) other than by act of the legislature and, in the case of real property held by the city of New York, without compliance with the uniform land use review procedures of the city of New York or any successor law.

(d) Any personal property owned by the Hudson river park conservancy shall, upon the coming into existence of the trust, be transferred to the trust immediately and without consideration.

4. The trust shall be subject to article 8 of the environmental conservation law. If a general project plan and findings statement under that article has been adopted prior to the coming into existence of the trust and the general project plan is consistent with the use limitations in this act, then that general project plan shall constitute the general project plan for the park. However, if such a general project plan and findings statement has not been adopted at that time, or the plan is not consistent with the use limitations in this act, then the trust shall continue the preparation of an environmental impact statement in accordance with the ongoing state environmental quality review processes begun by its predecessors and shall act as lead agency in connection therewith in order that there shall be no interruption or impediment to that process as a result of this act. Such use by the trust of the environmental impact statement begun by the New York state urban development corporation and Hudson river park conservancy shall not be deemed illegal or an objection under article 8 of the environmental conservation law. Unless the context clearly requires otherwise, any reference to the urban development corporation doing business as the empire state development corporation and Hudson river park conservancy in the final environmental impact statement or any other document that is part of the process of developing or approving the general project plan, or in the general project plan itself, shall be deemed to refer to and may be amended to refer to the Hudson river park trust, and such referral and amendment shall not be deemed illegal or an objection under article 8 of the environmental conservation law. The plan resulting from such environmental review process shall be consistent with this act and shall be the basis for the design and development of the park and be known as the general project plan.

5. The only uses or structures within the park which shall not be subject to zoning and other land use laws and regulations of the city of New York shall be passive and active public open space uses.

6. In the case of any proposed significant action affecting the park or community, including the adoption of, and any amendment

to, the general project plan or the annual financing plan, the trust shall:
  (a) hold a public hearing on not less than 30 days' advance public notice;
  (b) solicit and consider the views of Manhattan community boards one, two, and four, the planning commission of the city of New York, the advisory council, elected officials representing communities neighboring the park, and interested groups and individuals, allowing not less than sixty days following the notice of the proposed action for the submission of such views; and
  (c) publish notice of the hearing and proposed action in the city record and state register.
  7. No later than February 1 of each year following the effective date of this act and within 60 days after the later of the effective date of this act or the adoption of the general project plan or any amendment, the trust shall deliver to the governor, the speaker of the assembly, the temporary president of the senate, the state comptroller, the mayor of the city of New York, the speaker of the city council of the city of New York, the comptroller of the city of New York and community boards one, two, and four within the borough of Manhattan, a current copy of the annual financing plan and any amendments to the general project plan for the park and the trust shall, within the same time, make such plan and a current copy of its regulations available for public inspection during business hours at the offices of the trust within the city of New York.
  8. The park shall be developed, operated, and maintained for permitted uses only, and in compliance with the general project plan and rules and regulations adopted by the trust. In making a determination with respect to particular uses, the trust shall find and determine that the permitted uses, when viewed in light of other permitted uses in the park, are consistent with the purposes of this act, the general project plan and the rules and regulations promulgated pursuant to this act.
  9. Subject to all existing leases, permits, licenses or other instruments in effect on the effective date of this act, the following piers and areas within the park shall be subject to the following additional provisions:
  (a) Piers 25, 26, 32, 34, 42, 45, 46, 51, 54, 62, 63, 64, 66 and the adjacent float bridge, 84, 95, and 96, shall be used solely for park use. The foregoing listing of piers is not intended to describe all the piers which may be limited to park use; this is the minimum number limited to park use, and the final determination of all the piers to be limited to park use shall rather be made by the general project plan.
  (b) No less than the equivalent of fifty percent of the footprint of Pier 40 shall be passive and active public open space; provided that up to one hundred percent of this pier may be limited to park use by the general project plan. Notwithstanding any other provision of this act to the contrary, Pier 40 may be used for parking for passenger vehicles with a seating capacity of 10 passengers or less, provided however such use shall be predominantly for long-term parking.

(c) The city of New York shall use best efforts to relocate the tow pound on Pier 76. Subsequent to relocation of the tow pound, the city of New York shall convey to the trust a possessoryinterest in fifty percent of Pier 76 for passive and active public open space use for a period not to exceed 99 years, provided that such open space portion of Pier 76 shall be contiguous to water. Upon such conveyance, the portion so conveyed will become part of the park and will be used solely for passive and active public open space uses.

(d) Upon the relocation of any incompatible governmental uses, the Gansevoort peninsula, or any portion thereof from which such incompatible governmental uses are removed, shall be used solely for park use (of which at least eighty percent shall be passive and active public open space uses), plus the marine company one fireboat station on Pier 53; provided however the city of New York shall use its best efforts for the relocation of the sanitation garage and by December 31, 2003 relocate the salt pile and remove the incinerator.

(e) Upon expiration or earlier termination of the lease of the structure adjacent to Pier 63 currently used for a private equestrian, marine, and basketball center, such structure and barge shall be removed as soon as practical, and the land area bounded by the Chelsea Piers headhouse and the south side of Pier 62 on the south, the Hudson River on the west, Route 9-A on the east and 24th Street extended on the north (Chelsea Waterside Park) shall be used solely for park use (of which at least eighty percent shall be passive and active public open space uses).

(f) Upon the expiration or earlier termination of any applicable leases or other agreements, the land area bounded by the southern boundary of West 54th street extended on the south, the Hudson River on the west, Route 9-A on the east and 57th Street extended on the north, but not including the existing Pier 94 headhouse (Clinton Cove Park) shall be used solely for park use (of which at least eighty percent shall be passive and active public open space uses), subject to adequate access to Route 9A in front of the headhouse.

(g) All sanitation uses at Pier 97 will be relocated by December 31, 2003, after which, Pier 97 shall be used solely for park use (of which at least eighty percent shall be passive and active public open space uses).

(h) On each of the piers identified in paragraph (a) of this subdivision (i) not less than eighty percent of the surface area of each such pier shall be used solely for passive and active public open space uses, or for habitat and wildlife protection in the case of any pier for that purpose, and (ii) not more than ten percent of the surface area of each such pier shall be covered by enclosed structures; provided that at Pier 26, the coverage limitation shall be fifteen percent and at Pier 64, the existing structures at that pier (or any portions thereof) may be retained for permitted park uses without regard to the requirements of subparagraphs (i) and (ii) of this paragraph.

(i) Consistent with the general project plan, the area of the park east of the bulkhead line shall be used solely for park use and to permit access to permitted uses; provided that this

limitation shall not apply to those areas east of the bulkhead line that are occupied by pier headhouses or other pier-related structures at the base of piers 57, 59, 60, and 61.

9-a. The trust shall, to the maximum extent practicable, maintain open view corridors to the Hudson river from streets running towards and away from the park.

10. (a) The trust shall receive and have exclusive title to all rents, fees, and other revenues required to be transferred to it under paragraph (b) of this subdivision and also to all rents, fees, and other revenues paid or to be paid to it pursuant to any lease, concession arrangement, license or other agreement relating to any part of the park, made by it or any predecessor, and all such monies shall be used solely for constructing, improving, operating and maintaining the park including, but not limited to, capital improvements which facilitate park uses and park/commercial uses.

(b) All net revenues paid to the state of New York or any instrumentality thereof, the New York state urban development corporation, the Hudson river park conservancy, the city of New York or any instrumentality thereof, or the New York city economic development corporation, pursuant to any lease, concession agreement, license or other agreement relating to any part of the park, and any such revenues hereafter paid to and in the possession of any of those entities, except for revenues from any agreements for Pier 79, and not already appropriated to the Hudson River Park Fund or otherwise committed prior to the taking effect of this act, shall be expeditiously transferred by that entity to the trust and be subject to paragraph (a) of this subdivision. With respect to Pier 79 of the city of New York shall pay the trust for a period of 5 years commencing from the effective date of this act, fifteen percent of any revenues it receives from any lease, concession agreement, license or other agreement relating to such pier, and for the period thereafter, the city of New York shall pay to the trust twenty percent of any such revenues.

(c) With respect to piers 88, 90, 92 and 94 the city of New York shall pay to the trust for a period of 5 years commencing from the effective date of this act, fifteen percent of any revenues it receives from any lease, concession agreement, license or other agreement relating to such piers, and for the period thereafter, the city of New York shall pay to the trust twenty percent of any such revenues.

11. Except as otherwise provided in paragraph (b) of subdivision 3 of this section, the trust may not enter into a lease, concession agreement, license or other agreement relating to any part of the park for periods in excess of thirty years in total; provided that any such agreement for a period in excess of ten years shall be for the purpose of assuring a lessee, licensee, concessionaire or other party to an agreement with adequate protection against loss of investments in developing, renovating, improving, furnishing, and equipping properties within the park. Any proposed lease, concession agreement, license or other agreement by the trust for a period in excess of ten years shall constitute a proposed significant action subject to the requirements of subdivision six of this section. The trust shall

promulgate rules and regulations governing leases, concession agreements, licenses or other agreements. Such rules and regulations shall require the trust to issue a bid prospectus for any leases, concession agreements, licenses and other agreements which would provide for a total capital investment in the park of no less than one million dollars over the proposed term of the agreement. The bid prospectus submitted to prospective bidders shall contain specific information concerning the nature of the capital improvements or equipment to be provided by the successful bidder and shall be provided to community boards one, two and four within the borough of Manhattan.

12. The accounts, records, and performance of the trust shall be subject to annual audit by the comptrollers of the state and city of New York, in accordance with the procedural requirements governing audits under the laws of such jurisdictions.

13. At all times, the trust shall take all reasonable and necessary steps to prevent and eliminate prohibited uses in the park, subject to the exceptions contained in this act.

14. The trust may establish and finance staff or consultant positions to serve as liaisons to the trust for each of community boards one, two, and four in the borough of Manhattan. Each community board shall select the person to serve as its liaison.

15. The state and the city of New York may each acquire real property adjacent to the park or adjacent to state route 9-A to be added to the park pursuant to the general project plan.

Sec. 8

s 8. Hudson river park estuarine sanctuary. 1. The area of the Hudson river within the Hudson river park is an important habitat for many marine and estuarine species including striped bass. Therefore, the water section is hereby designated as the Hudson river park estuarine sanctuary under and subject to the environmental conservation law including the Hudson river estuary management program established pursuant to section 11-0306 thereunder, andshall be subject to the rules, regulations and guidelines of the state department of environmental conservation applicable to that program, as well as subject to the restrictions and limitations set forth in this act.

2. The trust shall, in conformity with the rules and regulations of the state department of environmental conservation, and in consultation with the state department of environmental conservation, the New York city department of environmental protection, other appropriate state, local and federal agencies, and such educational and research institutions as the trust may select, develop a management plan consistent with this act for the water section and the marine environments under the piers that will provide for:

(a) conservation of the marine resources found in the area, with special consideration for habitat values;

(b) environmental education and research;

(c) public recreational use of the water section, including boating, fishing and swimming;

(d) in the portions of the water section adjacent to park/commercial uses, authorized commercial maritime uses; and

(e) other water dependent uses permitted in the water section

under this act.
  The plan may include water surface zones including the establishment of sanctuary/preserve areas and areas where motorized or non-motorized vessels are or are not permitted, and restrictions on noise and other potential nuisance conditions. The plan shall be subject to the approval of the state department of environmental conservation. Pending such approval, existing activities permitted by this act may continue in the water section, provided that particular new activities may be permitted, and particular existing activities may be restricted or prohibited, by the trust consistent with this act with the approval of the state department of environmental conservation. The trust shall have the power to determine where water dependent activities are to occur, subject to the plan under this subdivision and in conformity with the rules and regulations of the state department of environmental conservation.
  3. In addition to the limitations imposed through the adoption of the management plan, within the water section:
  (a) Only water dependent uses shall be permitted.
  (b) No person shall excavate, place fill or place any piling, platform or structure in the Hudson river.
  (c) Paragraph (b) of this subdivision shall not prohibit floating structures, and lateral stabilizing elements to secure such floating structures, for water dependent uses; minor improvements along the shore front including bulkhead and other repairs, habitat restoration, and platforms either for a waterfront esplanade or to allow public access to the Hudson river; subject to the limitation that, in the aggregate, no more than eight acres of the water section may be covered or altered by floating structures or minor improvements at any time. Any building or other structure constructed on a floating structure must be limited to water dependent uses and may not exceed one story. No dredge spoils shall be allowed for any purpose. Nothing in this subdivision shall impair the ability of the trust or other persons to maintain navigability or maintain, reconstruct and repair the piers and bulkheads existing and as depicted in the May 20, 1998 final environmental impact statement within their historic footprints or boundaries subject to a determination by the department of environmental conservation that, to the maximum extent practicable, any significant adverse impact on the marine environment resulting from such maintenance, reconstruction or repair will be minimized or avoided.
  4. In addition to any other permit or approval that may be required by state or federal law, notwithstanding any other law, rule or regulation to the contrary, floating structures in the park shall be subject to the review authority vested in the department of environmental conservation under title 5 of article 15 of the environmental conservation law. No floating structure shall be authorized unless such department determines that such floating structure would have no significant adverse impact on the marine environment and appropriate consideration is given to the feasibility of land based alternatives to the proposed use. The department of environmental conservation shall include in any permit issued, such conditions and limitations as will ensure

compliance with the intent of this section and the purposes of this act. For purposes of this subdivision, the department of environmental conservation may exercise review authority regarding historic ships or vessels and floating structures intended to be moored or attached for a period less than six months if the department determines such ships, vessels, or structures may have a significant adverse impact on the marine environment.

Sec. 8-a

s 8-a. Notwithstanding any provision of law to the contrary the Hudson River Park Trust shall establish the Hudson River Park purposes account and other sub-accounts which may be necessary or convenient for the authorized purposes of the trust within the treasury of such trust which shall reflect and consist of all funds made available to the trust at any time, from any sources, for its authorized purposes.

Such account and sub-accounts shall be included in detailed quarterly reports of the trust commencing with the quarterly report for the period immediately preceding January 1, 1999, which set forth the status of the account and sub- accounts the amount in such account at the beginning of such quarter (from and including the entire period for the first day of the operative calendar year), the payments of such account, and the amount in such account at the close of such quarter (to and including the entire period of the last day of the operative calendar year). Such detailed quarterly reports shall be prepared and submitted within 30 days of the close of the fiscal quarter of the trust, to the governor, the speaker of the assembly, the temporary president of the senate, the state comptroller, the chair of the senate finance committee, the chair of the Assembly ways and means committee, the Mayor of the City of New York, the Speaker of the City Council of the City of New York, the Comptroller of the City of New York, and community boards one, two and four within the borough of Manhattan.

Sec. 9

s 9. Moneys of trust. All moneys of the trust from whatever source derived shall be paid to the treasurer of the trust and shall be deposited forthwith in one or more banks or trust companies in the state, as designated by the trust. The moneys in such accounts shall be paid out by the treasurer of the trust upon requisition by the chairperson of the board or of such officer or officers as the board may authorize. Any moneys of the trust not required for immediate use or disbursement may, at the discretion of the trust, be invested in those obligations specified pursuant to section 98-a of the state finance law.

Sec. 10

s 10. Other state laws and agencies. 1. The trust shall be subject to articles 6 and 7 of the public officers law.

2. Whenever in the opinion of the trust it would be in the public interest, it may, after approval of the director of the budget or the director of the office of management and budget of the city of New York as the case may be, request the temporary assignment and transfer of certain employees of any board, commission, agency or department of the state or the city of New York, and said board, commission, agency or department, if in the opinion of the

transferring agency such transfer will not interfere with the performance of its duties and functions, may make such assignment and transfer or extension thereof which shall not in any way affect the civil service status, continuity of service, retirement plan status, right to compensation, grade or compensation or the rights or privileges of any employee so transferred.

3. For purposes of sections 220 and 230 of the labor law, the state commissioner of labor and the comptroller of the city of New York shall both be deemed the fiscal officer for the trust.

4. The trust shall be subject to article 9 of the public authorities law, and its contracts shall be subject to section 135 of the state finance law and the provisions of statelaw pertaining to prevailing wages, labor standards and working hours. The trust shall be deemed a "state agency" for purposes of article 15-A of the executive law and its contracts for procurement, design, construction, services and materials shall be deemed state contracts within the meaning of that term as set forth in such article 15-A.

Sec. 11

s 11. Notice of tort. In an action against the trust founded upon tort, (a) a notice of claim shall be required as a condition precedent to the commencement of an action or special proceeding against the trust or any officer, appointee or employee thereof, and the provisions of section 50-e of the general municipal law shall govern the giving of such notice and (b) the complaint shall contain an allegation that at least 30 days have elapsed since the demand, claim or claims upon which the action is founded were presented to a member of the trust's board of directors and to the trust's secretary and that the trust has neglected or refused to make an adjustment or payment thereof for 30 days after such presentment. No such action shall be commenced more than one year after the cause of action therefor shall have accrued, except action against the trust for wrongful death which is commenced in accordance with the notice of claim and time limitation provisions of title 11 of article 9 of the public authorities law.

Sec. 12

s 12. Tax exemptions. It is hereby determined that the creation of the trust and the carrying out of its corporate purposes is in all respects for the benefit of the people of the state and is a public purpose, and the trust shall be regarded as performing a governmental function in the exercise of the powers conferred upon it by this act. In furtherance of the same and notwithstanding any other provision of any other law to the contrary:

(a) The income, monies, operations and properties of the trust shall be exempt from taxation, including without limitation any and all state and local income, franchise, transfer, recording, real property and sales taxation and any assessments of payments in lieu of taxes.

(b) Any real property taxes or payments in lieu of taxes payable by any enterprise operating within the park to the city of New York shall be paid to the trust following the coming into existence of the trust and the city of New York shall promptly remit any such payments received after such time to the trust. All contributions of personal property made to the trust whether

by gift, devise or bequest shall qualify as deductions in computing the net taxable income of the donor for the purposes of any income tax imposed by the state or any political subdivision thereof.
Sec. 13
  s 13. Offenses. 1. Unless otherwise provided, any person who violates any rule or regulation adopted pursuant to this act, shall be guilty of a violation punishable solely by a fine not to exceed five hundred dollars.
  2. This section shall not be construed to preclude any other legal or equitable remedy for any violation of this act or any rule or regulation adopted pursuant to it.
Sec. 14
  s 14. Additional provisions. 1. All of the Hudson river park shall be subject to the provisions of section 382-a of chapter 190 of the laws of 1990 to the extent such provisions are not inconsistent with the provisions of this act. Notwithstanding the foregoing, no activity or use of any pier or other area within the park which is not permitted under that law shall be deemed permitted under this act, except that the minor shore front improvements permitted under paragraph (b) of subdivision three of section eight of this act shall be permitted notwithstanding the provisions of that law.
  2. This act shall not be construed to bar the construction or maintenance of state highway route 9-A, including its bikeway, walkway and sidewalks, nor to affect the procedures or criteria for design, approval or construction of state highway route 9-A.
  3. This act shall not be construed to prohibit in any portion of the park the construction of facilities for safety purposes.
Sec. 15
  s 15. Hudson river park advisory council. 1. There is hereby created the Hudson river park advisory council. All members of the Hudson river park advisory council shall reside in the state, and shall be representatives of local community, park, environmental, civic, labor and business organizations, and elected officials representing communities neighboring the park.
  2. Upon the coming into existence of the trust, the existing members of the Hudson river park conservancy advisory board shall constitute, and are appointed as the initial members of the Hudson river park advisory council and the advisory council shall assume all of the duties and responsibilities of the advisory board. Thereafter, members of the advisory council shall be appointed as provided in the by-laws of the trust, under subdivision one of this section.
  3. In addition to the advisory council members pursuant to subdivisions one and two of this section, two members shall be appointed by the majority leader of the senate; one member shall be appointed by the minority leader of the senate; two members shall be appointed by the speaker of the assembly; one member shall be appointed by the minority leader of the assembly; two members shall be appointed by the speaker of the New York city council; and one member shall be appointed by the minority leader of the New York city council. Each of the advisory council members shall serve at the pleasure of the appointing official or