UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
NEW YORK HELICOPTER CHARTER, INC. and :
MICHAEL ROTH individually
                                                    :     07 Civ. 4069
                         Plaintiffs
                                                    :
        -against-
                                                    :
AIR PEGASUS HELIPORT, INC, HUDSON RIVER
PARK TRUST and the FEDERAL AVIATION                 :
ADMINISTRATION
                                                    :
                         Defendants
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OF LAW BY DEFENDANT AIR PEGASUS
HELIPORT, INC IN OPPOSITION TO
PLAINTIFFS' APPLICATION FOR INJUNCTIVE RELIEF**


                                    Leon Friedman (LF#7124)
                                    148 East 78th Street
                                    New York, N.Y. 10021
                                    (212) 737-0400
                                    Attorney for Defendant
                                    Air Pegasus Heliport, Inc.

Of counsel

    Christopher P. Gengaro
    Lentz & Gengaro

# TABLE OF CONTENTS

|  | Page |
|---|---|
| Preliminary Statement | 1 |
| STATEMENT OF THE CASE | 3 |
| ARGUMENT | |
| I.   THIS COURT LACKS JURISDICTION TO HEAR ANY OF PLAINTIFFS' CLAIMS | 4 |
|     A.   There is No State Action | 5 |
|     B.   No Constitutional Right was Violated | 8 |
| II.  NO CLAIMS CAN BE BROUGHT UNDER THE AIRLINE DEREGULATION ACT | 10 |
| III. THIS COURT MUST ABSTAIN FROM HEARING THIS CASE IN VIEW OF THE PENDING STATE COURT ACTION INVOLVING THE SAME PARTIES AND THE SAME CLAIMS | 14 |
| CONCLUSION | 16 |

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abdu-Brissonv. Delta Airlines, Inc.*, 127 F.3d 77 (2d Cir. 1997) ........................................ 11

*America Manufacturers Mutual Insurance Co. v. Sullivan*, 526 U.S. 40 (1999) ................ 5

*American Airlines v. Wolens*, 513 U.S. 219 (1995) ............................................................ 11

*Blum v. Yaretsky*, 457 U.S. 991 (1982) ................................................................................ 6

*Clubside, Inc. v. Valentin*, 468 F.3d 144 (2d Cir. 2006) ...................................................... 8

*Colorado River Conservation District v. United States*, 424 U.S. 800 (1976) .............. 2, 15

*County of Sacremento v. Lewis*, 523 U.S. 833 (1998) ....................................................... 10

*International Society for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672 (1992) .......... 6

*Kaluczky v. City of White Plains*, 57 F.3d 202 (2d Cir. 1995) ........................................... 10

*Lake Mohave Boat Owners Associate v. National Park Service*, 78 F.3d 1360 (9th Cir. 1996) ........................................................................................................................ 9

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) ............................................................. 5

*Morales v. Trans Word Airlines*, 504 U.S. 374 (1992) ...................................................... 11

*Moses H. Cone Mem'l Hospital v. Mercury Construction Corp.*, 460 U.S. 1 (1983) ........................................................................................................................... 15

*National Union Fire Insurance Co. of Pittsburgh, Pa. v. Karp*, 108 F.3d 17 (2d Cir.1997) ..................................................................................................................... 15

*Neilson v. D'Angelis*, 409 F.3d 100 (2d Cir.2005) .............................................................. 8

*SeaAir New York, Inc. v. City of New York*, 250 F.3d 183 (2d Cir. 2001) .................... 9, 10

*Smith v. Comair, Inc.*, 134 F.3d 254 (4th Cir. 1998) .......................................................... 12

*Travel All over the World v. Kingdom of Saudi Arabia and Saudi Arabian Airlines*, 73 F.3d 1423 (7th Cir. 1996) ............................................................................. 11

*United Airlines, Inc. v. Mesa Airlines*, 219 F.3d 605 (7th Cir. 2000) ........................... 12, 13

*United States v. International Brotherhood of Teamsters*, 941 F.2d 1292 (2d Cir.1991) .................................................................................................. 5

*United States v. Pikna*, 880 F.2d 1578 (2d Cir.1989) ....................................... 15

*Village of Westfield v. Welch's*, 170 F.3d 116 (2d Cir.1999) ............................ 14

## FEDERAL STATUTES

42 U.S.C. § 1983 .................................................................................................. 4

49 U.S.C. § 41713(b)(1) (emphasis added) ........................................................ 2

Airline Deregulation Act, 49 U.S.C. § 41713(b) .............................................. 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
NEW YORK HELICOPTER CHARTER, INC. and
MICHAEL ROTH individually

                                  Plaintiffs

               -against-

AIR PEGASUS HELIPORT, INC, HUDSON RIVER
PARK TRUST and the FEDERAL AVIATION
ADMINISTRATION

                                  Defendants

07 Civ. 4069

------------------------------------------------------------x

## MEMORANDUM OF LAW BY DEFENDANT AIR PEGASUS HELIPORT, INC IN OPPOSITION TO PLAINTIFFS' APPLICATION FOR INJUNCTIVE RELIEF

Preliminary Statement

       As shown by the parallel motion to dismiss filed by both defendants in this action, this court lacks jurisdiction over the plaintiffs' claims. There are no valid federal causes of action asserted in the complaint. The claims under Section 1983 must fail since defendant Air Pegasus Heliport, Inc. ("APH") is not a state actor. It is a private company exercising private power. Even if it were such an actor, in raising rates (and revoking plaintiff New York Helicopter Charter, Inc.'s ["NYHC"] right to use the 30th Street Heliport because of its violation of the settlement agreement between the parties) APH did not invade any constitutional right of plaintiffs. There is no equal protection or due process violation described in the complaint, nor was there any state law or regulation that gave them a "property right" to continue to operate at the Heliport.

       Nor is there jurisdiction under the Airline Deregulation Act. That law covers the following conduct: "A *State, political subdivision of a State or political authority of at*

1

*least two states* . . may not enact or enforce a law, regulation or other provision having the force and effect of law, related to the price, route or service of an air carrier." (49 U.S.C § 41713(b)(1) (emphasis added). Neither APH nor the Hudson River Park Trust ("HRPT") is a "State, political subdivision of a state or a political authority of two states." APH is a private entity and HRPT is a public benefit corporation, as described in its papers. It is not enough for an entity to be a state actor (which APH is not under any circumstances). It must be a political entity capable of enacting "a law, regulation or other provision having the force and effect of law," such as the City of New York. Nor are heliport rates charged to helicopter operators related to the "price, route or service" of an air carrier. Thus no part of the law applies here.

Beyond the legal problems connected with the case, plaintiffs cannot show any irreparable injury. The moving affidavit by Michael Roth states that he was informed that the Downtown Manhattan Heliport (where NYHC operates on weekends) will be shutdown "on all weekend days" and this shutdown "will continue indefinitely." (Roth Aff. par. 9, 11.) However, we understand that the shutdown will occur only on Sundays, and it is a temporary shutdown for the purpose of repaving the facility. Thus the shutdown is only temporary, hardly the basis for showing "irreparable injury."

Finally, under the doctrine of "Colorado River" abstention, this court must abstain from hearing this motion since there are parallel state and federal proceedings involving the same parties seeking the same relief. *Colorado River Conservation District v. United States*, 424 U.S. 800 (1976).

For all of those reasons, the motion for a preliminary injunction must be denied.

**STATEMENT OF THE CASE**

The moving papers make only a passing reference to other law suits which parallel this one. In 2004, Plaintiff NYHC had filed an earlier law suit against APH after it was terminated from the 30th Street Heliport for failure to follow proper rules and procedures governing its operation. (See Exhibit A to Declaration of Steven Trenk, dated October 16, 2007). That case was settled by a settlement agreement dated April 28, 2005 (See Exhibit B to Trenk Decl.). One of the provisions of that settlement agreement was that "NYH shall comply with all of APH's and the HRPT's rules, regulations and procedures." In particular NYHC agreed not to "sell tickets, collect payment, solicit or loiter on the Heliport grounds, in the Trailer in the Heliport parking lot, or on the sidewalk in front of the Heliport." (par. 3).

Thereafter, in 2006 NYHC was terminated for failure to make required payments to APH. (Trenk Decl. par. 5). It brought a second action (in April 2006) in State Supreme Court against the same defendants as in this action, complaining about the termination and also complaining that it was paying higher rates than other operators at the Heliport, precisely the same claim as in the current federal complaint. (See Exhibit C to Trenk Decl.). The relief sought in that case is exactly the same as part of the relief sought in this one, requiring APH to afford NYHC the same discounts as it gives other operators. Once again, NYHC was allowed to return to the Heliport upon making proper payments, but the case continued with respect to the discriminatory rates issue.

Thereafter in June, 2007, NYHC was terminated again, this time for violating the prohibition described above in the 2006 settlement agreement, that is, for soliciting customers on Heliport grounds. (See Trenk Decl. par. 6). Immediately after the

3

termination, NYHC brought an order to show cause and a request for a preliminary injunction in state court *seeking exactly the same relief as it is seeking on this motion*, namely an injunction requiring APH to allow it to return to the Heliport. (See Exhibit D to Trenk Decl.). A preliminary injunction hearing was held before Justice Herman Kahn in that case in June, 2007 but he has not rendered a decision. (See Letter from Andrew E. Greene, dated October 10, 2007, Exhibit B to Roth Affidavit). Thus plaintiffs are seeking in federal court exactly the same relief as they sought in state court four months ago, based on a state court complaint that was filed in April 2006, eighteen months ago.

## ARGUMENT

### POINT I

### THIS COURT LACKS JURISDICTION TO HEAR ANY OF PLAINTIFFS' CLAIMS

For all of the reasons stated in detail in APH's Motion to Dismiss, this Court lacks jurisdiction over the claims. There are three sets of claims: (1) three causes of action against APH under 42 U.S.C. § 1983; (2) two claims against APH and HRPT under the Airline Deregulation Act: (3) and six pendent state causes of action (three solely against HRPT and three brought against both defendants) brought under Article 78 of the New York CPLR.

The last six causes of action must be dismissed outright since federal courts do not grant relief under Article 78. See discussion in Defendant APH's Memorandum in Support of Motion to Dismiss ("APHMD") at 22-25).

With respect to the claims under Section 1983, plaintiffs are required to show both (1) state action and (2) deprivation of a constitutional right. "Because the United

States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action'" *United States v. Int'l. Bhd. of Teamsters,* 941 F.2d 1292, 1295 (2d Cir.1991). "[S]tate action requires *both* an alleged constitutional deprivation 'caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible,' *and* that 'the party charged with the deprivation must be a person who may fairly be said to be a state actor.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50 (1999) (quoting *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982)). Plaintiffs can show neither part of the test.

A.   There is No State Action

There is no state action in this case. The complaint alleges that "Defendant Air Pegasus Heliport, Inc. . . .incorporated in May, 1996, is a Delaware corporation with its principal place of business in New Jersey." (Pl.Cmpl. par. 55). The complaint also alleges that APH is a "the sole and exclusive fixed base operator pursuant to a March 25, 1996 agreement . . .with the New York Department of Transportation . . .which the HRPT later assumed." *Id.* par. 56. The complaint further alleges that APH, acting on its own, imposed a new unjustified fee on Plaintiffs. *Id*, par 151-152; 166). Plaintiffs also allege that APH discriminated against Plaintiffs in rates it charged to other users of the facility. (*Id.* par. 145)

Thus the key legal issue is whether APH can be considered a state actor because it holds a permit from the Trust -- a governmental body -- to operate the Heliport and then made decisions on its own about pricing, discounts and termination of NYHC. All that

plaintiff can say is that HRPT engaged in "inappropriate delegation of authority" which allowed APH, "ostensibly a private party, to exert the full governmental authority of HRPT." (Compl. Par. 45). That hardly qualifies as a basis for asserting that APH is a state actor.

We discuss in detail the reasons why APH cannot be considered a state actor in our motion to dismiss. See APHMD at 7-15. The fact that a privately leased heliport was involved does not in any way make the operator a state actor. The operation of a heliport cannot in any sense be considered "traditionally the exclusive prerogative of the State" which is the test for state action. See *Blum v. Yaretsky*, 457 U.S. 991, 1004-05 (1982). The Supreme Court explained in a similar case dealing with the issue of whether airports are public forums, *International Society for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 680 (1992). It noted that airports are of comparative recent origin.

> Reflecting the general growth of the air travel industry, airport terminals have only recently achieved their contemporary size and character. . . Given the lateness with which the modern air terminal has made its appearance, it hardly qualifies for the description of having "immemorially . . . time out of mind" been held in the public trust and used for purposes of expressive activity.

The Court rejected the idea that the courts should examine "transportation nodes" generally for a clue as to what legal status an airport should enjoy. "When new methods of transportation develop, new methods for accommodating that transportation are also likely to be needed." 505 U.S. at 681.

In the *Krishna* case, the Court noted the lateness with which airports became publicly owned. In addition, heliports are different than airports generally. There are thousands of private heliports around the country, utilized by corporations, medical facilities, forest rangers, utility companies, news organizations, law enforcement, oil

riggers and resorts.[1] In the same way that airports cannot be considered traditional public forums, the operation of privately operated heliports, particularly with respect to charges to helicopters operators, cannot be considered "traditionally the exclusive prerogative of the State."

Nor is there any "entwinement" or "close nexus" between APH's decision to raise rates or to expel NYHC and any action by the Trust. Indeed the HRPT has denied any power over APH's decision to raise rates, and the Permit specifically allows APH to change its rates as it chooses. (Section 4 to Permit, attached as Exhibit D to Complaint). In addition, the Permit between APH and the Trust specifically denies that the agreement "confer[s] any person or entity other than the parties hereto any rights or remedies hereunder" Exhibit D to Complaint at Section 50. Thus no rights are conferred by the Permit on any third party.

Finally, no state actor has "exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed

---

[1] According to recent Congressional testimony by the President of the Helicopter Association International (HAI): "HAI members operate helicopters across a wide spectrum of uses, such as on-demand charter, commercial utility, corporate, law enforcement, emergency service, agriculture, as well as news gathering and private use. . . . . It is important to note that the majority of HAI members are small businessmen and women who operate in excess of 5,100 helicopters and fly more than 2.6 million hours per year. *The vast majority of these operations are actually conducted at private heliports and facilities in remote locations, without utilizing the services of FAA air traffic control or the need to operate to and from airports.* In fact, the very nature and capability of a helicopter in conjunction with the prime benefit of direct point-to-point transportation actually eliminates the operational need and desire to operate to and from airports." Testimony of Matthew Zuccaro, President of the Helicopter Association International, before the House Committee on Transportation and Infrastructure, Subcommittee on Aviation, March 23, 2007 (emphasis added).

to be that of the State." There is no claim that HRPT encouraged, ordered, coerced APH in any way,

B.  No Constitutional Right was Violated

As we demonstrated in our brief supporting the motion to dismiss, plaintiffs have not properly alleged the violation of any constitutional right. Plaintiffs have no "property right" in any particular rate, nor do they have a "property right" to remain as a helicopter operator based on the agreement it entered into with APH. The Second Circuit pointed out that a person has a "property interest" in an entitlement from a state actor only when the state actor "has virtually no discretion to deny the" request. *Clubside, Inc. v. Valentin*, 468 F.3d 144, 154 (2d Cir. 2006). Where there is no state actor (as in this case) and no entitlement of any kind to any rate based on any state law or regulation, there cannot be any deprivation of any property right.

The claims of an equal protection violation (first cause of action, pars. 142-49 ) is ludicrous since a difference in rates cannot be considered the type of differential in treatment that the equal protection clause was designed to protect. To succeed on an equal protection claim, a plaintiff must show that a state actor (not present here) "intentionally singled out [the plaintiff] for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose -- whether personal or otherwise -- is all but certain." *See Neilson v. D'Angelis,* 409 F.3d 100, 104 (2d Cir.2005).

No such claim will lie here. In a similar case, *SeaAir New York, Inc. v. City of New York*, 250 F.3d 183, 188 (2d Cir. 2001), the city restricted sightseeing flights by seaplanes around the city. The city claimed that because helicopters were not as

8

restricted, there was an equal protection violation. The Second Circuit rejected that argument.

> SeaAir's equal protection argument, although never clearly set forth on appeal, seems to rely on the noise differences between seaplanes and helicopters to claim that the City's restriction unfairly discriminates against seaplanes. SeaAir makes much of the fact that the district court mistakenly stated that seaplanes add more to ambient noise levels than do helicopters. However, given that helicopters do not even operate from the seaplane base and that, . . . the City has restricted helicopter sightseeing tours as well as seaplane tours in pursuit of a general policy against air tourism, we fail to see how the district court's mistake impacts the inevitable conclusion that there has been no equal protection violation here.

A second claim was that APH violated NYHC's procedural due process rights by imposing rate increases without a hearing. (Second cause of action, pars. 150-163). But such a right depends upon the showing that NYHC had a property right to lower rates, which it cannot show for the reasons stated above. It also requires a showing that some process is due the plaintiff. It is well-established that changes in rates do not require a hearing even if a state actor is involved. The Ninth Circuit explained in *Lake Mohave Boat Owners Assoc. v. National Park Service*, 78 F.3d 1360, 1369 (9th Cir. 1996):

> However, to maintain a due process claim, LMBOA must show that existing rules and regulations give its members a legitimate claim of entitlement to low marina rents. . . . We hold that general statutory language indicating a governmental purpose to provide parks for the public does not meet this requirement. We also hold that the requirement in § 20b that rates be "reasonable" does not give LMBOA a statutory entitlement to low marina rates.

Finally under no circumstances can APH's actions be considered a violation of NYHC's substantive due process rights (third cause of action, pars. 164-169). To state a substantive due process claim, a party must point to wholly arbitrary governmental conduct (not present here) that was "an exercise of power without any reasonable justification" that "shocks the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998). Such conduct must be "arbitrary, conscience-shocking or oppressive in a

9

constitutional sense," *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995). See also *SeaAir New York, Inc. v. City of New York*, 250 F.3d 183 (2d Cir, 2001) (restricting sightseeing flights by seaplanes did not violate substantive due process rights of sightseeing company). Nothing alleged in the complaint comes close to the standard quoted above.

Thus no claim will lie under Section 1983

## POINT II

### NO CLAIMS CAN BE BROUGHT UNDER THE AIRLINE DEREGULATION ACT

Two of the claims (Fourth and Fifth causes of Action) are brought under the Airline Deregulation Act, 49 U.S.C § 41713(b). That law reads: "A State, political subdivision of a State or political authority of at least two states . . . may not enact or enforce a law, regulation or other provision having the force and effect of law, related to the price, route or service of an air carrier." On the face of the statute, that law has no application here.

As noted above, even if APH were considered a state actor -- highly doubtful – that would not be enough to invoke the law. Only a very specific group of state actors are covered by the law. "A state, political subdivision of a State" who are capable of enacting or enforcing "a law, regulation or other provision having the force and effect of law."

Neither APH nor HRPT falls within that standard. Neither one are "political subdivisions of a State" capable of enacting or enforcing a law. APH is a private entity and HRPT is a public benefit corporation which no power to enact a law or regulation. The Second Circuit explained in *Abdu-Brissonv. Delta Airlines, Inc.*, 127 F.3d 77, 81 (2d Cir. 1997):

10

> In dismissing the complaint on the basis that the ADA preempted plaintiffs' state law claims, the district court read *Morales* and *Wolens* to formulate a two-part test. . . . . *Under the first part of the test, the plaintiffs' claims must involve the enforcement of a state law.* Under the second part, the state law must have a connection with or relation to airline prices, routes, or services. Plaintiffs acknowledge that *Morales* [*Morales v. Trans Word Airlines,* 504 U.S. 374, 378 (1992)] and *Wolens* [*American Airlines v. Wolens*, 513 U.S. 219 (1995) define a two-part test for analyzing ADA preemption issues, but plaintiffs challenge the district court's application of the second part of the test. (emphasis added).

Furthermore, the Supreme Court noted in quite broad language in *American Airlines v. Wolens*, 513 U.S. 219, 229 n. 5 (1995) that contracts are not within the preemptive language of the law: The Court explained: "A remedy confined to a contract's terms simply holds parties to their agreements -- in this instance, to business judgments an airline made public about its rates and services." 513 U.S. at 229. Citing similar language in another statute, the Court noted: " [A] common-law remedy for a contractual commitment voluntarily undertaken should not be regarded as a ' requirement ... *imposed under State law*' within the meaning of [Federal Cigarette Labeling and Advertising Act] § 5(b)." ), citing *Cipollone v. Liggett Group, Inc.,* (plurality opinion) (1992). The Court continued in the same vein: "The FAA's text, we note, presupposes the vitality of contracts governing transportation by air carriers. Section 411(b), 49 U.S.C.App. § 1381(b)." *Id* at 230. Finally it held: "Nor is it plausible that Congress meant to channel into federal courts the business of resolving, pursuant to judicially fashioned federal common law, the range of contract claims relating to airline rates, routes, or services. The ADA contains no hint of such a role for the federal courts." *(id* at 231). See also *Travel All over the World v. Kingdom of Saudi Arabia and Saudi Arabian Airlines,* 73 F.3d 1423, 1432 (7th Cir. 1996): "Thus, as in *Wolens*, the plaintiffs here are not alleging a violation of a state-imposed obligation, but rather are contending that the airline breached

11

a self-imposed undertaking. The terms and conditions in the contract between Travel All and Saudia are 'privately ordered obligations' and therefore do not amount to a State's enactment or enforcement of law."

The only time a contract claim can be preempted pursuant to the Airline Deregulation Act is if a breach of contract claim allowed by state courts would somehow effect the "price, route or service" of an air carrier generally.

> Finally, Smith's contract claim must be held to be preempted under the ADA because of its practical effect on federal law in this area. If passengers could challenge airlines' boarding procedures under general contract claims alleging failure to transport, we would allow the fifty states to regulate an area of unique federal clncern – airlines boarding practices.

*Smith v. Comair, Inc.*, 134 F.3d 254, 258-59 (4th Cir. 1998).

NYH argues that "Contracts, even between private parties, can create private law that cannot supersede the preemption of the Act," citing *United Airlines, Inc. v. Mesa Airlines*, 219 F.3d 605 (7th Cir. 2000). That case stands for the opposite proposition. In that case, Delta entered into various agreements with some of its regional commuter airlines which service passengers from larger hubs to smaller destinations. Pursuant to those agreements, Delta had the right to replace them. When it did so, the displaced airlines complained and eventually brought claims of intentional interference with contract, breach of fiduciary duty and fraudulent inducement. Delta argued that these claims were preempted by the ADA. The Court of Appeals explained that if the application of external state law -- even common law claims -- interfered with the prices, routes and services of an airline, those claims would be preempted. But if the only issue was whether the parties were bound by contracts they had entered into, there was no preemption, as the Supreme Court held in *Wolens*. The Court explained:

12

> Let us start with Mesa's contention that its purchase of aircraft, and the extension of its code-sharing agreement with United at Denver, are the result of fraudulent inducement. This is not by any stretch of the imagination a request to enforce the parties' bargains; it is a plea for the court to replace those bargains with something else. Doubtless the institution of contract depends on truthfulness; the staunchest defenders of private institutions and limited government believe that public bodies must enforce rules against force and fraud. . . . . When all a state does is use these rules to determine whether agreement was reached, or whether instead one party acted under duress, it transgresses no federal rule.

219 F.3d at 609

It is only "when the state begins to change the parties' financial arrangements, as Mesa demands, it is supplying external norms, a process that the national government has reserved to itself in the air transportation business." *Id.* at 609-10.

The Court continued:

> Next consider the contention of both Mesa and WestAir that fiduciary principles drawn from partnership law should be applied. Partnership is contractual; partners can and do specify their relations in detail, and the norms of partnership law are just background rules that cover a subject when contracts do not. . . . But Mesa and WestAir assert that the law of partnerships imposes on United duties that *override* the contract. For example, United contends that its contracts permit it to regulate the destinations and flight frequency of the code-share regional carriers; Mesa and WestAir deny this, and if they are right then they will prevail under their contracts. But they contend (under their partnership theory) that they prevail *even if* United had the contractual power to do what it did. *Id.* at 610 (emphasis in original)

The court rejected that theory

In this case, there were no "external norms" applied here. APH is only "enforcing the parties agreement." The only issue is whether APH had the "contractual power to do what it did." NYHC agreed not to approach customers on Heliport grounds. It did so. Applying the parties' agreement, not external state rules that altered the contract, APH removed it from the Heliport. There is simply no occasion to apply the preemption language of the ADA.

13

Applying the parties' agreement, not external state rules that altered the contract, APH removed it from the Heliport. There is simply no occasion to apply the preemption language of the ADA.

### POINT III

### THIS COURT MUST ABSTAIN FROM HEARING THIS CASE IN VIEW OF THE PENDING STATE COURT ACTION INVOLVING THE SAME PARTIES AND THE SAME CLAIMS

As noted in the attached declaration of Steven Trenk and the exhibits attached thereto, this action parallels a pending state action which had been filed in April, 2006. This complaint in this case alleges that APH had discriminated in rates imposed on NYHC in comparison to rates charged to other customers. See Compl. Par. That is precisely the same claim contained in the State cause of action. See Exhibit C, par.   In addition, the specific relief requested on this motion -- an injunction requiring APH to permit NYHC to return to the 30th Street heliport – was sought in the State case and was the subject to a state preliminary injunction hearing in June, 2007. Compare Exhibit D with the Order to Show cause in this case.

When a prior state case overlaps a later filed federal case, the federal courts will often abstain from hearing the case if certain conditions have been met. The Second Circuit has explained: "Abstention under *Colorado River* applies where, as in the instant case, 'state and federal courts exercise concurrent jurisdiction simultaneously.'" *Village of Westfield v. Welch's*, 170 F.3d 116, 120 (2d Cir.1999) (citation omitted). The Court of Appeals noted elsewhere: "Federal and state proceedings are 'concurrent' or 'parallel' for purposes of abstention when the two proceedings are essentially the same; that is, there is

> Thus, abstention is appropriate only if the balance of the following factors overcomes the strong presumption in favor of exercising jurisdiction: (1) the assumption of jurisdiction by either court over any res or property; (2) the inconvenience of the federal forum; (3) the order in which jurisdiction was obtained; (4) the avoidance of piecemeal litigation; (5) whether state or federal law supplies the rule of decision; and (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction. See *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983); *Colorado River*, 424 U.S. at 818-19; . . . .; *United States v. Pikna*, 880 F.2d 1578, 1582 (2d Cir.1989).

*Dunkin' Donuts Franchised Restaurants LLC v. Rijay*, 2007 WL 1459289 (S.D.N.Y. May 16, 2007) *3.

Here there is no doubt that application of the test favors abstention. (1) There is no res involved here so that factor favors neither party. (2) the federal forum is not inconvenient, but neither is the state forum; (3) Jurisdiction was obtained by the State courts 18 months ago and significant action has occurred in state court, namely the holding of a preliminary injunction hearing in June, 2007. (4) the only way to avoid piecemeal litigation is to allow state courts to consider the matter since only state courts can pass on an Article 78 proceeding, and 6 of the 11 causes of action in this case involve Article 78. Presumably state courts could hear whatever federal causes of action remain after the motion to dismiss is decided. (5) state law definitely supplies the rule of decision as to the Article 78 claims, while federal law applies to whatever federal causes of action remain after the motion to dismiss is decided. (6) the State court could certainly adequately protect the rights of the Plaintiffs.

Thus factors 3, 4, and 6 favor state court jurisdiction, two factors (1 and 5) are neutral and one factor (2) favors the federal forum since it is not inconvenient. .

Thus abstention must be ordered.

## CONCLUSION

For the reasons stated above, Plaintiffs' request for a preliminary injunction must be denied.

Dated: New York, N.Y.
       October 17, 2007

_____
Leon Friedman (LF#7124)
148 East 78th Street
New York, N.Y. 10021
(212) 737-0400
Attorney for Defendant
Air Pegasus Heliport, Inc.

Of counsel

    Christopher P. Gengaro
    Lentz & Gengaro