UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NEW YORK HELICOPTER CHARTER, INC. and
MICHAEL ROTH individually

                              Plaintiffs

    -against-

AIR PEGASUS HELIPORT, INC, HUDSON RIVER
PARK TRUST and the FEDERAL AVIATION
ADMINISTRATION

                              Defendants

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

07 Civ. 4069

## DECLARATION OF STEVEN L. TRENK

Steven L. Trenk, under a penalty of perjury, declares as follows:

1.    I am a principal of defendant Air Pegasus Heliport, Inc. ("APH"). I submit this declaration in opposition to the application for a temporary restraining order and preliminary injunction requiring APH to allow plaintiff New York Helicopter Charter, Inc. ("NYH") to conduct sightseeing operations out of the West 30th Street Heliport during certain upcoming weekends.

2.    APH operates the West 30th Street Heliport pursuant to a Permit with the Hudson River Park Trust (the "HRPT"), a successor to the New York State Department of Transportation.

3.    In 2004, NYH filed a lawsuit against APH and the HRPT in the Supreme Court of New York, New York County (Index No. 04603773). A copy of the complaint is attached as Exhibit A. Thereafter APH and NYH entered into a Settlement Agreement

resolving that lawsuit dated April 28, 2005. A copy of the Settlement Agreement is attached as Exhibit B.

4. Pursuant to the Settlement Agreement, NYH was granted the right to conduct a limited number of sightseeing flights from the 30th Street Heliport on weekends. Settlement Agreement at ¶4. In addition, NYH was required to comply with all of APH's rules. In particular it agreed not to "sell tickets, collect payments, solicit or loiter on the Heliport grounds, in the Trailer, in the Heliport parking lot, or on the sidewalk in front of the Heliport or elsewhere in the Hudson River Park;" or otherwise interfere with or attempt to divert or distract other helicopters' customers. (Par. 3). If it violated any of the terms of the settlement agreement, APH could terminate NYH's right to operate at 30th Street. (par. 6).

5. In April 2006, NYH was terminated for failure to make required payments. NYH filed another lawsuit and order to show cause against APH in the Supreme Court of New York. A copy of NYH's second Complaint is attached as Exhibit C. APH and NYH entered into a Stipulation resolving the issues raised in the Order to Show Cause, but that case is still pending.

6. In late April or early May 2007, APH terminated NYH's rights under the Settlement Agreement because of NYH's breaches of its contractual obligations, particularly its obligation not to solicit customers on Heliport grounds.

7. On May 31, 2007, NYH filed another Order to Show Cause in the New York Supreme Court case seeking the same relief it seeks here: namely, the right to continue to conduct sightseeing flights at the West 30th Street Heliport on weekends. A copy of that Order to Show Cause is attached as Exhibit D. Mr. Roth submitted an

Affidavit in connection with that application, as did his counsel here, Robert Hantman. See Exhibit D.

8. Justice Kahn of the New York Supreme Court declined to enter a temporary restraining order. Instead, Justice Kahn scheduled and then conducted a plenary hearing on NYH's application. Michael Roth, the president of NYH, testified at that hearing. Justice Kahn has not yet issued a ruling and NYH's application remains *sub judice* in the New York Supreme Court.

9. In the meantime, NYH has not conducted any sightseeing flights at the West 30th Street Heliport since its rights were terminated on or about May 6, 2007. Instead, it is my understanding that NYH has been conducting its sightseeing operations at the Downtown Manhattan Heliport near Wall Street.

10. I understand that the closing of the Downtown Manhattan Heliport is only a temporary measure caused by the Port Authority's desire to repave the runway. I also understand that the closing occurs only on Sunday, not for the entire weekend. This understanding is based upon my conversations with responsible persons at the facility. I requested written confirmation of these facts but have been unable to secure such a writing.

11. Under these circumstances, NYH's application should be denied.

I declare under penalty of perjury that the foregoing is true and correct.

/s Steven L. Trenk
Steven L. Trenk

Dated: October 16, 2007

EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------X
NEW YORK HELICOPTER CHARTER, INC.,

                                          Plaintiff,      VERIFIED

   -against-                                     COMPLAINT
                                                          Index No. 046037773/04

AIR PEGASUS HELIPORT, INC.,
LIBERTY HELICOPTERS, INC. and
HUDSON RIVER PARK TRUST,

                                          Defendants.
--------------------------------------------------------------X

       The plaintiff, by its attorney, ANDREW D. GREENE, for its complaint, respectfully alleges as follows:

       1. Plaintiff is duly incorporated pursuant to the laws of the State of New York, and regularly does business in the County and State of New York.

       2. AIR PEGASUS HELIPORT, INC. is a foreign corporation who maintains a place of business in the County and State of New York.

       3. LIBERTY HELICOPTERS, INC. is a domestic corporation who maintains a place of business in the County and State of New York.

       4. HUDSON RIVER PARK TRUST is a public benefit corporation who maintains a place of business in the County and State of New York.

**AS AND FOR A FIRST CAUSE OF ACTION**

       5. Defendant HUDSON RIVER PARK TRUST owns and manages the Heliport at West 30th Street on the Hudson, New York, New York 10001.

       6. Defendant HUDSON RIVER PARK TRUST has leased the use of the aforementioned heliport to AIR PEGASUS HELIPORT, INC.

7. Upon information and belief, defendant AIR PEGASUS HELIPORT, INC. and/or its principals own an interest in defendant LIBERTY HELICOPTERS, INC.

8. LIBERTY HELICOPTERS, INC. has a near monopoly use of commercial helicopter traffic operating out of the West 30th Street Heliport.

9. The plaintiff has been operating a sightseeing helicopter out of the West 30th Street Heliport without any incident or allegation of administrative violations since April 2004.

10. The plaintiff is duly licensed by the United States Department of Transportation, and is current on all of its landing and parking fees to the defendant AIR PEGASUS HELIPORT, INC.

11. On November 4, 2004, defendant AIR PEGASUS HELIPORT, INC. terminated the plaintiff's rights to operate out of the West 30th Street Heliport, in writing, and without any notice or hearing. A copy of the termination notice is annexed hereto as Exhibit "A".

12. Defendant AIR PEGASUS HELIPORT, INC. has refused to answer any inquiry from the plaintiff or its attorney concerning the aforementioned termination letter.

13. Defendant AIR PEGASUS HELIPORT, INC. refuses to cite the "rules and procedures" that were allegedly violated.

14. The West 30th Street Heliport is open to the public for all commercial flights that are current on its fee obligations, properly registered with the public authorities, and maintain appropriate safety standards.

15. The actions of defendant AIR PEGASUS HELIPORT, INC. are illegal and arbitrary and capricious and in violation of outstanding law.

16. Defendant AIR PEGASUS HELIPORT, INC.'s actions are leading to irreparable

harm due to the lost income and diminished reputation of the plaintiff.

17.   Defendant AIR PEGASUS HELIPORT, INC. should be permanently enjoined from prohibiting the plaintiff from engaging in a lawful commercial activity at the West 30th Street Heliport.

18.   Defendant HUDSON RIVER PARK TRUST should be permanently enjoined from prohibiting the plaintiff from engaging in a lawful commercial activity at the West 30th Street Heliport.

19.   There is no adequate remedy at law.

**AS AND FOR A SECOND CAUSE OF ACTION**

20.   Plaintiff repeats each and every allegation with the same force and effect as originally stated.

21.   Defendant AIR PEGASUS HELIPORT, INC. should be adjudged liable for all lost profits sustained since the unilateral termination of the plaintiff's lawful commercial activity.

**AS AND FOR A THIRD CAUSE OF ACTION**

22.   Plaintiff repeats each and every allegation with the same force and effect as originally stated.

23.   Upon information and belief, defendants AIR PEGASUS HELIPORT, INC. and LIBERTY HELICOPTERS, INC. entered into an agreement whereby the competition or free exercise of commerce would be restrained by unlawfully interfering with the plaintiff's business, thereby creating a virtual monopoly of commercial helicopter sightseeing trade at the West 30th Street Heliport.

24.   The defendants advanced their illegal agreement by terminating the services of the

plaintiff without justification or lawful cause.

25. The defendants AIR PEGASUS HELIPORT, INC. and LIBERTY HELICOPTERS, INC.'s actions constitute a violation of Article 22, Section 340 of the New York General Business Law.

26. The defendants AIR PEGASUS HELIPORT, INC. and LIBERTY HELICOPTERS, INC. shall be liable to the plaintiff for treble the damages actually sustained, and reasonable attorneys fees.

WHEREFORE, it is respectfully requested that the judgment be entered as demanded in the complaint, together with interest and costs and disbursements of this action.

Dated: November 10, 2004

                                  ANDREW D. GREENE

By: _____
      HOWARD R. BIRNBACH
      Of Counsel
      Attorney for the Plaintiff
      111 Great Neck Road
      Suite 413
      Great Neck NY 11021
      Tel.: (516) 829-6305

C:\Old Data\Documents\NY HELICOPTER\Complaint 11-9-04.wpd

AIR PEGASUS HELIPORT, INC.
WEST 30TH STREET AND 12TH
AVENUE
NEW YORK, NEW YORK 10031
212-563-4442 (PHONE)
212-563-0526 (FAX)

# facsimile transmittal

| | | | |
|---|---|---|---|
| **To:** | Mike Roth | **Fax:** | 631-777-5876 |
| **From:** | Abigail S. Trenk | **Date:** | 11/4/2004 |
| **Re:** | | **Pages:** | 2 |
| **CC:** | Alvin S. Trenk | | |

x Urgent   ☐ For Review   ☐ Please Comment   ☐ Please Reply   ☐ Please Recycle



# AIR PEGASUS

November 4, 2004

Mike Roth
NY Helicopter Charter, Inc.
P.O. Box 474
Oceanside, NY 11572

This letter serves to confirm our telephone conversation this week, because of your violation of our rules and procedures you will no longer be allowed to operate charter tours from the West 30TH Street Heliport effective immediately.

My staff has been advised accordingly and your staff should be similarly notified.

If you have any questions regarding the above please feel free to contact my father.

Thank you,

*Abigail S. Trenk*

Abigail S. Trenk
President

## VERIFICATION

STATE OF NEW YORK)
                 )ss.:
COUNTY OF NASSAU)

I, HOWARD R. BIRNBACH, the undersigned, an attorney admitted to practice in the courts of New York State, state that I am the attorney of record for the plaintiff in the within action; I have read the foregoing COMPLAINT and know the contents thereof; the same is true to my own knowledge, except as to the matters therein alleged to be on information and belief, and as to those matters I believe it to be true. The reason this verification is made by me and not the plaintiff is because plaintiff resides outside the County where I maintain my offices.

The grounds of my belief as to all matters not stated upon my own knowledge are as follows:

Information obtained from plaintiff and information contained in plaintiff's file.

I affirm that the foregoing statements are true, under the penalties of perjury.

Dated: Great Neck, New York
       November 10, 2004

_____
HOWARD R. BIRNBACH

C:\Old Data\Documents\NY HELICOPTER\VERIFICATION 11-10-04.wpd

EXHIBIT B

APR 29 2005 01:31P                    2123616406                         page 2

04/29/2005 11:27 FAX 5168290651    HOWARD R. BIRNBACH         973 659 9960   P.03

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT is made on the 28th day of April, 2005 between: (i) Air Pegasus Heliport, Inc. ("APH"), a New York corporation having an office at 11 Hillside Avenue, Bernardsville, New Jersey 07924; and (ii) New York Helicopter Charter, Inc. ("NYH").

WHEREAS, APH is the fixed base operator of the West 30th Street Heliport in New York (the "Heliport") pursuant to a Permit (the "Permit") with the New York State Department of Transportation, the predecessor of the Hudson River Park Trust ("HRPT"), dated March 25, 1996; and

WHEREAS, the Permit reserves to HRPT the right to approve any helicopter operator engaged in sightseeing from the Heliport; and

WHEREAS, APH maintains a separate terminal facility (the "Trailer") which is used principally for corporate and charter helicopter operations; and

WHEREAS, NYH conducts both charter flights and charter tours, which the HRPT considers the same as sightseeing tours, from the Heliport; and

WHEREAS, NYH has submitted an application to APH to become an approved operator of helicopters by the HRPT, notwithstanding APH's position that approval is not required for NYH's charter tour operations;

WHEREAS, NYH has filed a lawsuit in the Supreme Court of the State of New York, County of New York entitled *New York Helicopter Charter, Inc. v. Air Pegasus Heliport, Liberty Helicopters, Inc. and Hudson River Park Trust* (Index Number 603773/04) (the "Lawsuit"); and

WHEREAS, APH and NYH have agreed to settle the claims in the Lawsuit that NYH has filed against APH;

NOW, THEREFORE, based on and in consideration of the foregoing premises, and in consideration of the mutual covenants set forth herein, APH and NYH agree as follows:

APR 29 2005 01:31P                    2123616406                              page 3

04/29/2005 11:27 FAX 5188290651          HOWARD R. BIRNBACH          973 669 8950    ☒004
                                                                                     P.04

1. **NYH's Rights.** NYH shall be granted a non-exclusive right to continue to conduct charter tours from the Heliport provided it is not in default of any term of this Agreement and subject to approval of the HRPT in accordance with the terms of the Permit. NYH shall have the right to conduct its charter tours solely from the Trailer.

2. **Payments to APH.** NYH shall pay APH on a monthly basis, by no later than the tenth day of each calendar month, the following charges incurred during the previous month:

    (i) Customary and usual heliport charges for landings, parking, fuel, off-ops (also known as late ops), and SAFE Fees at APH's then current rates which are subject to change from time to time in APH's sole discretion; and

    (ii) A passenger fee computed at the rate of $15.00 for every 10 charter tour passengers that the NYH flies, with the number of passengers rounded to the next higher integral multiple of 10 (such payment shall be accompanied by a report certifying the passenger count for the period for which payment is submitted).

3. **Compliance With Rules.** NYH shall comply with all of APH's and the HRPT's rules, regulations and procedures as may exist or to be established from time to time. NYH agrees to not sell tickets, collect payment, solicit or loiter on the Heliport grounds, in the Trailer, in the Heliport parking lot, or on the sidewalk in front of the Heliport or elsewhere in the Hudson River Park, or otherwise interfere with or attempt to divert or distract other helicopter operators' customers.

4. **Limitations on Operations.** NYH shall be subject to the following limitations: (i) it shall only conduct charter tour flights on Saturdays, Sundays and Federal holidays as defined in 5 U.S.C §6103; (ii) it shall conduct not more than 24 charter tour flights over the course of any given weekend and not more than 12 charter tour flights on any given Federal holiday. In the event that a Federal holiday falls on either a Friday or a Monday, then NYH shall

APR 29,2005 01:31P                          2123616406                              page 4

04/29/2005 11:27 FAX 5188290851          HOWARD R. BIRNBACH           973 669 8960   ⌀005
                                                                                     P.05

be allowed to conduct up to 36 charter tour flights over the three-day weekend; and (iii) it shall conduct not more than 1,200 charter tour flights per calendar year.

5. **HRPT Approval.** APH has submitted, on NYH's behalf, an application to the HRPT for approval of NYH as a charter tour/sightseeing operator from the Heliport which is pending. NYH agrees to indemnify APH from any and all claims, suits or demands of any kind, including legal fees and costs, which arise out of or are related to NYH's operations at the Heliport.

6. **Default.** In the event that NYH defaults in any of its obligations under this Agreement, then APH shall have the right, without notice or an opportunity to cure, to terminate NYH's rights to conduct any operations at the Heliport.

7. **General Release of APH and NYH.** NYH, its successors and assigns, hereby releases and forever discharges APH, its employees, agents, shareholders, directors, officers, successors and assigns (collectively, the "Releasees") from any and all debts, actions, causes of action, suits, accounts, covenants, contracts, agreements, damages, and any and all claims, demands and/or liabilities whatsoever of every name and nature, whether directly or indirectly, personally or derivatively through others, and whether known or unknown to, or suspected or unsuspected by NYH EXCEPT for claims and rights that are preserved under this Settlement Agreement. Subject to this exception, this Release includes any and all claims asserted in the Lawsuit against the Releasees, and any claims NYH has or may have against the Releasees as of the date of this Settlement Agreement, or ever had against the Releasees from the beginning of the world through the execution date of this Settlement Agreement.

8. **Confidentiality.** The parties agree that the terms of this Settlement Agreement shall be maintained in confidence by NYH and shall not be revealed by NYH to any person or entity that is not a party to this Settlement Agreement. NYH shall not deliver any

3

APR 29 2005 01:31P                2123616406                                         page 5

04/29/2005 11:28 FAX 5168290651        HOWARD R. BIRNBACH                    973 669 8960    ⌀006
                                                                                              P.06

communication regarding this Settlement Agreement to any third party, to the public, or to the media, other than the statement that "the matter has been settled."

9. **Completeness of Agreement.** This Agreement contains all of the terms and conditions agreed upon by the parties with reference to the subject matters contained herein. No other agreement, oral or otherwise, will be considered to exist or to bind any of the parties. No representative of any party to this Settlement Agreement had, or has, any authority to make any representation or promise not contained in this Settlement Agreement, and each of the parties to this Settlement Agreement acknowledges that such party has not executed this Settlement Agreement in reliance upon any such representation or promise. This Settlement Agreement cannot be modified except by a written instrument signed by all parties.

10. **Severability.** If any portion or provision of this Settlement Agreement is held unconstitutional, invalid, or unenforceable by any court of competent jurisdiction, the remainder of the Settlement Agreement will be considered severable, will not be affected, and will remain in full force and effect.

11. **Voluntary Execution.** The parties acknowledge that they have each thoroughly read this Agreement, understand it, and is entering into it of its own free will.

12. **Governing Law; Jurisdiction.** This Agreement will be interpreted and construed for all purposes under the laws of the State of New York without regard to its conflicts of laws principles, and all disputes arising under or out of this Settlement Agreement will be brought in courts of competent jurisdiction located within the State of New York. The parties consent to the personal and exclusive subject matter jurisdiction of the Courts of the State of New York in connection with any and all disputes arising out of this Settlement Agreement.

13. **Legal Counsel.** The parties all acknowledge that each has been represented by legal counsel throughout these proceedings and that, by this Settlement Agreement, each has

been advised, in writing, of his right to consult legal counsel prior to signing this Settlement Agreement. Each party further acknowledges that, to the extent it has wished to avail itself of that right, it has done so.

14. **Construction.** This Settlement Agreement is the product of negotiation by the parties and all parties' counsel participated in the drafting and revision of this Settlement Agreement. Therefore, this Settlement Agreement shall not be construed or interpreted more strictly against any party based on that party's counsel having drafted this Settlement Agreement.

15. **No Waiver.** The failure of any party to insist upon the strict performance of any of the provisions of this Settlement Agreement, or to exercise any of the rights afforded under this Settlement Agreement, shall in no way constitute a waiver of any subsequent default of the same or similar nature or a waiver of that party's right to insist on strict performance in the future.

16. **Attorneys' Fees.** If any party to this Settlement Agreement brings an action or counterclaim against any other party to this Settlement Agreement for breach of this Settlement Agreement, or any other rights preserved by this Settlement Agreement, including a claim for non-payment of fees and charges contemplated by paragraph 2 of this Agreement, the prevailing party shall be entitled to recover, in addition to all other damages and remedies, all reasonable attorneys' fees and costs incurred in connection therewith.

17. **Dismissal of Claims Against APH and the HRPT.** Simultaneous with the execution of this Settlement Agreement, NYH shall cause all claims that it has asserted in the Lawsuit against APH to be dismissed with prejudice and all claims that it has asserted against the HRPT to be dismissed without prejudice.

18. **Duplicate Originals.** This Settlement Agreement may be executed in counterparts, with each counterpart being equally effective.

```
APR-29-2005  15:14       LENTZ-GENGARO          2123616406              973 669 6960    P.01
APR 29,2005 01:32P                                                                      page

04/29/2005 11:28 FAX 5198290051         HOWARD R. BIRNBACH                    @008
                                                                   973 669 6960    P.08
```

19. **Facsimile Signatures.** Facsimile signatures shall be as effective as original signatures.

WHEREFORE, the parties have set their hands and seals as of the date first written above.

AIR PEGASUS HELIPORT, INC.

By: _____
    Abigail S. Trenk, President

NEW YORK HELICOPTER CHARTER, INC.

By: _____
    Michael Roth, President

Z:\NYPS\DATA\E-LA\Trenk,Ser.\NYHS\License_Agreement\NYH-Final_2.doc

6

TOTAL P.08

TOTAL P.01

EXHIBIT C