EXHIBIT C



B104 — Summons without Notice, Blank Court
Personal or Substituted Service. 12 pt. type, 4-94

Blumberg Excelsior, Publisher, NYC 10013
www.blumberg.com

SUPREME COURT NEW YORK STATE
COUNTY OF NEW YORK

NEW YORK HELICOPTER CHARTER, INC.

*against*                                    *Plaintiff(s)*

AIR PEGASUS HELIPORT, INC., AIR
PEGASUS NEW YORK, INC. & HUDSON
RIVER PARK TRUST,

*Defendant(s)*

Index No. 601327.06
Date purchased APR 18 2006

Plaintiff(s) designate(s)
New York
County as the place of trial.

## Summons

The basis of the venue is
Business address of
defendant corporation

Plaintiff(s) reside(s) at 8200 Republic Airport Hanger 43, Farmingdale, NY
County of Suffolk

To the above named Defendant(s)

**You are hereby summoned** to answer the complaint in this action, and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney(s) within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in this complaint.

Dated, March 30, 2006

Defendant's address:

Andrew D. Greene, P.C.

Attorney(s) for Plaintiff
Plaintiff
Office and Post Office Address
3000 Marcus Avenue, Suite 1W11
Lake Success, NY 11042
(516) 437-7502

NEW YORK
COUNTY CLERK'S OFFICE

APR 18 2006

NOT COMPARED
WITH COPY FILED

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

NEW YORK HELICOPTER CHARTER, INC.,                          Index No.

                                        Plaintiff,

                       -against-                          **VERIFIED COMPLAINT**

AIR PEGASUS HELIPORT, INC. AIR PEGASUS
NEW YORK, INC. and HUDSON RIVER PARK TRUST,

                                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


Plaintiff, NEW YORK HELICOPTER CHARTER, INC., through its attorneys, ANDREW

D. GREENE, P.C., as and for its Verified Complaint against defendants, AIR PEGASUS

HELIPORT, INC., AIR PEGASUS NEW YORK, INC. and HUDSON RIVER PARK TRUST,

respectfully sets forth as follows:

## THE PARTIES

1.      Plaintiff, NEW YORK HELICOPTER CHARTER, INC. (hereinafter "NYHC") was

and is a corporation duly incorporated and existing under the laws of the State of New York.

2.      Defendant, AIR PEGASUS HELIPORT, INC., (hereinafter "APH") was and is a

corporation duly organized and existing under the laws of the State of Delaware which has offices

in New Jersey and conducts business at the West 30th Street Heliport, New York, New York

(hereinafter the "Heliport").

3.      Defendant, AIR PEGASUS NEW YORK, INC. (hereinafter "APNY") was and is a

corporation organized and existing under the laws of the State of Delaware which conducts business

in New York and New Jersey.

4.    Upon information and belief, APH and APNY are authorized to do business and in fact do transact business in the State of New York.

5.    Upon information and belief, APNY does business under the assumed name Pegasus Aviation at the Heliport.

6.    Defendant, HUDSON RIVER PARK TRUST (hereinafter "HRPT"), is a state public benefit corporation created pursuant to the Hudson River Park Act, Chapter 592 of the Laws of 1998 of the State of New York (hereinafter the "Act"). Pursuant to the Act, HRPT is charged with the planning, construction and operation of a river-front park on Manhattan's west side between Battery Place and 59th Street (hereinafter the "Park"). The West 30th Street Heliport is located within the Park between West 29th Street and West 30th Street in the Borough of Manhattan, City and State of New York.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

7.    Upon information and belief, HRPT, is a successor in interest to the New York State Department of Transportation (hereinafter the "State") in respect of a permit agreement dated March 25, 1996 (hereinafter the "Permit") granted by the New York State Department of Transportation to APH. A copy of the Permit is annexed hereto as Exhibit "A" and is incorporated herein as set forth in full. The Permit was signed on behalf of APH by Alvin S. Trenk, as president.

8.    The Permit was made in New York and is to be performed within New York.

9.    The Permit provides APH with status as the Operator of the Heliport and affords APH the exclusive right to use the Heliport subject to and in accordance with the terms and conditions contained therein. The Heliport is a public facility to be operated in the public interest.

2

10.    The Permit term commenced in May 1996 and expired by its terms five (5) years later in May of 2001. Pursuant to Section 2 of the Permit, it thereafter continued on a "month-to-month" basis subject to cancellation by either party on thirty (30) days' written notice to the other. To date the Permit has not been canceled by either party and remains in effect.

11.    The Permit requires that APH charge "fair, reasonable and nondiscriminatory prices for each unit of sales or services" to users of the Heliport. (See Permit, section 34(b).) "Services include the furnishing of materials and supplies ... and the landing, taking off and parking of aircraft." (See Permit Section 34(b).)

12.    The Permit mandates that:

"The operator [APH] shall, (1) furnish good, prompt and efficient service hereunder, adequate to meet all demands therefor at the Heliport; (2) furnish said service on a fair, equal and non-discriminatory basis to all users thereof; and (3) except for sightseeing operations which require Department approval pursuant to Section 3, charge fair, reasonable and non-discriminatory prices for each unit of sales or services, provided that the Operator may make reasonable and non-discriminatory discounts, rebates or other similar types of price reductions to volume purchasers in connection with the landing, taking off and parking of aircraft. As used in this subdivision (b) 'service' shall include furnishing of materials and supplies (including the sale thereof) and the landing, taking off and parking of aircraft." (See Permit section 34(b).)

13.    Section 3 of the Permit, page 4, provides that an operator "shall conduct sightseeing operations only upon the prior written approval of the ... [HRPT] of (I) the sightseeing operator and its aircraft and procedures, and (ii) the terms of any agreement between the Operator and any such sightseeing operator, which approval shall not be unreasonably withheld."

14.    The plaintiff is a third-party beneficiary of the Permit.

3

15.    On April 28, 2005, plaintiff and defendant APH entered into an agreement (hereinafter "Settlement Agreement") which governs plaintiff's use of the 30th Street Heliport. Said agreement provided, *inter alia*, that plaintiff "has submitted an application to APH to become an approved operator of helicopters by the HRPT." The Settlement Agreement provided that "NYH shall be granted a non-exclusive right to continue to conduct charter tours from the Heliport provided it is not in default of any term of this agreement and subject to approval of the HRPT in accordance with the terms of the Permit."

16.    The Settlement Agreement states that "APH is the fixed base operator of the West 30th Street Heliport in New York ... pursuant to a Permit ... with the New York State Department of Transportation, the predecessor of the Hudson River Park Trust ..., dated March 25, 1996."

17.    The Settlement Agreement provided that plaintiff shall pay to APH on a monthly basis "customary and usual heliport charges for landings, parking, fuel, off-ops (also known as late-ops), and SAFE Fees...."

## AS AND FOR A FIRST CAUSE OF ACTION
### (Declaratory Judgment)

18.    APH and APNY have provided and are providing certain customers with significant discounts and price reductions for services including landing fees, parking fees, fuel charges, late-ops and safe fees while not providing other similarly situated customers of the Heliport with these same discounts.

19.    By way of example, in August 2004, based upon documentary proof available to plaintiff, a commercial helicopter company, Argos Capital, accomplished twenty-five (25) landings at the Heliport and received a fifty (50%) percent discount on landing fees and a fifty (50%) percent

4

discount on parking fees. During this same period of time, the plaintiff accomplished 76 landings and received no discount for parking or landing fees.

20.    Upon information and belief, and based upon documentary proof available to plaintiff, another commercial helicopter company, Integrated Aviation Group, has received and continues to receive substantial discounts on certain fees including late-op fees from APH. Upon information and belief, based upon documentary proof available to the plaintiff, Integrated Aviation Group conducted only 131 total operations in 2005 from the Heliport and has conducted minimal operations in 2006. By contrast, plaintiff receives no discounts from APH and conducts thousands of operations per year.

21.    Upon information and belief, another commercial helicopter company, Heliflight, has received and continues to receive substantial discounts from APH for heliport charges and services.

22.    Upon information and belief, and based upon documentary proof available to the plaintiff, another commercial helicopter company, Liberty Helicopters Inc. (hereinafter "Liberty"), is and has been receiving substantial discounts for heliport services. In particular, Liberty Helicopters Inc. has enjoyed the following unequal benefits from APH and APNY:

    (a)    Liberty pays no SAFE fees;

    (b)    Liberty receives huge discounts for landing and parking fees;

    (c)    Liberty pays no late-ops;

    (d)    Liberty pays $.88 above cost per gallon of fuel while other operators, including plaintiff, pay substantially more.

23.    Upon information and belief, another commercial helicopter company, Helicopter Flight Services, Inc., one of the highest volume customers of the Heliport, receives no discounts for Heliport charges for SAFE fees, parking fees, landing fees or late-op fees.

24.     Defendants, APH and APNY, have violated their obligation under the Permit to "furnish ... service on a fair, equal and non-discriminatory basis to all users..." of the Heliport.

25.     Defendants, APH and APNY, have violated their obligation under the Permit to provide "volume" purchasers price reductions for sightseeing on a non-discriminatory basis because such discounts are granted to selective operators, without true reference to the volume of their use of the Heliport.

26.     Defendant, APH has threatened to declare plaintiff in default of the Settlement Agreement due to the existence of outstanding invoices totaling $38,189.22. Said invoices include charges for parking fees, landing fees, off-ops and SAFE fees, for which plaintiff is entitled to non-discriminatory discounts, based upon APH's custom and practice of affording discounts to other similarly situated operators. In addition, plaintiff is entitled to recalculation of said outstanding invoices in light of defendant's obligation to charge "fair, reasonable and nondiscriminatory prices" for services.

27.     Plaintiff has advised APH that, based upon its calculations, plaintiff has been overcharged in the amount of $105,090.00 for its operations at the Heliport in 2004 and 2005 and has demanded a credit for said overcharges.

28.     APH has threatened to permanently terminate plaintiff's right to use the Heliport permanently and without further notice based upon the alleged failure to pay said invoices.

29.     If APH declares plaintiff in default under the Settlement Agreement plaintiff could lose its right to operate at the Heliport forever.

30.     By virtue of the foregoing, plaintiff seeks declaratory judgment declaring that defendants, APH and APNY are in violation of their obligations under the terms of the Permit and

Settlement Agreement; that defendants, APH and APNY, must recalculate all invoices presently due to afford plaintiff the benefit of any discount in charges for sales and services granted to any similarly situated operators for landing fees, parking fees, late-ops and SAFE fees; and that said defendants, APH and APNY shall charge the plaintiff on an equal, non-discriminatory basis for all landing fees, parking fees, late-ops and SAFE fees and provide the same volume discount to plaintiff as afforded to any other similarly situated operator at the Heliport.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Breach of Contract)

31.    Plaintiff repeats and realleges each and every allegation contained in the First Cause of Action as if set forth more fully at length hereinafter.

32.    As stated hereinabove, the Permit clearly requires that APH charge "fair, reasonable and non-discriminatory prices to users of the heliport." Similarly, the Permit authorizes APH to provide discounts to "volume purchasers" on a "reasonable and non-discriminatory basis."

33.    As set forth hereinabove, APH has provided discounts for landing fees, parking fees, late-ops and SAFE fees to operators on a discriminatory and unequal basis. Said practice is violative of the express terms of the Permit and of APH's duty as a public heliport. Plaintiff is a third-party beneficiary of the Permit.

34.    Said actions by APH are violative of the terms of the Settlement Agreement which requires defendants to charge only customary and usual heliport charges and incorporates the terms of the Permit.

35.    Plaintiff is due a credit for overcharges made by APH and APNY in the sum of One Hundred Five Thousand, Ninety ($105,090.00) Dollars for overcharges from 2004 to date. Said

7

overcharges result from the failure of APH to allow plaintiff the benefit of discounts in landing fees, parking fees, late-ops and SAFE fees available to other similarly situated operators.

36.    In addition to the foregoing, plaintiff estimates that, due to the overcharges and discriminatory application of discounts on the part of APH and APNY, its ongoing business has been damaged in the sum of approximately One Million ($1,000,000.00) Dollars, in consequential damages, the more exact amount to be provided upon trial of the merits hereinafter.

37.    By reason of the foregoing, plaintiff seeks judgment against APH in the sum of One Hundred Five Thousand, Ninety ($105,090.00) Dollars, together with interest and the costs of this action, together with judgment in the sum of approximately One Million ($1,000,000.00 ) Dollars, the exact amount to be provided upon trial of the merits herein.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Injunction)

38.    Plaintiff repeats and realleges each and every allegation contained in the First and Second Causes of Action as if set forth more fully at length herein.

39.    Defendant, APH has declared plaintiff in default of the Settlement Agreement and has in fact excluded plaintiff from the Heliport due to the existence of outstanding invoices totaling $38,189.22.  Said invoices include charges for parking fees, landing fees, off-ops and SAFE fees, for which plaintiff is entitled to non-discriminatory discounts, based upon APH's custom and practice of affording discounts to other similarly situated operators.  In addition, plaintiff is entitled to recalculation of said outstanding invoices in light of defendant's obligation to charge "fair, reasonable and nondiscriminatory prices" for services.

40.    If plaintiff's right to use the Heliport is permanently terminated, plaintiff will be irreparably harmed.  Plaintiff is entering upon the busiest season of the year for sightseeing, i.e. Spring and Summer.  Plaintiff is financially unable to suffer a disruption of its sightseeing business at this critical time.  Such a disruption would put plaintiff out of business.

41.    In addition to the foregoing, plaintiff secured a valuable and unique status as a candidate for approval for sightseeing operations when it negotiated the Settlement Agreement with APH.  Plaintiff will suffer irreparable and immediate harm if it is permanently terminated from conducting operations at the Heliport in that plaintiff's coveted status as a candidate for approval would be rendered worthless.

42.    In sum and substance, defendants, APH and APNY have expelled plaintiff from the Heliport  to insure the collection of *ultra vires*,  unjustified and discriminatory fees and charges.

43.    Plaintiff has recently learned of the fact that APH is routinely providing discounts to other operators for sightseeing operations from the Heliport without regard to the volume of the operators' use of the Heliport.  APH repeatedly denied that such discounts were being given to other operators, but such denials have now been proven to be incorrect.

44.    Plaintiff has no adequate remedy at law.

45.    By reason of the foregoing, plaintiff seeks the issuance of an injunction restraining and enjoining defendants APH and APNY from continuing to exclude or restrict plaintiff's use of the Heliport and for an order directing that said defendants immediately apply to the plaintiff's account any discounts in charges for landing fees, parking fees, off-ops and SAFE fees applied to any other similarly situated user of the Heliport, and that all unpaid invoices relating to plaintiff's

account be recalculated to afford such discounts to the plaintiff forthwith;

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Mandatory Injunction)

46.    Plaintiff repeats each and every allegation contained in the First, Second and Third Causes of Action as if set forth more fully at length herein.

47.    In the Settlement Agreement, the parties acknowledge that "APH has submitted, on [plaintiff's] behalf an application to the HRPT for approval of [plaintiff] as a charter tour/sightseeing operator from the Heliport, which is pending."

48.    By letter dated February 4, 2005, APH's attorneys stated that plaintiff's "application has been submitted to the Trust.  It is not up to Air Pegasus Heliport Inc. to process the application.  It is in the hands of the Trust."

49.    By letter dated June 13, 2005, the defendant, HRPT, informed APH:

> "... with regard to your pending requests for approval to allow New York Helicopter and Zip Aviation to conduct sightseeing operations out of the facility, we are still awaiting information and payment for outstanding passenger fees due and owing in connection with Heliport Flight Service's sightseeing operations dating back to 1996. Consequently, for the reasons set forth in my earlier letters on this topic, until such information and all related payments are received, the Trust will not authorize either New York Helicopter or Zip Aviation to conduct sightseeing operations out of the facility."

50.    Defendant, HRPT, has violated its obligation under the Permit to not unreasonably withhold consent to its approval of a sightseeing operator at the Heliport.  In effect, HRPT has withheld consent to plaintiff as a sightseeing operator for reasons unrelated to plaintiff.

51. By reason of the foregoing, plaintiff is entitled to a mandatory injunction requiring that the defendant, HRPT, immediately approve the application of the plaintiff for status as an approved operator for sightseeing tours for the Heliport.

## AS AND FOR A FIFTH CAUSE OF ACTION

52. Plaintiff repeats each and every allegation contained in the First, Second, Third and Fourth Causes of Action as if set forth more fully at length herein.

53. Defendant, HRPT, is and has been aware of the actions of defendant, APH and APNY, as described above which violate the terms of the Permit.

54. HRPT has a fiduciary duty, as a State public corporation, to discharge its responsibility of oversight of the defendants, APH and APNY in the public interest.

55. HRPT has failed to conscientiously exercise its duty of oversight over APH and APNY, all resulting to the detriment of the plaintiff.

56. Plaintiff is a third-party beneficiary of the Permit between APH and HRPT, as successor to the Department of Transportation of the State of New York.

57. By reason of the foregoing, plaintiff seeks judgment against the defendant, HRPT, in the sum of Five Million ($5,000,000.00) Dollars, the exact amount to be provided upon trial of the merits herein.

**WHEREFORE**, plaintiff seeks judgment against defendants as follows:

(a) declaring that defendants, APH and APNY are in violation of their obligations under the terms of the Permit and Settlement Agreement; that defendants, APH and APNY, must recalculate all invoices presently due to afford plaintiff the benefit of any discount in charges for sales and services

11

granted to any similarly situated operators including any volume discount so afforded; and that said defendants shall charge the plaintiff on an equal, non-discriminatory basis for all fees and services associated with its operations including landing fees, parking fees and SAFE fees forthwith and provide the same volume discount to plaintiff as afforded to any other similarly situated operator at the Heliport.

(b)   As to the Second Cause of Action, judgment against defendants, APH and APNY, for breach of contract in the amount of $105,090.00, together with interest and the costs of this action as well as the sum of approximately One Million ($1,000,000.00) Dollars, the more exact amount to be provided at trial of the merits herein, as compensatory damages for consequential damages; and

(c)   As to the Third Cause of Action, granting a permanent injunction restraining enjoining defendants APH and APNY from prohibiting the plaintiff the use, occupancy and rental of the West 30th Street Heliport and directing said defendants to immediately apply to the plaintiff's account any discounts in charges for landing fees, parking fees, off-ops and SAFE fees that are afforded by APH or APNY to any other similarly situated operator at the Heliport.

(d)   As to the Fourth Cause of Action, a mandatory injunction requiring that the defendant, HRPT, immediately approve the application of the plaintiff for status as an approved operator for sightseeing tours for the Heliport; and

12

(e)    As to the Fifth Cause of Action, judgment against the defendant, HRPT, in the sum of Five Million ($5,000,000.00) Dollars, the exact amount to be provided upon trial of the merits herein; and

(f)    For such other, further and different relief as this court may seem just and proper in the premises together with costs and disbursements of this action and attorney's fees.


Dated:  Lake Success, New York
        March 30, 2006

                                    Yours, etc.

                                    ANDREW D. GREENE, P.C.
                                    Attorney for Plaintiff
                                    3000 Marcus Avenue, Suite 1W11
                                    Lake Success, NY 11042
                                    (516) 437-7502

13

STATE OF NEW YORK)
                 ) ss:
COUNTY OF NASSAU )

MICHAEL ROTH being duly sworn, deposes and says that deponent is the president of the corporation in the within action; has read the foregoing Verified Complaint and knows the contents thereof; the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to those matters deponent believes them to be true.

MICHAEL ROTH

Sworn to before me this

7th day of April, 2006

Notary Public

ANDREW D. GREENE
Notary Public, State Of New York
No. 4872126
Qualified In Nassau County
Commission Expires Sept. 8, 2006

14

EXHIBIT D

At an IAS Part _49_ of the Supreme Court of the State
of New York held in and for the County of New York
on the _31_ day of _May_ , 2007

PRESENT: ___Cahn___

J.S.C.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

NEW YORK HELICOPTER CHARTER, INC.,                    Index No. 601327/06

Plaintiff,

-against-                                             **ORDER TO SHOW CAUSE**

AIR PEGASUS HELIPORT, INC. AIR PEGASUS              Assigned to:
NEW YORK, INC. and HUDSON RIVER PARK TRUST,         Justice Herman Cahn

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Upon reading and filing the affidavit of Michael Roth sworn to May 22, 2007, the affirmation

of Robert Hantman dated May 15, 2007, the Summons and Verified Complaint dated March 30,

2006, the Verified Answer of Air Pegasus Heliport, Inc. and Air Pegasus New York, Inc. dated April

10, 2007, the Verified Answer of Hudson River Park Trust dated May 26, 2006, the Settlement

Agreement dated April 28, 2005, the so-ordered Stipulation of Settlement dated May 4, 2006, and

the exhibits annexed hereto,

**LET** the defendants, AIR PEGASUS HELIPORT, INC. and AIR PEGASUS NEW YORK,

INC., show cause before this Court at an IAS Part _49_ to be held at the Courthouse at 60 Centre

Street, New York, New York on the _6_ day of _June_ , 2007 at 9:30 in the forenoon, or as

soon thereafter as counsel can be heard, why an order should not be entered as follows:

(a)    Granting a preliminary injunction pursuant to CPLR §6301 restraining and

enjoining defendants AIR PEGASUS HELIPORT, INC. and AIR PEGASUS

NEW YORK, INC. from prohibiting the plaintiff the use, occupancy and

rental of the West 30th Street Heliport; and

(b)    For such other, further and different relief as this court may seem just and proper in the premises; and it is further

ORDERED, that pending the hearing and determination of this motion, the defendants, AIR PEGASUS HELIPORT, INC. and AIR PEGASUS NEW YORK, INC., are hereby stayed from prohibiting the plaintiff from the use, occupancy and rental of the West 30th Street Heliport, provided plaintiff continues to pay on a C.O.D. basis for current use of the Heliport as provided in the parties' so-ordered stipulation dated May 4, 2006; and it is further

ORDERED, that service of this Order to Show Cause, together with the papers upon which it is based upon the attorneys for defendants, AIR PEGASUS HELIPORT, INC. and AIR PEGASUS NEW YORK, INC., Leon Friedman, Esq., 148 East 78th Street, New York, NY 10021, pursuant to CPLR §2103(b)(1) or (3), and upon the attorneys for HUDSON RIVER PARK TRUST, Konner, Teitelbaum & Gallagher, Esqs., 462 Seventh Avenue, 12th Floor, New York, NY 10018 by certified mail return receipt requested on or before the _3/_ day of _MAY_ , 2007 be deemed good and sufficient service.

_____
J. S. C.

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

NEW YORK HELICOPTER CHARTER, INC.,                    Index No. 601327-06

                                Plaintiff,

                -against-                              **AFFIDAVIT IN**
                                                      **SUPPORT OF MOTION**

AIR PEGASUS HELIPORT, INC. AIR PEGASUS
NEW YORK, INC. and HUDSON RIVER PARK TRUST,

                                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

STATE OF NEW YORK )
                  )ss:
COUNTY OF NASSAU )

        MICHAEL ROTH, being duly sworn, deposes and says:

        1.      I am the president of New York Helicopter Charter, Inc., the plaintiff in the above-

entitled action.

        2.      This affidavit is submitted in support of the motion for a preliminary injunction

to prevent the defendants, Air Pegasus Heliport, Inc. and Air Pegasus New York, Inc. (hereinafter

collectively referred to as "Air Pegasus"), from violating the terms of our so-ordered Stipulation

of Settlement dated May 4, 2006 and the Settlement Agreement dated April 28, 2005 (hereinafter

referred to as the "so-ordered Stipulation" and "Settlement Agreement" respectively) by

summarily terminating our company's right to conduct operations at the West 30th Street

Heliport, despite the fact that our company is <u>not</u> in default under the terms of the Settlement

Agreement or so-ordered Stipulation.

## BACKGROUND

3.      There has been prior litigation between the parties. In 2004, our company was forced to file an action against Air Pegasus Heliport, Inc. and others to insure our continued access to the public heliport at West 30th street in Manhattan. The action entitled *New York Helicopter Charter, Inc. v. Air Pegasus Heliport, Liberty Helicopters, Inc. and Hudson River Park Trust* under index number 603779-04 was settled by Settlement Agreement dated April 28, 2005 (a copy of which Settlement Agreement is annexed hereto as Exhibit "A").

4.      The Settlement Agreement granted our company the "nonexclusive right to continue to conduct charter tours from the Heliport, provided it is not in default of the Settlement Agreement ... subject to approval of the HRPT in accordance with the terms of the Permit." The Settlement Agreement provided that our company pay defendant APH, on a monthly basis, "customary and usual Heliport charges for landings, parking, fuel, off-ops (also known as late-ops) and SAFE fees at APH's then current rates." On December 15, 2006, HRPT granted approval to our company as an authorized charter tour operator out of the heliport (see letter dated December 15, 2006 annexed hereto as Exhibit "B").

## THE INSTANT ACTION

5.      Our company commenced the instant action in April 2006 seeking, *inter alia*, an injunction against Air Pegasus for then-prohibiting our use of the West 30th Street Heliport. In the instant lawsuit, it is claimed, *inter alia*, that Air Pegasus has blocked use of the heliport and charged fees to users of the heliport on a discriminatory basis to suppress competition and for illegitimate purposes. Annexed hereto as Exhibit "C" is a copy of the Summons and Complaint in connection with the within lawsuit dated March 30, 2006. Annexed hereto as

2

Exhibit "D," collectively, is the Verified Answer of Air Pegasus Heliport, Inc. and Air Pegasus New York, Inc. dated April 10, 2007 and the Verified Answer of Hudson River Park Trust dated May 26, 2006.

6.    There has been no preliminary conference and no discovery conducted in connection with this action to date.

## THE SO-ORDERED STIPULATION DATED MAY 4, 2006

7.    By Order to Show Cause brought simultaneously with the commencement of the within action in April 2006, our company sought to enjoin Air Pegasus from excluding us from the heliport and from charging discriminatory and unequal fees to users.  By so-ordered Stipulation dated May 4, 2006, it was stipulated and agreed as follows:

> "(1) Plaintiff shall pay to Air Pegasus Heliport, Inc. .. the sum of $38,189.22 as follows:  (a) $20,000 by bank check delivered to APL at the West 30th Street Heliport no later than May 5, 2006 at 3:00 p.m.; and (b) $18, 189.22 by bank check delivered to APL by no later than June 5, 2006 at 3:00 p.m. without prejudice to plaintiff's claims in that action.
>
> "(2) Plaintiff shall be allowed to resume operations at the West 30th Street Heliport ... on a COD basis (cash, bank check, or credit card) upon APH's receipt of the full $38,189.22 required to be paid under Paragraph 1, above."

A copy of the so-ordered Stipulation is annexed hereto as Exhibit "E."

8.    In addition to the foregoing, the so-ordered stipulation required me to issue an affidavit authorizing credit card charges for our future use of the heliport and stating the source of certain documents received by me.

## OUR COMPLIANCE WITH SO-ORDERED STIPULATION AND RESUMPTION OF USE OF HELIPORT

9.      Our company timely paid all of the monies required under the so-ordered stipulation, as demonstrated in the attached receipts and money orders annexed hereto as Exhibit "F." I executed and delivered the affidavit dated May 4, 2006, a copy of which is annexed hereto as Exhibit "G."

10.      In accordance with the foregoing, we recommenced operations out of the West 30th Street Heliport without prejudice to our claims in the underlying action.

## OUR COMPANY IS AND HAS BEEN CURRENT IN ALL OF ITS FINANCIAL OBLIGATIONS TO AIR PEGASUS

11.      As specified in the so-ordered stipulation, our company resumed operating out of the West 30th Street Heliport on a "COD basis" by authorizing Air Pegasus to charge our corporate credit account on an ongoing basis for our charges.  All of our charges at the heliport have been <u>automatically deducted</u> from our credit card account by Air Pegasus, including landing fees, parking fees and fuel charges.  **We are completely current with all of our charges, fees and financial obligations to Air Pegasus.**

12.      We have limited our company's use of the West 30th Street Heliport has to weekends because of the number of flights specified in the stipulation dated April 28, 2005 (1,200 charter tour flights per calendar year and not more than 24 charter tour flights over the course of any given weekend).  During the week, we use the Wall Street Heliport.

13.      Annexed hereto as Exhibit "H" are our recent credit card statements for our company showing charges placed against our account on a continuing basis by Air Pegasus in compliance with the so-ordered stipulation.

4

14.    Annexed hereto as Exhibit "I" are copies of our company's "passenger reports" in connection with the "passenger fees" paid to Air Pegasus for February, March and April 2007 together with copies of canceled checks to Air Pegasus for the passenger fees.  Passenger fees, (approximately $400-$600 per month) unlike all other fees and charges, have not been automatically charged to our credit card, but have been paid on a regular basis by our company by check, which arrangement has been accepted by Air Pegasus.

### EVENTS OF MAY 6, 2007

15.    After months of unrestricted access to the heliport, when our company attempted to use the heliport on Sunday, May 6, 2007, we were suddenly informed by Air Pegasus that our rights to utilize the heliport had been "terminated."  I promptly called one of our corporate attorneys, Robert Hantman, Esq., who had a telephone conversation with Air Pegasus' attorney, Christopher Gengaro, Esq. that day.

16.    Attached hereto this Court will find the affirmation of Robert Hantman, Esq. According to Mr. Hantman, in his conversation with Mr. Gengaro, Mr. Gengaro stated that our company would be permitted to resume use of the West 30th Street Heliport "if it is current in the payment of fees due to the heliport; did not violate the rules of the heliport and discontinued the lawsuit pending in New York County Supreme Court under index number 601327-06." Mr. Gengaro also stated that New York Helicopter Charter Inc. and its principal, Mr. Roth, had to "stop writing letters to the HRPT" in order to be allowed to resume operations at the heliport. The HRPT and Air Pegasus are involved in litigation with one another.

5

17.    As set forth hereinabove, our company is <u>current</u> on all fees and financial obligations to Air Pegasus.  We have <u>not</u> violated any of the rules and regulations at the West 30th Street Heliport.  It is submitted that the <u>only real reason</u> that Air Pegasus has refused to permit our company to continue using the Heliport <u>is to force us to withdraw the current lawsuit</u> <u>and stop communicating with the Hudson River Park Trust</u> (I have written letters to the HRPT about the heliport). Air Pegasus' attorney, <u>Mr. Gengaro, has admitted that these are reasons for</u> <u>our summary eviction from the heliport.</u>

18.    My attorney, Andrew D. Greene, Esq., wrote to Mr. Gengaro on May 11, 2007 demanding that Air Pegasus rescind its decision to terminate our company's access to the heliport.  Neither Mr. Greene nor I have received any positive reply to the letter.  A copy of this letter is annexed hereto as Exhibit "J."

## NEED FOR IMMEDIATE INJUNCTION

19.    Air Pegasus has violated the so-ordered stipulation of this Court.  It has summarily evicted us, without notice, from the West 30th Street Heliport in violation of the so-ordered stipulation and in bad faith.  It has done so as a "strong arm" tactic to intimidate us to discontinue the current lawsuit.   Air Pegasus is mandated to operate the heliport in an open, non-discriminatory manner.

20.    Our company has not been allowed to utilize the West 30th Street Heliport since May 6, 2007.  This has led to damage to our company, during prime tourist season, in an incalculable manner.  In the competitive environment of the helicopter tour business, our forced absence from the heliport on weekends has resulted in injury to our business reputation and profile which cannot be calculated in money damages alone.

6

21.    At the very least, the temporary restraining order should be issued permitting our company to immediately resume access to the heliport on a COD basis, in accordance with our May 4, 2006 so-ordered stipulation pending a hearing to determine whether any real default or violation has occurred.

22.    I am informed by my attorney that "the standard for both a preliminary injunction and a temporary restraining order is likelihood of success on the merits, irreparable injury to the plaintiff in the absence of injunctive relief, balance of hardships or equities favoring the moving party, and the requested relief not being outweighed by public policy considerations."  See *Kuttner v. Cuomo*, 147 A.D.2d 215, 543 N.Y.S.2d 172 (3rd Dept. 1989), aff'd 75 N.Y.2d 596, 555 N.Y.S.2d 235 (1990) (temporary restraining orders); *Aetna Ins. Co. v. Capasso*, 75 N.Y.2d 860, 862 (1990) (preliminary injunction); *Albini v. Solork Associates*, 37 A.D.2d 835, 326 N.Y.S.2d 150 (2d Dept. 1971) (preliminary injunction).

23.    In the case at hand, there is "likelihood of success on the merits" since Air Pegasus has blatantly violated the settlement agreement and so-ordered stipulation to pressure my company into discontinuing the lawsuit.  As stated above, there will be irreparable injury to my company.  Furthermore, in light of the brazen conduct of Air Pegasus, it is obvious that the equities favor granting of the relief sought herein.  Since Air Pegasus operates the heliport in the public interest pursuant to a permit from a quasi-governmental agency (HRPT), public policy clearly favors the plaintiff herein.

24.    No prior application for the within relief has been made to this or any court of competent jurisdiction except for the order to show cause brought in April 2006 as set forth above, which application was settled and resulted in the so-ordered Stipulation dated May 4, 2006.

**WHEREFORE**, it is respectfully requested this Court grant all the relief requested in the accompanying Order to Show Cause together with such other, further and different relief deemed just and proper in the premises.

MICHAEL ROTH

Subscribed and sworn to before me

this 2__ day of May, 2007

Notary Public

ANDREW D. GREENE
Notary Public, State Of New York
No. 4872126
Qualified In Nassau County
Commission Expires Sept. 8,20__

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
NEW YORK HELICOPTER CHARTER, INC.,                    Index No.601327/06

                              Plaintiff,

                    -against-                          **AFFIRMATION**

AIR PEGASUS HELIPORT, INC. AIR PEGASUS
NEW YORK, INC. and HUDSON RIVER PARK TRUST,

                              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

ROBERT HANTMAN, an attorney duly admitted to practice in the courts of the State of

New York, affirms the truth of the following facts under penalties of perjury pursuant to CPLR

§2106.

1.      I am an attorney for New York Helicopter Charter, Inc. and Michael Roth. I am a

principal in the law firm of Hantman and Associates located at 1414 Avenue of the Americas, Suite

406, New York, New York 10019.

2.      On Sunday, May 6, 2007, I had a telephone conversation with Christopher P.

Gengaro, Esq. of the law firm of Lenz and Gengaro. Michael Roth asked me to contact Mr. Gengaro

because my client was informed that his right to use the West 30th Street Heliport had been

terminated. Mr. Gengaro represents Air Pegasus Heliport, Inc. which operates the heliport.

3.      Mr. Gengaro informed me that his client had terminated the rights of New York

Helicopter Charter, Inc. to utilize the West 30th Street Heliport. Mr. Gengaro stated that New York

Helicopter Charter, Inc. would only be permitted to resume use of the heliport if it were current in

the payment of fees due to the heliport; did not violate the rules of the heliport; and discontinued the

lawsuit pending in New York County Supreme Court under index number 601327-06.

Mr. Gengaro also stated that New York Helicopter Charter, Inc. and its principal, Mr. Roth, had to "stop writing letters to the HRPT" in order to be allowed to resume operations at the heliport.

4.     Upon information and belief, New York Helicopter Charter, Inc. is current in all its financial obligations to the West 30th Street Heliport and has complied with all the rules and regulations of the West 30th Street Heliport.


Dated:  New York, New York
            May 15, 2007

ROBERT HANTMAN