UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
NEW YORK HELICOPTER CHARTER, INC. and  :
MICHAEL ROTH individually
                                       :   07 Civ. 4069
                    Plaintiffs
                                       :
        -against-
                                       :
AIR PEGASUS HELIPORT, INC, HUDSON RIVER
PARK TRUST and the FEDERAL AVIATION    :
ADMINISTRATION
                                       :
                    Defendants
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY MEMORANDUM OF LAW BY DEFENDANT AIR PEGASUS
HELIPORT, INC IN SUPPORT OF MOTION TO DISMISS**

 

Leon Friedman (LF#7124)
148 East 78th Street
New York, N.Y. 10021
(212) 737-0400
Attorney for Defendant
Air Pegasus Heliport, Inc.

Of counsel
    Christopher P. Gengaro
    Lentz & Gengaro

## **TABLE OF CONTENTS**

    Page

**Preliminary Statement.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

**ARGUMENT**

**I.    PLAINTIFFS CANNOT SHOW THAT APH IS A STATE ACTOR** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

**II.   NO CONSTITUTIONAL VIOLATIONS ARE PROPERLY ALLEGED.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

**III.  NO CLAIM WILL LIE UNDER THE AIRLINE DEREGULATION ACT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

**CONCLUSION.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

# TABLE OF AUTHORITIES

Page

*Askew v. Bergh*, 2007 WL. 2904040 (W.D. Mich, October 4, 2007) ............................... 7

*Club Italia Soccer & Sports Organization v. Charter Township of Shelby*, 470 F.3d 286 (6th Cir.2006) ................................................................................................ 7

*Clubside, Inc. v. Valentin*, 468 F.3d 144 (2d Cir. 2006) ............................................... 5

*Condor Corp. v. City of St. Paul*, 912 F.3d 215 (8th Cir. 1990) ................................... 9

*Connolly v. McCall*, 254 F.3d 36 (2d Cir.2001) ........................................................... 7

*Consolidated Edison of New York, Inc. v. Pataki*, 292 F.3d 338 (2d Cir. 2002) ......... 6

*FCC v. Beach Communications*, 508 U.S. 307 (1993) ................................................. 7

*Finestone v. Continental Airlines, Inc.*, 195 Misc. 2d 795, 759 N.Y.S.2d 623 (N.Y. Sup App. Term, 2003) ........................................................................................ 9

*Forman v. Federal Express Corp.*, 194 Misc. 2d 441, 753 N.Y.S.2d 441 (Sup. Ct. N.Y. Cty. 2003) ........................................................................................................ 10

*Gustafson v. City of Lake Angelus*, 76 F.3d 778 (6th Cir. 1996) ................................. 9

*Hoagland v. Town of Clear Lake, Indiana*, 415 F.3d 693 (7th Cir. 2005) .................. 9

*Jetblue Airways Corp. Privacy Litigation*, 379 F. Supp. 299 (E.D.N.Y. 2005) .......... 9

*Neilson v. D'Angelis*, 409 F.13d (2d Cir. 2005) ........................................................... 7

*Nixon v. Administrator of General Services*, 433 U.S. 425, 97 S. Ct. 2777, 53 L. Ed. 2d 867 (1977) ...................................................................................................... 6

*Olympic Pipe Line Company v. City of Seattle*, 437 F.3d 872 (9th Cir. 2006) ........... 8

*Patterson v. Portch*, 853 F.2d 1399 (7th Cir. 1988) ..................................................... 4

*Queer v. Westmoreland County*, 2007 WL. 2407283 (W.D. Pa. August 20, 2007) .... 6

*Roberts v. Cameron-Brown Co.*, 410 F. Supp. 988 (S.D. Ga. 1975) ............................ 3

*Rui One Corp. v. City of Berkeley*, 371 F.3d 1137 (9th Cir. 2004) .............................. 6

*Seariver Maritime Finance Holdings Inc. v. Mineta*, 309 F.3d 662 (9th Cir.2002) ............ 5

*Travel All over the World v. Kingdom of Saudi Arabia and Saudi Arabian Airlines*, 73 F.3d 1423 (7th Cir. 1996) .................................................................................. 8

*United Airlines, Inc v. Mesa Airlines, Inc.*, 219 F.3d 605 (7th Cir. 2000) ........................ 9

*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) ................................................. 5, 6

## MISCELLANEOUS

Joseph Geller, "Commuting by Helicopter: Avoid Landing in Court," 14 J. *Suffolk Acad. L.* 125 (2000) ............................................................................................................ 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------x
NEW YORK HELICOPTER CHARTER, INC. and        :
MICHAEL ROTH individually
                                             :  07 Civ. 4069
                        Plaintiffs
                                             :
        -against-
                                             :
AIR PEGASUS HELIPORT, INC, HUDSON RIVER
PARK TRUST and the FEDERAL AVIATION          :
ADMINISTRATION
                                             :
                        Defendants
---------------------------------------------x

### REPLY MEMORANDUM OF LAW BY DEFENDANT AIR PEGASUS HELIPORT, INC IN SUPPORT OF MOTION TO DISMISS

Preliminary Statement

Plaintiffs answering papers simply repeat standard principles relating to the concept of state action and constitutional protection, but they do not confront the specific situation now before the Court. The undisputed facts (as outlined in Plaintiffs' complaint and as attached as exhibits to the complaint) show that Air Pegasus Heliport, Inc. ("APH") was not a state actor and that plaintiffs had no "property right" in any particular rate. Not did they have any right in continued use of the Heliport if they violated a settlement agreement (the subject of a separate state court action). The Permit between APH and the New York Department of Transportation contains a provision that it "shall not confer upon any person or entity other than the parties hereto any rights or remedies hereunder" (Permit, Exhibit C to the Complaint, Section 50). Thus Plaintiffs did not have any expectation under state law that could create a constitutionally-protected property right. Nor do any of the asserted constitutional violations have any validity.

1

Furthermore, the Airline Deregulation Act does not apply in this situation. Neither APH nor the is a "state, or political subdivision of a State," and the actions of APH complained of did not involve or encompass "a law, regulation or other provision having the force and effect of law, related to the price, route or service of an air carrier." Plaintiffs claim that certain discounts given to other helicopter operators were not afforded to them, precisely the same claims as they made in a parallel law suit pending in state court since 2006, based on Article 78 of the New York CPLR. There is no law, regulation or other provision having the force and effect of law that created any alleged disparity, merely individual choices made by parties to a contract. Thus, there is no basis for any preemption under the Airline Deregulation Act. When one party enters into or breaches a contract with another, under no circumstances can the breach of contract claim serve as a basis for invoking that law.

With respect to the six claims under Article 78, plaintiffs make no serious effort to defend those claims, so they must be dismissed from the case at the outset.

## POINT I

### PLAINTIFFS CANNOT SHOW THAT APH IS A STATE ACTOR

As we demonstrated in our opening brief, APH cannot be considered a state actor. (APH Opening Memorandum in Support of the Motion to Dismiss "APHOpenMemMD" at 7-15) The complaint correctly described APH as "a Delaware corporation with its principal place of business in New Jersey." (Pl.Cmpl. par. 55). The complaint also alleges that APH is a "the sole and exclusive fixed base operator pursuant to a March 25, 1996 agreement . . .with the New York Department of Transportation . . .which the HRPT later assumed." *Id*. par. 56. The complaint also alleges that APH, acting on its own, imposed a new unjustified fee on Plaintiffs.

2

*Id*, par 151-152; 166. Plaintiffs also allege that APH discriminated against Plaintiffs in rates it charged to other users of the facility. (*Id*. par. 145).

Plaintiffs argue that operating a Heliport is "traditionally the exclusive prerogative of the State." (Compl. Par. 96; Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss "Pl.OppM" at 12). As we point out in our brief in opposition to the motion for preliminary injunction, that is simply not true. There are thousands of private heliports around the country -- indeed the vast majority of helicopter operations are conducted at private facilities -- utilized by corporations, medical facilities, forest rangers, utility companies, news organizations, law enforcement, oil riggers and resorts.[1] The operation of privately operated heliports, particularly with respect to charges to helicopters operators, cannot be considered "traditionally the exclusive prerogative of the State." See discussion in APH's Memorandum in Opposition to Plaintiffs' Motion for a Preliminary Injunction ("APHMemOppPI" at 6-7).

Nowhere does the complaint allege that HRPT ordered, encouraged or authorized the alleged increase in rates. Plaintiffs argue that HRPT "had knowledge . . .and allowed" the differential in rates (Pl.Opp.M at 15). Whether or not that is the basis for an Article 78 proceeding, it does not make APH a state actor. See *Roberts v. Cameron-Brown Co.*, 410 F.Supp. 988, 994 (S.D. Ga. 1975).

> With regard to plaintiff's Fourteenth Amendment contention, this Court is of the opinion that state involvement in this case is insufficient to justify a finding of state action. Plaintiff apparently relies on the fact that Ga.Code Ann. s 67-1506 permits non-judicial foreclosure sales, and thus plaintiff contends that this statutory permission alone is sufficient state action to invoke the Fourteenth Amendment. However, although the Supreme Court has never ruled on this precise question, the vast majority of federal courts including the district courts for the Northern and Middle Districts of Georgia, have

---

[1] New York State has a special procedure for applying for permission to operate a privately owned heliport, indicating the large number of situations where such heliports are established. See Joseph Geller, "Commuting by Helicopter: Avoid Landing in Court," 14 J. *Suffolk Acad. L.* 125 (2000)

held that *no state action exists when a state statute merely allows the activity complained of to occur.* (emphasis added).

In any event, HRPT has the power to determine whether rates are discriminatory or not. The Permit itself allows discounts for "volume purchasers" thus undermining Plaintiffs' claims that all rates must be the same. The Permit provides that the Operator shall "charge fair, reasonable and non-discriminatory prices for each unit of sales or services provided that the operator may make reasonable and non-discriminatory discounts, rebates or other similar types of price reductions to volume purchasers." (Exhibit C to the Complaint, Section 34(b)).

B.   No Constitutional Violations Are Properly Alleged

Even if APH were considered a state actor, no constitutional violation is alleged. As we point out in our opening brief, there could be no procedural due process violation since Plaintiffs must possess a constitutionally-protected property right at the outset, and they must also show that some process was due to protect that right. Plaintiffs certainly had no expectation created under state law to any particular rate, since, as noted above, the permit explicitly denied any third party any rights. "Property under the due process clause is any interest to which a government has given someone an entitlement," *Patterson v. Portch*, 853 F.2d 1399, 1405 (7th Cir. 1988). No "entitlement" or expectation was created under the permit.

Plaintiffs claim in theor opposing brief, that they have a property interest *in the operation of its business at the 30th Street Heliport.*" They cite *Women's Med. Prof. Corp. v. Baird*, 438 F.3d 595 (6th Cir. 2006), where the state attempted to close down *completely* an abortion clinic by revoking its license to operate. That is hardly equivalent to revoking Plaintiffs' right to use the 30th Street facility (because they violated a provision of the settlement agreement between the parties). Indeed, plaintiffs have since gone to another facility to operate. The current situation is hardly similar to the denial of a license to operate completely. The other case cited, *Watson v.*

*Kansas City, Kansas*, 185 F.Supp.2d 1191 (D. Kans. 2001) involved a situation where certain state officers invaded someone's property without a warrant, thereby treading on the owner's Fourth Amendment rights. The court rejected a substantive due process claim since the conduct alleged was not outrageous enough. The final case cited was *United States v. Tropiano*, 418 F.2d 1069 (2d Cir. 1969) a Hobbs Act case, where the issue was whether a victim of the crime was deprived of "property" in the broadest sense under that law.[2]

Nor could there be an equal protection violation. Plaintiffs claim that they are a "class of one" subject to invoking that clause. However, that allegation is insufficient to invoke that principle. "A successful equal protection claim may be brought by a 'class of one,' when the plaintiff alleges that it has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Seariver Mar. Fin. Holdings Inc. v. Mineta*, 309 F.3d 662, 679 (9th Cir.2002). The case on which plaintiffs rely, *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), involved a city's refusal to afford a resident access to the city's water supply unless it conveyed a 33 foot easement to the city. That is hardly equivalent to a private party allegedly giving discounts to other helicopter companies.

The Second Circuit has established an extremely high burden before a "class of one" equal protection claim can be accepted. It noted in *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006):

> We have held that class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves. . . . . Accordingly, to succeed on a class-of-one claim, a plaintiff must establish that
>
> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in

---

[2] Nor is any hearing due when rates are increased, as Plaintiffs allege. See discussion in APHOpenMemMD at 15-16.

treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.

In a series of cases, differential treatment of third parties in terms of rates or prices or government benefits have not satisfied the "class of one" test. In a leading Second Circuit case, *Consolidated Edison of New York, Inc. v. Pataki*, 292 F.3d 338, 345 (2d Cir. 2002), the New York legislature had passed a law denying Consolidated Edison the right to recover from its ratepayers certain costs associated with closing the Indian Point Nuclear Facility. The utility argued that the law violated the Bill of Attainder clause since it amounted to punishment. While the Court upheld that possibility of that claim, it expressed doubt as to an equal protection violation under the "class of one" principle.

> We thus do not decide whether Chapter 190 violates the Equal Protection Clause, which supplied one basis for the district court's injunction. We are skeptical, however, that the Clause would require invalidation of Chapter 190: "[M]ere under-inclusiveness is not fatal to the validity of a law under ... equal protection[,] even if the law disadvantages an individual or identifiable members of a group." *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 471 n. 33, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977) (internal citations omitted). To be so invalidated, the classification must have "no rational basis," *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), and we doubt that the present statute meets that standard.

When the City of Berkeley passed a "living wage" statute requiring employers at the Marina (a business area on the San Francisco Bay similar to the Hudson River Park) to pay higher wages to its employees than employers in the rest of the city, the federal court found that such a differential was not "irrational," and the "class of one" rationale could not be applied. See *Rui One Corp. v. City of Berkeley*, 371 F.3d 1137 (9th Cir. 2004).

In another case with facts similar to this one, a County refused to renew the contract of a company that provide early intervention services to special needs children. The company brought an equal protection clause claim on a "class of one" theory. The court rejected the claim. *Queer v. Westmoreland County*, 2007 WL 2407283 (W.D. Pa. August 20, 2007) * 5. "However, it is

6

*v. Westmoreland County*, 2007 WL 2407283 (W.D. Pa. August 20, 2007) * 5. "However, it is clear that the Supreme Court has held that the rational basis test applies. Plaintiffs must prove: (1) that they were treated differently compared to similarly situated persons/entities; (2) that Defendants did so intentionally; and (3) that there was no rational basis for the difference in treatment." The court noted that there were plausible claims of improper conduct on the part of the plaintiff that justified the differential treatment.

The courts have noted that a government acts with a "rational basis" if there is any conceivable basis for upholding its actions. "A municipal regulation classification subject to rational basis review 'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Connolly v. McCall,* 254 F.3d 36, 42 (2d Cir.2001). See also *Neilson v. D'Angelis*, 409 F.13d 100, 105-06 (2d Cir. 2005)(application of rational basis test in "class-of-one" situation); *Askew v. Bergh*, 2007 WL 2904040 (W.D. Mich, October 4, 2007)*5:

> To prevail on a class of one claim, a plaintiff must establish (a) that he has been intentionally treated differently from others who are similarly situated and (b) that the disparative treatment has no rational basis. *Club Italia Soccer & Sports Org. v. Charter Township of Shelby,* 470 F.3d 286, 298 (6th Cir.2006). Under rational basis review, the defendant does not have the burden of producing evidence to sustain the rationality of its actions. Its actions are presumptively valid and "may be based on rational speculation unsupported by evidence or empirical data." *FCC v. Beach Communications,* 508 U.S. 307, 315 (1993)."

Plaintiffs do not make sufficient allegations to counter this rule.

The idea that a "class of one" equal protection claim can be brought every time a concessionaire of a government entity charges different rates to customers boggles the mind. HRPT operates the Chelsea Piers where hundreds of concessionaries provide goods and services to millions of customers every tear. The idea that every alleged discrimination in price charged by any concessionaire leads to a Section 1983 "class of one" case cannot be accepted.

7

Finally, there can be no basis for any substantive due process claims since no "outrageous' conduct is alleged. See discussion in APHOpenMemMD at 16-17.

## POINT III

## NO CLAIM WILL LIE UNDER THE AIRLINE DEREGULATION ACT

We have shown in our opening brief why the Airline Deregulation Act does not apply here. APH is not a State or political subdivision of a State and the actions complained of are not the result of "a law, regulation or other provision having the force and effect of law." See discussion in APHOpenMemMD at 17-22. See also discussion in APHMemOppPI at 10-13.

To support their preemption claims, Plaintiffs rely on a Commerce Clause case *Olympic Pipe Line Company v. City of Seattle*, 437 F.3d 872 (9th Cir. 2006) involving the Pipeline Safety Act. In that case, the city of Seattle tried to impose additional safety conditions upon the operation of a hazardous liquid pipeline. The federal law preempted that effort. Seattle then argued that it was acting as a market participant rather than a market regulator and therefore was not subject to any preemption claim. The court rejected that argument. The reference to the possibility of a contract action (cited in plaintiffs' opposition brief) occurred in the context of a bankruptcy proceeding and had nothing to do with contract actions being outside of the preemption doctrine. As we showed in our preliminary injunction brief, actions to enforce contracts are never preempted, APHMemOppPI at 10-14. See also *Travel All over the World v. Kingdom of Saudi Arabia and Saudi Arabian Airlines*, 73 F.3d 1423, 1432 (7th Cir. 1996): "Thus, as in *Wolens*, the plaintiffs here are not alleging a violation of a state-imposed obligation, but rather are contending that the airline breached a self-imposed undertaking. The terms and conditions in the contract between Travel All and Saudia are 'privately ordered obligations' and

therefore do not amount to a State's enactment or enforcement of law." See discussion in APHMemOppPI at 10-13.

Plaintiffs also cite *United Airlines, Inc v. Mesa Airlines, Inc.*, 219 F.3d 605 (7th Cir. 2000) to the effect that "contracts, even between private parties, can create private law that cannot supersede the preemption of the Act." But that case stands for the opposite proposition. It emphasized that "When all a state does is use these [legal] rules to determine whether agreement was reached, or whether instead one party acted under duress, it transgresses no federal rule." 219 F.3d at 609. If there is also "a request to enforce the parties' bargains" then no preemption claim will lie. That is the case here. In *Jetblue Airways Corp. Privacy Litigation*, 379 F.Supp. 299 (E.D.N.Y. 2005), also cited by Plaintiffs, a class of airline passengers brought an action complaining about the airlines use of passenger data. Those claims were preempted by the Act.

In a series of other cases, the courts have held that limiting access to heliports through proprietary or zoning laws is not preempted by the ADA. Thus in *Hoagland v. Town of Clear Lake, Indiana*, 415 F.3d 693 (7th Cir. 2005), the Court held that a city's zoning ordinance requiring a special use permit before a heliport could be established within a town's limits was not preempted by the Act. See also *Condor Corp. v. City of St. Paul*, 912 F.3d 215, 219 (8th Cir. 1990)(no preemption in the city's denial of permission to operate a heliport) ; *Gustafson v. City of Lake Angelus*, 76 F.3d 778, 783 (6th Cir. 1996)(city's prohibition against landing seaplanes on a city lake not preempted).

Plaintiffs also argues that "if the conduct complained of falls within the purview of federal preemption, <u>the State cannot grant that relief</u>." Pl.Opp.M at 34. If plaintiffs are asserting that only federal courts can hear a preemption claim, they are wrong. State courts often consider and uphold claims of preemption under the Airline Deregulation Act. See *e.g. Finestone v.*

*Continental Airlines, Inc.*, 195 Misc.2d 795, 759 N.Y.S.2d 623 (N.Y. Sup App. Term, 2003)(claims for lost luggage under common law preempted by Airline Deregulation Act); *Forman v. Federal Express Corp.*, 194 Misc.2d 441, 753 N.Y.S.2d 441 (Sup. Ct. N.Y. Cty. 2003) (tort claims for lost package preempted by the Act).

If plaintiffs are claiming that state law claims cannot be brought if the claims fall within the preemptive language of the law, we agree with that proposition. The only problem is that the Article 78 claims contained in the complaint do not fall within the reach of the law. The Article 78 claims in the complaint focus on HRPT's continuation of the APH permit (6th and 8th causes of action), its decision not to obtain board approval for some of its actions (7th and 9th causes of action) and its failure to shut down the heliport (10th and 11th causes of action). None of these claims have any relation to the federal law.

## CONCLUSION

For the reasons stated above, the complaint in this action should be dismissed for failure to state a claim on which relief can be granted.

Dated: New York, N.Y.
October 22, 2007

_____
Leon Friedman (LF#7124)
148 East 78th Street
New York, N.Y. 10021
(212) 737-0400
Attorney for Defendant
Air Pegasus Heliport, Inc.