UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
NEW YORK HELICOPTER CHARTER INC., and
MICHAEL ROTH, individually,

                          07 CIV. 4069(MGC)

        Plaintiffs,

                          Hon. Miriam G. Cedarbaum

  -against-

AIR PEGASUS HELIPORT, INC.,
HUDSON RIVER PARK TRUST,

                          **AFFIDAVIT OF MICHAEL
                          ROTH IN REPLY TO THE
                          DECLARATION OF STEVEN TRENK**

        Defendants.
---------------------------------------------------------------X

MICHAEL ROTH, being duly sworn, deposes and says:

1. First and foremost, please accept my apology for my small outburst in the Court room. I have tremendous respect for this Court and I can promise the Court that it will never happen again.

2. I am the president of New York Helicopter Charter, Inc. (herein referred to as ("NYH")), who, along with me personally, are the plaintiffs in the above-entitled action filed May 24, 2007.

3. This affidavit is submitted in reply to the declaration of Steven Trenk, a principal of defendant Air Pegasus Heliport (herein referred to as ("APH")), and in further support of the pending order to show cause, returnable October 25, 2007.

4. This affidavit supplements my previous affidavits filed on May 21, 2007 and October 11, 2007, which includes my background, the background of New York Helicopter Charter Inc., my history with APH, and the factual reasons in support of the complaint filed herein.

5. There is no question that the actions of the Hudson River Park Trust (herein referred to as ("HRPT")) and APH have had a tremendous negative and irreparable impact on my overall business, specifically affecting NYH's reputation, good will, market position, and income

in the helicopter tour industry and charter business, resulting in irreparable harm to me and my business.

6. Mr. Trenk's statement in paragraph one (1) of his declaration stating that the relief I seek is to be allowed to operate out of the 30th Street heliport on "certain upcoming weekends" is inaccurate. In fact, the order to show cause requests that I be afforded the complete and unfettered use of the West 30th Street heliport, a public heliport, on a twenty four (24) hour-a-day, seven (7) day-a-week basis, just as all other helicopter companies operating out of this heliport, some of which, whom do not even have the necessary FAA Part 135 air carrier and FAA Part 136 tour operations licenses, are presently allowed to do.

7. The Trenk family, who are the principals in APH, has been a stock holder of Liberty Helicopters tours for twenty years. I also believe that they have an interest in Zip Helicopter tours which pays only $500 a month for unlimited landing and parking fees at the 30th Street heliport, while NYH paid an average of $12,000 per month in fees for only eight operational days a month.

8. The West 30th Street heliport is the only heliport in New York City to be open twenty four (24) hours a day, seven (7) days a week, effectively giving APH a monopoly on the charter helicopter industry. Therefore, by prohibiting NYH from operating from the West 30th Street heliport, my hours of operation have been reduced by more than fifty (50) percent.

9. As a result, I have lost almost 35% of my tourist business and almost 100% of my charter business since my ouster from the West 30th Street Heliport on May 6, 2007.

10. The APH has operated the West 30th Street heliport for thirty (30) years, most recently on a month-to-month basis, and there has never been an RFP or even a bidding process for new operators, which is required by state and city law.

11. Any allegations that I violated the rules set forth in the settlement agreement between myself and APH are a complete fabrication and an attempt to mislead the Court.

12. In fact, the allegations in Paragraph 4 of the Trenk Declaration have never been previously alleged against any NYH principal or employee, and no proof supporting these allegations has ever been presented formally or informally, prior to Mr. Trenk's declaration.

13. The assertion by Mr. Trenk that NYH failed to make necessary payments to APH, which resulted in our untimely ouster, is false.

14. In fact, in our settlement with APH, we operated on a C.O.D. basis, in which we put a multiservice aviation credit card on file with the APH which they were able to charge at will for landing fees, parking fees, fuel fees, and passenger fees.

15. At no time was this credit card ever delinquent or inoperable. Additionally, the APH collected an additional passenger fee of $15 per every One Hundred Customers, on behalf of the HRPT, which was required to be sent into APH with a report and a check. NYH complied with these requirements on a timely basis and all fees and charges were paid in full. According to NYH's bank records, all checks were cashed by APH.

16. APH's attorney has admitted in a letter that NYH's removal from the 30th Street heliport was the direct result of NYH's unwillingness to drop the state lawsuit, stop all contact with the HRPT, and come current with all fees which, as previously stated, were already current.

17. In June of 2007, a hearing was held in front of Judge Kahn in State Supreme Court, New York County, regarding whether to issue a temporary restraining order, which, if granted, would have allowed NYH to operate out of the West 30th Street heliport under the terms of the settlement between the parties.

18. Four months later, no decision has been issued by Judge Kahn. My attorney, Andrew

Greene, has followed up with Judge Kahn's chambers on a regular basis, inquiring about when a decision might be rendered, and he has been told that "The judge will make a decision when he is ready to make a decision."

19. The assertion, made in open Court on behalf of Mr. Trenk, that the Downtown Manhattan Heliport ("DMH") is only temporarily closed on Sundays for repaving, is wrong and misleading.

20. The repaving of the DMH was completed on Sunday, October 14, 2007, and NYH has remained closed on Sundays.

21. I was informed by the manager of the Port Authority of New York and New Jersey ("PA") DMH heliport, Mr. Rick Wegel, that the cause of the DMH weekend closings was not due to any repaving efforts, but rather that the PA could not properly staff the heliport.

22. I was also informed that the lack of staff on Sundays and, potentially on Saturdays as well, is the reason that the DMH will not be operational on weekends.

23. I remain inoperable from the DMH heliport on all Sundays as well as Monday through Saturday from 7 PM to 7 AM.

24. The alleged response that the defendant could not get a letter from any unidentified "responsible persons" is misleading and irresponsible.

25. In my conversations with Mr. Wegel, he indicated that on the date of our hearing in front of this Court on Thursday, October 11th, 2007, he had a conference call with Messrs. Steven and Alvin Trenk, principals of APH.

26. In this conversation, the Trenk's asked Mr. Wegel to write a letter about the weekend closings which would have misrepresented the truth; a blatant attempt to mislead this Court, which Mr. Wegel refused to be a part of.

27. In fact, I personally saw an affidavit prepared by APH's attorney which was either emailed or faxed to Mr. Wegel by the Trenks' attorneys, in an attempt to have Mr. Wegel sign it, which he also refused to do.

28. The assertion that Mr. Trenk was unable to secure a letter in writing indicating the reasons for the DMH heliport's closure is also misleading because the defendants are well aware that obtaining such a letter would have discredited their claim pertaining to the DMH's hours of operation.

29. The assertion made by the defendant that the issues currently before the State Court are identical to the issues currently before this Court is not accurate.

30. In the State Court, I sought relief allowing me to operate under the previous conditions stipulated to between myself and the defendants. This has nothing to do with the issues before this court and even Judge Kahn recognized this as he said, in response to a comment by Mr. Friedman, the Trenks' attorney, "the federal case has nothing to do with me."

31. The defendants' assertions that I do not have a valid federal cause of action and, additionally, that this Court does not have valid jurisdiction over this case, does not surprise me after my years of dealing with Mr. Trenk.

32. After exhausting all other available remedies, the defendant would like this Court to place APH above the law where they would be free to arbitrarily impose their will on any and all potential (customers) or tenants of the West 30th Street heliport without any possible forum for redress.

33. I ask this Court NOT to abstain from the current action, because, as I previously stated, all of my other options have been explored and, without the Federal Court, I will be unable to seek redress for the harm NYH has suffered as a result of the unreasonable and unlawful actions

of APH.

34. As an owner of a business which provides livelihoods for twenty four (24) full time employees, I believe that I have a property right as an American citizen to utilize what has been deemed by the government to be a public use heliport, owned by the State of New York and the City of New York, in the same way as all other customers and tenants of APH.

35. Mr. Frank Patone, in the New York State Office of the Comptroller, has conducted an audit of all three heliports in NYC with special attention paid to the West 30th Street heliport and its actions alleged misconduct and duplicity between HRPT and APH.

36. I beg the Court's indulgence to seek this report as it will shed light on all of the issues before this Court.

37. In the case before this Court, based largely on changed circumstances which were entirely out of my control, I am respectfully asking this Court to grant me the right to operate my business out of the West 30th Street Heliport without restriction, as all other operators are allowed to do.

38. I have sought relief through the APH, HRPT, State Court system, as well as by personally sending over fifty (50) letters to high-ranking New York State public officials, of which I received only one brief and insubstantial reply.

39. After my exhaustive and futile attempts to seek a fair remedy through these channels, I have no choice but to ask this Court to grant the relief I have patiently and respectfully sought.

40. I therefore ask this Court to deny the defendants Motion to Dismiss and grant NYH a permanent injunction to operate from the West 30th Street heliport without restriction.

41. The above facts are based on my personal knowledge, information and belief and I

am aware that I am subject to penalties for perjury if willfully false.

Michael Roth

Subscribed and sworn to me
10/23/07

Notary Public
CARLOS M. CARVAJAL
NOTARY PUBLIC - STATE OF NEW YORK
REG. NO. 02CA6042401
QUALIFIED IN NEW YORK COUNTY
COMMISSION EXPIRES MAY 22, 20__

11/29/10

7