UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NEW YORK HELICOPTER CHARTER, INC. and :
MICHAEL ROTH individually

                                  :   07 Civ. 4069

                   Plaintiffs

                                  :

    -against-

                                    :

AIR PEGASUS HELIPORT, INC, HUDSON RIVER
PARK TRUST and the FEDERAL AVIATION :
ADMINISTRATION

                                    :

                   Defendants

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## SUPPLEMENTAL MEMORANDUM OF LAW BY DEFENDANT AIR PEGASUS HELIPORT, INC IN SUPPORT OF MOTION TO DISMISS

                                  Leon Friedman (LF#7124)
                                  148 East 78th Street
                                  New York, N.Y. 10021
                                  (212) 737-0400
                                  Attorney for Defendant
                                  Air Pegasus Heliport, Inc.

Of counsel

     Christopher P. Gengaro
     Lentz & Gengaro

# TABLE OF CONTENTS

Page

Preliminary Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     1

ARGUMENT

I.     APH CANNOT BE CONSIDERED A STATE ACTOR . . . . . .     2

II.     THERE IS NO EQUAL PROTECTION VIOLATION . . . . . . .     6

III.     NO CLAIM WILL LIE UNDER THE AIRLINE
DEREGULATION ACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     8

IV     THERE IS NO BASIS FOR ADDING ADDITIONAL CLAIMS
OR DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     11

# TABLE OF AUTHORITIES

## FEDERAL CASES

*American Airlines v. Wolens*, 513 U.S. 219 (1995) .............................................................. 8

*Benn v. Universal Health System, Inc.*, 371 F.3d 165 (3d Cir. 2004) ................................ 4

*Bond v. Dentzer*, 494 F.2d 302 (2d Cir. 1974) ...................................................................... 5

*Bushnell Corp. v. ITT Corp.* , 973 F. Supp. 1276 (D. Kans. 1997) ................................... 10

*Campbell v. City of Chicago*, 823 F.2d 1182 (7th Cir. 1987) .......................................... 10

*Clubside, Inc. v. Valentin*, 468 F.3d 144 (2d Cir. 2006) ...................................................... 7

*Consolidated Edison of New York, Inc. v. Pataki*, 292 F.3d 338 (2d Cir. 2002) ............... 7

*DeTerra v. American West Airlines, Inc.*, 226 F. Supp. 2d 274 (D.Mass. 2002) .............. 9

*E.F.W. v. St. Stephen's Indian High School*, 264 F.3d 1297 (10th Cir. 2001) ................... 4

*Hack v. President and Fellows of Yale College*, 237 F.3d 81 (2d Cir. 2000) ................... 4

*LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412 (2d Cir. 1995) ............................................... 5

*Logan v. Bennington College Corp.*, 72 F.3d 1017 (2d Cir. 1995) ................................... 4

*Lyn-Lea Travel Corp. v. Amercian Airlines, Inc.*, 293 F.3d 282 (5th Cir. 2002) .............. 9

*Nixon v. Administrator of General Services*, 433 U.S. 425, 97 S. Ct. 2777, 53 L.
    Ed. 2d 867 (1977) ........................................................................................................... 8

*Roberts v. Cameron-Brown Co.*, 410 F. Supp. 988 (S.D. Ga. 1975) ................................. 5

*Seals v. Delta Airlines, Inc.*, 924 F. Supp. 854 (E.D. Tenn. 1996) .................................... 9

*Skydive Factory, Inc. v. Maine Aviation Corp.*, 268 F. Supp. 2d 61 (D. Me. 2003) ........... 9

*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) ....................................................... 8

*Washington v. United States Tennis Association*, 290 F. Supp. 2d 323
    (E.D.N.Y.2003) ............................................................................................................... 10

*Wolotsky v. Huhn*, 960 F.2d 1331 (6th Cir. 1992) .............................................................. 5

**FEDERAL STATUTES**

Airline Deregulation Act, (49 U.S.C. § 41713(b)(1)) ........................................................8

**MISCELLANEOUS**

Joseph Geller, "Commuting by Helicopter: Avoid Landing in Court," 14 J. *Suffolk Acad. L.* 125 (2000) ..................................................................................................3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NEW YORK HELICOPTER CHARTER, INC. and          :
MICHAEL ROTH individually
                                               :    07 Civ. 4069

                          Plaintiffs           :

        -against-                              :

AIR PEGASUS HELIPORT, INC, HUDSON RIVER        :
PARK TRUST and the FEDERAL AVIATION
ADMINISTRATION                                 :

                          Defendants           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## SUPPLEMENTAL MEMORANDUM OF LAW BY DEFENDANT AIR PEGASUS HELIPORT, INC IN SUPPORT OF MOTION TO DISMISS

Preliminary Statement

Plaintiffs have filed an amended complaint, adding additional assertions, an additional defendant, and additional claims, primarily under the federal anti-trust laws. We believe that this Court did not give plaintiffs permission to add defendants or claims. The Court instructed plaintiffs simply to add factual support to the claims that the defendants are state actors and that the Airline Deregulation Act applies here. The additional paragraphs in those areas merely make conclusory assertions, repeat allegations made elsewhere or make legal arguments rather than add any factual statements relating to the disputed points. For all the reasons outlined in our original submissions, this case must be dismissed.

## STATEMENT OF THE CASE

Plaintiffs have submitted a 49-page amended complaint, consisting of 381 paragraphs to replace the 36-page complaint with 257 paragraphs contained in the original complaint. The amended complaint contains six causes of action (Eighth through Thirteenth Causes of Action)

1

which are based upon Article 78 claims (New York CPLR § 7801). Plaintiffs made no effort in

their last submission to defend such claims. Thus there is no basis for continuing to include them.

With respect to the additional paragraphs, we include as a supplemental exhibit, a

marked-up copy of the amended complaint showing how many paragraphs of the original

complaint are continued in the new complaint. The exhibit identifies those repeated paragraphs

in the new complaint. It also indicates which paragraphs are new.

What this exhibit shows is that 239 paragraphs duplicate the paragraphs in the original

complaint. One hundred and forty two paragraphs are new. The new paragraphs deal primarily

with the anti-trust claims (against the original defendants plus another helicopter company, Zip

Aviation LLC). They are found in pars.167 to 212, and 234 to 279.   In addition, plaintiffs have

added a new section dealing with allegations of state action, pars. 154 to 166. Finally there are

additional paragraphs dealing with the equal protection claim (pars. 220 to 233). Plaintiffs have

added some isolated new paragraphs as well.

## ARGUMENT

### I.      APH CANNOT BE CONSIDERED A STATE ACTOR

In our prior papers, we have shown that APH cannot be considered a state actor for the

following reasons: (1) APH is a Delaware Corporation which is the fixed  base operator at 30th

Steeet Heliport pursuant to a permit originally issued by the New York Department of

Transportation. (Amended paragraph  ["Apar"] 11-12) . As a private entity it is not a state actor

unless it performs functions that are the exclusive prerogative of the State, or its actions are

closely entwined with state functions, or there is a close nexus between the State and the

challenged action or the State has compelled the actions complained of. (APH's Opening

Memorandum of Law in Support of Motion to Dismiss "APHOpenMem" at 7-15).

There can be no doubt that operating a heliport is not a traditional function of the state nor is it the exclusive prerogative of the State. There are thousands of private heliports around the country -- indeed the vast majority of helicopter operations are conducted at private facilities -- utilized by corporations, medical facilities, forest rangers, utility companies, news organizations, law enforcement, oil riggers and resorts.[1] The operation of privately operated heliports, particularly with respect to charges to helicopters operators, cannot be considered "traditionally the exclusive prerogative of the State." See discussion in APH's Memorandum in Opposition to Plaintiffs' Motion for a Preliminary Injunction ("APHMemOppPI" at 6-7). See also APH Reply Memorandum in Support of Motion to Dismiss (APHReplyMem.) at 3-4.

Nor can there be any "entwinement" between APH and the State since the decision to raise rates was APH's alone, and such raises were allowed under the original Permit. "The operator [APH} shall have the right, from time to time, to amend any item of such Schedule of Charges, to make increases or decreases therein and to add or delete additional items thereto upon fifteen days prior notice to Public and the Department." (Section 4). It also provides that the Operator shall "charge fair, reasonable and non-discriminatory prices for each unit of sales or services provided that the operator may make reasonable and non-discriminatory discounts, rebates or other similar types of price reductions to volume purchasers." (Section 34(b)). The Permit also specifies that the Agreement "constitutes the entire agreement of the Parties . . .may not be changed, modified or extended except by written instrument duly executed by the Department and the Operator, and shall not confer upon any person or entity other than the parties hereto any rights or remedies hereunder." (Section 50).

---

[1] New York State has a special procedure for applying for permission to operate a privately owned heliport, indicating the large number of situations where such heliports are established. See Joseph Geller, "Commuting by Helicopter: Avoid Landing in Court," 14 J. *Suffolk Acad. L.* 125 (2000)

For a state body to merely allow an activity to occur does not convert the activity into state action, so long as the state body was not a willful participant in the specific action complained of . See *Benn v. Universal Health System, Inc.*, 371 F.3d 165, 171-172 (3d Cir. 2004) (mental health professionals at private mental health care facility were not state actors by virtue of their involvement in an application to involuntarily commit plaintiff for examination, even though state law permits a physician or other "responsible party" to file an application for an emergency examination, because state law does not compel or even significantly encourage the filing of an application and defendants did not operate as "willful participants in joint activity with the state or its agents" (citations omitted); *E.F.W. v. St. Stephen's Indian High School*, 264 F.3d 1297, 1306 (10th Cir. 2001) (actions of employees of tribal agency that removed Indian child from her mother's custody and placed child in psychological care facility as a suicide risk, was not taken under the color of law despite fact that tribe had agreement with state under which the state furnished funds to tribal social services agency to provide help to reservation children, and it agreed to use state rules and regulations since tribes merely exercised their sovereignty in deciding what law would govern their actions); *Hack v. President and Fellows of Yale College,* 237 F.3d 81, 83-84 (2d Cir. 2000) (although Yale was created by special state law to further governmental objectives and both governor and lieutenant governor were ex officio board members, because the latter served as only two of 19 board members and there was no evidence that the state controlled the board, Yale is not a state actor; even if the two government officials attended every board meeting and vigorously participated, it is clear that the state could not control Yale's policies and operations); *Logan v. Bennington College Corp.*, 72 F.3d 1017, 1027-1028 (2d Cir. 1995) (although college professor was discharged pursuant to sexual harassment policy adopted in part as result of conciliation agreement with state Human Rights Commission,

state agency had no involvement in case and its action in terminating professor was in no way dictated by state law or state actors and thus there was insufficient nexus between agency and termination to warrant finding of state action); *LeBlanc-Sternberg v. Fletcher,* 67 F.3d 412, 433 (2d Cir. 1995) (efforts of private individuals in circulating petitions for referendum to incorporate community so as to discourage settlement of orthodox and Hasidic Jews was not state action; circulation of petitions for referendum is typically carried out by private persons in their individual capacities and does not meet *Lugar* test); *Wolotsky v. Huhn,* 960 F.2d 1331, 1336-1337 (6th Cir. 1992) (although private mental health facility derives significant portion of its funds from government, is subject to significant state regulation, is under public contract with state, and it previously leased one of its facilities from state at nominal fee, district court correctly found that facility was not state actor for purposes of § 1983); *Bond v. Dentzer,* 494 F.2d 302 (2d Cir. 1974)(filing of wage assignments with debtor's employer was not state action, even if permitted by state law). See also *Roberts v. Cameron-Brown Co.,* 410 F.Supp. 988, 994 (S.D. Ga. 1975) (state foreclosure law which permits non-judicial foreclosure sales, no state action when law invoked; "no state action exists when a state statute merely allows the activity complained of to occur.") See also cases in APH's OpenMemo at 9-15.

Plaintiffs add twelve new paragraphs to attempt to assert state action. They allege that the right to operate the Heliport "has its source in state authority" (Apar. 154), that the heliport is "public" and is involved in "some aspects of its operations." (Apar 156). They also allege that the HRPT approves certain matters relating to FAA regulations (Apar. 158, 164-166) and that APH and HRPT have "enjoyed a long-standing, mutually beneficial . . . relationship" (Apar. 160). They also allege that the rates were increased in an effort to repay HRPT certain amounts

due under a settlement agreement. (Apar. 162-63). Finally they claim that HRPT was aware of certain discriminatory practices of APH and failed to protect the public (par. 161).

None of these additional paragraphs change the legal landscape. The only issue on this motion is whether the *particular actions complained of in this case* were approved by, compelled by, or actively or willfully participated in, by HRPT. FAA approval of airspace is not an issue in this case. The actions complained of here were increases in rates, alleged discriminatory pricing and the termination of Plaintiffs' right to conduct helicopter operations at the Heliport because of its violation of a settlement agreement between the parties. (All of these issues are also contained in a complaint previously filed in the State courts, and defendants have raised a *Colorado River* abstention issue in its opposition to the motion for a preliminary injunction. See APHMemOppPI at 14-16. The state court has recently denied a motion for a preliminary injunction filed by plaintiffs, precisely the same relief as that requested here by plaintiffs).

There is no allegation in the complaint that HRPT did anything other than follow the requirements of the Permit, which allowed APH on its own to increase rates and which gave no right to any third party to claim any rights under the Permit. (Section 50). None of the additional allegations change that essential fact. That the HRPT did nothing to roll back the rates does not convert the original decision (made solely by APH) into state action.

Thus there is no state action present in this situation.

## II.    THERE IS NO EQUAL PROTECTION VIOLATION

Plaintiffs make no effort to amend its constitutional claims, except for the equal protection claim. Plaintiffs add paragraphs 220 to 232 to bolster its original complaint. Of course, if there is no state action, there cannot be any equal protection claim. But even if state

action were to be found here, the equal protection claim will not lie, nor will the other claims, as noted in our original submissions.

The only basis for an equal protection violation is a "class of one" claim.[2] Plaintiffs' new allegations simply repeat allegations asserted elsewhere in their amended complaint. They assert that they have suffered damage because of alleged discriminatory pricing (Apars. 221-225). They then repeat their state action allegations that HRPT was heavily involved in APH's decisions (Apar. 227-231).

None of these allegations alter the defect in the equal protection claim. We noted in our reply memorandum that no "class of one" allegation can be upheld except in extreme situations. The Second Circuit has established an extremely high burden before a "class of one" equal protection claim can be accepted. It noted in *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006):

> We have held that class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves. . . . . Accordingly, to succeed on a class-of-one claim, a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.

In a series of cases, differential treatment of third parties in terms of rates or prices or government benefits have not satisfied the "class of one" test. In a leading Second Circuit case, *Consolidated Edison of New York, Inc. v. Pataki*, 292 F.3d 338, 345 (2d Cir. 2002), the New York legislature had passed a law denying Consolidated Edison the right to recover from its ratepayers certain costs associated with closing the Indian Point Nuclear Facility. The utility argued that the law violated the Bill of Attainder clause since it amounted to punishment. While

---

[2] There was no fundamental right involved or any class protected by heightened scrutiny.

the Court upheld that possibility of that claim, it expressed doubt as to an equal protection

violation under the "class of one" principle.

> We thus do not decide whether Chapter 190 violates the Equal Protection Clause, which supplied one basis for the district court's injunction. We are skeptical, however, that the Clause would require invalidation of Chapter 190: "[M]ere under-inclusiveness is not fatal to the validity of a law under ... equal protection[,] even if the law disadvantages an individual or identifiable members of a group." *Nixon v. Adm'r of Gen. Servs.,* 433 U.S. 425, 471 n. 33, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977) (internal citations omitted). To be so invalidated, the classification must have "no rational basis," *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000), and we doubt that the present statute meets that standard.

See other cases discussed in APH ReplyMemo at 5-7.

There is no basis for an equal protection claim.

## III.    NO CLAIM WILL LIE UNDER THE AIRLINE DEREGULATION ACT

Plaintiffs have made minor changes in their claims under the Airline Deregulation Act,

(49 U.S.C. § 41713(b)(1))(Seventh Claim, pars. 300-305). That law states: "A State, political

subdivision of a State or political authority of at least two states may not enact or enforce a law,

regulation or other provision having the force and effect of law, related to the price, route or

service of an air carrier." Plaintiffs have added paragraph 301 which states that "Congress has

the power to dictate which aircraft should be allowed to land and take-off from airports in order

to promote a nationwide transportation system and to control interstate and foreign air traffic

flow."

We have previously argued that APH is not a State or political subdivision, and there is

no "law, regulation or other provision having the force of law" at issue here. See APH

Open.Memo at 17-22. APH ReplyMemo at 8-10. We also cited a series of cases that showed that

disputes that derive from private contracts are not preempted by the Act. See *American Airlines*

*v. Wolens,* 513 U.S. 219, 229 n. 5 (1995): "the word series ' law, rule, regulation, standard, or

8

other provision,' as the United States suggests, 'connotes official, government-imposed policies, not the terms of a private contract.'" Thus The Court explained: "A remedy confined to a contract's terms simply holds parties to their agreements -- in this instance, to business judgments an airline made public about its rates and services." 513 U.S. at 229. See other cases cited in APHMemOppPI at 10-13.

See also *Lyn-Lea Travel Corp. v. Amercian Airlines, Inc.*, 293 F.3d 282 (5th Cir. 2002)(dispute over travel agent booking contract not preempted by ADA); *Skydive Factory, Inc. v. Maine Aviation Corp.*, 268 F.Supp.2d 61 (D. Me. 2003)(dispute over maintenance and inspection contract not preempted by ADA); *DeTerra v. American West Airlines, Inc.*, 226 F.Supp.2d 274 (D.Mass. 2002)(dispute over passenger contract arising over failure to board particular flight, not preempted by ADA);  *Seals v. Delta Airlines, Inc.*, 924 F.Supp. 854 (E.D. Tenn. 1996)(dispute over contract to provide ground transport between gates at airport not preempted).

This dispute concerning the heliport Permit and the settlement agreement between APH and New York Helicopter is not preempted by the law in question.

## IV    THERE IS NO BASIS FOR ADDING ADDITIONAL CLAIMS OR DEFENDANTS

As noted above, plaintiffs have added three additional claims and one additional defendant, Zip Aviation .LLC. We do not believe that this Court permitted such a widening of the dispute between the parties. The direction was simply to add additional factual allegations dealing with the contentions contained in the original complaint.

We would point out that Plaintiff NYH had previously filed an antitrust complaint against APH and another helicopter company, Liberty Helicopters, Inc. in 2004 That action was brought in state court under New York law, General Business Law § 340. (The 2004 complaint is

attached as Exhibit A to the declaration of Steven Trenk in opposition to the plaintiffs Motion for Preliminary Injunction. See pars. 22-26 of Exhibit A to that declaration). NYH then entered into a settlement agreement with APH in which it released APH of all claims, including the antitrust claim. See Trenk Declaration, Exhibit B, par. 7.

Thus NYH trots out an anti-trust claim whenever it feels it would help its litigation position.

We believe that the antitrust claim is deficient in many ways, including the fact that the complaint does not allege antitrust injury. *See e.g.*, *Bushnell Corp. v. ITT Corp.* , 973 F.Supp. 1276 (D. Kans. 1997). In addition, the claim may be foreclosed by the state actor exception to antitrust liability or the *Noerr-Pennington* doctrine. *See e.g., Campbell v. City of Chicago*, 823 F.2d 1182 (7th Cir. 1987).

Plaintiffs also seek to assert a private cause of action directly under the Commerce Clause (pars. 267-279). The claim focuses on alleged excessive fees and plaintiffs' eviction from the heliport, the subject matter of Justice Cahn's recent decision denying their motion for a preliminary injunction. No such claim can possibly be asserted. "There is no private action for damages under the Commerce Clause." *Washington v. United States Tennis Association,* 290 F.Supp.2d 323, 329 (E.D.N.Y.2003)

We believe that further response is not necessary at this point until the Court determines that it was appropriate to expand the original complaint to add these new claims and a new defendant.

## CONCLUSION

For the reasons stated above, the complaint in this action should be dismissed for failure

to state a claim on which relief can be granted.

Dated:  New York, N.Y.
        November 28, 2007

                                     Leon Friedman (LF#7124)
                                     148 East 78th Street
                                     New York, N.Y. 10021
                                     (212) 737-0400
                                     Attorney for Defendant
                                     Air Pegasus Heliport, Inc.

Of counsel

        Christopher P. Gengaro
        Lentz & Gengaro