SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------X

INDEX NO.: 05602518

Air Pegasus Heliport, Inc.,
Plaintiff,

- against -

Hudson River Park Trust

        Defendant.

-----------------------------------------------------X

VERIFIED COMPLAINT
FOR
DECLARATORY JUDGMENT

FILED
JUL 12 2005
COUNTY CLERKS OFFICE
NEW YORK

Plaintiff Air Pegasus Heliport, Inc., by way of declaratory judgment complaint against defendant Hudson River Park Trust, avers as follows:

### FIRST COUNT

1. Plaintiff Air Pegasus Heliport, Inc. ("APH") is a corporation organized and existing under the laws of the State of Delaware which has offices in New Jersey and conducts business at the West 30th Street Heliport, New York, New York.

2. Plaintiff Air Pegasus of New York, Inc. ("APNY") is a corporation organized and existing under the laws of the State of Delaware which conducts business in New York and in New Jersey.

3. Defendant Hudson River Park Trust ("HRPT") is a public benefit corporation of the State of New York.

4. On March 25, 1996, APH entered into a Permit (the "Permit") with the Department of Transportation of the State of New York (the "DOT"), its successors and assigns, pursuant to which APH was granted the right to operate the West 30th Street Heliport (the

"Heliport"). Prior to 1996, beginning in or about 1980, APH' predecessor was the fixed base operator of the Heliport. Thus, APH and/or its predecessors have been operating the Heliport for about a quarter of a century.

5. The HRPT is a successor in interest to, and/or an assignee of, the DOT's rights under the Permit. For ease of reference, hereinafter this complaint will refer to the HRPT as the party to the Permit, unless otherwise indicated.

6. APH and the HRPT (originally, the DOT) are the only parties to the Permit.

7. The Permit provides that APH will pay to the HRPT 10% of its gross receipts between $250,000 and $1,000,000; 11% of its gross receipts between $1,000,000 and $2,000,000; and 12% of its gross receipts over $2,000,000 (the "Percentage Payment").

8. The term gross receipts is defined in the Permit as follows:

> The term "gross receipts" shall include all monies paid for services rendered beginning on the Commencement Date and ending on the Termination Date to the Operator [APH] for the landing, take-off and parking of aircraft at the Heliport (including all fees as set forth in paragraph (c) hereof) and all other monies paid to the Operator [APH] for sales made or services rendered at or from the Heliport regardless of when or where the order therefore is received at the Heliport and any other revenue of any type arising out of or in connection with the Operator's [APH's] operations at the Heliport....

See Permit at §6(b).

9. The Percentage Payment is calculated without regard to APH's expenses, expenditures, or profits. It is a function of gross receipts only.

10. APH is required, under the Permit, to maintain certain records and the HRPT is granted the right to audit these required records. Specifically, the Permit provides as follows:

> In connection with the exercise of the privileges granted hereunder, the Operator [APH] shall:
>
> (c) set up and thereafter continually maintain during the effective period of this Agreement, and preserve after the

- 2 -

> expiration or earlier termination or revocation thereof for a period extending until the earlier of (i) the completion of a close out audit or, (ii) three years following the date of expiration, termination or revocation _such a system of books, records and accounts as may be adequate and appropriate for the recording with respect to the Heliport of sightseeing passenger counts, all arrival and departures of all aircraft,_ (regardless of whether a fee is charged therefore and including all of the Operator's aircraft operations, if any, at the Heliport) _times and dates thereof the type and registration number of the aircraft, the time of parking and storage thereof and the charges incurred by all aircraft during their stay at the Heliport, for the recording of all transactions pertaining to the Operator's flight operations, if any, the dispensing of aviation fuel at the Heliport into aircraft, including the fuel charges,_ and such other information as the Department may reasonably from time to time require. Such system shall be in accordance with accepted accounting practice. In the event the close out audit shall not have been completed by the end of the third year following expiration, termination or revocation of this Agreement, such records shall be maintained at the sole expense of the Department. As an aid to this _the Operator shall utilize such sales slips and invoicing machines and any other equipment or devices as may be necessary or appropriate to the Operator's operations thereunder and to enable the Operator to keep accurate records as hereinbefore stated. The Operator shall also permit_ in ordinary business hours during the effective period of this Agreement and for one (1) year thereafter and during such further period as hereinbefore mentioned, _the examination, inspection and audit by the officers, employees and representatives of the Department of all of the aforesaid records, books, accounts, sales slips, invoicing machines and other devices as well as the records produced thereby, and also any records and books of account of any company which is owned or controlled by the Operator, or which owns or controls the Operator, if said company performs services, similar to those performed by the Operator under this Agreement, anywhere in the Port of New York District._

See Permit at ¶7(c) (emphasis supplied).

11. The reason that APH must maintain these records and allow the HRPT to audit them is so that the HRPT can verify that APH has accurately accounted for its gross receipts and remitted the proper percentage payment to the HRPT.

12. APH also granted the HRPT the right to audit the analogous records of any other entity that APH owns or controls, or that owns or controls APH, if that other entity "performs services, similar to those performed by [APH], under [the Permit]."

13. APH does not own or control APNY.

14. APNY does not own or control APH.

15. APNY does not perform services similar to those performed by APH under the Permit. APH is the fixed base operator of the Heliport. APNY does not operate any heliport.

16. On or about April 25, 2005, the HRPT advised APH that it was exercising its right to conduct an audit. It requested a plethora of documents from both APH and APNY, including confidential and proprietary financial data, customer records, financial statements, bank records and income tax returns.

17. APH has fully complied with its obligations under the Permit and has provided all documentation to which the HRPT is entitled under the Permit.

18. Nevertheless, the HRPT has demanded additional documentation well-beyond the scope of the Permit including documents from APNY.

19. The HRPT has threatened to declare APH in default of the Permit if it does not provide all the documents that the HRPT has requested.

20. APH has advised the HRPT of its position and has advised the HRPT that many of the records that have been requested are confidential. It has requested an appropriate confidentiality order, but the HRPT has refused.

21. If the HRPT declare APH in default of the Permit, APH could lose the right to operate the Heliport forever.

WHEREFORE, plaintiffs demand judgment against the HRPT as follows:

    (a)    Declaring that the HRPT only has the right to audit the records of APH which are relevant to ascertaining APH's gross receipts;

    (b)    declaring the all of APH's customer information, bank records, income tax returns and bank records shall be deemed confidential and shall not be subject to a Freedom of Information Law request;

    (c)    Declaring that APNY is not obligated to provide any records to the HRPT and that the HRPT is not entitled to audit any records of APNY;

    (d)    Restraining and enjoining the HRPT from terminating the Permit or declaring APH in default; and

    (e)    For such other and further relief as this Court deems equitable and just.

Respectfully submitted,

Fisher Porter Masi & Thomas
488 Madison Avenue, Suite 1100
New York, NY 10022-5720
Attorneys for Plaintiff
Air Pegasus Heliport, Inc.

By: _____
      Jay D. Fischer
      A Member of the Firm

Of Counsel
Christopher P. Gengaro, Esq.
Lentz & Gengaro
443 Northfield Avenue
West Orange, NJ 07052

## CERTIFICATION OF VERIFICATION AND NON-COLLUSION

Alvin S. Trenk, of full age, certifies as follows:

1. I am the Chairman of Air Pegasus Heliport, Inc., the plaintiff in this action.

2. The allegations set forth in the within Complaint are true to the best of my knowledge, information and belief. The allegations set forth in the within Complaint are made in truth and good faith and without collusion for the causes set forth herein.

I hereby certify that the foregoing statements made by me are true to the best of my knowledge. I understand that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated:

_____
Alvin S. Trenk