EXHIBIT 2    ( Part 1 )

## PERMIT BETWEEN NYDOT AND
## AIR PEGASUS AIRPORT. INC.

723 P02    DEC 13 '99 13:13

'termit' No. XW507

# AGREEMENT

AGREEMENT, dated as of the 25th day of March 1996, by and between The New York State Department of Transportation and its successors or assigns (hereinafter referred to as "the Department" or the "State"), an agency of the State of New York having an office at Hunter's Point Plaza, 47-40 21st Street, Long Island City, New York 11101, and AIR PEGASUS HELIPORT, INC., a corporation organized under the laws of the State of Delaware, having an office at 25-3 Vreeland Road, Suite 201, Florham Park, New Jersey 07932 (hereinafter referred to as the "Operator" or the "permittee"), whose representative is Alvin S. Trenk.

WITNESSETH, That:

The Department and the Operator for and in consideration of the promises and mutual agreements hereinafter contained, hereby agree as follows:

Section 1.      Space

The Department hereby grants to the Operator certain privileges, as hereinafter described, at the West 30th Street Heliport (sometimes hereinafter referred to as the "Heliport"), in the Borough of Manhattan, City and State of New York, for use, occupancy and operation as hereinafter provided, in the following described areas:

Portions of the marginal way, bulkhead and river between West 29th Street and West 30st Street as shown on Exhibit "A" attached hereto and made a part hereof; subject to such state of facts as an accurate survey may reveal.  Together with the exclusive right to use of the fixtures, improvements and other property of the Department located thereon, the said space, fixtures, equipment, improvements, bulkhead, bulkhead level decking and piling, buildings, structures, other property of the Department and all other space including the lands under water at the Heliport collectively referred to as "the Premises" subject to such incidental use by the State as the State may from time to time determine necessary.  Provided, however, such use by the State shall not be so extensive as to substantially impact or limit permitted uses by the Operator.

Section 2.      Term

The term of this Agreement shall commence on the Commencement Date which shall be the date on which the Department first has unencumbered right to the use and occupancy of the Premises.  The

Department shall fix such date, which date shall be at the
Department's sole discretion by delivery of a notice of
termination to the present permittee at the Premises.  Provided,
however, if such Commencement Date has not been fixed by March
18, 1996, then upon notice by the Operator, which notice may be
given any time after March 18, 1995, the Department shall, within
three (3) days of such notice by the Operator, be obligated to
deliver the notice of termination to the present permittee.
Unless sooner terminated or revoked as herein provided, the term
of the Agreement shall expire on and the Expiration Date shall be *2001*
the day preceding the FIFTH anniversary of the Commencement Date.
The term of this Agreement shall automatically renew for
successive terms of one month each unless cancelled by either
party upon thirty (30) days written notice.  Further, it is
understood and agreed by and between the parties that the
Operator shall not be entitled ,and waives any claims' to
relocation benefits provided under state or federal laws.

Section 3.    Rights of User

The Operator shall use and operate the Premises as a public
heliport for the following purposes only and for no other purpose
whatsoever. Use of the permit premise for each of the categories·
of uses set forth in sub-paragraphs (a) to (e) below shall be in
accordance with a site plan submitted by the Operator for
approval by the Department within sixty (60) days of the
Commencement Date, which Plan may be amended from time to time
upon application of the Operator.  The site plan shall be a
drawing which locates within the Premises each of the areas of
use described below:

(a) for the storage of cargo and materials and supplies of a
nonhazardous nature; and for business, sales including but not
limited to vending machines, souvenirs, pilot and aviation
supplies, operations and administrative offices in connection
with the operations at the Heliport;

(b) as passenger lounges and waiting rooms;

(c) as a Landing Area for owned aircraft, public aircraft,
charter and sightseeing aircraft; and for the storage of aviation
fuel and for the sale, dispensing and delivery of such fuel to
and into aircraft.  When the uses set forth in sub-paragraph (d)
below are fully utilized, the area set forth for uses described
in this sub-paragraph may be used for the parking and storage of
aircraft but shall be subordinate at all times to use as a Public
Landing Area;

2

#0021848.05
99999-00111

(d) for the parking and storage of aircraft and for the performance of minor maintenance on aircraft. Without limiting the generality of any other term or provision hereof, it is hereby specifically understood that the Operator shall have no right under this Agreement to use the area set aside for uses described in this sub-paragraph (d) and that set aside for uses described in sub-paragraph (c) when the area set aside for uses described in this sub-paragraph (d) is fully utilized for the parking and storage or for the performance of minor maintenance if, as a result of such storage, maintenance or parking, fewer than two pads are available for the landing of helicopters. The Operator's rights of user as to the areas set aside for uses described in sub-para's (b), (c) and (d) shall be non-exclusive; and

(e) for the transportation of persons by any mode of transportation to and from the Premises, primarily for the convenience of persons using the Heliport or other services of the Operator.

Within thirty (30) days of the Commencement Date and upon any application to amend the site plan the Operator shall provide the Department with a certificate of a professional civil engineer with structural expertise, licensed in the State of New York, stating that the Premises are structurally safe and suitable for the specific use(s) proposed at the locations indicated in the site plan. The required certificate must be approved by the Department before occupancy will be authorized. The engineer shall be required to inspect the Premises and provide the Department in a written report, as part of the certificate, evidence that he has inspected the properties including sub and super structures, as well as the basis of the evaluation on the suitability for the proposed use. If the execution of this certificate requires the repair or rehabilitation of any area of the Premises and the permittee desires to use said areas, the permittee will make all required repairs prior to using said areas. In the event the Operator elects to forgo use of said areas by not making repairs, there shall be a pro rata reduction in the Permit Fee based on the number of square feet which are no longer usable. In the event that the certificate states that all or a substantial portion of the Premises may not be used as a Heliport, Operator may terminate this Agreement with no further liability to the Department or the Operator.

It is hereby expressly understood and agreed that the only Aircraft which the Operator and other aircraft operators may operate to, at and from the Heliport pursuant to the terms of

3

#0021845.05
99999-00111

this Agreement shall be aircraft which do not exceed a gross take-off weight of 60,000 pounds as certified by the Federal Aviation Administration.

Without limiting the generality of any other term or provision thereof the Operator understands and agrees that it shall not itself nor shall it permit any other aircraft operator to conduct flight training operations (primary or advanced) at the Heliport other than recurrent training of pilots operating primarily at or from the Heliport, without express approval of the Department. In addition to the right to operate the Premises for the purposes heretofore set forth in this Section 3, the parties agree that sightseeing operations constitute the major portion of the business conducted at the Premises. The Operator or any other aircraft operator shall conduct sightseeing operations only upon the prior written approval of the Department of (i) the sightseeing operator and its aircraft and procedures, and (ii) the terms of any agreement between the Operator and any such sightseeing operator, which approval shall not be unreasonably withheld.

Section 4.. <u>Schedule of Charges and Collections</u>

The Schedule of Charges covering the use of the Heliport is attached hereto, made a part hereof and marked Exhibit "B". The Operator shall have the right, from time to time to amend any item of such Schedule of Charges, to make increases or decreases therein and to add or delete additional items thereto upon fifteen (15) days prior notice to Public and the Department.

The Operator shall have the responsibility to collect from each and every operator of an aircraft using the Heliport, other than the Operator, its employees and guests, and shall retain and keep as its own those amounts collected as charges which are in effect under the rate schedule or this or other written agreements for such use at the time of use thereof. The Department shall have no responsibility for the collection or payment of such charges.

Section 5. <u>Services by the Operator</u>

(a) The Operator shall perform the work and furnish the services usually performed or furnished by a fixed base operator in connection with the operation of a public heliport facility. Without limiting the generality of the foregoing

N0021848.05
99999-00111

4

obligations, the Operator shall furnish at its own expense the following services and equipment at the Heliport:

(1)  In connection with the arrival or departure of aircraft at or from the Heliport, the Operator shall man and monitor, for the purpose of receiving requests and for transmitting operations advisories to aircraft requesting the same, the following radio frequency: 123.05 megacycles (VHF), and/or such other authorized frequency as may be designated from time to time by the Department or other the appropriate governmental authority.

(2)  Upon the landing of any aircraft at the Heliport, where the pilot of such aircraft desires to park, the Operator shall direct such aircraft to an assigned parking space and shall assist in the spotting of the aircraft, in securing the aircraft and shall provide for the removal of luggage therefrom.

(3)  During the period that aircraft are parked in the area to which they have been assigned by the Operator, the Operator shall make periodic inspections of the aircraft and of the parking area to ascertain that such aircraft are adequately secured and to ascertain that no unauthorized person or persons are loitering in the parking area.  If at any time, based on forecasts issued by the Weather Bureau, adverse weather conditions involving high velocity winds can be reasonably anticipated, the Operator will so inform the pilot or owner if reasonably possible.

(4)  In connection with the departure of aircraft from the Heliport, upon request by the pilots, the Operator shall assist with the removal of wheel chocks, control locks and other security devices.

(5)  The Operator will provide an office for the purpose of performing the necessary clerical activities connected with the collection of fees and advisories related to aircraft movements.  The Operator shall furnish, install and maintain the radio equipment necessary to monitor the frequency set forth in subparagraph (1) hereof and shall furnish, install and maintain wind indicating equipment.

(6)  The Operator shall maintain a lounge where aircraft passengers and crew may obtain shelter prior to or after flight and which shall contain reasonable facilities for the preparation and filing of flight plans and the fulfillment of other preflight requirements by pilots.  The Operator shall maintain telephone service for the purpose of contacting the

00021148.05
33999-00111

5

Flight Service or Aircraft Traffic Control Center and the Weather Bureau but such service need not be by a direct line. Such telephone service may be by phone if installed, and in any event the telephone charges for such calls may be charged to the persons using such telephones.

.7.  The Operator shall keep available for use in connection with the ground handling of aircraft such of the equipment listed in Exhibits "C" and "D" attached hereto and made a part hereof, or suitable substitutes therefor, as applicable to said operations.

(b)  The Operator shall perform the work and furnish the services usually performed or furnished in connection with the storage and dispensing or sale of aviation fuel to aircraft at a heliport, including the delivery thereof to and into aircraft, utilizing the fuel storage and dispensing facilities at the Heliport as set forth in Section 15 hereof.

Section 6.    Fees and Charges Payable to the Department

(a)  The Operator agrees to pay to the Department a basic monthly permit fee of $10,210 payable in advance on the commencement of the term hereof and on the first day of each and every month thereafter provided, however, that if this Agreement shall commence on a date other than the first day of the month or shall expire or be revoked or terminated effective on a date other than the last day of the month, said basic monthly permit fee shall be prorated on a daily basis using the actual number of days in said month.  The basic monthly permit fee set forth in this Section 6(a) shall be increased 5% from the basic monthly permit fee, non compounded, on each annual anniversary of the Commencement Date.

(b)  In addition to the basic monthly permit fee as set forth in paragraph (a) above the Operator shall pay to the Department a percentage fee equivalent to ten percent (10%) of the Operator's gross receipts for amounts in excess of $250,000 to and including $1,000,000 and a percentage fee equivalent to eleven percent (11%) of the Operator's gross receipts for amounts in excess of $1,000,000 to and including $2,000,000 and a percentage fee equivalent to twelve percent (12%) for all amounts over $2,000,000, plus a use charge computed at the rate of $15.00 per every ten sightseeing passengers, with the number of passengers rounded to the next higher integral multiple of 10, in connection with approved sightseeing operations.

N0021668.05
99999-00111

The term "gross receipts" shall include all monies paid for services rendered beginning on the Commencement Date and ending on the Termination Date to the Operator for the landing, take-off and parking of aircraft at the Heliport (including all fees as set forth in paragraph (c) hereof) and all other monies paid to the Operator for sales made or services rendered at or from the Heliport regardless of when or where the order therefor is received at the Heliport and any other revenues of any type arising out of or in connection with the Operator's operations at the Heliport provided, however, that any taxes imposed by law which are separately stated to and paid by the customer and directly payable to the taxing authority by the Operator shall be excluded therefrom.

The fee provided for in Section 6(b) shall be due and payable monthly on the thirtieth day of each month following the calendar month in which the effective date hereof falls, and shall be based on the Operator's gross receipts for the preceding calendar month, provided, however, that if the Agreement shall expire or be revoked or terminated effective on a date other than the last day of a month, the percentage fee for said month shall be due and payable within ten days after such effective date of expiration, termination or revocation or should such monies be paid after the Termination Date, within ten (10) days of receipt of such monies.

(c)  Subject to the limitation set forth in Section 4, the Operator shall include, for the purposes of computing gross receipts under paragraph (b) hereof, all fees and charges under the Schedule of Charges or volume use permits which would be applicable to helicopter operations of the operator at the Heliport (i.e., leases and charters to third parties). Charges for fuel and maintenance services supplied to the Operator's own aircraft or aircraft which the Operator has leased or chartered for personal use (which are not leased or chartered to others) shall not be included in gross receipts.

(d)  In the event the aggregate fees paid by the Operator pursuant to the provisions of subsection, 6(a), 6(b) and 6(c) hereinabove shall not equal or exceed $191,620 (the "Annual Amount") in the aggregate for each full year commencing on the first day of the first full month following the Commencement Date (the "Base Calculation Date") and commencing on each annual anniversary date of the Base Calculation Date thereafter during the term of this Agreement, then, in such event, the Operator shall pay to the State the difference between the amount actually paid under said subsections and $191,620 within 45 days following the date upon which the last monthly payment is due in respect of

7

80021848.05
99999-00111

the year for which payment is due.  The Annual Amount shall increase five (5%) percent, non-compounded, on each annual anniversary of the Commencement Date.  Notwithstanding the foregoing provisions of this subsection, the $151,620 shall be reduced pro rata in respect of each partial year.

(e)  Amounts due pursuant to Section 6 that are not paid within thirty (30) days from the date billed as indicated on a billing invoice, shall carry interest, penalties and collecting fees pursuant to the provisions of Chapter 55 of the laws of 1992.

Section 7.    Obligations in Connection with Payment of the Percentage Fee and Privileges

In connection with the exercise of the privileges granted hereunder, the Operator shall:

(a)  use its best efforts in every proper manner to maintain, develop and increase the business conducted by it hereunder and the use of the Heliport as a public heliport facility;

(b)  not directly or indirectly divert or cause to be diverted, any business from the Heliport.  It is understood that the Operator or an affiliate has an ownership interest in Liberty Helicopter Tours, Inc. which also conducts sightseeing, charter and air taxi helicopter services from the Downtown Manhattan Heliport and may acquire or operate, in New Jersey, a helicopter facility.  Such interests, in and of themselves, shall not be considered a violation of this Section.

(c)  set up and thereafter continually maintain during the effective period of this Agreement, and preserve after the expiration or earlier termination or revocation thereof for a period extending until the earlier of (i) the completion of a close out audit or, (ii) three years following the date of expiration, termination or revocation such a system of books, records and accounts as may be adequate and appropriate for the recording with respect to the Heliport of sightseeing passenger counts, all arrival and departures of all aircraft, (regardless of whether a fee is charged therefor and including all of the Operator's aircraft operations, if any, at the Heliport) times and dates thereof the type and registration number of the aircraft, the time of parking and storage thereof and the charges incurred by all aircraft during their stay at the Heliport, for the recording of all transactions pertaining to the Operator's flight operations, if any, the dispensing of aviation fuel at the

#0021848.05
99999-00111

8

/23 P10    DEC 13 '99  13:16

Heliport into aircraft, including the fuel charges, and such other information as the Department may reasonably from time to time require. Such system shall be in accordance with accepted accounting practice. In the event the close out audit shall not have been completed by the end of the third year following expiration, termination or revocation of this Agreement, such records shall be maintained at the sole expense of the Department. As an aid to this the Operator shall utilize such sales slips and invoicing machines and any other equipment or devices as may be necessary or appropriate to the Operator's operations thereunder and to enable the Operator to keep accurate records as hereinbefore stated. The Operator shall also permit in ordinary business hours during the effective period of this Agreement and for one (1) year thereafter and during such further period as hereinbefore mentioned, the examination, inspection and audit by the officers, employees and representatives of the Department of all of the aforesaid records, books, accounts, sales slips, invoicing machines and other devices as well as the records produced thereby, and also any records and books of account of any company which is owned or controlled by the Operator, or which owns or controls the Operator, if said company performs services, similar to those performed by the Operator under this Agreement, anywhere in the Port of New York District.

On or before the 30th day of the calendar month following the month in which the commencement date hereof falls and on or before the 30th day following the end of each and every calendar month thereafter including the month following the expiration or earlier revocation or termination of this Agreement, the Operator will furnish to the Department a sworn statement covering its operations for the preceding month, which statement shall be based on the aforesaid books, records and accounts. Said statement shall set forth the Operator's gross receipts and apply the percentage set forth in paragraph (b) of Section 6 thereto and shall contain such other information as the Department may require with respect to the Charges under Section 4, aircraft arrivals and departures and parking and storage times with appropriate identification of said aircraft, fuel charges, sightseeing passenger counts, and such other information as the Department may from time to time require.

Section 8.     Compliance with Governmental Requirements

(a)  The Operator agrees to undertake at its own expense to comply with all laws and ordinances and governmental rules, regulations and orders now or at any time during the term of this Agreement which as a matter of law are applicable to the operations of the Operator at the Heliport.

9

#0021846.05
99999-00111

(b    The obligation of the Operator to comply with governmental requirements is provided herein for the purpose of assuring proper safeguards for the protection of persons and property in or near the Heliport and proper operation by the Operator.  Such provision is not to be construed as a submission by the Department to the application to itself of such requirements or any of them.  Operator shall not conduct or allow any activity on the Premises inconsistent with law and shall not conduct or allow any use or activity on the Premises which may require a permit or other approval by a government agency without having lawfully obtained such permit or approval.  Operator shall be responsible to the State for compliance with these provisions by his sub-permittees.  For purposes of this Agreement a sub-permittee is defined as such person or entity which has a written agreement specifically designated as a "sub-permit" with the Operator and approval as such by the Department.

(c)    The operator shall comply with all enactment's, ordinances, resolutions and regulations of the City of New York, which do not, in the reasonable view of the Operator, have the same effect or purpose as a bill of attainder and which would be applicable to its operations at the Heliport if the Department were a private corporation, except in cases where the Department either notifies the Operator that it need not comply with or directs it not to comply with any such enactments, ordinances, resolution or regulations which are applicable. The Operator shall, for the Department's information, deliver to the Department promptly after receipt of any notice, warning, summons, or other legal process for the enforcement of any such enactment, ordinance, resolution or regulation a true copy of the same.

In the event of compliance with any such enactment, ordinance, resolution or regulation on the part of the Operator, acting in good faith, commenced after such delivery to the Department but prior to the receipt by the Operator of a written direction from the Department not to comply (and thereafter discontinued) such compliance shall not constitute a breach of this Agreement, although the Department thereafter directs the Operator not to comply.  Nothing herein contained shall release or discharge the Operator from compliance with any other provision hereof respecting governmental requirements.

(d) The Operator shall have such time within which to comply with the aforesaid laws, ordinances, rules and regulations as the authorities enforcing the same shall allow.

10

80021848.05
33333-00111

Section 9.    Manner of Operation

(a)  The Operator shall conduct all operations hereunder in a careful, efficient, safe and courteous manner.

(b)  The Operator shall keep the Heliport open and manned and shall provide and perform all services under this Agreement at not less than the following times:  between the hours of 5:00 A.M. to 6 P.M. of each Monday through Friday, inclusive, except holidays.  In addition to the foregoing, the operator shall, on receiving at least two (2) hours' prior notice from the Department or from any one desiring to use the Heliport (which notice may be oral), of a proposed landing or take-off of an aircraft at the Heliport during other than regularly scheduled hours, handle said landing and take-off of an aircraft at the Heliport during other than regularly schedule hours, handle said landing and take-off and assign the necessary personnel qualified to handle said flight activity. The Operator shall keep records of such use, including without limitation thereto the hours and times when its personnel are performing said services, as the Department may from time to time require.  The Operator shall advise the prospective user of the Heliport of the aforesaid fee upon receiving notice of the proposed landing or take-off.  The Department does not guarantee the payment of the aforesaid fee by any such user.  In addition to the aforesaid fee, said use of the Heliport shall be subject to the Schedule of Charges which may be applicable thereto.  The Operator shall not permit any aircraft to remain parked at the Heliport during those hours of any day when its personnel are not in the Heliport as required pursuant to the aforesaid provisions.

The Department shall have the right but not the obligation to itself handle any State flight activity, including its own, using State personnel during the hours when the Heliport is not being operated by the Operator and using any and all equipment required to be furnished by the Operator under the terms hereof without cost to the Department.

(c)  The Operator shall perform and provide all services hereunder in an orderly and proper manner.  The Operator shall provide and its employees shall wear uniforms or other suitable means of identification.  Such uniforms and means of identification shall be subject to the reasonable written approval of the Department.  The Department shall have the right to object to the Operator regarding the demeanor and conduct of the employees and invitees of the Operator and of those doing business with it whereupon the Operator will forthwith take all steps necessary to correct the deficiency.

00021848.85
99999-00111

11

723 P13    DEC 13 '99  13:17

(d)  The Operator shall at all times during which the Heliport is required to be open as herein provided have at least one qualified ground attendant on duty and performing the services required of the Operator under this Agreement. The Operator shall instruct its personnel that no gratuities shall be solicited or accepted for any reason whatsoever from the user of the Heliport.  If the Operator uses the public aircraft landing area with its own aircraft, the Operator shall during such period of use have at least one qualified ground attendants on duty and performing the services required of the Operator under this Agreement. Moreover, wherever the operator is required to have at least one or two persons on duty, said number of persons shall be on duty and the Operator shall make appropriate arrangements with respect to their relief for eating and comfort purposes.

(e)  The Operator shall immediately inform the Department upon its discovery of any breakdown, cracks, breaks or other signs of disrepair or malfunction of any portion of the Premises or of any other property of the Department.

(f)  "Holiday' or "legal holidays" shall mean and include the following days in each year:  the first of January, known as New Year's day; the twelfth day of February, known as Lincoln's Birthday; the thirtieth day of May, known as Memorial Day; the fourth of July, known as Independence day; the first Monday in September, known as Labor day; the twelfth day of October, known as Columbus Day; the eleventh day of November, known as Veteran's day; the fourth Thursday in November, known as Thanksgiving day, the twenty-fifth day of December, known as Christmas Day; and if any of such days is Sunday, the next day thereafter; and each general Election day in the State of New York; and such other or different days or dates as may be declared "holidays" or "legal holidays" by the Legislature of the State of New York.

Section 10.    Prohibited Acts

(a)  The Operator shall commit no nuisance on the Premises, and shall not do or permit to be done anything which may result in the creation or commission or maintenance of a nuisance on the Premises.

(b)  The Operator shall not cause or permit to be caused or produced upon the Premises, to permeate the same or to emanate there from, any unusual, noxious or objectionable smokes, gases, vapors or odors.  The creation of exhaust fumes by the operation of the Operator's aircraft engines or aircraft engines

12

NY0021848.05
99999-00111

of the Operator's customers, so long as such engines are maintained and are being operated in a proper manner, shall not be a violation of this paragraph(d).

(c)  The Operator shall not do or permit to be done anything which may interfere with the effectiveness or accessibility of the drainage and sewerage system, fire-protection system, sprinkler system, alarm system, fire hydrants and hoses, if any, installed or located on or in the Premises.

(d)  The Operator shall not overload any floor on the Premises, and shall repair, replace or rebuild any floor, including supporting members, damaged by the Operator's overloading.  Nothing in this paragraph or elsewhere in this Agreement shall be or be construed to be a representation by the Department of the weight any floor will bear.

(e)  The Operator shall not use or permit the use of any structural supporting member of the building or roof or any part thereof for the storage of any material or equipment, or hoist, lift, move or support any material or equipment or other weight or load, by means of said trusses or structural supporting members.

(f)  The Operator shall not dispose or nor permit anyone to dispose of any waste material (whether liquid of solid) taken from aircraft using the Heliport by means of the toilets, manholes, sanitary sewers or storm sewers on the Premises or by means of the waters at or bounding the Heliport.

(g)  The Operator shall not do or permit to be done any act or thing upon the Premises which (1) will invalidate or conflict with any insurance policies covering the Heliport or any part thereof, or (2) which, in the reasonable opinion of the Department, may constitute an extra-hazardous condition, so as to increase the risks normally attendant upon the operations contemplated hereunder.  The Operator shall promptly observe, comply with and execute the provisions of any and all present and future rules and regulations, requirements, orders and directions of the New York State Department of Insurance or of any other board or organization exercising or which may exercise similar functions, which may pertain or apply to the operations of the Operator on the Premises, but the Operator shall not be obligated to make any structural or non-structural improvements, alterations or repairs of the Premises that may be required at any time hereafter by any such present or future rules, regulation, requirement, order or direction.

13

80021848.05
99999-00111

(h)  The Operator shall not keep or store inflammable or explosive liquids, gases or solids within the confines of any structure on the Premises, except such structures as are specifically designated therefor by the Department.

(i)  The Operator shall not use water-born aircraft at the site unless there has been prior consultation and approval of the Department but the Department shall not authorize activities in said waters which will obstruct or prevent the same.

Section 11.    Maintenance, Repair and Property Insurance

(a)  The Operator shall at all times keep in a clean and orderly condition and appearance the Premises and all of the Operator's and the Department's fixtures, equipment and personal property which are located in any parts of the Premises.

(b)  The Operator shall repaint, repair, replace or rebuild any part of the Premises and other property of the Department which may be damaged or destroyed by the acts or omissions of the Operator or by those of its employees, customers, guests, or invitees, or of other users of the Heliport and persons doing business with the Operator.

(c)

(i)  Operator, at its sole cost and expense at all times will take good care of the Premises and will maintain same in good order and condition in compliance with all legal requirements and insurance requirements and will make all necessary and appropriate repairs thereto, as necessary for the preservation of the fixtures and personalty on the Premises, including but not limited to maintenance and repairs and replacements to the paving and the frame and roof of and structures on the Premises, and the exterior of the exterior walls and the above ground fuel storage systems.  The Department shall have the authority at any time to inspect the Premises to determine whether same are in good repair and maintenance, structurally sound, and that there are no unsafe, hazardous, unsanitary, or defective conditions in the structure, and its utilities, including improvements constructed by permittee.  This provision shall create no obligation or liability upon the Department to inspect the Premises, nor to take any corrective action to make repairs, nor to undertake any financial obligation.

14

NO021848.05
99999-00111

Failure of the Department to inspect does not relieve Operator of any obligation herein.

(ii)   Operator, at its sole expense, shall make all necessary provisions to protect the existing non support walls, duct lines, drainage lines and other similar facilities located beneath or about the Premises (or to provide for their replacement or upgrading) during the course of construction of the Operator's Improvements and thereafter the Operator shall not interfere with the location or use thereof without the prior approval of Department.

(iii)   Operator accepts the Premises in its existing condition and acknowledges that, except as otherwise expressly set forth in this Agreement, no representations, statements or warranties, express or implied, have been made by or on behalf of the State in respect of the Premises, the status of title thereof, the Requirements applicable thereto, the physical condition of the underlying land, or the use that may be made of the Premises, and that the Department shall in no event whatsoever be liable for any latent or patent defects in the Premises.

(iv)   In addition to the provisions of herein, in no event shall Department in its capacity as owner be liable to Operator or to any other person for any injury or damage to any property of Operator or of any other person or to the Premises, arising out of any sinking, shifting, movement, subsidence or failure in the load-bearing capacity of, or other matter or difficulty related to, the soil or other surface or subsurface materials of the land or waterways underlying the Premises unless the same is caused by the gross negligence of owner, of owner's agents, employers, officers occurring after the date of this Agreement, it being agreed that except as otherwise provided herein, Operator shall assume and bear all risk of loss with respect thereto.

(d)   With respect to all other parts of the Premises, including, without limitation thereto, building walls, partitions, floors, ceilings, doors, screens, sash, glass of every kind, the electrical, mechanical, plumbing, heating, steam, communications, gas and other systems, and their pipes, wires, mains, lines, tubes, conduits, equipment and fixtures, the

15

#0021848.05
99999-00111

Operator shall take the same good care of the Premises that would
be taken by a reasonably prudent owner who desires to keep and
maintain the same so that at the expiration or termination of the
term and at all times during this Agreement, the same will be in
as good condition as at the commencement thereof, except for
reasonable wear and tear which does not adversely affect the
efficient or the proper utilization thereof.  To that end and
regardless of the cause of the condition requiring the same, the
Operator shall carry on periodic inspections, perform all
necessary preventative maintenance including but not limited to
painting, make all necessary rebuilding with respect to the same,
all of which shall be in quality equal to the original in
materials and workmanship.

(e)  The Operator shall not use any cleaning
materials having a harmful corrosive effect, on any part of the
Premises.

(f)  The Operator shall promptly wipe up all oil,
gasoline, grease, lubricants and other inflammable liquids and
substances and all liquids or substances having a corrosive or
detrimental effect of the paving or other surface of the
Premises, which may leak or be spilled thereon.  The Operator
shall repair any damage to the paving caused by such oil,
gasoline, grease, lubricants or other liquids or substances.

(g)  In the event the Operator fails to commence
so to maintain, clean, repair, replace, rebuild paint or
otherwise undertake any obligation required by this section
within a period of twenty (20) days after notice from the
Department so to do, or fails diligently to continue to
completion the repair, replacement or rebuilding of all of the
Premises or other property of the Department required to be
repaired, replaced or rebuild by the Operator under the terms of
this Agreement, the Department may, at its option, and in
addition to any other remedies which may be available to it,
repair, replace or rebuild all or any part of the Premises or
other property of the Department included in the said notice, and
the cost thereof shall be payable by the Operator upon demand.

(h)  The obligation of the Operator as set forth
in paragraph (b) of this Section 11 (in the event that damage or
destruction caused by the acts or omissions of the Operator or by
those of its employees, customers, guests or invitees, or of
other persons doing business with the Operator, is covered by any
contract or insurance under which the Department is the insured)
is hereby released to the extent that the loss is recouped by
actual payment to the Department of the proceeds of such

16

80021840 05
95995-00111

insurance; provided, however, that, if this release shall invalidate any such policy of insurance or limit or void the Department's rights thereunder, then this release shall be void and of no effect

(i)    (1)    In the event of total destruction of the Premises or in the event of partial destruction so as to render the Premises unsuitable for operation as Heliport, the Department shall have the option to either

(i)  terminate this Agreement within sixty (60) days from the date of such destruction unless the Operator shall determine to repair or rebuild the same at its expense.];

(ii)  proceed with due diligence to repair or rebuild, as necessary.

(2)    In the event said total or partial destruction is caused by the acts or omissions of the Operator or by those of its employee, customers, guests or invitees or of the obligation of the Operator as set forth in paragraph (b) of this Section 11, the Operator shall be obligated to pay to the Department the actual cash (i.e. depreciated) value of the damaged or destroyed property owned by the Department at the time of such damage or destruction, including the cost of the removal of the debris unless the Operator shall determine to repair or rebuild the same at its expense.

(3)    The Operator shall immediately after such destruction and pending such election or exercise of the options by the Department and the Operator, take all necessary safety measures and measures for temporary preservation of the Premises, and if so directed by the Department pursuant to written notice, the Operator shall remove all debris resulting from such destruction, or to the extent that the removal of debris under such circumstances is covered by insurance, the proceeds thereof shall be made available to the Operator for that purpose.

During any period in which the Premises shall be wholly or partially destroyed so as to render the Premises unsuitable for operation as a heliport, the Operator's fees, charges, obligations and right hereunder to operate the Heliport shall abate.

(j)  Nothing contained in this Section 11 shall relieve the Operator of its obligations under Section 13 hereof

17

#0021848.05
99999-00111

to secure the Department's written approval before installing any fixtures in or upon or making any alteration, decorations, replacements (other than identical replacements, or such functionally equivalent replacements which functionally equivalent replacements may be installed after thirty (30) days notice to the Department where there is no written objection within said thirty (30) days), additions or improvements in the Premises.

(k)   The parties hereby stipulate that neither the provisions of Section 227 of the Real Property Law of the State of New York nor those of any other similar statute shall extend or apply to this Agreement.

(l)   The State shall have no responsibility whatever for the loss or destruction of any property, including but not limited to improvements made by the permittee, inventory, and property stored or being used on the Premises, personal or real, by fire, theft, or other cause.

Section 12.    Indemnity; Liability Insurance

(a)   The Operator shall assume the risk of loss, damage or destruction to any helicopter of the Operator and any other property of the Operator on the Premises occurring in the use an occupancy of the Premises by the Operator pursuant to the provisions hereof and the Operator hereby releases the Department therefrom, excepting any loss, damage or destruction resulting from affirmative willful acts of the Department.   The Operator shall indemnify and hold harmless the Department, its Commissioner, officers, representatives and employees from and against all claims, suits and demands, just or unjust, of third persons (including but not limited to employee, officers and agents of the Department or the Operator) arising out of, in connection with, or relating to the use and occupancy of the Heliport by the Operator or by others pursuant to the provisions hereof, including but not limited to the use of the Heliport itself, the waters surrounding the same or any property in proximity thereto, and for all expenses incurred by it and by them in the defense, settlement or satisfaction thereof, including without limitation thereto, claims and demands for death, for personal injury or for property damage, direct or consequential, whether they arise from the acts or omission of the Operator, the Department or of other third persons, excepting only the willful affirmative acts of the Department; provided, however, that the provisions of this sub-paragraph (a) shall not limit the rights of the Operator to enforce the rights, duties and obligations of the State under the terms of this Agreement,

18

123 : 04/23 DEC 13 '99  13:39

(b)  In addition to the obligations set forth in paragraph (a) of this Section, the Operator in its own name as insured, shall procure, maintain and pay the premiums on the following described policies of insurance with a contractual liability endorsement covering the obligations assumed by the Operator pursuant to paragraph (a) hereof in not less than the following limits, which shall cover its operations hereunder and shall be effective during the term of this Agreement:

(1)  Aircraft liability insurance on aircraft owned, operated or rented by the Operator, if any, including liability and property damage with a single combined limit of $8,000,000 per occurrence and revenue and non-revenue passenger liability of at least $500,000 per seat.

(2)  Comprehensive Airport Liability Insurance including death, personal injury, property damage and aggregate products in not less than a combined single limit of $8,000,000 per occupancy.

(3)  Hangar keeper's Liability insurance of not less than $1,000,000 per aircraft.

(c)  The Operator shall maintain and pay the premiums throughout the term of this Agreement on a policy or policies of Worker's Compensation insurance and Employer's Liability insurance covering the liability of the Operator as an employer under the Workmen's Compensation Act of the State of New York and covering all other liability of the Operator as an employer under the Workmen's Compensation Law of the State of New York or similar statutes and shall require any contractors to carry similar insurance for its employees.

(d)  As to any insurance required by the provisions of this or any other Section of this Agreement to be secured by or at the direction of the Operator, a certified copy of each of the policies or a certificate or certificates evidencing the existence thereof, or binders shall be delivered to the Department within three (3) days after the Commencement Date.  In the event any binder is delivered, it shall be replaced within thirty (30) days by a certified copy of the policy or a certificate.  Each such copy or certificate shall contain a valid provision or endorsement that the policy may not be canceled, terminated, changed or modified  without giving thirty (30) days' written advance notice thereof to the Department.  As to those policies where the Department is named as an additional insured, each such policy shall contain an additional endorsement.

19

80021041.05
93999-00111

providing that the insurance carrier shall not, without obtaining express advance permission from the General Counsel of the Department, raise any defense involving in any way the jurisdiction of the tribunal, the immunity of the Department, its Commissioner, officers, agents or employees, the governmental nature of the Department or the provisions of any statutes respecting suits against the Department. A renewal policy shall be delivered to the Department at least fifteen (15) days prior to the expiration date of each expiring policy, except for any policy expiring after the date of expiration of the term. If at any time any of the policies shall be or become unsatisfactory to the Department as to form or substance or if any of the carriers issuing such policies shall be or become unsatisfactory to the Department, the Operator shall promptly obtain a new and satisfactory policy in replacement.

Section 13.    Construction by the Operator

The parties contemplate the installation, repair, maintenance or replacement of the ramp, above-ground fuel storage and pumping system, parking areas, trailers and, at the option of the Operator, the decommissioned pier pads, barges, piers, and terminals. (The Operator shall not erect any structures, make any improvements or do any other construction work on the Premises or alter, modify, or make additions, improvements or repairs to or replacement of, any structure now existing or built at any time during the term or install any fixtures (other than trade fixtures, including trailers, removable without material damage to the freehold, any such damage to be immediately repaired by the Operator) without the prior written approval of the Department,) which consent shall not be unreasonably withheld, and in the event any construction, improvement, alteration, modification, addition, repair or replacement is made without such approval, then upon reasonable notice so to do, the Operator will remove the same, or at the option of the Department. In case of any failure on the part of the Operator to comply with such notice, the Department may effect the removal or change and the Operator shall pay the cost thereof to the Department.

Section 14.    Signs

(a)  Except with the prior written approval of the Department, the Operator shall not erect, maintain or display any signs or any advertising at or on the interior or exterior parts of the Premises except with respect to those installed as of the date hereof or substantially similar substitutes therefor.

80021840.05
99999-00111

(b)  Upon the expiration, or earlier revocation or termination of the Agreement, the Operator shall remove, obliterate or paint out, as the Department may direct, any and all signs and advertising on the Premises and in connection therewith shall restore the portion of the Premises affected by such signs or advertising to the same condition as at the commencement of the term.  In the event of a failure on the part of the Operator so to remove, obliterate or paint out each and every sign or advertising and so to restore the Premises, the Department may perform the necessary work and the Operator shall pay the costs thereof to the Department on demand.

Section 15.    Operation of the Fuel Storage System

(a)  The Operator has been advised and understands that there is presently installed at the Heliport a fuel storage facility composed of two separate fuel storage systems having a total capacity of approximately 11,000 gallons identified by markings painted on various visible parts thereof as No. 1 and No. 2 (and hereinafter respectively sometimes referred to as "fuel storage system No. 1" and "fuel storage system No. 2"). The Operator may install an additional above-ground fuel storage and dispensing facilities ("Operator System"). Each in ground system is provided with its own, separate, pump and motor, and separate electrical control but, however, has fuel filters, metering and a pump dispenser which is shared and used in common by both systems and which shared use permits only one system to dispense fuel at a time.  Beginning on the Commencement Date:

(b)  The Operator shall have the exclusive use of fuel storage system No's. 1 and 2 and the Operator System and the Department shall have no responsibility for such system.

(c)  The Operator shall use the Operator System and fuel system No.'s 1 and 2 and such other systems as the Department may authorize for the purpose of storing and dispensing fuel into aircraft of the Operator and the Operator's customers subject to and in accordance with all of the terms and provisions of this Agreement including the following:

(1)  The Operator shall have the sole and complete responsibility and shall itself suffer, without recourse or claim against the Department, all fuel losses, from whatever cause including leakage of the system which may arise from its use of any fuel system.

80021841.05
99999-00111

(2)  The Operator shall store and dispense only Jet A type fuel in the fuel systems and no other type or grade of fuel.

.3.  The Operator shall operate all fuel systems in a safe and efficient manner in accordance with the standards of the industry and in accordance with the procedures and directions as may be given from time to time by and shall immediately notify the Department by telephone, to be followed by written notification, of any defect or condition of the fuel systems requiring repair.

(4)  The Operator shall cease dispensing fuel from any fuel systems at any time that it appears that the fuel in said system at any time that it appears that the fuel in said system is defective or has been contaminated or that there is the possibility of defect or contamination or that continued use of the system is or may be unsafe or dangerous.

(d)  Notwithstanding any other term or provision hereof (i) the Operator shall have the sole responsibility and the Department shall have no responsibility to assure the integrity, security and safety of the various fuel systems or of the fuel dispensed by the Operator and the Operator shall be solely responsible for its use; (ii) the Operator shall be responsible at its sole cost and expense and at all times will take good care of all fuel systeming and will maintain same in good order and condition in compliance with all legal requirements and insurance requirements and will make all necessary repairs thereto, including but not limited to leaks or contamination resulting from all fuel systems.  In no event shall Operator be responsible for cost associated with leaks or other obligations occasioned by prior permittes failure to maintain said fuel system in good order and operating conditions, (iii) the Operator shall be entitled, but shall not, unless otherwise required by law or regulation. be obligated to. decommission any or all fuel systems or parts thereof.

Section 16.    Rights of Entry Reserved

(a)  The Department, by its officers, employees, agents, representatives and contractors shall have the right at all times to enter upon the Premises for the purpose of inspecting the same, for observing the performance by the Operator of its obligations under this Agreement, and for the doing of any act or thing which the Department may be obligated or have the right to do under this Agreement or otherwise.

NO021848.05
99999-00111

JAN 12 2000 13:35

PAGE.07

(b)  Without limiting the generality of the foregoing, the Department, by its officer, employees, agents, representatives, contractors, and furnishers of utilities and other services, shall have the right for its own benefit and for the benefit of the Operator, to maintain existing and future utility, mechanical, and other systems, and to enter upon the Premises at all reasonable times to make such repairs, replacements or alterations as may, in the opinion of the Department, be deemed necessary or advisable and, from time to time, to construct or install over, in or under the Premises new systems or parts thereof; provided, however, that in the exercise of such rights of access, repair, alteration or new construction the Department shall not unreasonably interfere with the use and occupancy by the Operator.

(c)  In the event that any property of the Operator shall obstruct the access of the Department, its employees, agent or contractors to any of the existing or future utility, mechanical, and other systems and this shall interfere with the inspection, maintenance or repair of any such system, the Operator shall, upon reasonable advance written notice, move such property, as directed by the Department, in order that the access may be had to the system or part thereof for its inspection, maintenance or repair, and, if the operator shall fail to so remove such property after direction from the Department to do so, the Department may move it and the Operator hereby agrees to pay the cost of such moving upon demand.

(d)  Nothing in this Section shall or shall be construed to impose upon the Department any obligations so to construct or maintain or to make repairs, replacements, alterations or additions, or shall create any liability for any failure so to do.  The Department shall not in any event be liable for any injury damage to any property or to any person happening on or about the Premises nor for any injury or damage to the Premises nor to any property of the Operator or of any other person located in or thereon (other than those occasioned by the acts of the Department, its employees, agents and representatives).

Section 17.  Assignment, Subcontracting and Operator Rights

(a)  The Operator agrees that it will not sell, convey, transfer, mortgage, pledge or assign this Agreement or any part thereof, or any rights created thereby or any part thereof without the prior written consent of the Department.

23

(b)   If without the prior written consent of the Department, the Operator assigns, sells, conveys, transfers, mortgages or pledges in violation of subdivision (a) of this Section of if the Premises are occupied without proper authorization by anybody other the Operator, the Department may collect the fees from any assignee or anyone who claims a right to this Agreement or who occupies the Premises, and the Department shall apply the net amount collected to the fees herein reserved; but no such collection shall be deemed a waiver by the Department of the agreements contained in subdivision (a) of this Section nor an acceptance by the Department of any such assignee, claimant or occupant as a party hereunder, nor a release of the Operator by the Department from the further performance by it of the agreements contained herein.

(c)   The Operator shall not use or permit any person to use the Premises or any portion thereof for any purpose other than the purposes stated in this Agreement and the Operator's obligations hereunder may and shall be performed only through the medium of its officers, employees and contractors.

(d)   Permittee shall not sub-permit the Premises to any other parties in part or in whole without the prior written consent of the State.  Failure to comply with this provision may result in ten (10) days written notice of cancellation of the permit by the State, and the State may immediately take possession and terminate all rights of the Permittee as of such moment.

(e)   Any sightseeing business conducted by the Operator at or from the Heliport under the terms of this Agreement, whether as the sole Operator of a sightseeing business or in addition to sightseeing businesses conducted by others at or from the Heliport, shall be conducted through an entity separate from the Operator (which entity may be a subsidiary or affiliate of the Operator) and shall be on business terms identical to those applicable to the last or currently approved operator of sightseeing operations at the Heliport.

Section 18.   Termination by the Department

(a)   If any one or more of the following events shall occur, that is to say:

(1)   The Operator shall become insolvent, or shall take the benefit of any present or future insolvency statute, or shall make a general assignment for the benefit of creditors, or file a voluntary petition in bankruptcy or reorganization or the

24