EXHIBIT 2    ( Part 2 )

# PERMIT BETWEEN NYDOT AND
# AIR PEGASUS AIRPORT. INC.

readjustment of its indebtedness under the federal bankruptcy laws or under any other law or statute of the United States or of any State thereof, or consent to the appointment of a receiver, trustee, or liquidator of all or substantially all of its property; or

(2)   By order or decree of a court the Operator shall be adjudged bankrupt or an order shall be made approving a petition filed by any of its creditors or, by any of its stockholders seeking its reorganization or the readjustment of its indebtedness under the federal bankruptcy laws or under any law or statute of the United States of any State thereof and the same shall not be vacated or stayed within thirty (30) days; or

(3)   A petition under any part of the federal bankruptcy laws or an action under any present or future insolvency law or statute shall be filed against the Operator and shall not be dismissed within thirty (30) days after the filing thereof; or

(4)   The interest of the Operator under this Agreement shall be transferred to, pass to or devolve upon, by operation of law or otherwise, any other person, firm or corporation; or

(5)   The Operator shall without the prior written approval of the Department, become a predecessor or merged corporation in a merger, a constituent corporation in a consolidation, or a corporation in dissolution; or

(6)   By or pursuant to, or under authority of any federal or state legislative act, resolution or rule, or any order or decree of any court or federal or state governmental board, agency or officer having competent jurisdiction, a receiver, trustee, or liquidator shall take possession or control of all or substantially all of the property of the Operator, and such possession or control shall continue in effect for a period of thirty (30) days; or

(7)   The Operator shall voluntarily abandon, desert or vacate the Premises or discontinue its operations at the Heliport; or

(8)   Any lien is filed against the Premises because of any act or omission of the Operator and the Operator does not commence and pursue a good faith challenge or appeal to or of the lien, or the lien is not removed or bonded within ten (10) days after the Operator has received notice thereof; or

25

NO021848.05
99999-08111

(9)   The Operator shall fail duly and punctually to pay the fees or to make any other payment required hereunder when due to the Department and shall persist in its failure for a period of five (5) days following the receipt of written notice of such default from the Department; or

(10) The Operator shall fail to keep, perform and observe each and every other promise, and agreement set forth in this Agreement on its part to be kept, performed, or observed and the same shall not be cured within thirty (30) days after receipt of notice of default thereunder from the Department (except where fulfillment of its obligations requires activity over a period of time, and the Operator shall have commenced to perform whatever may be required for fulfillment within ten (10) days after receipt of notice and continues such performance without interruption except for causes beyond its control);

(12) The Department may by five (5) days, notice to the Operator as to the events listed in subparagraphs (1), (2), (3), (4), (5), (6), (8) and (9) and by one day's notice to the Operator as to the events listed in subparagraphs (7) and (10), terminate the rights of the Operator as of the date specified in such notice.

(b)   If any of the events enumerated in subdivision (a) of this Section shall occur prior to the commencement of the term, the Operator shall not be entitled to enter into possession of the Premises and the Department upon the occupancy of any such event or at any time thereafter during the continuance thereof by twenty-four (24) hours' notice may cancel the interest of the operator under this Agreement, such cancellation to be effective upon the date specified in such notice.

(c)   No acceptance by the Department of fees, charges or other payments in whole or in part for any period or periods after a default of any of the terms, covenants and conditions hereof to be performed, kept or observed by the Operator shall be deemed a waiver of any right on the part of the Department to terminate the Agreement unless such payment is accepted without recourse.

(d)   No waiver by the Department of any default on the part of the Operator in performance of any of the terms, covenants or conditions hereof to be performed, kept or observed by the Operator shall be or be construed to be a waiver by the

26

80021848.05
99999-00111

reo FIe/20 DEC 13 '95  13:34

Department of any other or subsequent default in performance of
any of the said terms, covenants and conditions.

### Section 19.    Right of Re-entry

The Department shall, as an additional remedy upon the
giving of a notice of termination as provided in Section 18
hereof, have the right to re-enter the Premises and every part
thereof upon the effective date of termination without further
notice of any kind, and may regain and resume possession either
with or without the institution of summary or any other legal
proceedings or otherwise.  Such re-entry, or regaining or
resumption of possession however, shall not in any manner affect,
alter or diminish any of the obligations of the Operator under
this Agreement.

### Section 20.    Remedies to be Non-exclusive

All remedies provided in this Agreement shall be deemed
cumulative and additional and not in lieu of or exclusive of each
other or of any other remedy available to the Department at law
on in equity, and the exercise of any remedy, or the existence
herein of other remedies or indemnities shall not prevent the
exercise of any other remedy.

### Section 21.    Surrender

The Operator covenants and agrees to yield and deliver
peaceably to the Department possession of the Premises and other
property of the Department on the date of the expiration or
earlier termination of the Agreement promptly and in good
condition consistent with and to the extent of its obligations
under this Agreement.

### Section 22.    Effect of Basic Monthly Permit Fee Reductions

Upon each reduction of the basic monthly permit fee
under the terms of this Agreement, the Annual Amount shall be
reduced by an amount equal to the reduction in the basic monthly
permit fee multiplied by the number of months during the
applicable year to which the reduction applies.

### Section 23.    Removal of Property

During the sixty (60) days following the expiration,
revocation or earlier termination of the term, the Operator shall
have the right or upon the affirmative direction by the

27

#0021848.05
99999-00111

Department, the obligation, to remove its equipment, inventories, removable fixtures, including such trailers, fuel, facilities, barges, or other floating fixtures, and other personal property from the Premises and shall repair all damage caused by such removal. If at the expiration of the sixty (60) day period the Operator shall fail to remove such property, the Department may use or dispose of such property in any manner the Department deems appropriate and assess reasonable costs associated therewith. During such sixty (60) day period, the Operator shall be entitled to possession of the Premises and shall during the period of any such occupancy be obligated to pay only the then current monthly permit fee referred to in Section 6(a), pro-rated for each day so occupied during the sixty (60) day period.

Section 24.    Brokerage

        Each of the Operator and the Department represents and warrants that no broker has been concerned on its behalf in the negotiation of this Agreement and that there is no broker who is or may be entitled to be paid a commission in connection therewith. Each party shall indemnify and save harmless the other of and from any claim for commission or brokerage made by any and all persons, firms or corporations whatsoever for services rendered in connection with the negotiation and execution of this Agreement.

Section 25.    Limitation of Rights and Privileges Granted

        No greater rights or privileges with respect to the use of the Heliport or any part thereof are granted or intended provision thereof, than the rights and privileges expressly and specifically granted hereby.

Section 26.    Notices

        Except where expressly required or permitted herein to be oral, all notices, requests, consents and approvals required to be given to or by either party shall be in writing, and all such notices and requests shall be personally delivered to the duly designated officer or representative of such party or delivered to the office of such officer or representative during regular business hours, or forwarded to him or to the party at such address by certified or registered mail, return receipt requested. Notices sent by registered or certified mail shall be deemed received five (5) business days after mailing. The Operator shall from time to time designate in writing an office within the Department and an officer or representative whose regular place of business is at such office upon whom notices and

80021848.05
99999-00111

requests may be served.  Until further notice, the Department
hereby designates the Regional Real Estate Officer, Region II, of
the New York State Department of Transportation as their officer
or representative upon whom notices and requests may be served,
and the Department designates its office at Hunter's Point Plaza,
47-40 21st Street, Long Island City, New York 11101 and the
Operator designates its office appearing on page 1 of this
Agreement as their respective offices where notices and requests
may be served.

Section 27.    Place of Payments

             Payment must be paid by check, bank cashier's
check or money order payable to "Department of Transportation"
and mailed or delivered to:

                New York State Department of Transportation
                Revenue Unit, Building 5, Room 422
                1220 Washington Avenue
                Albany, New York  12232


Section 28.    Construction and Application of Terms

             (a)  The section and paragraph headings, if any,
in this Agreement are inserted only as a matter of convenience
and for reference and in no way define, limit or describe the
scope or intent of any provision hereof.

             (b)  The terms, preamble, provisions and
obligations contained in the Exhibits attached hereto, whether
there set out in full or as amendments of, or supplements to
provisions elsewhere in the Agreement stated, shall have the same
force and effect as if herein set forth in full.

Section 29.    Non-Liability of Individuals

             No Commissioner, shareholder, director, officer,
agent or employee of either party shall be charged personally or
held contractually liable by or to the other party, under any
term or provision of this Agreement, or because of its execution
or attempted execution, or because of any breach thereof.

N0021841.05
99995-00111

Section 30.    Other Services by the Operator

(a)    The Operator is obligated to furnish all necessary services for the Premises including, but not limited to:

(1)    The operation of all mechanical; plumbing, power, heating, steam, air conditioning, electrical, boiler, water, toilet, burglar alarm, communications, gas and other systems affecting the Premises;

(2)    All janitorial and garbage, refuse, snow and ice removal services; said garbage and refuse to be deposited at central deposit points designated by the Department.  The Operator shall not place snow or ice upon any public streets, highways or marginal streets of the City of New York;

(3)    The taking of all reasonable measures as shall be approved by the Department for the prevention of access to the Premises by any person other than employees, guests, invitees of the Operator or other persons authorized to be on the Premises;

(4)    Provide security in the Premises during the hours the Heliport is open;

(5)    Toilet washroom supplies;

(6)    Relamping of all electrical fixtures;

(7) All obstruction lights installed on or outside the Premises.

(b)    The Operator shall furnish and supply, at its own expense, all utilities necessary for the proper operation of the Premises as a heliport including but not limited to electricity, water, heat.  The Operator shall secure the aforesaid utilities directly from the suppliers of the same.

(c)    Except as expressly provided in a specific provision of the Agreement, the Department shall not be obligated to furnish or supply any services whatsoever in connection with the Heliport.

30

80021848.05
99595-00111

Section 31.     Equipment Furnished by the Operator

Without limiting the generality of anything herein contained as to the Operator's obligation to operate and maintain the Premises as an operating heliport, the Operator shall supply, furnish and maintain throughout the term of this Agreement such equipment, furnishings and supplies necessary for the operation of the Heliport as specified in Exhibit E. The Operator further agrees to supply, furnish and maintain throughout the term of this Agreement such other equipment and materials as may be desirable or necessary for the proper operation of the Heliport, other than those to be furnished by the Department as set forth in Exhibit F.

Section 32.     Relationship of the Parties

(a)  This Agreement does not and shall not constitute the Operator as the agent or representative of the Department for any purpose whatsoever. Neither a partnership nor a joint adventure is hereby created.

(b)  Neither the officers, agents, contractors or employees of the Operator shall be or be deemed to be employees of the Department for any purpose whatsoever.

(c)  As to such of the Operator's obligations under this Agreement which pertain to the regulation of acts of third persons on the Premises, if the Operator cannot effectuate its obligations hereunder as to said third persons by admonitions and directions to comply, it shall immediately advise the Department or such other person as may be designated by the Department to such effect and, in any such event, the Operator shall not use force in securing compliance by said third persons.

Section 33.     Condemnation or Acquisition by Others

(a)  In the event the Premises or any part thereof, or the rights and interest of the Department in and to the Premises or any part thereof shall be condemned, taken or acquired by a body having a superior power of eminent domain, then this Agreement shall no longer apply to the land so taken, and all fees, charges and obligations shall be reduced pro rata in the same proportion as the Premises are reduced by the condemnation, taking or acquisition or, at the discretion of the Operator, such reduction shall adversely affect the business of the Operator, the Operator may deem this Agreement terminated, as of the date possession is taken from the Department by the condemning body, and this Agreement shall cease and determine in

31

80021848.05
99999-001:1

the same manner and with the same effect as if the term of the Agreement had on that date expired.

(b)  In the event of condemnation or acquisition as provided in paragraph (a) hereof, the Operator shall not be entitled to assert any claim to any compensation, award or part thereof made or to be made therein or therefor or any claim to any consideration or any amount thereof paid therefor, or to institute any action or proceedings or to assert any claim against such agency or agencies or against the Department for any such taking, it being understood and agreed between the parties hereto that the Department shall be entitled to all compensation or awards made or to be made or paid, and all such consideration, free of any claim or right of the Operator.

(c)  In the event that all or any portion of the Premises is required by the Department for the construction of Route 9A or to comply with any present or future governmental law, rule, regulations, requirement, order or direction, the Department may, by notice given to the Operator, terminate this Agreement with respect to all or such portion of the Premises so required and all fees, charges and obligations shall be reduced pro-rata in the same proportion as the Premises are reduced by the termination or, at the discretion of the Operator, if such termination shall adversely affect the business of the Operator, the Operator may deem this Agreement terminated.  Such termination shall be effective on the date specified in the notice.  The Operator hereby agrees to deliver possession of all or such portion of the Premises so required on the effective date of such termination in the same condition as that required for the delivery of Premises upon the date originally fixed by this Agreement for the expiration of its term.

Section 34.    Sales and Services

(a) A principal purpose of the Department in the making of this Agreement is to have the Heliport operated as a first-class public heliport and to make available at the Heliport the items and/or services which the Operator is permitted and directed to sell and/or render hereunder, and the Operator hereby agrees to conduct a first-class operation and in accordance with the highest standards, safety and efficiency and to furnish all necessary and proper fixtures, equipment, personnel (including licensed personnel as necessary), supplies, materials and facilities.

(b)  The Operator shall, (1) furnish good, prompt and efficient service hereunder, adequate to meet all demands

R0021848.05
99999-00111

therefor at the Heliport; (2) furnish said service on a fair, equal and non-discriminatory basis to all users thereof; and (3) except for sightseeing operations which require Department approval pursuant to Section 3, charge fair, reasonable and non-discriminatory prices for each unit of sales or services, provided that the Operator may make reasonable and non-discriminatory discounts, rebates or other similar types of price reductions to volume purchasers in connection with the landing, taking off and parking of aircraft.  As used in this subdivision (b) "service" shall include furnishing of materials and supplies (including the sale thereof) and the landing, taking off and parking of aircraft.

(c)    In the event Federal Airport Aid becomes available for use at the Heliport, the Department may apply for and receive a grant or grants of money from the Administrator of the Federal Aviation Administration pursuant to the Airport and Airways Development Act of 1970, as the same has been amended and supplemented, and under prior federal statues which said Act superseded.  In connection therewith the Department may undertake certain obligations respecting its operation of the Heliport and the activities of its contractors, lessees and permittees thereon.  The performance by the Operator of the promises and obligations contained in this Agreement is therefor a special consideration and inducement to the issuance of this Agreement by the Department, and the Operator further agrees that if the Administrator of the Federal Aviation Administration or any other federal or state governmental officer or body having jurisdiction over the enforcement of the obligations of the Department in connection with Federal Airport Aid, shall make any orders, recommendations or suggestions respecting the performance by the Operator of its obligations under this Agreement, the Operator will promptly comply therewith at the time or times, when and to be the extent that the Department may direct.

(d)    The Operator shall not itself use the Heliport for its own aircraft and shall refrain from entering into continuing contracts or arrangements with third parties for use of the Heliport or for furnishing services covered hereunder when such use by the Operator or contracts or arrangements will have the effect of utilizing to an unreasonable extent the Operator's capacity for rendering such services.  A reasonable amount of capacity shall be reserved by the Operator for the purpose of rendering services at the Heliport, including but not limited to the fueling of aircraft, to those who are not parties to continuing contracts with the Operator.

33

*0001844.05
*9999-00111

(a)  The Operator shall use its best efforts to encourage and develop the use of the Heliport and the Operator's business thereat.

Section 35.    No Interest in Real Property

Nothing contained in this Agreement shall grant or be construed to grant to the Operator any interest or estate in real property, and a landlord-tenant relationship shall not be or be deemed to be created hereunder.

Section 36.    Helicopter Flight Operations

The Operator agrees that it shall permit [no helicopter flight operations hereunder and] no landing approach or take-off path to or from the east of the Heliport, including but not limited to the Miller Highway (West Side Elevated Highway) or any successor or replacement roadway.  It is the understanding of the parties that flight patterns will be developed and maintained in such manner as will:

(a)  impose no restrictions on present of future structures in any area, section or district adjacent to or surrounding the Premises; and

(b)  require all landings and take-offs to be over the water with the necessary air taxiing to and from the bulkhead pads.

Section 37.    Sunken Craft

If during the team of this Agreement, the waters constituting a part of the Premises shall become obstructed in whole or in part by the sinking of any airborne or waterborne craft owned or operated by the Operator not otherwise approved in a site plan approved by the Department, the Operator, after notice from the Department, shall promptly remove such obstruction or cause the same to be removed, without cost or expense to the Department.  If, after notice from the Department, the Operator fails to remove such obstruction, the Department may in its discretion remove the same and in such event the Operator shall reimburse the Department for the expenses so incurred, upon demand.

The Operator shall save harmless the Department, its Commissioner, representatives, agents and employees from any damages or claim for damages that may arise by reason of the

34

P0021141.05
99999-00111

presence in said waters of any sunken craft owned or operated by
the Operator.

Section 38.    Accident Reports

The Operator shall promptly report in writing to
the General Counsel of the Department, and shall make all other
reports as may be required by law, rule or regulation in
connection with all accidents whatsoever arising out of or in
connection with its operation of the Heliport.  In addition to
the foregoing, accidents which result in death, personal injury
or serious damage shall be immediately reported by telephone to
the aforesaid representatives of the Department.

In the event any claim is made by any person
against the Operator arising out of any accident on the Premises
or in proximity to the Premises as a result of the Operator's
operations hereunder, the Operator shall promptly report such
claim in writing to the aforementioned representatives for the
Department.  In addition, the Operator shall promptly furnish to
the Department copies of all reports given to the Operator's
insurance carrier.

Section 39.    Operations Personnel

The Operator shall furnish sufficient trained
personnel to perform the services required of the Operator under
this Agreement.

The Operator in its operations hereunder shall
abide by the terms and conditions of the applicable collective
bargaining labor agreements to which it is a party, if any,
including but not limited to payment of the rates of wages and
the holiday, idle time, vacation, severance pay and sick leave
allowances specified therein.

The Operator shall immediately give oral notice to
the Department (to be followed by written notices and reports) of
any and all impending or existing labor complaints, troubles,
disputes or controversies and the progress thereof.  The Operator
shall use commercially reasonable efforts to resolve any such
complaint, trouble dispute or controversy.

Section 40.    [Reserved]

15

#0021848.05
99999-00111

Section 41.    Additional Rights Concerning Termination

         a    Notwithstanding any other term or provisions of this Agreement and in addition to any other right of termination hereunder, this Agreement may be revoked by the Department at any time and without cause on thirty (30) days' prior written notice to the Operator. In the event of revocation pursuant to this paragraph (a) or expiration or termination pursuant to Section 2, this Agreement shall cease and expire as if the effective date of revocation stated in the notice were the date originally stated herein for the expiration thereof.

         b    Upon expiration or termination pursuant to any provision of this Agreement, Operator shall have an additional sixty (60) days from the date of said expiration or termination to remove property in accordance with the provisions of Section 23.

         c    Revocation or termination under this Section shall not relieve the parties of any liabilities or obligations hereunder which have accrued on or prior to the effective date thereof.

Section 42.    Presidential Use of the Heliport

         The Department shall have the right from time to time and at any time, upon request by or on behalf of the President of the United State to use the Heliport for the landing and taking-off of a helicopter carrying, among other, the President of the United State and other helicopters accompanying such helicopter, upon notice to the Operator which may be oral, to suspend the operations of the Operator under this Agreement for a temporary period or periods of time for the purpose accommodating such landing and takeoff, it being understood that during said period the Department or any third person selected by it may provide the services to the helicopter or helicopters comprising the Presidential party ordinarily performed hereunder by the Operator and, in addition, shall provide cleaning services to the Premises as may be made necessary by the landing and takeoff hereunder. Upon notice to the Operator under this Section 47 the Operator will vacate and turn over complete occupancy of the Heliport to the Department and will during any period of suspension hereunder the normal operations of the Operator and of all other aircraft operators at the Heliport will cease and be suspended. There shall be no abatement of fees or charges in connection with any suspension of operations or evacuation by the Operator under this Section of the Agreement

80021549 05
99999-00111

nor will the scheduled charges for such operation, if any, be
payable to the Operator.

Section 43.    NOTAMS - Emergency

(a)  Except in the case of an emergency, the
Operator shall not issue any NOTAMS with respect to the Heliport
without the express prior consent of the Manager Department
Heliports.  The Operator hereby agrees to promptly advise the
Manager Department Heliports of any condition at or affecting the
Heliport which, in its judgment, could constitute an unsafe or
hazardous situation if the Heliport were to continue operating.

(b)  Notwithstanding any other provision in this
Agreement, the Department hereby reserves the right at any time,
in the event of emergency, to take such actions, including but
not limited to the closing of the Heliport, as it may deem
appropriate.

Section 44.    Public Information

Except as specifically required in connection with
its obligations hereunder, all information given by the Operator
to operators of aircraft, the general public or to any other
person or entity, with respect to the operation of the Heliport
shall be subject to the prior written approval of the Department
and the Operator shall not give any such information without such
approval.  It is understood that the foregoing applies and
pertains to the status of the Operator as the operator of the
Heliport under this Agreement and not to the Operator's own
business operations at the Heliport as and to the extent they are
authorized under this Agreement.

Section 45.    [Reserved]

Section 46.    Condition of Premises

(a)  The Operator hereby acknowledges that it has
not relied upon any representation or statement of the Department
or its Commissioner, officers, employees or agents as to the
condition of the Premises.

(b)  Without limiting the generality of Section 16
and subject to the terms and provisions thereof the Operator
understands and acknowledges that the Department may be
performing certain work in connection with the construction of

37

route 9A.  It is contemplated that such work will be completed
and during the term of this Agreement and the Department shall
have the right of ingress and egress upon, over and through the
Premises and the use thereof for the purpose of performing the
work and the Operator shall make the Premises, or any portion
thereof as may be specified from time to time by the Department,
available to the Department for the performance of the work upon
reasonable notice.  No occupancy of the Premises by the
Department for the purpose of performing the work or the
performance of the work shall be or be deemed an eviction or
constructive eviction of the Operator or provide for any
abatement or diminution of fees nor give rise to any claim or
demand by the Operator for damages, either direct or
consequential by reason thereof.  If, in the judgment of the
Operator, such work in connection with the construction of Route
9A interferes with the operations of the Heliport, the Operator
may terminate this Agreement upon thirty (30) days notice to the
Department.  Nothing in this Section shall or shall be construed
to impose upon the Department any obligations so to construct or
maintain or to make repairs, replacements, alterations or
additions, or shall create any liability for any failure so to
do.

Section 47.    Security Deposit

        The permittee acknowledges the State's right to
collect a security deposit.  This sum will be retained as
security to ensure faithful performance of the permit and
compliance with all terms by the permittee.  The State hereby
acknowledges receipt of  $10,210.00 received on 3/30/96 by

*Beverly Caputo*

                                        (Dept. Rep.'s Signature)


Section 49.    Substitute Operator and Carryover

        The Parties recognizes the benefit of a
heliport as a public transportation facility on the west side of
Manhattan, desire to continue its operation as long as possible,
and recognize the benefit of interim improvements by the Operator
provided for herein.  The Parties agree that the authority to
terminate this Agreement pursuant to Section 41 will not be
exercised for the purpose of substituting or benefitting another
operator, on or off the Premises, or change the location of the
heliport, and (b) upon any taking, condemnation or other
termination prior to the Expiration Date, other than as a result
of a breach by the Operator, to the extent that the Department

                            38

N0021848.05
99999-00111

has other vacant property available and which may be suitable to the purpose, the Department shall so inform the Operator who may pursue permission to use such property as an interim heliport.

Section 49.    Definitions

The following terms, when used in this Agreement shall, unless the context shall require otherwise, have the respective meanings given below:

a)  "Heliport" shall mean the land and lands under water in the City of New York, in the Borough of Manhattan which are shown in "Exhibits A".

c)  "Premises" shall mean and include the land, lands under water, bulkhead, bulkhead level decking and pilings, the buildings, structures and other improvements thereon, the equipment, permanently affixed or permanently located therein such as electrical, plumbing, sprinkler or fire protection or fire alarm, heating, steam, sewerage, drainage, refrigeration, communications, gas and other systems and their pipes, wires, mains, lines, tubes, conduits equipment and fixtures and all paving, drain, culverts, ditches and catch basins.

(d)  "Aircraft" shall mean helicopters.

(e)  "Agreement", "Contract" or "this Agreement" shall mean this Form of Contract.

(f)  "Manager" shall mean the person or persons from time to time designated by the Department to exercise the powers and functions vested in the said Manager by this Agreement.

g)  "Term" shall mean the term of this Agreement.

h)  "Fuel Operations" shall mean the operation of the fuel storage facilities and the dispensing an delivery of aviation fuel into aircraft.

Section 50.    Entire Agreement; No Third Party Beneficiaries

This Agreement consists of the following:  The Preamble, Sections 1 to 50, inclusive, together with Exhibits A, B, C, D, E and F.  It constitutes the entire Agreement of the parties on the subject matter hereof, may not be changed, modified, discharged or extended except by written instrument duly executed by the Department and the Operator, and shall not

39

confer upon any person or entity other than the parties hereto any rights or remedies hereunder.

The Operator agrees that no representations or warranties shall be binding upon the parties unless expressed in writing in this Agreement.

40

WOC21848 C5
59999-00111

IN WITNESS WHEREOF, the parties hereto have caused these presents to be executed as of the day and year first above written.

ATTEST:

_____

_____ Secretary

AIR PEGASUS HELIPORT, INC.

By: _____

(Title) _____ President

(Corporate Seal)

41

STATE OF NEW JERSEY

SS

COUNTY OF MORRIS

On the 1st day of March 1996, before me personally came Jeff Ellentuck to me known, who, being duly sworn, did depose, and say that he resides at 40 Pine Drive, in Roosevelt, New Jersey  That before him personally came Alvin S  Trenk, known to him as the President of Air Pegasus Heliport, Inc., the corporation described in and which executed the foregong instrument. That he is the Secretary of Air Pegasus Heliport, Inc., the corporation described in and which executed the foregoing instrument; that he signed his name thereto by order of the Board of Directors of said corporation

_____
Notary Public

JEANETTE T. THOMPSON
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires June 2  1997

APPROVED:

Commissioner of Transportation for the
People of The State of New York

By _____

Date _____

Director, Real Estate Division

III. FREE USE OF PUBLIC LANDING AREA

Notwithstanding the provisions of any Schedule of Charges heretofore adopted for the use of the West 30th Street Heliport, no charges shall be made for the use including parking of such areas at the Heliport by the following aircraft:

1. Aircraft operated by the Federal Government.

2. Aircraft owned or chartered by the State of New York or the City of New York.

3. Aircraft operated by the United State Coast Guard when engaged in the execution of search and rescue and law enforcement duties.

43

Exhibit E

List of equipment to be furnished by the Operator

1.    Sufficient approved type aircraft wheel chocks.

2.    Cleaning and toilet supplies.

3.    First aid locker together with first aid equipment.

44

EXHIBIT E

1.  One 15 lb., 2-wheel CO-2 fire extinguisher.

2.  One 2-way radio capable of receiving and transmitting on a
    frequency of 123.05 megacycles (VHF), or such other
    frequency designated by the appropriate governmental
    authority.

3.  One reserve flotation craft.

4.  3 existing air conditioners.

5.  Wind Indicating and Recording Equipment.

45

## TABLE OF CONTENTS

PAGE

Section 1. Space ............................................... 1

Section 2. Term ............................................... 1

Section 3. Rights of User ..................................... 2

Section 4. Schedule of Charges and Collections ............... 4

Section 5. Services by the Operator .......................... 4

Section 6. Fees and Charges Payable to the Department ........ 6

Section 7. Obligations in Connection with Payment of the
           Percentage Fee and Privileges ..................... 8

Section 8. Compliance with Governmental Requirements ......... 9

Section 10. Prohibited Acts .................................. 12

Section 11. Maintenance, Repair and Property Insurance ....... 14

Section 12. Indemnity; Liability Insurance ................... 18

Section 13. Construction by the Operator ..................... 20

Section 14. Signs ............................................ 20

Section 15. Operation of the Fuel Storage System ............. 21

Section 16. Rights of Entry Reserved ......................... 22

i

Section 17. Assignment, Subcontracting and Operator Rights .... 23

Section 18. Termination by the Department ................... 24

Section 19. Right of Re-entry ............................... 27

Section 20. Remedies to be Non-exclusive .................... 27

Section 21. Surrender ....................................... 27

Section 22. Effect of Base Rent Reductions ................. 27

Section 23. Removal of Property ............................. 27

Section 24. Brokerage ....................................... 28

Section 25. Limitation of Rights and Privileges Granted ....... 28

Section 26. Notices ......................................... 28

Section 27. Place of Payments .............................. 29

Section 28. Construction and Application of Terms ........... 29

Section 29. Non-Liability of Individuals ................... 29

Section 30. Other Services by the Operator ................. 30

Section 31. Equipment Furnished by the Operator ........... 31

Section 32. Relationship of the Parties .................... 31

Section 33. Condemnation or Acquisition by Others .......... 31

41

Section 34. Sales and Services ................................. 32

Section 35. No Interest in Real Property ...................... 34

Section 36. Helicopter Flight Operations ..................... 34

Section 37. Sunken Craft ..................................... 34

Section 38. Accident Reports ................................. 35

Section 39. Operations Personnel ............................. 35

Section 40. [Reserved] ....................................... 35

Section 41. Additional Rights Concerning Termination ......... 36

Section 42. Presidential Use of the Heliport ................. 36

Section 43. NOTAMS - Emergency ............................... 37

Section 44. Public Information ............................... 37

Section 45. [Reserved] ....................................... 37

Section 46. Condition of Premises ............................ 37

Section 47. Security Deposit ................................. 38

Section 48. Substitute Operator and Carryover ................ 38

Section 49. Definitions ...................................... 39

Section 50. Entire Agreement; No Third Party Beneficiaries ... 39

iii

46