UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
NEW YORK HELICOPTER CHARTER, INC. and       :
MICHAEL ROTH individually
                                            :     07 Civ. 4069
                        Plaintiffs
                                            :
        -against-
                                            :
AIR PEGASUS HELIPORT, INC, HUDSON RIVER
PARK TRUST and the FEDERAL AVIATION         :
ADMINISTRATION
                                            :
                        Defendants
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## MEMORANDUM OF LAW BY DEFENDANT AIR PEGASUS HELIPORT, INC. IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT


Leon Friedman (LF#7124)
148 East 78th Street
New York, N.Y. 10021
(212) 737-0400
Attorney for Defendant
Air Pegasus Heliport, Inc.

Of counsel
    Christopher P. Gengaro
    Lentz & Gengaro

## TABLE OF CONTENTS

Page

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . .    3

ARGUMENT

I.    APH CANNOT BE CONSIDERED A STATE ACTOR. .    9

II.    NO CONSTITUTIONAL CLAIM WILL LIE IN THIS
SITUATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    23

III.    NO CLAIM WILL LIE UNDER THE AIRLINE
DEREGULATION ACT. . . . . . . . . . . . . . . . . . . . . . . . . . . . .    27

      A.    Since APH is not a State Actor It Cannot
      be Sued under the ADA . . . . . . . . . . . . . . . . . . . . . . . . .    28

      B.    The Private Contract between APH and HRPT
      Does Not Qualify as a  Regulation or Other Provision
      Having the Force of Law. . . . . . . . . . . . . . . . . . . . . . . .    28

IV.    THERE IS NO CLAIM UNDER THE COMMERCE CLAUSE    32

V.    CLAIMS SIX THROUGH TEN MUST BE DISMISSED
SINCE FEDERAL COURTS WILL NOT EXAMINE CLAIMS
BROUGHT UNDER CPLR ARTICLE 78 . . . . . . . . . . . . . . . . . . . . . . .    33

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    35

## TABLE OF AUTHORITIES

Page

*Adams v. Vandemark*, 855 F.2d 312 (6th Cir. 1988)......................................17

*Adler v. Pataki*, 204 F. Supp. 2d 384 (N.D.N.Y.2002) ....................................34

*Alaska Airlines, Inc. v. City of Long Beach*, 951 F.2d 977 (9th Cir. 1991).....................30

*American Airlines Inc. v. Department of Transportation*, 202 F.3d 788 (5th Cir. 2000).........................................................................31

*American Airlines v. Wolens*, 513 U.S. 219 (1995) ................................28, 29

*American Manufacturers Mutual Insurance Co. v. Sullivan*, 526 U.S. 40 (1999) ...........18

*Baggett v. First National Bank of Gainesville*, 117 F.3d 1342 (11th Cir. 1997)................9

*Benn v. Universal Health System, Inc.*, 371 F.3d 165 (3d Cir.2004) ........................17, 21

*Birmingham v. Ogden*, 70 F. Supp. 2d 353 (S.D.N.Y.1999)..............................34

*Blum v. Yaretsky*, 457 U.S. 991 (1982) .....................................11, 13

*Bond v. Dentzer*, 494 F.2d 302 (2d Cir. 1974)..................................22

*Brentwood Academy v. Tennessee Secondary School Athletic Association*, 538 U.S. 288 (2001) ..........................................10, 11

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296 (2d Cir.2004) .................34

*Burton v. Wilmington Parking Authority*, 365 U.S. 715 (1961) .......................14

*C. & A. Carbone v. Town of Clarkstown*, 511 U.S., 383 (1994) ....................32

*Camacho v. Brandon*, 56 F. Supp. 2d 370 (S.D.N.Y.1999) ...........................34

*Center v. Bio-Ethical reform v. Comcast-Spectacor, Inc.*, 1999 WL 601014 (E.D. Pa. 1999) ..............................................................16

*Clubside, Inc. v. Valentin*, 468 F.3d 144 (2d Cir. 2006) ........................24, 26

*Collyer v. Darling*, 98 F.3d 211 (6th Cir. 1996) ..................................18

*Consolidated Edison of New York, Inc. v. Pataki*, 292 F.3d 338 (2d Cir. 2002)..............24

Page

*Cooper v. Aaron*, 358 U.S. 1 (1958) ............................................................ 14

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998) ....................................... 26

*Crissman v. Dover Downs Entertainment, Inc.*, 289 F.3d 231 (3d Cir. 2002) ................ 14

*DeTerra v. American West Airlines, Inc.*, 226 F. Supp. 2d 274 (D.Mass. 2002) ............ 32

*E.F.W. v. St. Stephen's Indian High School*, 264 F.3d 1297 (10th Cir. 2001)................ 21

*Evans v. Newton*, 382 U.S. 296 (1966)........................................................ 17

*Fisher v. Silverstein*, 2004 WL. 1933610 (S.D.N.Y.. 2004) ................................... 17

*Flagg Brothers v. Brooks*, 436 U.S. 149 (1978) ............................................... 18

*Fred Meyer, Inc. v. Casey*, 67 F.3d 1412 (9th Cir. 1995) ................................... 18

*Gannett v. Satellite Information Network*, 894 F.2d 61 (3d Cir. 1990) ..................... 16

*Hack v. President and Fellows of Yale College*, 237 F.3d 81 (2d Cir. 2000) ................ 21

*Hannah v. Metropolitan-North Commuter RR Co.*, 753 F. Supp. 1169 (S.D.N.Y. 1990)...................................................................................... 19

*Herrmann v. Brooklyn Law Sch.*, 432 F. Supp. 236 (E.D.N.Y.1976)............................. 34

*Hoagland v. Town of Clear Lake, Indiana*, 415 F.3d 693 (7th Cir. 2005)....................... 31

*Hodges v. Yonkers Racing Form*, 918 F.2d 1079 (2d Cir. 1991) .................................. 18

*Hudgens v. NLRB*, 424 U.S. 507 (1976)........................................................ 18

*Hunt v. Steve Dement Bail Bonds, Inc.*, 914 F. Supp. 1390 (W.D. La. 1996).................. 19

*Ileto v. Glock, Inc.*, 349 F.3d 1191 (9th Cir. 2003) ........................................ 32

*Jackson v. Metropolitan Edison Co.,*, 419 U.S. 345 (1974)............................... 10, 12, 13

*Kaluczky v. City of White Plains*, 57 F.3d 202 (2d Cir. 1995)............................... 26

*Koerner v. The Garden District Association, No. Civ. A 00-2206, 2002 WL. 31886728 (E . D. La. Dec. 23, 2002).......................................................... 18*

Page

*Lake Mohave Boat Owners Associate v. National Park Service*, 78 F.3d 1360 (9th Cir. 1996) ..................................................................................................... 26

*Landry v. A-Able Bonding, Inc.*, 75 F.3d 200 (5th Cir. 1996) .......................................... 18

*Lattibeaudierre v. AMR Services Corp.*, No. CV 95 5269, 1996 WL. 518076 (E.D.N.Y. Sept. 3, 1996)...................................................................................... 17

*Lawline v. American Bar Association*, 956 F.2d 1378 (7th Cir. 1992) ............................ 19

*LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412 (2d Cir. 1995)............................................. 22

*Lefcourt v. Legal Aid Society*, 445 F.2d 1150 (2d Cir. 1971) ........................................... 14

*Logan v. Bennington College Corp.*, 72 F.3d 1017 (2d Cir. 1995)............................ 18, 21

*Logiodice v. Trustees of Maine Central Institute*, 296 F.3d 22 (1st Cir.2002)................. 17

*Lucchese v. Carboni*, 22 F. Supp. 2d 256 (S.D.N.Y.1998) ....................................... 34, 35

*Lyn-Lea Travel Corp. v. Amercian Airlines, Inc.*, 293 F.3d 282 (5th Cir. 2002) ............. 31

*Moose Lodge No. 107 v. Irvis*, 407 U.S. 163 (1972)........................................................ 16

*Morales v. Trans Word Airlines*, 504 U.S. 374 (1992) .................................................... 27

*Morningside Supermarket Corp. v. New York State Department of Health*, 432 F. Supp. 2d 334 (S.D.N.Y. 2006) ................................................................... 34

*Motorola Credit Corp. v. Uzan*, 388 F.3d 39 (2d Cir.2004)............................................. 33

*National Broadcasting Co. v. Communications Workers of America*, 860 F.2d 1022 (11th Cir. 1988) ..................................................................................... 17

*Neilson v. D'Angelis*, 409 F.3d 100 (2d Cir.2005) .......................................................... 25

*New Hampshire Motor Transport Association v. Rowe*, 448 F.3d 66 (1st Cir. 2006).............................................................................................................. 31

*Nixon v. Administrator of General Services*, 433 U.S. 425, 97 S. Ct. 2777, 53 L. Ed. 2d 867 (1977)........................................................................................... 25

*Oregon ex rel. Department of Ttransportation v. Heavy Vehicle Electronic License Plate, Inc.*, 198 F. Supp. 2d 1202 (D. Oreg.2002)................................. 32

*Patrick v. Floyd Medical Center*, 201 F.3d 1313 (11th Cir. 2000)..................................15

*Powe v. Miles*, 407 F.2d 73 (2d Cir. 1968)................................................................14, 15

*Reitman v. Mulkey*, 387 U.S. 369 (1967)..........................................................................14

*Roberts v. Cameron-Brown Co.*, 410 F. Supp. 988 (S.D. Ga. 1975) ........................20, 22

*SeaAir New York, Inc. v. City of New York*, 250 F.3d 183 (2d Cir. 2001) ........... 25, 26, 30

*Seals v. Delta Airlines, Inc.*, 924 F. Supp. 854 (E.D. Tenn. 1996) ..................................32

*Sightseeing Tours of America v. Air Pegasus Heliport, Inc.*, 835 N.Y.S.2d 561
      (1st Dept. 2007)........................................................................................................6

*Skydive Factory, Inc. v. Maine Aviation Corp.*, 268 F. Supp. 2d 61 (D. Me. 2003).........31

*Smith v. Comair, Inc.*, 134 F.3d 254 (4th Cir. 1998).........................................................30

*Szekeres v. Schaeffer*, 304 F. Supp. 2d 296 (D.Conn.2004) .............................................17

*Tancredi v. Metropolitan Life Insurance Company*, 149 F. Supp. 2d 80 (S.D.N.Y.
      2001)........................................................................................................................13

*Tomaiolo v. Mallinoff*, 281 F.3d 1 (1st Cir.2002) ............................................................17

*Travel All over the World v. Kingdom of Saudi Arabia and Saudi Arabian
      Airlines*, 73 F.3d 1423 (7th Cir. 1996) ..................................................................29

*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000)......................................................25

*Wagner v. Metropolitan Nashville Airport Authority*, 772 F.2d 227 (6th Cir.
      1985)........................................................................................................................19

*Washington v. United States Tennis Association*, 290 F. Supp. 2d 323
      (E.D.N.Y.2003) .......................................................................................................33

*Witty v. Delta Air Lines*, 366 F.3d 380 (5th Cir. 2004) .....................................................31

*Wolin v. Port Authority*, 392 F.2d 83 (2d Cir. 1969) ........................................................14

*Wolotsky v. Huhn*, 960 F.2d 1331 (6th Cir. 1992) ............................................................22

*Yanaki v. Iomed, Inc*, 415 F.3d 1204 (10th Cir. 2005).....................................................18

*Yonkers Racing Corp. v. City of Yonkers*, 858 F.2d 855 (2d Cir.1988) ........................... 34

## FEDERAL STATUTES

42 U.S.C. § 1983 .................................................................................................. 8

28 U.S.C. § 1367(c).............................................................................................. 34

Airline Deregulation Act, 49 U.S.C. §41713(b)(1).................................................... 7, 27,

All Writs Act, 28 U.S.C. § 1651(a)......................................................................... 34

## MISCELLANEOUS

Joseph Geller, "Commuting by Helicopter: Avoid Landing in Court," 14 J. *Suffolk Acad. L.* 125 (2000) ................................................................................ 19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NEW YORK HELICOPTER CHARTER, INC. and      :
MICHAEL ROTH individually

                                        :      07 Civ. 4069

                    Plaintiffs

                                        :

     -against-

                                        :

AIR PEGASUS HELIPORT, INC, HUDSON RIVER      :
PARK TRUST and the FEDERAL AVIATION
ADMINISTRATION

                                        :

                  Defendants

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW BY DEFENDANT AIR PEGASUS HELIPORT, INC. IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Preliminary Statement

      Plaintiffs have filed a second amended complaint, ("A.Cpl") adding additional assertions concerning state action, various complaints concerning alleged favoritism toward another helicopter company, ZIP Aviation LLC, as well as focusing on a new audit report relating to Air Pegasus which has little relation to any of the relevant legal issues. The additional paragraphs about state action merely make conclusory assertions, repeat allegations made elsewhere or make legal arguments rather than add any factual statements relating to the disputed points. For all the reasons outlined in our original submissions, this case must be dismissed at the outset. Those reasons are as follows:

      1.     The complaint broadly challenges certain alleged actions (raising rates, giving discounts to other companies) taken by a private heliport operator (Defendant Air Pegasus Heliport, Inc. ["APH"]) on various constitutional and statutory grounds. But all of the claims require a showing that APH is a state actor. On the face of the complaint, no such finding can be

made, even with the amended allegations. As the complaint alleges, APH is a private Delaware

corporation which acts as the Fixed Base Operator ("FBO") of the 30th Street Heliport in

Manhattan pursuant to a contract with the Hudson River Park Trust, ("HRPT or the "Trust") a

state public benefit corporation, which gave it the authority to run the facility. APH's decisions

(as to rates and discounts) are its own and are in no way mandated by any state institution or

agency. Thus no state action can be found, and no federal constitutional claim will lie. (See Point

I below)

     2.     Even if there were state action, the constitutional claims are without merit.

Plaintiffs claim that their equal protection rights are violated because APH allegedly gave

discounts to other helicopter operators. Since no protected group is involved and no fundamental

rights are at issue, the action of any alleged state actor must be "irrational," an almost impossible

standard to meet in the economic sphere and certainly not at issue here. Plaintiffs also argue that

their procedural due process rights were violated because rates were increased for its use of the

30th Street heliport. Aside from the fact that APH is not a state actor, there is no constitutional

requirement that a hearing be held when rates are increased. In any event, plaintiffs have no

property right in any particular rate structure. Plaintiffs claim that their substantive due process

rights were violated because rates were increased and such an increase was "outrageous." Since

substantive due process violations occur only when governmental action "shocks the

conscience," no such claim will lie here. (See Point II below)

     3.     Plaintiffs also bring a declaratory judgment claim against APH under the Airline

Deregulation Act ("ADA", 49 U.S.C. § 41713(b))(Fifth Cause of Action, pars. 262-66). That act

can only be brought against a state actor -- which APH is not. Nor is there any "law, regulation

or other provision having the force and effect of law, related to the price, route or service of an

air carrier" involved in this case. Furthermore, the ADA can preempt only a limited number of actions taken by state or local agencies that might interfere with the operations of interstate airline carriers, and none of the acts alleged in this complaint falls within the scope of that law. (See Point III below)

    4.    Plaintiffs bring a claim directly under the dormant Commerce Clause. (Fourth Claim, pars, 249-261). Since there is no state action and no law or regulation at issue, no such claim can be brought (Point IV).

    5.    Six of the causes of action are brought pursuant to the scope of New York CPLR Article 78, and federal courts will not hear such claims, (See Point V below)

    If the federal claims are dismissed, then all of the alleged state claims must fall as well since there is no complete diversity between the parties (both Plaintiffs and the HRPT are New York residents).

## STATEMENT OF THE CASE

    Plaintiffs have submitted a 45-page amended complaint, consisting of 324 paragraphs to replace the original 36-page complaint with 257 paragraphs. The amended complaint contains six causes of action (Sixth through Tenth Causes of Action) which are based upon Article 78 claims (New York CPLR § 7801). Plaintiffs made no effort in any of their earlier submission to defend such claims. Thus there is no basis for continuing to include them.

    With respect to the additional paragraphs, we include as a supplemental Exhibit 1 to the Declaration of Leon Friedman, a marked-up copy of the amended complaint showing how many paragraphs of the original complaint are continued in the new complaint. The exhibit identifies those paragraphs that are repeated in the new complaint. It also indicates which paragraphs are new.

What that exhibit shows is that 224 paragraphs duplicate the paragraphs in the original

complaint. One hundred paragraphs are new. The new paragraphs are found in pars. 109 to 124,

(additional paragraphs dealing with state action). There were also additional paragraphs dealing

with alleged favoritism toward another helicopter company, Zip Aviation LLC  (pars. 172-175,

179-180) and  additional paragraphs dealing with a state audit (pars. 148-149, 186-210).

Plaintiffs have added some isolated new paragraphs as well.

The new paragraphs do not change the legal landscape in this case. The new section on

state action makes various allegations which duplicate many of the assertions in the original

complaint. Thus the new state action section alleges that the original Permit was issued by the

New York State Department of Transportation (par. 109), that it is a public airport and therefore

"the state is involved in some aspects of the operation." (par. 111).  Plaintiffs also allege that the

Hudson River Park Trust (HRPT) must insure that the rates charged are fair and non-

discriminatory as the Permit requires. (pars. 114-116). The new complaint alleges that a certain

SAFE fee was improper since it was not really used to improve security, and a recent state audit

also questioned its implementation (the fee was subsequently rescinded)(pars. 119-20). The new

state action section also mentions the federal government's control over airspace (pars. 122-24).

The sections dealing with the audit report (parts. 186-210) make selective quotations

from the audit report, focusing in large part on the claim that there some revenues paid to APH

and its affiliated company, Air Pegasus of New York (APNY) that were not properly reported, in

particular some money deducted from the revenue stream because of a consulting agreement

entered into by APH that entitled it to 5% of the gross revenue.  But Plaintiffs fail to quote other

parts of the report that noted that: "In November 2006, APH, APNY and HRPT settled their

claims and dismissed their respective complaints, with APH paying its full share of all monies

received by APNY under the Consulting Agreement." See Exhibit G to Amended Complaint, p.3 of Auditee Response, letter dated October 18, 2007, Fishman to Challice. Indeed, the entire Audit shows that HRPT was vigorous in enforcing the requirements of the Permit. In any event, the audit has nothing to do with the question of state action.

The additional paragraphs relating to ZIP Aviation (pars. 172-180) merely allege that Zip received certain favorable treatment from APH. Once again this does not reflect in any way on the state action question.

The following facts, as alleged and found in the complaint and its exhibits, are undisputed, and reveal that the entire complaint must be dismissed.

In 1996, APH and the New York State Department of Transportation entered into an agreement (the Permit) allowing APH, a private Delaware corporation, to operate a fixed based heliport at West 30th Street in Manhattan (the "Heliport"). The Permit was attached as Exhibit C to the original complaint in this action, and it is cited as Exhibit C to the amended complaint (see par. 10).[1] The Permit provides that APH had the right of "use, occupancy and operation" of that facility for five years, which term could be extended on a month to month basis "unless cancelled by either party upon thirty (30) days notice." (Sections 1 and 2). APH had the right to set rates as it chose. Section 4 of the Permit provides that: "The operator shall have the right, from time to time, to amend any item of such Schedule of Charges, to make increases or decreases therein and to add or delete additional items thereto upon fifteen days prior notice to Public and the Department." (Section 4).   The Permit also specifies that the Agreement

---

3  In fact, the Permit is noted in the list of Exhibits to the Amended Complaint as Exhibit D. But the actual Exhibit D filed in the action is a duplicate of Exhibit C, namely the statute that created the Hudson River Park Trust. Since the Plaintiffs clearly intended to cite to the Permit and had properly filed in as an Exhibit to the original complaint, it is in the record in this case. We attached it as Exhibit 2 to the Declaration of Leon Friedman in support of the Motion to Dismiss.

.

"constitutes the entire agreement of the Parties . . .may not be changed, modified or extended except by written instrument duly executed by the Department and the Operator, and *shall not confer upon any person or entity other than the parties hereto any rights or remedies hereunder.*" (Section 50)(emphasis added). [2]

Plaintiffs operated at the 30th Street Heliport off and on since 2004. They were recently terminated for failure to comply with a settlement agreement following another dispute between the parties. Their attempt to be reinstated was rejected by the state court in the related state court action. See discussion above at fn 1, p. 3.

Plaintiffs prepare a long (and inaccurate) description of the legislation that created the Hudson River Park Trust. (A.Cpl., pars 72-87).The federal claims against APH consist of allegations that APH violated federal law by increasing rates and awarding other helicopter companies certain discounts which Plaintiffs did not obtain. The complaint also describes a series of actions (or non-actions) taken by the HRPT that they claim violate state law. Under their analysis, HRPT acted improperly in (1) extending the Permit under which APH operates the Heliport on a month-by month basis (par. 5, 131,-137) (2) allowing any operations at the 30th

---

[2] The Appellate Division First Department has recently issued a decision brought against APH by another helicopter company to the effect that the Permit grants no rights to third parties to assert rights under the Permit, which is precisely what Plaintiffs are attempting to do here. See *Sightseeing Tours of America v. Air Pegasus Heliport, Inc.*, 835 N.Y.S.2d 561, 562-63 (1st Dept. 2007): "Again, the public has no inherent right to helicopter services at a given rate, and the increase affects not the public trust or health, welfare and safety, but only petitioners' economic interests. Nor does it avail petitioners that the Trust might possess a right under the Permit governing its relationship with APH to veto fees that are not "fair, reasonable and nondiscriminatory," where the Permit expressly prohibits a nonparty from asserting any right or remedy thereunder. Finally, there is no merit to petitioners' claim that the Trust arbitrarily reversed its position regarding review and oversight of APH's fee schedule. Documentary evidence demonstrates that the Trust has always maintained that APH's Permit does not give the Trust approval rights over the proposed rate increases, which were contemplated by all relevant contracts, except to insure that rates are nondiscriminatory, i.e., applied equally to all users. It appears that the Trust did in fact determine that the subject rate increase is nondiscriminatory."

Street Heliport since the enabling act prohibits any such activity (pars. 15, 17, 44, 133-134,
234-257); (3) settling a law suit with APH on favorable terms to APH (pars. 55-59, 150-158);
(4) settling the law suit without the approval of the Trust Board (pars. 170-161). As noted in
Point IV below, all of these claims against HRPT are in the nature of Article 78 proceedings
which cannot be brought in federal court.

The complaint asserts five causes of action against APH, three of them under the
Constitution, one under the Commerce Clause, one under the Airline Deregulation Act, 49
U.S.C. §41713(b)(1) and a final claim that simply demands immediate reinstatement to the
heliport, without citing any legal basis for that relief (as noted above, the state court has denied
exactly the same request). Plaintiffs claim that APH is a state actor subject to the Equal
Protection Clause (A.Cpl., par. 215) They assert that APH provided certain customers of the
Heliport with significant discounts and price reductions which violated Equal Protection. (*Id.*
par. 217-220). The Second Cause of Action is based on substantive due process, on the ground
that the increase in rates (which applied to all helicopter companies using the facility) was
"outrageous"! (pars. 226-234). In the Third Cause of Action, Plaintiffs claim they claim that the
increase in rates -- a $10 passenger fee imposed in May, 2006 -- violated the due process clause
since there was no hearing before the rates were imposed. (*Id.* pars, 235-248).

Plaintiffs add a new cause of action, the Fourth, for violation of the Commerce Clause.
(Pars. 249-261). One again, the pleading is defective, since dormant Commerce Clause actions
can only be brought against state actors. See discussion below in Point IV.

Plaintiffs bring one claim (Fifth Causes of Action) under the Airline Deregulation Act,
("ADA") claiming (once again) that APH is a state actor, and its actions in increasing rates are
preempted by the statute (which does not apply to private entities) (pars. 262-266). The statute

also requires a showing that a state law or government regulation is at issue, which does not exist here. Since the purpose of the law was to allow private entities (such as APH) to set rates without governmental interference, it is difficult to see how the law applies to this situation in any respect.

All of the above claims require a showing that APH, a private company operating under a contract (Permit) with the Hudson River Park Trust (the successor in interest to the New York State Department of Transportation) is a "state actor," subject to the requirements of Constitution and amenable to a suit under 42 U.S.C. § 1983 and subject to the ADA..

The other five claims are state law claims, alleging that HRPT violated the requirements of the Hudson River Park Act by not arranging for competitive bids for the Heliport after March 25, 2006, (Sixth Cause of Action) and by not obtaining approval of the HRPT's board when it extended the month-to-month tenancy of APH (Seventh Cause of Action). The Eighth Cause of Action alleges that HRPT acted "arbitrarily and capriciously" in Permitting APH to continue operations.[3]

Plaintiffs also allege that the governing legislation does not allow any heliport to continue to operate at the 30th Street site after March 25, 2006. "Accordingly, no heliport of any kind, can operate in the present location of the West 30th Street Heliport." (A.Cpl. par. 44). This claim is based upon a detailed (and erroneous) interpretation of the enabling legislation that created the Park. How and why plaintiffs can now show actual injury as a result of the allegedly illegal use of the Heliport -- in which they participated over the past year for their own profit -- is nowhere explained in its papers. Nor can they explain what federal rights of theirs were violated by this continuation. Thus they lack the ability to bring this action in federal court. If state law is being

---

[3] The "arbitrary and capricious" standard is one found under New York CPLR Article 78, a provision that federal courts rarely if ever enforce. See Point IV below.

violated by continuation of the Heliport, it is up to the state courts to make such a determination, based on the state courts' analysis of state legislation, not that of a federal court. "Resolution of Plaintiffs' state law claims depends on determinations of state law.    State courts not federal courts, should be the final arbiters of state law "*Baggett v. First National Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997).

## ARGUMENT

### I.    APH CANNOT BE CONSIDERED A STATE ACTOR

The undisputed facts, as shown in Plaintiffs' complaint, show that APH cannot be considered a state actor subject to constitutional restraints. Thus the first five causes of action (which depend on a showing of state action) must be dismissed at the outset.

The complaint alleges that "Defendant Air Pegasus Heliport, Inc. . . . incorporated in May, 1996, is a Delaware corporation with its principal place of business in New Jersey." (A.Cpl. par. 9). The complaint also alleges that APH is a "the sole and exclusive fixed base operator pursuant to a March 25, 1996 agreement . . .with the New York Department of Transportation . . .which the HRPT later assumed." (*Id.* par. 10). The complaint also alleges that APH, acting on its own, imposed a new fee on Plaintiffs (*Id*, par 236-237). Plaintiffs also allege that APH discriminated against Plaintiffs in rates it charged (*Id.* par. 213)

Thus the central issue is:  can APH be considered a state actor because it secured a Permit from the Trust -- a governmental body --  to operate the Heliport and then made decisions on its own about pricing and discounts?

Plaintiffs are absolutely wrong in claiming that a party to a contract with a government entity or the recipient of a Permit from government is a state actor subject to the Constitution in whatever actions it takes. Thus if APH fired one of its employees without a hearing, would that

employee be able to claim a due process violation? If one of the concessionaires of HRPT at the

Chelsea Piers raised prices on souvenirs or food, could a customer claim that the increase was

unconstitutional because no hearing was held? Merely to present the argument is to refute it.

The fact remains that a person who obtains a Permit from government and then operates

its business totally on its own is not a state actor unless it performs some governmental function

that can fairly be attributed to the state. In its latest comprehensive state action decision, the

Supreme Court framed the issue as follows:

> If the Fourteenth Amendment is not to be displaced, therefore, its ambit cannot be a simple line between States and people operating outside formally governmental organizations, and the deed of an ostensibly private organization or individual is to be treated sometimes as if a State had caused it to be performed. Thus, we say that state action may be found if, though only if, there is such a "close nexus between the State and the challenged action" that seemingly private behavior "may be fairly treated as that of the State itself." *Jackson [v. Metropolitan Edison Co.,]*, 419 U. S. 345, 351 (1974).

> What is fairly attributable is a matter of normative judgment, and the criteria lack rigid simplicity. From the range of circumstances that could point toward the State behind an individual face, no one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient, for there may be some countervailing reason against attributing activity to the government.

> The key inquiry is whether there is a sufficient "entwinement" between a private party and the state.

*Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 538 U.S. 288, 295-96

(2001).

The Court examined various factors that courts should consider in deciding whether there

is sufficient "entwinement" including the following: (1) the state exercises coercive power; (2)

the state provides significant encouragement, either overt or covert; (3) private actors operate as

willful participants in joint activity with the state or its agents; (4) the private entity is controlled

by an agency of the state; (5) the private entity has been delegated a public function by the state;

or (6) the private entity is entwined with governmental policies or the government is entwined in

its management or control. *Id.* See also *Blum v. Yaretsky*, 457 U.S. 991, 1004-05 (1982), where the Court said there is state action if one of the following conditions are met:

> [1] There is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself....[2] [The State] has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State...[3] The private entity has exercised powers that are "traditionally the exclusive prerogative of the State."

In this case there is no close "entwinement" between APH's decision to raise rates and any action by the Trust. Indeed the HRPT has denied any power over APH's decision to raise rates and the Permit specifically allows APH to change its rates as it chooses. In addition, as noted above, the Permit between APH and the Trust specifically denies that the agreement "confer[s] any person or entity other than the parties hereto any rights or remedies hereunder" Exhibit 2 to Friedman Declaration at Section 50. Thus no rights are conferred by the Permit on any third party.

Nor has the government engaged in any coercive action toward APH requiring it to raise rates so the "coercive power" criterion is not met. Nor, as shown below, is raising rates at a heliport be considered "traditionally the exclusive prerogative of the State."

The remaining issue is whether there is a "close nexus" between the state and the "challenged action" of the entity involved, namely raising rates.

One of the allegations of this complaint is that APH terminated plaintiffs' right to use the heliport without a hearing. In a similar case, involving whether an electric utility was a state actor in cutting off electric service to a customer without a hearing, the Supreme Court held that the fact that the utility was given extensive powers by the state and was heavily regulated did not make the utility a state actor:

> Here the action complained of was taken by a utility company which is privately owned and operated, but which in many particulars of its business is subject to extensive state regulation. The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment. . . It may well be that acts of a heavily regulated utility with at least something of a governmentally protected monopoly will more readily be found to be 'state' acts than will the acts of an entity lacking these characteristics. But the inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself.

*Jackson v. Metropolitan Edison Company*, 419 U.S. 345, 350-51 (1974).

The Court rejected the argument that the utility was a state actor because it held a monopoly in providing electric service, just as Plaintiffs argue that APH is a state actor because it had a monopoly on helicopter service on the West Side of Manhattan. The Court rejected that contention: "But assuming that it [was a monopoly], this fact is not determinative in considering whether Metropolitan's termination of service to petitioner was 'state action' for purposes of the Fourteenth Amendment." 419 U.S. at 351-52. The Court also found that providing electric service is not a "public function." The Court noted: "Petitioner next urges that state action is present because respondent provides an essential public service required to be supplied on a reasonably continuous basis by [state law] and hence performs a 'public function.'". The Court commented:

> But while the Pennsylvania statute imposes an obligation to furnish service on regulated utilities, it imposes no such obligation on the State. The Pennsylvania courts have rejected the contention that the furnishing of utility services is either a state function or a municipal duty." *Id.* 353.

Nor is providing a heliport a "state function" or governmental duty in view of the many private heliports – indeed a majority --around the country. See discussion below at pp. 19-20.

The Court in *Jackson* made a distinction between the state *permitting* certain activity by a private entity to occur and the state *ordering* that it occurs.

> Approval by a state utility commission of such a request from a regulated utility, where the commission has not put its own weight on the side of the proposed practice by ordering it, does not transmute a practice initiated by the utility and approved by the commission into "state action." *Id.* at 357.

In this case, the HRPT did not order the rate increase complained of nor did it order any alleged differential in rates to different customers, nor did it approve either of these actions (although approval by itself would not convert the actions into state action). Nor did it order the termination of Plaintiffs at the heliport. Thus it did not "put its own weight on the side of the" acts complained of. Therefore there was no state action. [4]

> The Court concluded:

> All of petitioner's arguments taken together show no more than that Metropolitan was a heavily regulated, privately owned utility, enjoying at least a partial monopoly in the providing of electrical service within its territory, and that it elected to terminate service to petitioner in a manner which the Pennsylvania Public Utility Commission found permissible under state law. Under our decision this is not sufficient to connect the State of Pennsylvania with respondent's action so as to make the latter's conduct attributable to the State for purposes of the Fourteenth Amendment.

*Id.* at 358.

> In a similar case, *Tancredi v. Metropolitan Life Insurance Company*, 149 F.Supp.2d 80 (S.D.N.Y. 2001)(Kaplan, J.) the Court noted that the heavy regulation of an insurance company did not convert its activities (in converting from a mutual insurance company to a stock insurance company) into state action: "Action by a private entity pursuant to statutory authorization retains its private character and is not actionable under Section 1983." In this case also, APH was authorized by the Permit to set rates and change them. But that did not convert its actions into those of the State.

---

[4] See also *Blum v. Yaretsky,* 457 U.S. 991, 1004-05 (1982): "Mere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives under the terms of the Fourteenth Amendment."

13

In the course of the *Jackson* opinion, the Supreme Court distinguished another state action opinion which was cited by the plaintiff, namely *Burton v. Wilmington Parking Auth.*, 365 U.S. 715 (1961) where the Court held that a private lessee who rented space for a restaurant in a public building from the state parking authority was a state actor *in refusing service in a racially discriminatory manner.* [5]

Numerous cases have emphasized the limits to the *Burton* doctrine: it was only because the restaurant engaged in *racial discrimination* that state action was found. If the restaurant raised its prices on hamburgers after its lease required it to sell food at reasonable prices -- our situation -- no one would claim that state action was present. The Second Circuit explained the situation in two cases.

In *Lefcourt v. Legal Aid Society*, 445 F.2d 1150, 1155 (2d Cir. 1971), the Court held that the Legal Aid Society was not a state actor despite being funded and regulated by the city or state. In response to the claim that state action should be found under *Burton*, the court stated:

> Thus, it was suggested in *Powe* [*v. Miles,* 407 F.2d 73 (2d Cir. 1968] that *there would be no State action involved in hiring and firing by the restaurant* in *Burton v. Wilmington Parking Authority*, 365 U.S. 715,(1961) even though the Court there found that there was State action where the State landlord did not prohibit the restaurant from excluding blacks therefrom. Accord, *Wolin v. Port Authority*, 392 F.2d 83, 89 (2d Cir. 1969)(Discrimination by Port Authority involves State action but 'where the issue involves the exercise of First Amendment rights * * * the inquiry must go further. * * *')
>
> The reason for this is that *in the area of racial discrimination, State inaction or neutrality has often been found to constitute affirmative encouragement. See Cooper v. Aaron*, 358 U.S. 1 (1958); *Reitman v. Mulkey*, 387 U.S. 369 (1967) (emphasis added).

---

[5]    In view of the fact that Supreme Court did not mention *Burton* in its recent *Brentwood* decision, some courts have questioned whether that case is still good law, see *Crissman v. Dover Downs Entertainment, Inc.*, 289 F.3d 231 (3d Cir. 2002)(en banc)(where state regulated race track, licensed its operation, authorized track to run video lottery terminals, paid track a commission and received funds from on its operations, but was not conducting any governmental operations at race track, no state action; thus track's exclusion of trainers of harness racing horses not attributed to state). The *Burton* case had been subject to considerable criticism even before the *Brentwood* decision. See Judge Friendly's comments in *Powe v. Miles*, 407 F.2d 73, 74 (2d Cir. 1968).

In *Powe v. Miles*, 407 F.2d 73 (2d Cir. 1968), the Second Circuit rejected the claim that a private university (Albert University) was a state actor in disciplining students who had demonstrated against the ROTC program in the school. The University operated the New York State College of Ceramics under contract with the state, paid its expenses, received other state funds and was regulated by the state. Nevertheless there was no state action in *disciplining students* since that was not the state's concern. The state would have been concerned if the state had "ban[ned] a subject from the curriculum [such as teaching a foreign language] " or if it had banned all demonstrations at private schools, 407 F.2d at 81. ". . . the state must be involved not simply with some activity of the institution alleged to have inflicted injury upon a plaintiff but with the activity that caused the injury." *Id.*

The issue in every case is what action of the private entity is causing the injury that a plaintiff is complaining about. If the action is something that the government is concerned about (like racial discrimination in a restaurant) and that partakes of a governmental function (like regulating what schools may teach), a lessee or regulated entity may be considered a state actor. But if the action is something that the government does not care about because it is not a state function (such as firing an employee or raising rates) then no state action can be found. *See e.g. Patrick v. Floyd Medical Center*, 201 F.3d 1313, 1316 (11th Cir. 2000)(although government entity maintained close financial controls over private hospital, decision to deny doctor staff privileges was wholly that of private hospital; no state action; "the symbiotic relationship between the public and private entities must involve the alleged constitutional violation").

In a series of cases involving concessionaires and lessees -- some involving airports -- courts have again and again found no state action in decisions made by persons leasing space

from government entities. See *Gannett v. Satellite Information Network*, 894 F.2d 61, 67 (3d Cir.

1990)

> In this case, there is no question that the concessionaires leasing space at Newark Airport are private entities pursuing private ends. The Airport's newsstands, moreover, are free to make decisions regarding the newspapers and periodicals they wish to distribute without interference from the government, since the Port Authority's Rules and Regulations do not encompass this aspect of the concessionaires' conduct. Absent any explicit governmental involvement in the distribution decisions of these private newsstands, the actions taken by the concessionaires in this case may not fairly be attributed to the Port Authority. The record fails to indicate any tacit governmental involvement in the concessionaires' actions with respect to the distribution of newspapers. These concessionaires, moreover, do not perform the sort of "public function" that, under certain circumstances, may be enough to transform the behavior of private entities into that of the government.

The Court went on to explain:

> The fact that the concessionaires lease their premises from a governmental entity also falls short of triggering state action. It is true, of course, that the Port Authority's act of signing a lease is, per se, governmental. However, it is well established that a licensing relationship is insufficient in itself to give rise to wholesale governmental responsibility for the actions taken by a private licensee or tenant. *See Moose Lodge No. 107 v. Irvis*, 407 U.S. 163 (1972) (holding that the granting of a liquor license, in itself, is insufficient to make the licensee a state actor). In such circumstances, state action will be recognized only when there is a "symbiotic" relationship between the private and governmental entities, such that the public might reasonably conclude from that relationship that the government has lent its support to the private entity's actions.

Here also there is no "explicit governmental involvement in the" decision to raise rates, as shown

in the Permit requirements noted above and no "tacit governmental involvement in the

concessionaires' actions with respect to" rates. Thus there is no state action.

In *Center v. Bio-Ethical reform v. Comcast-Spectacor, Inc.*, 1999 WL 601014 *2 (E.D.

Pa. 1999), the court held that an entity that leased space from the City of Philadelphia and

refused to allow demonstrations in that space was not a state actor. "Without more, the existence

of a lease agreement between a private entity and a municipality does not render the actions of

the private entity 'so entwined with governmental policies or so impregnated with a

governmental character as to become subject to the constitutional limitations placed upon state action.'" citing *Evans v. Newton*, 382 U.S. 296, 299 (1966).

In a case very much on point to this one, *Adams v. Vandemark*, 855 F.2d 312, 316-17 (6th Cir. 1988), the Sixth Circuit held that a private corporation did not act under color of state law when it discharged two employees in retaliation for exercising their First Amendment rights, notwithstanding fact that the corporation leased, at nominal rate, office space from the city. See also *National Broadcasting Co. v. Communications Workers of America*, 860 F.2d 1022, 1028 (11th Cir. 1988)(rejecting NBC's argument that the defendant engaged in state action when it prohibited NBC from attending a convention in a civic center that the defendant had leased from the city). See also *Lattibeaudierre v. AMR Servs. Corp.*, No. CV 95 5269, 1996 WL 518076, at *3 (E.D.N.Y. Sept. 3, 1996) (airline baggage handling company that leased space from JFK airport was not state actor); *Fisher v. Silverstein*, 2004 WL 1933610 (S.D.N.Y.. 2004) (Scheindlin, J)(lessee of property from Port Authority at the World Trade center site was not state actor). *Benn v. Universal Health Sys., Inc.*, 371 F.3d 165, 173 (3d Cir.2004) (rejecting entwinement theory because plaintiffs had not alleged that the state was entwined with defendants "in any comparable sense" to the defendants in *Brentwood* ); *Logiodice v. Trustees of Maine Cent. Inst.*, 296 F.3d 22, 28 (1st Cir.2002) (no entwinement because defendant's day-to-day operations were managed by private citizens); *Tomaiolo v. Mallinoff*, 281 F.3d 1, 9 (1st Cir.2002) (the "classic indicia of entwinement, much less pervasive entwinement" were missing because there was no evidence that the state supported the private decision taken, that there was an allocation of traditional state functions to private entities, or that the government was the real actor behind a private facade); *Szekeres v. Schaeffer*, 304 F.Supp.2d 296, 307 (D.Conn.2004) (no pervasive entwinement because there was no indication that the state was entwined in private

entity's management); *Koerner v. The Garden Dist. Ass'n,* No. Civ. A 00-2206, 2002 WL

31886728, at *7 (E . D. La. Dec. 23, 2002) (no entwinement because plaintiff did not allege that

the state exercised coercive power or provided significant encouragement).

See also *American Manufacturers Mutual Insurance Co. v. Sullivan,* 526 U.S. 40

(1999)(when state law authorizes action by private insurers to suspend benefits but does not

compel it, no state action since no compulsion by state to private party to take action); *Hudgens*

*v. NLRB,* 424 U.S. 507 (1976)(when private shopping center refused to allow demonstrators on

its property, no state action since no compulsion or close supervision by state); *Flagg Brothers v.*

*Brooks,* 436 U.S. 149, 164 (1978) (finding that utilization of warehouseman's lien by private

party to seize property not state action; "Mere approval of or acquiescence in the initiatives of a

private party is not sufficient to justify holding the State responsible for those initiatives under

the terms of the Fourteenth Amendment") *Yanaki v. Iomed, Inc,* 415 F.3d 1204 (10th Cir.

2005)(misuse of state law by private individual to gain access to home did not involve state

action); *Collyer v. Darling,* 98 F.3d 211 (6th Cir. 1996)(doctor who examined state employees

to determine fitness for duty were not state actors); *Landry v. A-Able Bonding, Inc.,* 75 F.3d 200

(5th Cir. 1996)(bail bondsman making arrest of fleeing defendant to exonerate bail not state actor

since no involvement by law enforcement officers); *Logan v. Bennington College Corp.,* 72 F.3d

1017 (2d Cir. 1995) (private college not state actor because it entered into private conciliation

agreement with state agency to follow certain policies with respect to charges of sexual

harassment, which policies were invoked in decision to fire professor); *Fred Meyer, Inc. v.*

*Casey,* 67 F.3d 1412 (9th Cir. 1995)(no state action where state court requires private property

owners to allow private persons on property to collect signatures for referendum; still no state

action); *Hodges v. Yonkers Racing Form,* 918 F.2d 1079 (2d Cir. 1991)(Yonkers Racing

Corporation licensed by state to conduct parimutuel wagering not state actor when it denied candidate's application to work at racetrack); *Lawline v. American Bar Association*, 956 F.2d 1378 (7th Cir. 1992)(private bar group recommends rules to regulate lawyers, which may or may not be adopted by state court; no state action); *Hunt v. Steve Dement Bail Bonds, Inc.*, 914 F.Supp. 1390 (W.D. La. 1996)(bail bondsman not state actor in entering home to search for fugitive); *Hannah v. Metro-North Commuter RR Co.*, 753 F. Supp. 1169 (S.D.N.Y. 1990)(firing of employee by transportation company established under public authority law, no state action).

To the extent that Petitioners argue that operating a heliport is "traditionally an exclusive function of the state," they are wrong. The issue is not whether the operator of a heliport is a state actor, but what action of the operator is being challenged, as noted above. If the action at issue is the rate that is being charged for operators, such action is not the concern of the state, as shown in the Permit between APH and HRPT. In any event, all aspects of airport operations are not "the exclusive function of the state." See *Wagner v. Metropolitan Nashville Airport Authority*, 772 F.2d 227 (6th Cir. 1985)(airport security personnel not state actors if not federal employees and if not specifically required to take certain actions by federal regulations).

There can be no doubt that operating a heliport is not a traditional function of the state nor is it the exclusive prerogative of the State. There are thousands of private heliports around the country -- indeed the vast majority of helicopter operations are conducted at private facilities -- utilized by corporations, medical facilities, forest rangers, utility companies, news organizations, law enforcement, oil riggers and resorts.[6] The operation of privately operated

---

[6] New York State has a special procedure for applying for permission to operate a privately owned heliport, indicating the large number of situations where such heliports are established. See Joseph Geller, "Commuting by Helicopter: Avoid Landing in Court," 14 J. *Suffolk Acad. L.* 125 (2000)

heliports, particularly with respect to charges to helicopters operators, cannot be considered "traditionally the exclusive prerogative of the State."

Nowhere does the complaint allege that HRPT ordered, encouraged or authorized the alleged increase in rates. All that Plaintiffs argue is that HRPT had knowledge and allowed the differential in rates. Whether or not that is the basis for an Article 78 proceeding, it does not make APH a state actor. See *Roberts v. Cameron-Brown Co.*, 410 F.Supp. 988, 994 (S.D. Ga. 1975):

> With regard to plaintiff's Fourteenth Amendment contention, this Court is of the opinion that state involvement in this case is insufficient to justify a finding of state action. Plaintiff apparently relies on the fact that Ga.Code Ann. s 67-1506 Permits non-judicial foreclosure sales, and thus plaintiff contends that this statutory permission alone is sufficient state action to invoke the Fourteenth Amendment. However, although the Supreme Court has never ruled on this precise question, the vast majority of federal courts including the district courts for the Northern and Middle Districts of Georgia, have held that *no state action exists when a state statute merely allows the activity complained of to occur.* (emphasis added).

Nor can there be any "entwinement" between APH and the State since the decision to raise rates was APH's alone, and such raises were allowed under the original Permit. "The operator [APH] shall have the right, from time to time, to amend any item of such Schedule of Charges, to make increases or decreases therein and to add or delete additional items thereto upon fifteen days prior notice to Public and the Department." (Section 4). It also provides that the Operator shall "charge fair, reasonable and non-discriminatory prices for each unit of sales or services provided that the operator may make reasonable and non-discriminatory discounts, rebates or other similar types of price reductions to volume purchasers." (Section 34(b)). The Permit also specifies that the Agreement "constitutes the entire agreement of the Parties . . .may not be changed, modified or extended except by written instrument duly executed by the

Department and the Operator, and shall not confer upon any person or entity other than the parties hereto any rights or remedies hereunder." (Section 50).

For a state body to merely allow an activity to occur does not convert the activity into state action, so long as the state body was not a willful participant in the specific action complained of . See *Benn v. Universal Health System, Inc.*, 371 F.3d 165, 171-172 (3d Cir. 2004) (mental health professionals at private mental health care facility were not state actors by virtue of their involvement in an application to involuntarily commit plaintiff for examination, even though state law Permits a physician or other "responsible party" to file an application for an emergency examination, because state law does not compel or even significantly encourage the filing of an application and defendants did not operate as "willful participants in joint activity with the state or its agents" (citations omitted); *E.F.W. v. St. Stephen's Indian High School*, 264 F.3d 1297, 1306 (10th Cir. 2001) (actions of employees of tribal agency that removed Indian child from her mother's custody and placed child in psychological care facility as a suicide risk, was not taken under the color of law despite fact that tribe had agreement with state under which the state furnished funds to tribal social services agency to provide help to reservation children, and it agreed to use state rules and regulations since tribes merely exercised their sovereignty in deciding what law would govern their actions); *Hack v. President and Fellows of Yale College*, 237 F.3d 81, 83-84 (2d Cir. 2000) (although Yale was created by special state law to further governmental objectives and both governor and lieutenant governor were ex officio board members, because the latter served as only two of 19 board members and there was no evidence that the state controlled the board, Yale is not a state actor; even if the two government officials attended every board meeting and vigorously participated, it is clear that the state could not control Yale's policies and operations); *Logan v. Bennington College Corp.*, 72 F.3d 1017, 1027-

1028  (2d Cir. 1995) (although college professor was discharged pursuant to sexual harassment policy adopted in part as result of conciliation agreement with state Human Rights Commission, state agency had no involvement in case and its action in terminating professor was in no way dictated by state law or state actors and thus there was insufficient nexus between agency and termination to warrant finding of state action); *LeBlanc-Sternberg v. Fletcher,* 67 F.3d 412, 433 (2d Cir. 1995) (efforts of private individuals in circulating petitions for referendum to incorporate community so as to discourage settlement of orthodox and Hasidic Jews was not state action; circulation of petitions for referendum is typically carried out by private persons in their individual capacities and does not meet *Lugar* test); *Wolotsky v. Huhn,* 960 F.2d 1331, 1336-1337 (6th Cir. 1992) (although private mental health facility derives significant portion of its funds from government, is subject to significant state regulation, is under public contract with state, and it previously leased one of its facilities from state at nominal fee, district court correctly found that facility was not state actor for purposes of § 1983); *Bond v. Dentzer,* 494 F.2d 302 (2d Cir. 1974)(filing of wage assignments with debtor's employer was not state action, even if Permitted by state law). See also *Roberts v. Cameron-Brown Co.,* 410 F.Supp. 988, 994 (S.D. Ga. 1975) (state foreclosure law which Permits non-judicial foreclosure sales, no state action when law invoked; "no state action exists when a state statute merely allows the activity complained of to occur.")  See also cases in APH's OpenMemo at 9-15.

    Plaintiffs add sixteen new paragraphs to attempt to assert state action. (pars. 109-124) They allege that the right to operate the Heliport "has its source in state authority" (par. 109), that the heliport is "public" and is involved in "some aspects of its operations." (par. 111). They also allege that the HRPT approves certain matters relating to FAA regulations (par. 123) and

that APH and HRPT have "enjoyed a long-standing, mutually beneficial . . . relationship" (par. 118).

None of these additional paragraphs change the legal landscape. The only issue on this motion is whether the *particular actions complained of in this case* were approved by, compelled by, or actively or willfully participated in, by HRPT. FAA approval of airspace is not an issue in this case. The actions complained of here were increases in rates, alleged discriminatory pricing and the termination of Plaintiffs' right to conduct helicopter operations at the Heliport because of its violation of a settlement agreement between the parties. (All of these issues are also contained in a complaint previously filed in the State courts, and defendants had raised a *Colorado River* abstention issue in its opposition to the motion for a preliminary injunction. The state court has recently denied a motion for a preliminary injunction filed by plaintiffs, precisely the same relief as that requested here by plaintiffs.)

There is no allegation in the complaint that HRPT did anything other than follow the requirements of the Permit, which allowed APH on its own to increase rates and which gave no right to any third party to claim any rights under the Permit. (Section 50). None of the additional allegations change that essential fact. That the HRPT did nothing to roll back the rates does not convert the original decision (made solely by APH) into state action.

Thus there is no state action present in this situation.

## II.   NO CONSTITUTIONAL CLAIM WILL LIE IN THIS SITUATION

Plaintiffs make no effort to amend its constitutional claims, except for the equal protection claim. Plaintiffs add paragraphs 213-214, 218, and 220-225 to bolster its original complaint. Of course, if there is no state action, there cannot be any equal protection claim. But

even if state action were to be found here, the equal protection claim will not lie, nor will the other claims.

The only basis for an equal protection violation is a "class of one" claim.[7] Plaintiffs' new allegations simply repeat allegations asserted elsewhere in their amended complaint. They assert that they have suffered damage because of alleged discriminatory pricing and that the discrimination was the result of a retaliatory animus. (pars. 214, 220).

None of these allegations alter the defect in the equal protection claim. No "class of one" allegation can be upheld except in extreme situations. The Second Circuit has established an extremely high burden before a "class of one" equal protection claim can be accepted. It noted in *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006):

> We have held that class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves. . . . . Accordingly, to succeed on a class-of-one claim, a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.

In a series of cases, differential treatment of third parties in terms of rates or prices or government benefits have not satisfied the "class of one" test. In a leading Second Circuit case, *Consolidated Edison of New York, Inc. v. Pataki*, 292 F.3d 338, 345 (2d Cir. 2002), the New York legislature had passed a law denying Consolidated Edison the right to recover from its ratepayers certain costs associated with closing the Indian Point Nuclear Facility. The utility argued that the law violated the Bill of Attainder clause since it amounted to punishment. While the Court upheld that possibility of that claim, it expressed doubt as to an equal protection violation under the "class of one" principle.

---

[7] There was no fundamental right involved or any class protected by heightened scrutiny.

We thus do not decide whether Chapter 190 violates the Equal Protection Clause, which supplied one basis for the district court's injunction. We are skeptical, however, that the Clause would require invalidation of Chapter 190: "[M]ere under-inclusiveness is not fatal to the validity of a law under ... equal protection[,] even if the law disadvantages an individual or identifiable members of a group." *Nixon v. Adm'r of Gen. Servs.,* 433 U.S. 425, 471 n. 33, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977) (internal citations omitted). To be so invalidated, the classification must have "no rational basis," *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000), and we doubt that the present statute meets that standard.

Elsewhere the Second Circuit has noted that to succeed on an equal protection claim, a plaintiff must show that a state actor (not present here) "intentionally singled out [the plaintiff] for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose -- whether personal or otherwise -- is all but certain." *See Neilson v. D'Angelis,* 409 F.3d 100, 104 (2d Cir.2005).

In a case similar to this one, *SeaAir New York, Inc. v. City of New York,* 250 F.3d 183, 188 (2d Cir. 2001), the city restricted sightseeing flights by seaplanes around the city. The city claimed that because helicopters were not as restricted, there was an equal protection violation. The Second Circuit rejected that argument.

SeaAir's equal protection argument, although never clearly set forth on appeal, seems to rely on the noise differences between seaplanes and helicopters to claim that the City's restriction unfairly discriminates against seaplanes. SeaAir makes much of the fact that the district court mistakenly stated that seaplanes add more to ambient noise levels than do helicopters. However, given that helicopters do not even operate from the seaplane base and that, . . . the City has restricted helicopter sightseeing tours as well as seaplane tours in pursuit of a general policy against air tourism, we fail to see how the district court's mistake impacts the inevitable conclusion that there has been no equal protection violation here.

The Second cause of action contains a claim under substantive due process. (pars. 226-234) Under no circumstances can APH's actions be considered a violation of NYHC's substantive due process rights. To state a substantive due process claim, a party must point to wholly arbitrary governmental conduct (not present here) that was "an exercise of power without

any reasonable justification" that "shocks the conscience." *County of Sacremento v. Lewis*, 523

U.S. 833, 846-47 (1998). Such conduct must be "arbitrary, conscience-shocking or oppressive in

a constitutional sense," *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995). See

also *SeaAir New York, Inc. v. City of New York*, 250 F.3d 183 (2d Cir, 2001)(restricting

sightseeing flights by seaplanes did not violate substantive due process rights of sightseeing

company). Nothing alleged in the complaint comes close to the standard quoted above.

A third claim is that APH violated NYHC's procedural due process rights by imposing

rate increases without a hearing. (Third cause of action, pars. 235-248). But such a right depends

upon the showing that NYHC had a property right to lower rates, which it cannot show. Plaintiffs

have no "property right" in any particular rate, nor do they have a "property right" to remain as a

helicopter operator based on the agreement it entered into with APH. The Second Circuit pointed

out that a person has a "property interest" in an entitlement from a state actor only when the state

actor "has virtually no discretion to deny the" request. *Clubside, Inc. v. Valentin*, 468 F.3d 144,

154 (2d Cir. 2006). Where there is no state actor (as in this case) and no entitlement of any kind

to any rate based on any state law or regulation, there cannot be any deprivation of any property

right. The Permit expressly denies any third party the right to challenge any action taken under

the permit (Section 50). Since state law provides the basis for any property right and state law

denies any such right in this case, there cannot be any due process claim.

Further, to succeed on a due process claim there must be a showing that some process is

due the plaintiff. It is well-established that changes in rates do not require a hearing even if a

state actor is involved. The Ninth Circuit explained in *Lake Mohave Boat Owners Assoc. v.*

*National Park Service*, 78 F.3d 1360, 1369 (9th Cir. 1996):

> However, to maintain a due process claim, LMBOA must show that existing rules and
> regulations give its members a legitimate claim of entitlement to low marina rents. . . .

We hold that general statutory language indicating a governmental purpose to provide parks for the public does not meet this requirement. We also hold that the requirement in § 20b that rates be "reasonable" does not give LMBOA a statutory entitlement to low marina rates.

Thus no claim will lie under Section 1983

## III.    NO CLAIM WILL LIE UNDER THE AIRLINE DEREGULATION ACT

Plaintiffs have cut down their previous assertions under the Airline Deregulation Act (49 U.S.C. § 41713(b)(1)) and indeed seek no relief under the Fifth Cause of Action (see prayer for relief). In any event, the ADA broadly removed rate-setting authority by the Civil Aeronautics Board in order to allow air transportation services to be subject to "competitive market forces. " See *Morales v. Trans Word Airlines,* 504 U.S. 374, 378 (1992). One clause of the law (49 U.S.C § 41713(b)(1) was inserted "to ensure that the States would not undo federal deregulation with regulation of their own." *Id* Congress achieved this goal by adding the following language; "A *State, political subdivision of a State or political authority of at least two states* .may not enact or enforce a law, regulation or other provision having the force and effect of law, related to the price, route or service of an air carrier." (emphasis added)

On the face of the statute, that law has no application here.

First, APH is not a state actor and therefore is not subject to any of the ADA's provisions. (See discussion in Point I)

Second, there is no law, regulation or other provision having the force of law at issue here. The HRPT and APH have a permit (a contract to operate) that applies only to the parties to the agreement, as noted above.

Third, the purpose of the ADA is to insure that private airlines have the ability to set their own rates, charges, routes and services without interference by local government. What is at issue here is the decision by a private entity (APH) to set rates as it chooses without interference

27

by government -- exactly the purpose of the law. The permit follows that direction precisely by allowing APH to set its own rates. Plaintiffs are turning the statute on its head by claiming that federal courts have the ability to investigate the terms of a contract between two entities and determine its proper meaning and scope, at the behest of a third party who has no rights under the contract.

Each of these issues will be discussed in turn

A.    Since APH is not a State Actor It Cannot be Sued under the ADA

The lack of state action is discussed above in Point I.

B.    The Private Contract between APH and HRPT Does Not Qualify as a
      Regulation or Other Provision Having the Force of Law.

The contract at issue here (which Plaintiffs seek to "preempt") was entered into between two parties and applies to no one else, as the Appellate Division recently held (see discussion above at p.6, n. 2) The ADA simply does not apply under those circumstances. Plaintiffs completely misread the law when they claim that "the Airline Deregulation Act preempts any *state action* which relates to the 'price, route, or service of an air carrier.'" (A.Cpl. par. 264) (emphasis added). The only state action preempted is a "a law, regulation or other provision having the force and effect of law," not any individual action taken by a state agency, including the entering into a contract with a private party which contract affects only their rights.

The Supreme Court noted in quite broad language in *American Airlines v. Wolens*, 513 U.S. 219, 229 n. 5 (1995) that contracts are not within the preemptive language of the law:

> the word series " law, rule, regulation, standard, or other provision," as the United States suggests, " connotes official, government-imposed policies, not the terms of a private contract." [Brief of the United States as Amicus Curiae] at 16. Similarly, the phrase " having the force and effect of law" is most naturally read to " refe[r] to binding standards of conduct that operate irrespective of any private agreement." *Ibid.* Finally, the ban on enacting or enforcing any law " relating to rates, routes, or services" is most sensibly read, in light of the ADA's overarching deregulatory purpose, to mean " States may not

seek to impose their own public policies or theories of competition or regulation on the operations of an air carrier." *Ibid.*

The Court explained: "A remedy confined to a contract's terms simply holds parties to their

agreements -- in this instance, to business judgments an airline made public about its rates and

services." 513 U.S. at 229. Citing similar language in another statute, the Court noted: " [A]

common-law remedy for a contractual commitment voluntarily undertaken should not be

regarded as a ' requirement ... *imposed under State law*' within the meaning of [Federal

Cigarette Labeling and Advertising Act] § 5(b)." ), citing *Cipollone v. Liggett Group, Inc.,*

(plurality opinion) (1992). The Court continued in the same vein: "The FAA's text, we note,

presupposes the vitality of contracts governing transportation by air carriers. Section 411(b), 49

U.S.C.App. § 1381(b)." *Id* at 230. Finally it held:

> Nor is it plausible that Congress meant to channel into federal courts the business of
> resolving, pursuant to judicially fashioned federal common law, the range of contract
> claims relating to airline rates, routes, or services. The ADA contains no hint of such a
> role for the federal courts." *id* at 231.

Although the contract claim at issue in *Wolens* was between an airline and its passengers,

the language in the Court's opinion encompasses any contract between two parties that affects

only their rights. A "regulation or other provision having the force and effect of law' affects

everyone's rights that come within the scope of its provisions. A contract is binding only on the

parties, and indeed, no person can claim rights under the contract involved in this case, as the

First department just held. Thus enforcement and application of the "contract" involved here is

simply not preempted by the ADA.

See also *Travel All over the World v. Kingdom of Saudi Arabia and Saudi Arabian

Airlines,* 73 F.3d 1423, 1432 (7th Cir. 1996): "Thus, as in *Wolens*, the plaintiffs here are not

alleging a violation of a state-imposed obligation, but rather are contending that the airline

breached a self-imposed undertaking. The terms and conditions in the contract between Travel

All and Saudia are 'privately ordered obligations' and therefore do not amount to a State's

enactment or enforcement of law."

The only time a contract claim can be preempted pursuant to the Airline Deregulation Act

is if a breach of contract claim would somehow effect the "price, route or service" of an air

carrier generally, not merely the relationship between two parties.

> Finally, Smith's contract claim must be held to be preempted under the ADA because of
> its practical effect on federal law in this area. If passengers could challenge airlines'
> boarding procedures under general contract claims alleging failure to transport, we would
> allow the fifty states to regulate an area of unique federal concern – airlines boarding
> practices.

*Smith v. Comair, Inc.*, 134 F.3d 254, 258-59 (4th Cir. 1998).

In their previous submissions Plaintiffs had  cited *Alaska Airlines, Inc. v. City of Long*

*Beach*, 951 F.2d 977 (9th Cir. 1991) which involved an *ordinance* passed by the city of Long

Beach, California,  restricting noise levels at the local airports, not an individual contract. The

noise level requirements were upheld but the restriction on certain flights was struck down

pursuant to the terms of the ADA. In *SeaAIR N.Y., Inc v. City of New York*, 250 F.3d 183 (2d Cir.

2001), the City had passed a *regulatory code* restricting seaplanes that utilized the city owned

facility at the East 23d Street seaplane base from conducting sightseeing tours.  The Second

Circuit found (1) that the operations of the Plaintiff did not fall within the protection of the ADA

(since it was not an interstate carrier); and (2) that in any event the restriction imposed by the city

was a reasonable exercise of its proprietary functions. Thus in both of these cases a *law* was

passed that restricted airline *operations*, not a freely negotiated contract.

Defendant cannot find a single case where a *contract* with a state entity was found to fall

within the scope of the ADA's preemption language as a "law, regulation, or other provision

having the force and effect of a law." The cases applying the law focus on laws, regulations or general legal principles that would apply across the board to many consumers of the airlines, not merely a conrtact dispute between two entities. See *American Airlines Inc. v. Department of Transportation*, 202 F.3d 788 (5th Cir. 2000)(attack on Dallas and Ft. Worth ordinance restricting operations at Love Field); *Hoagland v. Town of Clear Lake, Indiana*, 415 F.3d 693, 698 (7th Cir. 2005)(challenge to town ordinance that placed heliport within restrictive zoning provisions; court noted that preemption doctrine in law generally "involve[s] issues which reach beyond a single local jurisdiction"); *New Hampshire Motor Transport Association v. Rowe*, 448 F.3d 66 (1st Cir. 2006)(challenge to Maine Tobacco Delivery Law because requirements of minimizing access to tobacco by minors would effect delivery of other parcels by airlines). See also *Witty v. Delta Air Lines*, 366 F.3d 380, 383 (5th Cir. 2004)(permitting law suit on leg room would effect prices on airlines generally and is thus preempted by ADA: "Insofar as plaintiff Witty in the pending case alleges that Delta should have provided more leg room, we hold that such a requirement would inexorably relate to prices charged by airlines . . . Since requiring more leg room would necessarily reduce the number of seats on the aircraft, such a requirement would impose a standard "relating to a price" under § 41713(b)(1), and is accordingly preempted by the ADA. Section 41713(b)(1) not only preempts the direct regulation of prices by states, but also preempts indirect regulation "relating to" prices that have "the forbidden significant effect" on such prices."

There are many cases holding that contract actions between two parties are not covered by the ADA. See *Lyn-Lea Travel Corp. v. Amercian Airlines, Inc.*, 293 F.3d 282 (5th Cir. 2002)(dispute over travel agent booking contract not preempted by ADA); *Skydive Factory, Inc. v. Maine Aviation Corp.*, 268 F.Supp.2d 61 (D. Me. 2003)(dispute over maintenance and

31

inspection contract not preempted by ADA); *DeTerra v. American West Airlines, Inc.*, 226 F.Supp.2d 274 (D.Mass. 2002)(dispute over passenger contract arising over failure to board particular flight, not preempted by ADA);   *Seals v. Delta Airlines, Inc.*, 924 F.Supp. 854 (E.D. Tenn. 1996)(dispute over contract to provide ground transport between gates at airport not preempted).

This dispute concerning the heliport Permit and the settlement agreement between APH and New York Helicopter is not preempted by the law in question.

## IV.    THERE IS NO CLAIM UNDER THE COMMERCE CLAUSE

Plaintiffs also seek to assert a private cause of action directly under the Commerce Clause (pars. 267-279).  The claim focuses on alleged excessive fees and plaintiffs' eviction from the heliport, the subject matter of Justice Cahn's recent decision denying their motion for a preliminary injunction. No such claim can possibly be asserted since APH is not a state actor. See *Oregon ex rel. Department of Ttransportation  v. Heavy Vehicle Electronic License Plate, Inc.* , 198 F.Supp.2d 1202, 1210  (D. Oreg.2002): "Because HELP is not a state actor, plaintiffs' request for a declaration that its agreements with its carriers are void as an undue burden on interstate commerce must be denied." Under no circumstances can a single action toward a single customer be considered a violation of the Commerce Clause.  See *Ileto  v. Glock, Inc.*, 349 F.3d 1191, 1217  (9th Cir. 2003): "Dormant Commerce Clause claims are brought against a state law or regulation. 'In order to establish a claim under the so-called dormant Commerce Clause [Defendants] must show that the state law or regulation in question penalizes interstate commerce, and does so without sufficient economic justification.' *National Audubon Soc'y, Inc. v. Davis,* 307 F.3d 835, 857 (9th Cir.), *amended on denial of reh'g en banc,* 312 F.3d 416 (2002)." *C. & A. Carbone v. Town of Clarkstown* , 511 U.S. , 383, 390 (1994): The central

rationale for the rule against discrimination is to prohibit *state or municipal laws* whose object is local economic protectionism, laws that would excite those jealousies and retaliatory measures the Constitution was designed to prevent" (emphasis added).

Furthermore, the courts have held that "[t]here is no private action for damages under the Commerce Clause." *Washington v. United States Tennis Association,* 290 F.Supp.2d 323, 329 (E.D.N.Y.2003)

## V.     CLAIMS SIX THROUGH TEN MUST BE DISMISSED SINCE FEDERAL COURTS WILL NOT EXAMINE CLAIMS BROUGHT UNDER CPLR ARTICLE 78

All of the claims against HRPT (with or without APH as a necessary party) must be dismissed. First, if the federal claims fall, then all the ancillary state law claims must also fall. See *Motorola Credit Corp. v. Uzan,* 388 F.3d 39, 56 (2d Cir.2004) ( " '[I]f [all] federal claims are dismissed before trial ..., the state claims should be dismissed as well.'"

Second, all of the state law claims are in the nature of Article 78 proceedings. Thus the Sixth Cause of Action seeks a declaration that HRPT was required to initiate a competitive process to find a new fixed base operator (FBO), that is, it acted improperly in continuing to allow APH to operate the Heliport after March 25, 2006. The Seventh Cause of Action asserts that HRPT was required to obtain board approval for each extension, again an attack upon the operations of a state agency that falls within the scope of Article 78. The Eighth Cause of Action asserts that HRPT acted "arbitrarily and capriciously" in settling a law suit against APH, precisely the language of Article 78. The Ninth Cause of Action states that HRPT needed board approval before settling its claims with APH, again an attack on the legality of a state agency's action, falling within the scope of Article 78. And the Tenth Cause of Action seeks an requiring that Plaintiffs be immediately reinstated to the heliport, rlief that has already been denied them in

state court. All of these claims track the language of an Article 78 proceeding which prohibits

"arbitrary and capricious" actions by any state agency.

But it is fundamental that federal courts (except in very limited circumstances not present

here) will not hear an Article 78 proceeding even if supplemental jurisdiction were properly

asserted (which does not exist here).  Judge Cote explained the rationale in a recent decision.

> Even assuming that a federal district court could properly exercise supplemental
> jurisdiction over an Article 78 claim, the court has "discretion under 28 U.S.C. § 1367(c)
> to determine whether to hear th[ose] claims." *Briarpatch Ltd., L.P. v. Phoenix Pictures,*
> *Inc.,* 373 F.3d 296, 309 (2d Cir.2004). Section 1367 provides that a court "may decline to
> exercise supplemental jurisdiction" if there are "compelling reasons for declining
> jurisdiction." 28 U.S.C. § 1367(c), (c)(4).
>
> The very nature of an Article 78 proceeding presents such compelling reasons.
> "An Article 78 proceeding is a novel and special creation of state law, and differs
> markedly from the typical civil action brought in [federal district court] in a number of
> ways." *Lucchese v. Carboni,* 22 F.Supp.2d 256, 258 (S.D.N.Y.1998). It is a "purely state
> procedural remedy," *Camacho v. Brandon,* 56 F.Supp.2d 370, 380 (S.D.N.Y.1999),
> "designed to accommodate to the state court system." *Herrmann v. Brooklyn Law Sch.,*
> 432 F.Supp. 236, 240 (E.D.N.Y.1976). Because accepting supplemental jurisdiction over
> such claims requires a federal court to "usurp the statutory authority bestowed upon the
> New York state courts," *Adler v. Pataki,* 204 F.Supp.2d 384, 396 (N.D.N.Y.2002)
> (citation omitted), "federal courts are loath to exercise jurisdiction over Article 78
> claims." *Birmingham v. Ogden,* 70 F.Supp.2d 353, 372 (S.D.N.Y.1999).

*Morningside Supermarket Corp. v. New York State Department of Health,* 432 F.Supp.2d 334,
346  (S.D.N.Y. 2006)

The Court found only two cases where a federal court did exercise such jurisdiction

> Only two cases were located by the Court in which a federal court exercised
> jurisdiction over an Article 78 claim. In one, the Second Circuit affirmed the district
> court's exercise of jurisdiction pursuant  to the All Writs Act, 28 U.S.C. § 1651(a), as
> "necessary to protect the integrity" of a consent decree previously entered by the district
> court. *Yonkers Racing Corp. v. City of Yonkers,* 858 F.2d 855, 865 (2d Cir.1988). In the
> other, a district court distinguished (but did not question) its own previous ruling that it
> "did not have the power to exercise jurisdiction over the Article 78 claim" after
> defendants consented to jurisdiction. *Cartagena* [*v. City of New York*]*,* 345 F.Supp.2d
> [414] at 426 [S.D.N.Y. 2004. Both courts acknowledged that the cases presented
> exceptional circumstances. *See Yonkers,* 858 F.2d at 864 ("[W]e agree with the district

court that this is indeed an exceptional case."); *Cartagena,* 345 F.Supp.2d at 426 (noting the "unusual circumstances of this case").

Federal courts in New York agree that "Article 78 proceedings were designed for the state courts, and are best suited to adjudication there." *Lucchese,* 22 F.Supp.2d at 258. Moreover, "state law does not permit [these] proceedings to be brought in federal court." *Beckwith,* 413 F.Supp.2d at 227. These are compelling reasons to decline supplemental jurisdiction over Morningside's third cause of action, and there is nothing exceptional about Morningside's claim that would justify deviation from the well-reasoned and essentially unanimous position of New York district courts on this issue.

*Id.* at 346-47.

Finally, Article 78 has a very short statute of limitations, namely four months. See CPLR § 217. All of the actions complained of occurred in 2006 or the Spring of 2007 and thus are barred by the limitations period.

### CONCLUSION

For the reasons stated above, the complaint in this action should be dismissed for failure to state a claim on which relief can be granted.

Dated:  New York, N.Y.
        January 18, 2008

        _____
        Leon Friedman (LF#7124)
        148 East 78th Street
        New York, N.Y. 10021
        (212) 737-0400
        Attorney for Defendant
        Air Pegasus Heliport, Inc.

Of counsel
        Christopher P. Gengaro
        Lentz & Gengaro