HANTMAN & ASSOCIATES
Robert J. Hantman, Esq. (RH-3947)
1414 Avenue of the Americas Suite 406
New York, New York 10019
Telephone:     (212) 684-3933
Facsimile:      (212) 755-1989

*Attorneys for Plaintiff*
*New York Helicopter Charter, Inc.*
*and Michael Roth.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
NEW YORK HELICOPTER CHARTER INC., and
MICHAEL ROTH, individually,

                                                                    07 CIV. 4069(MGC)

                          Plaintiffs,

    -against-

AIR PEGASUS HELIPORT, INC., and
HUDSON RIVER PARK TRUST,

                          Defendants.
-------------------------------------------------------------X


### MEMORANDUM OF LAW IN OPPOSITION
### TO THE MOTION TO DISMISS FILED BY DEFENDANTS
### AIR PEGASUS HELIPORT INC. AND HUDSON RIVER PARK TRUST

## TABLE OF CONTENTS

Page No.

I. PRELIMINARY STATEMENT……………………………..    5

II. POINT I. THERE IS A BASIS FOR FEDERAL
    JURISDICTION IN THIS CASE SINCE THE
    FACTS CONTAINED IN THE AMENDED COMPLAINT
    CONSTITUTE STATE ACTION AND VIOLATE THE
    CONSTITUTION…………………………………………..    7

    1.  HRPT is a State Actor…………………………….    7

    2.  APH is a State Actor because of the entwinement
        between APH and HRPT and the actions complained
        herein have no rational justification………………..    9

    3.  The Supreme Court Tests for what constitutes State
        Action indicate that APH and HRPT are state actors    12

    4.  APH made an admission against interest admitting that
        HRPT and APH are state actors………………………    15

III. POINT II. PLANTIFFS' HAVE PLEADED THEIR
     CONSTITUTIONAL CLAIMS PROPERLY…………………..    16

    1.  Plaintiffs' have pleaded a claim for violation of
        the Equal Protection Clause under the
        "class-of-one" theory…………………………………..    16

    2.  Plaintiffs' have properly pleaded a claim for
        violation of Due Process……………………………….    19

        a.    NYH has a property interest entitled to due
            process protection…………………………….    21

        b.    APH's discriminatory actions are depriving
            NYH of its property interest without due process of
            law, thereby causing irreparable injury………    22

IV. POINT III. PLAINTIFFS HAVE STATED A CLAIM UNDER
    THE COMMERCE CLAUSE …………………………………    24

V. CONCLUSION……………………………………………..    25

# TABLE OF AUTHORITIES

Page No.

*Lugar v. Edmondson Oil Co.,*
457 U.S. 922, 939 (1981)……………………………………….....    5

*Burton v. Wilmington* Parking Auth.,
365 U.S. 715, 722 (1961)………………………………………...    7

*British Airways Bd. v. Port Authority of New York*
*558 F.2d 75, 84 FN2 (1977)… … … … … … … … … … … … … … …..*    7

*Hecht v. Pro-Football, Inc.*
444 F.2d 931 C.A.D.C. (1971)…………………………………...    7

*PruneYard Shopping Center v. Robins,*
447 U.S. 74, 81-88 (1980)…………………………………………    13

*Jackson v. Metropolitan Edison Company*
419 U.S. 345 (1974)……………………………………………….    13

*Tancredi v. Metropolitan Life Insurance Company,*
149 F.Supp.2d 80 (S.D.N.Y 2001)……………………………….    13

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*
486 U.S. 492,499 (1988)…………………………………………...    14

Village of Willowbrook v. Olech,
528 U.S. 562, 564 (2000)………………………………………….....    15

*Sioux City Bridge Co. v. Dakota County,* (1923);
260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340……………………………..    16

*Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty.,*
488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688(1989)………………    16

*DeMuria v. Hawkes,*
328 F.3d 704 C.A.2 (2003)……………………………………………..    16

*Mitchell v. Cuomo,*
748 F.2d 804, 806 (2d Cir.)…………………………….……………    19

*Bray v. New York,* 2005 U.S. Dist.
LEXIS 21748, *26 (S.D.N.Y. 2005)……………………………………    19

3

*Mullane v. Central Hanover Trust Co.,*
339 U.S. 306, 314 (1950)……………………………………………    20

*Memphis Light, Gas & Water Division v. Craft,*
436 U.S. 1, 14 (1978)…………………………………………    20

*Board of Regents v. Roth,*
408 U.S. 564, 569-71 (1972)…………………………………………    21

*Women's Med. Prof. Corp. v. Baird,*
438 F.3d 595, 611 (6th Cir. 2006)…………………………    21

*Watson v. Kansas City, Kansas,*
185 F. Supp.2d 1191, 1203 (D. Kan. 2001) …………………..    21

*United States v. Tropiano,*
418 F.2d 1069, 1076 (2d Cir. 1969)…………………………..    21

*Schwartzberg v. Lefkowitz,*
480 F.Supp. 569, 574 (S.D.N.Y. 1979)…………………………    22

*Obstetrics & Gynecology v. Upper Merion Township,*
270 F. Supp.2d 633, 65 (E.D. Pa. 2003)……………………    22

*New York Airlines, Inc. v. Dukes County,*
623 F.Supp. 1435, 1443 (1985)……………………………    23

## I.    PRELIMINARY STATEMENT

This memorandum of law is submitted by plaintiffs' New York Helicopter Charter Inc. ("NYH"), and Michael Roth ("Roth"), in opposition to defendants' Air Pegasus Heliport ("APH") and Hudson River Park Trust's ("HRPT") motion to dismiss the amended complaint for lack of jurisdiction over the subject matter and for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b) (1) and 12(b) (6).

For the sake of brevity and judicial economy, plaintiffs' rely on the facts contained in the amended complaint filed herein on December 31, 2007 (with exhibits), plaintiffs' memorandum of law in opposition to APH motion to dismiss submitted herein on September 18, 2007, as well as the affidavit of NYH president Michael Roth with exhibits filed herein on September 18, 2007, and Plaintiffs' supplemental affidavit filed herein on October 11, 2007.

Defendant APH repeats their previous arguments that:  1) APH cannot be considered a state actor; 2) there are no constitutional violations, 3) no claim will lie under the Airline Deregulation Act, 4) there is no claim under the commerce clause, and that; (5) claims six to ten should be brought in state court under Art. 78.

HRPT claims that there is no subject matter jurisdiction in this action and that the state law claims against HRPT are without merit as a matter of law.  As will be discussed hereafter, the complaint, undisputed facts, and defendants' own admissions clearly establish that defendants are state actors, that they have violated the equal protection and due process clauses and whether their actions are irrational and "shock the conscience" is an issue of fact.

The amended complaint clearly states valid claims which are supported by the law as detailed hereafter while the declaratory relief is being sought to remedy plaintiffs' discriminatory, irrational, and capricious exclusion at the only public heliport open twenty four (24), hours seven days a week in New York City. As alleged in the amended complaint, the present operation of the heliport is discriminatory, capricious, unreasonable, and is affecting interstate commerce and the competitive landscape of the helicopter sightseeing and charter market. Furthermore, the acts referred to in the amended complaint provide further evidence of the entwinement between HRPT and APH.

Finally, while plaintiffs concede that the Airline Deregulation Act – alone- does not provide for a private right of action, it is respectfully submitted that defendants' actions – detailed in the amended complaint and contained in previously filed affidavits of Michael Roth- violate both the letter and spirit of the Airline Deregulation Act. Their actions constitute exactly the kind of conduct that the act was enacted to prevent and the fact that there is no private right of action only serves to emphasize the importance of obtaining the relief presently being sought so as not to "shield" defendants from their improper and unconstitutional acts which violate plaintiffs' rights and negatively have an impact on interstate commerce.

## II.    POINT I. THERE IS A BASIS FOR FEDERAL JURISDICTION IN THIS CASE SINCE THE FACTS CONTAINED IN THE AMENDED COMPLAINT CONSTITUTE STATE ACTION AND VIOLATE THE CONSTITUTION

### 1.    HRPT IS A STATE ACTOR

The state cases cited by HRPT in its memorandum stating that it is not a state actor are irrelevant for purposes of this motion because whether a private party is a state actor is an issue of fact. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1981). This explains, in part, why the state cases cited by HRPT holding that it is not a state actor are not reported decisions. The fact that HRPT was found not to be a state actor in those specific cases does not make HRPT a non state actor for all purposes. The law requires an analysis of the facts and circumstances of each case. *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 722 (1961).

Congress has the power to regulate who has access to airspace. *British Airways Bd. v. Port Authority of New York 558 F.2d 75, 84 FN2 (1977)*. The permit/agreement by which APH operates requires APH to: "furnish the services on a <u>fair, equal and non-discriminatory basis to all users</u> thereof…." [emphasis added]. Permit, § 34(b) (2).

HRPT clearly was aware of the discriminatory practices and engaged in conduct that allowed, encouraged and condoned the continuation of those practices. No State may effectively abdicate its responsibilities by either ignoring them or by merely failing to discharge them whatever the motive may be. *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 723-25 (1961). HRPT would have this court find that the entity charged with complying with federal law and statutes can delegate such authority to a "private entity" – which description is disputed- which can then flagrantly disregard federal rules with impunity and a carrier – such as NYH- has no recourse whatsoever.

In *Hecht v. Pro-Football, Inc.* 444 F.2d 931 C.A.D.C. (1971) a private company administering the Red Skins football stadium was considered a state actor. The case dealt with an action for violations of the Sherman Act against a professional football team, a professional football league, the management board of a stadium and others for the failure to allow other football teams to use the stadium. Although the instant case is not based in antitrust, the similarity of the delegation of power and the analysis of state action in *Hetch v. Pro Football supra* are applicable to this case.

Pro-football, Inc is the corporate name of the Washington Redskins. The stadium was constructed pursuant to an act of congress: the District of Columbia Stadium Act. The Act authorized the District of Columbia Armory Board to construct, **maintain and operate** a stadium suitable for holding athletic events. They were authorized to lease the facilities. They entered into a lease with Pro-football that allowed the use of the stadium for "school, college or other amateur or professional baseball, football and basketball games and, also, for such other use or purpose as the Lessor may determine, provided that at no time during the term of this Lease Agreement shall the Stadium be let or rented to any professional football team other than the Washington Redskins." *Id. supra.*

The court held that in some cases the state has either created or contracted with a corporate entity which became the state sole instrumentality in carrying out what clearly would otherwise be a governmental function. Congress empowered the Armory Board to construct, maintain, and operate Kennedy Stadium, it was empowering the Armory Board to do what another governmental agency, such as the Interior Department, which does own the land and the stadium itself, could have done as straight-forward federal governmental action, i.e., operate the stadium with full authority to rent to exhibitors of

8

football games.  As in the instant case, APH is the fixed based operator pursuant to a permit agreement with HRPT.  APH is managing a public heliport placed in public land and therefore APH is performing a function that a purely governmental agency itself could have performed.  Furthermore, the fact that HRPT is the successor in interest of the Department of Transportation in the permit speaks volume about its status as a state actor.

### 2.    APH IS A STATE ACTOR BECAUSE OF THE ENTWINEMENT BETWEEN APH AND HRPT AND THE ACTIONS COMPLAINED HEREIN HAVE NO RATIONAL JUSTIFICATION

Defendant APH states that the central issue is whether APH can be considered a state actor because it secured a permit from HRPT.  However, the permit is just one of the various elements that establish the entwinement between APH and HRPT.  The legal issue here is whether there is sufficient entwinement between the two entities so that there is a close nexus between the state and the challenged action.

The amended complaint names HRPT, a state actor, as a defendant in all claims and establishes the entwinement between the parties.

The amended complaint alleges that by settling the case with APH after discovering the discriminatory practices and by allowing the discriminatory practice to continue, HRPT became entwined with the conduct complained of. (A.Cmpl. ¶115, 117 and 119) The amended complaint specifically states that APH raised its prices in order to raise money required to repay HRPT for the settlement, arising out of APHs diversion of funds..  Before the settlement, there was only a charge of $1.50 per passenger that was collected by APH and payable to HRPT. After the settlement, APH, with the acquiescence and support of the HRPT, imposed an additional $10 fee per passenger. (A.Cmpl. ¶202-205) - 6.6 times the original passenger fee and had no correlation to

increased costs, improvements for the heliport, passenger safety or service. Furthermore, the entwinement goes beyond the joint efforts in the heliport operations since HRPT was aware of the discriminatory practices of APH and failed to protect the public. The Report of the Office of New York State Comptroller attached to the complaint states at page 5:

> The Trust is responsible for ensuring that Pegasus complies with Permit terms and operates the Heliport in a productive manner.
>
> However, our audit found that some of the additional fees that Pegasus imposed on carriers were questionable. For example, Pegasus initiated a Safety and Facility Enhancement (SAFE) fee following September 11, 2001, which we were told would provide increased security and related improvements to the Heliport....However, Pegasus could not show us any facility enhancements or improvement that it funded with SAFE fee collections[1].

Furthermore, HRPT totally disregarded the findings of its investigations of APH. Indeed, under the terms of the settlement (A. Cmpl. Ex. B), the HRPT went so far as to falsely "acknowledge" that it "has no knowledge that APH was in violation of any of the provisions of the Permit and, accordingly, APH is in good standing with the HRPT." Settlement Agreement at 4. In so doing, the HRPT violated its inherent statutory duties and fiduciary obligations to the public to resolve financial disputes on rational and reasonable terms that protect the public interest. Additionally, the HRPT had an obligation to remove parties who engaged in wrongdoing in violation of their government contracts. (A. Cmpl. ¶ 38-39.)

While the HRPT's violations of the law are to APH's benefit and to the detriment of the public and New York Helicopters, the wrongdoing did not end there. For more than a decade, pursuant to APH's 1996 permit to operate the Heliport (Ex. C), APH has

---

[1] The complaint refers to two audit reports, the first one annexed to the complaint as exhibit A details at page 20 some of the discriminatory practices. The second report, attached to the complaint as exhibit G is a report from the Comptroller, which elaborates on the findings of the first audit.

generated substantial revenues operating a heliport out of which is utilized by tourist, charter and recreational sightseeing helicopter operators. (A. Cmpl. ¶40-41.)

Notwithstanding the fact that the HRPT is a fiduciary of the public as the entity in charge of the public heliport, they did not object to the increase in spite of the fact that the permit states that the rates should be reasonable and non discriminatory. (A.Cmpl. ¶316). APH argues that NYH cannot assert any rights under the contract. However, NYH is part of the public, a beneficiary of the Hudson River Park Trust Act that gives the HRPT jurisdiction over the heliport. HRPT has the fiduciary obligation to protect the public and it violated that obligation.

Furthermore, the amended complaint alleges that the NYDOT went beyond its authority when it agreed that third parties could not assert any rights under the permit because the NYDOT was acting in a fiduciary capacity on behalf of the public when it signed the permit and therefore it could not give up a right it did not possess. (A.Cmpl. ¶85). Therefore, NYH is entitled to assert the right to non discriminatory policies not only under the commerce clause, due process clause and the equal protection clause but also under the permit.

While is true that the vast majority of operations are conducted at private facilities, there is no case that supports the broad proposition that a public heliport operator can discriminate with impunity, charge any price it desires, continue operations for almost thirty years without competitive bidding and be treated as "above reproach" and "beyond the purview of the court" notwithstanding a detrimental impact on interstate commerce and harm to a private helicopter operator and the public. It can hardly be disputed that the fact that APH is managing a public heliport implies that it should provide services and access in a non-discriminatory manner.

11

### 3. THE SUPREME COURT TESTS FOR WHAT CONSTITUTES STATE ACTION INDICATE THAT APH AND HRPT ARE STATE ACTORS

State action requires that "the deprivation of a federal right be fairly attributable to the State." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982). In *Lugar v. Edmondson Oil Co., Inc.*, the Supreme Court articulated a two-part approach to this question of "fair attribution":

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible. . . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor.

APH focuses its argument on the rate increase to claim that there is not enough entwinement. First, it is clear that the rate increase is only one of the discriminatory actions taken by APH. It also discriminated by denying landing rights to NYH even for chartering work that does not require a permit. In addition, it did not allow NYH to promote its services, while it allowed other operators such as Zip Aviation to do so. (A. Cmpl. 207-209, 258). Second, the complaint alleges that the rate increase was, at least in part, a consequence of the audit of APH requested by HRPT. The Amended Complaint states that the rates were raised in part to cover the cost of the settlement with APH. (A.Cmpl. 120). Furthermore, APH's memorandum in support to its motion to dismiss indicates on page 11 that "HRPT has denied any power over APH's decision to raise rates and the Permit specifically allows APH to raise its rates as it chooses." That statement is plainly false. APH is subject to the permit's boundaries when imposing rates. They have to notify HRPT and the HRPT can object to the rates. HRPT oversees

12

the pricing to ensure "that the use of the heliport is afforded in a fair and non-discriminatory manner as mandated by the agreement" as indicated in their own letter attached to the Amended Complaint as Exhibit J. (See A.Cmpl. ¶113-116).

The permit does provide that from time to time, APH may amend the schedule of charges at the W. 30th Street Heliport upon fifteen (15) days prior notice to the public and the HRPT – so long as such charges and fees are "fair, reasonable, and non-discriminatory." (A. Cmpl. ¶ 167). Thus, APH cannot raise its rates as it chooses. Furthermore, during oral argument on page 4 paragraphs 18-21, the Court asked Mr. Friedman the following:

> THE COURT:  Well, let me stop you for a moment.  Under that provision, does the New York State Trust have the power to prohibit a charge as discriminatory?
>
> MR. FRIEDMAN:  Absolutely, your Honor…

Therefore, even applying the standards cited by APH, it is a state actor. In Brentwood Academy v. Tennessee Secondary School Athletic Ass'n 531 U.S. 288, 121 S.Ct. 924 U.S., (2001), the Supreme Court stated:

> We have, for example, held that a challenged activity may be state action when it results from the State's exercise of "coercive power," *Blum, 457 U.S., at 1004, 102 S.Ct. 2777,* when the State provides "significant encouragement, either overt or covert," *ibid.,* or when a private actor operates as a "willful participant in joint activity with the State or its agents," *Lugar, supra, at 941, 102 S.Ct. 2744* (internal quotation marks omitted). We have treated a nominally private entity as a state actor when it is controlled by an "agency of the State," *Pennsylvania v. Board of Directors of City Trusts of Philadelphia, 353 U.S. 230, 231, 77 S.Ct. 806, 1 L.Ed.2d 792 (1957) (per curiam),* when it has been delegated a public function by the State, cf., *e.g., West v. Atkins, supra, at 56, 108 S.Ct. 2250; Edmonson v. Leesville Concrete Co., 500 U.S. 614, 627-628, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991),* when it is "entwined with governmental

policies," or when government is "entwined in [its] management or control," *Evans v. Newton*, 382 U.S. 296, 299, 301, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966).

Applying that rationale to this case, all of those tests are satisfied. The complaint alleges that: 1) some of the actions were the result of HRPT coercive power, since APH had to repay the monies it misappropriated and since HPRT had the opportunity to challenge the rate increase and the discriminatory practices. (A.Cmpl. ¶204) By refusing to do anything, HRPT encouraged the discriminatory practices to continue, even though it knew about the discrimination and irregularities. 3) APH and HRPT are joint participants in the administration of the heliport pursuant to the permit. For example, in a letter dated February 9, 2007 (A.Cmpl. Ex J) HRPT wrote to APH regarding Zip Aviation's failure to comply with the Federal Aviation Administration regulations. (A.Cmpl. ¶109). 4) The right to operate the heliport and charge customers has its source in state authority because the New York State Department of Transportation, a state agency, was responsible for the Permit and authorized and approved the granting of these rights. (A. Cmpl. ¶154). 5) APH has been delegated the public function of operating a public heliport. The original permit/agreement between the New York State Department of Transportation and APH establishes clearly the public service of the heliport at section 32(a): "A principal purpose of the Department in the making of this agreement is to have the Heliport operated as a first-class **public** heliport…"A. Cmpl. 110-111. (6) APH is entwined with governmental policies such as the requirement that the use of the heliport is afforded in a fair and non-discriminatory manner as mandated by the agreement. Since the heliport is "public," as opposed to those owned by corporations and medical facilities, the state is involved in some aspects of the operations. (A. Compl. ¶109-114). Furthermore,

14

providing access to a public good in equal terms has been traditionally a prerogative of the state. A State enjoys broad authority to create rights of public access on behalf of its citizens. *PruneYard Shopping Center v. Robins*, 447 U.S. 74, 81-88 (1980).

Finally, it should be noted that the cases cited by defendants refer to privately owned property and therefore are not applicable to this case. For example, *Jackson v. Metropolitan Edison Company* 419 U.S. 345 (1974) refers to a privately owned utility company. That is a totally different situation. The only similarity is that there is a partial monopoly. In the same manner, *Tancredi v. Metropolitan Life Insurance Company*, 149 F.Supp.2d 80 (S.D.N.Y 2001) refers to a privately owned insurance company. It has nothing to do with land that is owned by the state that is used for a public purpose.

## 4. APH MADE AN ADMISSION AGAINST INTEREST ABOUT HRPT AND APH BEING STATE ACTORS

When plaintiffs alleged that APH and HRPTs actions regarding Zip Aviation constituted an antitrust violation, APH invoked the Noerr-Pennignton doctrine in the letter sent by Leon Friedman, attorney for Air Pegasus Heliport on November 16, 2007 as well as in page 10 of the supplemental memorandum of law filed by APH on November 11, 2007. Even though these claims were not permitted in the amended complaint, APH's statements constitute an admission which they should be estopped from changing as the application of the Noerr-Pennington doctrine as immunity to antitrust liability requires state action:

> "[W]here a restraint upon trade or monopolization is the result of valid governmental action, as opposed to private action," those urging the governmental action enjoy absolute immunity from antitrust liability for the anticompetitive restraint. Allied Tube & Conduit Corp. v. Indian **Head, Inc.** 486 U.S. 492,499 (1988)

Clearly, APH cannot have it both ways and claim that they are not state actors for purposes of the equal protection and due process claims and that they are "state actors" for purposes of antitrust law. The Noerr-Pennington doctrine applies when there is state action, although courts have refused to apply the immunity where the state actors acted beyond governmental bounds.

In *Hecht v. Pro-Football, Inc.* 444 F.2d 931 C.A.D.C. (1971), the Court studied the applicability of antitrust laws to state actors and rejected the assertion that every governmental act provides antitrust shelter.

## POINT II. PLANTIFFS HAVE PLEADED ITS CONSTITUTIONAL CLAIMS PROPERLY

### 1. Plaintiffs have pleaded a claim for violation of the Equal Protection Clause under the "class-of-one" theory

The Supreme Court has recognized that an equal protection claim is viable where the plaintiffs allege that they were intentionally treated differently from other similarly-situated individuals without any rational basis. The Court has indicated that purpose of the equal protection clause is to protect individuals against intentional and arbitrary discrimination. *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000).

In *Village of Willowbrook v. Olech,* Plaintiff sued the Village, claiming that the Village's demand of an additional 18-foot easement violated the Equal Protection Clause of the Fourteenth Amendment. Plaintiff asserted that the 33-foot easement demand was "irrational and wholly arbitrary"; that the Village's demand was actually motivated by ill will resulting from the Plaintiff's previous filing of an unrelated, successful lawsuit

against the Village; and that the Village acted either with the intent to deprive Plaintiff of her rights or in reckless disregard of her rights.

The District Court dismissed the lawsuit pursuant to <u>Federal Rule of Civil Procedure 12(b) (6)</u> for failure to state a cognizable claim under the Equal Protection Clause. Relying on Circuit precedent, the Court of Appeals for the Seventh Circuit reversed, holding that that an allegation of subjective ill will was adequate to make out an equal protection violation. The Supreme Court affirmed on a different rationale. The Court found that Olech's complaint could "fairly be construed as alleging" differential treatment from similarly situated property owners which, coupled with Olech's allegation that the Village's conduct was irrational and wholly arbitrary, was "sufficient to state a claim for relief under traditional equal protection analysis." The court held:

> Our cases have recognized successful equal protection claims brought by a "class of one," where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. See <u>Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340 (1923); Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty., 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989)</u>. In so doing, we have explained that " '[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.' " <u>Sioux City Bridge Co., supra, at 445, 43 S.Ct. 190</u> (quoting <u>Sunday Lake Iron Co. v. Township of Wakefield, 247 U.S. 350, 352, 38 S.Ct. 495, 62 L.Ed. 1154 (1918)</u>). Id. Supra at 564.

The second circuit has also applied the same rationale. In *DeMuria v. Hawkes*, 328 F.3d 704 C.A.2 (2003), allegations that a police officer provided two residents with different standard of police protection than that typically afforded to municipality's

residents and that the officer acted maliciously and arbitrarily toward residents because they were involved in a dispute with his friend supported a "class of one" equal protection claim. The complaint stated that "Hawkes subjected the plaintiffs to a different standard of police protection than any other citizens of Clinton and he did so maliciously, arbitrarily, for the purpose of injuring them, and for the reason that they were involved in a dispute with his friend."

The facts of this case are similar to *Village of Willowbrook v. Olech* and to *DeMuria v. Hawkes*. There is history of various disputes and litigation between plaintiffs and defendants. The amended complaint states that one of the reasons for terminating Plaintiff's right to access the heliport was the failure to drop a pending lawsuit. (A. Cmpl. ¶7 and 214). The first action was also the result of defendant's excluding plaintiffs from using the heliport in 2004. APH and NYHC reached a settlement agreement. There is currently a lawsuit in state court for violation of the settlement agreement. (A. Cmpl. FN 4).

Finally, it should be noted that the class-on-one theory is applicable even in the case in which more that one person has been discriminated against. The Court clarified this point:

> We note that the complaint in this case could be read to allege a class of five. In addition to Grace and Thaddeus Olech, their neighbors Rodney and Phyllis Zimmer and Howard Brinkman requested to be connected to the municipal water supply, and the Village initially demanded the 33-foot easement from all of them. The Zimmers and Mr. Brinkman were also involved in the previous, successful lawsuit against the Village, which allegedly created the ill will motivating the excessive easement demand. Whether the complaint alleges a class of one or of five is of no consequence because we conclude that the number of individuals in a class is immaterial for equal protection analysis. P. 564

The Amended Complaint states that the disparity in the treatment of NYHC is arbitrary and capricious and serves no legitimate governmental objective. In providing the discounts and price reductions complained in this action to certain similarly-situated customers of the Heliport and not to New York Helicopters, APH and HRPT have violated New York Helicopters' rights under the Equal Protection Clause. (A.Cmpl. ¶217.)

NYH has been intentionally treated differently from other similarly-situated helicopter operators by the discriminatory practices of APH which are endorsed by HRPT. There is no rational basis for the difference in treatment that NYH has received from APH. The discriminatory practices had no basis in cost, volume, or any other economic justification. (A. Cmpl. ¶218-219)

In fact, APH subjected NYH to discriminatory and arbitrary practices as retaliation for NYH's involvement in a lawsuit filed by other aggrieved helicopter operators against APH, not only in violation of the equal protection clause but also interfering with NYH's freedom of association and speech.

### 2. Plaintiffs have properly pleaded a claim for violation of Due Process

Significantly, a deprivation of due process, in and of itself, constitutes irreparable injury. *See Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir.); *Bray v. New York*, 2005 U.S. Dist. LEXIS 21748, *26 (S.D.N.Y. 2005).

NYH's due process claim stems from the New York Department of Transportation ("NYDOT") and the Hudson River Park Trust ("HRPT"), as the successor-in-interest to the NYDOT. Under the permit agreement, the NYDOT abdicated its constitutional duties by delegating responsibility for operating the W. 30th Street Heliport to APH.

19

The Amended Complaint states that plaintiff Michael Roth has been deprived of his liberty to use the West 30th Street heliport for chartering work. The West 30th Street heliport is a public-use facility. Therefore, unlike sightseeing work, chartering work does not require a specific permit. Even if Plaintiffs were not authorized to do any sightseeing work at the heliport, they should be allowed to land there for chartering work because anyone can land at the heliport for those purposes given the heliport's public nature. (A.Cmpl ¶227-228). In addition, defendants are interfering with plaintiff Michael Roth's right to earn a livelihood by denying access to a property that is available to other people in the same situation. (A. Cmpl ¶228). The right to pursue livelihood is a privilege guaranteed under Privileges and Immunities Clause. U.S.C.A. Const. Art. 4, § 2, cl. 1.

The amended Complaint also alleges that APH's imposition of the new fee, without any legitimate basis or justification, but solely for the purpose of funding its settlement with HRPT, was arbitrary and outrageous and an abuse of its position as the fixed based operator of the Heliport and APH and HRPT actions constitute an arbitrary and capricious exercise of state power. (A. Cmpl. ¶229-231).

The Amended Complaint also states that on May 17, 2006, APH announced a "new" flat fee of $10 to take effect on June 5, 2006. There was no basis or justification for the new fee, which was unfair and unreasonable, and was imposed arbitrarily and capriciously. New York Helicopters has a cognizable property interest in operating at the Heliport on terms that are "fair, reasonable and nondiscriminatory." (A. Cmpl. ¶235-245).

APH admits that it was required to give notice of its proposed rate increase to the public and to the HRPT. Clearly, the purpose to give notice is to afford the public- and those impacted by the proposed increase- the opportunity to be heard.  However, APH failed to provide any opportunity, let alone a meaningful opportunity, for the pubic – and

20

those impacted- to be heard and present objections to the rate increase,[2] which was a deprivation of due process, which, in and of itself, constitutes irreparable injury.

NYH's due process argument is meritorious as, "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 314 (1950); *See also Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 14 (1978) ("The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending 'hearing'"). Notice "does not comport with constitutional requirements when it does not advise the [affected party] of the availability of a procedure for protesting [the proposed action]." *Memphis Light,* 436 U.S. at 14-15 (notice from utility company that service would be discontinued if overdue payment was not made within a certain time did not comport with due process, as "[n]o mention was made of a procedure for the disposition of a disputed claim"). Indeed, "the right to some kind of prior hearing is paramount." *Board of Regents v. Roth,* 408 U.S. 564, 569-71 (1972).

It is not disputed that APH implemented its rate increase without a public hearing. The public, including NYH, had no meaningful opportunity to be heard and present objections to the rate increase. As discussed in this memorandum: (1) APH's rate increase action meets the "state action"; (2) NYH has a property interest entitled to due process protection; and (3) APH's rate increase action deprived NYH of its property interest without due process of law, thereby causing irreparable injury to NYH.

---

[2] The NYDOT (and the HRPT, as the successor-in-interest to the permit agreement) is also liable for a due process violation in that it permitted APH to implement a rate increase without providing the public, including NYH, with a meaningful opportunity to be heard and present objections to the rate increase in violation of due process.

### a. NYHC has a property interest entitled to due process protection.

Defendants claim that plaintiffs have not been deprived of any property rights. However, plaintiff NYH was an authorized user of the heliport as the HRPT had authorized their use of the heliport. (A. Cmpl ¶322).

NYH has a property interest in the operation of its business at the W. 30th St. Heliport sufficient to invoke constitutional procedural due process protection. *See Women's Med. Prof. Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006) ("due process protects an interest in the continued operation of an existing business"); *Watson v. Kansas City, Kansas*, 185 F. Supp.2d 1191, 1203 (D. Kan. 2001) (assuming as adequate plaintiffs' allegation of property interest in "the continued operation of their respective business, and business reputation and goodwill without unjustified, unlawful, and abusive interference by government officials for illegitimate reasons"); *United States v. Tropiano*, 418 F.2d 1069, 1076 (2d Cir. 1969) ("The right to pursue a lawful business . . . has long been recognized as a property right within the protection of the Fifth and Fourteenth Amendments of the Constitution"); *Schwartzberg v. Lefkowitz*, 480 F.Supp. 569, 574 (S.D.N.Y. 1979) ("whatever property interests plaintiffs had in the continued operation of their business . . . would be sufficiently protected by a post-termination hearing"). APH's discriminatory actions were intended to and in fact are injuring NYH's business and, in that respect, are operating to deprive NYH of its property interest. *See Associates in Obstetrics & Gynecology v. Upper Merion Township*, 270 F. Supp.2d 633, 65 (E.D. Pa. 2003) (allegations of actions taken "with the intent to harm Plaintiffs' business interests

and to restrict their practice of lawful medical procedures" state a claim of substantive due process violation for deprivation of property interest).

### b. APH's Discriminatory Actions Are Depriving NYH Of Its Property Interest Without Due Process Of Law, Thereby Causing Irreparable Injury to NYH.

APH's discriminatory rate increase and favoring of plaintiff's competitors are depriving NYH of its property interest without due process of law in that it adversely impacts NYH's ability to operate its business. This constitutional violation is causing irreparable injury to NYH. "At its core, procedural due process requires that individuals 'receive notice and an opportunity to be heard before the Government deprives them of property.'" *Bray v. New York*, 2005 U.S. Dist. LEXIS 21748, *13 (S.D.N.Y. Sept. 30, 2005). As noted above, APH implemented its rate increase without a public hearing. The public, including NYH, had no meaningful opportunity to be heard and present objections to the rate increase. Accordingly, APH's rate increase action is operating to deprive NYH of its property interest without due process of law. *See Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 314 (1950); *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 14 (1978); *Board of Regents v. Roth*, 408 U.S. 564, 569-71 (1972).

Significantly, a deprivation of due process, in and of itself, constitutes irreparable injury. *See Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir.) ("when an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary"); *Bray v. New York*, 2005 U.S. Dist. LEXIS 21748, *26 (S.D.N.Y. 2005) ("The deprivation of constitutional rights, such as due process, causes irreparable harm.").

Notably, as in *Burton*, the NYDOT (and the HRPT, as the successor-in-interest to the Permit) could have affirmatively required APH to provide notice and a hearing before

23

implementing any rate increase. Clearly, if the NYDOT (or the HRPT) was operating the heliport, it would have been required to provide such notice and hearing. It chose, however, not to require APH to do so. As the *Burton* Court stated, "no State may effectively abdicate its responsibilities by either ignoring them or by merely failing to discharge them whatever the motive may be."

## POINT III. PLAINTIFF HAS STATED A CLAIM UNDER THE COMMERCE CLAUSE

Under the Commerce Clause, Congress has the power, in order to promote a nationwide transportation system and to control interstate and foreign air traffic flow, to dictate what aircraft should be permitted to land and take-off from airports. *British Airways Bd. v. Port Authority of New York, 558 F.2d 75, 84 FN2 (1977)*. The question of who may enforce a *statutory* right is different from the question of who may enforce a right that is protected by the Constitution. *New York Airlines, Inc. v. Dukes County, 623 F.Supp. 1435, 1443 (1985)*. Even if there is no private right of action under the Airline Deregulation Act, this Court has jurisdiction over this claim under the Supremacy Clause since defendants' actions are affecting interstate commerce.

This action deals with discriminatory policies implemented by a heliport operator with the approval of the state agency in charge of the heliport and in detriment of the plaintiff. The Amended Complaint states that the plaintiff engages in interstate commerce. (A.Cmpl. ¶3.) Furthermore, those actions not only provided a competitive advantage to some of plaintiffs' competitors, but ended up excluding plaintiff from using the heliport. The amended complaint alleges that by forcing NYH to compete on an uneven playing field, the HRPT and APH increased NYH's operating costs, complicated NYH's ability to invest in expanding its business, and caused NYH to lose it business to

APH's "favored" operators. Each of these unfair cost differentials had a direct negative effect on NYH's business, causing it both to lose volume and to lose profits on the customers that it served. The injury was the result of the illegal, discriminatory and unreasonable implementation of regulations at the West 30th Street Heliport.

## VI.    CONCLUSION

Based on the foregoing, the motion to dismiss the complaint should be denied in its entirety.

Dated: New York, New York
       February 7, 2008

HANTMAN & ASSOCIATES

By:_____

Robert J. Hantman (3947)
1414 Avenue of the Americas Suite 406
New York, New York 10019
Telephone :( 212) 684-3933
Facsimile  : (212)  755-1989
*Attorneys for Plaintiffs*
*New York Helicopter Charter, Inc.*
*and Michael Roth.*

25