UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NEW YORK HELICOPTER CHARTER, INC. and    :
MICHAEL ROTH individually

                                     :    07 Civ. 4069

                  **Plaintiffs**

                                       :

   -against-

                                       :

AIR PEGASUS HELIPORT, INC, HUDSON RIVER    :
PARK TRUST and the FEDERAL AVIATION    :
ADMINISTRATION

                                       :

                  Defendants

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## REPLY MEMORANDUM OF LAW BY DEFENDANT AIR PEGASUS HELIPORT, INC. IN SUPPORT OF MOTION TO DISMISS

Of counsel
    Christopher P. Gengaro
    Lentz & Gengaro

Leon Friedman (LF#7124)
148 East 78th Street
New York, N.Y. 10021
(212) 737-0400
Attorneys for Defendant
Air Pegasus Heliport, Inc.

## TABLE OF CONTENTS

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

ARGUMENT

I    APH IS NOT A STATE ACTOR . . . . . . . . . . . . . . . . . . . . . . .    2

II.    NO CONSTITUTIONAL CLAIM IS PROPERLY ALLEGED. . .    7

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    10

# TABLE OF AUTHORITIES

Page

*Alabama-Tombigbee Rivers Coalition v. Norton*, 338 F.3d 1244 (11th Cir. 2003)............ 6

*Associates in Obstetrics & Gynecology v. Upper Merion Township*, 270 F. Supp. 2d 633 (E.D. Pa. 2003) ........................................................................................ 9

*Board of Regents v. Roth*, 408 U.S. 564 (1972)...................................................... 9

*Brentwood Academy v. Tennessee Secondary School Athletic Association*, 531 U.S. 288 (2001) ...................................................................................................... 2

*British Airways v. Port Authority of New York*, 558 F.2d 75 (2d Cir. 1977)..................... 4

*Burton v. Wilmington Parking Authority*, 365 U.S. 715 (1961) ........................................ 2

*Clubside, Inc. v. Valentin*, 468 F.3d 144 (2d Cir. 2006) .................................................. 7

*Consolidated Edison of New York, Inc. v. Pataki*, 292 F.3d 338 (2d Cir. 2002)............... 8

*Continental Insurance Co. of N.Y. v. Sherman*, 439 F.2d 1294 (5th Cir.1971).................. 6

*DeMuria v. Hawkes*, 328 F.3d 704 (2d Cir. 2003)....................................................... 7, 8

*Hecht v. Pro-Football, Inc.*, 444 F.2d 931 (D.C. Cir. 1971) ............................................ 3

*Hewitt v. Helms*, 459 U.S. 460 (1983)............................................................................ 9

*Holt v. Vance*, 370 F. Supp. 374 (D. S.Car. 1974)....................................................... 10

*Jackson v. Metropolitan Edison Company*, 419 U.S. 345 (1974)...................................... 5

*Kentucky Department of Corrections v. Thompson*, 490 U.S. 454 (1989)........................ 9

*Lloyd Corp. v. Tanner*, 407 U.S. 551 (1972)................................................................. 2

*Lugar v. Edmonson Oil Co.*, 457 U.S. 922 (1981).......................................................... 2

*Metropolitan Life Insurance Company*, 149 F. Supp. 2d 80 (S.D.N.Y. 2001)................... 5

*Neilson v. D'Angelis*, 409 F.3d 100 (2d Cir.2005) ......................................................... 8

*Parker v. Brown*, 317 U.S. 341 (1943)........................................................................... 3

*Patterson v. Portch*, 853 F.2d 1399 (7th Cir. 1988)........................................................9

*PruneYard Shopping Center v. Robins*, 447 U.S. 74 (1980) ...........................................2

*Rodal v. Anesthesia Group of Onondaga, P.C.*, 369 F.3d 113 (2d Cir.2004) ...................6

*Schwartzberg v. Califano*, 480 F. Supp. 569 (S.D.N.Y. 1969)........................................9

*SeaAir New York, Inc. v. City of New York*, 250 F.3d 183 (2d Cir. 2001) .......................8

*Sellers v. Iowa Power and Light Company*, 372 F. Supp. 1169 (S.D. Iowa 1974)...........10

*Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt International B.V. v. Schreiber*, 407 F.3d 34 (2d Cir. 2005).....................................................................................................................7

*United Gas Pipe Line Company v. Memphis Light, Gas and Water Division*, 358 U.S. 103 (1959) .................................................................................................10

*United States v. Tropiano*, 418 F.2d 1069 (2d Cir. 1969) ...............................................9

*Watson v. Kansas City, Kansas,* , 185 F. Supp. 2d 1191 (D. Kans. 2001)........................9

*Women's Medical Professional Corp. v. Baird*, 438 F.3d 595 (6th Cir. 2006) .................8

*Z.J. Gifts D-4, L.L.C. v. City of Littleton*, 311 F.3d 1220 (10th Cir.2002)........................6

## DOCKETED CASES

*N.Y. Helicopter v. Air Pegasus Heliport et al*, Index No. 601327/06 .............................10

*Sightseeing Tours of America et al v. Hudson River Park Trust et al* , Index No. 107779/06 ................................................................................................................5

## MISCELLANEOUS

Marina Loa, "Discrediting Accreditation: Antitrust and Legal Education" 79 *Wash Univ. L. Q.* , 1035, 1045, n. 55 (2001) ................................................................7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NEW YORK HELICOPTER CHARTER, INC. and  :
MICHAEL ROTH individually
                                      :     07 Civ. 4069
                    Plaintiffs
                                      :

        -against-
                                      :

AIR PEGASUS HELIPORT, INC, HUDSON RIVER  :
PARK TRUST and the FEDERAL AVIATION
ADMINISTRATION                        :

                    Defendants        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## REPLY MEMORANDUM OF LAW BY DEFENDANT AIR PEGASUS HELIPORT, INC. IN SUPPORT OF MOTION TO DISMISS

Preliminary Statement

      In their answering brief, Plaintiffs make no effort to defend any of its claims under

Article 78 of the New York CPLR, nor did they ever do so in their earlier submissions. [1] Thus

Causes of Action six through ten (A.Cpl. pars. 267-324) must be dismissed outright. In addition,

Plaintiffs make no effort to support its claim under the Airline Deregulation Act, admitting that

the Act "does not provide for a private right of action" (Plaintiffs' Answering Memorandum of

Law "PAM" at 6, 24). They do assert (without any legal argument to support their assertion)

that defendants' actions "violate the letter and spirit of the Airline Deregulation Act." (*Id.* at 6).

      The only claims that Plaintiffs seek to defend in their latest submission are the

constitutional claims (which require a showing of state action, which is not present here). They

also seek to defend a single claim under the Commerce Clause (which cannot be sustained since

---

[1] Air Pegasus's argument why the Article 78 claims must be dismissed are contained in
Defendants' Air Pegasus opening Memorandum of Law in Support of Motion to Dismiss
"DOM" at 33-35 .

there is not only no state action, but no state law or regulation at issue here which is a

requirement for a Commerce Clause challenge, see discussion in DOM at 32-33).

As far as the Section 1983 claims are concerned, Plaintiffs make no effort to distinguish

the numerous cases presented by Air Pegasus that show that no state action was present in the

specific factual situation presented in this case. They cite a few cases dealing with the general

principles of state action, but none of them are remotely similar to the case now before the

court.[2] For these reasons, the instant motion to dismiss must be granted.

## ARGUMENT

## I    APH IS NOT A STATE ACTOR

In their answering memorandum, Plaintiffs cite five cases in support of their claim that

APH is a state actor. Three are Supreme Court cases dealing with the general standards that

apply to determine who is a state actor. *Lugar v. Edmonson Oil Co.*, 457 U.S. 922 (1981),

*Brentwood Academy v. Tennessee Secondary School Athletic Association*, 531 U.S. 288 (2001)

*System* and *Burton v. Wilmington Parking Auth.*, 365 U.S. 715 (1961). (PAM at 7, 12, 13). We

have already discussed *Brentwood* in our opening brief (DOM at 10-11). We have also shown

why the *Burton* case does not apply here. (DOM at 14-15).[3]

---

[2] Plaintiffs refer to their earlier submissions to the Court in an effort to explain or expand the limited response found in their answering memorandum on the instant motion. See PAM at 5. By the same token, this Court should refer to Defendants prior submissions in this case including its Memorandum of Law in Support of its Motion to Dismiss (dated July 10, 2007); its Reply Memorandum of Law in Support of Motion to Dismiss (dated October 22, 2007); its Memorandum of Law in Opposition to Plaintiffs' Application for Injunctive Relief (dated October 17, 2007); the Trenk Declaration in Opposition to Plaintiffs' Motion for a Preliminary Injunction, dated October 16, 2007; and APH's Supplemental Memorandum of Law in Support of Motion to Dismiss (dated November 28, 2007)

[3] Plaintiffs also cite *PruneYard Shopping Center v. Robins*, 447 U.S. 74 (1980), a case that has nothing to do with federal "state action" requirements. The case focused on a State's power under its own constitution to allow parties to exercise free speech rights in a private shopping

One of the other cases cited by defendants, upon which it places its chief reliance, is an antitrust case, *Hecht v. Pro-Football, Inc.*, 444 F.2d 931 (D.C. Cir. 1971). In that case, Congress had created a separate governmental entity, the District of Columbia Armory Board, an "unincorporated instrumentality of the District of Columbia," to build, operate and lease an athletic facility (a stadium) for the benefit of the people of the District, 444 F.2d at 932. Pursuant to that authority, the Armory Board built Robert F. Kennedy Stadium and then entered into a contract with the Washington Redskins, allowing it to use the stadium for professional football games. The contract provided that the stadium could be used for school, college, or other amateur or professional baseball or football, but during the term of the lease agreement, the Stadium could not be "let or rented to any other professional football team other than the Washington Redskins." *Id.* at 933. Other professional football teams who wished to use the stadium brought an antitrust action against the Redskins and the Armory Board, claiming that the contract violated the Sherman Act. The Court of Appeals held that the contract was not insulated from antitrust laws because one of the contracting parties was a governmental entity, an issue which was never disputed by any party.

The case has nothing to do with the facts of this case. First, there was no doubt that the Armory Board was a governmental entity, specifically created by an Act of Congress. All parties accepted that proposition. Second, the only issue was whether a particular act of the governmental party -- entering into a lease with a private party (the Redskins) -- was insulated from antitrust inquiry under the rationale of *Parker v. Brown*, 317 U.S. 341 (1943).

---

center without violating the property owners' right to control their property. The Supreme Court had previously held that private shopping centers do have the right to exclude speakers from exercising First Amendment rights on privately owned property. See *Lloyd Corp. v. Tanner*, 407 U.S. 551 (1972).

This *Hecht* case has no relevance to this case. The issue of state action in that case was a given: the Armory Board was a governmental entity. There was no claim that the Redskins team was a state actor, only whether it was an antitrust violator. APH stands in the same shoes as the Redskins in the *Hecht* case, as the entity with whom another agency had contracted. If the HRPT had entered into a contract with a helicopter operator which provided that it was the only company that can actually conduct sightseeing tours from that facility, and then an outside sightseeing company sued both entities for antitrust violations, *Hecht* might be relevant. But it surely has no bearing on whether APH was a state actor in raising rates (as it was allowed to do under its Permit) or removing Plaintiffs from the facility (because it breached the terms of a settlement agreement between the parties).

The other case cited was *British Airways v. Port Authority of New York*, 558 F.2d 75 (2d Cir. 1977), a case dealing the power of the Port Authority to impose noise restrictions on the supersonic Concorde after the Secretary of Commerce and the FAA had granted British Airways the right to send flights into Kennedy Airport in New York. The legal issue was whether the actions of the federal officials preempted the power of the Port Authority to impose its noise restrictions. The case has nothing to do with the issue of state action by a private entity.

Plaintiffs then use various words such as "entwinement" or "joint participants" or "public function" to justify their state action claims without citing any law to support their arguments (PAM at 12, 14). It lays great stress on the assertion that rates were increased in order to pay for a settlement between the HRPT and APH, as if that had any bearing on the issue of state action.

Plaintiffs also quote a single word made by undersigned counsel during prior appearance in this case without giving the context or explanation made by counsel about the power of HRPT to investigate rates . (PAM at 13). We agree that HRPT has the right under the Permit to

investigate any rate that it considers unfair, but it is the only entity that can do so under the

permit, not an outside third party. [4]  The issue was discussed at length during a parallel

proceeding in state court (involving other helicopter companies, raising the same issues) before

Justice Rosalyn Richter. An attorney for the Trust explained:

> MR. GALLAGHER: . . there is no third-party beneficiary rights in the permit.
> Other than the recent review by the Trust of the increases in fees and charges solely
> because they were claimed to be unfair and discriminatory, and under Section 34 of the
> permit, only in that context does the Trust have the obligation to review. And we did.
> And we found that because the charges were wholesale to all operators of the airport, in
> other words, it was applied across the board, we found no reason to determine that they
> were unfair.

See Exhibit 4 to Declaration of Leon Friedman, dated February 11. 2008, Transcript of
Proceedings, *Sightseeing Tours of America et al v. Hudson River Park Trust et al* , Index No.
107779/06, dated October 3, 2006, at pp. 14, 15

Mr. Gallagher added that "if, all of a sudden, an increase is implemented that is, you

know, shocking to the conscience, then that goes to fairness and we would have to look at that.

But we don't have that here, Your Honor." *Id.* p. 16

Plaintiffs try to distinguish two of the cases APH heavily relied upon, namely

*Jackson v. Metropolitan Edison Company*, 419 U.S. 345 (1974) and *Tancredi v.*

*Metropolitan Life Insurance Company*, 149 F.Supp.2d  80  (S.D.N.Y. 2001)(Kaplan, J.).

Plaintiffs claim that the defendants in both cases were "private . . . company[ies]." PAM at 15).

But APH is also a private company, as Plaintiffs themselves assert. (A.Cpl. par. 9). The two

cases cited hold that even heavily regulated utilities or insurance companies are not state actors

with respect to any commercial decision vis-a-vis one of their customers. The issue in any state

action case is what particular action of the private party is the plaintiff complaining of. If the

action at issue is one that the state is not concerned about (such as raising rates or dismissing a

---

[4] The Permit specifies that the Agreement "*shall not confer upon any person or entity other than
the parties hereto any rights or remedies hereunder.*" (Section 50) (emphasis added).

customer) or that does not go to the core of any possible governmental function performed by a private entity, then there is no state action. See discussion in DOM at 9-23.

Finally, Plaintiffs argue that defendants have made an "admission" because we argued that any antitrust claims might be barred by the state action doctrine. The exact argument was far more equivocal. Thus we noted in our November 28, 2007 submission that the complaint did not allege antitrust injury. "In addition, the claim *may be* foreclosed by the state actor exception to antitrust liability or the *Noerr-Pennington* doctrine" (emphasis added). See Exhibit 5 to Friedman Declaration, Memorandum of Law by Defendant Air Pegasus Heliport in Support of Motion to Dismiss Plaintiff's Amended Complaint at p. 6. See also Exhibit 6, letter Friedman to Judge Cedarbaum, dated November 16, 2007 at p. 2, containing similar language.

Second, a legal argument made in the course of legal proceedings is not a judicial admission. See *Alabama-Tombigbee Rivers Coalition v. Norton*, 338 F.3d 1244, 1254 (11th Cir. 2003):

> Legal arguments are distinguishable from judicial admissions. *See Z.J. Gifts D-4, L.L.C. v. City of Littleton*, 311 F.3d 1220, 1233 (10th Cir.2002) (declining to treat counsel's legal interpretation of ordinance as judicial admission); *see also Continental Ins. Co. of N.Y. v. Sherman*, 439 F.2d 1294, 1298 (5th Cir.1971) (refusing to apply judicial admission rule strictly where it conflicted with Federal Rules of Civil Procedure allowing inconsistent pleading).

It is only when a party makes a legal argument that is later accepted by a court that any kind of estoppel applies if and when the opposite argument is made later. The Second Circuit explained:

> As to judicial estoppel, that doctrine applies only in situations where a party both takes a position that is inconsistent with one taken in a prior proceeding, and has had that earlier position adopted by the tribunal to which it was advanced. *See Rodal v. Anesthesia Group of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir.2004). Assuming, *arguendo*, that Schreiber and Walter, Conston advanced, with respect to the validity of the assignments, a position in their first motion to dismiss that was actually inconsistent with that taken on the current motion, it is clear that the earlier position was never adopted by the district court. Therefore, the requirements for invoking the doctrine of judicial estoppel are not present here.

*Stiching Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt International B.V. v. Schreiber,* 407 F.3d 34, 45 (2d Cir. 2005)

Finally, there is a difference between state action for antitrust purposes and state action for constitutional Section 1983 purposes. ". . . . conclusions as to what constitutes state action under constitutional law do not apply to the question of whether state action is implicated under antitrust law." Marina Loa, "Discrediting Accreditation: Antitrust and Legal Education" 79 *Wash Univ. L. Q.* , 1035,  1045, n. 55 (2001).

## II.   NO CONSTITUTIONAL CLAIM IS PROPERLY ALLEGED

If there is no state action, then no constitutional claim will lie, nor any claim under the Commerce Clause. In addition, only an attack on a state law or regulation – which is not involved here -- can be brought under the Commerce Clause (See DOM at 32-33).   In addition, Plaintiffs do not properly allege any constitutional violation.

With respect to their equal protection "class of one" claim, Plaintiffs make no effort to distinguish the cases cited by APH, which show that some serious misuse of power must be alleged before any "class of one" claim can be accepted.   None of the allegations in the amended complaint alter the defect in the equal protection claim.   The Second Circuit has established an extremely high burden before a "class of one" equal protection claim can be accepted. It noted in *Clubside, Inc. v. Valentin,* 468 F.3d 144, 159 (2d Cir. 2006): [5]

> We have held that class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves. . . . . Accordingly, to succeed on a class-of-one claim, a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in

---

[5] The *Clubside* case was decided three years after *DeMuria v. Hawkes,* 328 F.3d 704 (2d Cir. 2003) chiefly relied upon by Plaintiffs

treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.

In a series of cases, differential treatment of third parties in terms of rates or prices or government benefits have not satisfied the "class of one" test. See *Consolidated Edison of New York, Inc. v. Pataki*, 292 F.3d 338, 345 (2d Cir. 2002); *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005). See discussion in DOM at 24-25. See also *SeaAir New York, Inc. v. City of New York*, 250 F.3d 183, 188 (2d Cir. 2001), where the city restricted sightseeing flights by seaplanes around the city. The city claimed that because helicopters were not as restricted, there was an equal protection violation. The Second Circuit rejected that argument.

> SeaAir's equal protection argument, although never clearly set forth on appeal, seems to rely on the noise differences between seaplanes and helicopters to claim that the City's restriction unfairly discriminates against seaplanes. SeaAir makes much of the fact that the district court mistakenly stated that seaplanes add more to ambient noise levels than do helicopters. However, given that helicopters do not even operate from the seaplane base and that, . . . the City has restricted helicopter sightseeing tours as well as seaplane tours in pursuit of a general policy against air tourism, we fail to see how the district court's mistake impacts the inevitable conclusion that there has been no equal protection violation here.

Besides the *Olech* case which established the "class of one" doctrine, Plaintiffs cite a single case, *DeMuria v. Hawkes*, 328 F.3d 704 (2d Cir. 2003) where a serious misuse of authority by a policeman is alleged. That is hardy similar to the allegations here of raising rates on certain helicopter operations.

As far as the due process claims are concerned, plaintiffs rely upon a series of cases in which a party's entire business was halted by some state action (PAM at 22), as opposed to the situation here, where Plaintiffs are restricted from operating as a single facility. Plaintiffs have asserted from the commencement of this case that they can use the facility at the Downtown Manhattan Heliport for their operations, (See Roth Aff. dated September 18, 2007, par. 9, 11). But in *Women's Medical Professional Corp. v. Baird*, 438 F.3d 595 (6th Cir. 2006), the abortion

clinic was entirely closed. The same was true in *Associates in Obstetrics & Gynecology v. Upper Merion Township*, 270 F.Supp.2d 633 (E.D. Pa. 2003). In *Watson v. Kansas City, Kansas*, , 185 F.Supp.2d 1191 (D. Kans. 2001), police officers had conducted unreasonable warrantless searches of plaintiff's business properties, thus disrupting their business. In *Schwartzberg v. Califano*, 480 F.Supp. 569 (S.D.N.Y. 1969), two companies that were terminated from Medicare and Medicaid for violating their provider agreements lost a motion for a preliminary injunction. And in *United States v. Tropiano*, 418 F.2d 1069 (2d Cir. 1969), the comment about the property right to conduct a business was made in the context of a Hobbs Act prosecution.

There is no generalized property right to operate a business that is protected by the due process clause, nor any generalized liberty right to conduct a business as one desires. Judge Posner has explained: "Property under the due process clause is any interest to which a government has given someone an entitlement," *Patterson v. Portch*, 853 F.2d 1399, 1405 (7th Cir. 1988). The Supreme Court explained in *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972): "Property interests, of course, are not created by the Constitution.  Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." As far as liberty is concerned, "Protected liberty interests 'may arise from two sources: the Due Process Clause itself and the laws of the States.'" *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989) quoting *Hewitt v. Helms*, 459 U.S. 460, 466 (1983).

But state law and rules, namely the Permit at issue for the 30th Street Heliport, give no rights whatsoever and create no entitlements to third parties. It specifically states that it "*shall not confer upon any person or entity other than the parties hereto any rights or remedies hereunder.*" (Section 50) (emphasis added).

Furthermore, even if Plaintiffs were to possess a "property right" in any particular rate, there is no basis for asserting that there must be a hearing before the rates are changed. In numerous cases, federal courts has held that increase in rates -- even in heavily regulated industries -- may be accomplished without any due process hearing. *See e.g., United Gas Pipe Line Company v. Memphis Light, Gas and Water Division*, 358 U.S. 103 (1959)(unilateral rate changes by natural gas company upon filing of timely notice with customers did not violate any law); *Sellers v. Iowa Power and Light Company*, 372 F.Supp. 1169 (S.D. Iowa 1974)(company may increase rates for electricity without due process hearing); *Holt v. Vance*, 370 F.Supp. 374 (D. S.Car. 1974), judgment affirmed, 415 U.S. 969 (1974) (public utilities may change rates without due process hearing).

As far as a hearing to determine whether termination of their right to use the heliport was proper, Plaintiffs received such a full hearing before the state court in the course of the preliminary injunction hearing. Justice Cahn denied the motion for a preliminary injunction, based in part on his finding that the testimony of Plaintiff Roth was not "credible." See Decision in *N.Y. Helicopter v. Air Pegasus Heliport et al* Index No. 601327/06 dated October 30, 2007 at p. 6, attached as an appendix to this brief.

## CONCLUSION

For the reasons stated above, the complaint in this action should be dismissed for failure to state a claim on which relief can be granted.

Dated: New York, N.Y.
      February 11, 2008

                                Leon Friedman (LF#7124)
                                148 East 78th Street

Of counsel                       New York, N.Y. 10021
      Christopher P. Gengaro      (212) 737-0400
      Lentz & Gengaro          Attorneys for Defendant
                                  Air Pegasus Heliport, Inc.

# APPENDIX

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: IAS PART 49

-------------------------------------------------------------------x
                        :

NEW YORK HELICOPTER CHARTER, INC.,

                        :

                Plaintiff,

                        :

      -against-                    Index No. 601327/06

                        :

AIR PEGASUS HELIPORT, INC., AIR PEGASUS
NEW YORK, INC. and HUDSON RIVER PARK TRUST, :

                Defendants.      :

-------------------------------------------------------------------x

CAHN, J.

     Plaintiff New York Helicopter Charter, Inc. ("NY Helicopter") moves for a preliminary

injunction to prevent defendants Air Pegasus Heliport, Inc. and Air Pegasus New York, Inc.

(collectively "APH") from terminating its rights to conduct operations at the West 30th Street

heliport in Manhattan.

**Background:**

     Plaintiff conducts helicopter tours.  It uses the West 30th Street Heliport ("the Heliport")

in Manhattan, which is the subject of this action,[1] as a site to commence and end some flights,

and to sell tickets to customers.

     Defendant Hudson River Park Trust is a State public benefit corporation, charged with

the planning, construction and operation of the river-front park in which the heliport is located.

Air Pegasus Heliport, Inc. is the operator of the heliport.

_____

     [1]  Plaintiff also uses the Wall Street heliport.

This is not the first litigation between these parties. In 2004, NY Heliport brought an action against APH, and others, to insure its continued access to the West 30th Street heliport. *New York Helicopter Charter, Inc. v Air Pegasus Heliport, et al.*, Supreme Court, NY Co., Index number 603779/04. The parties entered into a Settlement Agreement in connection with that action on April 28, 2005, which set forth many of the rules of their continuing relationship. Among other things, Plaintiff agreed to pay APH monthly charges. Paragraphs "3" and "6" of the Settlement Agreement, which are very relevant in the instant proceeding, read as follows:

> 3.    <u>Compliance with Rules</u>. NYH shall comply with all of APH's and HRPT's rules regulations and procedures as may exist or to be established from time to time. NYH agrees not to sell tickets, collect payment, solicit or loiter on the Heliport grounds, in the Trailer, in the Heliport parking lot, or on the sidewalk in front of the Heliport or elsewhere in the Hudson River Park, or otherwise interfere with or attempt to divert or distract other helicopter operators' customers.

> 6.    <u>Default</u>. In the event that NYH defaults in any of its obligations under this Agreement, then APH shall have the right, <u>without notice or an opportunity to cure</u>, to terminate NYH's right to conduct any operations at the Heliport.

(Emphasis added).

In the current action, NY Helicopter seeks: (1) a declaration that APH violated the Settlement Agreement, and the permit wherein the State Department of Transportation designated it the operator of the heliport, by not providing Plaintiff with comparable pricing discounts provided to other sightseeing operators; (2) damages for breach of the aforesaid Settlement Agreement; (3) an injunction enjoining Air Pegasus from taking steps to terminate Plaintiff's right to use the heliport, based on non-payment of invoices that do not provide it with

the same discounts provided to others; (4) requiring approval of its application for status as an approved operator for tours for the heliport; and (5) damages from the Hudson River Park Trust for failing to oversee Air Pegasus, to Plaintiff's detriment.

On May 4, 2006, the parties entered into a stipulation in this action, settling an earlier motion by Plaintiff seeking similar relief. By that stipulation, plaintiff agreed to pay APH certain sums of money then due, and further conditioned Plaintiff's resumption of operations at the West 30th Street Heliport on Plaintiff's making subsequent payments "on a COD basis," i.e. APH would charge Plaintiff's credit card for the amounts due when they became due.

In its instant motion, for a preliminary injunction to prevent APH from terminating Plaintiff's rights to use the heliport, NY Helicopter claims that APH blocked its use of the West 30th Street heliport and charged fees on a discriminatory basis, in order to suppress competition. It contends that on May 6, 2007, when it tried to use the heliport, APH summarily informed it that its rights to utilize the heliport had been terminated. Plaintiff claims that the current termination of its rights is in violation of the Settlement Agreement. It also contends that it is not, itself, in default of any of its agreements and that it is current on all charges and financial obligations to APH.

APH contends that NY Helicopter breached paragraph "3" of the Settlement Agreement quoted above.

NY Helicopter argues that its access to the West 30th Street heliport was terminated as a tactic, to induce it to dismiss the instant action. According to Plaintiff's counsel, after NY Helicopter was told that its access to the West 30th Street heliport had been terminated, on May 6, 2007, counsel for APH explicitly told him that NY Helicopter could resume its use of the

3

heliport if it did not violate the rules of the heliport and discontinued the instant action.[2]

However, APH contends that NY Heliport was in violation of the rules of the Heliport, as well as paragraph "3" of the Settlement Agreement, and that this was the basis for terminating Plaintiff's access. On April 26, 2007, the president of APH sent a letter to the helicopter companies that used the heliport. It included the following:

> Re: Sightseeing
> Gentlemen:
>    We are writing to advise you that no representatives of your companies are permitted to solicit, sell tickets, loiter, or conduct any activities related to your business on the sidewalk and pedestrian walkway adjacent to the Heliport, not the bike path, in the Heliport parking lot, or elsewhere within the Hudson River Park. . . . It is important for the safety and security of the Heliport and the Hudson River Park, and for the consideration of the public utilizing the Park in the area of the Heliport, that you adhere strictly to these rules. Violations will be met with immediate sanctions.

This letter, and the restrictions referred to therein, was not sent or directed solely toward NY Helicopter, but to the four companies that utilize the heliport.

In response to the April 26, 2007 letter, three of the four recipients of the letter, including NY Heliport, submitted a joint response, dated May 1, 2007. In their letter, the companies noted that APH was supporting the one company that was not a signatory to this letter, Zip Aviation, "while at the same time doing everything in its power to create obstacles to [their] companies' operations and discourage [their] use of the heliport."

The three companies further noted that, as APH was

> fully aware, a substantial portion of the business generated by [their]

---

[2] Plaintiff's counsel also affirmed that counsel for Air Pegasus informed him that NY Helicopter also had to stop writing letters to the Hudson River Part Trust, with which Air Pegasus was in litigation.

companies consists of 'walk-ins' which are customers who know [their] companies name or, pick up a brochure on the street or at their hotel. Historically, sales to these customers have routinely occurred in and about the heliport, but predominately in the heliport parking lot area of the heliport. In fact, these types of sales have taken place in such locations for years and for a long as sightseeing tours have been conducted at the W. 30th Street Heliport. Your letter therefore comes as a complete surprise and is totally silent as to what circumstances have changed suggesting that such sales affect the 'safety and security of the Heliport.'

As a result, these three companies communicated their intention to place "Customer Service Liaisons" at the heliport to insure that the new restrictions would not result in the diversion of their businesses to Zip Aviation. They claim that the liaisons' activities would not involve selling or soliciting, since a majority of the walk-in customers already have one of their "companies' literature in hand."

_____The way the 30th Street Heliport is set up, customers have to cross a sidewalk to get to the trailers occupied by the various companies which operate out of the Heliport. These companies all offer the public helicopter tours, and they compete for the same customers. In order to avoid unseemly and noisy fights on the sidewalk in front of the Heliport, APH imposed the rule set forth in Paragraph "3" of the Settlement Agreement.

APH claims that plaintiff breached this rule on the days that it operated out of the 30th Street Heliport, and that it had received complaints of such breaches from the other operators. It claims that numerous such breaches have occurred. An employee of APH testified as to one such breach. His testimony was credible. As a result of such activity, APH asserts that it summarily terminated Plaintiff's rights to operate at the Heliport, as it was entitled to do under paragraph "6" of the Settlement Agreement.

5

Plaintiff's president also testified.  However, the court did not find his testimony credible as to the issues of plaintiff's breach of the Settlement Agreement.

There is further litigation between the parties pending in the Federal Court, and apparently there was some effort made to settle this proceeding as well as the federal action in a universal settlement.  Unfortunately, these efforts failed.

**Discussion:**

Preliminary Injunction

On a motion for a preliminary injunction, "plaintiffs [have] to show a probability of success, danger of irreparable injury in the absence of an injunction, and a balancing of the equities in their favor." *Aetna Ins. Co. v Capasso*, 75 NY2d 860, 862 (1990).

Probability of Success

This motion is brought as one for a preliminary injunction, requiring movant to show a probability of success.  In view of the facts recited above, including specifically, but not exclusively, the testimony related to the sidewalk solicitation, movant has failed to show a probability of success.  If the motion were considered as one to enforce the Settlement Agreement by requiring APH to restore Plaintiff to the Heliport, it would also be denied, in view of the facts set forth.

Irreparable Injury and Balancing of the Equities

Inasmuch as Plaintiff is unable to establish a probability of success on the merits, the other requirements for a preliminary injunction need not be examined in detail.  It is worth noting, however, that NY Helicopter is also unable to establish that it would sustain irreparable injury if the injunction it sought was not granted, nor does it establish that the equities are in its

6

favor.

Plaintiff argues that its inability to use the West 30th Street heliport has led to incalculable damage, particularly as this occurred during, and continued through, prime tourist season. It contends that its absence from the heliport has resulted in damage that cannot be calculated in money damages alone. However, NY Helicopter fails to establish why, if ultimately successful, monetary damages would be insufficient to make it whole.

As to the balance of the equities, Plaintiff has been less than credible in its description of its own actions leading to the termination of its rights to use the West 30th Street heliport. Accordingly, the Court cannot currently find that the balance of the equities are in its favor.

Accordingly, it is

ORDERED that Plaintiff New York Helicopter Charter, Inc.'s motion for a preliminary injunction is denied; and it is further

ORDERED that the clerk of the Court enter judgment accordingly.

Dated: October 30, 2007

ENTER:

_____/s/_____
J.S.C.

7