UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
NEW YORK HELICOPTER CHARTER, INC. and       :
MICHAEL ROTH individually

                                 :    07 Civ. 4069 (MGC)

                Plaintiffs              :

      -against-              :    **REPLY**
                                        **DECLARATION**
AIR PEGASUS HELIPORT, INC, HUDSON RIVER      :    <u>**OF LEON FRIEDMAN**</u>
PARK TRUST and the FEDERAL AVIATION
ADMINISTRATION                    :

                Defendants            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

      LEON FRIEDMAN, an attorney duly admitted to the courts of the state of New

York, declares under penalties of perjury.

      1.      I am the attorney for defendant Air Pegasus Heliport, Inc..I make this

Reply Declaration in further support of a motion to dismiss.

      2.      Attached as Exhibit 4 is the Transcript of Proceedings, *Sightseeing Tours

of America et al v. Hudson River Park Trust et al* , Index No. 107779/06, dated October

3, 2006.

      3.      Attached as Exhibit 5 is Memorandum of Law by Defendant Air Pegasus

Heliport in Support of Motion to Dismiss Plaintiff's Amended Complaint, dated

November 28, 2007.

      4.      Attached as Exhibit 6 is letter Friedman to Judge Cedarbaum, dated

November 16, 2007.

Dated: New York, N.Y.
       February 12, 2008                       *Leon Friedman*

Exhibit 4

Transcript of Proceedings, *Sightseeing Tours*

*of America et al v. Hudson River Park Trust et al*, Index

No. 107779/06, dated October 3, 2006.

1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  CIVIL TERM:  PART:  24
------------------------------------------X
SIGHTSEEING TOURS OF AMERICA, INC. and
LIBERTY HELICOPTERS, INC.,                          <u>INDEX NO.</u>
                                                    107779/06

                            Petitioners,

          -against-

HUDSON RIVER PARK TRUST and
AIR PEGASUS HELICOPTERS, INC.,                      MOTIONS

                            Respondents.
------------------------------------------X
                            60 Centre Street
                            New York, New York 10007
                            October 3, 2006

B E F O R E:

               THE HONORABLE ROSALYN RICHTER,
                                        J U S T I C E
A P P E A R A N C E S:

ROBERTSON, FREILICH, BRUNO & COHEN, LLC
          Attorneys for Petitioner Sightseeing Tours
          The Legal Center
          One Riverfront Plaza
          Newark, New Jersey 07102
BY:  WILLIAM W. ROBERTSON, ESQ.
     PETER M. JAENSCH, ESQ.
     JENNIFER A. LEIGHTON, ESQ.


KONNER, TEITELBAUM & GALLAGHER
          Attorneys for Respondent Hudson River Park Trust
          462 Seventh Avenue - Twelfth Floor
          New York, New York 10018
BY:  BRIAN P. GALLAGHER, ESQ.


HUDSON RIVER PARK TRUST
          Pier 40, West Street @ West Houston Street
          New York, New York 10014
BY:  LAURIE SILBERFELD, ESQ.

                                        *Continued...*

```
1

2          A P P E A R A N C E S (continued):

3       LEON FRIEDMAN, ESQ.
               Attorney for Respondent Air Pegasus Helicopters
4              148 East 78th Street
               New York, New York 10021
5

6       LENTZ & GENGARO
               Attorneys for Air Pegasus Heliport, Inc.
7              443 Northfield Avenue
               West Orange, New Jersey
8       BY:    CHRISTOPHER P. GENGARO, ESQ.

9

10      LAW OFFICES OF PAUL A. LANGE, LLC
               Attorneys for Intervening Petitioner Helicopter Flight
11             Services
               445 Park Avenue - 9th Floor
12             New York, New York 10022-8632
        BY:    ALISON L. McKAY, ESQ.
13

14

15

16                              *  *  *

17

18

19

20

21

22

23

24

25

26
```

THE COURT:  I know the case and I know the names and I need lawyers to match yourselves to your clients so that I get everybody.

Mr. Robertson, you represent?

MR. ROBERTSON:  Sightseeing Tours of America, your Honor.

THE COURT:  And next --

MR. ROBERTSON:  Judge, may I take a moment to introduce Ms. Leighton and Mr. Jaensch, from my office.

MS. McKAY:  Alison McKay, from the law offices Paul Lange, for Helicopter Flight Services.

MR. FRIEDMAN:  Leon Friedman for Air Pegasus Helicopter.

THE COURT:  You have been here the longest.

MR. FRIEDMAN:  Yes, your Honor.

THE COURT:  Mr. Gengaro?

MR. GENGARO:  Christopher Gengaro for Air Pegasus Heliport.

MR. GALLAGHER:  Brian Gallagher for Hudson River Park Trust, and this is Laurie Silberfeld, counsel at Hudson River Park Trust.

THE COURT:  I think you all know Mr. Hickey, my law secretary, who you have either spoken to or met with individually -- well, not individually, but in

1

2      the individual cases.

3             I just want to clear up one thing for the

4      record.

5             In a conversation, in a conference call with

6      Mr. Hickey, there was an agreement that on the cases

7      there is an amended complaint and that everybody is

8      agreed that the motions to dismiss are going to cover

9      the amended complaint.  That's why we are having

10     argument today.

11            MR. FRIEDMAN:  We signed a stipulation to that

12     effect.

13            MR. ROBERTSON:  Judge, I have the stipulation.

14            THE COURT:  My court officer will take it and

15     we'll put it in the file.

16            MR. ROBERTSON:  I did not bring extra copies,

17     unfortunately.

18            THE COURT:  I don't need extra copies, but if

19     you all need copies, you can figure out, before you

20     leave, one person who can make a copy and distribute

21     it or give Mr. Potter the ID's and let you all make

22     copies.  Even better, why don't you get me another

23     copy of this.

24            MR. ROBERTSON:  We'll conform copies.

25            THE COURT:  That's terrific.

26            Just one other thing:  I have, today, two

1

2    motion sequences on.  I have the motion to dismiss and

3    the motion to reargue, and I think that's everything.

4         There is another motion --

5         MR. FRIEDMAN:  Your Honor, there are two

6    motions to dismiss.  One by Air Pegasus and a separate

7    motion by the Trust.

8         THE COURT:  Correct.  I just need to confirm

9    one thing.

10        (Brief pause.)

11        THE COURT:  I am just confirming what I already

12   knew, which is that the motion from last week, which

13   is some of the related parties, that has been fully

14   submitted is not before us today and we are not going

15   to be rearguing that.

16        I guess, the petitioners in the Article 78,

17   Mr. Robertson, it looks like it's your client.

18        MR. ROBERTSON:  Judge, I'm not a moving party.

19        THE COURT:  I just want to make sure -- I know

20   you are not moving.  I just want to make sure I got

21   the names and the faces and we're set.

22        Okay.

23        Which of the defendants wish to start?

24        MR. FRIEDMAN:  I guess I'll start, your Honor.

25        Air Pegasus has moved to dismiss the action

26   against it on the ground that it fails to state a

claim against Air Pegasus.

Now, originally, there were two claims against the Trust:  Article 78 claims that they had somehow violated the public trust or they had -- acted arbitrary and capriciously.

There was a third claim against Air Pegasus for intentional interference with business.  That was the only substantive claim against us and we believe, for the reasons stated in our brief, it doesn't state a claim against us.  For intentional interference with business, a party must go against a third party who has a business relationship with the plaintiff and that somehow, by speaking to this third party or taking some action with respect to that third party, we have interfered with the business relationship between the plaintiff and that third party.  There is no such claim here.  No such claim at all.

The claim is that somehow, by somehow raising the fees with respect to the plaintiff, we have somehow interfered with some unnamed relationship that they had with other parties.  And we cite a whole series of cases that say -- that does not state a claim against -- for economic interference with economic relationships.

Our actions, albeit these are the plaintiff,

the petitioner in this case, and there is no action --
we have taken no action whatsoever against some
unnamed third party.

Now, they claim that somehow the relationship
they had with other customers of theirs would somehow
be affected, but that's not what this claim states.
There must be a -- we must act vis-a-vis the third
party.  And we cite cases with some effect on some
unknown third party is not sufficient to state a claim
for interference with contract.

Secondly --

THE COURT:  Well, would it make a difference if
they identified the third parties, if they could
establish that they had previously contracted with
Tour Operator A, B, C and D to provide rides at $30 an
hour and now, because of your fee increase, they were
going to charge $40 an hour and the tour operator was
going to cancel the contract?

MR. FRIEDMAN:  That's not enough, your Honor.

THE COURT:  Why not?

MR. FRIEDMAN:  We cite a case that says exactly
that situation; where they say because we raised the
fees that somehow it will affect their customers.

And I know we cite a case directly on point
that says that is not enough to do it.  First of all,

1

2          they haven't said we had -- in their complaint they

3          haven't said we have a relationship with X and this

4          will interfere with our relationship with X.  They

5          haven't cited any specific party whatsoever and,

6          therefore, it's simply not enough to say somehow our

7          relationship with customers in general will be

8          affected.

9               I mean, I don't even think they cite that, your

10         Honor.  I mean, in some affidavits that came later

11         they may have cited it, but it's certainly not in the

12         complaint, and that is simply not good enough.

13              In addition, in order to -- there are three

14         claims.  There has to be an existence -- they have to

15         cite a business relationship with a third party.  They

16         haven't cited that.

17              Secondly, they say we interfered with it by

18         dishonest, unfair or improper means.  What are the

19         dishonest, unfair or improper means?  I mean, this is

20         not like interference with a contract where there is a

21         lesser requirement.

22              THE COURT:  Rather than, I guess, try to parse

23         out the causes of action here, because you can't

24         separate out the unfair means from the Article 78

25         claim in which, broadly speaking, there is some claim

26         that your clients have retaliated as a result, and

1

2          that the fee increase is retaliation and was not

3          implemented properly.  So, maybe you can go on to

4          address that.

5                    MR. FRIEDMAN:  Well, your Honor, we deny that,

6          absolutely deny it.

7                    Secondly, retaliation -- I mean, retaliation is

8          the magic word under the First Amendment.  You have to

9          have State action.  For First Amendment retaliation,

10         which is what they are talking about, there must be a

11         governmental entity.  There is no governmental entity.

12         In other words, it must be the government that

13         retaliates.

14                    It's true that under New York law, and we cite

15         this in our brief, there are some times that a private

16         party may be sued for retaliation, but it must be --

17         very specific statute; safety, for example,

18         environmental.  There are some private statutes that

19         talk about retaliating against someone because they

20         reported a safety violation or they reported an

21         environmental action.  None of that exists.

22                    THE COURT:  I know they are not your client,

23         but what is the Hudson River Park Trust if not a quasi

24         governmental agency?

25                    MR. FRIEDMAN:  That's not us, your Honor.

26         That's not us.  And we cite cases where a lessee of a

government entity is not a state actor for purposes of

a retaliation case.  It just doesn't exist.

Secondly, there must be -- and there is a

Supreme Court case right on point -- there must be

close proximity in time between the exercise of First

Amendment rights and the retaliatory action.  And

there is no close proximity in time.  It's a year

between, you know, their complaint to the Hudson River

Trust and -- over a year.  I think it was January of

2005.  And we point that out -- over a year between

what they have considered to be their First Amendment

activity, namely complaining to the Hudson River

Trust, and our retaliatory action, namely, you know,

asking for an increase in fees.  And, under Supreme

Court law, that's not good enough.

So, if they are going to talk about

retaliation, which has a magic -- a very specific

definition under First Amendment law, it doesn't

apply:  No state action here by us, and number two, no

close proximity in time.

So, you can't just throw out these terms "you

retaliated a year and a half after we complained to

the Trust about something bad that you had done" and

the retaliatory action.  I mean, we have denied it.

Mr. Trank (phonetic), we put in an affidavit saying he

has nothing to do with the increase in fees which are two years old.  In the meantime, by the way, they have increased their prices to the public at large 40 percent in two years so that the increase in fees on the face of it has nothing to do with some action that took place a year and a half before.

So, focusing purely on the retaliation claim as the basis for the improper activity, it just won't work.  You can't just throw out a term "retaliation" without looking at the very specific provisions of First Amendment retaliation, which is what they are talking about, which simply doesn't apply.

THE COURT:  Do you, on your client's behalf, have a position on the petitioner's claims against your co-respondent?

MR. FRIEDMAN:  Absolutely.

THE COURT:  In which they are claiming that the Hudson River Park Trust, and I will use this term broadly, has failed to fulfill its responsibility to investigate the need for the price increase, failed to fulfill a number of duties and, frankly, that they are a State actor?  So, what is your position on the motion to dismiss against them?

MR. FRIEDMAN:  Your Honor, I am going to --

THE COURT:  I am sure they are going to tell

1

2     me, but --

3          MR. FRIEDMAN:  I will tell you a little bit

4     about Mr. Gallagher's position on that.

5          There has to be a duty fixed by law, specific

6     duty fixed by law which -- that's what an Article 78

7     is all about:  a mandamus, do your duty.  The right of

8     a plaintiff and the duty of the governmental agency

9     must be fixed by law.

10          Now, all they cite as the duty fixed by law

11     which requires them to do something is the statute,

12     the statute which says maintain the park.  Maintain

13     the park and follow the public trust.  You must, you

14     know, somehow, not violate the public trust.  You

15     acted arbitrarily and capriciously.  There is no

16     specific duty that they cite that they violated or we

17     violated.

18          Now, we have a contract with them.  The permit

19     is a contract and the permit requires us to establish

20     fees which are fair, reasonable and nondiscriminatory.

21     And if we violate that term, they can sue us.  We have

22     a relationship with them.  It's not like these terms

23     are totally meaningless and can't be enforced.  It's

24     something that they can do to us.

25          First of all, the permit very specifically says

26     no third party.  Paragraph 50 of the permit says no

third party can assert any rights here, so it's not like these terms are totally unenforceable.  They are enforceable.  They are enforceable by the Trust but they are not enforceable by the third party who comes in here and says, "Hey, you're not enforcing the terms of your contract."  They can't do that.

First of all, Article 78 law doesn't allow you to enforce the terms of the contract.  It must be a duty fixed as a matter of law.  And the only duty that they have cited are these general auditory terms:  Do not violate the public trust, maintain the park, do not act arbitrarily and capriciously.

Now, there was an episode where the park came in and wanted to know something about our third-party contracts, the consulting contract, but the reason why the park insisted on finding out about the park is because their fees depended upon the amount of money that we collected and under those circumstances they came in and did that.  But, there is no duty fixed, as a matter of law, other than these general terms about maintaining the park and not violating the public trust, and that is not a basis for an Article 78 proceeding.

THE COURT:  All right, I am going to move on to the next defendant.

We're going to skip over a few lawyers in between.

MR. GALLAGHER:  Initially, I think it's important to point out to the Court that the nexus of Liberty to the Heliport is a sightseeing agreement that was entered into between Air Pegasus Heliport and Liberty in 1996.

By the express terms of that agreement, and I refer to definition Section 1B, the term "current schedule of charges" is defined as follows, and I quote --

THE COURT:  I'm going to distract you from that reading and ask you:  What did your client do when this fee agreement was proposed?  What obligation do you think your client has to do anything at all, other than say, "That's fine with us"?

MR. GALLAGHER:  In that context, it's important to know that liberty actually agreed that Air Pegasus could freely change these charges in this very agreement.

As far as what the Trust did or did not do, it really all comes back to the permit.  As has been pointed out by the law professor, there is no third-party beneficiary rights in the permit.  Number two, other than the recent review by the Trust of the

increase to the fees and charges solely because they

were claimed to be unfair and discriminatory, and

under Section 34 of the permit, only in that context

does the Trust have an obligation to review. And we

did. And we found that because the charges were

wholesale to all operators of the airport, in other

words, it was applied across the board, we found no

reason to determine that they were unfair.

THE COURT: So is it your position that if the

charges were increased $150 an hour or $1,000 an hour

or $5,000 an hour, that as long as everybody was

charged $5,000 an hour more, that would be all you

need to do?

MR. GALLAGHER: Well, again, we go back to the

language of the permit. The permit specifically

provides that the Trust -- sorry, the permit does not

require or even authorize the Trust to approve changes

to the schedule of charges. Only when there is a

claim of discrimination or unfair treatment does the

Trust have an obligation, and that is contained in

Paragraph 34 of the permit.

THE COURT: So I am going to try to get a

narrow answer.

The answer to my question then has to be, yes,

if they wanted to raise everybody's charges $5,000 an

hour or $1,000 an hour or whatever it was, your position is that the permit doesn't allow your client to review the reasonableness of those charges or that these charges are reasonable.

MR. GALLAGHER:  That's not the position.

THE COURT:  Okay, then, could you clarify the position?

MR. GALLAGHER:  The word "unfair" is something that is -- that has to be determined by particular facts, let's say.  So, apparently there has been three increases in the fee schedule beyond the one most recently complained of.  Nothing was heard of that. The Trust did not approve of those.

If all of a sudden an increase is implemented that is, you know, shocking to the conscience, then that goes to fairness and we would have to look at that.  But we don't have that here, your Honor.

THE COURT:  So there is some inherent authority that your client has to review the fairness or the reasonableness of charges when they get to what you might describe as unfair or outrageous.  I know that term "outrageous" is not in there, but that's essentially what you are saying?

MR. GALLAGHER:  That's correct.

THE COURT:  Did the Trust review this charge?

1

2          MR. GALLAGHER:  The Trust reviewed the most

3     recent charges.  As a matter of fact, if you go to

4     Exhibits 10 and 11 of the affidavit of Thomas Yessman,

5     Y E S S M A N, in opposition to the Trust's

6     cross-motion, when complaints were lodged in 2005

7     about the fairness of the fees and that the fees were

8     discriminatory in nature, the Trust wrote to various

9     operators at the Heliport saying that we have no

10     obligation to generally pass upon fees and charges

11     pursuant to the terms of the permit.  Essentially, APH

12     has the right to make those changes as it deems fit,

13     unless, of course, unfairness and discriminatory

14     behavior is complained of, and that is what was

15     complained of.

16          And we reviewed and made a decision, based upon

17     the information that we had – and it was the correct

18     decision, we believe – that since the charges were

19     across the board, they were not unfair, that there was

20     no basis for discrimination.

21          THE COURT:  Your motion – I want to make sure I

22     have the procedural history correct here – is a motion

23     to dismiss essentially for failure to state a cause of

24     action.

25          Now, I understand how your co-defendant is

26     making that argument.  But, in order for me to decide

whether these charges are fair or unfair and whether
your review is adequate or not, don't I have to either
hold a hearing or convert this to a summary judgment
motion?  How do I decide that on these papers?

MR. GALLAGHER:  You're absolutely correct.
Actually, our motion is a two-prong motion.  It's
based upon documentary evidence, as well, in addition
for failure to state a cause of action.

THE COURT:  And how do you suggest that I, as
the trier of fact, would decide whether this charge
was fair or unfair?  Or is it the amount of the
charge?  In other words, it is arguably, some might
say, a small charge.  I would like to go back to my
$5,000-an-hour question.  Is there some charge that
you think a court could review the Trust's decision?
I'm not clear if you are saying that basically the
amount of the charge is what controls or the fact that
it is across the board.

MR. GALLAGHER:  I think it is a combination of
those factors, your Honor.

MR. FRIEDMAN:  Your Honor, may I say something?

THE COURT:  You can have the last word, but I
want to try to keep Air Pegasus and the Trust's
arguments a little bit separate here because I think
you are possibly similarly -- you are not necessarily

1

2      in the same position on every argument.

3              So, you think it's both?

4              MR. GALLAGHER:  That is correct.

5              THE COURT:  I don't know if I have any other

6      questions.

7              Is there something that you would like to add

8      that I haven't asked?  Because I would like to give

9      you a short reply after you hear from petitioners.

10             MR. FRIEDMAN:  I just wanted to answer your

11     last question.

12             THE COURT:  You can do that at the end,

13     otherwise we are going to have too much back and forth

14     from me.

15             So, I am going to go on to petitioners and then

16     I will come back.

17             Okay.

18             MR. ROBERTSON:  Judge, let me directly answer

19     the question I think you are looking for.

20             What is the standard for the Trust?  It is not

21     enunciated in particular in any law.  We admit that.

22     We do not believe that it is fatal to our claim.  We

23     believe that the law supports the concept that public

24     entities must operate within reasonable boundaries.

25     We do not rely on rights under the contract as

26     third-party beneficiaries.  We are relying on the

contract as illustrative of the kinds of
responsibilities that this body has.

THE COURT:  Just to ask the same question,
perhaps the same ridiculous example that all the
lawyers think I am stuck on, but that's where I am.
This isn't a $5,000-an-hour increase.  We all know
that.  And should I be in the process of reviewing
every request for an increase without a contract
giving the Court the authority to do that or them the
authority?

MR. ROBERTSON:  I am going to give you the
straight answer:  No, if the Court is satisfied that
there is a procedure in place in the public entity
that is permitting an exclusive operator who has a
monopolistic power over public property to do that.

Now, Mr. Gallagher has now made the
representation that the Trust reviewed this.  That
comes as news to me because he is pointing to
correspondence that are not from the Trust nor
indicate that the Trust, which are appointees of the
governor and the mayor, conducted any kind of
proceeding.  Rather, they are authored by staff
members.  Staff is not the entity.  There is nothing
in these letters that indicate that any process was
undertaken.

1

2          The amount:  The proverbial straw that breaks

3      the camel's back.  $10 can be catastrophic.  5,000

4      would be shockingly catastrophic.  I don't think your

5      Honor can nor should, on this motion, entertain that

6      issue.  This is a motion as to whether we have well

7      pled a cause of action that is cognizable under

8      Article 78.  I believe we have.  They are now

9      contesting facts.

10          THE COURT:  Could you address --

11          MR. ROBERTSON:  Mr. --

12          THE COURT:  -- Friedman's client?

13          MR. ROBERTSON:  Our claim is tortious

14     interference with business relationships.  We are not

15     claiming tortious interference with a particular

16     contract.

17          It is sufficiently pled and is known and is

18     undisputed that Mr. Trank, as an officer, former

19     officer but director of our company, knows how we run

20     our business and knows how much we can pass on.  He

21     doesn't have to go out and do his own dirty work.  All

22     he has to do is have the HRPT stand by without any

23     kind of review and force us into a position where we

24     have to be the messengers for him.  We have to pass on

25     the trust and the price kills our relationship.

26          Mr. Lafatchi (phonetic) has submitted an

affidavit that details what their reaction has been.

So, do they need to know?  The case law is clear.  They don't have to be identified in chapter and verse on what they have done.  They know who our business partners are.  They don't have to be shown to have gone out and have done their own dirty work.  They caused it.  And it's ludicrous for them to take the position that, well, since you can't get our fingerprints on the actual communications, we haven't done anything.

Retaliation --

THE COURT:  Before you leave the last one, is there a requirement that this be done intentionally for the purpose of interfering with these relationships or is it your position that if they had their own, let's call it, pure economic interest, they wanted more income and it happened to have a by-product effect, that would be enough?

MR. ROBERTSON:  Judge, no, we do not take the position that they had a pure economic interest that they could be charged.  That's a question of fact; okay?

Retaliation that we have alleged, and Professor Friedman has tried to kidnap my words and now my words mean only something in the context of the First

Amendment.  I want to bring him back to the context of
Webster's New Dictionary.  Retaliation means what
retaliation means.  It's done for the purpose of
injuring.  It's malevolent.  It's not in good faith.
That is the meaning that we use "retaliation" more.
So, I don't accept his First Amendment analogy.
That's neat.  I haven't alleged any First Amendment
claim.  I alleged that these people are out to kill my
business and they are killing it because we cooperated
with the HRPT to alert them to the fact that they were
being ripped off.

THE COURT:  If --

MR. ROBERTSON:  Can I answer one more question?
Professor Friedman keeps on harping on this distance
in time.  There is no distance in time here.  We began
giving information to the HRPT in early January 2005
and perhaps even before that, according to my
information.  It continued right up until they
commenced their suit against APH in January 2006.  17
days later, we get hit with this first announcement
that our fees are going up and that, ultimately, all
our discounts are gone.  Now, that's pretty close, as
far as I am concerned.

THE COURT:  If, hypothetically, HRPT had
conducted the kind of review I believe you are arguing

they should have and it happened to come close in time
to your cooperation, does that satisfy what you think
they should have done?  I mean, I guess my question
is:  Is this litigation really about whether HRPT
should have conducted a review or is it your position
that there shouldn't be a fee increase at all?

        MR. ROBERTSON:  I didn't hear the last --

        THE COURT:  Is it your position that there
shouldn't be a fee increase at all?

        MR. ROBERTSON:  No, Judge, that's not my
position that there shouldn't be a fee increase.  I
think the HRPT has a responsibility to the public to
examine not only if our fees are reasonable, but
whether the lessee that they have on the site is
paying them a reasonable fee.  They are obligated to
make the appropriate amount of revenue off that site
for the betterment of the park.  That's part of their
Trust responsibilities.  No, I don't take that
position.  I take the position that there must be a
rational review process that they must conduct.

        And I point out to the Court that their
predecessor who was in charge of this site actually
did do that kind of review.  It got the fee schedule,
it approved the fee schedule in writing and that is
the pattern that should be followed.

Now, they are not the DOT.  I agree with that.
But they can't just abandon the DOT's practice when
they take over the very same spot and the very same
agreement.

THE COURT:  And isn't your complaint, just to
play devil's advocate, something you should take up
with the people who appoint the Trust authority?  In
the absence of any agreement requiring them to do the
kind of review that I guess you would say good
government ought to be doing, is that something for
the Court to now dictate?

MR. ROBERTSON:  Absolutely.  That's what the
courts are here for.  This is another branch of
government, in my view, that has run amuck.

THE COURT:  Okay.

You can briefly respond or add to your
co-defendant's argument.

MR. FRIEDMAN:  Your Honor, with all due
respect, it's not your job to decide whether they are
fair or not.  It is your job to decide whether the
Trust, in deciding that it was fair, acted arbitrarily
or capriciously.

THE COURT:  And how do I do that without
holding a hearing?

MR. FRIEDMAN:  Well, your Honor, $10 a

passenger fee?  You have a lot of the financial data

in front of you.  They reviewed it and they decided

this is the first increase in two years.  They have

increased their fees 41 percent in two years.  They

are allowed to make more money.  We are not allowed to

make more money.

        We have looked at the way which the Trust

operated.  I mean, I cite some cases which say it is a

matter of judgment.  And when a government agency has

judgment, it's not the Court's job to substitute its

judgment for the government's judgment.  It's only

your job to decide whether, in exercising their

judgment, they acted arbitrarily or capriciously.

        THE COURT:  So now you can answer the question

I have asked everybody else.  I want to be equal here.

Is it the amount of the increase?  I mean, if I were

looking at a thousand dollars a passenger or $5,000,

would it be your client's position that the Court

would have more of a role?

        MR. FRIEDMAN:  Yes, I would.  Because at that

point, you can decide that they acted arbitrarily or

capriciously, that is to say improperly, in finding

that it was fair.  But I don't think you have -- you

know, it's not your job to say it's fair.  It's your

job to decide whether, in the circumstances of this

case when they decide it was fair, that somehow that's
an arbitrary decision.  And I don't see anything
anywhere in what's before your Honor that shows that
they acted arbitrarily and capriciously in deciding
that this fee increase was okay.

THE COURT:  Okay.

I am going to share Mr. Hickey's excellent
question.  I am not going to take credit for it.  Is
there an answer from the Trust in these papers?

MR. GALLAGHER:  There is no answer.

THE COURT:  So this is a pre-answer motion.

The question then is:  If it's a pre-answer
motion and everybody is sort of saying that I can
essentially -- now it seems this is sort of morphed
into somewhat of a different argument.  Air Pegasus
has a contractual argument, I understand that, but in
terms of the Trust that I should defer to whatever
review the Trust has done, how do I make that decision
when you haven't answered?  This is a pleadings motion
and yet you want me to consider all these affidavits
and documentary evidence and affidavits from financial
officers on both sides.  Can you answer that question?

MR. GALLAGHER:  Well, the truth is, your Honor,
that it's been stated that clerks made this decision.
That's just not so.  The decision was made by the

president of the Trust and by counsel to the Trust who

are authorized to do so by the Trust bylaws.  That's

one.

Two, the reasonableness of the fees -- I'm

sorry, can you repeat your question?

THE COURT:  My question is:  Much of this oral

argument and much of what, I guess, you are presenting

says, basically, it wasn't unfair.  We looked at this.

It's only $10.  Here are the affidavits, here is the

financial data.  But a motion to dismiss, all I should

read are the memos of law and the complaint.  Not --

and maybe some documentary evidence.  Not all these

affidavits and letters from staff people.

Essentially, I feel like we are arguing a

summary judgment motion and that's really my question.

How do you prevail solely on the pleadings?

MR. GALLAGHER:  Based upon the language of the

permit and the exhibits, specifically the exhibits to

Mr. Yessman's affidavit that I was referring to

before, Exhibits 10 and 11.

THE COURT:  Okay.

Anything else you want to add?

MR. GALLAGHER:  That is all, your Honor.

MR. ROBERTSON:  Judge, can I respond on

Exhibits 10 and 11?

1

2          THE COURT:  Briefly.

3          MR. ROBERTSON:  I just want to get the

4    chronology now.  Exhibits 10 and 11 are totally

5    irrelevant.  Exhibits 10 and 11 are, by their terms,

6    dated January 2006.  The fees at issue here were

7    announced in May.  There was no review.

8          MR. GALLAGHER:  That's not true.  The purpose

9    of bringing those exhibits up is as follows:

10          The allegation has been made that the Trust

11    flipflopped and that in '06 we undertook an obligation

12    to review; okay?  But those very exhibits clearly

13    indicate that we were reviewing solely because a claim

14    of unfairness was made.  We acknowledge in those

15    exhibits that we have no obligation to review.  In

16    fact, Liberty itself agreed in the sightseeing

17    agreement that Air Pegasus could change those fees in

18    its sole discretion.  Now, after agreeing to that in

19    1996 they are looking to us for protection.  They have

20    no rights to the permit and they agreed in 1996 that

21    APH could do that?  It makes no sense, your Honor.

22          MR. ROBERTSON:  Judge, one more point.

23          That has been our position.  The position your

24    Honor stated is this Court's review at this time on

25    this motion is limited to the pleadings and whether

26    they are well pled and we believe it's well pled and

1
2      we think the law supports us on this.
3              THE COURT:  I know this is on all of your
4      clients' minds.  This was very helpful.  We'll do our
5      best to be expeditious in the decision, is all I can
6      say at this point.
7              Thank you very much.
8              MR. FRIEDMAN:  Your Honor, are we going to
9      argue the motion for reargument or was that a separate
10     motion?  And that only has to do with the financials.
11             THE COURT:  I was hoping to dispense with
12     reargument of a reargument motion and have you rest on
13     the papers.  They are here.  I can read them and I
14     think this was helpful, but it's the time I have.
15             MR. ROBERTSON:  Thank you, Judge.
16             THE COURT:  Thank you very much.
17                      *****************
18     CERTIFIED THAT THE FOREGOING IS A TRUE AND ACCURATE TRANSCRIPT
       OF THE ORIGINAL STENOGRAPHIC MINUTES IN THIS CASE.
19
20
21     ------------------------------
22              ERIC ALLEN, RPR
                SENIOR COURT REPORTER
23
24
25
26

*Eric Allen, RPR*
*Official Court Reporter*

Exhibit 5

Memorandum of Law by Defendant Air Pegasus Heliport

in Support of Motion to Dismiss Plaintiff's Amended

Complaint, dated November 28, 2007.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NEW YORK HELICOPTER CHARTER, INC. and        :
MICHAEL ROTH individually
                                             :     07 Civ. 4069
                        **Plaintiffs**
                                             :

            -against-
                                             :

AIR PEGASUS HELIPORT, INC, HUDSON RIVER      :
PARK TRUST and the FEDERAL AVIATION
ADMINISTRATION                               :

                        Defendants           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## <u>MEMORANDUM OF LAW BY DEFENDANT AIR PEGASUS HELIPORT, INC. IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT</u>

<u>Preliminary Statement</u>

Plaintiffs have filed a second amended complaint, adding additional assertions concerning state action, various complaints concerning alleged favoritism toward another helicopter company, ZIP Aviation LLC and as well as focusing on a new audit report relating to Air Pegasus which has little relation to any of the relevant legal issues. The additional paragraphs about state action merely make conclusory assertions, repeat allegations made elsewhere or make legal arguments rather than add any factual statements relating to the disputed points. For all the reasons outlined in our original submissions, this case must be dismissed. If there is no state action, then there cannot be any equal protection or due process violations, nor can there be a claim under the dormant Commerce Clause (First through Fourth Causes of Action, pars. 211-261). Nor does the Airline Deregulation Act apply in this situation since only private contract issues are involved, not any State laws (Fifth Cause of Action, pars 262-266). The final claims (Sixth through Tenth Causes of Action, pars. 267-423) are brought under Article 78 of the New

York CPLR, and federal courts have no jurisdiction to hear such claims. For All of these reasons the amended complaint must be dismissed.

## STATEMENT OF THE CASE

Plaintiffs have submitted a 45-page amended complaint, consisting of 324 paragraphs to replace the 36-page complaint with 257 paragraphs contained in the original complaint. The amended complaint contains six causes of action (Eighth through Thirteenth Causes of Action) which are based upon Article 78 claims (New York CPLR § 7801). Plaintiffs made no effort in their last submission to defend such claims. Thus there is no basis for continuing to include them.

With respect to the additional paragraphs, we include as a supplemental exhibit, a marked-up copy of the amended complaint showing how many paragraphs of the original complaint are continued in the new complaint. The exhibit identifies those repeated paragraphs in the new complaint. It also indicates which paragraphs are new.

What this exhibit shows is that 224 paragraphs duplicate the paragraphs in the original complaint. One hundred paragraphs are new. The new paragraphs They are found in pars.167 to 212, and 234 to 279.  In addition, plaintiffs have added a new section dealing with allegations of state action, pars. 154 to 166. Finally there are additional paragraphs dealing with the equal protection claim (pars. 220 to 233). Plaintiffs have added some isolated new paragraphs as well.

## ARGUMENT

## I.    APH CANNOT BE CONSIDERED A STATE ACTOR

In our prior papers, we have shown that APH cannot be considered a state actor for the following reasons: (1) APH is a Delaware Corporation which is the fixed  base operator at 30th Steeet Heliport pursuant to a permit originally issued by the New York Department of Transportation. (Amended paragraph ["Apar"] 9-10) . As a private entity it is not a state actor

unless it performs functions that are the exclusive prerogative of the State, or its actions are closely entwined with state functions, or there is a close nexus between the State and the challenged action or the State has compelled the actions complained of. (APH's Opening Memorandum of Law in Support of Motion to Dismiss "APHOpenMem" at 7-15).

## II.    THERE IS NO EQUAL PROTECTION VIOLATION

Plaintiffs make no effort to amend its constitutional claims, except for the equal protection claim. Plaintiffs add paragraphs 220 to 232 to bolster its original complaint. Of course, if there is no state action, there cannot be any equal protection claim. But even if state action were to be found here, the equal protection claim will not lie, nor will the other claims, as noted in our original submissions.

The only basis for an equal protection violation is a "class of one" claim.[1] Plaintiffs' new allegations simply repeat allegations asserted elsewhere in their amended complaint. They assert that they have suffered damage because of alleged discriminatory pricing (Apars. 221-225). They then repeat their state action allegations that HRPT was heavily involved in APH's decisions (Apar. 227-231).

None of these allegations alter the defect in the equal protection claim. We noted in our reply memorandum that no "class of one" allegation can be upheld except in extreme situations. The Second Circuit has established an extremely high burden before a "class of one" equal protection claim can be accepted. It noted in *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006):

> We have held that class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves. . . . . Accordingly, to succeed on a class-of-one claim, a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those

---

[1] There was no fundamental right involved or any class protected by heightened scrutiny.

3

of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.

In a series of cases, differential treatment of third parties in terms of rates or prices or government benefits have not satisfied the "class of one" test. In a leading Second Circuit case, *Consolidated Edison of New York, Inc. v. Pataki*, 292 F.3d 338, 345 (2d Cir. 2002), the New York legislature had passed a law denying Consolidated Edison the right to recover from its ratepayers certain costs associated with closing the Indian Point Nuclear Facility. The utility argued that the law violated the Bill of Attainder clause since it amounted to punishment. While the Court upheld that possibility of that claim, it expressed doubt as to an equal protection violation under the "class of one" principle.

> We thus do not decide whether Chapter 190 violates the Equal Protection Clause, which supplied one basis for the district court's injunction. We are skeptical, however, that the Clause would require invalidation of Chapter 190: "[M]ere under-inclusiveness is not fatal to the validity of a law under ... equal protection[,] even if the law disadvantages an individual or identifiable members of a group." *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 471 n. 33, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977) (internal citations omitted). To be so invalidated, the classification must have "no rational basis," *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), and we doubt that the present statute meets that standard.

See other cases discussed in APH ReplyMemo at 5-7.

There is no basis for an equal protection claim.

## III.    NO CLAIM WILL LIE UNDER THE AIRLINE DEREGULATION ACT

Plaintiffs have made minor changes in their claims under the Airline Deregulation Act, (49 U.S.C. § 41713(b)(1))(Seventh Claim, pars. 300-305). That law states: "A State, political subdivision of a State or political authority of at least two states may not enact or enforce a law, regulation or other provision having the force and effect of law, related to the price, route or service of an air carrier." Plaintiffs have added paragraph 301 which states that "Congress has

4

the power to dictate which aircraft should be allowed to land and take-off from airports in order to promote a nationwide transportation system and to control interstate and foreign air traffic flow."

We have previously argued that APH is not a State or political subdivision, and there is no "law, regulation or other provision having the force of law" at issue here. See APH Open.Memo at 17-22. APH ReplyMemo at 8-10. We also cited a series of cases that showed that disputes that derive from private contracts are not preempted by the Act. See *American Airlines v. Wolens*, 513 U.S. 219, 229 n. 5 (1995): "the word series ' law, rule, regulation, standard, or other provision,' as the United States suggests, 'connotes official, government-imposed policies, not the terms of a private contract.'" Thus The Court explained: "A remedy confined to a contract's terms simply holds parties to their agreements -- in this instance, to business judgments an airline made public about its rates and services." 513 U.S. at 229. See other cases cited in APHMemOppPI at 10-13.

See also *Lyn-Lea Travel Corp. v. Amercian Airlines, Inc.*, 293 F.3d 282 (5th Cir. 2002)(dispute over travel agent booking contract not preempted by ADA); *Skydive Factory, Inc. v. Maine Aviation Corp.*, 268 F.Supp.2d 61 (D. Me. 2003)(dispute over maintenance and inspection contract not preempted by ADA); *DeTerra v. American West Airlines, Inc.*, 226 F.Supp.2d 274 (D.Mass. 2002)(dispute over passenger contract arising over failure to board particular flight, not preempted by ADA); *Seals v. Delta Airlines, Inc.*, 924 F.Supp. 854 (E.D. Tenn. 1996)(dispute over contract to provide ground transport between gates at airport not preempted).

This dispute concerning the heliport Permit and the settlement agreement between APH and New York Helicopter is not preempted by the law in question.

## IV    THERE IS NO BASIS FOR ADDING ADDITIONAL CLAIMS OR DEFENDANTS

As noted above, plaintiffs have added three additional claims and one additional defendant, Zip Aviation .LLC. We do not believe that this Court permitted such a widening of the dispute between the parties. The direction was simply to add additional factual allegations dealing with the contentions contained in the original complaint.

We would point out that Plaintiff NYH had previously filed an antitrust complaint against APH and another helicopter company, Liberty Helicopters, Inc. in 2004 That action was brought in state court under New York law, General Business Law § 340. (The 2004 complaint is attached as Exhibit A to the declaration of Steven Trenk in opposition to the plaintiffs Motion for Preliminary Injunction. See pars. 22-26 of Exhibit A to that declaration). NYH then entered into a settlement agreement with APH in which it released APH of all claims, including the antitrust claim. See Trenk Declaration, Exhibit B, par. 7.

Thus NYH trots out an anti-trust claim whenever it feels it would help its litigation position.

We believe that the antitrust claim is deficient in many ways, including the fact that the complaint does not allege antitrust injury.  *See e.g.*, *Bushnell Corp. v. ITT Corp.* , 973 F.Supp. 1276 (D. Kans. 1997). In addition, the claim may be foreclosed by the state actor exception to antitrust liability or the *Noerr-Pennington* doctrine. *See e.g., Campbell v. City of Chicago*, 823 F.2d 1182 (7th Cir. 1987).

Plaintiffs also seek to assert a private cause of action directly under the Commerce Clause (pars. 267-279).  The claim focuses on alleged excessive fees and plaintiffs' eviction from the heliport, the subject matter of Justice Cahn's recent decision denying their motion for a preliminary injunction. No such claim can possibly be asserted. "There is no private action for

damages under the Commerce Clause." *Washington v. United States Tennis Association,* 290

F.Supp.2d 323, 329 (E.D.N.Y.2003)

    We believe that further response is not necessary at this point until the Court determines

that it was appropriate to expand the original complaint to add these new claims and a new

defendant.

## CONCLUSION

    For the reasons stated above, the complaint in this action should be dismissed for failure

to state a claim on which relief can be granted.

Dated:  New York, N.Y.
        November 28, 2007

                          Leon Friedman (LF#7124)
                          148 East 78th Street
                          New York, N.Y. 10021
                          (212) 737-0400
                          Attorney for Defendant
                          Air Pegasus Heliport, Inc.

Of counsel

    Christopher P. Gengaro
    Lentz & Gengaro

Exhibit 6

Letter Leon Friedman to Judge Miriam Goldman

Cedarbaum, dated November 16, 2007.

LAW OFFICES OF

# LEON FRIEDMAN

148 EAST 78ᵀᴴ STREET

NEW YORK, N.Y. 10075

———

TELEPHONE (212) 737-0400

FACSIMILE

(212) 861-9015 / (212) 988-6192

November 16, 2007

The Honorable Miriam Goldman Cederbaum
United States District Court
Southern District of New York
500 Pearl Street
New York, N.Y. 10021

> Re: *New York Helicopter Charter, Inc. et al v. Air Pegasus Heliport, Inc.*
> 07 Civ. 4069 (MGC)

Dear Judge Cederbaum,

I am the attorney for defendant Air Pegasus Heliport, Inc.

I am writing to object to the filing of a proposed amended complaint by plaintiffs in this action (filed on ECF in the early morning of November 14, 2007) which does not correspond to this Court's instructions during the oral argument held in this matter on October 29, 2007. During that argument, this Court granted plaintiffs permission to file an amended complaint. We believe that the amendment was restricted to remedying possible factual deficiencies in the original complaint with respect to the issues of state action and preemption under the Airline Deregulation Act, the main focus of the oral argument. Rather than follow those instructions, plaintiffs have filed an amended complaint adding a new defendant, Zip Aviation LLC, and adding three entirely new claims, two *under the Sherman Antitrust Act* and one directly under the Commerce Clause. I attach a copy of the amended complaint.

We believe that the new claims go far beyond what this Court permitted plaintiffs to do by way of amendments, are totally frivolous and were imposed in a vain attempt to preserve federal court jurisdiction over the dispute between the parties.

As noted above, this Court went out of its way to allow plaintiffs to amend their complaint in an effort to remedy the obvious deficiencies in its original filings, particularly with respect to its claims of state action and preemption under the Airline Deregulation Act. While some new conclusory statements were added in the new complaint concerning state action, they simply repeat allegations found elsewhere in the

The Honorable Miriam Goldman Cederbaum
November 16, 2007
page 2

complaint, incorporate some of the antitrust claims recited elsewhere, and rest upon a generalized claim that the federal government regulates airspace. See pars. 154-166 of the amended complaint. They also added various paragraphs under the equal protection claim (pars. 220-232) which also are duplicated elsewhere and do not add anything to the "class of one" claim which is so patently deficient. With respect to the preemption claims, plaintiffs added a single paragraph 301 which only states a legal conclusion.

What plaintiffs now seek to do is to add two entirely new claims under the Sherman Antitrust Act (pars. 234-266). All of the facts alleged in those claims occurred months if not years before the original claim was filed. If plaintiffs really believed that they had valid antitrust claims encompassing Zip Airlines, why did they not include those claims in the original complaint? The fact that they did so now shows that they are desperately trying to retain this case in federal court on any basis, no matter how frivolous. In any event, the claims are patently ridiculous. The complaint does not allege any antitrust injury, a strict requirement under the antitrust laws. See e.g. *Bushnell Corp. v. ITT Corp.*, 973 F.Supp. 1276 (D. Kans. 1997). The so-called monopoly was created by a state license and does not give rise to a claim under the antitrust laws. The presence of a state entity and the grant of a governmental license presumably insulate any antitrust claims under the *Noerr-Pennington* Doctrine.

Plaintiffs also seek to assert a private cause of action directly under the Commerce Clause (pars. 267-279). . The claim focuses on alleged excessive fees and plaintiffs' eviction from the heliport, the subject matter of Justice Cahn's recent decision denying their motion for a preliminary injunction. No such claim can possibly be asserted. "There is no private action for damages under the Commerce Clause." *Washington v. United States Tennis Association,* 290 F.Supp.2d 323, 329 (E.D.N.Y.2003)

We would suggest plaintiffs be required to eliminate all new causes of action. If necessary, all the parties should have a conference call with Your Honor to discuss these matters. If plaintiffs are allowed to file this amendment, we would request that any response must await the service of the papers upon Zip Airlines and that defendants be given additional time to file a formal motion to dismiss those claims. In any event, until these issues are resolved, we would request that defendants not be bound by the requirement that we filed any responses by November 27, 2007.

Defendant Hudson River Park Trust joins in this request.

Sincerely,

Leon Friedman

cc.    Robert Hantman, Esq. (without attachment)
       Michael Gould, Esq. (without attachment)