723 P02   DEC 13 '99  13:13

'Termil No. XW 307

# AGREEMENT

AGREEMENT, dated as of the __25th__ day of __March__ 1996, by and between The New York State Department of Transportation and its successors or assigns (hereinafter referred to as "the Department" or the "State"), an agency of the State of New York having an office at Hunter's Point Plaza, 47-40 21st Street, Long Island City, New York 11101, and AIR PEGASUS HELIPORT, INC., a corporation organized under the laws of the State of Delaware, having an office at 25-B Vreeland Road, Suite 201, Florham Park, New Jersey 07932 (hereinafter referred to as the "Operator" or the "permittee"), whose representative is Alvin S. Trenk.

WITNESSETH, That:

The Department and the Operator for and in consideration of the promises and mutual agreements hereinafter contained, hereby agree as follows:

Section 1.     Space

The Department hereby grants to the Operator certain privileges, as hereinafter described, at the West 30th Street Heliport (sometimes hereinafter referred to as the "Heliport"), in the Borough of Manhattan, City and State of New York, for use, occupancy and operation as hereinafter provided, in the following described areas:

Portions of the marginal way, bulkhead and river between West 29th Street and West 30st Street as shown on Exhibit "A" attached hereto and made a part hereof; subject to such state of facts as an accurate survey may reveal.  Together with the exclusive right to use of the fixtures, improvements and other property of the Department located thereon, the said space, fixtures, equipment, improvements, bulkhead, bulkhead level decking and piling, buildings, structures, other property of the Department and all other space including the lands under water at the Heliport collectively referred to as "the Premises" subject to such incidental use by the State as the State may from time to time determine necessary.  Provided, however, such use by the State shall not be so extensive as to substantially impact or limit permitted uses by the Operator.

Section 2.     Term

The term of this Agreement shall commence on the Commencement Date which shall be the date on which the Department first has unencumbered right to the use and occupancy of the Premises.  The

Department shall fix such date, which date shall be at the
Department's sole discretion by delivery of a notice of
termination to the present permittee at the Premises.  Provided,
however, if such Commencement Date has not been fixed by March
18, 1996, then upon notice by the Operator, which notice may be
given any time after March 18, 1996, the Department shall, within
three (3) days of such notice by the Operator, be obligated to
deliver the notice of termination to the present permittee.
Unless sooner terminated or revoked as herein provided, the term
of the Agreement shall expire on and the Expiration Date shall be *200 1*
the day preceding the FIFTH anniversary of the Commencement Date.
The term of this Agreement shall automatically renew for
successive terms of one month each unless cancelled by either
party upon thirty (30) days written notice.  Further, it is
understood and agreed by and between the parties that the
Operator shall not be entitled ,and waives any claims to
relocation benefits provided under state or federal laws.

Section 3.     Rights of User

The Operator shall use and operate the Premises as a public
heliport for the following purposes only and for no other purpose
whatsoever. Use of the permit premise for each of the categories
of uses set forth in sub-paragraphs (a) to (e) below shall be in
accordance with a site plan submitted by the Operator for
approval by the Department within sixty (60) days of the
Commencement Date, which Plan may be amended from time to time
upon application of the Operator.  The site plan shall be a
drawing which locates within the Premises each of the areas of
use described below:

(a) for the storage of cargo and materials and supplies of a
nonhazardous nature; and for business, sales including but not
limited to vending machines, souvenirs, pilot and aviation
supplies, operations and administrative offices in connection
with the operations at the Heliport;

(b) as passenger lounges and waiting rooms;

(c) as a Landing Area for owned aircraft, public aircraft,
charter and sightseeing aircraft; and for the storage of aviation
fuel and for the sale, dispensing and delivery of such fuel to
and into aircraft.  When the uses set forth in sub-paragraph (d)
below are fully utilized, the area set forth for uses described
in this sub-paragraph may be used for the parking and storage of
aircraft but shall be subordinate at all times to use as a Public
Landing Area;

2

#0021848.05
99999-00111

723 P04     DEC 13 '99  13:13

(d) for the parking and storage of aircraft and for the performance of minor maintenance on aircraft. Without limiting the generality of any other term or provision hereof, it is hereby specifically understood that the Operator shall have no right under this Agreement to use the area set aside for uses described in this sub-paragraph (d) and that set aside for uses described in sub-paragraph (c) when the area set aside for uses described in this sub-paragraph (d) is fully utilized for the parking and storage or for the performance of minor maintenance if, as a result of such storage, maintenance or parking, fewer than two pads are available for the landing of helicopters. The Operator's rights of user as to the areas set aside for uses described in sup-para's (b), (c) and (d) shall be non-exclusive; and

(e) for the transportation of persons by any mode of transportation to and from the Premises, primarily for the convenience of persons using the Heliport or other services of the Operator.

Within thirty (30) days of the Commencement Date and upon any application to amend the site plan the Operator shall provide the Department with a certificate of a professional civil engineer with structural expertise, licensed in the State of New York, stating that the Premises are structurally safe and suitable for the specific use(s) proposed at the locations indicated in the site plan. The required certificate must be approved by the Department before occupancy will be authorized. The engineer shall be required to inspect the Premises and provide the Department in a written report, as part of the certificate, evidence that he has inspected the properties including sub and super structures, as well as the basis of the evaluation on the suitability for the proposed use. If the execution of this certificate requires the repair or rehabilitation of any area of the Premises and the permittee desires to use said areas, the permittee will make all required repairs prior to using said areas. In the event the Operator elects to forgo use of said areas by not making repairs, there shall be a pro rata reduction in the Permit Fee based on the number of square feet which are no longer usable. In the event that the certificate states that all or a substantial portion of the Premises may not be used as a Heliport, Operator may terminate this Agreement with no further liability to the Department or the Operator.

It is hereby expressly understood and agreed that the only Aircraft which the Operator and other aircraft operators may operate to, at and from the Heliport pursuant to the terms of

#0022848.05
99999-00111

/23 P05    DEC 13 '55  13:14

this Agreement shall be aircraft which do not exceed a gross take-off weight of 60,000 pounds as certified by the Federal Aviation Administration.

Without limiting the generality of any other term or provision thereof the Operator understands and agrees that it shall not itself nor shall it permit any other aircraft operator to conduct flight training operations (primary or advanced) at the Heliport other than recurrent training of pilots operating primarily at or from the Heliport, without express approval of the Department. In addition to the right to operate the Premises for the purposes heretofore set forth in this Section 3, the parties agree that sightseeing operations constitute the major portion of the business conducted at the Premises. The Operator or any other aircraft operator shall conduct sightseeing operations only upon the prior written approval of the Department of (i) the sightseeing operator and its aircraft and procedures, and (ii) the terms of any agreement between the Operator and any such sightseeing operator, which approval shall not be unreasonably withheld.

Section 4.    Schedule of Charges and Collections

The Schedule of Charges covering the use of the Heliport is attached hereto, made a part hereof and marked Exhibit "B". The Operator shall have the right, from time to time to amend any item of such Schedule of Charges, to make increases or decreases therein and to add or delete additional items thereto upon fifteen (15) days prior notice to Public and the Department.

The Operator shall have the responsibility to collect from each and every operator of an aircraft using the Heliport, other than the Operator, its employees and guests, and shall retain and keep as its own those amounts collected as charges which are in effect under the rate schedule or this or other written agreements for such use at the time of use thereof. The Department shall have no responsibility for the collection or payment of such charges.

Section 5.    Services by the Operator

(a)  The Operator shall perform the work and furnish the services usually performed or furnished by a fixed base operator in connection with the operation of a public heliport facility. Without limiting the generality of the foregoing

M0021848.05
99999-00111

4

obligations, the Operator shall furnish at its own expense the
following services and equipment at the Heliport:

(1)    In connection with the arrival or departure
of aircraft at or from the Heliport, the Operator shall man and
monitor, for the purpose of receiving requests and for
transmitting operations advisories to aircraft requesting the
same, the following radio frequency: 123.05 megacycles (VHF),
and/or such other authorized frequency as may be designated from
time to time by the Department or other the appropriate
governmental authority.

(2)    Upon the landing of any aircraft at the
Heliport, where the pilot of such aircraft desires to park, the
Operator shall direct such aircraft to an assigned parking space
and shall assist in the spotting of the aircraft, in securing the
aircraft and shall provide for the removal of luggage therefrom.

(3)    During the period that aircraft are parked in
the area to which they have been assigned by the Operator, the
Operator shall make periodic inspections of the aircraft and of
the parking area to ascertain that such aircraft are adequately
secured and to ascertain that no unauthorized person or persons
are loitering in the parking area.  If at any time, based on
forecasts issued by the Weather Bureau, adverse weather
conditions involving high velocity winds can be reasonably
anticipated, the Operator will so inform the pilot or owner if
reasonably possible.

(4)    In connection with the departure of aircraft
from the Heliport, upon request by the pilots, the Operator shall
assist with the removal of wheel chocks, control locks and other
security devices.

(5)    The Operator will provide an office for the
purpose of performing the necessary clerical activities connected
with the collection of fees and advisories related to aircraft
movements.  The Operator shall furnish, install and maintain the
radio equipment necessary to monitor the frequency set forth in
subparagraph (1) hereof and shall furnish, install and maintain
wind indicating equipment.

(6)    The Operator shall maintain a lounge where
aircraft passengers and crew may obtain shelter prior to or after
flight and which shall contain reasonable facilities for the
preparation and filing of flight plans and the fulfillment of
other preflight requirements by pilots.  The Operator shall
maintain telephone service for the purpose of contacting the

#0021848.05
99999-00111

Flight Service or Aircraft Traffic Control Center and the Weather Bureau but such service need not be by a direct line. Such telephone service may be by phone if installed, and in any event the telephone charges for such calls may be charged to the persons using such telephones.

.7 The Operator shall keep available for use in connection with the ground handling of aircraft such of the equipment listed in Exhibits "C" and "D" attached hereto and made a part hereof, or suitable substitutes therefor, as applicable to said operations.

(b) The Operator shall perform the work and furnish the services usually performed or furnished in connection with the storage and dispensing or sale of aviation fuel to aircraft at a heliport, including the delivery thereof to and into aircraft, utilizing the fuel storage and dispensing facilities at the Heliport as set forth in Section 15 hereof.

Section 6.    Fees and Charges Payable to the Department

(a) The Operator agrees to pay to the Department a basic monthly permit fee of $10,210 payable in advance on the commencement of the term hereof and on the first day of each and every month thereafter provided, however, that if this Agreement shall commence on a date other than the first day of the month or shall expire or be revoked or terminated effective on a date other than the last day of the month, said basic monthly permit fee shall be prorated on a daily basis using the actual number of days in said month.  The basic monthly permit fee set forth in this Section 6(a) shall be increased 5% from the basic monthly permit fee, non compounded, on each annual anniversary of the Commencement Date.

(b) In addition to the basic monthly permit fee as set forth in paragraph (a) above the Operator shall pay to the Department a percentage fee equivalent to ten percent (10%) of the Operator's gross receipts for amounts in excess of $250,000 to and including $1,000,000 and a percentage fee equivalent to eleven percent (11%) of the Operator's gross receipts for amounts in excess of $1,000,000 to and including $2,000,000 and a percentage fee equivalent to twelve percent (12%) for all amounts over $2,000,000, plus a use charge computed at the rate of $15.00 per every ten sightseeing passengers, with the number of passengers rounded to the next higher integral multiple of 10, in connection with approved sightseeing operations.

#0021848.05
99999-00111

6

The term "gross receipts" shall include all monies paid for services rendered beginning on the Commencement Date and ending on the Termination Date to the Operator for the landing, take-off and parking of aircraft at the Heliport (including all fees as set forth in paragraph (c) hereof) and all other monies paid to the Operator for sales made or services rendered at or from the Heliport regardless of when or where the order therefor is received at the Heliport and any other revenues of any type arising out of or in connection with the Operator's operations at the Heliport provided, however, that any taxes imposed by law which are separately stated to and paid by the customer and directly payable to the taxing authority by the Operator shall be excluded therefrom.

The fee provided for in Section 6(b) shall be due and payable monthly on the thirtieth day of each month following the calendar month in which the effective date hereof falls, and shall be based on the Operator's gross receipts for the preceding calendar month, provided, however, that if the Agreement shall expire or be revoked or terminated effective on a date other than the last day of a month, the percentage fee for said month shall be due and payable within ten days after such effective date of expiration, termination or revocation or should such monies be paid after the Termination Date, within ten (10) days of receipt of such monies.

(c)    Subject to the limitation set forth in Section 4, the Operator shall include, for the purposes of computing gross receipts under paragraph (b) hereof, all fees and charges under the Schedule of Charges or volume use permits which would be applicable to helicopter operations of the operator at the Heliport (i.e., leases and charters to third parties). Charges for fuel and maintenance services supplied to the Operator's own aircraft or aircraft which the Operator has leased or chartered for personal use (which are not leased or chartered to others) shall not be included in gross receipts.

(d)    In the event the aggregate fees paid by the Operator pursuant to the provisions of subsection, 6(a), 6(b) and 6(c) hereinabove shall not equal or exceed $191,620 (the "Annual Amount") in the aggregate for each full year commencing on the first day of the first full month following the Commencement Date (the "Base Calculation Date") and commencing on each annual anniversary date of the Base Calculation Date thereafter during the term of this Agreement, then, in such event, the Operator shall pay to the State the difference between the amount actually paid under said subsections and $191,620 within 45 days following the date upon which the last monthly payment is due in respect of

8002184E.05
99999-00111

the year for which payment is due.  The Annual Amount shall increase five (5%) percent, non-compounded, on each annual anniversary of the Commencement Date.  Notwithstanding the foregoing provisions of this subsection, the $191,620 shall be reduced pro rata in respect of each partial year.

(e)  Amounts due pursuant to Section 6 that are not paid within thirty (30) days from the date billed as indicated on a billing invoice, shall carry interest, penalties and collecting fees pursuant to the provisions of Chapter 55 of the laws of 1992.

Section 7.    Obligations in Connection with Payment of the Percentage Fee and Privileges

In connection with the exercise of the privileges granted hereunder, the Operator shall:

(a)  use its best efforts in every proper manner to maintain, develop and increase the business conducted by it hereunder and the use of the Heliport as a public heliport facility;

(b)  not directly or indirectly divert or cause to be diverted, any business from the Heliport.  It is understood that the Operator or an affiliate has an ownership interest in Liberty Helicopter Tours, Inc. which also conducts sightseeing, charter and air taxi helicopter services from the Downtown Manhattan Heliport and may acquire or operate, in New Jersey, a helicopter facility.  Such interests, in and of themselves, shall not be considered a violation of this Section.

(c)  set up and thereafter continually maintain during the effective period of this Agreement, and preserve after the expiration or earlier termination or revocation thereof for a period extending until the earlier of (i) the completion of a close out audit or, (ii) three years following the date of expiration, termination or revocation such a system of books, records and accounts as may be adequate and appropriate for the recording with respect to the Heliport of sightseeing passenger counts, all arrival and departures of all aircraft, (regardless of whether a fee is charged therefor and including all of the Operator's aircraft operations, if any, at the Heliport) times and dates thereof the type and registration number of the aircraft, the time of parking and storage thereof and the charges incurred by all aircraft during their stay at the Heliport, for the recording of all transactions pertaining to the Operator's flight operations, if any, the dispensing of aviation fuel at the

8

#0021848.05
99999-00111

Heliport into aircraft, including the fuel charges, and such other information as the Department may reasonably from time to time require. Such system shall be in accordance with accepted accounting practice. In the event the close out audit shall not have been completed by the end of the third year following expiration, termination or revocation of this Agreement, such records shall be maintained at the sole expense of the Department. As an aid to this the Operator shall utilize such sales slips and invoicing machines and any other equipment or devices as may be necessary or appropriate to the Operator's operations thereunder and to enable the Operator to keep accurate records as hereinbefore stated. The Operator shall also permit in ordinary business hours during the effective period of this Agreement and for one (1) year thereafter and during such further period as hereinbefore mentioned, the examination, inspection and audit by the officers, employees and representatives of the Department of all of the aforesaid records, books, accounts, sales slips, invoicing machines and other devices as well as the records produced thereby, and also any records and books of account of any company which is owned or controlled by the Operator, or which owns or controls the Operator, if said company performs services, similar to those performed by the Operator under this Agreement, anywhere in the Port of New York District.

On or before the 30th day of the calendar month following the month in which the commencement date hereof falls and on or before the 30th day following the end of each and every calendar month thereafter including the month following the expiration or earlier revocation or termination of this Agreement, the Operator will furnish to the Department a sworn statement covering its operations for the preceding month, which statement shall be based on the aforesaid books, records and accounts. Said statement shall set forth the Operator's gross receipts and apply the percentage set forth in paragraph (b) of Section 6 thereto and shall contain such other information as the Department may require with respect to the Charges under Section 4, aircraft arrivals and departures and parking and storage times with appropriate identification of said aircraft, fuel charges, sightseeing passenger counts, and such other information as the Department may from time to time require.

Section 8.    Compliance with Governmental Requirements

(a) The Operator agrees to undertake at its own expense to comply with all laws and ordinances and governmental rules, regulations and orders now or at any time during the term of this Agreement which as a matter of law are applicable to the operations of the Operator at the Heliport.

#0021848.05
99999-00111

9

(b    The obligation of the Operator to comply with governmental requirements is provided herein for the purpose of assuring proper safeguards for the protection of persons and property in or near the Heliport and proper operation by the Operator.  Such provision is not to be construed as a submission by the Department to the application to itself of such requirements or any of them.  Operator shall not conduct or allow any activity on the Premises inconsistent with law and shall not conduct or allow any use or activity on the Premises which may require a permit or other approval by a government agency without having lawfully obtained such permit or approval.  Operator shall be responsible to the State for compliance with these provisions by his sub-permittees.  For purposes of this Agreement a sub-permittee is defined as such person or entity which has a written agreement specifically designated as a "sub-permit" with the Operator and approval as such by the Department.

(c)  The operator shall comply with all enactment's, ordinances, resolutions and regulations of the City of New York, which do not, in the reasonable view of the Operator, have the same effect or purpose as a bill of attainder and which would be applicable to its operations at the Heliport if the Department were a private corporation, except in cases where the Department either notifies the Operator that it need not comply with or directs it not to comply with any such enactments, ordinances, resolution or regulations which are applicable. The Operator shall, for the Department's information, deliver to the Department promptly after receipt of any notice, warning, summons, or other legal process for the enforcement of any such enactment, ordinance, resolution or regulation a true copy of the same.

In the event of compliance with any such enactment, ordinance, resolution or regulation on the part of the Operator, acting in good faith, commenced after such delivery to the Department but prior to the receipt by the Operator of a written direction from the Department not to comply (and thereafter discontinued) such compliance shall not constitute a breach of this Agreement, although the Department thereafter directs the Operator not to comply.  Nothing herein contained shall release or discharge the Operator from compliance with any other provision hereof respecting governmental requirements.

(d)  The Operator shall have such time within which to comply with the aforesaid laws, ordinances, rules and regulations as the authorities enforcing the same shall allow.

10

#0021848.05
99999-00111

Section 9.    Manner of Operation

(a)  The Operator shall conduct all operations hereunder in a careful, efficient, safe and courteous manner.

(b)  The Operator shall keep the Heliport open and manned and shall provide and perform all services under this Agreement at not less than the following times:  between the hours of 8:00 A.M. to 6 P.M. of each Monday through Friday, inclusive, except holidays.  In addition to the foregoing, the operator shall, on receiving at least two (2) hours' prior notice from the Department or from any one desiring to use the Heliport (which notice may be oral), of a proposed landing or take-off of an aircraft at the Heliport during other than regularly scheduled hours, handle said landing and take-off of an aircraft at the Heliport during other than regularly schedule hours, handle said landing and take-off and assign the necessary personnel qualified to handle said flight activity. The Operator shall keep records of such use, including without limitation thereto the hours and times when its personnel are performing said services, as the Department may from time to time require.  The Operator shall advise the prospective user of the Heliport of the aforesaid fee upon receiving notice of the proposed landing or take-off.  The Department does not guarantee the payment of the aforesaid fee by any such user.  In addition to the aforesaid fee, said use of the Heliport shall be subject to the Schedule of Charges which may be applicable thereto.  The Operator shall not permit any aircraft to remain parked at the Heliport during those hours of any day when its personnel are not in the Heliport as required pursuant to the aforesaid provisions.

The Department shall have the right but not the obligation to itself handle any State flight activity, including its own, using State personnel during the hours when the Heliport is not being operated by the Operator and using any and all equipment required to be furnished by the Operator under the terms hereof without cost to the Department.

(c)  The Operator shall perform and provide all services hereunder in an orderly and proper manner.  The Operator shall provide and its employees shall wear uniforms or other suitable means of identification.  Such uniforms and means of identification shall be subject to the reasonable written approval of the Department.  The Department shall have the right to object to the Operator regarding the demeanor and conduct of the employees and invitees of the Operator and of those doing business with it whereupon the Operator will forthwith take all steps necessary to correct the deficiency.

#0021848.05
99999-00111

11

(d)  The Operator shall at all times during which the Heliport is required to be open as herein provided have at least one qualified ground attendant on duty and performing the services required of the Operator under this Agreement. The Operator shall instruct its personnel that no gratuities shall be solicited or accepted for any reason whatsoever from the user of the Heliport.  If the Operator uses the public aircraft landing area with its own aircraft, the Operator shall during such period of use have at least one qualified ground attendants on duty and performing the services required of the Operator under this Agreement.  Moreover, wherever the operator is required to have at least one or two persons on duty, said number of persons shall be on duty and the Operator shall make appropriate arrangements with respect to their relief for eating and comfort purposes.

(e)  The Operator shall immediately inform the Department upon its discovery of any breakdown, cracks, breaks or other signs of disrepair or malfunction of any portion of the Premises or of any other property of the Department.

(f)  "Holiday" or "legal holidays" shall mean and include the following days in each year:  the first of January, known as New Year's day; the twelfth day of February, known as Lincoln's Birthday; the thirtieth day of May, known as Memorial Day; the fourth of July, known as Independence day; the first Monday in September, known as Labor day; the twelfth day of October, known as Columbus Day; the eleventh day of November, known as Veteran's day; the fourth Thursday in November, known as Thanksgiving day, the twenty-fifth day of December, known as Christmas Day; and if any of such days is Sunday, the next day thereafter; and each general Election day in the State of New York; and such other or different days or dates as may be declared "holidays" or "legal holidays" by the Legislature of the State of New York.

Section 10.    Prohibited Acts

(a)  The Operator shall commit no nuisance on the Premises, and shall not do or permit to be done anything which may result in the creation or commission or maintenance of a nuisance on the Premises.

(b)  The Operator shall not cause or permit to be caused or produced upon the Premises, to permeate the same or to emanate there from, any unusual, noxious or objectionable smokes, gases, vapors or odors.  The creation of exhaust fumes by the operation of the Operator's aircraft engines or aircraft engines

12

80021848.05
99999-00111

723 P14    DEC 13 '99 13:17

of the Operator's customers, so long as such engines are maintained and are being operated in a proper manner, shall not be a violation of this paragraph(d).

(c)  The Operator shall not do or permit to be done anything which may interfere with the effectiveness or accessibility of the drainage and sewerage system, fire-protection system, sprinkler system, alarm system, fire hydrants and hoses, if any, installed or located on or in the Premises.

(d)  The Operator shall not overload any floor on the Premises, and shall repair, replace or rebuild any floor, including supporting members, damaged by the Operator's overloading.  Nothing in this paragraph or elsewhere in this Agreement shall be or be construed to be a representation by the Department of the weight any floor will bear.

(e)  The Operator shall not use or permit the use of any structural supporting member of the building or roof or any part thereof for the storage of any material or equipment, or hoist, lift, move or support any material or equipment or other weight or load, by means of said trusses or structural supporting members.

(f)  The Operator shall not dispose or nor permit anyone to dispose of any waste material (whether liquid of solid) taken from aircraft using the Heliport by means of the toilets, manholes, sanitary sewers or storm sewers on the Premises or by means of the waters at or bounding the Heliport.

(g)  The Operator shall not do or permit to be done any act or thing upon the Premises which (1) will invalidate or conflict with any insurance policies covering the Heliport or any part thereof, or (2) which, in the reasonable opinion of the Department, may constitute an extra-hazardous condition, so as to increase the risks normally attendant upon the operations contemplated hereunder.  The Operator shall promptly observe, comply with and execute the provisions of any and all present and future rules and regulations, requirements, orders and directions of the New York State Department of Insurance or of any other board or organization exercising or which may exercise similar functions, which may pertain or apply to the operations of the Operator on the Premises, but the Operator shall not be obligated to make any structural or non-structural improvements, alterations or repairs of the Premises that may be required at any time hereafter by any such present or future rules, regulation, requirement, order or direction.

#0021948.05
99999-00111

(h)  The Operator shall not keep or store inflammable or explosive liquids, gases or solids within the confines of any structure on the Premises, except such structures as are specifically designated therefor by the Department.

i)  The Operator shall not use water-born aircraft at the site unless there has been prior consultation and approval of the Department but the Department shall not authorize activities in said waters which will obstruct or prevent the same.

Section 11.    Maintenance, Repair and Property Insurance

(a)  The Operator shall at all times keep in a clean and orderly condition and appearance the Premises and all of the Operator's and the Department's fixtures, equipment and personal property which are located in any parts of the Premises.

(b)  The Operator shall repaint, repair, replace or rebuild any part of the Premises and other property of the Department which may be damaged or destroyed by the acts or omissions of the Operator or by those of its employees, customers, guests, or invitees, or of other users of the Heliport and persons doing business with the Operator.

(c)

(i)  Operator, at its sole cost and expense at all times will take good care of the Premises and will maintain same in good order and condition in compliance with all legal requirements and insurance requirements and will make all necessary and appropriate repairs thereto, as necessary for the preservation of the fixtures and personalty on the Premises, including but not limited to maintenance and repairs and replacements to the paving and the frame and roof of and structures on the Premises, and the exterior of the exterior walls and the above ground fuel storage systems.  The Department shall have the authority at any time to inspect the Premises to determine whether same are in good repair and maintenance, structurally sound, and that there are no unsafe, hazardous, unsanitary, or defective conditions in the structure, and its utilities, including improvements constructed by permittee.  This provision shall create no obligation or liability upon the Department to inspect the Premises, nor to take any corrective action to make repairs, nor to undertake any financial obligation.

#0021848.05
99999-00111

14

Failure of the Department to inspect does not relieve Operator of any obligation herein.

(ii)   Operator, at its sole expense, shall make all necessary provisions to protect the existing non support walls, duct lines, drainage lines and other similar facilities located beneath or about the Premises (or to provide for their replacement or upgrading) during the course of construction of the Operator's Improvements and thereafter the Operator shall not interfere with the location or use thereof without the prior approval of Department.

(iii)  Operator accepts the Premises in its existing condition and acknowledges that, except as otherwise expressly set forth in this Agreement, no representations, statements or warranties, express or implied, have been made by or on behalf of the State in respect of the Premises, the status of title thereof, the Requirements applicable thereto, the physical condition of the underlying land, or the use that may be made of the Premises, and that the Department shall in no event whatsoever be liable for any latent or patent defects in the Premises.

(iv)   In addition to the provisions of herein, in no event shall Department in its capacity as owner be liable to Operator or to any other person for any injury or damage to any property of Operator or of any other person or to the Premises, arising out of any sinking, shifting, movement, subsidence or failure in the load-bearing capacity of, or other matter or difficulty related to, the soil or other surface or subsurface materials of the land or waterways underlying the Premises unless the same is caused by the gross negligence of owner, of owner's agents, employers, officers occurring after the date of this Agreement, it being agreed that except as otherwise provided herein, Operator shall assume and bear all risk of loss with respect thereto.

(d)  With respect to all other parts of the Premises, including, without limitation thereto, building walls, partitions, floors, ceilings, doors, screens, sash, glass of every kind, the electrical, mechanical, plumbing, heating, steam, communications, gas and other systems,  and their pipes, wires, mains, lines, tubes, conduits, equipment and fixtures, the

N0021848.05
99999-00111

15

Operator shall take the same good care of the Premises that would be taken by a reasonably prudent owner who desires to keep and maintain the same so that at the expiration or termination of the term and at all times during this Agreement, the same will be in as good condition as at the commencement thereof, except for reasonable wear and tear which does not adversely affect the efficient or the proper utilization thereof. To that end and regardless of the cause of the condition requiring the same, the Operator shall carry on periodic inspections, perform all necessary preventative maintenance including but not limited to painting, make all necessary rebuilding with respect to the same, all of which shall be in quality equal to the original in materials and workmanship.

(e)  The Operator shall not use any cleaning materials having a harmful corrosive effect, on any part of the Premises.

(f)  The Operator shall promptly wipe up all oil, gasoline, grease, lubricants and other inflammable liquids and substances and all liquids or substances having a corrosive or detrimental effect of the paving or other surface of the Premises, which may leak or be spilled thereon. The Operator shall repair any damage to the paving caused by such oil, gasoline, grease, lubricants or other liquids or substances.

(g)  In the event the Operator fails to commence so to maintain, clean, repair, replace, rebuild paint or otherwise undertake any obligation required by this section within a period of twenty (20) days after notice from the Department so to do, or fails diligently to continue to completion the repair, replacement or rebuilding of all of the Premises or other property of the Department required to be repaired, replaced or rebuild by the Operator under the terms of this Agreement, the Department may, at its option, and in addition to any other remedies which may be available to it, repair, replace or rebuild all or any part of the Premises or other property of the Department included in the said notice, and the cost thereof shall be payable by the Operator upon demand.

(h)  The obligation of the Operator as set forth in paragraph (b) of this Section 11 (in the event that damage or destruction caused by the acts or omissions of the Operator or by those of its employees, customers, guests or invitees, or of other persons doing business with the Operator, is covered by any contract or insurance under which the Department is the insured) is hereby released to the Department to the extent that the loss is recouped by actual payment to the Department of the proceeds of such

#0002:848 05
99999-00111

16

125 P02/05 DEC 13 '95  13:39

insurance; provided, however, that, if this release shall
invalidate any such policy of insurance or limit or void the
Department's rights thereunder, then this release shall be void
and of no effect

(i)  (1)  In the event of total destruction of the
Premises or in the event of partial destruction so as to render
the Premises unsuitable for operation as Heliport, the Department
shall have the option to either

(i)  terminate this Agreement within
sixty (60) days from the date of such destruction unless the
Operator shall determine to repair or rebuild the same at its
expense.];

(ii) proceed with due diligence to
repair or rebuild, as necessary.

(2)  In the event said total or partial
destruction is caused by the acts or omissions of the Operator or
by those of its employee, customers, guests or invitees or of the
obligation of the Operator as set forth in paragraph (b) of this
Section 11, the Operator shall be obligated to pay to the
Department the actual cash (i.e. depreciated) value of the
damaged or destroyed property owned by the Department at the time
of such damage or destruction, including the cost of the removal
of the debris unless the Operator shall determine to repair or
rebuild the same at its expense.

(3)  The Operator shall immediately after
such destruction and pending such election or exercise of the
options by the Department and the Operator, take all necessary
safety measures and measures for temporary preservation of the
Premises, and if so directed by the Department pursuant to
written notice, the Operator shall remove all debris resulting
from such destruction, or to the extent that the removal of
debris under such circumstances is covered by insurance, the
proceeds thereof shall be made available to the Operator for that
purpose.

During any period in which the Premises
shall be wholly or partially destroyed so as to render the
Premises unsuitable for operation as a heliport, the Operator's
fees, charges, obligations and right hereunder to operate the
Heliport shall abate.

(j)  Nothing contained in this Section 11 shall
relieve the Operator of its obligations under Section 13 hereof

17

#0021848.05
99999-00111

JAN 12 2000 13:42

to secure the Department's written approval before installing any fixtures in or upon or making any alteration, decorations, replacements (other than identical replacements, or such functionally equivalent replacements which functionally equivalent replacements may be installed after thirty (30) days notice to the Department where there is no written objection within said thirty (30) days), additions or improvements in the Premises.

(k)    The parties hereby stipulate that neither the provisions of Section 227 of the Real Property Law of the State of New York nor those of any other similar statute shall extend or apply to this Agreement.

(l)    The State shall have no responsibility whatever for the loss or destruction of any property, including but not limited to improvements made by the permittee, inventory, and property stored or being used on the Premises, personal or real, by fire, theft, or other cause.

Section 12.    Indemnity; Liability Insurance

(a)    The Operator shall assume the risk of loss, damage or destruction to any helicopter of the Operator and any other property of the Operator on the Premises occurring in the use an occupancy of the Premises by the Operator pursuant to the provisions hereof and the Operator hereby releases the Department therefrom, excepting any loss, damage or destruction resulting from affirmative willful acts of the Department.  The Operator shall indemnify and hold harmless the Department, its Commissioner, officers, representatives and employees from and against all claims, suits and demands, just or unjust, of third persons (including but not limited to employee, officers and agents of the Department or the Operator) arising out of, in connection with, or relating to the use and occupancy of the Heliport by the Operator or by others pursuant to the provisions hereof, including but not limited to the use of the Heliport itself, the waters surrounding the same or any property in proximity thereto, and for all expenses incurred by it and by them in the defense, settlement or satisfaction thereof, including without limitation thereto, claims and demands for death, for personal injury or for property damage, direct or consequential, whether they arise from the acts or omission of the Operator, the Department or of other third persons, excepting only the willful affirmative acts of the Department; provided, however, that the provisions of this sub-paragraph (a) shall not limit the rights of the Operator to enforce the rights, duties and obligations of the State under the terms of this Agreement,

#0021848.05
99999-00122

(b)  In addition to the obligations set forth in paragraph (a) of this Section, the Operator in its own name as insured, shall procure, maintain and pay the premiums on the following described policies of insurance with a contractual liability endorsement covering the obligations assumed by the Operator pursuant to paragraph (a) hereof in not less than the following limits, which shall cover its operations hereunder and shall be effective during the term of this Agreement:

(1)  Aircraft liability insurance on aircraft owned, operated or rented by the Operator, if any, including liability and property damage with a single combined limit of $9,000,000 per occurrence and revenue and non-revenue passenger liability of at least $500,000 per seat.

(2)  Comprehensive Airport Liability Insurance including death, personal injury, property damage and aggregate products in not less than a combined single limit of $8,000,000 per occupancy.

(3)  Hangar keeper's Liability insurance of not less than $1,000,000 per aircraft.

(c)  The Operator shall maintain and pay the premiums throughout the term of this Agreement on a policy or policies of Worker's Compensation insurance and Employer's Liability insurance covering the liability of the Operator as an employer under the Workmen's Compensation Act of the State of New York and covering all other liability of the Operator as an employer under the Workmen's Compensation Law of the State of New York or similar statutes and shall require any contractors to carry similar insurance for its employees.

(d)  As to any insurance required by the provisions of this or any other Section of this Agreement to be secured by or at the direction of the Operator, a certified copy of each of the policies or a certificate or certificates evidencing the existence thereof, or binders shall be delivered to the Department within three (3) days after the Commencement Date.  In the event any binder is delivered, it shall be replaced within thirty (30) days by a certified copy of the policy or a certificate.  Each such copy or certificate shall contain a valid provision or endorsement that the policy may not be canceled, terminated, changed or modified without giving thirty (30) days' written advance notice thereof to the Department.  As to those policies where the Department is named as an additional insured, each such policy shall contain an additional endorsement .

19

#0021448.05
99999-00111

providing that the insurance carrier shall not, without obtaining
express advance permission from the General Counsel of the
Department, raise any defense involving in any way the
jurisdiction of the tribunal, the immunity of the Department, its
Commissioner, officers, agents or employees, the governmental
nature of the Department or the provisions of any statutes
respecting suits against the Department.  A renewal policy shall
be delivered to the Department at least fifteen (15) days prior
to the expiration date of each expiring policy, except for any
policy expiring after the date of expiration of the term.  If at
any time any of the policies shall be or become unsatisfactory to
the Department as to form or substance or if any of the carriers
issuing such policies shall be or become unsatisfactory to the
Department, the Operator shall promptly obtain a new and
satisfactory policy in replacement.

Section 13.    <u>Construction by the Operator</u>

        The parties contemplate the installation, repair,
maintenance or replacement of the ramp, above-ground fuel storage
and pumping system, parking areas, trailers and, at the option of
the Operator, the decommissioned pier pads, barges, piers, and
terminals. (The Operator shall not erect any structures, make any
improvements or do any other construction work on the Premises or
alter, modify, or make additions, improvements or repairs to or
replacement of, any structure now existing or built at any time
during the term or install any fixtures (other than trade
fixtures, including trailers, removable without material damage
to the freehold, any such damage to be immediately repaired by
the Operator) without the prior written approval of the
Department,)which consent shall not be unreasonably withheld, and
in the event any construction, improvement, alteration,
modification, addition, repair or replacement is made without
such approval, then upon reasonable notice so to do, the Operator
will remove the same, or at the option of the Department.  In
case of any failure on the part of the Operator to comply with
such notice, the Department may effect the removal or change and
the Operator shall pay the cost thereof to the Department.

Section 14.    <u>Signs</u>

        (a)  Except with the prior written approval of the
Department, the Operator shall not erect, maintain or display any
signs or any advertising at or on the interior or exterior parts
of the Premises except with respect to those installed as of the
date hereof or substantially similar substitutes therefor.

20

#0021848.05
99999-00111

(b)  Upon the expiration, or earlier revocation or
termination of the Agreement, the Operator shall remove,
obliterate or paint out, as the Department may direct, any and
all signs and advertising on the Premises and in connection
therewith shall restore the portion of the Premises affected by
such signs or advertising to the same condition as at the
commencement of the term.  In the event of a failure on the part
of the Operator so to remove, obliterate or paint out each and
every sign or advertising and so to restore the Premises, the
Department may perform the necessary work and the Operator shall
pay the costs thereof to the Department on demand.

Section 15.   Operation of the Fuel Storage System

(a)  The Operator has been advised and understands that
there is presently installed at the Heliport a fuel storage
facility composed of two separate fuel storage systems having a
total capacity of approximately 11,000 gallons identified by
markings painted on various visible parts thereof as No. 1 and
No. 2 (and hereinafter respectively sometimes referred to as
"fuel storage system No. 1" and "fuel storage system No. 2").
The Operator may install an additional above-ground fuel storage
and dispensing facilities ("Operator System").  Each in ground
system is provided with its own, separate, pump and motor, and
separate electrical control but, however, has fuel filters,
metering and a pump dispenser which is shared and used in common
by both systems and which shared use permits only one system to
dispense fuel at a time.  Beginning on the Commencement Date:

(b)  The Operator shall have the exclusive use of fuel
storage system No's. 1 and 2 and the Operator System and the
Department shall have no responsibility for such system.

(c)  The Operator shall use the Operator System and
fuel system No.'s 1 and 2 and such other systems as the
Department may authorize for the purpose of storing and
dispensing fuel into aircraft of the Operator and the Operator's
customers subject to and in accordance with all of the terms and
provisions of this Agreement including the following:

(1)  The Operator shall have the sole and complete
responsibility and shall itself suffer, without recourse or claim
against the Department, all fuel losses, from whatever cause
including leakage of the system which may arise from its use of
any fuel system.

#0021141.05
99999-00111

(2) The Operator shall store and dispense only Jet A type fuel in the fuel systems and no other type or grade of fuel.

.3. The Operator shall operate all fuel systems in a safe and efficient manner in accordance with the standards of the industry and in accordance with the procedures and directions as may be given from time to time by and shall immediately notify the Department by telephone, to be followed by written notification, of any defect or condition of the fuel systems requiring repair.

(4) The Operator shall cease dispensing fuel from any fuel systems at any time that it appears that the fuel in said system at any time that it appears that the fuel in said system is defective or has been contaminated or that there is the possibility of defect or contamination or that continued use of the system is or may be unsafe or dangerous.

(d) Notwithstanding any other term or provision hereof (i) the Operator shall have the sole responsibility and the Department shall have no responsibility to assure the integrity, security and safety of the various fuel systems or of the fuel dispensed by the Operator and the Operator shall be solely responsible for its use; (ii) the Operator shall be responsible at its sole cost and expense and at all times will take good care of all fuel systeming and will maintain same in good order and condition in compliance with all legal requirements and insurance requirements and will make all necessary repairs thereto, including but not limited to leaks or contamination resulting from all fuel systems. In no event shall Operator be responsible for cost associated with leaks or other obligations occasioned by prior permittee failure to maintain said fuel system in good order and operating conditions, (iii) the Operator shall be entitled, but shall not, unless otherwise required by law or regulation, be obligated to, decommission any or all fuel systems or parts thereof.

Section 16.     Rights of Entry Reserved

(a) The Department, by its officers, employees, agents, representatives and contractors shall have the right at all times to enter upon the Premises for the purpose of inspecting the same, for observing the performance by the Operator of its obligations under this Agreement, and for the doing of any act or thing which the Department may be obligated or have the right to do under this Agreement or otherwise.

22

N0021848.05
99999-00111

(b)  Without limiting the generality of the foregoing,
the Department, by its officer, employees, agents,
representatives, contractors, and furnishers of utilities and
other services, shall have the right for its own benefit and for
the benefit of the Operator, to maintain existing and future
utility, mechanical, and other systems, and to enter upon the
Premises at all reasonable times to make such repairs,
replacements or alterations as may, in the opinion of the
Department, be deemed necessary or advisable and, from time to
time, to construct or install over, in or under the Premises new
systems or parts thereof; provided, however, that in the exercise
of such rights of access, repair, alteration or new construction
the Department shall not unreasonably interfere with the use and
occupancy by the Operator.

(c)  In the event that any property of the Operator
shall obstruct the access of the Department, its employees, agent
or contractors to any of the existing or future utility,
mechanical, and other systems and this shall interfere with the
inspection, maintenance or repair of any such system, the
Operator shall, upon reasonable advance written notice, move such
property, as directed by the Department, in order that the access
may be had to the system or part thereof for its inspection,
maintenance or repair, and, if the operator shall fail to so
remove such property after direction from the Department to do
so, the Department may move it and the Operator hereby agrees to
pay the cost of such moving upon demand.

(d)  Nothing in this Section shall or shall be
construed to impose upon the Department any obligations so to
construct or maintain or to make repairs, replacements,
alterations or additions, or shall create any liability for any
failure so to do.  The Department shall not in any event be
liable for any injury damage to any property or to any person
happening on or about the Premises nor for any injury or damage
to the Premises nor to any property of the Operator or of any
other person located in or thereon (other than those occasioned
by the acts of the Department, its employees, agents and
representatives).

Section 17.   Assignment, Subcontracting and Operator Rights

(a)  The Operator agrees that it will not sell, convey,
transfer, mortgage, pledge or assign this Agreement or any part
thereof, or any rights created thereby or any part thereof
without the prior written consent of the Department.

#0021841.05
99999-00111

(b)   If without the prior written consent of the Department, the Operator assigns, sells, conveys, transfers, mortgages or pledges in violation of subdivision (a) of this Section or if the Premises are occupied without proper authorization by anybody other the Operator, the Department may collect the fees from any assignee or anyone who claims a right to this Agreement or who occupies the Premises, and the Department shall apply the net amount collected to the fees herein reserved; but no such collection shall be deemed a waiver by the Department of the agreements contained in subdivision (a) of this Section nor an acceptance by the Department of any such assignee, claimant or occupant as a party hereunder, nor a release of the Operator by the Department from the further performance by it of the agreements contained herein.

(c)   The Operator shall not use or permit any person to use the Premises or any portion thereof for any purpose other than the purposes stated in this Agreement and the Operator's obligations hereunder may and shall be performed only through the medium of its officers, employees and contractors.

(d)   Permittee shall not sub-permit the Premises to any other parties in part or in whole without the prior written consent of the State.  Failure to comply with this provision may result in ten (10) days written notice of cancellation of the permit by the State, and the State may immediately take possession and terminate all rights of the Permittee as of such moment.

(e)   Any sightseeing business conducted by the Operator at or from the Heliport under the terms of this Agreement, whether as the sole Operator of a sightseeing business or in addition to sightseeing businesses conducted by others at or from the Heliport, shall be conducted through an entity separate from the Operator (which entity may be a subsidiary or affiliate of the Operator) and shall be on business terms identical to those applicable to the last or currently approved operator of sightseeing operations at the Heliport.

Section 18.   <u>Termination by the Department</u>

(a)   If any one or more of the following events shall occur, that is to say:

(1)   The Operator shall become insolvent, or shall take the benefit of any present or future insolvency statute, or shall make a general assignment for the benefit of creditors, or file a voluntary petition in bankruptcy or reorganization or the

24

#0021868.05
99999-00111

readjustment of its indebtedness under the federal bankruptcy laws or under any other law or statute of the United States or of any State thereof, or consent to the appointment of a receiver, trustee, or liquidator of all or substantially all of its property; or

(2) By order or decree of a court the Operator shall be adjudged bankrupt or an order shall be made approving a petition filed by any of its creditors or, by any of its stockholders seeking its reorganization or the readjustment of its indebtedness under the federal bankruptcy laws or under any law or statute of the United States of any State thereof and the same shall not be vacated or stayed within thirty (30) days; or

(3) A petition under any part of the federal bankruptcy laws or an action under any present or future insolvency law or statute shall be filed against the Operator and shall not be dismissed within thirty (30) days after the filing thereof; or

(4) The interest of the Operator under this Agreement shall be transferred to, pass to or devolve upon, by operation of law or otherwise, any other person, firm or corporation; or

(5) The Operator shall without the prior written approval of the Department, become a predecessor or merged corporation in a merger, a constituent corporation in a consolidation, or a corporation in dissolution; or

(6) By or pursuant to, or under authority of any federal or state legislative act, resolution or rule, or any order or decree of any court or federal or state governmental board, agency or officer having competent jurisdiction, a receiver, trustee, or liquidator shall take possession or control of all or substantially all of the property of the Operator, and such possession or control shall continue in effect for a period of thirty (30) days; or

(7) The Operator shall voluntarily abandon, desert or vacate the Premises or discontinue its operations at the Heliport; or

(8) Any lien is filed against the Premises because of any act or omission of the Operator and the Operator does not commence and pursue a good faith challenge or appeal to or of the lien, or the lien is not removed or bonded within ten (10) days after the Operator has received notice thereof; or

25

(9)   The Operator shall fail duly and punctually to pay the fees or to make any other payment required hereunder when due to the Department and shall persist in its failure for a period of five (5) days following the receipt of written notice of such default from the  Department; or

(10) The Operator shall fail to keep, perform and observe each and every other promise, and agreement set forth in this Agreement on its part to be kept, performed, or observed and the same shall not be cured within thirty (30) days after receipt of notice of default thereunder from the Department (except where fulfillment of its obligations requires activity over a period of time, and the Operator shall have commenced to perform whatever may be required for fulfillment within ten (10) days after receipt of notice and continues such performance without interruption except for causes beyond its control);

(12) The Department may by five (5) days, notice to the Operator as to the events listed in subparagraphs (1), (2), (3), (4), (5), (6), (8) and (9) and by one day's notice to the Operator as to the events listed in subparagraphs (7) and (10), terminate the rights of the Operator as of the date specified in such notice.

(b)   If any of the events enumerated in subdivision (a) of this Section shall occur prior to the commencement of the term, the Operator shall not be entitled to enter into possession of the Premises and the Department upon the occupancy of any such event or at any time thereafter during the continuance thereof by twenty-four (24) hours' notice may cancel the interest of the operator under this Agreement, such cancellation to be effective upon the date specified in such notice.

(c)   No acceptance by the Department of fees, charges or other payments in whole or in part for any period or periods after a default of any of the terms, covenants and conditions hereof to be performed, kept or observed by the Operator shall be deemed a waiver of any right on the part of the Department to terminate the Agreement unless such payment is accepted without recourse.

(d)   No waiver by the Department of any default on the part of the Operator in performance of any of the terms, covenants or conditions hereof to be performed, kept or observed by the Operator shall be or be construed to be a waiver by the

26

#0021848.05
99999-00111

JAN 12 2000 13:37

PAGE.11

(??? ?12/2? DEC 13 '95  13:34

Department of any other or subsequent default in performance of
any of the said terms, covenants and conditions.

Section 19.    Right of Re-entry

          The Department shall, as an additional remedy upon the
giving of a notice of termination as provided in Section 18
hereof, have the right to re-enter the Premises and every part
thereof upon the effective date of termination without further
notice of any kind, and may regain and resume possession either
with or without the institution of summary or any other legal
proceedings or otherwise.  Such re-entry, or regaining or
resumption of possession however, shall not in any manner affect,
alter or diminish any of the obligations of the Operator under
this Agreement.

Section 20.    Remedies to be Non-exclusive

          All remedies provided in this Agreement shall be deemed
cumulative and additional and not in lieu of or exclusive of each
other or of any other remedy available to the Department at law
on in equity, and the exercise of any remedy, or the existence
herein of other remedies or indemnities shall not prevent the
exercise of any other remedy.

Section 21.    Surrender

          The Operator covenants and agrees to yield and deliver
peaceably to the Department possession of the Premises and other
property of the Department on the date of the expiration or
earlier termination of the Agreement promptly and in good
condition consistent with and to the extent of its obligations
under this Agreement.

Section 22.  Effect of Basic Monthly Permit Fee Reductions

          Upon each reduction of the basic monthly permit fee
under the terms of this Agreement, the Annual Amount shall be
reduced by an amount equal to the reduction in the basic monthly
permit fee multiplied by the number of months during the
applicable year to which the reduction applies.

Section 23.    Removal of Property

          During the sixty (60) days following the expiration,
revocation or earlier termination of the term, the Operator shall
have the right or upon the affirmative direction by the

#0021848.05
99999-00111

Department, the obligation, to remove its equipment, inventories, removable fixtures, including such trailers, fuel, facilities, barges, or other floating fixtures, and other personal property from the Premises and shall repair all damage caused by such removal. If at the expiration of the sixty (60) day period the Operator shall fail to remove such property, the Department may use or dispose of such property in any manner the Department deems appropriate and assess reasonable costs associated therewith. During such sixty (60) day period, the Operator shall be entitled to possession of the Premises and shall during the period of any such occupancy be obligated to pay only the then current monthly permit fee referred to in Section 6(a), pro-rated for each day so occupied during the sixty (60) day period.

Section 24.    Brokerage

Each of the Operator and the Department represents and warrants that no broker has been concerned on its behalf in the negotiation of this Agreement and that there is no broker who is or may be entitled to be paid a commission in connection therewith. Each party shall indemnify and save harmless the other of and from any claim for commission or brokerage made by any and all persons, firms or corporations whatsoever for services rendered in connection with the negotiation and execution of this Agreement.

Section 25.    Limitation of Rights and Privileges Granted

No greater rights or privileges with respect to the use of the Heliport or any part thereof are granted or intended provision thereof, than the rights and privileges expressly and specifically granted hereby.

Section 26.    Notices

Except where expressly required or permitted herein to be oral, all notices, requests, consents and approvals required to be given to or by either party shall be in writing, and all such notices and requests shall be personally delivered to the duly designated officer or representative of such party or delivered to the office of such officer or representative during regular business hours, or forwarded to him or to the party at such address by certified or registered mail, return receipt requested. Notices sent by registered or certified mail shall be deemed received five (5) business days after mailing. The Operator shall from time to time designate in writing an office within the Department and an officer or representative whose regular place of business is at such office upon whom notices and

29

#0021848.05
99999-00111

requests may be served.  Until further notice, the Department
hereby designates the Regional Real Estate Officer, Region II, of
the New York State Department of Transportation as their officer
or representative upon whom notices and requests may be served,
and the Department designates its office at Hunter's Point Plaza,
47-40 21st Street, Long Island City, New York 11101 and the
Operator designates its office appearing on page 1 of this
Agreement as their respective offices where notices and requests
may be served.

Section 27.    Place of Payments

        Payment must be paid by check, bank cashier's
check or money order payable to "Department of Transportation"
and mailed or delivered to:

                New York State Department of Transportation
                Revenue Unit, Building 5, Room 422
                        1220 Washington Avenue
                        Albany, New York  12232


Section 28.    Construction and Application of Terms

        (a)  The section and paragraph headings, if any,
in this Agreement are inserted only as a matter of convenience
and for reference and in no way define, limit or describe the
scope or intent of any provision hereof.

        (b)  The terms, preamble, provisions and
obligations contained in the Exhibits attached hereto, whether
there set out in full or as amendments of, or supplements to
provisions elsewhere in the Agreement stated, shall have the same
force and effect as if herein set forth in full.

Section 29.    Non-Liability of Individuals

        No Commissioner, shareholder, director, officer,
agent or employee of either party shall be charged personally or
held contractually liable by or to the other party, under any
term or provision of this Agreement, or because of its execution
or attempted execution, or because of any breach thereof.

#0021848.05
99999-00111

Section 30.    Other Services by the Operator

(a)   The Operator is obligated to furnish all necessary services for the Premises including, but not limited to:

(1)   The operation of all mechanical; plumbing, power, heating, steam, air conditioning, electrical, boiler, water, toilet, burglar alarm, communications, gas and other systems affecting the Premises;

(2)   All janitorial and garbage, refuse, snow and ice removal services; said garbage and refuse to be deposited at central deposit points designated by the Department.  The Operator shall not place snow or ice upon any public streets, highways or marginal streets of the City of New York;

(3)   The taking of all reasonable measures as shall be approved by the Department for the prevention of access to the Premises by any person other than employees, guests, invitees of the Operator or other persons authorized to be on the Premises;

(4)   Provide security in the Premises during the hours the Heliport is open;

(5)   Toilet washroom supplies;

(6)   Relamping of all electrical fixtures;

(7)   All obstruction lights installed on or outside the Premises.

(b)   The Operator shall furnish and supply, at its own expense, all utilities necessary for the proper operation of the Premises as a heliport including but not limited to electricity, water, heat.  The Operator shall secure the aforesaid utilities directly from the suppliers of the same.

(c)   Except as expressly provided in a specific provision of the Agreement, the Department shall not be obligated to furnish or supply any services whatsoever in connection with the Heliport.

#0021848.05
99995-00111

Section 31.     Equipment Furnished by the Operator

Without limiting the generality of anything herein contained as to the Operator's obligation to operate and maintain the Premises as an operating heliport, the Operator shall supply, furnish and maintain throughout the term of this Agreement such equipment, furnishings and supplies necessary for the operation of the Heliport as specified in Exhibit E.  The Operator further agrees to supply, furnish and maintain throughout the term of this Agreement such other equipment and materials as may be desirable or necessary for the proper operation of the Heliport, other than those to be furnished by the Department as set forth in Exhibit F.

Section 32.     Relationship of the Parties

(a)  This Agreement does not and shall not constitute the Operator as the agent or representative of the Department for any purpose whatsoever.  Neither a partnership nor a joint adventure is hereby created.

(b)  Neither the officers, agents, contractors or employees of the Operator shall be or be deemed to be employees of the Department for any purpose whatsoever.

(c)  As to such of the Operator's obligations under this Agreement which pertain to the regulation of acts of third persons on the Premises, if the Operator cannot effectuate its obligations hereunder as to said third persons by admonitions and directions to comply, it shall immediately advise the Department or such other person as may be designated by the Department to such effect and, in any such event, the Operator shall not use force in securing compliance by said third persons.

Section 33.     Condemnation or Acquisition by Others

(a)  In the event the Premises or any part thereof, or the rights and interest of the Department in and to the Premises or any part thereof shall be condemned, taken or acquired by a body having a superior power of eminent domain, then this Agreement shall no longer apply to the land so taken, and all fees, charges and obligations shall be reduced pro rata in the same proportion as the Premises are reduced by the condemnation, taking or acquisition or, at the discretion of the Operator, such reduction shall adversely affect the business of the Operator, the Operator may deem this Agreement terminated, as of the date possession is taken from the Department by the condemning body, and this Agreement shall cease and determine in

31

#0021848.05
99999-00111

the same manner and with the same effect as if the term of the
Agreement had on that date expired.

(b)  In the event of condemnation or acquisition
as provided in paragraph (a) hereof, the Operator shall not be
entitled to assert any claim to any compensation, award or part
thereof made or to be made therein or therefor or any claim to
any consideration or any amount thereof paid therefor, or to
institute any action or proceedings or to assert any claim
against such agency or agencies or against the Department for any
such taking, it being understood and agreed between the parties
hereto that the Department shall be entitled to all compensation
or awards made or to be made or paid, and all such consideration,
free of any claim or right of the Operator.

(c)  In the event that all or any portion of the
Premises is required by the Department for the construction of
Route 9A or to comply with any present or future governmental
law, rule, regulations, requirement, order or direction, the
Department may, by notice given to the Operator, terminate this
Agreement with respect to all or such portion of the Premises so
required and all fees, charges and obligations shall be reduced
pro-rata in the same proportion as the Premises are reduced by
the termination or, at the discretion of the Operator, if such
termination shall adversely affect the business of the Operator,
the Operator may deem this Agreement terminated.  Such
termination shall be effective on the date specified in the
notice.  The Operator hereby agrees to deliver possession of all
or such portion of the Premises so required on the effective date
of such termination in the same condition as that required for
the delivery of Premises upon the date originally fixed by this
Agreement for the expiration of its term.

Section 34.    Sales and Services

(a) A principal purpose of the Department in the
making of this Agreement is to have the Heliport operated as a
first-class public heliport and to make available at the Heliport
the items and/or services which the Operator is permitted and
directed to sell and/or render hereunder, and the Operator hereby
agrees to conduct a first-class operation and in accordance with
the highest standards, safety and efficiency and to furnish all
necessary and proper fixtures, equipment, personnel (including
licensed personnel as necessary), supplies, materials and
facilities.

(b)  The Operator shall, (1) furnish good, prompt
and efficient service hereunder, adequate to meet all demands

#0021848.05
99999-00111

therefor at the Heliport; (2) furnish said service on a fair, equal and non-discriminatory basis to all users thereof; and (3) except for sightseeing operations which require Department approval pursuant to Section 3, charge fair, reasonable and non-discriminatory prices for each unit of sales or services, provided that the Operator may make reasonable and non-discriminatory discounts, rebates or other similar types of price reductions to volume purchasers in connection with the landing, taking off and parking of aircraft.  As used in this subdivision (b) "service" shall include furnishing of materials and supplies (including the sale thereof) and the landing, taking off and parking of aircraft.

(c)    In the event Federal Airport Aid becomes available for use at the Heliport, the Department may apply for and receive a grant or grants of money from the Administrator of the Federal Aviation Administration pursuant to the Airport and Airways Development Act of 1970, as the same has been amended and supplemented, and under prior federal statues which said Act superseded.  In connection therewith the Department may undertake certain obligations respecting its operation of the Heliport and the activities of its contractors, lessees and permittees thereon.  The performance by the Operator of the promises and obligations contained in this Agreement is therefor a special consideration and inducement to the issuance of this Agreement by the Department, and the Operator further agrees that if the Administrator of the Federal Aviation Administration or any other federal or state governmental officer or body having jurisdiction over the enforcement of the obligations of the Department in connection with Federal Airport Aid, shall make any orders, recommendations or suggestions respecting the performance by the Operator of its obligations under this Agreement, the Operator will promptly comply therewith at the time or times, when and to be the extent that the Department may direct.

(d)    The Operator shall not itself use the Heliport for its own aircraft and shall refrain from entering into continuing contracts or arrangements with third parties for use of the Heliport or for furnishing services covered hereunder when such use by the Operator or contracts or arrangements will have the effect of utilizing to an unreasonable extent the Operator's capacity for rendering such services.  A reasonable amount of capacity shall be reserved by the Operator for the purpose of rendering services at the Heliport, including but not limited to the fueling of aircraft, to those who are not parties to continuing contracts with the Operator.

33

#0031848.05
99999-00121

(a)  The Operator shall use its best efforts to encourage and develop the use of the Heliport and the Operator's business thereat.

Section 35.    No Interest in Real Property

Nothing contained in this Agreement shall grant or be construed to grant to the Operator any interest or estate in real property, and a landlord-tenant relationship shall not be or be deemed to be created hereunder.

Section 36.    Helicopter Flight Operations

The Operator agrees that it shall permit [no helicopter flight operations hereunder and] no landing approach or take-off path to or from the east of the Heliport, including but not limited to the Miller Highway (West Side Elevated Highway) or any successor or replacement roadway.  It is the understanding of the parties that flight patterns will be developed and maintained in such manner as will:

(a)  impose no restrictions on present of future structures in any area, section or district adjacent to or surrounding the Premises; and

(b)  require all landings and take-offs to be over the water with the necessary air taxiing to and from the bulkhead pads.

Section 37.    Sunken Craft

If during the team of this Agreement, the waters constituting a part of the Premises shall become obstructed in whole or in part by the sinking of any airborne or waterborne craft owned or operated by the Operator not otherwise approved in a site plan approved by the Department, the Operator, after notice from the Department, shall promptly remove such obstruction or cause the same to be removed, without cost or expense to the Department.  If, after notice from the Department, the Operator fails to remove such obstruction, the Department may in its discretion remove the same and in such event the Operator shall reimburse the Department for the expenses so incurred, upon demand.

The Operator shall save harmless the Department, its Commissioner, representatives, agents and employees from any damages or claim for damages that may arise by reason of the

34

#0021845.05
99999-00111

presence in said waters of any sunken craft owned or operated by the Operator.

Section 38.    Accident Reports

The Operator shall promptly report in writing to the General Counsel of the Department, and shall make all other reports as may be required by law, rule or regulation in connection with all accidents whatsoever arising out of or in connection with its operation of the Heliport. In addition to the foregoing, accidents which result in death, personal injury or serious damage shall be immediately reported by telephone to the aforesaid representatives of the Department.

In the event any claim is made by any person against the Operator arising out of any accident on the Premises or in proximity to the Premises as a result of the Operator's operations hereunder, the Operator shall promptly report such claim in writing to the aforementioned representatives for the Department. In addition, the Operator shall promptly furnish to the Department copies of all reports given to the Operator's insurance carrier.

Section 39.    Operations Personnel

The Operator shall furnish sufficient trained personnel to perform the services required of the Operator under this Agreement.

The Operator in its operations hereunder shall abide by the terms and conditions of the applicable collective bargaining labor agreements to which it is a party, if any, including but not limited to payment of the rates of wages and the holiday, idle time, vacation, severance pay and sick leave allowances specified therein.

The Operator shall immediately give oral notice to the Department (to be followed by written notices and reports) of any and all impending or existing labor complaints, troubles, disputes or controversies and the progress thereof. The Operator shall use commercially reasonable efforts to resolve any such complaint, trouble dispute or controversy.

Section 40.    [Reserved]

35

Section 41.    Additional Rights Concerning Termination

        a.   Notwithstanding any other term or provisions
of this Agreement and in addition to any other right of
termination hereunder, this Agreement may be revoked by the
Department at any time and without cause on thirty (30) days'
prior written notice to the Operator.  In the event of revocation
pursuant to this paragraph (a) or expiration or termination
pursuant to Section 2, this Agreement shall cease and expire as
if the effective date of revocation stated in the notice were the
date originally stated herein for the expiration thereof.

        b.   Upon expiration or termination pursuant to
any provision of this Agreement, Operator shall have an
additional sixty (60) days from the date of said expiration or
termination to remove property in accordance with the provisions
of Section 23.

        c.   Revocation or termination under this Section
shall not relieve the parties of any liabilities or obligations
hereunder which have accrued on or prior to the effective date
thereof.

Section 42.    Presidential Use of the Heliport

        The Department shall have the right from time to
time and at any time, upon request by or on behalf of the
President of the United State to use the Heliport for the landing
and taking-off of a helicopter carrying, among other, the
President of the United State and other helicopters accompanying
such helicopter, upon notice to the Operator which may be oral,
to suspend the operations of the Operator under this Agreement
for a temporary period or periods of time for the purpose
accommodating such landing and takeoff, it being understood that
during said period the Department or any third person selected by
it may provide the services to the helicopter or helicopters
comprising the Presidential party ordinarily performed hereunder
by the Operator and, in addition, shall provide cleaning services
to the Premises as may be made necessary by the landing and
takeoff hereunder.  Upon notice to the Operator under this
Section 47 the Operator will vacate and turn over complete
occupancy of the Heliport to the Department and will during any
period of suspension hereunder the normal operations of the
Operator and of all other aircraft operators at the Heliport will
cease and be suspended.  There shall be no abatement of fees or
charges in connection with any suspension of operations or
evacuation by the Operator under this Section of the Agreement

#0021848 05
59999-00111

nor will the scheduled charges for such operation, if any, be
payable to the Operator.

Section 43.    NOTAMS - Emergency

    (a)  Except in the case of an emergency, the
Operator shall not issue any NOTAMS with respect to the Heliport
without the express prior consent of the Manager Department
Heliports.  The Operator hereby agrees to promptly advise the
Manager Department Heliports of any condition at or affecting the
Heliport which, in its judgment, could constitute an unsafe or
hazardous situation if the Heliport were to continue operating.

    (b)  Notwithstanding any other provision in this
Agreement, the Department hereby reserves the right at any time,
in the event of emergency, to take such actions, including but
not limited to the closing of the Heliport, as it may deem
appropriate.

Section 44.    Public Information

    Except as specifically required in connection with
its obligations hereunder, all information given by the Operator
to operators of aircraft, the general public or to any other
person or entity, with respect to the operation of the Heliport
shall be subject to the prior written approval of the Department
and the Operator shall not give any such information without such
approval.  It is understood that the foregoing applies and
pertains to the status of the Operator as the operator of the
Heliport under this Agreement and not to the Operator's own
business operations at the Heliport as and to the extent they are
authorized under this Agreement.

Section 45.    [Reserved]

Section 46.    Condition of Premises

    (a)  The Operator hereby acknowledges that it has
not relied upon any representation or statement of the Department
or its Commissioner, officers, employees or agents as to the
condition of the Premises.

    (b)  Without limiting the generality of Section 16
and subject to the terms and provisions thereof the Operator
understands and acknowledges that the Department may be
performing certain work in connection with the construction of

37

#0021848 :5
93999-00111

route 9A.  It is contemplated that such work will be completed
and during the term of this Agreement and the Department shall
have the right of ingress and egress upon, over and through the
Premises and the use thereof for the purpose of performing the
work and the Operator shall make the Premises, or any portion
thereof as may be specified from time to time by the Department,
available to the Department for the performance of the work upon
reasonable notice.  No occupancy of the Premises by the
Department for the purpose of performing the work or the
performance of the work shall be or be deemed an eviction or
constructive eviction of the Operator or provide for any
abatement or diminution of fees nor give rise to any claim or
demand by the Operator for damages, either direct or
consequential by reason thereof.  If, in the judgment of the
Operator, such work in connection with the construction of Route
9A interferes with the operations of the Heliport, the Operator
may terminate this Agreement upon thirty (30) days notice to the
Department.  Nothing in this Section shall or shall be construed
to impose upon the Department any obligations so to construct or
maintain or to make repairs, replacements, alterations or
additions, or shall create any liability for any failure so to
do.

Section 47.    Security Deposit

        The permittee acknowledges the State's right to
collect a security deposit.  This sum will be retained as
security to ensure faithful performance of the permit and
compliance with all terms by the permittee.  The State hereby
acknowledges receipt of  $10,210.00 received on 3/20/96 by
Beverly Caputo
                              (Dept. Rep.'s Signature)


Section 48.    Substitute Operator and Carryover

        The Parties recognizes the benefit of a
heliport as a public transportation facility on the west side of
Manhattan, desire to continue its operation as long as possible,
and recognize the benefit of interim improvements by the Operator
provided for herein.  The Parties agree that the authority to
terminate this Agreement pursuant to Section 41 will not be
exercised for the purpose of substituting or benefitting another
operator, on or off the Premises, or change the location of the
heliport, and (b) upon any taking, condemnation or other
termination prior to the Expiration Date, other than as a result
of a breach by the Operator, to the extent that the Department

38

#0021848.05
99999-00111

has other vacant property available and which may be suitable to
the purpose, the Department shall so inform the Operator who may
pursue permission to use such property as an interim heliport.

Section 49.    Definitions

The following terms, when used in this Agreement
shall, unless the context shall require otherwise, have the
respective meanings given below:

a)  "Heliport" shall mean the land and lands
under water in the City of New York, in the Borough of Manhattan
which are shown in "Exhibits A".

c)  "Premises" shall mean and include the land,
lands under water, bulkhead, bulkhead level decking and pilings,
the buildings, structures and other improvements thereon, the
equipment, permanently affixed or permanently located therein
such as electrical, plumbing, sprinkler or fire protection or
fire alarm, heating, steam, sewerage, drainage, refrigeration,
communications, gas and other systems and their pipes, wires,
mains, lines, tubes, conduits equipment and fixtures and all
paving, drain, culverts, ditches and catch basins.

(d)  "Aircraft" shall mean helicopters.

e)  "Agreement", "Contract" or "this Agreement"
shall mean this Form of Contract.

f)  "Manager shall mean the person or persons
from time to time designated by the Department to exercise the
powers and functions vested in the said Manager by this
Agreement.

g)  "Term" shall mean the term of this Agreement.

h)  "Fuel Operations"  shall mean the operation
of the fuel storage facilities and the dispensing an delivery of
aviation fuel into aircraft.

Section 50.    Entire Agreement: No Third Party Beneficiaries

This Agreement consists of the following:  The
Preamble, Sections 1 to 50, inclusive, together with Exhibits A,
B, C, D, E and F.  It constitutes the entire Agreement of the
parties on the subject matter hereof, may not be changed,
modified, discharged or extended except by written instrument
duly executed by the Department and the Operator, and shall not

39

#0021848.05
99999-00111

confer upon any person or entity other than the parties hereto
any rights or remedies hereunder.

The Operator agrees that no representations or
warranties shall be binding upon the parties unless expressed in
writing in this Agreement.

#00021848 05
99999-00111

40

IN WITNESS WHEREOF, the parties hereto have caused these presents to be executed as of the day and year first above written.

ATTEST:                                AIR PEGASUS HELIPORT, INC.

_____                By: _____

_____
Secretary

                                       (Title)_____President
                                              (Corporate Seal)

41

STATE OF NEW JERSEY
                            SS
COUNTY OF MORRIS


On the 1st day of March 1996, before me personally came Jeff Ellenruck to me known, who, being duly sworn, did depose, and say that he resides at 40 Pine Drive, in Roosevelt, New Jersey. That before him personally came Alvin S. Trenk, known to him as the President of Air Pegasus Heliport, Inc., the corporation described in and which executed the foregoing instrument. That he is the Secretary of Air Pegasus Heliport, Inc., the corporation described in and which executed the foregoing instrument; that he signed his name thereto by order of the Board of Directors of said corporation.

                                            Notary Public

                                            JEANETTE T. THOMPSON
                                            NOTARY PUBLIC OF NEW JERSEY
                                            My Commission Expires June 2, 1997

APPROVED:

Commissioner of Transportation for the
People of The State of New York

By

Date

Director, Real Estate Division

III. FREE USE OF PUBLIC LANDING AREA

Notwithstanding the provisions of any Schedule of Charges heretofore adopted for the use of the West 30th Street Heliport, no charges shall be made for the use including parking of such areas at the Heliport by the following aircraft:

1.    Aircraft operated by the Federal Government.

2.    Aircraft owned or chartered by the State of New York or the City of New York.

3.    Aircraft operated by the United State Coast Guard when engaged in the execution of search and rescue and law enforcement duties.

43

## Exhibit E

List of equipment to be furnished by the Operator

1.   Sufficient approved type aircraft wheel chocks.

2.   Cleaning and toilet supplies.

3.   First aid locker together with first aid equipment.

44

EXHIBIT F

1.    One 15 lb., 2-wheel CO-2 fire extinguisher.

2.    One 2-way radio capable of receiving and transmitting on a
      frequency of 123.05 megacycles (VHF), or such other
      frequency designated by the appropriate governmental
      authority.

3.    One reserve flotation craft.

4.    3 existing air conditioners.

5.    Wind Indicating and Recording Equipment.

45

## TABLE OF CONTENTS

PAGE

Section 1. Space ........................................... 1

Section 2. Term ........................................... 1

Section 3. Rights of User ................................. 2

Section 4. Schedule of Charges and Collections ............ 4

Section 5. Services by the Operator ....................... 4

Section 6. Fees and Charges Payable to the Department ..... 6

Section 7. Obligations in Connection with Payment of the
           Percentage Fee and Privileges .................. 8

Section 8. Compliance with Governmental Requirements ...... 9

Section 10. Prohibited Acts ............................... 12

Section 11. Maintenance, Repair and Property Insurance .... 14

Section 12. Indemnity; Liability Insurance ................ 18

Section 13. Construction by the Operator .................. 20

Section 14. Signs ......................................... 20

Section 15. Operation of the Fuel Storage System .......... 21

Section 16. Rights of Entry Reserved ...................... 22

i

Section 17. Assignment, Subcontracting and Operator Rights .... 23

Section 18. Termination by the Department .................. 24

Section 19. Right of Re-entry ............................. 27

Section 20. Remedies to be Non-exclusive .................. 27

Section 21.    Surrender ................................... 27

Section 22.    Effect of Base Rent Reductions .............. 27

Section 23. Removal of Property .......................... 27

Section 24. Brokerage .................................... 26

Section 25. Limitation of Rights and Privileges Granted ....... 28

Section 26. Notices ...................................... 26

Section 27. Place of Payments ............................ 29

Section 28. Construction and Application of Terms ........... 29

Section 29. Non-Liability of Individuals .................... 29

Section 30. Other Services by the Operator ................. 30

Section 31. Equipment Furnished by the Operator ........... 31

Section 32. Relationship of the Parties .................... 31

Section 33. Condemnation or Acquisition by Others ......... 31

ii

41

Section 34. Sales and Services ..................................... 32

Section 35. No Interest in Real Property ......................... 34

Section 36. Helicopter Flight Operations ......................... 34

Section 37. Sunken Craft ......................................... 34

Section 38. Accident Reports ..................................... 35

Section 39. Operations Personnel ................................. 35

Section 40. [Reserved] ........................................... 35

Section 41. Additional Rights Concerning Termination ............ 36

Section 42. Presidential Use of the Heliport .................... 36

Section 43. NOTAMS - Emergency ................................... 37

Section 44. Public Information ................................... 37

Section 45. [Reserved] ........................................... 37

Section 46. Condition of Premises ................................ 37

Section 47. Security Deposit ..................................... 38

Section 48. Substitute Operator and Carryover ................... 38

Section 49. Definitions .......................................... 39

Section 50. Entire Agreement; No Third Party Beneficiaries .... 39

JAN 12 2000 13:31

PAGE.14