172. NYH has a protectable property interest, or legitimate claim of entitlement, in continuing its helicopter business with fair and unbiased access to the public-use of the West 30th Street Heliport.   224

173. By reason of the foregoing, NYH has and continues to be irreparably injured and has suffered damages in an amount to be determined at the time of trial.   225

## SECOND CLAIM
## AGAINST APH AND HRPT
## VIOLATION OF DUE PROCESS

174. Plaintiffs repeat and reallege, as if set forth fully herein, the allegations contained in the previous paragraphs.

175. Plaintiffs have been deprived of their liberty and right to use the West 30th Heliport.   227

176. Plaintiffs' enjoyment upon terms of equality with all others in similar circumstances of the privilege of pursuing an ordinary calling or trade—for which they are licensed—is an essential part of their rights to liberty and property as guaranteed by the Fourteen Amendment and the Due Process Clause.   230

177. NYH has a protectable property interest, or legitimate claim of entitlement, in continuing its helicopter business with fair and unbiased access to the public-use West 30th Street Heliport in the same terms and conditions as others in plaintiffs' situation.   230

178. Plaintiffs also have a property interest in an entitlement from HRPT and APH to use the West 30th Street heliport for chartering (private) work because the HRPT has virtually no discretion to deny the request.

179. The West 30th Street Heliport is a public entity. Unlike sightseeing tours, chartering work does not require a specific permit. Even if Plaintiffs were not authorized to do sightseeing work at the heliport (which they are), they should be allowed to land

27

there for chartering work since anyone can land at the heliport for those purposes given the Heliport's public nature.

180. A helicopter does not need any permit, or any permission at all to do charter work. As long as it is a licensed helicopter it can land at a public heliport. It works like a public parking lot in which it does not require a reservation.

181. In addition, APH's imposition of a new fee, without any legitimate basis or justification therefore, solely for the purpose of funding its settlement with the HRPT, was arbitrary and outrageous and an abuse of its position as the FBO of the Heliport.

182. APH and HRPT actions constitute an arbitrary and capricious exercise of state power.

183. The ouster of plaintiff from the heliport, the denial of landing rights even for chartering work and imposition of the new fee constituted state action.

184. The deprivation of plaintiffs' rights and liberties has no justifiable governmental objective and is based on political and personal reasons.

185. By reason of the foregoing, Plaintiffs have been and continue to be irreparably damaged and have suffered damages in an amount to be determined at the time of trial.

### THIRD CLAIM
### VIOLATION OF DUE PROCESS

186. Plaintiffs repeat and reallege, as if set forth fully herein, the allegations contained in the previous paragraphs.

187. On May 17, 2006, APH announced a "new" fee schedule scheduled to take effect on June 5, 2006.

188. The new fee schedule raised fees across the board and imposed a flat $10 per passenger fee.

189. No additional service was provided in connection with the imposition of the new fee. [235]

190. There is no basis or justification for the new fee and it was imposed only to some customers and not to others. [239]

191. The new fee is unfair and unreasonable, and imposed arbitrarily and capriciously. Moreover, elementary notions of fairness enshrined in constitutional jurisprudence dictate that the Plaintiffs receive fair notice of conduct from state actors that will adversely affect them, especially when of the magnitude of the actions herein. [240]

192. The new fee was imposed solely for the purpose of funding APH's settlement with the HRPT. [241]

193. NYH has a cognizable property interest in operating at the Heliport on terms that are "fair, reasonable and nondiscriminatory." [242]

194. The imposition of the new fee was an exercise of a right or privilege created by the State. [244]

195. The imposition of the new fee deprived NYH of its property interest and adversely impacted interstate commerce. [246]

196. The deprivation was without due process of law. [247]

197. By reason of the foregoing, NYH has been and continues to be irreparably injured and has suffered damages in an amount to be determined at the time of trial. [248]

### FOURTH CLAIM
### TORTIOUS INTERFERENCE WITH EXISTING CONTRACTS AND PROSPECTIVE ECONOMIC RELATIONS

198. Plaintiffs repeat and reallege, as if set forth fully herein, the allegations contained in the previous paragraphs.

199. APH and HRPT are aware that Plaintiffs' have contracts or potential contracts with third parties which require Plaintiffs' access to and opportunity to use the public facilities at the West 30th Street Heliport as other helicopter operators are allowed to do.

200. Notwithstanding this information and repeated requests to both APH and HRPT by Plaintiffs' to allow them use of the West 30th Street Heliport, Defendants' have wrongfully interfered with and continue to interfere with these existing and prospective contracts by refusing Plaintiffs' permission not only for sightseeing but also for charter flights for reasons which are without privilege or legal justification and for reasons which are arbitrary, unreasonable, and capricious in order to favor Zip Aviation.

201. As the FBO of the West 30th Street Heliport, APH has no right to exclude NYH or any other operator from operating charter flights out of the public West 30th Street Heliport while HRPT has no such right to prevent helicopter charters such as Plaintiffs' from landing and taking off from a public heliport on public property and which uses public funds and services the public.

202. As a result of APH's and HRPTs malicious and tortious actions, NYH has lost some of its biggest charter clients including Calvin Klein and Ian Schrager among many others.

203. The damages suffered by NYH greatly exceed $ 250,000.

## FIFTH CLAIM
## RELIEF SOUGHT UNDER NEW YORK C.P.L.R ARTICLE 78

204. Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as if set forth fully herein.

205. This court has ancillary jurisdiction to hear claims under Article 78 of the C.P.L.R.

206. The NYDOT and its successor in interest HRPT abdicated its responsibility and abused its position by:

    a. Totally disregarding the findings of its investigations of APH. Indeed, under the terms of the settlement (Exhibit C), the HRPT went so far as to falsely "acknowledge" that it "has no knowledge that APH was in violation of any of the

30

provisions of the Permit and, accordingly, APH is in good standing with the HRPT."

b.   Failing to protect NYH and the public from APH's abuses and discrimination.

c.   Settling a dispute with APH regarding their inappropriate management of the Heliport, discriminatory practices and diversion of funds in terms totally favorable to APH.

d.   Allowing APH to raise its prices in order to raise the money required to repay HRPT for the settlement, arising out of APH's diversion of funds. Before the settlement, there was only a charge of $1.50 per passenger that was collected by APH and payable to HRPT. After the settlement, APH, with the acquiescence and support of the HRPT, imposed an additional $10 fee per passenger.

e.   Not objecting to the increase in spite of the fact that the permit states that the rates should be reasonable and non discriminatory violating its fiduciary obligation to NYH and the public.

f.   Agreeing that third parties could not assert any rights under the permit when signing the permit/agreement with APH. The NYDOT (whose successor in interest is the HRPT) went beyond its authority because it was acting in a fiduciary capacity on behalf of the public (the beneficiary) when it signed the contract and therefore it could not give up a right it did not possess.

g.   Failing to initiate a competitive process with respect to the contract pursuant to the HRP Act to serve as the FBO for the Heliport by "hold[ing] a public hearing," "solicit[ing]" the views of the public, "publish[ing] notice of the hearing and proposed action in the city record and state register," and "issu[ing] a bid prospectus."

h.   Failing to obtain board approval for the extension of the permit agreement pursuant to by-laws which, among other things, require board approval of all

281-287

"contracts for the general corporate purposes of the Authority which are in excess of one hundred thousand dollars ($100,000)." Hudson River Park Trust By-Laws at Art. III, § 3 ("Contracts Requiring Board Approval").

207. The actions mentioned in the previous paragraph were arbitrary and capricious.

208. HRPT and APH decision to oust NYH from the heliport was arbitrary and capricious and an abuse of permitted discretion.

209. HRPT's failure to protect NYH and the public from APH's abuse was arbitrary and capricious and an abuse of permitted discretion.

210. NYH should be allowed to resume operations at the heliport.

211. As a result of defendants' actions, Plaintiffs and the public have been irreparably harmed.

212. As a result of the foregoing, NYH has been damaged in an amount to be determined at trial.

## SIXTH CLAIM
## BREACH OF PUBLIC TRUST

213. Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as if set forth fully herein.

214. The HRPT is in breach of the public trust by acting in an arbitrary and capricious manner and abdicating its responsibility and fiduciary duty as a public body to act in a fair and nondiscriminatory manner by:

a. Totally disregarding the findings of its investigations of APH. Indeed, under the terms of the settlement (Exhibit C), the HRPT went so far as to falsely "acknowledge" that it "has no knowledge that APH was in violation of any of the provisions of the Permit and, accordingly, APH is in good standing with the HRPT."

32

b.  Failing to protect NYH and the public from APH's abuses and discrimination.

c.  Settling a dispute with APH regarding their inappropriate management of the Heliport, discriminatory practices and diversion of funds in terms totally favorable to APH.

d.  Allowing APH to raise its prices in order to raise the money required to repay HRPT for the settlement, arising out of APH's diversion of funds. Before the settlement, there was only a charge of $1.50 per passenger that was collected by APH and payable to HRPT. After the settlement, APH, with the acquiescence and support of the HRPT, imposed an additional $10 fee per passenger.

e.  Not objecting to the increase in spite of the fact that the permit states that the rates should be reasonable and non discriminatory.

f.  Agreeing that third parties could not assert any rights under the permit when signing the permit/agreement with APH. The NYDOT (whose successor in interest is the HRPT) went beyond its authority because it was acting in a fiduciary capacity on behalf of the public (the beneficiary) when it signed the contract and therefore it could not give up a right it did not possess.

g.  Failing to initiate a competitive bidding process with respect to the contract pursuant to the HRP Act to serve as the FBO for the Heliport by "hold[ing] a public hearing," "solicit[ing]" the views of the public, "publish[ing] notice of the hearing and proposed action in the city record and state register," and "issu[ing] a bid prospectus."

h.  Failing to obtain board approval for the extension of the permit agreement pursuant to by-laws which, among other things, require board approval of all "contracts for the general corporate purposes of the Authority which are in excess of one hundred thousand dollars ($100,000)." Hudson River Park Trust By-Laws at Art. III, § 3 ("Contracts Requiring Board Approval").

33

215.   HRPT had a responsibility to the plaintiffs' and the public to ensure that the heliport was managed in fair terms and in the best interest of the public.

216.   As a result thereof plaintiffs and the public have suffered damages.

## PRAYER FOR RELIEF

As to the First through Fourth Claims, Judgment:

(1)   Declaring that Plaintiffs' may operate out of the West 30th Street Heliport in a nondiscriminatory manner and on equal terms and conditions as all other helicopter operators for sightseeing on a full time basis such as all other helicopter operators and .

(2)   Declaring that Plaintiffs' may operate out of the West 30th Street Heliport in a nondiscriminatory manner and on equal terms and conditions as all other helicopter operators for its charter business on a full time basis such as all other helicopter operators.

(3)   Declaring that Plaintiffs' may land, take off and refuel, as necessary out of the West 30th Street Heliport in a nondiscriminatory manner and on equal terms and conditions as all other helicopter operators.

(4)   Restraining and Enjoining APH and HRPT from continuing to "bar" plaintiffs from the use of the West 30th Street Heliport.

(5)   Declaring that the existing operation of the Heliport is in violation of federal and state law;

(6)  Awarding plaintiffs actual and compensatory damages for each claim in an amount to be determined at trial but no less than $ 500,000.

(7)  Awarding Plaintiffs the costs and disbursements of this action, including attorneys' fees; and

(8)  On the Fifth Claim a Declaration and Order that: (a) HRPT acted arbitrarily and capriciously and abused its discretion by settling its dispute with APH on such favorable terms to APH, (b) HRPT acted arbitrarily and capriciously and abused its discretion and permitting APH to continue operating the Heliport, rather than terminating APH; (c) HRPT violated its by-laws and acted arbitrarily and capriciously and abused its discretion by failing to obtain board approval of its settlement with APH; (d) HRPT violated its inherent statutory duties and fiduciary obligations to the public by failing to resolve financial disputes with APH on rational and reasonable terms that protect the public interest and its failure to remove APH for engaging in the diversion of funds as described herein and reflected in various independent reports.

(9)  On the sixth claim compensatory and punitive damages against defendants jointly and severally in an amount to be determined at trial but no less than $500,000.

(10) Awarding such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs' hereby demand, pursuant to Rule 38 of the Federal Rules of Civil Procedure, a trial by jury on all issues so triable.

    Dated: New York, New York
          April 25, 2008

                      HANTMAN & ASSOCIATES

                      By: _____
                      Robert J. Hantman, Esq. (3947)
                      1414 Avenue of the Americas Suite 406
                      New York, New York 10019
                      Telephone:  (212) 684-3933
                      Facsimile:   (212) 755-1989
                      *Attorneys for Plaintiff Michael Roth and*
                      *New York Helicopter Charter, Inc.*