**EXHIBIT A TO AMENDED COMPLAINT**

723 P02    DEC 13 '99    13:13

Permit No. XW507

## AGREEMENT

AGREEMENT, dated as of the 25th day of March 1996, by and between The New York State Department of Transportation and its successors or assigns (hereinafter referred to as "the Department" or the "State"), an agency of the State of New York having an office at Hunter's Point Plaza, 47-40 21st Street, Long Island City, New York 11101, and AIR PEGASUS HELIPORT, INC., a corporation organized under the laws of the State of Delaware, having an office at 25-B Vreeland Road, Suite 201, Florham Park, New Jersey 07932 (hereinafter referred to as the "Operator" or the "permittee"), whose representative is Alvin S. Trenk.

WITNESSETH, That:

The Department and the Operator for and in consideration of the promises and mutual agreements hereinafter contained, hereby agree as follows:

Section 1.    **Space**

The Department hereby grants to the Operator certain privileges, as hereinafter described, at the West 30th Street Heliport (sometimes hereinafter referred to as the "Heliport"), in the Borough of Manhattan, City and State of New York, for use, occupancy and operation as hereinafter provided, in the following described areas:

Portions of the marginal way, bulkhead and river between West 29th Street and West 30st Street as shown on Exhibit "A" attached hereto and made a part hereof; subject to such state of facts as an accurate survey may reveal. Together with the exclusive right to use of the fixtures, improvements and other property of the Department located thereon, the said space, fixtures, equipment, improvements, bulkhead, bulkhead level decking and piling, buildings, structures, other property of the Department and all other space including the lands under water at the Heliport collectively referred to as "the Premises" subject to such incidental use by the State as the State may from time to time determine necessary. Provided, however, such use by the State shall not be so extensive as to substantially impact or limit permitted uses by the Operator.

Section 2.    **Term**

The term of this Agreement shall commence on the Commencement Date which shall be the date on which the Department first has unencumbered right to the use and occupancy of the Premises. The

Case 1:07-cv-04069-MGC   Document 56   Filed 07/22/2008   Page 3 of 11
Case 1:07-cv-04069-MGC   Document 46-2   Filed 04/22/2008   Page 2 of 48

723 P03    DEC 13 '99  13:13

Department shall fix such date, which date shall be at the Department's sole discretion by delivery of a notice of termination to the present permittee at the Premises. Provided, however, if such Commencement Date has not been fixed by March 18, 1996, then upon notice by the Operator, which notice may be given any time after March 18, 1996, the Department shall, within three (3) days of such notice by the Operator, be obligated to deliver the notice of termination to the present permittee. Unless sooner terminated or revoked as herein provided, the term of the Agreement shall expire on and the Expiration Date shall be 2001 the day preceding the FIFTH anniversary of the Commencement Date. The term of this Agreement shall automatically renew for successive terms of one month each unless cancelled by either party upon thirty (30) days written notice. Further, it is understood and agreed by and between the parties that the Operator shall not be entitled, and waives any claims to relocation benefits provided under state or federal laws.

Section 3.    <u>Rights of User</u>

The Operator shall use and operate the Premises as a public heliport for the following purposes only and for no other purpose whatsoever. Use of the permit premise for each of the categories of uses set forth in sub-paragraphs (a) to (e) below shall be in accordance with a site plan submitted by the Operator for approval by the Department within sixty (60) days of the Commencement Date, which Plan may be amended from time to time upon application of the Operator. The site plan shall be a drawing which locates within the Premises each of the areas of use described below:

(a) for the storage of cargo and materials and supplies of a nonhazardous nature; and for business, sales including but not limited to vending machines, souvenirs, pilot and aviation supplies, operations and administrative offices in connection with the operations at the Heliport;

(b) as passenger lounges and waiting rooms;

(c) as a Landing Area for owned aircraft, public aircraft, charter and sightseeing aircraft; and for the storage of aviation fuel and for the sale, dispensing and delivery of such fuel to and into aircraft. When the uses set forth in sub-paragraph (d) below are fully utilized, the area set forth for uses described in this sub-paragraph may be used for the parking and storage of aircraft but shall be subordinate at all times to use as a Public Landing Area;

Case 1:07-cv-04069-MGC   Document 56   Filed 07/22/2008   Page 4 of 11
Case 1:07-cv-04069-MGC   Document 46-2   Filed 04/22/2008   Page 3 of 48

723 P04   DEC 13 '99   13:13

(d) for the parking and storage of aircraft and for the performance of minor maintenance on aircraft. Without limiting the generality of any other term or provision hereof, it is hereby specifically understood that the Operator shall have no right under this Agreement to use the area set aside for uses described in this sub-paragraph (d) and that set aside for uses described in sub-paragraph (c) when the area set aside for uses described in this sub-paragraph (d) is fully utilized for the parking and storage or for the performance of minor maintenance if, as a result of such storage, maintenance or parking, fewer than two pads are available for the landing of helicopters. The Operator's rights of user as to the areas set aside for uses described in sup-para's (b), (c) and (d) shall be non-exclusive; and

(e) for the transportation of persons by any mode of transportation to and from the Premises, primarily for the convenience of persons using the Heliport or other services of the Operator.

Within thirty (30) days of the Commencement Date and upon any application to amend the site plan the Operator shall provide the Department with a certificate of a professional civil engineer with structural expertise, licensed in the State of New York, stating that the Premises are structurally safe and suitable for the specific use(s) proposed at the locations indicated in the site plan. The required certificate must be approved by the Department before occupancy will be authorized. The engineer shall be required to inspect the Premises and provide the Department in a written report, as part of the certificate, evidence that he has inspected the properties including sub and super structures, as well as the basis of the evaluation on the suitability for the proposed use. If the execution of this certificate requires the repair or rehabilitation of any area of the Premises and the permittee desires to use said areas, the permittee will make all required repairs prior to using said areas. In the event the Operator elects to forgo use of said areas by not making repairs, there shall be a pro rata reduction in the Permit Fee based on the number of square feet which are no longer usable. In the event that the certificate states that all or a substantial portion of the Premises may not be used as a Heliport, Operator may terminate this Agreement with no further liability to the Department or the Operator.

It is hereby expressly understood and agreed that the only Aircraft which the Operator and other aircraft operators may operate to, at and from the Heliport pursuant to the terms of

this Agreement shall be aircraft which do not exceed a gross take-off weight of 60,000 pounds as certified by the Federal Aviation Administration.

Without limiting the generality of any other term or provision thereof the Operator understands and agrees that it shall not itself nor shall it permit any other aircraft operator to conduct flight training operations (primary or advanced) at the Heliport other than recurrent training of pilots operating primarily at or from the Heliport, without express approval of the Department. In addition to the right to operate the Premises for the purposes heretofore set forth in this Section 3, the parties agree that sightseeing operations constitute the major portion of the business conducted at the Premises. The Operator or any other aircraft operator shall conduct sightseeing operations only upon the prior written approval of the Department of (i) the sightseeing operator and its aircraft and procedures, and (ii) the terms of any agreement between the Operator and any such sightseeing operator, which approval shall not be unreasonably withheld.

Section 4.    Schedule of Charges and Collections

The Schedule of Charges covering the use of the Heliport is attached hereto, made a part hereof and marked Exhibit "B". The Operator shall have the right, from time to time to amend any item of such Schedule of Charges, to make increases or decreases therein and to add or delete additional items thereto upon fifteen (15) days prior notice to Public and the Department.

The Operator shall have the responsibility to collect from each and every operator of an aircraft using the Heliport, other than the Operator, its employees and guests, and shall retain and keep as its own those amounts collected as charges which are in effect under the rate schedule or this or other written agreements for such use at the time of use thereof. The Department shall have no responsibility for the collection or payment of such charges.

Section 5.    Services by the Operator

(a) The Operator shall perform the work and furnish the services usually performed or furnished by a fixed base operator in connection with the operation of a public heliport facility. Without limiting the generality of the foregoing

4

#0021848.05
59999-00111

Case 1:07-cv-04069-MGC   Document 56   Filed 07/22/2008   Page 6 of 11
Case 1:07-cv-04069-MGC   Document 46-2   Filed 04/28/2008   Page 5 of 48

723 P06   DEC 13 '99   13:14

obligations, the Operator shall furnish at its own expense the following services and equipment at the Heliport:

(1) In connection with the arrival or departure of aircraft at or from the Heliport, the Operator shall man and monitor, for the purpose of receiving requests and for transmitting operations advisories to aircraft requesting the same, the following radio frequency: 123.05 megacycles (VHF), and/or such other authorized frequency as may be designated from time to time by the Department or other the appropriate governmental authority.

(2) Upon the landing of any aircraft at the Heliport, where the pilot of such aircraft desires to park, the Operator shall direct such aircraft to an assigned parking space and shall assist in the spotting of the aircraft, in securing the aircraft and shall provide for the removal of luggage therefrom.

(3) During the period that aircraft are parked in the area to which they have been assigned by the Operator, the Operator shall make periodic inspections of the aircraft and of the parking area to ascertain that such aircraft are adequately secured and to ascertain that no unauthorized person or persons are loitering in the parking area. If at any time, based on forecasts issued by the Weather Bureau, adverse weather conditions involving high velocity winds can be reasonably anticipated, the Operator will so inform the pilot or owner if reasonably possible.

(4) In connection with the departure of aircraft from the Heliport, upon request by the pilots, the Operator shall assist with the removal of wheel chocks, control locks and other security devices.

(5) The Operator will provide an office for the purpose of performing the necessary clerical activities connected with the collection of fees and advisories related to aircraft movements. The Operator shall furnish, install and maintain the radio equipment necessary to monitor the frequency set forth in subparagraph (1) hereof and shall furnish, install and maintain wind indicating equipment.

(6) The Operator shall maintain a lounge where aircraft passengers and crew may obtain shelter prior to or after flight and which shall contain reasonable facilities for the preparation and filing of flight plans and the fulfillment of other preflight requirements by pilots. The Operator shall maintain telephone service for the purpose of contacting the

Case 1:07-cv-04069-MGC   Document 56    Filed 07/22/2008   Page 7 of 11
Case 1:07-cv-04069-MGC   Document 46-2   Filed 04/28/2008   Page 6 of 48

723 P07   DEC 13 '99   13:14

Flight Service or Aircraft Traffic Control Center and the Weather Bureau but such service need not be by a direct line. Such telephone service may be by phone if installed, and in any event the telephone charges for such calls may be charged to the persons using such telephones.

.7: The Operator shall keep available for use in connection with the ground handling of aircraft such of the equipment listed in Exhibits "C" and "D" attached hereto and made a part hereof, or suitable substitutes therefor, as applicable to said operations.

(b) The Operator shall perform the work and furnish the services usually performed or furnished in connection with the storage and dispensing or sale of aviation fuel to aircraft at a heliport, including the delivery thereof to and into aircraft, utilizing the fuel storage and dispensing facilities at the Heliport as set forth in Section 15 hereof.

Section 6.   Fees and Charges Payable to the Department

(a) The Operator agrees to pay to the Department a basic monthly permit fee of $10,210 payable in advance on the commencement of the term hereof and on the first day of each and every month thereafter provided, however, that if this Agreement shall commence on a date other than the first day of the month or shall expire or be revoked or terminated effective on a date other than the last day of the month, said basic monthly permit fee shall be prorated on a daily basis using the actual number of days in said month. The basic monthly permit fee set forth in this Section 6(a) shall be increased 5% from the basic monthly permit fee, non compounded, on each annual anniversary of the Commencement Date.

(b) In addition to the basic monthly permit fee as set forth in paragraph (a) above the Operator shall pay to the Department a percentage fee equivalent to ten percent (10%) of the Operator's gross receipts for amounts in excess of $250,000 to and including $1,000,000 and a percentage fee equivalent to eleven percent (11%) of the Operator's gross receipts for amounts in excess of $1,000,000 to and including $2,000,000 and a percentage fee equivalent to twelve percent (12%) for all amounts over $2,000,000, plus a use charge computed at the rate of $15.00 per every ten sightseeing passengers, with the number of passengers rounded to the next higher integral multiple of 10, in connection with approved sightseeing operations.

6

N0021848.95
99999-00111

723 P08   DEC 13 '95  13:15

The term "gross receipts" shall include all monies paid for services rendered beginning on the Commencement Date and ending on the Termination Date to the Operator for the landing, take-off and parking of aircraft at the Heliport (including all fees as set forth in paragraph (c) hereof) and all other monies paid to the Operator for sales made or services rendered at or from the Heliport regardless of when or where the order therefor is received at the Heliport and any other revenues of any type arising out of or in connection with the Operator's operations at the Heliport provided, however, that any taxes imposed by law which are separately stated to and paid by the customer and directly payable to the taxing authority by the Operator shall be excluded therefrom.

The fee provided for in Section 6(b) shall be due and payable monthly on the thirtieth day of each month following the calendar month in which the effective date hereof falls, and shall be based on the Operator's gross receipts for the preceding calendar month, provided, however, that if the Agreement shall expire or be revoked or terminated effective on a date other than the last day of a month, the percentage fee for said month shall be due and payable within ten days after such effective date of expiration, termination or revocation or should such monies be paid after the Termination Date, within ten (10) days of receipt of such monies.

(c) Subject to the limitation set forth in Section 4, the Operator shall include, for the purposes of computing gross receipts under paragraph (b) hereof, all fees and charges under the Schedule of Charges or volume use permits which would be applicable to helicopter operations of the operator at the Heliport (i.e., leases and charters to third parties). Charges for fuel and maintenance services supplied to the Operator's own aircraft or aircraft which the Operator has leased or chartered for personal use (which are not leased or chartered to others) shall not be included in gross receipts.

(d) In the event the aggregate fees paid by the Operator pursuant to the provisions of subsection, 6(a), 6(b) and 6(c) hereinabove shall not equal or exceed $191,620 (the "Annual Amount") in the aggregate for each full year commencing on the first day of the first full month following the Commencement Date (the "Base Calculation Date") and commencing on each annual anniversary date of the Base Calculation Date thereafter during the term of this Agreement, then, in such event, the Operator shall pay to the State the difference between the amount actually paid under said subsections and $191,620 within 45 days following the date upon which the last monthly payment is due in respect of

10021848.05
99993-00111

7

JAN 12 2000 13:13                                              PAGE.08

Case 1:07-cv-04069-MGC   Document 56     Filed 07/22/2008   Page 9 of 11
Case 1:07-cv-04069-MGC   Document 46-2   Filed 04/28/2008   Page 8 of 48

723 P09    DEC 13 '99 13:15

the year for which payment is due. The Annual Amount shall increase five (5%) percent, non-compounded, on each annual anniversary of the Commencement Date. Notwithstanding the foregoing provisions of this subsection, the $191,620 shall be reduced pro rata in respect of each partial year.

(e)     Amounts due pursuant to Section 6 that are not paid within thirty (30) days from the date billed as indicated on a billing invoice, shall carry interest, penalties and collecting fees pursuant to the provisions of Chapter 55 of the laws of 1992.

Section 7.     Obligations in Connection with Payment of the Percentage Fee and Privileges

In connection with the exercise of the privileges granted hereunder, the Operator shall:

(a)     use its best efforts in every proper manner to maintain, develop and increase the business conducted by it hereunder and the use of the Heliport as a public heliport facility;

(b)     not directly or indirectly divert or cause to be diverted, any business from the Heliport. It is understood that the Operator or an affiliate has an ownership interest in Liberty Helicopter Tours, Inc. which also conducts sightseeing, charter and air taxi helicopter services from the Downtown Manhattan Heliport and may acquire or operate, in New Jersey, a helicopter facility. Such interests, in and of themselves, shall not be considered a violation of this Section.

(c)     set up and thereafter continually maintain during the effective period of this Agreement, and preserve after the expiration or earlier termination or revocation thereof for a period extending until the earlier of (i) the completion of a close out audit or, (ii) three years following the date of expiration, termination or revocation such a system of books, records and accounts as may be adequate and appropriate for the recording with respect to the Heliport of sightseeing passenger counts, all arrival and departures of all aircraft, (regardless of whether a fee is charged therefor and including all of the Operator's aircraft operations, if any, at the Heliport) times and dates thereof the type and registration number of the aircraft, the time of parking and storage thereof and the charges incurred by all aircraft during their stay at the Heliport, for the recording of all transactions pertaining to the Operator's flight operations, if any, the dispensing of aviation fuel at the

#0021048.05
99999-00111

/23 P10    DEC 13 '99  13:16

Heliport into aircraft, including the fuel charges, and such other information as the Department may reasonably from time to time require. Such system shall be in accordance with accepted accounting practice. In the event the close out audit shall not have been completed by the end of the third year following expiration, termination or revocation of this Agreement, such records shall be maintained at the sole expense of the Department. As an aid to this the Operator shall utilize such sales slips and invoicing machines and any other equipment or devices as may be necessary or appropriate to the Operator's operations thereunder and to enable the Operator to keep accurate records as hereinbefore stated. The Operator shall also permit in ordinary business hours during the effective period of this Agreement and for one (1) year thereafter and during such further period as hereinbefore mentioned, the examination, inspection and audit by the officers, employees and representatives of the Department of all of the aforesaid records, books, accounts, sales slips, invoicing machines and other devices as well as the records produced thereby, and also any records and books of account of any company which is owned or controlled by the Operator, or which owns or controls the Operator, if said company performs services, similar to those performed by the Operator under this Agreement, anywhere in the Port of New York District.

On or before the 30th day of the calendar month following the month in which the commencement date hereof falls and on or before the 30th day following the end of each and every calendar month thereafter including the month following the expiration or earlier revocation or termination of this Agreement, the Operator will furnish to the Department a sworn statement covering its operations for the preceding month, which statement shall be based on the aforesaid books, records and accounts. Said statement shall set forth the Operator's gross receipts and apply the percentage set forth in paragraph (b) of Section 6 thereto and shall contain such other information as the Department may require with respect to the Charges under Section 4, aircraft arrivals and departures and parking and storage times with appropriate identification of said aircraft, fuel charges, sightseeing passenger counts, and such other information as the Department may from time to time require.

Section 8.   Compliance with Governmental Requirements

(a) The Operator agrees to undertake at its own expense to comply with all laws and ordinances and governmental rules, regulations and orders now or at any time during the term of this Agreement which as a matter of law are applicable to the operations of the Operator at the Heliport.

10021848.05
99999-00111

9

Case 1:07-cv-04069-MGC   Document 56     Filed 07/22/2008   Page 11 of 11
Case 1:07-cv-04069-MGC   Document 46-2   Filed 04/28/2008   Page 10 of 48

723 P11   DEC 13 '99  13:15

(b) The obligation of the Operator to comply with governmental requirements is provided herein for the purpose of assuring proper safeguards for the protection of persons and property in or near the Heliport and proper operation by the Operator. Such provision is not to be construed as a submission by the Department to the application to itself of such requirements or any of them. Operator shall not conduct or allow any activity on the Premises inconsistent with law and shall not conduct or allow any use or activity on the Premises which may require a permit or other approval by a government agency without having lawfully obtained such permit or approval. Operator shall be responsible to the State for compliance with these provisions by his sub-permittees. For purposes of this Agreement a sub-permittee is defined as such person or entity which has a written agreement specifically designated as a "sub-permit" with the Operator and approval as such by the Department.

(c) The operator shall comply with all enactment's, ordinances, resolutions and regulations of the City of New York, which do not, in the reasonable view of the Operator, have the same effect or purpose as a bill of attainder and which would be applicable to its operations at the Heliport if the Department were a private corporation, except in cases where the Department either notifies the Operator that it need not comply with or directs it not to comply with any such enactments, ordinances, resolution or regulations which are applicable. The Operator shall, for the Department's information, deliver to the Department promptly after receipt of any notice, warning, summons, or other legal process for the enforcement of any such enactment, ordinance, resolution or regulation a true copy of the same.

In the event of compliance with any such enactment, ordinance, resolution or regulation on the part of the Operator, acting in good faith, commenced after such delivery to the Department but prior to the receipt by the Operator of a written direction from the Department not to comply (and thereafter discontinued) such compliance shall not constitute a breach of this Agreement, although the Department thereafter directs the Operator not to comply. Nothing herein contained shall release or discharge the Operator from compliance with any other provision hereof respecting governmental requirements.

(d) The Operator shall have such time within which to comply with the aforesaid laws, ordinances, rules and regulations as the authorities enforcing the same shall allow,