Section 9.   Manner of Operation

(a) The Operator shall conduct all operations hereunder in a careful, efficient, safe and courteous manner.

(b) The Operator shall keep the Heliport open and manned and shall provide and perform all services under this Agreement at not less than the following times: between the hours of 8:00 A.M. to 6 P.M. of each Monday through Friday, inclusive, except holidays. In addition to the foregoing, the Operator shall, on receiving at least two (2) hours' prior notice from the Department or from any one desiring to use the Heliport (which notice may be oral), of a proposed landing or take-off of an aircraft at the Heliport during other than regularly scheduled hours, handle said landing and take-off of an aircraft at the Heliport during other than regularly schedule hours, handle said landing and take-off and assign the necessary personnel qualified to handle said flight activity. The Operator shall keep records of such use, including without limitation thereto the hours and times when its personnel are performing said services, as the Department may from time to time require. The Operator shall advise the prospective user of the Heliport of the aforesaid fee upon receiving notice of the proposed landing or take-off. The Department does not guarantee the payment of the aforesaid fee by any such user. In addition to the aforesaid fee, said use of the Heliport shall be subject to the Schedule of Charges which may be applicable thereto. The Operator shall not permit any aircraft to remain parked at the Heliport during those hours of any day when its personnel are not in the Heliport as required pursuant to the aforesaid provisions.

The Department shall have the right but not the obligation to itself handle any State flight activity, including its own, using State personnel during the hours when the Heliport is not being operated by the Operator and using any and all equipment required to be furnished by the Operator under the terms hereof without cost to the Department.

(c) The Operator shall perform and provide all services hereunder in an orderly and proper manner. The Operator shall provide and its employees shall wear uniforms or other suitable means of identification. Such uniforms and means of identification shall be subject to the reasonable written approval of the Department. The Department shall have the right to object to the Operator regarding the demeanor and conduct of the employees and invitees of the Operator and of those doing business with it whereupon the Operator will forthwith take all steps necessary to correct the deficiency.

10021844.05
99999-00111

11

Case 1:07-cv-04069-MGC   Document 57    Filed 07/22/2008   Page 2 of 9
Case 1:07-cv-04069-MGC   Document 46-2   Filed 04/28/2008   Page 12 of 48

723 P13   DEC 13 '99   13:17

(d) The Operator shall at all times during which the Heliport is required to be open as herein provided have at least one qualified ground attendant on duty and performing the services required of the Operator under this Agreement. The Operator shall instruct its personnel that no gratuities shall be solicited or accepted for any reason whatsoever from the user of the Heliport. If the Operator uses the public aircraft landing area with its own aircraft, the Operator shall during such period of use have at least one qualified ground attendants on duty and performing the services required of the Operator under this Agreement. Moreover, wherever the operator is required to have at least one or two persons on duty, said number of persons shall be on duty and the Operator shall make appropriate arrangements with respect to their relief for eating and comfort purposes.

(e) The Operator shall immediately inform the Department upon its discovery of any breakdown, cracks, breaks or other signs of disrepair or malfunction of any portion of the Premises or of any other property of the Department.

(f) "Holiday' or "legal holidays" shall mean and include the following days in each year: the first of January, known as New Year's day; the twelfth day of February, known as Lincoln's Birthday; the thirtieth day of May, known as Memorial Day; the fourth of July, known as Independence day; the first Monday in September, known as Labor day; the twelfth day of October, known as Columbus Day; the eleventh day of November, known as Veteran's day; the fourth Thursday in November, known as Thanksgiving day, the twenty-fifth day of December, known as Christmas Day; and if any of such days is Sunday, the next day thereafter; and each general Election day in the State of New York; and such other or different days or dates as may be declared "holidays" or "legal holidays" by the Legislature of the State of New York.

Section 10.   Prohibited Acts

(a) The Operator shall commit no nuisance on the Premises, and shall not do or permit to be done anything which may result in the creation or commission or maintenance of a nuisance on the Premises.

(b) The Operator shall not cause or permit to be caused or produced upon the Premises, to permeate the same or to emanate there from, any unusual, noxious or objectionable smokes, gases, vapors or odors. The creation of exhaust fumes by the operation of the Operator's aircraft engines or aircraft engines

723 P14    DEC 13 '99  13:17

of the Operator's customers, so long as such engines are maintained and are being operated in a proper manner, shall not be a violation of this paragraph(d).

(c) The Operator shall not do or permit to be done anything which may interfere with the effectiveness or accessibility of the drainage and sewerage system, fire-protection system, sprinkler system, alarm system, fire hydrants and hoses, if any, installed or located on or in the Premises.

(d) The Operator shall not overload any floor on the Premises, and shall repair, replace or rebuild any floor, including supporting members, damaged by the Operator's overloading. Nothing in this paragraph or elsewhere in this Agreement shall be or be construed to be a representation by the Department of the weight any floor will bear.

(e) The Operator shall not use or permit the use of any structural supporting member of the building or roof or any part thereof for the storage of any material or equipment, or hoist, lift, move or support any material or equipment or other weight or load, by means of said trusses or structural supporting members.

(f) The Operator shall not dispose or nor permit anyone to dispose of any waste material (whether liquid of solid) taken from aircraft using the Heliport by means of the toilets, manholes, sanitary sewers or storm sewers on the Premises or by means of the waters at or bounding the Heliport.

(g) The Operator shall not do or permit to be done any act or thing upon the Premises which (1) will invalidate or conflict with any insurance policies covering the Heliport or any part thereof, or (2) which, in the reasonable opinion of the Department, may constitute an extra-hazardous condition, so as to increase the risks normally attendant upon the operations contemplated hereunder. The Operator shall promptly observe, comply with and execute the provisions of any and all present and future rules and regulations, requirements, orders and directions of the New York State Department of Insurance or of any other board or organization exercising or which may exercise similar functions, which may pertain or apply to the operations of the Operator on the Premises, but the Operator shall not be obligated to make any structural or non-structural improvements, alterations or repairs of the Premises that may be required at any time hereafter by any such present or future rules, regulation, requirement, order or direction.

JAN 12 2020 13:22                                              PAGE.14

(h) The Operator shall not keep or store inflammable or explosive liquids, gases or solids within the confines of any structure on the Premises, except such structures as are specifically designated therefor by the Department.

(i) The Operator shall not use water-born aircraft at the site unless there has been prior consultation and approval of the Department but the Department shall not authorize activities in said waters which will obstruct or prevent the same.

Section 11.   **Maintenance, Repair and Property Insurance**

(a) The Operator shall at all times keep in a clean and orderly condition and appearance the Premises and all of the Operator's and the Department's fixtures, equipment and personal property which are located in any parts of the Premises.

(b) The Operator shall repaint, repair, replace or rebuild any part of the Premises and other property of the Department which may be damaged or destroyed by the acts or omissions of the Operator or by those of its employees, customers, guests, or invitees, or of other users of the Heliport and persons doing business with the Operator.

(c)

(i) Operator, at its sole cost and expense at all times will take good care of the Premises and will maintain same in good order and condition in compliance with all legal requirements and insurance requirements and will make all necessary and appropriate repairs thereto, as necessary for the preservation of the fixtures and personalty on the Premises, including but not limited to maintenance and repairs and replacements to the paving and the frame and roof of and structures on the Premises, and the exterior of the exterior walls and the above ground fuel storage systems. The Department shall have the authority at any time to inspect the Premises to determine whether same are in good repair and maintenance, structurally sound, and that there are no unsafe, hazardous, unsanitary, or defective conditions in the structure, and its utilities, including improvements constructed by permittee. This provision shall create no obligation or liability upon the Department to inspect the Premises, nor to take any corrective action to make repairs, nor to undertake any financial obligation.

W0021848.05
99999-00111

Failure of the Department to inspect does not relieve Operator of any obligation herein.

(ii) Operator, at its sole expense, shall make all necessary provisions to protect the existing non-support walls, duct lines, drainage lines and other similar facilities located beneath or about the Premises (or to provide for their replacement or upgrading) during the course of construction of the Operator's Improvements and thereafter the Operator shall not interfere with the location or use thereof without the prior approval of Department.

(iii) Operator accepts the Premises in its existing condition and acknowledges that, except as otherwise expressly set forth in this Agreement, no representations, statements or warranties, express or implied, have been made by or on behalf of the State in respect of the Premises, the status of title thereof, the Requirements applicable thereto, the physical condition of the underlying land, or the use that may be made of the Premises, and that the Department shall in no event whatsoever be liable for any latent or patent defects in the Premises.

(iv) In addition to the provisions of herein, in no event shall Department in its capacity as owner be liable to Operator or to any other person for any injury or damage to any property of Operator or of any other person or to the Premises, arising out of any sinking, shifting, movement, subsidence or failure in the load-bearing capacity of, or other matter or difficulty related to, the soil or other surface or subsurface materials of the land or waterways underlying the Premises unless the same is caused by the gross negligence of owner, of owner's agents, employers, officers occurring after the date of this Agreement, it being agreed that except as otherwise provided herein, Operator shall assume and bear all risk of loss with respect thereto.

(d) With respect to all other parts of the Premises, including, without limitation thereto, building walls, partitions, floors, ceilings, doors, screens, sash, glass of every kind, the electrical, mechanical, plumbing, heating, steam, communications, gas and other systems, and their pipes, wires, mains, lines, tubes, conduits, equipment and fixtures, the

#0021848.05
99999-00111

15

Operator shall take the same good care of the Premises that would be taken by a reasonably prudent owner who desires to keep and maintain the same so that at the expiration or termination of the term and at all times during this Agreement, the same will be in as good condition as at the commencement thereof, except for reasonable wear and tear which does not adversely affect the efficient or the proper utilization thereof. To that end and regardless of the cause of the condition requiring the same, the Operator shall carry on periodic inspections, perform all necessary preventative maintenance including but not limited to painting, make all necessary rebuilding with respect to the same, all of which shall be in quality equal to the original in materials and workmanship.

(e) The Operator shall not use any cleaning materials having a harmful corrosive effect, on any part of the Premises.

(f) The Operator shall promptly wipe up all oil, gasoline, grease, lubricants and other inflammable liquids and substances and all liquids or substances having a corrosive or detrimental effect on the paving or other surface of the Premises, which may leak or be spilled thereon. The Operator shall repair any damage to the paving caused by such oil, gasoline, grease, lubricants or other liquids or substances.

(g) In the event the Operator fails to commence so to maintain, clean, repair, replace, rebuild paint or otherwise undertake any obligation required by this section within a period of twenty (20) days after notice from the Department so to do, or fails diligently to continue to completion the repair, replacement or rebuilding of all of the Premises or other property of the Department required to be repaired, replaced or rebuild by the Operator under the terms of this Agreement, the Department may, at its option, and in addition to any other remedies which may be available to it, repair, replace or rebuild all or any part of the Premises or other property of the Department included in the said notice, and the cost thereof shall be payable by the Operator upon demand.

(h) The obligation of the Operator as set forth in paragraph (b) of this Section 11 (in the event that damage or destruction caused by the acts or omissions of the Operator or by those of its employees, customers, guests or invitees, or of other persons doing business with the Operator, is covered by any contract or insurance under which the Department is the insured) is hereby released to the extent that the loss is recouped by actual payment to the Department of the proceeds of such

16

K0021148 05
99999-00111

insurance; provided, however, that, if this release shall invalidate any such policy of insurance or limit or void the Department's rights thereunder, then this release shall be void and of no effect

(i) (1) In the event of total destruction of the Premises or in the event of partial destruction so as to render the Premises unsuitable for operation as Heliport, the Department shall have the option to either

(i) terminate this Agreement within sixty (60) days from the date of such destruction unless the Operator shall determine to repair or rebuild the same at its expense.];

(ii) proceed with due diligence to repair or rebuild, as necessary.

(2) In the event said total or partial destruction is caused by the acts or omissions of the Operator or by those of its employee, customers, guests or invitees or of the obligation of the Operator as set forth in paragraph (b) of this Section 11, the Operator shall be obligated to pay to the Department the actual cash (i.e. depreciated) value of the damaged or destroyed property owned by the Department at the time of such damage or destruction, including the cost of the removal of the debris unless the Operator shall determine to repair or rebuild the same at its expense.

(3) The Operator shall immediately after such destruction and pending such election or exercise of the options by the Department and the Operator, take all necessary safety measures and measures for temporary preservation of the Premises, and if so directed by the Department pursuant to written notice, the Operator shall remove all debris resulting from such destruction, or to the extent that the removal of debris under such circumstances is covered by insurance, the proceeds thereof shall be made available to the Operator for that purpose.

During any period in which the Premises shall be wholly or partially destroyed so as to render the Premises unsuitable for operation as a heliport, the Operator's fees, charges, obligations and right hereunder to operate the Heliport shall abate.

(j) Nothing contained in this Section 11 shall relieve the Operator of its obligations under Section 13 hereof

to secure the Department's written approval before installing any fixtures in or upon or making any alteration, decorations, replacements (other than identical replacements, or such functionally equivalent replacements which functionally equivalent replacements may be installed after thirty (30) days notice to the Department where there is no written objection within said thirty (30) days), additions or improvements in the Premises.

(k) The parties hereby stipulate that neither the provisions of Section 227 of the Real Property Law of the State of New York nor those of any other similar statute shall extend or apply to this Agreement.

(l) The State shall have no responsibility whatever for the loss or destruction of any property, including but not limited to improvements made by the permittee, inventory, and property stored or being used on the Premises, personal or real, by fire, theft, or other cause.

Section 12.    Indemnity; Liability Insurance

(a) The Operator shall assume the risk of loss, damage or destruction to any helicopter of the Operator and any other property of the Operator on the Premises occurring in the use an occupancy of the Premises by the Operator pursuant to the provisions hereof and the Operator hereby releases the Department therefrom, excepting any loss, damage or destruction resulting from affirmative willful acts of the Department. The Operator shall indemnify and hold harmless the Department, its Commissioner, officers, representatives and employees from and against all claims, suits and demands, just or unjust, of third persons (including but not limited to employee, officers and agents of the Department or the Operator) arising out of, in connection with, or relating to the use and occupancy of the Heliport by the Operator or by others pursuant to the provisions hereof, including but not limited to the use of the Heliport itself, the waters surrounding the same or any property in proximity thereto, and for all expenses incurred by it and by them in the defense, settlement or satisfaction thereof, including without limitation thereto, claims and demands for death, for personal injury or for property damage, direct or consequential, whether they arise from the acts or omission of the Operator, the Department or of other third persons, excepting only the willful affirmative acts of the Department; provided, however, that the provisions of this sub-paragraph (a) shall not limit the rights of the Operator to enforce the rights, duties and obligations of the State under the terms of this Agreement,

(b) In addition to the obligations set forth in paragraph (a) of this Section, the Operator in its own name as insured, shall procure, maintain and pay the premiums on the following described policies of insurance with a contractual liability endorsement covering the obligations assumed by the Operator pursuant to paragraph (a) hereof in not less than the following limits, which shall cover its operations hereunder and shall be effective during the term of this Agreement:

(1) Aircraft liability insurance on aircraft owned, operated or rented by the Operator, if any, including liability and property damage with a single combined limit of $8,000,000 per occurrence and revenue and non-revenue passenger liability of at least $500,000 per seat.

(2) Comprehensive Airport Liability Insurance including death, personal injury, property damage and aggregate products in not less than a combined single limit of $8,000,000 per occupancy.

(3) Hangar keeper's Liability insurance of not less than $1,000,000 per aircraft.

(c) The Operator shall maintain and pay the premiums throughout the term of this Agreement on a policy or policies of Worker's Compensation insurance and Employer's Liability insurance covering the liability of the Operator as an employer under the Workmen's Compensation Act of the State of New York and covering all other liability of the Operator as an employer under the Workmen's Compensation Law of the State of New York or similar statutes and shall require any contractors to carry similar insurance for its employees.

(d) As to any insurance required by the provisions of this or any other Section of this Agreement to be secured by or at the direction of the Operator, a certified copy of each of the policies or a certificate or certificates evidencing the existence thereof, or binders shall be delivered to the Department within three (3) days after the Commencement Date. In the event any binder is delivered, it shall be replaced within thirty (30) days by a certified copy of the policy or a certificate. Each such copy or certificate shall contain a valid provision or endorsement that the policy may not be canceled, terminated, changed or modified without giving thirty (30) days' written advance notice thereof to the Department. As to those policies where the Department is named as an additional insured, each such policy shall contain an additional endorsement

19