Section 30.    Other Services by the Operator

(a) The Operator is obligated to furnish all necessary services for the Premises including, but not limited to:

(1) The operation of all mechanical, plumbing, power, heating, steam, air conditioning, electrical, boiler, water, toilet, burglar alarm, communications, gas and other systems affecting the Premises;

(2) All janitorial and garbage, refuse, snow and ice removal services; said garbage and refuse to be deposited at central deposit points designated by the Department. The Operator shall not place snow or ice upon any public streets, highways or marginal streets of the City of New York;

(3) The taking of all reasonable measures as shall be approved by the Department for the prevention of access to the Premises by any person other than employees, guests, invitees of the Operator or other persons authorized to be on the Premises;

(4) Provide security in the Premises during the hours the Heliport is open;

(5) Toilet washroom supplies;

(6) Relamping of all electrical fixtures;

(7) All obstruction lights installed on or outside the Premises.

(b) The Operator shall furnish and supply, at its own expense, all utilities necessary for the proper operation of the Premises as a heliport including but not limited to electricity, water, heat. The Operator shall secure the aforesaid utilities directly from the suppliers of the same.

(c) Except as expressly provided in a specific provision of the Agreement, the Department shall not be obligated to furnish or supply any services whatsoever in connection with the Heliport.

Section 31.        Equipment Furnished by the Operator

           Without limiting the generality of anything herein contained as to the Operator's obligation to operate and maintain the Premises as an operating heliport, the Operator shall supply, furnish and maintain throughout the term of this Agreement such equipment, furnishings and supplies necessary for the operation of the Heliport as specified in Exhibit E. The Operator further agrees to supply, furnish and maintain throughout the term of this Agreement such other equipment and materials as may be desirable or necessary for the proper operation of the Heliport, other than those to be furnished by the Department as set forth in Exhibit F.

Section 32.        Relationship of the Parties

           (a) This Agreement does not and shall not constitute the Operator as the agent or representative of the Department for any purpose whatsoever. Neither a partnership nor a joint adventure is hereby created.

           (b) Neither the officers, agents, contractors or employees of the Operator shall be or be deemed to be employees of the Department for any purpose whatsoever.

           (c) As to such of the Operator's obligations under this Agreement which pertain to the regulation of acts of third persons on the Premises, if the Operator cannot effectuate its obligations hereunder as to said third persons by admonitions and directions to comply, it shall immediately advise the Department or such other person as may be designated by the Department to such effect and, in any such event, the Operator shall not use force in securing compliance by said third persons.

Section 33.        Condemnation or Acquisition by Others

           (a) In the event the Premises or any part thereof, or the rights and interest of the Department in and to the Premises or any part thereof shall be condemned, taken or acquired by a body having a superior power of eminent domain, then this Agreement shall no longer apply to the land so taken, and all fees, charges and obligations shall be reduced pro rata in the same proportion as the Premises are reduced by the condemnation, taking or acquisition or, at the discretion of the Operator, such reduction shall adversely affect the business of the Operator, the Operator may deem this Agreement terminated, as of the date possession is taken from the Department by the condemning body, and this Agreement shall cease and determine in

the same manner and with the same effect as if the term of the Agreement had on that date expired.

(b) In the event of condemnation or acquisition as provided in paragraph (a) hereof, the Operator shall not be entitled to assert any claim to any compensation, award or part thereof made or to be made therein or therefor or any claim to any consideration or any amount thereof paid therefor, or to institute any action or proceedings or to assert any claim against such agency or agencies or against the Department for any such taking, it being understood and agreed between the parties hereto that the Department shall be entitled to all compensation or awards made or to be made or paid, and all such consideration, free of any claim or right of the Operator.

(c) In the event that all or any portion of the Premises is required by the Department for the construction of Route 9A or to comply with any present or future governmental law, rule, regulations, requirement, order or direction, the Department may, by notice given to the Operator, terminate this Agreement with respect to all or such portion of the Premises so required and all fees, charges and obligations shall be reduced pro-rata in the same proportion as the Premises are reduced by the termination or, at the discretion of the Operator, if such termination shall adversely affect the business of the Operator, the Operator may deem this Agreement terminated. Such termination shall be effective on the date specified in the notice. The Operator hereby agrees to deliver possession of all or such portion of the Premises so required on the effective date of such termination in the same condition as that required for the delivery of Premises upon the date originally fixed by this Agreement for the expiration of its term.

Section 34.   <u>Sales and Services</u>

(a) A principal purpose of the Department in the making of this Agreement is to have the Heliport operated as a first-class public heliport and to make available at the Heliport the items and/or services which the Operator is permitted and directed to sell and/or render hereunder, and the Operator hereby agrees to conduct a first-class operation and in accordance with the highest standards, safety and efficiency and to furnish all necessary and proper fixtures, equipment, personnel (including licensed personnel as necessary), supplies, materials and facilities.

(b) The Operator shall, (1) furnish good, prompt and efficient service hereunder, adequate to meet all demands

32

N0021848.05
99999-00111

JAN 12 2002 13:39                                           PAGE.17

therefor at the Heliport; (2) furnish said service on a fair, equal and non-discriminatory basis to all users thereof; and (3) except for sightseeing operations which require Department approval pursuant to Section 3, charge fair, reasonable and non-discriminatory prices for each unit of sales or services, provided that the Operator may make reasonable and non-discriminatory discounts, rebates or other similar types of price reductions to volume purchasers in connection with the landing, taking off and parking of aircraft. As used in this subdivision (b) "service" shall include furnishing of materials and supplies (including the sale thereof) and the landing, taking off and parking of aircraft.

(c) In the event Federal Airport Aid becomes available for use at the Heliport, the Department may apply for and receive a grant or grants of money from the Administrator of the Federal Aviation Administration pursuant to the Airport and Airways Development Act of 1970, as the same has been amended and supplemented, and under prior federal statues which said Act superseded. In connection therewith the Department may undertake certain obligations respecting its operation of the Heliport and the activities of its contractors, lessees and permittees thereon. The performance by the Operator of the promises and obligations contained in this Agreement is therefor a special consideration and inducement to the issuance of this Agreement by the Department, and the Operator further agrees that if the Administrator of the Federal Aviation Administration or any other federal or state governmental officer or body having jurisdiction over the enforcement of the obligations of the Department in connection with Federal Airport Aid, shall make any orders, recommendations or suggestions respecting the performance by the Operator of its obligations under this Agreement, the Operator will promptly comply therewith at the time or times, when and to be the extent that the Department may direct.

(d) The Operator shall not itself use the Heliport for its own aircraft and shall refrain from entering into continuing contracts or arrangements with third parties for use of the Heliport or for furnishing services covered hereunder when such use by the Operator or contracts or arrangements will have the effect of utilizing to an unreasonable extent the Operator's capacity for rendering such services. A reasonable amount of capacity shall be reserved by the Operator for the purpose of rendering services at the Heliport, including but not limited to the fueling of aircraft, to those who are not parties to continuing contracts with the Operator.

(a) The Operator shall use its best efforts to encourage and develop the use of the Heliport and the Operator's business thereat.

Section 35. <u>No Interest in Real Property</u>

Nothing contained in this Agreement shall grant or be construed to grant to the Operator any interest or estate in real property, and a landlord-tenant relationship shall not be or be deemed to be created hereunder.

Section 36. <u>Helicopter Flight Operations</u>

The Operator agrees that it shall permit [no helicopter flight operations hereunder and] no landing approach or take-off path to or from the east of the Heliport, including but not limited to the Miller Highway (West Side Elevated Highway) or any successor or replacement roadway. It is the understanding of the parties that flight patterns will be developed and maintained in such manner as will:

(a) impose no restrictions on present of future structures in any area, section or district adjacent to or surrounding the Premises; and

(b) require all landings and take-offs to be over the water with the necessary air taxiing to and from the bulkhead pads.

Section 37. <u>Sunken Craft</u>

If during the team of this Agreement, the waters constituting a part of the Premises shall become obstructed in whole or in part by the sinking of any airborne or waterborne craft owned or operated by the Operator not otherwise approved in a site plan approved by the Department, the Operator, after notice from the Department, shall promptly remove such obstruction or cause the same to be removed, without cost or expense to the Department. If, after notice from the Department, the Operator fails to remove such obstruction, the Department may in its discretion remove the same and in such event the Operator shall reimburse the Department for the expenses so incurred, upon demand.

The Operator shall save harmless the Department, its Commissioner, representatives, agents and employees from any damages or claim for damages that may arise by reason of the

#0021848.05
99999-00111

presence in said waters of any sunken craft owned or operated by the Operator.

Section 38.    Accident Reports

The Operator shall promptly report in writing to the General Counsel of the Department, and shall make all other reports as may be required by law, rule or regulation in connection with all accidents whatsoever arising out of or in connection with its operation of the Heliport. In addition to the foregoing, accidents which result in death, personal injury or serious damage shall be immediately reported by telephone to the aforesaid representatives of the Department.

In the event any claim is made by any person against the Operator arising out of any accident on the Premises or in proximity to the Premises as a result of the Operator's operations hereunder, the Operator shall promptly report such claim in writing to the aforementioned representatives for the Department. In addition, the Operator shall promptly furnish to the Department copies of all reports given to the Operator's insurance carrier.

Section 39.    Operations Personnel

The Operator shall furnish sufficient trained personnel to perform the services required of the Operator under this Agreement.

The Operator in its operations hereunder shall abide by the terms and conditions of the applicable collective bargaining labor agreements to which it is a party, if any, including but not limited to payment of the rates of wages and the holiday, idle time, vacation, severance pay and sick leave allowances specified therein.

The Operator shall immediately give oral notice to the Department (to be followed by written notices and reports) of any and all impending or existing labor complaints, troubles, disputes or controversies and the progress thereof. The Operator shall use commercially reasonable efforts to resolve any such complaint, trouble dispute or controversy.

Section 40.    [Reserved]

35

#3021848.05
99999-00111

Section 41.    Additional Rights Concerning Termination

    a.   Notwithstanding any other term or provisions of this Agreement and in addition to any other right of termination hereunder, this Agreement may be revoked by the Department at any time and without cause on thirty (30) days' prior written notice to the Operator. In the event of revocation pursuant to this paragraph (a) or expiration or termination pursuant to Section 2, this Agreement shall cease and expire as if the effective date of revocation stated in the notice were the date originally stated herein for the expiration thereof.

    b.   Upon expiration or termination pursuant to any provision of this Agreement, Operator shall have an additional sixty (60) days from the date of said expiration or termination to remove property in accordance with the provisions of Section 23.

    c.   Revocation or termination under this Section shall not relieve the parties of any liabilities or obligations hereunder which have accrued on or prior to the effective date thereof.

Section 42.    Presidential Use of the Heliport

    The Department shall have the right from time to time and at any time, upon request by or on behalf of the President of the United State to use the Heliport for the landing and taking-off of a helicopter carrying, among other, the President of the United State and other helicopters accompanying such helicopter, upon notice to the Operator which may be oral, to suspend the operations of the Operator under this Agreement for a temporary period or periods of time for the purpose accommodating such landing and takeoff, it being understood that during said period the Department or any third person selected by it may provide the services to the helicopter or helicopters comprising the Presidential party ordinarily performed hereunder by the Operator and, in addition, shall provide cleaning services to the Premises as may be made necessary by the landing and takeoff hereunder. Upon notice to the Operator under this Section 47 the Operator will vacate and turn over complete occupancy of the Heliport to the Department and will during any period of suspension hereunder the normal operations of the Operator and of all other aircraft operators at the Heliport will cease and be suspended. There shall be no abatement of fees or charges in connection with any suspension of operations or evacuation by the Operator under this Section of the Agreement

nor will the scheduled charges for such operation, if any, be payable to the Operator.

Section 43.    NOTAMS - Emergency

    (a)  Except in the case of an emergency, the Operator shall not issue any NOTAMS with respect to the Heliport without the express prior consent of the Manager Department Heliports. The Operator hereby agrees to promptly advise the Manager Department Heliports of any condition at or affecting the Heliport which, in its judgment, could constitute an unsafe or hazardous situation if the Heliport were to continue operating.

    (b)  Notwithstanding any other provision in this Agreement, the Department hereby reserves the right at any time, in the event of emergency, to take such actions, including but not limited to the closing of the Heliport, as it may deem appropriate.

Section 44.    Public Information

Except as specifically required in connection with its obligations hereunder, all information given by the Operator to operators of aircraft, the general public or to any other person or entity, with respect to the operation of the Heliport shall be subject to the prior written approval of the Department and the Operator shall not give any such information without such approval. It is understood that the foregoing applies and pertains to the status of the Operator as the operator of the Heliport under this Agreement and not to the Operator's own business operations at the Heliport as and to the extent they are authorized under this Agreement.

Section 45.    [Reserved]

Section 46.    Condition of Premises

    (a)  The Operator hereby acknowledges that it has not relied upon any representation or statement of the Department or its Commissioner, officers, employees or agents as to the condition of the Premises.

    (b)  Without limiting the generality of Section 16 and subject to the terms and provisions thereof the Operator understands and acknowledges that the Department may be performing certain work in connection with the construction of

route 9A. It is contemplated that such work will be completed and during the term of this Agreement and the Department shall have the right of ingress and egress upon, over and through the Premises and the use thereof for the purpose of performing the work and the Operator shall make the Premises, or any portion thereof as may be specified from time to time by the Department, available to the Department for the performance of the work upon reasonable notice. No occupancy of the Premises by the Department for the purpose of performing the work or the performance of the work shall be or be deemed an eviction or constructive eviction of the Operator or provide for any abatement or diminution of fees nor give rise to any claim or demand by the Operator for damages, either direct or consequential by reason thereof. If, in the judgment of the Operator, such work in connection with the construction of Route 9A interferes with the operations of the Heliport, the Operator may terminate this Agreement upon thirty (30) days notice to the Department. Nothing in this Section shall or shall be construed to impose upon the Department any obligations so to construct or maintain or to make repairs, replacements, alterations or additions, or shall create any liability for any failure so to do.

Section 47.   <u>Security Deposit</u>

The permittee acknowledges the State's right to collect a security deposit. This sum will be retained as security to ensure faithful performance of the permit and compliance with all terms by the permittee. The State hereby acknowledges receipt of $10,210.00 received on 3/20/96 by

_Beverly Caputo_
(Dept. Rep.'s Signature)

Section 48.   <u>Substitute Operator and Carryover</u>

The Parties recognizes the benefit of a heliport as a public transportation facility on the west side of Manhattan, desire to continue its operation as long as possible, and recognize the benefit of interim improvements by the Operator provided for herein. The Parties agree that the authority to terminate this Agreement pursuant to Section 41 will not be exercised for the purpose of substituting or benefitting another operator, on or off the Premises, or change the location of the heliport, and (b) upon any taking, condemnation or other termination prior to the Expiration Date, other than as a result of a breach by the Operator, to the extent that the Department

has other vacant property available and which may be suitable to the purpose, the Department shall so inform the Operator who may pursue permission to use such property as an interim heliport.

Section 49.   **Definitions**

The following terms, when used in this Agreement shall, unless the context shall require otherwise, have the respective meanings given below:

   a) "Heliport" shall mean the land and lands under water in the City of New York, in the Borough of Manhattan which are shown in "Exhibits A".

   c) "Premises" shall mean and include the land, lands under water, bulkhead, bulkhead level decking and pilings, the buildings, structures and other improvements thereon, the equipment, permanently affixed or permanently located therein such as electrical, plumbing, sprinkler or fire protection or fire alarm, heating, steam, sewerage, drainage, refrigeration, communications, gas and other systems and their pipes, wires, mains, lines, tubes, conduits equipment and fixtures and all paving, drain, culverts, ditches and catch basins.

   d) "Aircraft" shall mean helicopters.

   e) "Agreement", "Contract" or "this Agreement" shall mean this form of Contract.

   f) "Manager" shall mean the person or persons from time to time designated by the Department to exercise the powers and functions vested in the said Manager by this Agreement.

   g) "Term" shall mean the term of this Agreement.

   h) "Fuel Operations" shall mean the operation of the fuel storage facilities and the dispensing an delivery of aviation fuel into aircraft.

Section 50.   **Entire Agreement; No Third Party Beneficiaries**

This Agreement consists of the following: The Preamble, Sections 1 to 50, inclusive, together with Exhibits A, B, C, D, E and F. It constitutes the entire Agreement of the parties on the subject matter hereof, may not be changed, modified, discharged or extended except by written instrument duly executed by the Department and the Operator, and shall not