## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT is made on the 28th day of April, 2005 between: (i) Air Pegasus Heliport, Inc. ("APH"), a New York corporation having an office at 11 Hillside Avenue, Bernardsville, New Jersey 07924; and (ii) New York Helicopter Charter, Inc. ("NYH").

WHEREAS, APH is the fixed base operator of the West 30th Street Heliport in New York (the "Heliport") pursuant to a Permit (the "Permit") with the New York State Department of Transportation, the predecessor of the Hudson River Park Trust ("HRPT"), dated March 25, 1996; and

WHEREAS, the Permit reserves to HRPT the right to approve any helicopter operator engaged in sightseeing from the Heliport; and

WHEREAS, APH maintains a separate terminal facility (the "Trailer") which is used principally for corporate and charter helicopter operations; and

WHEREAS, NYH conducts both charter flights and charter tours, which the HRPT considers the same as sightseeing tours, from the Heliport; and

WHEREAS, NYH has submitted an application to APH to become an approved operator of helicopters by the HRPT, notwithstanding APH's position that approval is not required for NYH's charter tour operations;

WHEREAS, NYH has filed a lawsuit in the Supreme Court of the State of New York, County of New York entitled *New York Helicopter Charter, Inc. v. Air Pegasus Heliport, Liberty Helicopters, Inc. and Hudson River Park Trust* (Index Number 603773/04) (the "Lawsuit"); and

WHEREAS, APH and NYH have agreed to settle the claims in the Lawsuit that NYH has filed against APH;

NOW, THEREFORE, based on and in consideration of the foregoing premises, and in consideration of the mutual covenants set forth herein, APH and NYH agree as follows:

1. **NYH's Rights.** NYH shall be granted a non-exclusive right to continue to conduct charter tours from the Heliport provided it is not in default of any term of this Agreement and subject to approval of the HRPT in accordance with the terms of the Permit. NYH shall have the right to conduct its charter tours solely from the Trailer.

2. **Payments to APH.** NYH shall pay APH on a monthly basis, by no later than the tenth day of each calendar month, the following charges incurred during the previous month:

   (i) Customary and usual heliport charges for landings, parking, fuel, off-ops (also known as late ops), and SAFE Fees at APH's then current rates which are subject to change from time to time in APH's sole discretion; and

   (ii) A passenger fee computed at the rate of $15.00 for every 10 charter tour passengers that the NYH flies, with the number of passengers rounded to the next higher integral multiple of 10 (such payment shall be accompanied by a report certifying the passenger count for the period for which payment is submitted).

3. **Compliance With Rules.** NYH shall comply with all of APH's and the HRPT's rules, regulations and procedures as may exist or to be established from time to time. NYH agrees to not sell tickets, collect payment, solicit or loiter on the Heliport grounds, in the Trailer, in the Heliport parking lot, or on the sidewalk in front of the Heliport or elsewhere in the Hudson River Park, or otherwise interfere with or attempt to divert or distract other helicopter operators' customers.

4. **Limitations on Operations.** NYH shall be subject to the following limitations: (i) it shall only conduct charter tour flights on Saturdays, Sundays and Federal holidays as defined in 5 U.S.C §6103; (ii) it shall conduct not more than 24 charter tour flights over the course of any given weekend and not more than 12 charter tour flights on any given Federal holiday. In the event that a Federal holiday falls on either a Friday or a Monday, then NYH shall

2

be allowed to conduct up to 36 charter tour flights over the three-day weekend; and (iii) it shall conduct not more than 1,200 charter tour flights per calendar year.

5. **HRPT Approval.** APH has submitted, on NYH's behalf, an application to the HRPT for approval of NYH as a charter tour/sightseeing operator from the Heliport which is pending. NYH agrees to indemnify APH from any and all claims, suits or demands of any kind, including legal fees and costs, which arise out of or are related to NYH's operations at the Heliport.

6. **Default.** In the event that NYH defaults in any of its obligations under this Agreement, then APH shall have the right, without notice or an opportunity to cure, to terminate NYH's rights to conduct any operations at the Heliport.

7. **General Release of APH and NYH.** NYH, its successors and assigns, hereby releases and forever discharges APH, its employees, agents, shareholders, directors, officers, successors and assigns (collectively, the "Releasees") from any and all debts, actions, causes of action, suits, accounts, covenants, contracts, agreements, damages, and any and all claims, demands and/or liabilities whatsoever of every name and nature, whether directly or indirectly, personally or derivatively through others, and whether known or unknown to, or suspected or unsuspected by NYH EXCEPT for claims and rights that are preserved under this Settlement Agreement. Subject to this exception, this Release includes any and all claims asserted in the Lawsuit against the Releasees, and any claims NYH has or may have against the Releasees as of the date of this Settlement Agreement, or ever had against the Releasees from the beginning of the world through the execution date of this Settlement Agreement.

8. **Confidentiality.** The parties agree that the terms of this Settlement Agreement shall be maintained in confidence by NYH and shall not be revealed by NYH to any person or entity that is not a party to this Settlement Agreement. NYH shall not deliver any

3

communication regarding this Settlement Agreement to any third party, to the public, or to the media, other than the statement that "the matter has been settled."

9. **Completeness of Agreement.** This Agreement contains all of the terms and conditions agreed upon by the parties with reference to the subject matters contained herein. No other agreement, oral or otherwise, will be considered to exist or to bind any of the parties. No representative of any party to this Settlement Agreement had, or has, any authority to make any representation or promise not contained in this Settlement Agreement, and each of the parties to this Settlement Agreement acknowledges that such party has not executed this Settlement Agreement in reliance upon any such representation or promise. This Settlement Agreement cannot be modified except by a written instrument signed by all parties.

10. **Severability.** If any portion or provision of this Settlement Agreement is held unconstitutional, invalid, or unenforceable by any court of competent jurisdiction, the remainder of the Settlement Agreement will be considered severable, will not be affected, and will remain in full force and effect.

11. **Voluntary Execution.** The parties acknowledge that they have each thoroughly read this Agreement, understand it, and is entering into it of its own free will.

12. **Governing Law; Jurisdiction.** This Agreement will be interpreted and construed for all purposes under the laws of the State of New York without regard to its conflicts of laws principles, and all disputes arising under or out of this Settlement Agreement will be brought in courts of competent jurisdiction located within the State of New York. The parties consent to the personal and exclusive subject matter jurisdiction of the Courts of the State of New York in connection with any and all disputes arising out of this Settlement Agreement.

13. **Legal Counsel.** The parties all acknowledge that each has been represented by legal counsel throughout these proceedings and that, by this Settlement Agreement, each has

4

been advised, in writing, of his right to consult legal counsel prior to signing this Settlement Agreement. Each party further acknowledges that, to the extent it has wished to avail itself of that right, it has done so.

14. **Construction.** This Settlement Agreement is the product of negotiation by the parties and all parties' counsel participated in the drafting and revision of this Settlement Agreement. Therefore, this Settlement Agreement shall not be construed or interpreted more strictly against any party based on that party's counsel having drafted this Settlement Agreement.

15. **No Waiver.** The failure of any party to insist upon the strict performance of any of the provisions of this Settlement Agreement, or to exercise any of the rights afforded under this Settlement Agreement, shall in no way constitute a waiver of any subsequent default of the same or similar nature or a waiver of that party's right to insist on strict performance in the future.

16. **Attorneys' Fees.** If any party to this Settlement Agreement brings an action or counterclaim against any other party to this Settlement Agreement for breach of this Settlement Agreement, or any other rights preserved by this Settlement Agreement, including a claim for non-payment of fees and charges contemplated by paragraph 2 of this Agreement, the prevailing party shall be entitled to recover, in addition to all other damages and remedies, all reasonable attorneys' fees and costs incurred in connection therewith.

17. **Dismissal of Claims Against APH and the HRPT.** Simultaneous with the execution of this Settlement Agreement, NYH shall cause all claims that it has asserted in the Lawsuit against APH to be dismissed with prejudice and all claims that it has asserted against the HRPT to be dismissed without prejudice.

18. **Duplicate Originals.** This Settlement Agreement may be executed in counterparts, with each counterpart being equally effective.

APR-29-2005 15:14   LENTZ-GENGARO   2123616406   973 669 6960   P.01
APR 29,2005 01:32P

04/29/2005 11:28 FAX 5165280051   HOWARD R. BIRNBACH   @008
973 669 6960   P.03

19. **Facsimile Signatures.** Facsimile signatures shall be as effective as original signatures.

WHEREFORE, the parties have set their hands and seals as of the date first written above.

AIR PEGASUS HELIPORT, INC.

By: *[signature]*
Abigail S. Trenk, President

NEW YORK HELICOPTER CHARTER, INC.

By: *[signature]*
Michael Roth, President

Z:\WPS1\DATA\L-L\Trenk,Stev.\NYHC\Lease_Agreement\NYH-Final_1.doc

6

TOTAL P.03

TOTAL P.01