B104 — Summons without Notice, Blank Court
Personal or Substituted Service. 12 pt. type, 4-94

Blumberg Excelsior, Publisher, NYC 10013
www.blumberg.com

SUPREME COURT NEW YORK STATE
COUNTY OF NEW YORK

Index No.

Date purchased

NEW YORK HELICOPTER CHARTER, INC.

*Plaintiff(s)*

Plaintiff(s) designate(s)
New York
County as the place of trial.

*against*

AIR PEGASUS HELIPORT, INC., AIR
PEGASUS NEW YORK, INC. & HUDSON
RIVER PARK TRUST,

*Defendant(s)*

# Summons

The basis of the venue is
Business address of
defendant corporation

Plaintiff(s) reside(s) at 8200 Republic Airport Hanger 43, Farmingdale, NY
County of Suffolk

To the above named Defendant(s)

**You are hereby summoned** to answer the complaint in this action, and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney(s) within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in this complaint.

Dated, March 30, 2006

Defendant's address:

Andrew D. Greene, P.C.

Attorney(s) for Plaintiff
Plaintiff
Office and Post Office Address
3000 Marcus Avenue, Suite 1W11
Lake Success, NY 11042
(516) 437-7502

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------X
NEW YORK HELICOPTER CHARTER, INC.,                    Index No.

                      Plaintiff,

            -against-                                   **VERIFIED COMPLAINT**

AIR PEGASUS HELIPORT, INC. AIR PEGASUS
NEW YORK, INC. and HUDSON RIVER PARK TRUST,

                    Defendants.
------------------------------------------X

       Plaintiff, NEW YORK HELICOPTER CHARTER, INC., through its attorneys, ANDREW

D. GREENE, P.C., as and for its Verified Complaint against defendants, AIR PEGASUS

HELIPORT, INC., AIR PEGASUS NEW YORK, INC. and HUDSON RIVER PARK TRUST,

respectfully sets forth as follows:

### THE PARTIES

    1.    Plaintiff, NEW YORK HELICOPTER CHARTER, INC. (hereinafter "NYHC") was

and is a corporation duly incorporated and existing under the laws of the State of New York.

    2.    Defendant, AIR PEGASUS HELIPORT, INC., (hereinafter "APH") was and is a

corporation duly organized and existing under the laws of the State of Delaware which has offices

in New Jersey and conducts business at the West 30th Street Heliport, New York, New York

(hereinafter the "Heliport").

    3.    Defendant, AIR PEGASUS NEW YORK, INC. (hereinafter "APNY") was and is a

corporation organized and existing under the laws of the State of Delaware which conducts business

in New York and New Jersey.

4.    Upon information and belief, APH and APNY are authorized to do business and in fact do transact business in the State of New York.

5.    Upon information and belief, APNY does business under the assumed name Pegasus Aviation at the Heliport.

6.    Defendant, HUDSON RIVER PARK TRUST (hereinafter "HRPT"), is a state public benefit corporation created pursuant to the Hudson River Park Act, Chapter 592 of the Laws of 1998 of the State of New York (hereinafter the "Act"). Pursuant to the Act, HRPT is charged with the planning, construction and operation of a river-front park on Manhattan's west side between Battery Place and 59th Street (hereinafter the "Park"). The West 30th Street Heliport is located within the Park between West 29th Street and West 30th Street in the Borough of Manhattan, City and State of New York.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

7.    Upon information and belief, HRPT, is a successor in interest to the New York State Department of Transportation (hereinafter the "State") in respect of a permit agreement dated March 25, 1996 (hereinafter the "Permit") granted by the New York State Department of Transportation to APH. A copy of the Permit is annexed hereto as Exhibit "A" and is incorporated herein as set forth in full. The Permit was signed on behalf of APH by Alvin S. Trenk, as president.

8.    The Permit was made in New York and is to be performed within New York.

9.    The Permit provides APH with status as the Operator of the Heliport and affords APH the exclusive right to use the Heliport subject to and in accordance with the terms and conditions contained therein. The Heliport is a public facility to be operated in the public interest.

2

10.    The Permit term commenced in May 1996 and expired by its terms five (5) years later in May of 2001. Pursuant to Section 2 of the Permit, it thereafter continued on a "month-to-month" basis subject to cancellation by either party on thirty (30) days' written notice to the other. To date the Permit has not been canceled by either party and remains in effect.

11.    The Permit requires that APH charge "fair, reasonable and nondiscriminatory prices for each unit of sales or services" to users of the Heliport. (See Permit, section 34(b).) "Services include the furnishing of materials and supplies ... and the landing, taking off and parking of aircraft." (See Permit Section 34(b).)

12.    The Permit mandates that:

> "The operator [APH] shall, (1) furnish good, prompt and efficient service hereunder, adequate to meet all demands therefor at the Heliport; (2) furnish said service on a fair, equal and non-discriminatory basis to all users thereof; and (3) except for sightseeing operations which require Department approval pursuant to Section 3, charge fair, reasonable and non-discriminatory prices for each unit of sales or services, provided that the Operator may make reasonable and non-discriminatory discounts, rebates or other similar types of price reductions to volume purchasers in connection with the landing, taking off and parking of aircraft. As used in this subdivision (b) 'service' shall include furnishing of materials and supplies (including the sale thereof) and the landing, taking off and parking of aircraft." (See Permit section 34(b).)

13.    Section 3 of the Permit, page 4, provides that an operator "shall conduct sightseeing operations only upon the prior written approval of the ... [HRPT] of (I) the sightseeing operator and its aircraft and procedures, and (ii) the terms of any agreement between the Operator and any such sightseeing operator, which approval shall not be unreasonably withheld."

14.    The plaintiff is a third-party beneficiary of the Permit.

3

15.     On April 28, 2005, plaintiff and defendant APH entered into an agreement (hereinafter "Settlement Agreement") which governs plaintiff's use of the 30th Street Heliport. Said agreement provided, *inter alia*, that plaintiff "has submitted an application to APH to become an approved operator of helicopters by the HRPT." The Settlement Agreement provided that "NYH shall be granted a non-exclusive right to continue to conduct charter tours from the Heliport provided it is not in default of any term of this agreement and subject to approval of the HRPT in accordance with the terms of the Permit."

16.     The Settlement Agreement states that "APH is the fixed base operator of the West 30th Street Heliport in New York ... pursuant to a Permit ... with the New York State Department of Transportation, the predecessor of the Hudson River Park Trust ..., dated March 25, 1996."

17.     The Settlement Agreement provided that plaintiff shall pay to APH on a monthly basis "customary and usual heliport charges for landings, parking, fuel, off-ops (also known as late-ops), and SAFE Fees...."

## AS AND FOR A FIRST CAUSE OF ACTION
### (Declaratory Judgment)

18.     APH and APNY have provided and are providing certain customers with significant discounts and price reductions for services including landing fees, parking fees, fuel charges, late-ops and safe fees while not providing other similarly situated customers of the Heliport with these same discounts.

19.     By way of example, in August 2004, based upon documentary proof available to plaintiff, a commercial helicopter company, Argos Capital, accomplished twenty-five (25) landings at the Heliport and received a fifty (50%) percent discount on landing fees and a fifty (50%) percent

discount on parking fees. During this same period of time, the plaintiff accomplished 76 landings and received no discount for parking or landing fees.

20.    Upon information and belief, and based upon documentary proof available to plaintiff, another commercial helicopter company, Integrated Aviation Group, has received and continues to receive substantial discounts on certain fees including late-op fees from APH. Upon information and belief, based upon documentary proof available to the plaintiff, Integrated Aviation Group conducted only 131 total operations in 2005 from the Heliport and has conducted minimal operations in 2006. By contrast, plaintiff receives no discounts from APH and conducts thousands of operations per year.

21.    Upon information and belief, another commercial helicopter company, Heliflight, has received and continues to receive substantial discounts from APH for heliport charges and services.

22.    Upon information and belief, and based upon documentary proof available to the plaintiff, another commercial helicopter company, Liberty Helicopters Inc. (hereinafter "Liberty"), is and has been receiving substantial discounts for heliport services. In particular, Liberty Helicopters Inc. has enjoyed the following unequal benefits from APH and APNY:

   (a)    Liberty pays no SAFE fees;

   (b)    Liberty receives huge discounts for landing and parking fees;

   (c)    Liberty pays no late-ops;

   (d)    Liberty pays $.88 above cost per gallon of fuel while other operators, including plaintiff, pay substantially more.

23.    Upon information and belief, another commercial helicopter company, Helicopter Flight Services, Inc., one of the highest volume customers of the Heliport, receives no discounts for Heliport charges for SAFE fees, parking fees, landing fees or late-op fees.

5

24.    Defendants, APH and APNY, have violated their obligation under the Permit to "furnish ... service on a fair, equal and non-discriminatory basis to all users..." of the Heliport.

25.    Defendants, APH and APNY, have violated their obligation under the Permit to provide "volume" purchasers price reductions for sightseeing on a non-discriminatory basis because such discounts are granted to selective operators, without true reference to the volume of their use of the Heliport.

26.    Defendant, APH has threatened to declare plaintiff in default of the Settlement Agreement due to the existence of outstanding invoices totaling $38,189.22. Said invoices include charges for parking fees, landing fees, off-ops and SAFE fees, for which plaintiff is entitled to non-discriminatory discounts, based upon APH's custom and practice of affording discounts to other similarly situated operators. In addition, plaintiff is entitled to recalculation of said outstanding invoices in light of defendant's obligation to charge "fair, reasonable and nondiscriminatory prices" for services.

27.    Plaintiff has advised APH that, based upon its calculations, plaintiff has been overcharged in the amount of $105,090.00 for its operations at the Heliport in 2004 and 2005 and has demanded a credit for said overcharges.

28.    APH has threatened to permanently terminate plaintiff's right to use the Heliport permanently and without further notice based upon the alleged failure to pay said invoices.

29.    If APH declares plaintiff in default under the Settlement Agreement plaintiff could lose its right to operate at the Heliport forever.

30.    By virtue of the foregoing, plaintiff seeks declaratory judgment declaring that defendants, APH and APNY are in violation of their obligations under the terms of the Permit and

Settlement Agreement; that defendants, APH and APNY, must recalculate all invoices presently due to afford plaintiff the benefit of any discount in charges for sales and services granted to any similarly situated operators for landing fees, parking fees, late-ops and SAFE fees; and that said defendants, APH and APNY shall charge the plaintiff on an equal, non-discriminatory basis for all landing fees, parking fees, late-ops and SAFE fees and provide the same volume discount to plaintiff as afforded to any other similarly situated operator at the Heliport.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Breach of Contract)

31.    Plaintiff repeats and realleges each and every allegation contained in the First Cause of Action as if set forth more fully at length hereinafter.

32.    As stated hereinabove, the Permit clearly requires that APH charge "fair, reasonable and non-discriminatory prices to users of the heliport." Similarly, the Permit authorizes APH to provide discounts to "volume purchasers" on a "reasonable and non-discriminatory basis."

33.    As set forth hereinabove, APH has provided discounts for landing fees, parking fees, late-ops and SAFE fees to operators on a discriminatory and unequal basis. Said practice is violative of the express terms of the Permit and of APH's duty as a public heliport. Plaintiff is a third-party beneficiary of the Permit.

34.    Said actions by APH are violative of the terms of the Settlement Agreement which requires defendants to charge only customary and usual heliport charges and incorporates the terms of the Permit.

35.    Plaintiff is due a credit for overcharges made by APH and APNY in the sum of One Hundred Five Thousand, Ninety ($105,090.00) Dollars for overcharges from 2004 to date. Said

7

overcharges result from the failure of APH to allow plaintiff the benefit of discounts in landing fees, parking fees, late-ops and SAFE fees available to other similarly situated operators.

36.    In addition to the foregoing, plaintiff estimates that, due to the overcharges and discriminatory application of discounts on the part of APH and APNY, its ongoing business has been damaged in the sum of approximately One Million ($1,000,000.00) Dollars, in consequential damages, the more exact amount to be provided upon trial of the merits hereinafter.

37.    By reason of the foregoing, plaintiff seeks judgment against APH in the sum of One Hundred Five Thousand, Ninety ($105,090.00) Dollars, together with interest and the costs of this action, together with judgment in the sum of approximately One Million ($1,000,000.00 ) Dollars, the exact amount to be provided upon trial of the merits herein.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Injunction)

38.    Plaintiff repeats and realleges each and every allegation contained in the First and Second Causes of Action as if set forth more fully at length herein.

39.    Defendant, APH has declared plaintiff in default of the Settlement Agreement and has in fact excluded plaintiff from the Heliport due to the existence of outstanding invoices totaling $38,189.22. Said invoices include charges for parking fees, landing fees, off-ops and SAFE fees, for which plaintiff is entitled to non-discriminatory discounts, based upon APH's custom and practice of affording discounts to other similarly situated operators. In addition, plaintiff is entitled to recalculation of said outstanding invoices in light of defendant's obligation to charge "fair, reasonable and nondiscriminatory prices" for services.

8

40.    If plaintiff's right to use the Heliport is permanently terminated, plaintiff will be irreparably harmed.  Plaintiff is entering upon the busiest season of the year for sightseeing, i.e. Spring and Summer.  Plaintiff is financially unable to suffer a disruption of its sightseeing business at this critical time.  Such a disruption would put plaintiff out of business.

41.    In addition to the foregoing, plaintiff secured a valuable and unique status as a candidate for approval for sightseeing operations when it negotiated the Settlement Agreement with APH.  Plaintiff will suffer irreparable and immediate harm if it is permanently terminated from conducting operations at the Heliport in that plaintiff's coveted status as a candidate for approval would be rendered worthless.

42.    In sum and substance, defendants, APH and APNY have expelled plaintiff from the Heliport to insure the collection of *ultra vires*, unjustified and discriminatory fees and charges.

43.    Plaintiff has recently learned of the fact that APH is routinely providing discounts to other operators for sightseeing operations from the Heliport without regard to the volume of the operators' use of the Heliport.  APH repeatedly denied that such discounts were being given to other operators, but such denials have now been proven to be incorrect.

44.    Plaintiff has no adequate remedy at law.

45.    By reason of the foregoing, plaintiff seeks the issuance of an injunction restraining and enjoining defendants APH and APNY from continuing to exclude or restrict plaintiff's use of the Heliport and for an order directing that said defendants immediately apply to the plaintiff's account any discounts in charges for landing fees, parking fees, off-ops and SAFE fees applied to any other similarly situated user of the Heliport, and that all unpaid invoices relating to plaintiff's

account be recalculated to afford such discounts to the plaintiff forthwith;

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Mandatory Injunction)

46.    Plaintiff repeats each and every allegation contained in the First, Second and Third Causes of Action as if set forth more fully at length herein.

47.    In the Settlement Agreement, the parties acknowledge that "APH has submitted, on [plaintiff's] behalf an application to the HRPT for approval of [plaintiff] as a charter tour/sightseeing operator from the Heliport, which is pending."

48.    By letter dated February 4, 2005, APH's attorneys stated that plaintiff's "application has been submitted to the Trust. It is not up to Air Pegasus Heliport Inc. to process the application. It is in the hands of the Trust."

49.    By letter dated June 13, 2005, the defendant, HRPT, informed APH:

> "... with regard to your pending requests for approval to allow New York Helicopter and Zip Aviation to conduct sightseeing operations out of the facility, we are still awaiting information and payment for outstanding passenger fees due and owing in connection with Heliport Flight Service's sightseeing operations dating back to 1996. Consequently, for the reasons set forth in my earlier letters on this topic, until such information and all related payments are received, the Trust will not authorize either New York Helicopter or Zip Aviation to conduct sightseeing operations out of the facility."

50.    Defendant, HRPT, has violated its obligation under the Permit to not unreasonably withhold consent to its approval of a sightseeing operator at the Heliport. In effect, HRPT has withheld consent to plaintiff as a sightseeing operator for reasons unrelated to plaintiff.

51.    By reason of the foregoing, plaintiff is entitled to a mandatory injunction requiring that the defendant, HRPT, immediately approve the application of the plaintiff for status as an approved operator for sightseeing tours for the Heliport.

## AS AND FOR A FIFTH CAUSE OF ACTION

52.    Plaintiff repeats each and every allegation contained in the First, Second, Third and Fourth Causes of Action as if set forth more fully at length herein.

53.    Defendant, HRPT, is and has been aware of the actions of defendant, APH and APNY, as described above which violate the terms of the Permit.

54.    HRPT has a fiduciary duty, as a State public corporation, to discharge its responsibility of oversight of the defendants, APH and APNY in the public interest.

55.    HRPT has failed to conscientiously exercise its duty of oversight over APH and APNY, all resulting to the detriment of the plaintiff.

56.    Plaintiff is a third-party beneficiary of the Permit between APH and HRPT, as successor to the Department of Transportation of the State of New York.

57.    By reason of the foregoing, plaintiff seeks judgment against the defendant, HRPT, in the sum of Five Million ($5,000,000.00) Dollars, the exact amount to be provided upon trial of the merits herein.

**WHEREFORE**, plaintiff seeks judgment against defendants as follows:

(a)    declaring that defendants, APH and APNY are in violation of their obligations under the terms of the Permit and Settlement Agreement; that defendants, APH and APNY, must recalculate all invoices presently due to afford plaintiff the benefit of any discount in charges for sales and services

11

granted to any similarly situated operators including any volume discount so afforded; and that said defendants shall charge the plaintiff on an equal, non-discriminatory basis for all fees and services associated with its operations including landing fees, parking fees and SAFE fees forthwith and provide the same volume discount to plaintiff as afforded to any other similarly situated operator at the Heliport.

(b)    As to the Second Cause of Action, judgment against defendants, APH and APNY, for breach of contract in the amount of $105,090.00, together with interest and the costs of this action as well as the sum of approximately One Million ($1,000,000.00) Dollars, the more exact amount to be provided at trial of the merits herein, as compensatory damages for consequential damages; and

(c)    As to the Third Cause of Action, granting a permanent injunction restraining enjoining defendants APH and APNY from prohibiting the plaintiff the use, occupancy and rental of the West 30th Street Heliport and directing said defendants to immediately apply to the plaintiff's account any discounts in charges for landing fees, parking fees, off-ops and SAFE fees that are afforded by APH or APNY to any other similarly situated operator at the Heliport.

(d)    As to the Fourth Cause of Action, a mandatory injunction requiring that the defendant, HRPT, immediately approve the application of the plaintiff for status as an approved operator for sightseeing tours for the Heliport; and

(e)     As to the Fifth Cause of Action, judgment against the defendant, HRPT, in the sum of Five Million ($5,000,000.00) Dollars, the exact amount to be provided upon trial of the merits herein; and

(f)     For such other, further and different relief as this court may seem just and proper in the premises together with costs and disbursements of this action and attorney's fees.

Dated:  Lake Success, New York
        March 30, 2006

Yours, etc.

ANDREW D. GREENE, P.C.
Attorney for Plaintiff
3000 Marcus Avenue, Suite 1W11
Lake Success, NY 11042
(516) 437-7502

STATE OF NEW YORK)
                  ) ss:
COUNTY OF NASSAU )

MICHAEL ROTH being duly sworn, deposes and says that deponent is the president of the

corporation in the within action; has read the foregoing Verified Complaint and knows the contents

thereof; the same is true to deponent's own knowledge, except as to the matters therein stated to be

alleged on information and belief, and that as to those matters deponent believes them to be true.

MICHAEL ROTH

Sworn to before me this

7th day of April, 2006

Notary Public

ANDREW D. GREENE
Notary Public, State Of New York
No. 4872126
Qualified In Nassau County
Commission Expires Sept. 8,20 06

14