1

836UNEWC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

NEW YORK HELICOPTER CHARTER,

              Plaintiff,

        v.                               07 CV 4069 (MGC)

AIR PEGASUS, et ano.,

              Defendants.

------------------------------x
                                         New York, N.Y.
                                         March 6, 2008
                                         11:00 a.m.

Before:

              HON. MIRIAM GOLDMAN CEDARBAUM

                                         District Judge

                         APPEARANCES

HANTMAN & ASSOCIATES
     Attorneys for Plaintiff
BY:  ROBERT HANTMAN
     DIANA GARCIA


LEON FRIEDMAN
     Attorney for Defendant Air Pegasus


KONNER TEITELBAUM & GALLAGHER
     Attorneys for Defendant Hudson River Park Trust
BY:  MICHAEL A. GOULD
```

836UNEWC

1        THE COURT: This is the case of New York Helicopter
2   Charter v. Air Pegasus.
3        MR. HANTMAN: Yes, your Honor.
4        Good morning.
5        Robert Hantman and Diana Garcia, for the plaintiffs in
6   this case.
7        With the Court's permission, Ms. Garcia is going to
8   address the issues raised by Air Pegasus, and I was going to
9   address the issues raised by HRPT.
10       THE COURT: First, you can choose which of you will
11  respond, but I will ask you some questions.
12       I will come back to you.
13       What are the damages that New York Helicopter is
14  claiming?
15       MR. HANTMAN: At this point, your Honor, it is about
16  $40,000 per month --
17       THE COURT: I should put it another way. What precise
18  injury are you claiming was caused by the defendants?
19       MR. HANTMAN: Number 1, all of our client's
20  sightseeing activity from midtown have been curtailed entirely.
21       THE COURT: And that is caused by the defendants?
22       MR. HANTMAN: It is caused by defendants, we believe,
23  irrationally and inexcusably --
24       THE COURT: Irrationality is not a constitutional
25  issue.

836UNEWC

1           What is the deprivation of due process that you are
2  asserting?
3           MR. HANTMAN:  Under 1983, we believe he is being
4  discriminated against.  It may be a class -- but he is being
5  discriminated against because, unlike other helicopter
6  operators and even the competitors of his who have a good
7  relation with Air Pegasus, we believe he is selectively being
8  prevented from landing there or taking off from there.
9           THE COURT:  Is discrimination a violation of due
10 process of law?
11          MR. HANTMAN:  We believe it is, your Honor.
12          MS. GARCIA:  There are two main points.  One is the
13 right to move freely.
14          THE COURT:  What do you mean the right to move freely?
15 There is no obligation on the part of any heliport to give
16 everybody an opportunity to fly through that heliport.  Isn't
17 that right?  What do you mean by move freely?
18          MS. GARCIA:  There are two types of work done at the
19 heliport.  One is sightseeing and the other one is charter
20 work.
21          THE COURT:  Is it your position that the Constitution
22 requires that every helicopter owner in New York be able to do
23 both of those things through this heliport?
24          MS. GARCIA:  No, your Honor.  Our main complaint is
25 that his ability to pursue a lawful business has been

836UNEWC

1    diminished.
2         THE COURT:  I understand that.  But is that a
3    violation of the Constitution?
4         MS. GARCIA:  Yes.  We cited a couple of cases
5    including --
6         THE COURT:  Why don't you tell me the facts of your
7    best case.
8         MS. GARCIA:  In this specific case about due process
9    is the fact of the right to pursue his --
10        THE COURT:  I don't want to know about rights.  I want
11   to know about facts.
12        MS. GARCIA:  In Watson v. Kansas --
13        THE COURT:  Who decided that case?
14        MS. GARCIA:  In that case a police officer -- it is
15   similar in the way that a person is being interfered with its
16   business and that is why --
17        THE COURT:  What is it that the police officers did?
18        MS. GARCIA:  These police officers were searching the
19   premises of the business, interfering with the business.  In
20   this case, we have the sightseeing and the chartering --
21        THE COURT:  Wait just a moment.  That case didn't go
22   off on the fact that the search was an interference with the
23   business of the plaintiff.  It went on an entirely different
24   question, whether the search was legal, isn't that right?
25        MS. GARCIA:  Yes.  It was a warrantless search.

836UNEWC

1           THE COURT:  So it has nothing to do with what is
2   asserted here.
3           MS. GARCIA:  But even in the cases that we cited about
4   the abortion clinic, for instance --
5           THE COURT:  How does that have anything to do with
6   what is being complained of here?
7           MS. GARCIA:  What is being complained of here is that
8   he is not being allowed to conduct his business.
9           THE COURT:  That's why I started with the question, is
10  every helicopter owner in New York City entitled to conduct its
11  business through this heliport?  Does this heliport have an
12  obligation to everybody in the city?
13          MS. GARCIA:  I understand that for chartering work,
14  for sightseeing work, you need a permit for that, you should be
15  allowed to land there and everybody should be allowed if you
16  have the authorization --
17          THE COURT:  I am not asking you what should be, but
18  does the Constitution guarantee it, that you can land there,
19  that nobody can stop you from landing there?
20          MS. GARCIA:  I would say yes, but more under equal
21  protection more than under due process because for the specific
22  facts of this case the Constitution would guarantee --
23          THE COURT:  Do you have any case that suggests that
24  anybody who wants to fly a helicopter is entitled to fly it
25  through this defendant?

1          MS. GARCIA:  No, your Honor.  We don't have a case
2     like that but we do have cases showing that people should be
3     afforded equal treatment from the government, especially when
4     it is a public heliport.
5          THE COURT:  What is equal treatment?  Does that mean
6     that everybody should be able to do this is what I am asking
7     you?
8          MS. GARCIA:  Equal treatment means that all of the
9     people in the same situation at the heliport like he was
10    operating before, that he be treated equally.
11         THE COURT:  Are you saying that if you once use a
12    heliport, that heliport is obligated for the rest of your
13    natural life to let you use it?
14         MS. GARCIA:  No.  I am not saying that.  I am saying
15    that there are some parameters that should be complied with.
16    There are regulations.
17         THE COURT:  What is the reason that the heliport gave
18    for not continuing a relationship with this man?
19         MS. GARCIA:  They claim that Mr. Roth had violated a
20    policy there, but the point and what we are trying --
21         THE COURT:  Suppose that is the reason.
22         MS. GARCIA:  Let me tell you what the policy was
23    because they say that he was advertising for his company on the
24    premises and that nobody else was allowed to do that.  And in
25    the complaint, it was that someone was allowed to do that same

836UNEWC

1  advertising.  And even though Mr. Roth says that he was not
2  promoting advertising at that point, but he claims he did not
3  do that.  And the point here is to show that he was treated
4  differently because he had a previous litigation with APH and
5  that he was singled out and not allowed to conduct his
6  business.
7          THE COURT:  Is that your due process claim, that he
8  was singled out because he brought a case?
9          MS. GARCIA:  That is our equal protection claim.
10         THE COURT:  All right.  That is your equal protection
11 claim that because he brought a lawsuit against the heliport,
12 they refused him the use of the heliport.  And your position is
13 that that is a violation of equal protection of the law?
14         MS. GARCIA:  Yes.  It is part of it.
15         THE COURT:  Is there any other constitutional claim
16 that you are making here?
17         MS. GARCIA:  I believe -- we have the due process and
18 the equal protection but --
19         THE COURT:  But you are really relying on equal
20 protection.  You cannot really phrase a due process claim.
21         MS. GARCIA:  Equal protection.
22         THE COURT:  That's your claim.  I want to be clear as
23 to what it is exactly that you are claiming.  And what the
24 claim is, is that your client brought a suit against the
25 heliport, and after that suit was brought, they refused to

836UNEWC

1   allow him to use the heliport. They never refused before that,
2   but they refused afterwards.
3           MS. GARCIA: There has been history with our client --
4           THE COURT: But then you are getting into something
5   else. I am trying to focus on what it is you are claiming.
6           If your claim is that after he brought a lawsuit, they
7   cut him off because he was pursuing that lawsuit, that may be
8   an equal protection claim, but now you are saying that you are
9   claiming something that happened before that.
10          MS. GARCIA: No. It is true he got the lawsuit and
11  that is one aspect. But the other aspect, what is alleged in
12  the complaint, that they were trying to take away his business
13  to favor some of the people associated with APH that they were
14  favoring.
15          THE COURT: What is the information on which that
16  belief is based?
17          MS. GARCIA: There is the audit report and the
18  controllers. It shows that, for instance, State Aviation was
19  given a special parking spot in which they only pay 500 a
20  month.
21          THE COURT: So this is a complaint that the state
22  agency -- if it is a state agency -- brought against the
23  heliport through auditing, is that right?
24          MS. GARCIA: Yes. This was an audit that they did.
25          THE COURT: So, clearly, the state agency was not

836UNEWC

1  approving of this; you are suing state officials, you said.

2  MS. GARCIA:  Yes.

3  THE COURT:  The state officials conducted an audit, to
4  the extent that they have supervisory powers --

5  MS. GARCIA:  There were two audits.  The first one --

6  THE COURT:  That is not important.

7  The important point is this.  What is the wrong
8  committed by someone acting under color of state law?  To the
9  extent that you are claiming that this trust is a state agency,
10 what is it that that trust did that was discriminatory?

11 MS. GARCIA:  First thing I want to clarify, there were
12 two audits.  The first one was conducted by HRPT, the second by
13 the controller.  In the first one by HRPT, after they make this
14 finding, they put in writing that they have not found any
15 wrongdoing by APH and they settled with APH on favorable terms,
16 and that is in the complaint.

17 THE COURT:  So you are suing because they settled with
18 APH on favorable terms; you are not suing for a wrong to you,
19 you are suing for a general wrong, is that right?

20 MS. GARCIA:  No.  Because they knew everything that
21 was happening at the heliport and they condoned --

22 THE COURT:  And they failed to act?

23 MS. GARCIA:  Exactly.

24 THE COURT:  Now, is a failure to act which we normally
25 think of as negligence, a constitutional tort?

836UNEWC

1           MS. GARCIA:  In this --
2           THE COURT:  Because we are talking about
3    constitutional rights.
4           MS. GARCIA:  I understand.  But I think for state
5    action purposes, you have to show how the joint activity, how
6    they both interact in what is being --
7           THE COURT:  Intentional conduct is what you have to
8    show in order to allege that someone acting under color of
9    state law violated the Constitution.  These are torts we are
10   talking about.
11          MS. GARCIA:  Yes.
12          THE COURT:  These are intentional torts?
13          MS. GARCIA:  Yes.
14          THE COURT:  You are not really alleging that the trust
15   intended the misconduct of the heliport?
16          MS. GARCIA:  We allege that the heliport intended to
17   condone the conduct, that they intended to favor them by doing
18   all these things and by allowing them to raise their rate in
19   order to pay for the rate increase that they did --
20          THE COURT:  The rate increase is an entirely different
21   matter, isn't it?  That has nothing to do with discrimination.
22          MS. GARCIA:  It has somehow --
23          THE COURT:  How?
24          MS. GARCIA:  It shows the entwinement in a way because
25   HRPT --

836UNEWC

1            THE COURT:  What was the trust's interest?
2            MS. GARCIA:  Being repaid.
3            THE COURT:  The trust gets a cut of the revenue of the
4    heliport, that's true.  Why is it in their interests to have
5    discrimination, to have people pay different amounts?
6            MS. GARCIA:  It is in their interest because that way
7    they can pay for the settlement they just signed.
8            THE COURT:  Excuse me?
9            MS. GARCIA:  They can pay for the settlement.
10           THE COURT:  You can get just as big revenue if you
11   discriminate if you get a lot of return from somebody, isn't
12   that right?
13           MS. GARCIA:  But that's true, but if you see that they
14   raise the rates went up 6 --
15           THE COURT:  Just a moment.  The audit didn't show that
16   there was anything wrong with the amount of the rates.  You are
17   talking about discriminatory rates, the fact that some people
18   paid more than other people.  That is a different matter.
19           MS. GARCIA:  The audit, for instance, for a landing,
20   they found that some people were charged more and some people
21   were charged less.
22           THE COURT:  I understand.  That didn't result in lower
23   return.  It just resulted in some people paying less than other
24   people, isn't that right?
25           MS. GARCIA:  Yes.

836UNEWC

1        THE COURT:  It was not in the interests of the trust
2   to complain.  From what you say, their interest was in getting
3   more money.
4        MS. GARCIA:  The trust would have gotten -- I agree
5   with that.
6        THE COURT:  What was their interest?  We are talking
7   about intentional conduct of the trust.
8        MR. HANTMAN:  If I may, your Honor, there was an audit
9   performed by HRPT.  At some point it was determined that money
10  had been diverted from HRPT even by Air Pegasus over a period
11  of time --
12       THE COURT:  But you are not suing for that.  You are
13  not concerned about whether Air Pegasus stole money from the
14  state.  You are concerned about what they did to your client.
15       MR. HANTMAN:  But if I could just answer your question
16  about what was intentional.  What happened then because of the
17  relationship --
18       THE COURT:  But it is intentional with respect to your
19  client, not with respect to whether the heliport was stealing
20  money.
21       MR. HANTMAN:  But what happened as a result, it does
22  affect our client.  It affects a lot of the clients, but it is
23  part of a factual entwinement here actually because you have to
24  show some entwinement or joint participation.
25       THE COURT:  Excuse me?  You have to show -- I didn't