836UNEWC

hear you.

MR. HANTMAN: One of Mr. Friedman's issues is whether the state actor, whether HRPT is the state actor -- which I don't think is at issue here -- or whether Air Pegasus is a state actor. And for that, some of these facts --

THE COURT: But Air Pegasus is not. What you are hoping is that I will find that somehow the trust is a state actor, but what I am trying to figure out is what the trust did.

MR. HANTMAN: I can tell you what the trust did.

THE COURT: Vis-a-vis your client. You can't sue for someone else's wrong. You can only sue for your own.

MR. HANTMAN: With respect to our client, there were a number of things that were done.

Number 1, he was precluded from landing, taking off or even getting fuel there.

THE COURT: That had nothing to do with the audit of the trust.

MR. HANTMAN: No.

THE COURT: We are talking about the trust. You have to involve the trust in some violation of your client's constitutional rights in order to sue under 1983. Isn't that right? That's what the statute says that you are suing under, that he was deprived of constitutional rights under color of state law. The heliport is not a state actor. The trust is a

836UNEWC

1  state actor. So the question here is what did the trust do to
2  deprive him of his constitutional rights, isn't that right?
3       MR. HANTMAN: First of all, let me just address why
4  this diversion of funds and HRPT's accepting of it and allowing
5  Air Pegasus to pass the cost along to heliport operators who
6  had nothing do with the diversion of funds --
7       THE COURT: Is that a constitutional violation?
8       MR. HANTMAN: That in itself may not be a
9  constitutional violation although --
10      THE COURT: Is that a deprivation of due process of
11 law?
12      MR. HANTMAN: We certainly think it is a deprivation.
13      THE COURT: But you haven't yet told me what the
14 deprivation is.
15      MR. HANTMAN: The deprivation on that aspect, although
16 I will get back to the other point --
17      THE COURT: I am still looking for the deprivation of
18 constitutional right.
19      MR. HANTMAN: Any increase of the fares have to be
20 fair and reasonable and can't be discriminatory.
21      THE COURT: That is a constitutional guarantee? Where
22 do you find that in the Constitution of the United States that
23 state agencies have to charge fair and reasonable rates that
24 otherwise they are violating due process of law?
25      MR. HANTMAN: Well, under the Constitution -- it

1   specifically doesn't have that specific language, obviously.
2            THE COURT:  What in the Constitution embraces that
3   requirement?
4            MR. HANTMAN:  Number 1, you cannot deprive persons of
5   property or livelihood.
6            THE COURT:  That is an entirely different provision of
7   the seizure provision of the Constitution.  It is entirely
8   different from due process or equal protection, the taking
9   clause if that is what you are talking about.
10           MR. HANTMAN:  Getting back to the trust --
11           THE COURT:  I don't think that you are suing under the
12  taking clause.  Your complaint doesn't suggest it.
13           MR. HANTMAN:  The trust itself, we know, is
14  responsible for insuring that Air Pegasus complies with the
15  terms and operates the heliport in a productive manner.
16           THE COURT:  You are saying that that is their charge
17  under the law, but not everything they do is a violation of
18  constitutional rights and not all pricing at the heliport has
19  to do with due process of law.
20           MR. HANTMAN:  I understand your Honor's position
21  notwithstanding the fact that we may have alleged in the
22  complaint and accepting it as true a lot of things that we
23  think are improper, perhaps even unlawful --
24           THE COURT:  You need a constitutional violation.
25           MR. HANTMAN:  Perhaps collusional and perhaps

836UNEWC

1  violations on the face which seem irrational and shocking the
2  conscience --
3      THE COURT:  No.  They have to shock the conscience.  I
4  am suggesting you need to tell me something which shocks the
5  conscience which the trust did, not just that they overlooked.
6      MR. HANTMAN:  I think there is a litany of things
7  alleged.
8      THE COURT:  That doesn't help me.  I want you to
9  recite what it is.  Just tell me one deprivation in the litany,
10 because I read your complaint and I am trying to focus on what
11 it is that you are really complaining about under the
12 Constitution.
13     MR. HANTMAN:  Well, first we go into the facts and
14 then Ms. Garcia will address the constitutional issues.
15     THE COURT:  We cannot separate them.  Cases are made
16 up of facts.
17     MR. HANTMAN:  But you have to have the facts to rise
18 to irrational or discriminatory.
19     THE COURT:  Rationality is not a constitutional
20 requirement.  There are many irrational things that public
21 officials do that do not violate the Constitution of the United
22 States, or at least do not provide an actionable basis for
23 suing under 1983.
24     MR. HANTMAN:  We believe that if there was ever a case
25 which did fall under the parameters --

836UNEWC

1        THE COURT: That is rhetoric.
2        MR. HANTMAN: Quite frankly --
3        THE COURT: What is it that your client seeks damages
4    for?
5        MR. HANTMAN: For being kicked out and not being
6    allowed to land or take off from the heliport which is on
7    public property.
8        THE COURT: No, it is not --
9        MR. HANTMAN: -- public property. Well, it is not
10   private property. Mr. Frank doesn't own that property.
11       THE COURT: But it is not property open to the public.
12   It may be a part of an open space that a section of has been
13   set aside for a helicopter port. It is not public property in
14   the sense that anybody who wants to can go on that property and
15   fly their plane.
16       MR. HANTMAN: If you were to take this argument to the
17   extreme as Mr. Friedman has done --
18       THE COURT: Please don't get sidetracked. I don't
19   want anything to an extreme. I just want to know two things.
20   One, what are the damages caused by the trust to your client
21   that violate the Constitution and, two, how did the Hudson
22   River Park Trust cause those damages?
23       MS. GARCIA: Well, I think as we say --
24       THE COURT: It is another way of looking at it.
25   Actually, I am focused on the state actor here, the Hudson

Case 1:07-cv-04069-MGC   Document 76   Filed 07/22/2008   Page 6 of 11

18

836UNEWC

1   River Park Trust. The heliport is not a state actor. It is
2   only the Hudson River Park Trust. You may have a colorable
3   basis for asserting it is a state actor. Then we come to what
4   it is that that entity did to your client that deprived him of
5   a constitutional right. That is the issue here, isn't it?
6        MS. GARCIA: Yes. First the fact, HRPT steps in the
7   shoes of the New York Department of Transportation, to begin
8   with.
9        THE COURT: It doesn't matter whose shoes they are in.
10  I want to know what they did. What did the trust, the only
11  state actor here, do?
12       MS. GARCIA: What they did is, they saw there were
13  irregularities. They went and did an investigation, and they
14  did not simply overlook. They actually protected HRPT.
15       THE COURT: What do you mean by "protected"?
16       MS. GARCIA: They lied about it. They say it has no
17  knowledge that APH was in violation of any of the provisions of
18  the permit and, accordingly, APH is in good standing.
19       THE COURT: So you are saying they made a bad
20  decision.
21       MS. GARCIA: I think this is a lie because they did
22  find that they were not complying with the permit. They were
23  lying about it. They were protecting APH. It is not a bad
24  decision.
25       THE COURT: You are saying that any time a state actor

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1    differs in his view from yours, he is violating the
2    Constitution.
3                MS. GARCIA:  No.  I am not saying that --
4                THE COURT:  It is not a constitutional issue whether
5    the state actor was right or wrong.  The issue is, did it
6    deprive your client of a constitutional right -- the trust, not
7    whether it was right or wrong.
8                Suppose they did something that was wrong.  That
9    doesn't automatically make it a deprivation of constitutional
10   rights.  People make mistakes every day of the week.  In some
11   circumstances mistakes might be deprivations of constitutional
12   rights, but you so far haven't shown me that.
13               MS. GARCIA:  The way that they deprive our client
14   of --
15               THE COURT:  First, what is the constitutional right
16   that he has that they deprived him of?
17               MS. GARCIA:  The interest that he has to be treated
18   equally to everybody else and the continuing its business, the
19   continuation.
20               THE COURT:  You don't want him treated as everybody
21   else --
22               MS. GARCIA:  I mean everybody in that same situation.
23               THE COURT:  What makes it the same situation?  You are
24   talking about everybody who uses that heliport, is that right?
25               MS. GARCIA:  The heliport operators at the heliport,

836UNEWC

1   yes, the helicopter operators.
2           THE COURT:  You are saying that your client was
3   singled out, nobody else who flew from that heliport was ever
4   treated the way your client was treated.
5           MS. GARCIA:  There was discrimination not only against
6   my client.
7           THE COURT:  But you told me before he was singled out.
8           MS. GARCIA:  He was singled out for the previous
9   lawsuit.  With him, there were more specific facts because
10  there was prior litigation between the parties, so that's why
11  he was denied access to the heliport.
12          THE COURT:  If you are suing on the ground that they
13  denied access to him at the heliport because he sued them,
14  that's the closest you come to an issue of due process of law.
15  Is that what you are alleging?
16          It is very hard for me to tell from your complaint
17  what it is that you are complaining about and what it is here
18  that was a state action because I am not at all clear that the
19  trust had anything to do with that.  He didn't sue the trust,
20  did he; he sued the heliport?
21          MS. GARCIA:  The trust too.
22          THE COURT:  The state suit was against the trust?  I
23  didn't think so.
24          MR. HANTMAN:  It was several cases --
25          THE COURT:  This case is against the trust.  You are

836UNEWC

telling me that because the plaintiff sued the heliport in New York in a state court for something or other -- it doesn't matter for what -- they told him that unless he dropped the suit, he couldn't use the heliport anymore?  If they were a state actor, that very well might be a due process violation.

I am not at all clear as to the relationship of the trust, what it is that the trust did with respect to that, what the trust had to do with that action of the heliport.

MS. GARCIA:  What the trust did, and our client also wrote letters complaining to the trust --

THE COURT:  Let's stop.  That's important.  Whom did he write to?

MS. GARCIA:  He wrote to the HRPT --

THE COURT:  Who did he write to at the trust?  It is easier for me to call it the trust.

MS. GARCIA:  I don't have the letter right here.

THE COURT:  When?  Was this before or after?

MS. GARCIA:  It was before because they not only told him to drop the lawsuit, but he had to stop complaining, and he had to stop his complaint with the HRPT and drop the lawsuit, and since he didn't do that --

THE COURT:  What did he complain to the trust about?

MS. GARCIA:  All of the discrimination that was going on.

THE COURT:  When you say "all," what specifically did

836UNEWC

1  he bring to their attention?
2      MS. GARCIA:  He complained specifically that they were
3  told that they couldn't advertise in a certain area and that
4  other people that were friends with APH were allowed to.  He
5  complained about that.
6      THE COURT:  Did he complain to the trust that the
7  heliport dropped him because he sued them and wouldn't let
8  him --
9      MS. GARCIA:  This was before.
10     THE COURT:  So the trust had nothing to do with that.
11 I am trying to understand what the trust was involved
12 in because that's the only state actor here, the trust.  You
13 need conduct of the trust if you want to claim under 1983, is
14 my point.  And I am trying to get from you the conduct of the
15 trust that you are suing on because that's action under color
16 of state law.
17     MS. GARCIA:  The fact that the trust is charged with
18 insuring that Air Pegasus --
19     THE COURT:  The trust is not a day-to-day supervisor
20 of the heliport.
21     MS. GARCIA:  That is true but --
22     THE COURT:  You have to at least bring something to
23 their attention.
24     MS. GARCIA:  Exactly, and our client did.
25     THE COURT:  But you didn't bring this matter to their

836UNEWC

1  attention, the fact that he brought a suit was being held
2  against him. That is the closest that you come so far to a due
3  process problem. But if the trust doesn't know about it, you
4  cannot charge them with having done something about it.
5       MR. HANTMAN: Actually, he was writing, complaining to
6  the trust before he got kicked out and because he was writing
7  to the trust and because he was creating problems --
8       THE COURT: No, no. Did he write to the trust about
9  the fact that they wanted to throw him out because he sued
10 them?
11      MR. HANTMAN: I don't know that he knew that they were
12 going to throw him out.
13      THE COURT: After they threw him out, did he write to
14 the trust that they threw me out because I sued them, and they
15 told me, if I dropped the suit, I could come back. Did he
16 write that to the trust?
17      MR. HANTMAN: After he was kicked out, that's when the
18 lawsuit was commenced against the trust, and the trust has done
19 nothing to try to reinstate him.
20      THE COURT: Please, the trust is now a defendant. The
21 trust hasn't had an opportunity to decide who is telling the
22 truth here. But the question is, did you write to the trust
23 when the heliport told you that if you didn't stop the lawsuit
24 you would be kicked out and bring that to the attention of the
25 trust. The trust is not a day-to-day supervisor, so the trust