836UNEWC

1  didn't know about that at the time.  If they didn't know about

2  it, they can't be charged with it, isn't that right?

3          MR. HANTMAN:  I think discovery would show that they

4  knew about all of this because it was happening on a daily

5  basis.  Our client constantly --

6          THE COURT:  Never mind about constantly.  The one

7  thing that you have cited to me that may be a constitutional

8  deprivation is the refusal to let him fly unless he dropped his

9  lawsuit, if that's what happened.  And unless the trust knew

10  about it, you can't hold the trust responsible for that

11  refusal.

12          MR. HANTMAN:  Let me say this.

13          THE COURT:  No.  I have given you enough opportunity.

14          Thank you.

15          I understand your position -- I shouldn't say I

16  understand it.  It is not very clear.  But the clearest I can

17  draw from it is that, since you are arguing deprivation of due

18  process of law, the only thing I can find in your allegations

19  that might be a deprivation of due process of law is, if under

20  color of state law the state threatened you, that you had to

21  drop your lawsuit or you wouldn't be able to fly from that

22  heliport, and I take it that the defendant agrees that might be

23  a constitutional tort.

24          MR. FRIEDMAN:  Your Honor, I have to agree with that

25  part.  They were terminated on May 7, 2007.  That is less than

836UNEWC

1    a year ago.  They were terminated because it was a settlement

2    agreement with an earlier lawsuit that they will not solicit

3    passengers on the tarmac because it is dangerous.  No

4    solicitation.  We sent them a letter.  You are soliciting -- an

5    absolute right to stop him.

6            There was a hearing in state court.  We have concluded

7    this.  They made the same allegation to the state court judge,

8    and the state court judge found that our witnesses were

9    credible.  I include this as an appendix to our brief in saying

10   that the reason why is because they did solicit.

11           We didn't get any letters.  We terminated them for a

12   very specific reason.  A state court judge found for us.  We

13   are going to argue Colorado River abstention.

14           It is all over in state court.  Everything that they

15   have talked about is already over in state court in an Article

16   78 proceeding.  If that's their main argument, it is already

17   being determined across the street.

18           The dates that they are talking about simply don't

19   correspond.  They were terminated May 7, 2007 for soliciting on

20   the tarmac where they were not supposed to.  It was a specific

21   provision from an earlier settlement agreement from an earlier

22   lawsuit.  So there were lawsuits because they didn't pay and

23   then we settled.  We said OK you can come back, but no

24   solicitation.  They continued to solicit.  We terminated them.

25   You can allege anything you want, but the state court judge

836UNEWC

1   found that they did not prove there was any other basis for the

2   termination other than their solicitation.

3           THE COURT:  Why aren't you bound by that finding?

4           MR. HANTMAN:  Number one, our client doesn't agree

5   with it, and I understand that it is on appeal.

6           THE COURT:  That is something else.  You are saying,

7   until the appellate court rules on it, it is not technically

8   res judicata.

9           MR. HANTMAN:  Obviously, Mr. Friedman would bring

10  out --

11          THE COURT:  I'm sorry?  I didn't hear that.

12          MR. HANTMAN:  University of Texas v. Walter Camenisch.

13  101 S.Ct. 1830, 451 U.S. 390.  I have a copy for the Court and

14  Mr. Friedman if he would like a copy.  In that case it talks

15  about a party that --

16          THE COURT:  What were the facts of that case?

17          MR. HANTMAN:  It talks about --

18          THE COURT:  Cases are not sentences.  They are

19  collections of facts.

20          MR. HANTMAN:  It talks about injunctive relief.

21          THE COURT:  You have to know the facts to know what

22  they were talking about.

23          MR. HANTMAN:  A preliminary injunction was granted to

24  require a state university to provide an interpreter, but

25  plaintiff was required to file a bond in the state appeal.  The

836UNEWC

1    issue before the Court of Appeals was not who should pay for

2    the interpreter but whether the district court abused

3    discretion in granting preliminary relief.  And the question of

4    who should pay was a question for the district court to decide

5    in the first instance.

6        THE COURT:  What has that got to do with this?

7        MR. HANTMAN:  In that case it mentioned that a court,

8    it held that the purpose of preliminary injunction is merely to

9    preserve relative positions of parties until trial on the

10   merits can be held and that a party is not required to prove

11   its case in full at a preliminary injunction hearing.

12       THE COURT:  We don't have a preliminary injunction

13   here.

14       MR. HANTMAN:  It was a preliminary injunction.  It

15   wasn't a finding on the merits, just whether a preliminary

16   injunction should be granted.  And it mentioned a Supreme Court

17   case, findings of fact.

18       THE COURT:  There is no question that is not a final

19   judgment, a determination of preliminary injunction.  That is

20   why it is called preliminary.

21       MR. HANTMAN:  Our position is, whatever happened

22   there, it certainly is not binding on the merits and,

23   therefore, it shouldn't be considered by this Court on a

24   separate issue.

25       THE COURT:  It is clearly not a res judicata point.

836UNEWC

1          What is being argued by the defendant is that I should

2     defer to the state court because it is already halfway decided

3     in the state court.

4          MR. HANTMAN:  Well, actually --

5          THE COURT:  If I were satisfied that it was a federal

6     constitutional issue, I wouldn't defer.  The question is, is

7     this a federal constitutional issue because that is the only

8     ground on which you are in this court.

9          MR. HANTMAN:  Obviously, even the judge in the state

10    court agrees with what you said because he states in his

11    decision, which Mr. Friedman attached here, there is further

12    litigation between the parties pending in federal court, so he

13    knew about the federal action.

14          And, apparently, there was some effort made to settle

15    this proceeding as well as the federal court action in the

16    universal settlement.  Unfortunately, these efforts failed.  To

17    the extent that Mr. Friedman thought that somehow this Court

18    should abstain from listening --

19          THE COURT:  Let's not get sidetracked.

20          I haven't yet gotten an answer to my question, which

21    is, if the trust didn't know that he was told that if you drop

22    your lawsuit, we will let you back in, how can I possibly hold

23    that the trust violated a constitutional right of your client?

24          MR. HANTMAN:  Your Honor, at this point I suggest that

25    we have some discovery, because I think I can prove that the

29

836UNEWC

1    HRPT did know.

2              THE COURT:  Not only knew --

3              MR. HANTMAN:  Not only knew and did nothing, but

4    approved, collaborated and participated with Air Pegasus --

5              THE COURT:  In what?

6              MR. HANTMAN:  In order to kick our client out, because

7    he was creating problems there by complaining about what he

8    felt was discriminatory activity.

9              THE COURT:  That's what you are saying.

10             MR. HANTMAN:  Of course that's what we are saying.

11   All we want is simply an opportunity to get behind a motion to

12   dismiss.

13             THE COURT:  That is the only possible due process

14   claim that you are making, that the trust, in effect, threw him

15   out of the heliport because he brought a lawsuit.  That is a

16   very tough position to have to prove.

17             MR. HANTMAN:  If we didn't think we could prove it,

18   the lawsuit wouldn't have been brought.

19             THE COURT:  I understand you thought a lot of things.

20             MR. HANTMAN:  Mr. Friedman talked about other

21   lawsuits.  There is a lawsuit from The Friends of the Hudson

22   River Park, and they brought a lawsuit on the Article 78

23   allegations.

24             THE COURT:  What has that got to do with anything?

25   They don't like the heliport being in the park, right?

836UNEWC

1    MR. HANTMAN:  That's correct too.

2    THE COURT:  So that's not good for your client.  Your

3    client wants to fly from there.

4    MR. HANTMAN:  That's why we limited what we are

5    looking for here.

6    THE COURT:  Of course you wouldn't assert a claim for

7    something affirmatively you don't want?

8    MR. HANTMAN:  The real critical issue here, your

9    Honor, not to belabor it -- and you will certainly make the

10   decision as to whether we have stated a constitutional issue --

11   but the bottom line here is that you have one airport, one

12   heliport in the middle of the city.  Our client is losing

13   $40,000 every weekend.

14   He has an affidavit he submitted.  He made application

15   here for preliminary injunction which your Honor denied at that

16   time because perhaps it was premature and you didn't have all

17   of the information, but as a basic matter -- and this is really

18   the bottom line -- here is someone whose life is helicopters.

19   He just bought another helicopter.  There is no reason that he

20   shouldn't be able to land at West 30th Street --

21   THE COURT:  That is not what this suit is about.  To

22   come into federal, this suit is a claim that the trust deprived

23   your client of a constitutional right of due process of law.

24   And the only thing that you allege that comes close to an issue

25   of due process is that he was thrown out of the heliport

836UNEWC

1    because he brought a lawsuit.  You have to connect that with

2    the state actor, which is the trust.  The heliport is not a

3    state actor.  The trust is the closest to a state actor that

4    you've got.  So you need to show that the trust deprived him of

5    a right under the due process clause, deprived him of due

6    process of law.

7           MR. HANTMAN:  That is correct, but we do believe that

8    Air Pegasus is a state actor too.

9           THE COURT:  I know you believe that.

10          MR. HANTMAN:  But the bottom line, I just want to make

11   it clear, that there is a real injury here.

12          THE COURT:  That is not what I am asking you.  You

13   don't come into federal court because you have a real injury.

14   You come into federal court because you have a federal injury.

15          MR. HANTMAN:  We believe that we have stated one and

16   we need discovery to go further.  There has been no discovery.

17   We need discovery to the extent that our allegations may not

18   have the clarity that would make it a little bit easier for the

19   Court to decide --

20          THE COURT:  Just a moment.  We require people to

21   investigate their claims before they bring them.  That's what

22   it means to sue in good faith.  You cannot come into court and

23   say, I think maybe something happened and I want to find out

24   what it was so I am bringing a lawsuit.

25          MR. HANTMAN:  We have the HRPT's audit.

836UNEWC

1    THE COURT:  The audit has nothing to do with the

2    threat over the lawsuit.  That is an entirely different

3    grievance which has nothing to do with the Constitution of the

4    United States.  You are suing under a federal statute that

5    prohibits a person acting under color of state law from

6    depriving your client of a constitutional right.  And that's

7    what I am groping for, what constitutional right was he

8    deprived of.  And the closest you come is the allegation that

9    he was thrown out of the heliport because he brought a lawsuit

10   against the heliport.

11        MR. HANTMAN:  Lawsuit and the letter, the two.

12        THE COURT:  What letter?

13        MR. HANTMAN:  The previous letter that he had written

14   to, and I think it was to --

15        THE COURT:  What has writing a letter got to do with a

16   constitutional deprivation?

17        MR. HANTMAN:  Because that is one of the reasons why

18   he was kicked off, clearly, because he wrote a letter.  The man

19   was complaining that he was not getting fair treatment.  He was

20   being discriminated in favor of Zip.  Zip, we contend, has some

21   affiliation with Air Pegasus.  HRPT knows that Zip has an

22   affiliation with them because they even observed that there was

23   an affiliation.  We believe that there has been collusion

24   between HRPT and Air Pegasus to favor Zip Aviation which is

25   working with Air Pegasus --

836UNEWC

1          THE COURT:  You have to make that into a

2     constitutional violation, and I haven't yet heard it.

3          We are really spending lot of time on going round and

4     round on this.  I want you to focus only on your motion to

5     dismiss complaint.

6          MR. FRIEDMAN:  First, can I get rid of some of the

7     side issues?  They have five Article 78 claims, and this Court

8     can't hear an Article 78.  They never made an effort to defend

9     that and they continued to keep it in their complaint.  The

10    Airline Deregulation Act, you have to have a law or regulation.

11    There is no law or regulation at issue here.  The Supreme

12    Court --

13         THE COURT:  The airlines were deregulated some time

14    ago.

15         MR. FRIEDMAN:  I understand that, but they still put

16    it in their complaint.  This is the third complaint that they

17    have tried to do this.  The Supreme Court said a private

18    contract between individuals not covered by the Airline

19    Deregulation Act, and that is on page 29.  So that is out.

20         Then they have a Commerce Clause argument that this

21    violates the --

22         THE COURT:  That doesn't arise under 1983.

23         MR. FRIEDMAN:  Absolutely.  All of those are out.  We

24    are only on state action.  I assume that you have already

25    thought that Air Pegasus is not a state actor.

836UNEWC

1        If I could just bring one more case to your attention

2    let me just give you the citation, 318 F.3d 105, the Cranley

3    case.  And this is on page 112, 318 F.3d 112, long discussion:

4    "Merely because a private entity is afflicted with the public

5    interest or is subject to extensive state regulation doesn't

6    make it a private state actor, nor is a private entity a state

7    actor where its conduct is directly compelled by the state or

8    merely permitted by the state."

9        So it is a very good Second Circuit decision that goes

10    through all of the entwinement decisions.  We are not a state

11    actor.

12        Now, theoretically, the only thing I have heard is

13    First Amendment retaliation.  There is not a word of First

14    Amendment retaliation anywhere in the complaint.  And worse

15    than that, there is not a record that Hudson River Park Trust

16    retaliated.  They said, let's have discovery and they never

17    make that allegation -- never.

18        If I may say so, they are thrusting around for

19    something, but they have to put it in their complaint.  They

20    haven't put it in their complaint.  It is a little hard, out of

21    the atmosphere, to grab that when they make no allegation.

22        And the sequence of events were, we had the

23    settlement.  We, Air Pegasus, had the settlement.  They are not

24    supposed to solicit.  They solicited.  We sent them a letter.

25    You are out.

836UNEWC

1          And then we have a hearing in state court where we say

2    that the reason we did it was because you solicited, and the

3    state judge in the preliminary injunction hearing finds that

4    there was sufficient evidence that they did solicit, found our

5    witnesses credible, their witnesses not credible and refused to

6    issue the injunction.

7          And that state case which is a 2006 case, your Honor,

8    which predated this case is still alive.  Theoretically, we can

9    go across the street -- they haven't done anything in the case

10    for a year now.  That issue is still alive.  They want to press

11    the Article 78.  It is still over there.

12          The one issue, the First Amendment retaliation, they

13    do allege against us.  We are not state actor.  Doesn't do them

14    any good.  And they don't allege against the trust.  So that is

15    the end of it as far as we are concerned

16          MR. GOULD:  As Mr. Friedman has summarized most of my

17    arguments, unless the Court has any specific questions, we will

18    rely on the record.  I will point out, the trust did not evict

19    them from the heliport.

20          THE COURT:  This is on the face of the complaint.  I

21    am not making factual determinations.  I am just looking to see

22    if there is an allegation that rises to the statement of a

23    claim under 1983 because that's what brings them into federal

24    court, a federal question.  Isn't that right, there is no

25    diversity here?  42, U.S.C., 1983 gives me jurisdiction in this

836UNEWC

1    case, and there is no claim under 1983.  There is no reason why

2    I should keep this case in federal court.

3         MR. FRIEDMAN:  This is the third time -- three chances

4    to do this and they do not accuse the trust of any part in the

5    alleged First Amendment retaliation, and they never mention

6    First Amendment retaliation anywhere in their complaint.

7         THE COURT:  Well, I have tried to identify a due

8    process claim, but I do not see any allegation that the trust

9    deprived the plaintiff of any factual allegation that shows

10   that the trust, which is the state actor, deprived the

11   plaintiff of due process of law.  Accordingly, there is no

12   viable claim of a federal wrong.

13        I will give you one more opportunity to try to focus

14   on the only federal claim that you can make and allege facts

15   sufficient to state a claim against the trust, which is the

16   only state actor here.  The only state actor we have here is

17   the trust.  There is a lot of vituperation, but that is not

18   what shows a violation of 1983.

19        Accordingly, I grant the motion to dismiss the

20   complaint but I will consider, if it is necessary, whether you

21   state anything that is a federal claim against the heliport

22   because you really haven't alleged anything here that makes the

23   heliport a state actor.  I am satisfied that the trust is a

24   state actor.  It is the heliport that I am talking about.  I

25   wouldn't give leave to amend if I thought that the trust was

836UNEWC

1    clearly not a state actor, but you have to allege conduct of

2    the trust.

3         I grant the motion to dismiss, and I give you leave to

4    amend the complaint only against the trust because I do hold

5    that the trust is the only state actor here.

6         Air Pegasus, we are going to leave them until I see

7    whether I have jurisdiction of this action.

8         I will give you leave to file by no later than April

9    25, giving you a lot of time, but that doesn't mean that you

10   should put more in.  It means that you could focus on what you

11   put in.

12        MR. HANTMAN:  Thank you, your Honor.

13        THE COURT:  If you can state a claim under 1983, that

14   has to be against the trust.

15        MR. HANTMAN:  Thank you, your Honor.

16        THE COURT:  Very well.  By no later than April 25.

17

18                    o   0   o

19

20

21

22

23

24

25