

# Hudson River Park Trust

December 15, 2006

Abigail S. Trenk
President
Air Pegasus
West 30th at West Street
New York, NY 10001

Dear Ms. Trenk:

This is in furtherance of your outstanding request for approval, pursuant to Section 3(e) of Air Pegasus's 1996 Permit for the West 30th Street Heliport (the "Permit"), to allow New York Helicopter Charter, Inc. ("NYH") and Zip Aviation ("Zip") to each conduct sightseeing operations at the heliport.

As we have discussed extensively over the past several years, the Hudson River Park Act (the "Act") mandates the relocation of the west side heliport facility in connection with Hudson River Park development. Further, "tourism" and other "recreational" operations are specifically prohibited by the Act. Thus, the ongoing sightseeing operations at the current facility, as well as the additional sightseeing operations for which you are seeking approval, are permitted under the Act solely by virtue of the "grandfather" provision in Section 3(i) (iv) of the Act. Consequently, as I have previously advised, your request for approval of Zip and NYH as additional sightseeing operators (as well your separate pending request, which is not addressed here, to undertake certain facility upgrades) must be evaluated against the backdrop of the Act's restrictions and mandates. Our insistence that you demonstrate that the presence of additional sightseeing operators will not lead to an intensification of overall tourism flights during the current "grandfathered" period, as well as our repeated references to the short term nature of any approval we might grant, directly relate to the restrictions and mandates of the Act. The Trust is actively proceeding with development throughout the park, including the area immediately to the south of the heliport that, as you may know, just opened this past Monday. In connection with such development, as we have previously advised, we anticipate issuing an RFP in the near future to allow for the relocation and redevelopment of a non-tourism, non-recreational heliport as required by the Act. Thus, any approval that is obtained must necessarily be considered limited in duration and should not be relied upon in any way to suggest a continuing right to operate at the heliport beyond the terms of the renewal provision set forth in Section 2 of the Permit.

We understand that there are currently three sightseeing companies conducting operations out of the heliport: (1) Liberty Helicopters (which was approved in early 1996 as a sightseeing

operator by the Trust's predecessor, NYSDOT, in conjunction with the commencement of the existing facility Permit); (2) Heliport Flight Services (which operations also predate the Trust's involvement with the heliport, but for which there may not have been a formal approval by the State), and NYH (which is authorized to conduct no more than 1200 flights annually, pursuant to a 2005 settlement agreement between APH and NYH). Your request seeks to formally authorize NYH's ongoing operations and to add Zip as an additional sightseeing operator. Towards that end, this will acknowledge receipt of the required information for both Zip and NYH regarding their respective aircraft and operational procedures, as well as the information we requested concerning the number of flights conducted at the heliport over the past three years -- both annual totals and tourism related operations. We are also in receipt of your agreement with Zip concerning their proposed sightseeing operations. We understand that there is no agreement with NYH apart from the 2005 settlement agreement.

This letter will serve as the Trust's authorization of both Zip and NYH to conduct sightseeing operations at the heliport (with the understanding that neither APH nor its principals have any business interest in either proposed sightseeing operator), in accordance with and subject to the terms and conditions of the Permit, any restrictions to which APH may already be subject as a result of existing agreements or other commitments it may have with other sightseeing operators at the heliport, and further subject to the terms, conditions, understandings and restrictions set forth herein. In particular, we are aware of the 1996 sightseeing agreement between APH and Liberty and of the exclusivity provisions contained therein, as modified pursuant to recent litigation between APH and Liberty in New Jersey. While the Trust takes no position respecting the claims made in such litigation or as to the continued enforceability of such sightseeing agreement or the separate commitment made to NYH under its 2005 settlement agreement, we want to emphasize that the instant authorization should not be considered or used in any way to claim a modification, to override or otherwise thwart any such existing agreements or commitments. Further, we note that your agreement with Zip references a 12-month term. Please be advised that APH's rights under the Permit are strictly on a monthly renewable term and, as such, APH has no right to grant any use or occupancy rights beyond that provided for in the Permit. Accordingly, the Trust's authorization of Zip is conditioned upon the term of their agreement with APH conforming to this understanding and the above limitations. A copy of an agreement between APH and Zip reflecting this condition and the limitations on the term and extent of the sightseeing rights authorized hereunder must be provided to the Trust prior to Zip undertaking any sightseeing operations out of the facility.

Lastly, to avoid any intensification of sightseeing flights operating out of the heliport during the "grandfather" period, this authorization is specifically conditioned upon your adherence to your proposed total cap of no more than 25,000 flights per year for all sightseeing operations (by all operators) combined. We note that, according to your March 31, 2006 letter, sightseeing flights at the facility by the three existing operators, totaled 24,686 in 2005, and that the annual total of such flights has risen each year over the course of the past three years. Thus, Zip Aviation's operations will need to be limited to no more than 314 flights per year, assuming no further growth by any of the existing operators. To document compliance with the 25,000 annual total sightseeing flight restriction, all future APH monthly reconciliations and/or payment

submissions to the Trust respecting the gross receipts and/or passenger fees due under the Permit should include a breakdown of the total number of flights per month by each of the four sightseeing operators, with a year-to-date calculation of the total number of sightseeing flights incurred at that point in time, and of how many such flights remain before the annual cap is reached. The Trust's approval herein is subject on a continuing basis to the timely and regular submission of documents demonstrating compliance with such restrictions.

Finally, it bears repeating that due to the limited nature of your rights under the Permit and this authorization, in addition to impending park development and our plan to issue an RFP, you and the various operators at the heliport should be guided accordingly in moving forward with any business planning and/or expenditures in connection with continued West 30th Street heliport operations. The Trust is not responsible for any expenditure, loss, business interruption, relocation cost and/or any other incurred costs, losses or claims associated with a future closure of the existing heliport for the purpose of park development or any other reason.

As always, please feel free to contact me should you have any questions or wish to discuss this matter further.

Sincerely,

*Laurie Silberfeld*

Laurie Silberfeld
Vice President & General Counsel