Pier 59's opposition papers also include an affidavit, sworn to on February 15, 2006, by David R. Robinson, a civil engineer employed by Ocean and Coastal Consultants Engineering, P.C., who states that he started evaluating the conditions of pier 59 in 1989. Mr. Robinson avers that pier 59 has needed repairs since 1999, the year after the Act became effective. He does not specify what those repairs are or whether they are likely to cause the collapse of the pier. In two letters, dated September 29, 2004 and May 3, 2005, attached to his affidavit, Mr. Robinson states that his company made investigations of pier 59, but could not correlate the deficiencies in the substructure of pier 59 with the cracks in the concrete floor of the Premises. In the earlier letter, Mr. Robinson opines that it appeared that few repairs had been made since 1991, when Goodkind and O'Dea prepared a report suggesting that there were deficiencies in the substructure, which, if they had not been repaired, would cause concern. The second letter states that cracks had worsened between September 29, 2004 and May 3, 2005. Mr. Robinson's affidavit also lists certain areas of pier 59 that he identifies as meriting immediate reinspection and evaluation.

    *1.    First and Second Causes of Action for Private and Public Nuisance*

The elements of a private nuisance are an invasion of an interest in the private use and enjoyment of land that is intentional and unreasonable, negligent or reckless, or actionable under rules governing liability for abnormally dangerous conditions or activities. *Copart Industries, Inc. v. Consolidated Edison Co. of N.Y.*, 41 N.Y.2d 564 (1977). A nuisance may be either intentional, reckless or negligent because the term describes the consequences of the conduct and the inconvenience to others, rather than a specific sort of actionable conduct. *Id.* at 569. A nuisance is intentional when the actor acts for the purpose of causing an invasion of the use and enjoyment of another's land, or knows that it is resulting or is substantially certain to result from

7

his conduct. *Id.* at 571.

The difference between a public and a private nuisance is that a public nuisance is an offense against the state, which offends public morals, interferes with use by the public of a public place or endangers or injures the property, health, safety or comfort of a considerable number of persons. *Id.* at 567-568. A public nuisance is subject to prosecution by the government and may be brought by an individual only where an individual suffers special damages not suffered by the general public. *Id.* at 568.

The court disagrees with movants' contentions that Pier 59 failed to allege a substantial interference with the use of its property because it has not suffered an interruption of its business, or that Pier 59 has not alleged physical damages. The complaint alleges that there are some physical damages and a danger that pier 59, in which plaintiff has invested $20,000,000.00, might collapse. The law of nuisance does not require Pier 59 to wait until the pier collapses to bring suit. Rather, a cause of action for nuisance will lie where it is alleged that the damage is substantially certain to result from a defendant's conduct. *Id.* at 571.

Similarly, the complaint alleges facts supporting a claim for a public nuisance. The complaint, as well as the affidavit submitted by Mr. Pignatelli, allege that pier 59 is used by a considerable number of persons, including a bar and restaurant and a Golf Club on the first floor, as well as Pier 59's clients, guests and invitees. And, the Act makes clear that public use of the Park, which includes the Premises, is to be encouraged and promoted by the Trust. Pier 59 contends that its Premises have been physically damaged, a special damage not suffered by the general public.

On a motion for summary judgment, the burden is upon the moving party to make a *prima facie* showing of entitlement to summary judgment as a matter of law. *Zuckerman v. City*

8

*of New York*, 49 N.Y.2d 557, 562 (1980); *Friends of Animals, Inc. v. Associated Fur Mfrs., Inc.*, 46 N.Y.2d 1065, 1067 (1979). A failure to make such a *prima facie* showing requires a denial of the summary judgment motion, regardless of the sufficiency of the opposing papers. *Ayotte v Gervasio*, 81 N.Y.2d 1062, 1063 (1993).

The allegations of public use, physical damage to the Premises, and potential substantial damages to the Premises, are sufficient to make out claims for public and private nuisance. *See Copart, supra*. The court rejects the Trust's argument that it has no responsibility to maintain the piers as a matter of law. Moreover, the Trust's failure to present any proof regarding the condition of Pier 59's Premises mandates denial of the motion for summary judgment. The Trust is obligated by law to maintain the Park. It cannot escape liability for a nuisance, if it exists, simply because it has delegated the responsibility to Chelsea Piers. In *Putnam v. Stout*, 38 N.Y.2d 607, 617-618 (1976), the Court of Appeals listed various factors that underlie the responsibility of a lessor who covenants to make repairs:

> First, the lessor has agreed, for a consideration, to keep the premises in repair; secondly, the likelihood that the landlord's promise to make repairs will induce the tenant to forego repair efforts which he otherwise might have made; thirdly, the lessor retains a reversionary interest in the land and by his contract may be regarded as retaining and assuming the responsibility of keeping his premises in safe condition; finally, various social policy factors must be considered: (a) tenants may often be financially unable to make repairs; (b) their possession is for a limited term and thus the incentive to make repairs is significantly less than that of a landlord; and (c) in return for his pecuniary benefit from the relationship, the landlord could properly be expected to assume certain obligations with respect to the safety of the others.

In this case, the Trust is required by the Act to maintain the Park for the benefit and protection of the public, a more compelling incentive than rent or profit. The fact that Chelsea Piers also is required to maintain the Premises does not mean that the Trust lacks control. Indeed, the record is barren of evidence that the Trust lacks such control. The affidavit of the

9

Board's President, Connie Fishman, which states that none of the Board Members "have any direct responsibility or participation in the day-to-day operations of the Trust, let alone maintenance of the piers," does not negate the Trust's statutory duty for maintenance and protection of the public. The Trust's claim that it delegated its responsibility to Chelsea Piers can be tested in the third-party action.

On the other hand, Pier 59 has not stated a claim against the Board Members. "[I]ndividual directors and officers may not be subject to liability absent the allegation that they committed separate tortious acts." *DeCastro v. Bhokari*, 201 A.D.2d 382, 383 (1st Dept. 1994); *Mendez v. City of New York*, 259 A.D.2d 441 (1st Dept. 1999); *Konrad v. 136 E. 64th St. Corp.*, 246 A.D.2d 324, 326 (1st Dept. 1998). In this case, other than conclusory allegations that the Board Members acted for improper personal and political motives, on which the complaint does not elaborate, there are no contentions that they engaged in conduct, tortious or otherwise. The only allegations that mention the Board Members by name are the allegations that they are Members of the Board. As a result, the complaint must be dismissed against the Board Members for failure to state a cause of action.

The State defendants also claim that they cannot be held responsible for the alleged nuisance as they are out of possession and control of the Premises. A landowner who has leased his property may be liable for injuries on the basis of a contract or covenant to keep the premises in repair. *Putnam, supra* at 618. However, "[t]he owner of land ceases to be liable in negligence for a dangerous condition when the ownership of the premises or possession and control pass to another before the injury is sustained." *New York Telephone Co. v. Mobil Oil Corp.*, 99 A.D.2d 185, 187 (1st Dept. 1984).

The Act clearly provides that upon its enactment, the DOT "shall have no further

10

responsibility for or authority over the park." This absolves the DOT and its commissioner, Thomas J. Madison, Jr., of any liability to maintain Pier 59's Premises. In addition, pursuant to the Act, State Parks and DEC, who still own the fee to part of the Park, leased their interests to the Trust for 99 years. The lease requires the Trust to maintain the Park. Therefore, State Parks and DEC are out of possession and control of the Premises, as well.

*Swords v. Edgar*, 59 N.Y. 28 (1874), cited by Pier 59, has been highly criticized. Moreover, it is distinguishable because there the timbers of the pier were rotten and unsafe before the lease was executed. There is no allegation here that pier 59 was unsafe at the time of the Act, or that its current alleged deficiencies began before the Trust took over maintenance of the Park. Mr. Robinson's affidavit and letters speculate but do not create an issue of fact as to whether the problems of which Pier 59 now complains predated the Trust's 99-year lease or the Act. Consequently, the second and third causes of action are dismissed against DOT, its Commissioner Thomas J. Madison, Jr., State Parks, its Commissioner Bernadette Castro, DEC and its Commissioner Denise M. Sheehan and the Board Members.

    2.    *Third Cause of Action under State Finance Law §123-b & Motion to Amend*

State Finance Law ("SFL") §123-b(1) provides that:

> any person, who is a citizen taxpayer, whether or not such person is or may be affected or specially aggrieved by the activity herein referred to, may maintain an action for equitable or declaratory relief, or both, against an officer or employee of the state who in the course of his or her duties has caused, is now causing, or is about to cause a wrongful expenditure, misappropriation, misapplication, or any other illegal or unconstitutional disbursement of state funds or state property, except that the provisions of this subdivision shall not apply to the authorization, sale, execution or delivery of a bond issue or notes issued in anticipation thereof by the state or any agency, instrumentality or subdivision thereof or by any public corporation or public benefit corporation.

Although Section 123-b does not prohibit any acts, it confers standing on taxpayers to

11

challenge contravention of a rule of law enunciated elsewhere. *Matter of Sierra Club v. Palisades Interstate Park Commission*, 99 A.D.2d 548 (2d Dept.), *lv. denied* 63 N.Y.2d 604 (1984). Thus, Pier 59 claims that the Rent Credit is illegal because it violates §7(h)(2) of the Act. That section states that the "trust shall not provide direct financial assistance to attract, expand or retain a business within the park." Further, Pier 59 alleges that the Rent Credit violates the State Constitution, Art VII, § 7, which provides that no money shall be paid out of the state treasury or any of its funds, or any of the funds under its management, "except in pursuance of an appropriation by law...."

The Trust and Board contend that section 123-b is inapplicable to them, as the Trust is not the State or a State agency and the Board Members are not officers or employees of the State or a State agency. All defendants urge that the Rent Credit does not involve specifically identified State funds. The State defendants also argue that the statute only applies to fiscal activities of the State, which are not implicated in its decision not to interfere with the maintenance of the Premises or the Rent Credit.

The court agrees that State Finance Law §123-b does not apply to the Trust, as it is a public benefit corporation and its funds are not state funds. General Construction Law §66(4) defines a public benefit corporation as "a corporation organized to construct or operate a public improvement wholly or partly within the state, the profits from which inure to the benefit of this or other states, or to the people thereof." Public benefit corporations are "not identical to the State or any of its agencies, but rather enjoy ... an existence separate and apart from the State, its agencies and political subdivisions." *John Grace & Co., Inc. v. State University Construction Fund*, 44 N.Y.2d 84 (1978). *Accord Matter of Lancaster Development, Inc. v. Power Authority*, 145 A.D.2d 806 (3d Dept. 1988); *Kadish v. Roosevelt Raceway Assoc.*, 183 A.D.2d 874 (2d

12

Dept. 1992). *See also Matter of Madison Square Garden v. New York M.T.A.*, 19 A.D.3d 284 (1st Dept. 2005) (public authority cannot be sued under §123-b because it is separate from State).

However, the court recognizes, as Pier 59 argues, that *John Grace & Co., Inc., supra,* mandates a particularized inquiry to determine whether a specific public benefit corporation is merely an alter ego of the State. An examination of the features of the Act leads to the conclusion that the Trust is in fact separate from the State. Even though the Act provides for audit oversight by the State and City comptroller and prohibits Trust alienation of the Park, it has significant autonomy in its activities. The Trust's powers are broad, with the exception of the right to alienate park land, incur debt and own real property.[5]

Additionally, under rules of statutory construction, the subjection of the Trust to some parts of the State Finance Law (separate bidding for contracts for plumbing, HVAC and electrical work, and limits on the types of investment vehicles the Trust may utilize), without reference to §123-b, compels a conclusive inference that the Legislature intended to exclude the Trust from the application of §123-b. *Golden v. Koch*, 49 N.Y.2d 690, 694 (1980) (where statute describes particular situations in which it applies, irrefutable inference must be drawn that what is omitted was intended to be omitted or excluded), *citing* McKinney's Cons Laws of NY, Book 1, Statutes, §240.

Finally, the Rent Credit is not identifiable State funds. The Act provides that the Trust

---

[5] In *John Grace & Co., id.,* where the purpose of the public benefit corporation, the State University Construction Fund, was construction, its construction contracts had to be approved by the State comptroller, which was a significant interference with its major function. Yet the Court of Appeals held that the public benefit corporation was autonomous enough to be shielded from §123-b.

has exclusive title to all rents paid to it under any lease. Accordingly, the rents it receives (or does not receive) do not belong to the State. Pier 59's argument that there is no other way to challenge the Rent Credit is not availing. In *Matter of Post Corp. v. Robert Moses*, 10 N.Y.2d 199, 204-205 (1961), the Court of Appeals rejected a similar taxpayer's argument on the ground that the Triborough Bridge and Tunnel Authority had to report and was subject to investigation by the City and State comptrollers, the Mayor of the City, and the chairmen of the State Senate finance committee and the Assembly ways and means committee. Likewise, the Trust is required to submit an annual financing plan to the Governor, the speaker of the Assembly, the temporary president of the Senate, the State comptroller, the Mayor of the City, the speaker of the City Council, the City comptroller, and three City community boards. As in *Matter of Post Corp.*, there is financial oversight over the Trust. Accordingly, the third cause of action is dismissed against all defendants for failure to state a cause of action and the motion by the Trust and Board to amend their answer to assert a statute of limitations defense to the third cause of action is denied as moot.

    D.    *Notice of Claim and Statute of Limitations*

Section 11 of the Act provides that:

> In an action against the trust founded upon a tort, (a) a notice of claim shall be required as a condition precedent to the commencement of an action or special proceeding against the trust or any officer, appointee or employee thereof, and the provisions of section 50-e of the general municipal law shall govern the giving of such notice and (b) the complaint shall contain an allegation that at least 30 days have elapsed since the demand, claim or claims upon which the action is founded were presented to a member of the trust's board of directors and to the trust's secretary and that the trust has neglected or refused to make an adjustment or payment thereof for 30 days after such presentment. No action shall be commenced more than one year after the cause of action therefor shall have accrued....

Pier 59 did not serve a notice of claim on the Trust and the complaint does not state that

14

30 days have elapsed since such notice was presented. In addition, more than a year has elapsed since Pier 59's claims accrued. Nonetheless, this action need not be dismissed.

It is well settled that in an action for injunctive relief, compliance with the provisions of §50-e are excused. *Stanton v. Town of Southold*, 266 A.D.2d 277, 278 (2d Dept. 1999); *Baumler v. Town of Newstead*, 198 A.D.2d 777 (4th Dept. 1993); *Dutcher v. Shandaken*, 97 A.D.2d 922, 923 (3d Dept. 1983) (injunctive relief to abate flooding nuisance). The reference in §11 to a 30 day period for the Trust to "make an adjustment or payment" supports the view that the condition precedent applies to actions for money damages and not injunctive relief. Pier 59's complaint only prays for injunctive relief.

Moreover, an equitable claim for continuing nuisance "accrues anew every day." *Stanton, id.*; *Condello v. Town of Irondequoit*, 262 A.D.2d 940, 941 (4th Dept. 1999)(rejecting application of General Municipal Law §§ 50-e and 50-i to continuing torts); *State v. Schenectady Chemicals, Inc.*, 103 A.D.2d 33, 37 (3d Dept. 1984)("nuisance action continually accrues each day of the wrong"). Accordingly, the Trust's motion to dismiss the first and second causes of action based upon the provisions of §11 of the Act is denied.

The remaining contentions of the parties have been considered and have been found to be without merit. Accordingly it is

ORDERED that the motion to dismiss by defendants New York State Department of Transportation, Commissioner Thomas J. Madison, Jr., New York State Office of Parks, Recreation and Historic Preservation, Commissioner Bernadette Castro, New York State Department of Environmental Conservation, and Commissioner Denise M. Sheehan is granted and the complaint is dismissed with prejudice as against said defendants; and it is further

ORDERED that the motion for summary judgment dismissing the complaint by Hudson

15

River Park Trust, Bernadette Castro, Denise M. Sheehan, Charles Dorkey, III, Daniel L. Doctoroff, Theodore Roosevelt IV, Joseph B. Rose, Henry J. Stern, Georgette Mosbacher, Julie Nadel, Lawrence B. Goldberg, Franz Leichter and Adrian Benepe is granted with respect to the third cause of action against Hudson River Park Trust, denied with respect to the first and second causes of action against Hudson River Park Trust, and is granted in full with respect to the individual movants; and it is further

ORDERED that the motion by Hudson River Park Trust and its Board Members to amend its answer is denied as moot; and it is further

ORDERED that the Clerk is directed to enter judgment accordingly and to sever the remainder of the action, which shall continue.

Dated: April 12, 2007                ENTER:

_____
J.S.C.

FILED
APR 23 2007
NEW YORK
COUNTY CLERK'S OFFICE

16