HANTMAN & ASSOCIATES
Robert J. Hantman, Esq. (RH-3947)
1414 Avenue of the Americas Suite 406
New York, New York 10019
Telephone:    (212) 684-3933
Facsimile:    (212) 755-1989

*Attorneys for Plaintiffs*
*New York Helicopter Charter, Inc.*
*and Michael Roth.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
NEW YORK HELICOPTER CHARTER INC., and
MICHAEL ROTH, individually,

                                                        07 CIV. 4069(MGC)


                              Plaintiffs,

    -against-


HUDSON RIVER PARK TRUST,

                    Defendants.
--------------------------------------------------------------X



**MEMORANDUM OF LAW IN OPPOSITION**
**TO THE MOTION TO DISMISS FILED BY DEFENDANT**
**HUDSON RIVER PARK TRUST**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………………  P. 3

PRELIMINARY STATEMENT……………………………………………………  P. 6

ARGUMENT

 THERE IS A BASIS FOR FEDERAL JURISDICTION
 IN THIS CASE SINCE THE FACTS CONTAINED IN THE
 AMENDED COMPLAINT CONSTITUTE STATE ACTION
 AND VIOLATE THE CONSTITUTION………………………………………… P. 11

 PLAINTIFFS HAVE PLEADED THEIR CONSTITUTIONAL
 CLAIMS PROPERLY

  Plaintiffs have pleaded a claim for violation of the Equal
  Protection Clause under the "class-of-one" theory………………………  P. 14

  Plaintiffs have properly pleaded a claim for violation of
  Due Process…………………………………………………………..  P. 17

  NYH has a property interest entitled to Due Process
  Protection………………………………………………………………  P. 20

  HRPT's discriminatory actions are depriving NYH of its
  property interest without Due Process of law, thereby
  causing irreparable injury to NYH………………………………………..  P.20

 THERE IS A VALID CLAIM FOR TORTIOUS INTERFERENCE WITH CURRENT
 AND PROSPECTIVE ECONOMIC RELATIONS……………………………… P. 22

CONCLUSION…………………………………………………………………  P. 23

# TABLE OF AUTHORITIES

**Cases**

*Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty.,*
  488 U.S. 336, 109 (1989)……………………………………………………… P. 15

*Associates in Obstetrics & Gynecology v. Upper Merion Township,*
  270 F. Supp.2d 633, 65 (E.D. Pa. 2003)……………………………………… P. 20

*Blum v. Yaretsky,*
  457 U.S. 991 (1982)……………………………………………………………… P. 12

*Board of Regents v. Roth,*
  408 U.S. 564 (1972)……………………………………………………………… P. 19

*Bray v. New York,*
  2005 U.S. Dist. LEXIS 21748  (S.D.N.Y. 2005)………………………………… P. 21

*Brentwood Academy v. Tennessee Secondary School Athletic Ass'n,*
  531 U.S. 288 (2001)……………………………………………………………… P. 12

*Burton v. Wilmington Parking Auth.,*
  365 U.S. 715, 722 (1961)………………………………………………………… P. 13

*DeMuria v. Hawkes,*
  328 F.3d 704 C.A.2 (Conn.) (2003)……………………………………………… P. 16

*Edmonson v. Leesville Concrete Co.,*
  500 U.S. 614, 627-628 (1991)…………………………………………………… P. 12

*Evans v. Newton,*
  382 U.S. 296, 299, 301 (1966)…………………………………………………… P. 12.

*Gomez v. Toledo,*
  446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980)…………………………… P. 11.

*I.M.S. Inquiry Management Systems, Ltd. v. Berkshire Information*
  307 F.Supp.2d 521 (S.D.N.Y.,2004))……………………………………………… P. 22

*Lugar v. Edmondson Oil Co., Inc.,*
  457 U.S. 922 (1982)……………………………………………………………… P. 11

*Majer v. Metro. Trans. Auth.,*
  No. 90 Civ. 4608, 1990 WL 212928,  (S.D.N.Y. Dec.14, 1990)………………… P. 11

*Memphis Light, Gas & Water Division v. Craft,*
    436 U.S. 1, 14 (1978)…………………………………………………………P. 19

*Mitchell v. Cuomo,*
    748 F.2d 804, 806 (2d Cir. 1984)………………………………………….. P. 21

*Monroe v. Pape,*
    365 U.S. 167, 171, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)………………………   P. 11

*Mullane v. Central Hanover Trust Co.,*
    U.S. 306, 314 (1950)……………………………………………………… P. 19

*O'Connor v. Pierson,*
    426 F.3d 187 C.A.2 (Conn.),2005………………………………………… P. 8

*Pennsylvania v. Board of Directors of City Trusts of Philadelphia,*
    353 U.S. 230 (1957)………………………………………………………. P. 12

*Schwartzberg v. Lefkowitz,*
    480 F.Supp. 569, 574 (S.D.N.Y. 1979)…………………………………… P. 20

*Sioux City Bridge Co. v. Dakota County,*
    260 U.S. 441 (1923)………………………………………………………   P. 15

*Sunday Lake Iron Co. v. Township of Wakefield,*
    247 U.S. 350 (1918)………………………………………………………   P. 16

*United States v. Tropiano,*
    418 F.2d 1069, 1076 (2d Cir. 1969)……………………………………… P. 20

*Village of Willowbrook v. Olech,*
    528 U.S. 562, 564 (2000)…………………………………………………   P. 15

*Watson v. Kansas City, Kansas,*
    185 F. Supp.2d 1191, 1203 (D. Kan. 2001)……………………………….. P. 20

*West v. Atkins,*
    487 U.S. 42 (1988)……………………………………………………… P. 12

*Women's Med. Prof. Corp. v. Baird,*
    438 F.3d 595, 611 (6th Cir. 2006)…………………………………………..P. 20

**Statutes**

42 U.S.C. § 1983…………………………………………………………….. P. 12

N.Y. C.P.L.R. § 7804…………………………………………………………………….P. 12

N.Y. Pub. Auth. Law § 1261(13)……………………………………………………….P. 12

28 U.S.C. § 1367(a)…………………………………………………...……………….P. 23

**PRELIMINARY STATEMENT**

This memorandum of law is submitted by New York Helicopter Charter, Inc. ("NYH"), and its president Michael Roth ("Mr. Roth"), in opposition to defendant Hudson River Park Trust's ("HRPT") motion to dismiss for lack of jurisdiction over the subject matter and for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

For the sake of brevity and judicial economy, plaintiffs rely upon and incorporate the facts contained in the Amended Complaint, with exhibits, filed herein on April 25, 2008, as well as the affidavits of Mr. Roth, with exhibits, filed herein on September 18, 2007,(Exhibit A), October 11, 2007, ( Exhibit B), July 2, 2008 ( Exhibit C) and August 5, 2008, (Exhibit D) all of which conclusively establish that the West 30th Street Heliport ("Heliport") is an essential facility as the only non-competitively bid public heliport open 24 hours a day, seven days a week, in New York City – dealing with interstate and intrastate travel - and whose operator, Air Pegasus Heliport, Inc. ("APH") unilaterally and with the approval and acquiescence of the HRPT, chooses: (1) who can and who can't use the public facility; (2) how much to charge for landing rights at the public facility; (3) how much to charge for fuel at the public facility; and, (4) how much more to charge after six (6) p.m. at the public facility. More incredibly, HRPT is aware and ignores these facts and the following  additional undisputed facts: (1) APH owns a substantial interest in Liberty Helicopters, Inc. which is a helicopter company that is a competitor of  NYH as it provides sightseeing and charter services; (2) APH diverted money from the HRPT and was even sued by the HRPT; (3) not only did the HRPT settle with APH (Exhibit E), but the HRPT permitted APH to arbitrarily raise its prices without a hearing and pass the cost along to helicopter operators dependant on the continued use of the public facility to pay for the settlement; (4) before the settlement, there was only a charge of $1.50 per passenger that was

collected by APH and payable to HRPT and that after the settlement, APH, with the acquiescence, support and approval of the HRPT, imposed a $10 per passenger fee (A.Cmpl. ¶ 89) which is 6.6 times the original passenger fee and had no correlation to increased costs, improvements for the Heliport, passenger safety or service; (5) HRPT, in spite of being a fiduciary of the public in charge of the Heliport, did not object to the price increase even though the Permit (the "Permit") states that the rates should be reasonable and non discriminatory; (6) the undisputed fact that an audit conducted by the New York State Comptroller found that APH discriminates in its pricing policies (Exhibit F); and, (7) the undisputed fact that there is not and cannot be any explanation for APH's thirty (30) year exclusive and monopolistic status and its permitted acts except for undue and improper local political influence.

Simply stated, as alleged in the Amended Complaint (with exhibits), and affidavits referred to herein, the present operation of the Heliport by APH is discriminatory, capricious, unreasonable, and is affecting interstate commerce and the competitive landscape of the helicopter sightseeing and charter market and whose acts, permitted and approved by HRPT, constitute violations of NYH's and Mr. Roth's rights to Equal Protection and Due Process under the law.

In spite of the following, Defendant HRPT argues that: 1) HRPT cannot be considered a state actor for purposes of determining whether the plaintiffs' right to due process was violated; 2) the Amended Complaint fails to state a Federal claim against the HRPT; 3) plaintiffs are not entitled to relief under CPLR Article 78 against the HRPT in this Court; (4) the Tortious Interference with Contractual Relations Claim is without merit. While NYH believes that the Court does have jurisdiction over an Article 78 Action this claim is being withdrawn without prejudice for purposes of this motion

As will be discussed hereafter, the Amended Complaint states- and the Court has already determined- that HRPT is a state actor. In addition, it is a question of fact as to whether the actions or inactions of HRPT are irrational and shock the conscience. (Whether executive action "shocks the conscience" so as to violate substantive due process depends on state of mind of government actor and context in which action was taken. *O'Connor v. Pierson*, 426 F.3d 187 C.A.2 (Conn.),2005).

The HRPT attempts to convince the Court that the Permit between APH and the New York Department of Transportation ("NYDOT") - which was assigned to the HRPT as a successor in interest – somehow excuses HRPT from its contractual and legal responsibilities. In doing so, the HRPT mischaracterizes the sum and substance of the Permit. On page 7 of the defendant's memorandum of law in support of its motion to dismiss, the defendant states, "Section '4' of the Permit grants Air Pegasus the right to set charges and fees for sightseeing operators' use of the Heliport [West 30th Street]. Although HRPT is entitled to notice of changes of the various fees, Section '4' does not grant HRPT approval rights regarding such fees." The defendant continues: "Thus, the Permit grants Air Pegasus the right to fix the fees or charges that it imposes on all users of the Heliport, subject only to HRPT's right to receive notice of such fees."

The language of the Permit directly contradicts this assertion in Section 3, which states, "The Operator [APH] or any other aircraft operator shall conduct sightseeing operations only upon the prior written approval of the Department [NYDOT, subsequently HRPT] of (i) the sightseeing operator and its aircraft and procedures, and (ii) the terms of any agreement between the Operator and any such sightseeing operator, which approval shall not be unreasonably withheld." The Permit makes it abundantly clear that the HRPT has the authority and the

contractual responsibility to review and approve all terms of any agreements between APH and NYH. Significantly, Section 3 of the Permit does not just impose a duty on HRPT to approve initial terms of <u>any agreement between the Operator and any such sightseeing operator, but rather it imposes an ongoing obligation to approve the terms of **any**</u> agreements between the Operator and any sightseeing operators. As such, it can be rationally concluded that any subsequent agreements, including rate increases, between APH and other helicopter operators, have been reviewed and approved by the HRPT. Any claims to the contrary are without merit and are set forth in bad faith.

In further support of this argument, The Report of the Office of New York State Comptroller attached to the Amended Complaint states at page 5: (Exhibit F)

> The Trust is responsible for ensuring that Pegasus complies with Permit terms and operates the Heliport in a productive manner.
>
> However, our audit found that some of the additional fees that Pegasus imposed on carriers were questionable.  For example, Pegasus initiated a Safety and Facility Enhancement (SAFE) fee following September 11, 2001, which we were told would provide increased security and related improvements to the Heliport….However, Pegasus could not show us any facility enhancements or improvement that it funded with SAFE fee collections[1].

Furthermore, HRPT totally disregarded the findings of its investigations of APH. Indeed, under the terms of the settlement (Exhibit E), the HRPT went so far as to falsely "acknowledge" that it "has no knowledge that APH was in violation of any of the provisions of the Permit and, accordingly, APH is in good standing with the HRPT."  (Settlement Agreement at 4.)  In so doing, the HRPT violated its inherent statutory duties and fiduciary obligations to the public to resolve financial disputes on rational and reasonable terms that protect the public interest.

---

[1] The complaint refers to two audit reports, the first one annexed to the Amended Complaint as Exhibit A details at page 20 some of the discriminatory practices. The second report, attached to the Amended Complaint as exhibit G is a report from the Comptroller, which elaborates on the findings of the first audit.

Additionally, the HRPT had an obligation to remove parties who engaged in wrongdoing in violation of their government contracts. (A. Cmpl. ¶ 233.)

Notwithstanding the fact that the HRPT is a fiduciary of the public as the entity in charge of the public Heliport, they did not object to the rate increase in spite of the fact that the Permit states that the rates should be reasonable and non discriminatory.  (A.Cmpl. ¶42).   HRPT argues that NYH cannot assert any rights under the Permit. However, NYH is part of the public, a beneficiary of the Hudson River Park Trust Act that gives the HRPT jurisdiction over the Heliport. HRPT has the fiduciary obligation to protect the public and it violated that obligation.

HRPT alleges that the Amended Complaint fails to specify how and when NYH became one of APH's sightseeing operators at the Heliport. Incredibly, the HRPT directly contradicts its own allegation in the footnote at the bottom of page 6 of its memorandum of law, in which it states, "The Trust considers NYH's charter tour to be sightseeing flights within the meaning of the Permit, and therefore subject to Trust approval pursuant to section 3 of the Permit. Said approval was provided by letter dated December 15, 2006." (The letter is provided as exhibit F to HRPT's memorandum of law.)

 Furthermore, the Amended Complaint alleges that the NYDOT went beyond its authority when it agreed that third parties could not assert any rights under the Permit because the NYDOT was acting in a fiduciary capacity on behalf of the public when it signed the Permit and therefore it could not give up a right it did not possess. (A.Cmpl. ¶52). Therefore, NYH is entitled to assert the right to non discriminatory policies not only under the Due Process and Equal Protection Clauses of the United States Constitution, but also under the Permit.

## ARGUMENT

## POINT ONE

## THERE IS A BASIS FOR FEDERAL JURISDICTION IN THIS CASE SINCE THE FACTS CONTAINED IN THE AMENDED COMPLAINT CONSTITUTE STATE ACTION AND VIOLATE THE CONSTITUTION

State action requires that "the deprivation of a federal right be fairly attributable to the State." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982). In *Lugar.,* the Supreme Court articulated a two-part approach to this question of "fair attribution":

> "First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible. . . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor."

To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) "that some person has deprived him of a federal right" and (2) "that the person who has deprived him of that right acted under color of state ... law." *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980) (citing *Monroe v. Pape*, 365 U.S. 167, 171, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)) See *Majer v. Metro. Trans. Auth.*, No. 90 Civ. 4608, 1990 WL 212928, at *3 (S.D.N.Y. Dec.14, 1990) (finding transportation authority, organized as public benefit corporation, a state actor for purposes of § 1983); see also N.Y. Pub. Auth. Law § 1261(13) ("'State Agency' shall mean any ... public benefit corporation ... of the state.").

First, it is clear that the rate increase was a consequence of the audit of APH requested by the HRPT. The Amended Complaint states that the rates were raised in part to cover the cost of the settlement with APH. APH is subject to the Permit's boundaries when imposing rates. APH has to notify the HRPT and the HRPT can object to the rates. HRPT oversees the pricing to ensure "that the use of the Heliport is afforded in a fair and non-discriminatory manner as

mandated by the agreement" as indicated in their own letter attached to the Amended Complaint as Exhibit J. (See A.Cmpl. ¶ 86).

The Permit does provide that from time to time, APH may amend the schedule of charges at the Heliport upon fifteen (15) days prior notice to the public and the HRPT – so long as such charges and fees are "fair, reasonable, and non-discriminatory." (A. Cmpl. ¶ 113). Thus, APH is required to notify the HRPT before it raises its rates, and pursuant to Section 3 of the Permit, is contractually obligated to approve such new terms. Furthermore, during oral argument before the Court, the Court asked Mr. Friedman the following:

> THE COURT:  Well, let me stop you for a moment.  Under that provision, does the New York State Trust have the power to prohibit a charge as discriminatory?
>
> MR. FRIEDMAN:  Absolutely, your Honor…

Therefore, even applying the standards cited by HRPT, the HRPT is a state actor. In *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n,* 531 U.S. 288, 121 S.Ct. 924 (2001), the Supreme Court stated:

> We have, for example, held that a challenged activity may be state action when it results from the State's exercise of "coercive power," [*Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)], when the State provides "significant encouragement, either overt or covert," *ibid.,* or when a private actor operates as a "willful participant in joint activity with the State or its agents," *Lugar, supra,* at 941, 102 S.Ct. 2744 (internal quotation marks omitted). We have treated a nominally private entity as a state actor when it is controlled by an "agency of the State," *Pennsylvania v. Board of Directors of City Trusts of Philadelphia,* 353 U.S. 230, 231, 77 S.Ct. 806, 1 L.Ed.2d 792 (1957) *(per curiam),* when it has been delegated a public function by the State, cf., *e.g.,* [*West v. Atkins*, 487 U.S. 42, 56 (1988)]; *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 627-628, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), when it is "entwined with governmental policies," or when government is "entwined in [its] management or control," *Evans v. Newton,* 382 U.S. 296, 299, 301, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966).

Applying that rationale to this case all of those tests are satisfied. The complaint alleges that: 1) some of the actions were the result of HRPT's coercive power, since APH had to repay

the monies it misappropriated and since HPRT had the opportunity to challenge the rate increase

and the discriminatory practices. 2) HRPT encouraged the discriminatory practices to continue

by settling the dispute that arose because of the investigation in terms favorable to APH, even

though it knew about APH's discrimination and price irregularities; 3) APH and HRPT are joint

participants in the administration of the Heliport pursuant to the Permit.

For example, in a letter dated February 9, 2007 (Exhibit G) HRPT wrote to APH about

Zip Aviation's failure to comply with the Federal Aviation Administration regulations. (A.Cmpl.

¶ 121); 4)  The right to operate the Heliport and charge customers has its source in state authority

because the NYDOT, a state agency, was responsible for the Permit and authorized and approved

the granting of these rights. (A. Cmpl. ¶ 81);  5) APH has been delegated the <u>public</u> function of

operating a <u>public</u> Heliport.  The original Permit between the NYDOT and APH establishes

clearly the public service of the Heliport at section 32(a):  "A principal purpose of the

Department in the making of this agreement is to have the Heliport <u>operated as a first-class</u>

**<u>public</u>** Heliport…" (A. Cmpl. 82); 6) APH is entwined with governmental policies as indicated

by the requirement that the use of the Heliport is afforded in a fair and non-discriminatory

manner as mandated by the Permit. Since the Heliport is "public," as opposed to those owned by

corporations and medical facilities, the state is involved in some aspects of the operations. (A.

Cmpl. ¶ 109-114). Furthermore, providing access to a public good on equal terms has been

traditionally a prerogative of the state.

The state cases cited by HRPT in its memorandum stating that it is not a state actor are

irrelevant for purposes of this motion because whether a private party is a state actor is an issue

of fact. *Lugar*, 457 U.S. at 939.  The fact that HRPT was found not to be a state actor in those

specific cases - dealing with alleged violations of the state finance law does not make HRPT a

non state actor for all purposes.  The law requires an analysis of the facts and circumstances of each case. *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 722 (1961).

The Permit by which APH operates requires APH to: "furnish the services on a <u>fair, equal and non-discriminatory basis to all users</u> thereof…." [emphasis added]. (Permit, § 34(b) (2)). HRPT clearly was aware of the discriminary practices and engaged in conduct that allowed, encouraged and condoned the continuation of those practices.  No State may effectively abdicate its responsibilities by either ignoring them or by merely failing to discharge them whatever the motive may be. *Burton v. Wilmington Parking Auth.,* 365 U.S. 715, 723-25 (1961). HRPT would have this Court find that the entity charged with complying with federal law and statutes can delegate such authority to a "private entity" – which description is disputed- which can then flagrantly disregard federal rules with impunity and a carrier such as NYH has no recourse whatsoever.

While it is true that the vast majority of operations are conducted at private facilities, there is no case that supports the broad proposition that a public Heliport operator can discriminate with impunity, charge any price it desires, continue operations for almost thirty years without competitive bidding and be treated as "above reproach" and "beyond the purview of the court" notwithstanding a detrimental impact on interstate commerce and harm to a private helicopter operator and the public. The fact that the HRPT is administering a public Heliport implies that it should provide services and access in a non-discriminatory manner.

## POINT TWO

### PLANTIFFS HAVE PLEADED THEIR CONSTITUTIONAL CLAIMS PROPERLY

#### Plaintiffs have pleaded a claim for violation of the Equal Protection Clause under the "class-of-one" theory

The Supreme Court has recognized that an equal protection claim is viable where the plaintiffs allege that they were intentionally treated differently from other similarly-situated individuals without any rational basis. The Court has indicated that the purpose of the Equal Protection Clause is to protect individuals against intentional and arbitrary discrimination. *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000).

In *Village of Willowbrook v. Olech*, Plaintiff sued the Village, claiming that the Village's demand of an additional 18-foot easement (thus creating a 33 foot easement) violated the Equal Protection Clause of the Fourteenth Amendment. Plaintiff asserted that the 33-foot easement demand was "irrational and wholly arbitrary"; that the Village's demand was actually motivated by ill will resulting from the Plaintiff's previous filing of an unrelated, successful lawsuit against the Village; and that the Village acted either with the intent to deprive Plaintiff of her rights or in reckless disregard of her rights.

The District Court dismissed the lawsuit pursuant to <u>Federal Rule of Civil Procedure 12(b) (6)</u> for failure to state a cognizable claim under the Equal Protection Clause. Relying on Circuit precedent, the Court of Appeals for the Seventh Circuit reversed, holding that that an allegation of subjective ill will was adequate to make out an equal protection violation. The Supreme Court affirmed on a different rationale. The Court found that Olech's complaint could "fairly be construed as alleging" differential treatment from similarly situated property owners which, coupled with Olech's allegation that the Village's conduct was irrational and wholly arbitrary, was "sufficient to state a claim for relief under traditional equal protection analysis." The Court held:

> "Our cases have recognized successful Equal Protection claims brought by a "class of one," where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.

> See *Sioux City Bridge Co. v. Dakota County,* 260 U.S. 441, 43
> S.Ct. 190, 67 L.Ed. 340 (1923); *Allegheny Pittsburgh Coal Co. v.
> Commission of Webster Cty.,* 488 U.S. 336, 109 S.Ct. 633, 102
> L.Ed.2d 688 (1989). In so doing, we have explained that " '[t]he
> purpose of the Equal Protection Clause of the Fourteenth
> Amendment is to secure every person within the State's jurisdiction
> against intentional and arbitrary discrimination, whether
> occasioned by express terms of a statute or by its improper
> execution through duly constituted agents.' " *Sioux City Bridge
> Co., supra,* at 445, 43 S.Ct. 190 (quoting *Sunday Lake Iron Co. v.
> Township of Wakefield,* 247 U.S. 350, 352, 38 S.Ct. 495, 62 L.Ed.
> 1154 (1918)). Id. Supra at 564.

The Second Circuit has also applied the same rationale. In *DeMuria v. Hawkes*, 328 F.3d

704 C.A.2 (Conn.) (2003), allegations that a police officer provided two residents with different

standard of police protection than that typically afforded municipality's residents and that the

officer acted maliciously and arbitrarily toward residents because they were involved in the

dispute with his friend supported a "class of one" Equal Protection Claim. The complaint stated

that "Hawkes subjected the plaintiffs to a different standard of police protection than any other

citizens of Clinton and he did so maliciously, arbitrarily, for the purpose of injuring them, and

for the reason that they were involved in a dispute with his friend."

The facts of this case are similar to *Village of Willowbrook v. Olech* and to *DeMuria v.*

*Hawkes.* There is history of various disputes and litigation between plaintiffs and defendants.

The Amended Complaint states that one of the reasons for terminating Plaintiff's right to access

the Heliport was the failure to drop a pending lawsuit. (A. Cmpl. ¶7 and ¶ 214.)(See Roth

Affidavit-Exhibit D) The first action was also the result of defendant's excluding plaintiffs from

using the Heliport in 2004. APH and NYH reached a settlement agreement.

Finally, it should be noted that the class-on-one theory is applicable even in the case in

which more that one person has been discriminated against. The Court clarified this point:

"We note that the complaint in this case could be read to allege a class of five. In addition to Grace and Thaddeus Olech, their neighbors Rodney and Phyllis Zimmer and Howard Brinkman requested to be connected to the municipal water supply, and the Village initially demanded the 33-foot easement from all of them. The Zimmers and Mr. Brinkman were also involved in the previous, successful lawsuit against the Village, which allegedly created the ill will motivating the excessive easement demand. Whether the complaint alleges a class of one or of five is of no consequence because we conclude that the number of individuals in a class is immaterial for equal protection analysis." *Village of Willowbrook v. Olech* P. 564

The Amended Complaint states that the disparity in the treatment of NYH is arbitrary and capricious and serves no legitimate governmental objective. In providing the discounts and price reductions complained in this action to certain similarly-situated customers of the Heliport and not to NYH, APH and HRPT have violated NYH's rights under the Equal Protection Clause. (A.Cmpl ¶ 217).

NYH has been intentionally treated differently from other similarly-situated helicopter operators by the discriminatory practices of APH which are endorsed by HRPT. There is no rational basis for the difference in treatment that NYH has received from APH and the HRPT through its contractual obligations set forth in Section 3 of the Permit. The discriminatory practices had no basis in cost, volume, or any other economic justification. (A. Cmpl. ¶ 218-219)

## A. Plaintiffs have properly pleaded a claim for violation of Due Process

NYH's due process claim stems from the Permit between the NYDOT (subsequently the HRPT as the successor-in-interest to the NYDOT) and APH. Under the Permit, the NYDOT abdicated its constitutional duties by delegating responsibility for operating the Heliport to APH.

The Amended Complaint states that plaintiff Mr. Roth has been deprived of his liberty to use the Heliport for chartering work. The Heliport is a public-use facility. Therefore, unlike sightseeing work, chartering work does not require a specific Permit.

Even if Plaintiffs were not authorized to do any sightseeing work at the Heliport, NYH should be allowed to land there for chartering work because anyone can land at the Heliport due to its public nature. (A.Cmpl ¶ 227-228). In addition, the HRPT is interfering with plaintiff Mr. Roth's right to earn a livelihood by denying access to a property that is available to other people in the same situation. (A. Cmpl. ¶ 228) The right to pursue a livelihood is a privilege guaranteed under the Privileges and Immunities Clause of the United States Constitution. (U.S. Const. Art. 4, § 2, cl. 1.)

The Amended Complaint also alleges that APH's imposition of the new fees, and HPRT's subsequent active or passive approval of such fees as required by Section 3 of the Permit, without any legitimate basis or justification, but rather for the sole purpose of funding its settlement with the HRPT, was arbitrary and outrageous and an abuse of its position as the Fixed Base Operator of the Heliport. APH and HRPT's actions constitute an arbitrary and capricious exercise of state power. (A. Cmpl. ¶ 229-231).

The Amended Complaint also states that on May 17, 2006, APH announced a "new" flat fee of $10 to take effect on June 5, 2006. There is no basis or justification for the new fee, which is unfair and unreasonable, and imposed arbitrarily and capriciously. NYH has a cognizable property interest in operating at the Heliport on terms that are "fair, reasonable and nondiscriminatory." (A. Cmpl. ¶ 235-245).

APH admits that it was required to give notice of its proposed rate increase to the public and to the HRPT. HRPT, in turn, is contractually obligated to approve all such rate increases as required by Section 3 of the Permit. Clearly, the purpose of giving notice is to afford the public and those impacted by the proposed increase the opportunity to be heard. However, HRPT failed to provide any opportunity, let alone a meaningful opportunity, for the public and those impacted

to be heard and present objections to the rate increase,[2] a deprivation of Due Process, which, in and of itself, constitutes irreparable injury.

NYH's Due Process argument is meritorious as, "An elementary and fundamental requirement of Due Process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 314 (1950); *See also Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 14 (1978) ("The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending 'hearing'"). Notice "does not comport with constitutional requirements when it does not advise the [affected party] of the availability of a procedure for protesting [the proposed action]." *Memphis Light*, 436 U.S. at 11 (notice from utility company that service would be discontinued if overdue payment was not made within a certain time did not comport with due process, as "[n]o mention was made of a procedure for the disposition of a disputed claim"). Indeed, "the right to some kind of prior hearing is paramount." *Board of Regents v. Roth*, 408 U.S. 564, 570-71 (1972).

It is not disputed that APH implemented, and HRPT acquiesced to, the rate increase without a public hearing. The public, including NYH, had no meaningful opportunity to be heard and present objections to the rate increase. As discussed in this memorandum: (1) HRPT's rate increase action rises to the level of "state action"; (2) NYH has a property interest entitled to due process protection; and, (3) HRPT's rate increase action deprived NYH of its property interest without due process of law, thereby causing irreparable injury to NYH.

---

[2] The NYDOT (and the HRPT, as the successor-in-interest to the Permit) is also liable for a due process violation in that it permitted APH to implement a rate increase without providing the public, including NYH, with a meaningful opportunity to be heard and present objections to the rate increase.

**B. NYH has a property interest entitled to Due Process Protection**

Defendant claims that plaintiffs have not been deprived of any property rights.  However, plaintiff NYH was an operator at the Heliport as authorized by the HRPT. (A. Cmpl ¶ 322).

NYH has a property interest in the operation of its business at the Heliport sufficient to invoke Constitutional procedural Due Process protection.  *See Women's Med. Prof. Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006) ("due process protects an interest in the continued operation of an existing business"); *Watson v. Kansas City, Kansas*, 185 F. Supp.2d 1191, 1203 (D. Kan. 2001) (assuming as adequate plaintiffs' allegation of property interest in "the continued operation of their respective business, and business reputation and goodwill without unjustified, unlawful, and abusive interference by government officials for illegitimate reasons"); *United States v. Tropiano*, 418 F.2d 1069, 1076 (2d Cir. 1969) ("The right to pursue a lawful business . . . has long been recognized as a property right within the protection of the Fifth and Fourteenth Amendments of the Constitution"); *Schwartzberg v. Lefkowitz*, 480 F.Supp. 569, 574 (D.C.N.Y. 1979) ("whatever property interests plaintiffs had in the continued operation of their business . . . would be sufficiently protected by a post-termination hearing").  HRPT's discriminatory actions were intended to and in fact are injuring NYH's business and, in that respect, are operating to deprive NYH of its property interest.  *See Associates in Obstetrics & Gynecology v. Upper Merion Township*, 270 F. Supp.2d 633, 65 (E.D. Pa. 2003) (allegations of actions taken "with the intent to harm Plaintiffs' business interests and to restrict their practice of lawful medical procedures" state a claim of substantive Due Process violation for deprivation of property interest).

**C. HRPT's Discriminatory Actions Are Depriving NYH Of Its Property Interest Without Due Process Of Law, Thereby Causing Irreparable Injury to NYH.**

APH's discriminatory rate increase and favoring of plaintiffs' competitors are depriving NYH of its property interest without due process of law in that it adversely impacts NYH's ability to operate its business.  This Constitutional violation is causing irreparable injury to NYH. "At its core, procedural due process requires that individuals 'receive notice and an opportunity to be heard before the Government deprives them of property.'"  *Bray v. New York, 2005 U.S. Dist. LEXIS 21748*, *13 (S.D.N.Y. Sept. 30, 2005).   As noted above, APH implemented and HRPT approved of its rate increase without a public hearing.  The public, including NYH, had no meaningful opportunity to be heard and present objections to the rate increase.  Accordingly, APH and HRPT's rate increase action is operating to deprive NYH of its property interest without due process of law.  *See Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 314 (1950*); Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 11  (1978); *Board of Regents v. Roth*, 408 U.S. 564, 570-71 (1972).

Significantly, a deprivation of due process, in and of itself, constitutes irreparable injury. *See Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir.) ("when an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary"); *Bray v. New York*, 2005 U.S. Dist. LEXIS 21748, *26 (S.D.N.Y. 2005) ("The deprivation of constitutional rights, such as due process, causes irreparable harm.").

Notably, as in *Burton*, the NYDOT (and the HRPT, as the successor-in-interest to the Permit) could have affirmatively required APH to provide notice <u>and a hearing</u> before implement any rate increase.  Clearly, if the NYDOT (or the HRPT) were operating the Heliport, it would have been required to provide such notice and hearing.  It chose, however, not to require APH to do so.  As the *Burton* Court stated, "no State may effectively abdicate its responsibilities by either ignoring them or by merely failing to discharge them whatever the motive may be."

## POINT THREE

THERE IS A VALID CLAIM FOR TORTIOUS INTERFERENCE WITH CURRENT AND

PROSPECTIVE ECONOMIC RELATIONS

The defendant claims that the Plaintiffs "allege[s] no affirmative action on the part of the

Trust [HRPT] which could conceivably constitute federally cognizable tortious interference with

NYH[C]'s contractual rights." (Defendant's memorandum at p.11) The Amended Complaint

properly pleads the necessary elements of a valid tortious interference with existing and

prospective contractual relations claims (Am. Compl. ¶ 199-203). HRPT, as the administrator of

the Heliport, and motivated solely by malice, refused to allow NYH from operating charter

flights out of the West 30th Street Heliport. HRPT had no right to exclude NYH or any other

operator from operating charter flights out of the public West 30th Street Heliport. As a result of

HRPT's malicious and tortious actions, NYH has lost some of its biggest charter clients

including Calvin Klein and Ian Schrager, among many others. The HRPT was aware of the

existing contracts between NYH and its charter clients, as NYH was doing a substantial number

of charter flights out of the Heliport. Calvin Klein, Ian Schrager and other third parties would

have entered into a contractual relationship with plaintiffs but for the wrongful acts of the

defendants. NYH lost and continues to lose substantial charter business as a result of HRPT's

tortious conduct.

Defendants' mistakenly allege that, "there is no constitutional tort for interference with

contractual rights." (Defendant's memorandum at p.11) The Plaintiffs rely on supplemental

jurisdiction upon which the Court may properly exercise subject matter jurisdiction over the

plaintiffs' state claims. (28 U.S.C.A. §1367), (Having upheld plaintiff's claims under the

Computer Fraud and Abuse Act, we will exercise supplemental jurisdiction over plaintiff's claim

of tortious interference with contractual relations pursuant to 28 U.S.C. § 1367(a). *I.M.S. Inquiry Management Systems, Ltd. v. Berkshire Information* 307 F.Supp.2d 521 (S.D.N.Y.,2004)) The plaintiffs have set forth valid constitutional claims within the Amended Complaint, and as such, the Court may properly exercise subject matter jurisdiction over the state based tortious interference with current and prospective economic relations claims.

## CONCLUSION

Based on the foregoing the motion to dismiss the Amended Complaint should be denied in its entirety.

Dated: New York, New York
         August 6, 2008

HANTMAN & ASSOCIATES

By: _____
        Robert J. Hantman (RH-3947)
        1414 Avenue of the Americas Suite 406
        New York, New York 10019
        Telephone:  (212) 684-3933
        Facsimile:   (212) 755-1989
        *Attorneys for Plaintiffs*
        *New York Helicopter Charter, Inc.*
        *and Michael Roth.*
