UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
NEW YORK HELICOPTER CHARTER INC., and
MICHAEL ROTH, individually,

                        Plaintiffs,

-against-

AIR PEGASUS HELIPORT, INC.,
HUDSON RIVER PARK TRUST,

                        Defendants.
-----------------------------------------------------------X

07 CIV. 4069(MGC)

Hon. Miriam G. Cedarbaum

**AFFIDAVIT OF MICHAEL ROTH**

MICHAEL ROTH, being duly sworn, deposes and says:

1. I am the president of New York Helicopter Charter, Inc., the plaintiff in the above-entitled action filed May 24, 2007.

2. This supplemental affidavit is submitted in support of the order to show cause as to why defendants' Air Pegasus Heliport, Inc. and Air Pegasus New York, Inc. (hereinafter collectively referred to as ("Air Pegasus"), should not be enjoined from preventing New York Helicopter Charter Inc. ("NYH") from operating at the West 30th Street Heliport, a public use heliport, upon the same terms and conditions as those similarly situated.

3. This affidavit supplements my previous affidavit filed herein on May 21, 2007 which I incorporate herein which includes my background, the background of New York Helicopter Charter Inc., my history with Air Pegasus, and the factual reasons in support of the complaint filed herein.

4. Prior to this application for equitable relief, NYH was operating solely out of the Downtown Manhattan Heliport ("DMH") in an effort to mitigate the damages caused by

1

APH's ouster of New York Helicopter Charter, Inc. from the West 30th Street Heliport, a public use heliport, on May 6, 2007.

5. NYH had operated at the 30th Street Heliport, a public use heliport, and the DMH since March, 2004, and operated between sixteen (16) and twenty (20) flights a day.

6. NYH employs twenty four (24) full time employees.

7. NYH has never been in violation of any laws, rules or regulations and has maintained an impeccable service record.

8. Injunctive relief, by order to show cause, was not previously requested in spite of NYH's ouster from the West 30th Street Heliport, a public use heliport, on May 6, 2007, as we were permitted by the New York – New Jersey Port Authority to operate from their facilities downtown on weekdays and weekends and, although we have suffered damages, we were able to continue in business thereby not satisfying the conditions for injunctive relief.

9. However, on Monday, October 1, 2007, NYH was informed that the Port Authority had decided to shut down the Downtown Manhattan Heliport ("DMH") on all weekend days (Saturday and Sunday) for all helicopter flights emanating from the DMH.

10. Notice of this operational shutdown was given to NYH by Enrique Wegel, Manager of the DMH, on Monday, October 1, 2007.

11. Mr. Wegel informed NYH that all weekend helicopter operations at DMH will be shut down beginning on Saturday, October 6th, 2007, and will continue indefinitely.

12. The new circumstances will result in NYH suffering irreparable injury – losing almost $40,000 per weekend in gross revenue as well as $10,000 per weekend in operating costs (including salaries, insurance, rent, and maintenance of helicopters) and eventually causing us to either go out of business or significantly downsize our operations.

13. I am therefore seeking the Court's assistance in preventing irreparable harm to NYH and its employees.

14. On May 6th, 2007, NYH was precluded from further operating from the 30th Street Heliport, a public use heliport, and was forced to move our entire operations to the DMH.

15. Because the hours of operation for the DMH are limited to 7AM-7PM, NYH's competition has gained a significant competitive advantage by operating twenty four (24) hours a day out of the 30th Street Heliport, a public use heliport, which has resulted in NYH losses of over One Million Dollars ($1,000,000) annually in private charter and tour business.

16. By excluding NYH from operating at the West 30th Street Heliport, a public use heliport, NYH's significant obligations to banks which financed our helicopter fleet will be in jeopardy of going unfulfilled.

17. NYH was informed of the Port Authority's decision only five (5) days prior to the actual weekend shutdown, thus leaving NYH with no reasonable time to respond and no reasonable alternative Heliport to operate its business.

18. My twenty four (24) full time employees will be left without employment as a result of NYH's exclusion from the 30th Street Heliport, a public use heliport.

19. By precluding NYH from operating out of the 30th Street Heliport, a public use heliport, NYH is forced to fuel its helicopters on the weekends at the Linden, New Jersey airport, which has resulted in an additional Three Hundred Thousand Dollars ($300,000) in travel and fuel expenses.

20. We have attempted to mitigate the damages by operating from the DMH, even though it is a relatively inconvenient location for tourists.

## THE INSTANT ACTION

21. NYH filed a complaint on May 24, 2007 for violation of procedural due process; violation of substantive due process; violation of the equal protection clause; illegal operation of a public heliport and violation of the Airline Deregulation Act.

22. The complaint also requests that the court terminate the illegal operation of the heliport and declare that: 1) the permit should have been granted under a competitive bid; 2) the extension of the permit required board approval; 3) the settlement between Hudson River Park Trust ("HRPT") and APH was unreasonable and capricious; 4) the settlement required approval of HRPT's board of directors; 5) the heliport was not "grandfathered" and should be shut down.

23. Defendant APH filed a motion to dismiss on July 11, 2007 arguing that APH was not a state actor and that the complaint failed to state a claim.

24. NYH answered the motion on September 18, 2007.

25. I incorporate by reference the affidavit submitted in opposition to the motion to dismiss.

26. On October 1, 2007, the Hudson River Park Trust ("HRPT) filed also a motion to dismiss on basically the same basis as APH and claimed that that the HRPT is not subject to the Airline Deregulation Act.

27. NYH has not yet responded to HRPT's motion to dismiss.

28. However, I understand that my attorneys have addressed the issues brought up by it in their memorandum of law in support of the order to show cause.

29. While a preliminary conference is scheduled for October 11, 2007 at 11:30 a.m, there has been no discovery conducted in connection with this action to date.

## NEED FOR IMMEDIATE INJUNCTION

30. Our company has not been allowed to utilize the West 30th Street Heliport, a public use heliport, since May 6, 2007 which has caused substantial losses to NYH during prime tourist season.

31. In the competitive environment of the helicopter tour business, our forced absence from the 30th Street Heliport, a public use heliport, resulted in injury to our business reputation and profile and now, without access to the DMH, we will suffer irreparable injuries.

32. There exists no adequate remedy at law as the termination of our client's business will negatively impact not only NYH, but also its employees.

33. In addition, the good will accumulated over the years will be diminished, as numerous commitments and reservations have already been made by prominent tour guides and hotels for this weekend and future weekends, thus causing them to patronize other helicopter tour companies.

34. In light of the conduct of Air Pegasus, it is obvious that the equities favor granting of the relief sought herein.

35. Since Air Pegasus operates the 30th Street Heliport, a public use heliport, in the public interest pursuant to a permit from a quasi-governmental agency (HRPT), public policy clearly favors the requested relief.

36. Given the new circumstances, I respectfully request that an order be issued permitting our company to immediately resume operations at the 30th Street Heliport, a public use heliport, on the same basis as other users.

37. No prior application for the relief within has been made to this or any court of competent jurisdiction except for an order to show cause brought in April, 2006, which application was settled and resulted in a so-ordered Stipulation dated May 4, 2006, which is now the subject

of a State Supreme Court case which status is reflected in the attached letter, without pleadings, from Andrew D. Greene, P.C. dated October 10, 2007.

WHEREFORE, it is respectfully requested that this Court grant the relief requested in the Order to Show Cause.

*Michael Roth*

Subscribed and sworn to me

_____
Notary Public
19/10/07