UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
NEW YORK HELICOPTER CHARTER INC., and
MICHAEL ROTH, individually,

              07 Civ. 4069(MGC)

       Plaintiffs,

-against-

              DECLARATION OF MICHAEL
              ROTH IN OPPOSITION TO
              DEFENDANT HRPT'S MOTION
HUDSON RIVER PARK TRUST          TO DISMISS

       Defendant.
----------------------------------------------------------X

    I, Michael Roth, declare under penalty of perjury, that the following statements are true and correct:

1. I am the president of New York Helicopter Charter, Inc. ("NYH"), the plaintiffs in the above-entitled matter.

2. This affidavit is submitted in opposition to defendant Hudson River Park Trust's ("HRPT") motion to dismiss the amended complaint.

3. This affidavit supplements my previous affidavits filed with this Court on May 21, 2007, October 11, 2007, and July 2, 2008, incorporated herein, which include my background, the background of NYH, my history with the HRPT and the factual reasons in support of the Amended Complaint filed on April 25, 2008.

4. Currently, NYH is operating at the Downtown Manhattan Heliport ("DMH") in order to mitigate the damages it has incurred due to the improper and unlawful ouster from the West 30th Street heliport, a public use heliport, on May 6, 2007, by the HRPT.

5. The West 30th Street heliport is the only heliport in New York City authorized to

1

operate twenty-four (24) hours a day, seven (7) days a week.

6. NYH operated at the West 30th Street heliport as well as the DMH since March 2004, and currently operates between fifty (50) and sixty (60) flights a day out of the DMH only.

7. NYH has thirty (30) full time employees.

8. NYH has never been in violation of any laws, rules or regulations and has maintained an impeccable service record.

9. The HRPT, a state actor, is responsible for overseeing the West 30th Street heliport's operations and policies.

10. As indicated on the New York State Department of Transportation website, the West 30th Street heliport is a public use heliport. (https://www.nysdot.gov/portal/page/portal/divisions/operating/opdm/aviation/directories/listings/heliports)

11. While NYH was operating at the West 30th Street heliport, employees of Air Pegasus Heliport ("APH") began accusing me of violating my contract with APH in a number of different ways.

12. Although NYH was in full compliance with all of its contractual obligations, APH continued to accuse NYH of violations in an ongoing campaign of daily harassment.

13. On April 21, 2007, I received a letter from Chris Gengaro (attached hereto), attorney for APH, which was also sent to Laurie Silberfield, attorney for the HRPT.

14. In this letter, Mr. Gengaro threatened, "If you continue to interfere with APH's business, we will have no choice but to consider terminating NYH's right to conduct sightseeing operations."

15. As their allegations against NYH and myself were entirely without merit, it became

readily apparent to me that APH and the HRPT were attempting to establish a paper trail that would justify my eventual ouster from the West 30th Street heliport.

16. My suspicions were confirmed when NYH was formally ousted from the West 30th Street heliport on May 6, 2007.

17. Immediately after being unjustly and unlawfully ousted from the West 30th Street heliport, I filed suit in New York State Supreme Court in order to regain access to the public West 30th Street heliport.

18. I recall that while trying to settle the case, APH and HRPT, through Drew Schaeffer - a principal in Liberty Helicopter, Inc. ("Liberty") and partner with Alvin and Steven Trenk (principals of APH and Liberty) - proposed that if I agreed to drop the lawsuit against APH and the HRPT, NYH would be allowed to resume operations out of the West 30th Street heliport.

19. I believed and still believe that he was sent on the authority and at the direction of members of APH and the HRPT.

20. Mr. Schaeffer also called Paul Dudley, the principal in Linden Airport Management Corp., a fixed base operator in New Jersey and business associate of mine, in an attempt to encourage me to drop the lawsuit.

21. In a gesture of good will, I originally accepted their offer, as I was promised by Mr. Schaeffer that Alvin Trenk would live up to his word and allow me to operate out of the West 30th Street heliport if I dropped my lawsuit.

22. As such, I authorized my attorney, Robert J. Hantman, to send an email indicating that I was willing to immediately dismiss all claims against APH and HRPT without prejudice.

23. Although I was promised that I would hear Steven Trenk, I never did.

24. I subsequently attempted to contact Steven Trenk to consummate the deal, however my numerous phone calls were left unreturned.

25. I then spoke to Drew Schaeffer again who informed me that the Trenks – Alvin and Steven– had reneged on their offer as they believed that they would be successful in the lawsuit and felt no need to live up to their word.

26. I subsequently informed my attorney to withdraw my offer as APH and the HRPT had disingenuously offered to reach an amicable conclusion only to go back on their word.

27. I proceeded with my lawsuit in state court (and subsequently Federal Court), and I believe that as a result of my lawsuit, APH and the HRPT decided to retaliate against me and NYH by continuing to unjustly and unlawfully prohibit NYH from operating out of the West 30th Street heliport.

28. The above facts are true to the best of my knowledge, information and belief and I am aware that I am subject to a penalty for perjury if willfully false.

_/s/ Michael Roth_
Michael Roth

Dated: August 5, 2008
       New York, New York

Apr. 23. 2007 1:09PM 97:Zahler and Greene, PC   GENGARO                                No. 7139   P. 2   PAGE 02

# LENTZ & GENGARO

COUNSELORS AT LAW
443 NORTHFIELD AVENUE
WEST ORANGE, NEW JERSEY 07052
(973) 669-8900
FAX: (973) 669-8950
www.lentzgengaro.com

DAVID W. LENTZ
CHRISTOPHER P. GENGARO
MITCHELL L. GOLDSTEIN

Writer's E-Mail Address:
cpg@lentzgengaro.com

GEORGE M. HOLLAND
JOSPEH P. TURK
OF COUNSEL
KATHLEEN GENGARO

April 21, 2007

By Facsimile

Andrew D. Greene, Esq.
3000 Marcus Avenue, Suite 1W11
Lake Success, New York 11042

Re: New York Helicopter Charter, Inc. Sightseeing Operations

Dear Mr. Greene:

Pursuant to the Settlement Agreement between Air Pegasus Heliport, Inc. ("APH") and New York Helicopter Charter, Inc. ("NYH"), NYH is allowed to conduct no more than 24 sightseeing flights over the course of any given weekend and no more than 1,200 sightseeing flights annually. At approximately 2:00 p.m. today, APH personnel advised Michael Roth, President of NYH, that NYH had conducted 19 flights thus far today. APH personnel politely reminded Mr. Roth that NYH was limited to 24 sightseeing flights per weekend, and that when it reached that total, NYH would not be permitted to conduct any more flights until the weekend of April 28-29, 2007. Mr. Roth became argumentative and tried to intimidate APH's personnel. APH's personnel who are on duty this weekend are not decision-makers. Mr. Roth should know better than to attempt to bully them when he has access to management by cell phone. This is not the first time that Mr. Roth has behaved improperly at the Heliport. Last year, Mr. Roth actually engaged in a fist fight with the employees of another in the Heliport parking lot.

I would appreciate it if you would remind your client of the limitation to which it agreed in the Settlement Agreement. Please also let him know that any inappropriate or threatening behavior jeopardizes the safety of all passengers and personnel and will not be tolerated.

Additionally, I have received a copy of your April 17, 2007 letter to Kent Jackson, attorney for ZIP Aviation, LLC ("ZIP"). In your letter you accuse ZIP of various misconduct. You sent a copy of the letter to the Hudson River Park Trust ("HRPT").

The complaints set forth in your letter are between NYH and ZIP and should be resolved between those entities, without involving the HRPT. If an issue cannot be resolved, APH will attempt to assist you. APH, of course, will ensure that all sightseeing operators comply with all their obligations. APH will question ZIP regarding this incident. In addition, a letter will be sent to ZIP reminding it of its obligations.

We deem your involvement of the HRPT in this dispute to constitute tortious interference with APH's business. In the future, if you have a complaint or problem, please bring the issue to APH's attention for resolution. If you continue to interfere with APH's business, we will have no choice but to consider terminating NYH's right to conduct sightseeing operations.

Very truly yours,

Christopher P. Gengaro

CPG:es

cc: Laurie Silberfeld, Esq. (By Facsimile)

O:\WP51DATA\S-U\Trunk,Steve\NY112\Greene_Ltr3.doc

Apr. 23. 2007 1:09PM  Zahler and Greene, PC  HOWARD R. BIRNBACH   No. 7139  P. 4
APR 29, 2005 01:31P                         2123616406              973 669 8960  page 2

04/29/2005 11:27 FAX 5168290851        HOWARD R. BIRNBACH           973 669 8960  P. 03

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT is made on the 28th day of April, 2005 between: (i) Air Pegasus Heliport, Inc. ("APH"), a New York corporation having an office at 11 Hillside Avenue, Bernardsville, New Jersey 07924; and (ii) New York Helicopter Charter, Inc. ("NYH").

WHEREAS, APH is the fixed base operator of the West 30th Street Heliport in New York (the "Heliport") pursuant to a Permit (the "Permit") with the New York State Department of Transportation, the predecessor of the Hudson River Park Trust ("HRPT"), dated March 25, 1996; and

WHEREAS, the Permit reserves to HRPT the right to approve any helicopter operator engaged in sightseeing from the Heliport; and

WHEREAS, APH maintains a separate terminal facility (the "Trailer") which is used principally for corporate and charter helicopter operations; and

WHEREAS, NYH conducts both charter flights and charter tours, which the HRPT considers the same as sightseeing tours, from the Heliport; and

WHEREAS, NYH has submitted an application to APH to become an approved operator of helicopters by the HRPT, notwithstanding APH's position that approval is not required for NYH's charter tour operations;

WHEREAS, NYH has filed a lawsuit in the Supreme Court of the State of New York, County of New York entitled *New York Helicopter Charter, Inc. v. Air Pegasus Heliport, Liberty Helicopters, Inc. and Hudson River Park Trust* (Index Number 603775/04) (the "Lawsuit"); and

WHEREAS, APH and NYH have agreed to settle the claims in the Lawsuit that NYH has filed against APH:

NOW, THEREFORE, based on and in consideration of the foregoing premises, and in consideration of the mutual covenants set forth herein, APH and NYH agree as follows:

Apr. 23. 2007 1:10PM   Zahler and Greene,   HOWARD R. BIRNBACH                No. 7139   P. 5
APR 29, 2005 01:31P                                  2123616406                  973 569 8960   P.04

04/29/2005 11:27 FAX 5160260003              HOWARD R. BIRNBACH                  973 669 8960   P.04

1. **NYH's Rights.** NYH shall be granted a non-exclusive right to continue to conduct charter tours from the Heliport provided it is not in default of any term of this Agreement and subject to approval of the HRPT in accordance with the terms of the Permit. NYH shall have the right to conduct its charter tours solely from the Trailer.

2. **Payments to APH.** NYH shall pay APH on a monthly basis, by no later than the tenth day of each calendar month, the following charges incurred during the previous month:

    (i) Customary and usual heliport charges for landings, parking, fuel, off-ops (also known as late ops), and SAFB Fees at APH's then current rates which are subject to change from time to time in APH's sole discretion; and

    (ii) A passenger fee computed at the rate of $15.00 for every 10 charter tour passengers that the NYH flies, with the number of passengers rounded to the next higher integral multiple of 10 (such payment shall be accompanied by a report certifying the passenger count for the period for which payment is submitted).

3. **Compliance With Rules.** NYH shall comply with all of APH's and the HRPT's rules, regulations and procedures as may exist or to be established from time to time. NYH agrees to not sell tickets, collect payment, solicit or loiter on the Heliport grounds, in the Trailer, in the Heliport parking lot, or on the sidewalk in front of the Heliport or elsewhere in the Hudson River Park, or otherwise interfere with or attempt to divert or distract other helicopter operators' customers.

4. **Limitations on Operations.** NYH shall be subject to the following limitations: (i) it shall only conduct charter tour flights on Saturdays, Sundays and Federal holidays as defined in 5 U.S.C §6103; (ii) it shall conduct not more than 24 charter tour flights over the course of any given weekend and not more than 12 charter tour flights on any given Federal holiday. In the event that a Federal holiday falls on either a Friday or a Monday, then NYH shall

2

Apr. 23. 2007 1:10PM  Zahler and Greene,  HOWARD R. BIRNBACH          No. 7139  P. 6
APR 29, 2005 01:31P                    2123616406                           973 669 8960   P. 05

04/29/2005 11:27 FAX 5168280851         HOWARD R. BIRNBACH                  973 669 6960   P. 05

be allowed to conduct up to 36 charter tour flights over the three-day weekend; and (iii) it shall conduct not more than 1,200 charter tour flights per calendar year.

5. **HRPT Approval.** APH has submitted, on NYH's behalf, an application to the HRPT for approval of NYH as a charter tour/sightseeing operator from the Heliport which is pending. NYH agrees to indemnify APH from any and all claims, suits or demands of any kind, including legal fees and costs, which arise out of or are related to NYH's operations at the Heliport.

6. **Default.** In the event that NYH defaults in any of its obligations under this Agreement, then APH shall have the right, without notice or an opportunity to cure, to terminate NYH's rights to conduct any operations at the Heliport.

7. **General Release of APH and NYH.** NYH, its successors and assigns, hereby releases and forever discharges APH, its employees, agents, shareholders, directors, officers, successors and assigns (collectively, the "Releasees") from any and all debts, actions, causes of action, suits, accounts, covenants, contracts, agreements, damages, and any and all claims, demands and/or liabilities whatsoever of every name and nature, whether directly or indirectly, personally or derivatively through others, and whether known or unknown to, or suspected or unsuspected by NYH EXCEPT for claims and rights that are preserved under this Settlement Agreement. Subject to this exception, this Release includes any and all claims asserted in the Lawsuit against the Releasees, and any claims NYH has or may have against the Releasees as of the date of this Settlement Agreement, or ever had against the Releasees from the beginning of the world through the execution date of this Settlement Agreement.

8. **Confidentiality.** The parties agree that the terms of this Settlement Agreement shall be maintained in confidence by NYH and shall not be revealed by NYH to any person or entity that is not a party to this Settlement Agreement. NYH shall not deliver any

3

Apr. 23. 2007 1:10PM   Zahler and Greene, PC   No. 7139   P. 7   ☒006
APR 29, 2005 01:31P        HOWARD R. BIRNBACH   973 669 8960   P.06
                            2123616406                         page 5

04/29/2005 11:25 FAX 5168290651        HOWARD R. BIRNBACH        973 669 8968   ☒006
                                                                                P.05

communication regarding this Settlement Agreement to any third party, to the public, or to the media, other than the statement that "the matter has been settled."

9. **Completeness of Agreement.** This Agreement contains all of the terms and conditions agreed upon by the parties with reference to the subject matters contained herein. No other agreement, oral or otherwise, will be considered to exist or to bind any of the parties. No representative of any party to this Settlement Agreement had, or has, any authority to make any representation or promise not contained in this Settlement Agreement, and each of the parties to this Settlement Agreement acknowledges that such party has not executed this Settlement Agreement in reliance upon any such representation or promise. This Settlement Agreement cannot be modified except by a written instrument signed by all parties.

10. **Severability.** If any portion or provision of this Settlement Agreement is held unconstitutional, invalid, or unenforceable by any court of competent jurisdiction, the remainder of the Settlement Agreement will be considered severable, will not be affected, and will remain in full force and effect.

11. **Voluntary Execution.** The parties acknowledge that they have each thoroughly read this Agreement, understand it, and is entering into it of its own free will.

12. **Governing Law; Jurisdiction.** This Agreement will be interpreted and construed for all purposes under the laws of the State of New York without regard to its conflicts of laws principles, and all disputes arising under or out of this Settlement Agreement will be brought in courts of competent jurisdiction located within the State of New York. The parties consent to the personal and exclusive subject matter jurisdiction of the Courts of the State of New York in connection with any and all disputes arising out of this Settlement Agreement.

13. **Legal Counsel.** The parties all acknowledge that each has been represented by legal counsel throughout these proceedings and that, by this Settlement Agreement, each has

4

Apr. 23. 2007 1:11PM  Zahler and Greene, PC  HOWARD R. BIRNBACH           No. 7139   P. 8          @007
APR 29,2005 01:31P                              2123616406                  973 569 8960        P.07

04/29/2005 11:28 FAX 5188200851     ZAHLER GREENE     HOWARD R. BIRNBACH        973 569 8560    @007
                                                                                                P.07

been advised, in writing, of his right to consult legal counsel prior to signing this Settlement Agreement. Each party further acknowledges that, to the extent it has wished to avail itself of that right, it has done so.

14. **Construction.** This Settlement Agreement is the product of negotiation by the parties and all parties' counsel participated in the drafting and revision of this Settlement Agreement. Therefore, this Settlement Agreement shall not be construed or interpreted more strictly against any party based on that party's counsel having drafted this Settlement Agreement.

15. **No Waiver.** The failure of any party to insist upon the strict performance of any of the provisions of this Settlement Agreement, or to exercise any of the rights afforded under this Settlement Agreement, shall in no way constitute a waiver of any subsequent default of the same or similar nature or a waiver of that party's right to insist on strict performance in the future.

16. **Attorneys' Fees.** If any party to this Settlement Agreement brings an action or counterclaim against any other party to this Settlement Agreement for breach of this Settlement Agreement, or any other rights preserved by this Settlement Agreement, including a claim for non-payment of fees and charges contemplated by paragraph 2 of this Agreement, the prevailing party shall be entitled to recover, in addition to all other damages and remedies, all reasonable attorneys' fees and costs incurred in connection therewith.

17. **Dismissal of Claims Against APH and the HRPT.** Simultaneous with the execution of this Settlement Agreement, NYH shall cause all claims that it has asserted in the Lawsuit against APH to be dismissed with prejudice and all claims that it has asserted against the HRPT to be dismissed without prejudice.

18. **Duplicate Originals.** This Settlement Agreement may be executed in counterparts, with each counterpart being equally effective.

Apr. 23. 2007 1:11PM  Zahler and Greene, PC / HOWARD R. BIRNBACH    No. 7139   P. 9
                                                                    973 669 8960   P.08

APR-29-2005 15:14    LENTZ-GENGARO                      973 669 8960   P.01
APR 29,2005 01:32P                    2123616900

04/29/2005 11:28 FAX 5168080061          HOWARD R. BIRNBACH              973 669 8960   P.08

19. **Facsimile Signatures.** Facsimile signatures shall be as effective as original signatures.

WHEREFORE, the parties have set their hands and seals as of the date first written above.

                                            AIR PEGASUS HELIPORT, INC.

                                            By: _____
                                                 Abigail S. Trenk, President

                                            NEW YORK HELICOPTER CHARTER, INC.

                                            By: _____
                                                 Michael Roth, President

Z:\WPS\DaTa\R-1\Trenk\Docs\NYHC\settlement\Agreements\NYH-Final_X.doc

6

TOTAL P.09

TOTAL P.01